# Exhibit A

# Administrative Record

# §f

October 24, 2006

William Perras, Chair
Dale Reed, Vice Chair
Esther Collier, Member
Thomas C. Dlugosh, Member
Susan Kleebauer, Member
Rene A. Ponder, Member
James R. Wohltmann,
CITY OF SAN LEANDRO – PLANNING COMMISSION
835 East 14th Streeet
San Leandro, CA 94577

    Re:   Faith Fellowship Worship Center – 14600 Catalina Street
            Assessor's Parcel No.: 080-G-0933-022-01

Honorable Members of the Commission,

## INTRODUCTION

By way of introduction, the Pacific Justice Institute is a public interest legal organization which, in addition to representing scores of faith-based organizations in property issues, has on numerous occasions testified and provided legal opinions to state and local legislative bodies on land use matters. This office has been made aware of Faith Fellowship Worship Center's ("FFWC" or "Church") Planning Permit Application for a Zoning Map Amendment ("ZMA"). Initially, from our review of the facts, we are optimistic that the City will grant the ZMA. Nonetheless, we would still like to bring to your attention the federal law relevant to the Church's application.

## FACTS

The Church has outgrown its present location at 577 Manor Blvd. to such an extent that it can no longer serve its members and fulfill its religious mission and goals. This includes their sincerely held beliefs relative to providing an opportunity for worshippers to attend meetings, offer religious instruction and activities for children and youth, and provide charitable services to assist the less fortunate in the community.

Kevin T. Snider
Page 1
10/31/2006

Currently, FFWC has approximately 15,000 people attending on Sunday. The proposed site, which is the subject of this current application, will allow the Church to accommodate the increase in its membership resulting from the growth of the surrounding community. FFWC has made a diligent search of properties in the area to which they minister and have been unable to find an alternative suitable property. An outright denial of the application would place a substantial burden on the church's ability to practice the mandates of its religious tenets to proclaim and propagate the Gospel, make disciples and assist the poor.

## RLUIPA

In light of these substantial burdens, it is our view that failure to approve the Church's permit application would violate the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §2000cc et seq. RLUIPA was enacted by Congress and signed by President Clinton in response to the unjust manner in which many cities and counties have utilized their land use and zoning powers to restrict the number of religious institutions within their jurisdictions. The remarkable success of RLUIPA in the legislative process can be attributed to the strong support it received from a broad coalition of religious and civil rights groups, including the American Civil Liberties Union, People for the American Way, the National Association of Evangelicals, and the Union of Orthodox Jewish Congregations of America.

RLUIPA prohibits any government agency or agent from adopting or imposing any land use regulation that 1) imposes a substantial burden on the religious practices of a person or group (42 U.S.C. §2000cc 2(a)(1)); 2) treats a religious assembly on less than equal terms with a non-religious assembly (42 U.S.C. §2000cc 2(b)(1));  or 3) discriminates against an assembly or institution on the basis of religion or religious denomination (42 U.S.C. §2000cc 2(b)(2)). Exemption from these general prohibitions is extremely narrow. In order for a government land use policy to avoid violating RLUIPA, the government must not only be furthering a compelling state interest, the means for furthering that interest must be the least restrictive upon the rights of a religious person or institution.[1] 42 U.S.C. §2000cc 2(a)(1)(A)-(B). These statutory principles reflect the U.S. Supreme Court's conclusion, as originally outlined in *Sherbert v. Verner*, 374 U.S. 398 (1963), and reaffirmed in *Church of the Lukumi Babalu v. City of Hialeah*, 508 U.S. 520 (1993), that government-imposed burdens on religious exercise must be subjected to the strictest form of scrutiny, especially when those burdens are the direct result of individualized assessments such as CUP decisions. Indeed, recently, the Ninth Circuit affirmed that individualized assessments in which there is significant discretion in the application process falls squarely within RLUIPA. *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. Aug. 1, 2006).

---

[1] Since the provisions of RLUIPA parallel the protections provided by the First Amendment and Equal Protection Clause of the Fourteenth Amendment, violation of RLUIPA necessarily entails violations of the United States Constitution.

Kevin T. Snider
Page 2
10/31/2006

FFWC desires to use the Catalina Street property for religious education, assembly and worship, among other uses beneficial to the entire community. Under RLUIPA, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc 5(7)(B). As such, a denial of the application would result in an unlawful "substantial burden" upon the Church's fundamental right to the free exercise of religion. See, e.g. *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F.Supp.2d 1203, 1226 (C.D. Cal. 2002) ["[p]reventing a church from building a worship site fundamentally inhibits its ability to practice its religion."]; *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) ["The burden here was substantial. The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents); or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense."]

In the recent case of Guru Nanak Sikh the court stated that "to prove a substantial burden under RLUIPA, a religious group need not 'show that there was no other parcel of land on which it could build its church." *Guru Nanak, Id.*, 989. In the present case, FFWC cannot find an alternative site. But even if it theoretically could find another building, in view of the Guru Nanak Sikh decision last August, that in itself does not suggest that it would not face a substantial burden if the application were denied.

Furthermore, land use rationales that the Catalina Street property should be saved for business or commercial uses will not survive scrutiny under RLUIPA. This is clear when the court stated: "RLUIPA does not contemplate that local governments can use broad and discretionary land use rationales as leverage to select the precise parcel of land where a religious group can worship." *Guru Nanak, Id.*, 992.

In conjunction with the First Amendment, RLUIPA requires any government-imposed restriction on religious exercise to serve a compelling governmental interest that is of the highest order. See *Church of the Lukumi Babalu*, supra, at 546. Of the few governmental interests which have been deemed compelling, most are directed toward the prevention of grave and immediate dangers to the public's health, peace, and welfare. The facts in the present matter indicate no such grave and immediate dangers but merely that the land should be preserved for commercial use.

## CONCLUSION

The Pacific Justice Institute thanks you for your review and consideration of the discussion in this missive. Should City staff or the Planning Commission have any questions, please feel free to contact us at the address and phone number on this letterhead.

Kevin T. Snider
Page 3
10/31/2006

On behalf of the Pacific Justice Institute, please accept our gratitude for your service to the community.

Very truly yours,


Kevin T. Snider
Chief Counsel
PACIFIC JUSTICE INSTITUTE

Kevin T. Snider
Page 4
10/31/2006

Exhibit A
Section f
Page 4