# Exhibit A

# Administrative Record

# §o(3)

# Attachment 7



SACRAMENTO OFFICE:
P.O. Box 276600 • Sacramento, CA 95827
916.857.6900 • FAX 916.857.6902
www.pacificjustice.org

BRAD W. DACUS, ESQ.
*President*

EDWIN MEESE, III
*Former Attorney General*
*Advisory Board Chairman*

May 2, 2007

Tony Santos, Mayor
Michael J. Gregory, Dist. 1
Surlene G. Grant, Dist. 2
Diana M. Souza, Dist. 3
Joyse R. Starosciack, Dist. 4
Bill Stephens, Dist. 5
Jim Prola, Dist. 6
CITY OF SAN LEANDRO
835 East 14th Street
San Leandro, CA 94577

Re:    Faith Fellowship Worship Center – 14600 Catalina Street
       Assessor's Parcel No.: 080-G-0933-022-01

Honorable Members of the Council,

## INTRODUCTION

Thank you for you attention to the matters addressed in this letter. Please be advised that the Pacific Justice Institute is a nonprofit organization which has advised and representing scores of faith-based organizations in property issues. In addition, PJI has on numerous occasions testified and provided legal opinions to state and local legislative bodies on land use matters as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA).

## FACTS

Faith Fellowship Worship Center ("FFWC" or "the Church") is a rapidly growing congregation of about 1,500 members. Having outgrown its current location at 577 Manor Blvd., the Church, through no fault of its own, creates traffic and parking problems on nearby residential streets. The City of San Leandro ("the City" or "San Leandro") could relieve this problem by permitting the Church to relocate.

Kevin T. Snider
Page - 1 -
5/2/2007

*"Raising The Torch of Justice For Our Civil Liberties"*

Exhibit A
§o(3)(7)
Page 1

A search for more suitable properties in the San Leandro area culminated in a March 2006 purchase agreement for a 3.56-acre property at 14600 Catalina Street, which is located in an industrial district. The purchase agreement allowed many months for FFWC to obtain any necessary City permits it would need to move to its new location. When informed that the City does not permit religious assembly uses in industrial districts, FFWC filed a rezoning application with the City's Community Development Department Planning Services Division. The Church hoped to have the district rezoned to an Industrial Light (IL) district, believing that such a move would allow the City to approve a conditional use permit allowing FFWC to operate in its desired new location.

The filing of FFWC's rezoning application kicked off the process of creating an Assembly Overlay (AO) district. The process dragged on for 11 months, during which time FFWC had no choice but to close escrow on its Catalina Street property. The property was ultimately not included in the AO district when the City Planning Commission recommended the AO district for approval on February 22, 2007. At that time, the City advised FFWC to revise its application to request that the Catalina Street property be included in the new AO district. The San Leandro City Council, however, adopted the new AO district, which still did not include the Catalina Street property, on March 19. Due to its exclusion, FFWC must now make monthly $35,000 mortgage payments for a property that would suit its growing needs but which it cannot use. The City has expressed concern about the Church's desire to operate in a location surrounded by companies that use hazardous materials. However, the "health and safety" argument that Catalina Street is within 500 feet of places with HazMat Plans applies to eliminate virtually the entire area designated AO.

The Church's inability to use the property places a substantial burden on its ability to practice the mandates of its religious tenets to proclaim and propagate the Gospel, make disciples and assist the poor.

## RLUIPA

In light of the substantial burdens placed upon the Church, it is our view that failure to approve FFWC's permit application would violate the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc et seq. RLUIPA was enacted by Congress and signed by President Clinton in response to the unjust manner in which many cities and counties have utilized their land use and zoning powers to restrict the number of religious institutions within their jurisdictions. The remarkable success of RLUIPA in the legislative process can be attributed to the strong support it received from a broad coalition of religious and civil rights groups, including the American Civil Liberties Union, People for the American Way, the National Association of Evangelicals, and the Union of Orthodox Jewish Congregations of America.

RLUIPA prohibits any government agency or agent from adopting or imposing any land use regulation that 1) imposes a substantial burden on the religious practices of a person or group (42 U.S.C. §2000cc 2(a)(1)); 2) treats a religious assembly on less than

Kevin T. Snider
Page - 2 -
5/2/2007

Exhibit A
§o(3)(7)
Page 2

equal terms with a non-religious assembly (42 U.S.C. §2000cc 2(b)(1)); or 3) discriminates against an assembly or institution on the basis of religion or religious denomination (42 U.S.C. §2000cc 2(b)(2)). Exemption from these general prohibitions is extremely narrow. In order for a government land use policy to avoid violating RLUIPA, the government must not only be furthering a compelling state interest, the means for furthering that interest must be the least restrictive upon the rights of a religious person or institution.[1] 42 U.S.C. §2000cc 2(a)(1)(A)-(B). These statutory principles reflect the U.S. Supreme Court's conclusion, as originally outlined in *Sherbert v. Verner*, 374 U.S. 398 (1963), and reaffirmed in *Church of the Lukumi Babalu v. City of Hialeah*, 508 U.S. 520 (1993), that government-imposed burdens on religious exercise must be subjected to the strictest form of scrutiny, especially when those burdens are the direct result of individualized assessments such as CUP decisions. Indeed, recently, the Ninth Circuit affirmed that individualized assessments in which there is significant discretion in the application process falls squarely within RLUIPA. *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. Aug. 1, 2006).

FFWC desires to use the Catalina Street property for religious education, assembly and worship, among other uses beneficial to the entire community. Under RLUIPA, "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc 5(7)(B). As such, a denial of the application would result in an unlawful "substantial burden" upon the Church's fundamental right to the free exercise of religion. See, e.g. *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F.Supp.2d 1203, 1226 (C.D. Cal. 2002) ["[p]reventing a church from building a worship site fundamentally inhibits its ability to practice its religion."]; *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cir. 2005) ["The burden here was substantial. The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents); or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense."]

In the recent case of *Guru Nanak*, the court stated that "to prove a substantial burden under RLUIPA, a religious group need not 'show that there was no other parcel of land on which it could build its church.'" *Guru Nanak, Id.*, 989. In the present case, FFWC cannot find an alternative site. But even if it theoretically could find another building, in view of the *Guru Nanak* decision last August, that in itself does not suggest that it would not face a substantial burden if the application were denied.

Furthermore, land use rationales that the Catalina Street property should be saved for business or commercial uses will not survive scrutiny under RLUIPA. This is clear when the court stated: "RLUIPA does not contemplate that local governments can use

---

[1] Since the provisions of RLUIPA parallel the protections provided by the First Amendment and Equal Protection Clause of the Fourteenth Amendment, violation of RLUIPA necessarily entails violations of the United States Constitution.

Kevin T. Snider
Page - 3 -
5/2/2007

broad and discretionary land use rationales as leverage to select the precise parcel of land where a religious group can worship." *Guru Nanak, Id.*, 992.

In conjunction with the First Amendment, RLUIPA requires any government-imposed restriction on religious exercise to serve a compelling governmental interest that is of the highest order. *See Church of the Lukumi Babalu, supra*, at 546. Of the few governmental interests which have been deemed compelling, most are directed toward the prevention of grave and immediate dangers to the public's health, peace, and welfare. The facts in the present matter indicate no such grave and immediate dangers.

Finally, the assertion by City staff that the presence of a church in the assembly overlay district is inappropriate is inconsistent with federal law. It is significant that other assembly uses, including commercial entertainment and private recreation, are allowed by the City at the very location which staff claims is not appropriate for the assembly overlay zoning district. That position is specifically in violation of 42 U.S.C. §2000cc 2(a)(2) in that it treats a religious assembly use on less than equal terms with that of a non-religious assembly.

## CONCLUSION

The Pacific Justice Institute thanks you for your review and consideration of the discussion in this missive. We strongly urge the City to approve FFWC's conditional use permit for the Catalina Street property to avoid potentially costly legal action that would come at taxpayers' expense. Litigation could potentially include compensatory damages, including monthly $35,000 mortgage payments as well as attorneys' fees. Should City staff or the Planning Commission have any questions, please feel free to contact us at the address and phone number on this letterhead.

On behalf of the Pacific Justice Institute, thank you for your review of this matter and for your service to the community.

Very truly yours,

Kevin T. Snider
Chief Counsel
PACIFIC JUSTICE INSTITUTE

Kevin T. Snider
Page - 4 -
5/2/2007

Exhibit A
§o(3)(7)
Page 4