1  Jayne W, Williams, Esq. (SBN:63203)
   jwilliams@meyersnave.com
2  Deborah J. Fox, Esq. (SBN: 110929)
   dfox@meyersnave.com
3  Peter S. Hayes, Esq. (SBN: 184552)
   phayes@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California  94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Attorneys for Defendants

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11 | INTERNATIONAL CHURCH OF THE | Case No.  C 07-03605 PJH
   | FOURSQUARE GOSPEL |
12 | |
   |                  Plaintiff, | **DEFENDANTS' MEMORANDUM OF**
13 | | **POINTS AND AUTHORITIES IN**
   | | **OPPOSITION TO MOTION FOR**
14 | v. | **PRELIMINARY INJUNCTION**
15 | CITY OF SAN LEANDRO, TONY SANTOS |
   | (in his official capacity), SURLENE G. |
16 | GRANT (in her official capacity), DIANA M. | Date: September 5, 2007
   | SOUZA (in her official capacity), JOYCE R. | Time:  9:00 a.m.
17 | STAROSCIAK (in her official capacity), BILL | Crtrm: 3
   | STEPHENS (in his official capacity), JIM | Complaint Filed: 7/12/07
18 | PROLA (in his official capacity), JOHN | Hon. Phyllis J. Hamilton
   | JERMANIS (in his official and individual |
19 | capacities), DEBBIE POLLART (in her official |
   | and individual capacities), DOES 1-50. |
20 | |
21 | |
   |                  Defendants. |
22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

II.     FACTS .................................................................................................................................. 2

III.    STANDARD OF REVIEW .................................................................................................... 8

IV.     ARGUMENT ......................................................................................................................... 9

    A.   ICFG Is Unlikely To Prevail On Its RLUIPA Substantial Burden Claim ................................ 9

        1.   Denial of ICFG's Rezoning Does Not Impose A Substantial Burden, Because The City Made Alternative Locations Available ................................................................................. 9

        2.   Denial of ICFG's Rezoning Does Not Impose A Substantial Burden Because It Was The Least Restrictive Means Of Furthering A Compelling Government Interest ........................... 15

    B.   ICFG Is Unlikely To Prevail On Its RLUIPA Equal Terms Claim ........................................... 16

        1.   ICFG's Facial Equal Terms Argument Fails, As The City's IP Zone Regulations Treat All Similarly Situated Assembly Uses Identically .......................................................... 17

        2.   ICFG's As-Applied Equal Terms Argument Also Fails, Because ICFG Cannot Identify A Better-Treated, Similarly Situated Applicant For Rezoning ...................................... 19

    C.   The Preliminary Injunction Should Be Denied, As ICFG Fails To Establish Irreparable Injury .................................................................................................................... 20

    D.   The Preliminary Injunction Would Block The City From Protecting The Public Interest ....... 22

V.      CONCLUSION .................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Campbell Soup Co., Inc. v. ConAgra, Inc.,*
   977 F.2d 86 (3d. Cir. 1992)............................................................................................. 21

*Civil Liberties for Urban Believers v. City of Chicago,*
   342 F.3d 752 (7th Cir. 2003)................................................................................... 10, 17

*Congregation Kol Ami v. Abington Twp.*
   309 F.3d 120 (3d Cir. 2002).......................................................................................... 16

*Dahl v. HEM Pharmaceuticals Corp.,*
   7 F.3d 1399 (9th Cir. 1993).............................................................................................. 8

*Dept. of Parks & Rec. for State of Cal. v. Bazaar Del Mundo, Inc.,*
   448 F.3d 1118 (9th Cir. 2006)........................................................................................ 8

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.,*
   269 F.3d 1149 (10th Cir. 2001)...................................................................................... 9

*Freeman v. City of Santa Ana,*
   68 F.3d 1180 (9th Cir. 1995).......................................................................................... 17

*FTC v. World Wide Factors, Ltd.,*
   882 F.2d 344 (9th Cir. 1989).......................................................................................... 24

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
   326 F. Supp.2d 1140 (E.D. Cal., 2003), aff'd 456F.3d. 978 (9th Cir. 2006)............................ 16

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
   456 F.3d 978 (9th Cir. 2006)................................................................................... 10, 13

*Hale O Kaula Church v. Maui Planning Comm.,*
   229 F.Supp.2d 1056 (D. Hawaii 2002) .......................................................................... 16

*Konikov v. Orange County,*
   410 F.3d 1317 (11th Cir. 2005)...................................................................................... 15

*Konikov v. Orange County,*
   302 F.Supp.2d 1328 (M.D.Fla. 2004) ........................................................................... 15

*Lighthouse Institute for Evangelism, Inc. v. City of Long Branch,*
   406 F.Supp.2d 507 (D.N.J. 2005) ................................................................................. 17

*Los Angeles Memorial Coliseum Comm. v. National Football League,*
   634 F.2d 1197 (9th Cir. 1980)........................................................................................ 8

*Martin v. International Olympic Comm.,*
  740 F.2d 670 (9th Cir. 1984).................................................................................... 8

*Midrash Shephardi, Inc. v. Town of Surfside,*
  366 F.3d 1214 (11th Cir. 2004).........................................................................16-17

*Murphy v. Zoning Comm'n of the Town of New Milford,*
  289 F.Supp.2d 87 (D.Conn. 2003) ........................................................................ 15

*Nelson v. City of Selma,*
  881 F.2d 836 (9th Cir. 1989).................................................................................. 20

*P. v. Riles,*
  502 F.2d 963 (9th Cir. 1974)............................................................................. 8, 25

*Petra Presbyterian Church v. Village of Northbrook,*
  2003 WL 22048089 (N.D. Ill. 2003)................................................................. 18, 22

*Petra Presbyterian Church v. Village of Northbrook,*
  489 F.3d 846 (7th Cir. 2007)..........................................................11-12, 14-15

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. City of Boca Raton,*
  2006 WL 1493825 (11th Cir., June 1, 2006) ....................................................... 19

*Republic of the Philippines v. Marcos,*
  862 F.2d 1355 (9th Cir. 1988) *cert. denied,* 490 U.S. 1035 (1989).......................... 8

*San Jose Christian College v. City of Morgan Hill,*
  360 F.3d 1024 (9th Cir. 2004)..........................................................................Passim

*San Jose Christian College v. City of San Jose,*
  2001 WL 1862224 (N.D. Cal. 2001)...........................................................21-22, 24

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,*
  997 F.2d 484 (8th Cir. 1993).................................................................................. 9

*Simula, Inc. v. Autoliv, Inc.,*
  175 F.3d 716 (9th Cir. 1999).................................................................................. 20

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin,*
  396 F.3d 895 (7th Cir. 2005).................................................................................. 12

*Ventura County Christian High School v. City of San Buenaventura,*
  233 F.Supp.2d 1241 (C.D. Calif. 2003) ...................................................16, 19-20, 24

*Vietnamese Buddhism Study Temple In America v. City of Garden Grove,*
  460 F.Supp.2d 1165 (C.D. Cal. 2006)................................................................16, 18, 22-23

*Vision Church, United Methodist v. Village of Long Branch,*
   468 F.3d 975 (7th Cir. 2006)..................................................................................... 17

**CALIFORNIA CASES**

*Lockard v. City of Los Angeles,*
   33 Cal.2d 453 (1949)........................................................................................... 20

*Neighborhood Action Group v. County of Calaveras,*
   156 Cal.App.3d 1176 (1984).................................................................................. 5

*O'Loane v. O'Rourke,*
   231 Cal.App.2d 774 (1965).................................................................................... 4

*Tandy v. City of Oakland,*
   208 Cal.App.2d 609 (1962)................................................................................. 20

**OTHER STATE CASES**

*Greater Bible Way Temple of Jackson v. City of Jackson,*
   478 Mich. 373, 733 N.W.2d 734 (Mich. 2007)................................................. 14-16

*Timberline Baptist Church v. Washington County,*
   211 Or.App. 437, 154 P.3d 759 (Or.App. 2007)................................................. 14

**FEDERAL STATUTES**

42 U.S.C. §2000cc(a)(1) ........................................................................................ 9

42 U.S.C. §2000cc(a)(1)(A).................................................................................. 15

42 U.S.C. §2000cc(a)(1)(B).................................................................................. 15

42 U.S.C. §2000cc(a)(2) ...................................................................................... 14

42 U.S.C. §2000cc(b)(1) ...................................................................................... 16

**STATE STATUTES**

Cal. Pub. Res. Code section 21000, et. seq. .......................................................... 24

**OTHER AUTHORITIES**

146 Cong. Rec. S2774-01 at S2777 ....................................................................... 18

H.R. Rep. No. 1060219, 106th Cong., 1st Sess. 19 (1999)....................................... 18

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff International Church of the Foursquare Gospel, a.k.a. Faith Fellowship Church ("Plaintiff" or "ICFG"), approached the City of San Leandro in May 2006, seeking to relocate its existing religious mission from a facility in a residential neighborhood to a larger building in an industrial park district. The City, recognizing that religious organizations like ICFG increasingly seek to locate in commercial and industrial districts, responded by passing comprehensive legislation that made 196 parcels -- more than 200 acres -- of the City's commercial and industrial neighborhoods newly available to assemblies.

However, the City also decided that the *particular* property that ICFG had set its eyes upon was not suitable for rezoning for assembly use, largely due to its location in the City's prime industrial park. ICFG reacted to this disappointment by filing a lawsuit accusing the City, the members of the City Council, and two planning staffers ("Defendants" or "City") of violating its Federal First Amendment rights and the Religious Land Use and Institutionalized Persons Act, or RLUIPA.

ICFG now seeks a preliminary injunction to be allowed to use the Catalina Property for religious assembly during the pendency of this litigation. The motion should be denied because ICFG does not establish the necessary grounds for a preliminary injunction.

First, ICFG is not likely to succeed on its claims. ICFG fails to show that a substantial burden was placed on its religious exercise by the City's refusal to rezone its property, in view of the City's action to make a substantial number of alternative sites available for that use. Moreover, ICFG's claims under RLUIPA's equal terms provision are not likely to succeed, as the City's zoning ordinances treat assembly uses (religious and nonreligious) identically, and ICFG does not identify any similarly situated secular use that was treated more favorably.

Nor can ICFG show "irreparable injury" necessary for issuance of a preliminary injunction, since the hardships of which ICFG complains consist either of monetary carrying costs of property, or of operational difficulties (primarily due to allegedly inadequate parking) at ICFG's existing site that were not caused by the City's actions. On the other hand, the harm to the City from issuance of the injunction would be immense. The injunction would paralyze the City's ability to protect health and safety, by barring it from "preventing" assembly use at a property where such use has never been allowed and

1  which the City has never had an opportunity to inspect to ensure building adequacy or code compliance.

2  The injunction would also require the City to perform the impossible task of "processing" a permit

3  application that ICFG has steadfastly failed to complete. The effects of such an injunction could include

4  injuries to human health and the environment, and could potentially render the Property permanently

5  unsuited to the industrial park use for which it has been lawfully zoned.

6       ICFG's requested injunction, far from preserving the status quo pending resolution of this matter,

7  would instead completely alter existing conditions and hand ICFG essentially all relief it could hope to

8  obtain after a trial on the merits. In view of ICFG's weakness on the merits, and the likelihood of

9  substantial and potentially irreversible harm to the City and the public, this Court should deny the

10  motion in its entirety.

11  **II.    FACTS**

12       ICFG operates a church in the City whose congregation, since the church opened in the early

13  1990s, has grown exponentially, requiring the addition of multiple Sunday services. Declaration of

14  Gary Mortara In Support of Plaintiff's Motion ("Mortara Decl."), ¶ 3. Its existing facilities have also

15  grown, with the City approving permits to enlarge the original sanctuary and to construct an additional

16  sanctuary/office building next door. *Id.*; Declaration of Hanson Hom In Support of Defendants'

17  Opposition to Motion for Preliminary Injunction ("Hom Decl."), ¶ 3. In early 2006, ICFG decided it had

18  outgrown its existing church, and identified a new site to which it hoped to relocate.

19       ICFG's desired new site consists of two parcels, comprising approximately 3.5 acres, at 14600

20  and 14850 Catalina Street (the "Catalina Property"), in the City of San Leandro. Complaint at ¶ 21. The

21  Catalina Property is developed with an approximately 46,000 square-foot, single story office building,

22  formerly occupied by a software company. The building's interior consists of largely of open floor area

23  divided into low-height cubicles, with conference rooms arranged around the perimeter, and office

24  support rooms (closets, computer rooms, copy rooms, a lunch room without stoves or burners, a

25  reception area, and bathroom stalls) in the center. The building contains no auditorium.[1] Declaration of

26  William Shock In Support of Defendants' Opposition to Motion for Preliminary Injunction ("Schock

27

28  [1] The City has inspected the Property in connection with the processing of any use or building permit submitted by ICFG. The City's knowledge of the Property and improvements is therefore derived primarily from past permitting records for the Property. Schock Dec., ¶¶ 5,6,7; Pollart Dec., ¶ 17.]

Dec."), ¶¶ 5-6; Declaration of Debbie Pollart In Support of Defendants' Opposition to Motion for Preliminary Injunction ("Pollart Dec."), Ex. H-3.

The Catalina Property is located in the City's "Industrial Park" (IP) zoning district, immediately adjacent to a plastic-parts manufacturer, and is surrounded by numerous other industrial and light industrial uses. Declaration of Marian Handa In Support of Defendants' Opposition to Motion for Preliminary Injunction ("Handa Dec."), Ex. B-11; Pollart Dec., ¶ 4. The Catalina Property also lies in the "West San Leandro Focus Area," set aside in the City's General Plan to preserve an environment for industrial and technological activity. Hom Dec., ¶ 5.

At the time ICFG identified the Catalina Property, the City's zoning ordinance did not allow assembly uses – including churches, clubs or lodges – to locate in the IP district or other industrial or commercial districts of the City, but allowed them to locate in residential districts after obtaining a Conditional Use Permit (CUP). Pollart Dec., ¶ 4, Ex. C. On May 3, 2006, ICFG representatives met with City Planning Department staff to express their desire to relocate to the Catalina Property. Pollart Dec., ¶¶ 4,5. Staff advised ICFG that the City Council, in keeping with policies in the City's General Plan, preferred to maintain existing industrial districts, and was typically reluctant to convert industrial land to non-industrial use. Hom Dec., ¶ 7. When ICFG nevertheless indicated an interest in pursuing relocation, staff advised that ICFG would need to request the City Council to amend the zoning ordinance to allow its proposed use at the new site.

More precisely, staff advised ICFG that two changes to the zoning ordinance would be needed: (1) an amendment of the zoning map to designate the Catalina Property as "Industrial Limited" (IL), and (2) an amendment of the zoning code to make assembly uses allowable in the IL district. Pollart Dec., ¶ 5; Hom Dec., ¶ 8.][2] On May 19, 2006, ICFG submitted such an application for rezoning. Pollart Dec., Ex. A. No site plan was submitted as part of this rezoning application.

___

[2] Staff advised ICFG to apply for a rezone from IP to IL because, from a staff perspective, the IL zoning district was more amenable to assembly use than the IP zoning district. Pollart Dec., ¶ 5; Hom Dec., ¶ 8. The IP zoning designation is meant to serve commerce, high technology, production and assembly, retail and related uses. Pollart Dec., ¶ 5; Hom Dec., ¶ 8; Request for Judicial Notice ("RJN") Ex. A. The purpose of the IL district is to provide areas of low-to moderate-intensity industrial uses which are capable of being located adjacent to residential areas and serve as a buffer between residential areas and light industry. *Id.*

1    According to its Complaint, approximately five days later on May 24, ICFG entered into a

2    purchase and sale agreement for the Catalina Property and paid a non-refundable fee.  Complaint, ¶ 23.

3    ICFG's rezoning application raised a broader policy issue for the City: Namely, determining

4    which non-residential areas were appropriate for an expansion of assembly use.  Pollart Dec., ¶ 7; Hom

5    Dec., ¶ 9.  Because the proposed rezoning would allow assembly use in all IL properties throughout the

6    City, staff informed ICFG that the request needed careful analysis by staff and consideration at public

7    hearings by numerous civic advisory bodies, the Planning Commission, and ultimately the City Council,

8    to ensure that any such change in policy was consistent with the General Plan.[3]  Pollart Dec., ¶ 7 and Ex.

9    B; Hom Dec., ¶ 9.

10    By October 2006, staff had developed two legislative options by which the City could expand

11    accommodation of assembly uses in non-residential districts.  Option 1 would allow assembly use on all

12    parcels within the IL district, which would increase the area in which assemblies were allowable by

13    about 90 acres.  Pollart Dec., Ex. B.  Option 2 would create a new "Assembly Use Overlay District,"

14    which, when applied to any non-residential property, would make assemblies an allowable use *in*

15    *addition* to those allowed under the pre-existing zoning.  Option 2 would also apply the Assembly Use

16    Overlay designation to certain non-residential properties identified by staff as suitable for assembly use,

17    according criteria staff had derived from the City's General Plan.  *Id.*; see also Pollart Dec., ¶ 9.  Option

18    2 would increase the area in which assemblies are allowable by over 200 acres.  Pollart Dec., ¶ 10.

19    At an October 19 public "Joint Work Session" of the Planning Commission and the Board of

20    Zoning Adjustments, City Planning Manager Debbie Pollart explained that the two options were

21    designed to lay the groundwork for accommodating religious and secular assembly uses in non-

22    residential areas throughout the City, although neither option would immediately affect the Catalina

23    Property.  It was explained that if Option 1 were approved, ICFG would need to obtain rezoning of the

24    Property to IL; whereas if Option 2 were approved, ICFG would need to obtain rezoning of the Property

25    to "Assembly Use Overlay."  Pollart Dec., Ex. E, p. 10.  A representative of ICFG urged the City to act

26

27    [3] In California, the General Plan is atop the hierarchy of local government law regulating land use, and
has been analogized to a "constitution for all future developments."  *O'Loane v. O'Rourke*, 231

28    Cal.App.2d 774, 782 (1965).  Zoning laws are subordinate, and must conform, to the General Plan.
*Neighborhood Action Group v. County of Calaveras*, 156 Cal.App.3d 1176, 1183 (1984).

1   quickly, pleading that the Catalina Property had been "in escrow" since February (*sic*), and that ICFG
2   was obliged to complete its purchase by October 31, 2006. *Id.*, p. 11. In response, Pollart explained that
3   under either option, ICFG's use of the Catalina Property could not feasibly be made allowable by
4   October 31. Pollart Dec., Ex. E, p. 12. After the close of the public hearing, the City decision-makers
5   expressed preference for Option 2. *Id.*

6       Additional hearings on the options for accommodating assembly use in non-residential zones
7   were held during the winter of 2006-2007. According to its Complaint, ICFG closed escrow on the
8   Catalina Property on December 29, 2006. Complaint, ¶ 43.

9       On February 22, 2007, staff presented the Planning Commission with proposed amendments to
10  the zoning ordinance that would (1) replace all discrete references to "religious assembly" and "clubs
11  and lodges" with a consolidated, religiously neutral category of "assembly use," and (2) create the new
12  Assembly Use Overlay District. Pollart Dec., Ex. F, p. 2. Staff further explained that it had identified
13  nearly 200 properties as suitable for Assembly Use Overlay designation. Staff explained that it had
14  identified those properties using eight criteria, which staff had developed by consulting applicable
15  General Plan policies.[4] The criteria included:

16      • "Site is not located along a major commercial corridor";

17      • "Site is not located within the following General Plan Focus Areas: Downtown, Bayfair,
18        Marina Blvd/SOMAR, or West San Leandro";

19      • "Site is not located in a regional-serving retail area";

20      • "Site is not located inside the ½-mile study area identified for the Downtown Transit-
21        Oriented Development (TOD) Strategy";

22      • "Site abuts or is within ¼ mile of an arterial street (as identified in the Circulation
23        Element of the General Plan)";

24

25  [4] Among the General Plan policies staff cited as informing the criteria for Assembly Use Overlay
26  designation were "General Plan Policy 10.4, Industrial Sanctuary – Protect the City's major industrial
    areas from encroachment by uses that are potentially incompatible with existing viable industrial
27  activities, or which may inhibit the ability of industry to operate effectively"; and "General Plan Policy
    33.04, Separation of Sensitive Uses – Provide adequate and safe separation between areas where
28  hazardous materials are present and sensitive uses such as schools, residences and public facilities."
    RJN, Ex. A, p. 3.

- "Site is not considered public land, and is not zoned Public Service (PS), Open Space (OS), or Commercial Recreation (CR); property is not owned by an Exempt Public Agency, or leased/owned by a public utility";

- "Overlay Area must allow a contiguous area greater than or equal to two acres."[5]

*Id.*, pp. 4-5.

During the Planning Commission's public hearing, a representative of ICFG complained that it was paying mortgage payments of $35,000 per month without being able to occupy the Catalina Property, in response to which a citizen speaker opined that ICFG might have made its purchase contingent on obtaining a rezone of the Catalina Property. Pollart Dec., Ex. G, p. 8. Planning Manager Pollart stated that the proposed amendments would not immediately make religious assembly use allowable at the Catalina Property, as staff had not identified it as suitable for Assembly Use Overlay designation. However, Pollart further explained that, if the City Council enacted the proposed amendments, ICFG's application to rezone the Catalina Property would be modified by staff to request that it be added to the Assembly Use Overlay District. *Id.*, p. 9. After the close of the public hearing, the Planning Commission unanimously recommended City Council approval of the proposed amendments. *Id.*, p. 10.

At its public meeting of March 19, 2007, the City Council acted upon the Planning Commission's recommendation, passing an ordinance that consolidated and equalized treatment of secular and religious assembly uses, and established a new Assembly Use Overlay District. RJN, Ex. B. The Council further applied the new Assembly Use Overlay designation to the 196 properties (totaling over 200 acres) that staff had identified as suitable. RJN, Ex. B.

ICFG's rezoning application was modified to request that the Overlay designation be applied to the Catalina Property. Pollart Dec., Ex. H. In addition, ICFG separately submitted an application for a CUP to operate "entertainment activities same-church-use" at the Catalina Property under its existing IP zoning. Pollart Dec., Ex. H. A site plan was submitted with the CUP application. Pollart Dec., Ex. J.

---

[5] This criterion was added specifically to ensure that large assembly uses (like ICFG) would be provided adequate opportunity to locate on properties in the Overlay district; nevertheless, staff recommended that future applications for Overlay designation be considered even for properties smaller than two acres, so as to also provide for relatively small churches and other assemblies. Pollart Dec., Ex. F. p. 5.

In a letter dated April 25, 2007, Pollart informed ICFG that its application was incomplete, in that the City required additional detailed information about building occupancy levels, parking lot design, lighting, HVAC infrastructure, and hours of operation for the proposed use, in order for the City to process the CUP application. Pollart Dec., Ex. I.  ICFG did not respond to this "incomplete" letter, or submit any of the requested information, and its CUP application was not further processed.  Pollart Dec., ¶ 20.

ICFG's application to rezone the Catalina Property to Assembly Use Overlay was considered at the Planning Commission's meeting of April 12, 2007. Pollart explained that the eight criteria for overlay designation had been developed to ensure consistency with General Plan policies. Pollart Dec., Ex. K, pp. 4,10-11 and Ex. L, pp. 1, 2. Staff recommended denial of the rezoning application, based on its determination that the Catalina Property failed to meet two of the eight criteria: namely, that the Catalina Property is located in the West San Leandro General Plan Focus Area, and is located more than ¼ mile from an arterial street identified in the General Plan. Pollart Dec., Ex. K, p. 1. Staff additionally advised against the rezoning based on evidence that hazardous materials were present at eight businesses located within 500 feet of the Catalina Property, and at 13 additional businesses located within a quarter mile. *Id.,* pp. 5-6.

Although one Commissioner spoke in favor of the rezoning, the other Commissioners expressed reservations, including concerns that the rezoning would be "spot zoning," "putting a non-conforming use in the middle of a specifically designated area," and "piecemeal or shot-in-the-dark approach to planning," inconsistent with the considerable time and effort the City had put into creation of the Assembly Use Overlay District. Pollart Dec., Ex. L pp. 20-21. The Commission voted 4-1 to deny the rezoning. *Id.* ICFG appealed the Commission's denial of its rezoning request to the City Council. Following a public hearing at which representatives of ICFG spoke, the Council unanimously denied ICFG's appeal.  Handa Dec., Ex. B, pp. 12-13.

Following denial of the appeal, the City immediately offered assistance to ICFG to locate an alternative site within the City's Assembly Use Overlay district, and ICFG offered to work with the City toward that end in the context of settlement negotiations. Declaration of Peter S. Hayes In Support of Defendants' Opposition to Motion for Preliminary Injunction ("Hayes Dec."), Ex. A; and Letter from

1  Peter MacDonald to John Jermanis, dated May 15, 2007, attached as Ex. A§o(6) to Motion.  Although

2  settlement talks continue to the present day, ICFG filed this lawsuit on July 12, 2007.

3  **III.    STANDARD OF REVIEW**

4  　　　"To obtain injunctive relief, the movant must demonstrate either: (1) a combination of probable

5  success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised as to

6  the merits and that the balance of hardships tips in its favor." *Dept. of Parks & Rec. for State of Cal. v.*

7  *Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006).

8  　　　The basic purpose of preliminary injunctions is to *preserve* the status quo pending a

9  determination of the action on the merits. *Los Angeles Memorial Coliseum Comm. v. National Football*

10  *League,* 634 F.2d 1197, 1200 (9th Cir. 1980).  The Ninth Circuit has strongly cautioned preliminary

11  injunctions that would alter the status quo, especially at the outset of litigation:

12  　　　It is so well settled as not to require citation of authority that the usual function of a preliminary
　　　injunction is to preserve the status quo ante litem pending a determination of the action on the

13  　　　merits. The hearing is not to be transformed into a trial of the merits of the action upon affidavits,
　　　and it is not usually proper to grant the moving party the full relief to which he might be entitled

14  　　　if successful at the conclusion of a trial. This is particularly true where the relief afforded, rather

15  　　　than preserving the status quo, completely changes it. [6]

16  *P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974).

17

18  　　　In addition, mandatory (as opposed to prohibitory) injunctions are disfavored, and are "subject to

19  heightened scrutiny and should not be issued unless the facts and law *clearly* favor the moving party."

20  *Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (emphasis added); see also

21  *Martin v. International Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) (holding that where a party

22  seeks mandatory preliminary relief that goes well beyond maintaining the status quo, "courts should be

23  extremely cautious about issuing a preliminary injunction.")

24  　　　Finally, preliminary injunctions that would provide substantially all the relief the moving party

25  ──────────────
[6] The "alternative" test for issuance of an injunction – under which the moving party may raise "serious

26  questions" as to the merits of its claims if the balance of hardships tips sharply in its favor, may be
inadequate grounds for an injunction that would alter the status quo. The Ninth Circuit has defined

27  "serious questions" as "questions which cannot be resolved one way or the other at the hearing on the
injunction and *as to which the court perceives a need to preserve the status quo lest one side prevent*

28  *resolution of the questions . . . by altering the status quo.*" *Republic of the Philippines v. Marcos*, 862
F.2d 1355, 1362, (9th Cir. 1988) *cert. denied*, 490 U.S. 1035 (1989) (emphasis added).

1   would obtain after trial on the merits are disfavored, and the burden on the moving party is consequently

2   heavy.  *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.

3   1993).  The burden on the moving party is particularly heavy where an effect of the injunction cannot be

4   undone.  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir.

5   2001).

6          ICFG's injunction is worded to appear prohibitory (i.e., in asking the Court to enjoin the City

7   from "preventing" assembly use at the Property, and from "further delaying" the processing of its CUP

8   application).  Nevertheless, it is obvious that ICFG seeks a mandatory injunction that would drastically

9   upset the status quo and would afford ICFG nearly all the relief that it could obtain after trial.  The

10  injunction would effectively require the City to allow a use at the Property that is not currently allowed

11  there, and to process a permit application that was not only returned to ICFG as incomplete, but also

12  requests a CUP that is not available under the City's existing laws.  Thus, ICFG's requested injunction

13  falls into all the "disfavored" categories outlined above.

14  **IV.    ARGUMENT**

15        **A.    ICFG Is Unlikely To Prevail On Its RLUIPA Substantial Burden Claim**

16              **1.    Denial of ICFG's Rezoning Does Not Impose A Substantial Burden, Because
17                      The City Made Alternative Locations Available**

18        RLUIPA's "substantial burden" provision provides that "[n]o government shall impose or

19  implement a land use regulation in a manner that imposes a substantial burden on the religious exercise

20  of a person, including a religious assembly or institution, unless the government demonstrates that

21  imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling

22  governmental interest; and (B) is the least restrictive means of furthering the compelling governmental

23  interest."  42 U.S.C. §2000cc(a)(1).

24        The Ninth Circuit has ruled that "for a land use regulation to impose a 'substantial burden,' it

25  must be 'oppressive' to a 'significantly great' extent.  That is, a 'substantial burden' on 'religious

26  exercise' must impose a significantly great restriction or onus upon such exercise." *San Jose Christian

27  College v. City of Morgan Hill*, 360 F.3d 1024, 1034-1035 (9th Cir. 2004).  A substantial burden must

28

1  place "more than an inconvenience" on religious exercise. *Guru Nanak Sikh Society of Yuba City v.*
2  *County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006).

3       ICFG asserts that the City's actions have placed a "substantial burden" on its religious exercise,
4  largely by attributing to the City's actions every hardship ICFG claims to suffer because of cramped
5  conditions and inadequate parking at its existing site. This argument fails, in view of case law firmly
6  establishing that, when a religious assembly buys property and seeks to operate in a district not zoned
7  for that use, a city does not impose a substantial burden by denying the rezoning request, unless the
8  religious assembly can prove no alternative sites exist. Because the City has recently made nearly 200
9  non-residential sites available for assembly use, in addition to the residential sites already available
10 under the zoning ordinance, ICFG is unlikely to succeed on this claim.

11      For example, in *San Jose Christian College*, the city denied a rezoning application submitted by
12 a religious college that sought to relocate from its existing facility. The property to which the college
13 sought to relocate was zoned for hospital use under Planned Unit Development ("PUD") zoning. The
14 city found the rezoning application to be incomplete and requested submittal of a new application. The
15 college instead presented a "scaled back" version of its original application. The city denied the
16 rezoning application because the college had failed to comply with the city's application requirements.
17 The college filed suit, alleging that the city's zoning process violated the First Amendment and
18 RLUIPA. The District Court granted summary judgment in favor of the city, and the Ninth Circuit
19 affirmed.

20      The Court rejected the plaintiff's characterization of "its inability to use its own property 'to
21 carry on its mission of Christian education and transmitting its religious beliefs'" as a substantial burden.
22 *San Jose Christian College, supra,* 360 F.3d at 1035:

23           [T]he City's regulations in this case do not render religious exercise effectively impracticable.
24           As noted above, while the PUD ordinance may have rendered College unable to provide
             education and/or worship *at the Property* [i.e., at the particular site that the college had applied to
25           re-zone], there is no evidence in the record demonstrating that College was precluded from using
             other sites within the city.
26

27 *Id.* at 1035 (emphasis added).

28      In reaching this decision, the Ninth Circuit relied on a decision by the Seventh Circuit, *Civil*

*Liberties for Urban Believers v. City of Chicago("CLUB")*, 342 F.3d 752 (7th Cir. 2003), *cert. denied*, ___ US ___, 124 S.Ct. 2816 (2004). In *CLUB*, the Seventh Circuit upheld summary judgment for the city and rejected the RLUIPA and constitutional free exercise claims of five churches, each of which had applied for and were denied "special use" permits. As described by the Ninth Circuit, the plaintiffs' RLUIPA claim in *CLUB* failed because:

> . . . "the costs, procedural requirements, and inherent political aspects" of the permit approval process were "incidental to any high-density urban land use" and thus "[did] not amount to a substantial burden on religious exercise." [citation omitted]. "While they may contribute to the ordinary difficulties associated with location (by any person, or entity, religious or nonreligious) in a large city, they do not render impracticable the use of real property in Chicago for religious exercise, much less discourage churches from locating or attempting to locate in Chicago." [citation omitted].

*San Jose Christian College, supra,* 360 F.3d at 1035, citing *CLUB*.

Similarly, the Seventh Circuit also held that denial of a rezoning did not impose a substantial burden. In *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846 (7th Cir. 2007) a church identified a property containing a warehouse and office building that it wanted to convert to a church and classrooms. However, the property was located in an industrial zone, in which churches were not permitted (although secular "membership organizations" were permitted). The church applied to have the property rezoned to "institutional buildings," which would have allowed the church to apply for a special permit (akin to a Conditional Use Permit) to conduct its religious assembly operations. After receiving an initially favorable response from the village board of trustees, the church signed a contract to buy the property, contingent on a rezoning to allow church use. At a later hearing, after staff advised against the rezoning, the church pulled its application, and proceeded to buy the property. Sometime thereafter, the church filed a RLUIPA suit. Later, the village board revised its ordinance to bar all "membership organizations" (both religious and nonreligious) from the industrial zone. *Id.,* 489 F.3d at 847-848.

In upholding summary judgment for the village, the Court first observed that an ordinance that does not allow any religious assembly use in a particular zoning district cannot "in itself" impose a substantial burden, "because then every zoning ordinance that didn't permit churches everywhere would be a prima facie violation of RLUIPA." *Id.,* at 851.

1    The Court further held that the city's refusal to rezone property to allow religious assembly use

2    in an industrial district where such use had not previously been allowed did not impose a substantial

3    burden:

4        But Petra had no reasonable expectation of obtaining a permit. Having decided to go ahead and

5        purchase the property outright after it knew the permit would be denied, Petra assumed the risk

6        of having to sell the property and find an alternative site for its church should the denial be
         upheld . . . .

7    *Id.*

8    Similar facts are present here. When ICFG first identified the Catalina Property, it was not

9    zoned to allow assembly use, and staff informed ICFG that a rezoning of that site to accommodate such

10   use was unlikely. ICFG proceeded to enter into a contract for the Catalina Property without making

11   purchase contingent on rezoning. ICFG later closed escrow although it knew that Catalina Property did

12   not meet the criteria the City had developed for identifying sites for extension of assembly use into non-

13   residential districts. Therefore, like the church in *Petra Presbyterian,* ICFG cannot show that denial of

14   its rezoning request imposed a substantial burden on its religious exercise, because it never had a

15   reasonable expectation of receiving that approval.[7]

16   The Court in *Petra Presbyterian* did indicate one circumstance in which a church, denied a

17   rezoning it had no reasonable expectation of obtaining, could nevertheless establish a substantial burden:

18   The church would have to show "that a paucity of other land available for churches made the exclusion

19   from the industrial zone a substantial burden to it." *Id.*, citing *San Jose Christian College, supra,* 360

20   F.3d at 1034-1035. This ICFG attempts to do by asserting that the mere fact that the City considered

21   evidence of proximity of hazardous materials users in denying the rezoning of the Catalina Property is

22   proof positive that the City would never approve a CUP for assembly use at any alternative site within

23

24

25   ───────────────────────
     [7] The Court in *Petra Presbyterian* distinguished an earlier opinion, in which denial of rezoning was

26   found to have imposed a substantial burden, as that denial had been based on legal error (i.e., a mistaken
     opinion that rezoning would not be binding on future users of the property). *Id.*, citing *Sts. Constantine*

27   *and Helen Greek Orthodox Church, Inc. v. City of New Berlin,* 396 F.3d 895, 898-900 (7th Cir. 2005).
     That circumstance does not apply here, for ICFG does not allege that the evidence of numerous

28   hazardous materials users within 500 feet and ¼ mile of the Property was legal *error,* or that the
     hazardous materials users identified by the City in the vicinity of the Property do not exist.

the Assembly Use Overlay district. In other words, ICFG argues for a preliminary injunction on the grounds that it can prove that the City's creation of an Assembly Use Overlay district – far from significantly expanding opportunities for religious exercise in San Leandro -- was only an elaborate ruse, designed to leave ICFG without any truly available alternative sites.

ICFG fails to justify that leap of faith. As a preliminary matter, ICFG misstates the evidence considered by the City in denying the rezoning of the Catalina Property. ICFG repeatedly identifies the allegedly illegitimate "criterion" employed by the City as "the presence of businesses with Hazardous Materials Business Plans (HMBPs) within ¼ mile." Plaintiff's Motion at p. 8, 10, 19. This characterization pointedly ignores the fact that the City also identified eight businesses with HMBPs *within 500 feet of the Property*. Pollart Dec., Ex. K. Therefore, having failed to establish (or even address) whether the 196 parcels in the Overlay district are likewise located within 500 feet of as many HMBPs, ICFG fails to show that denial of its rezoning request foreshadowed the doom of a CUP application at any of the alternative locations.

Additionally, ICFG's argument overlooks the fact that the Catalina Property was also found not to comply with two of the eight criteria staff derived from the General Plan to identify sites suitable for Overlay designation (i.e., that it is located in the West San Leandro General Plan Focus Area, and that it is located more than ¼ mile from an arterial street identified in the General Plan). In fact, it was these shortcomings, related to General Plan consistency and orderly planning, that City decision-makers stressed in explaining their decision to deny ICFG's rezoning request. Pollart Dec., Ex. L, pp. 20-21. Since the City has already determined, in its application of the Overlay designation to 196 properties, that those properties meet *all* the criteria for assembly use that the Catalina Property does not, ICFG's argument that denial of its rezoning request dooms any CUP application for an alternative site is speculative, at best.[8]

---

[8] The Ninth Circuit has held that the grounds for CUP denial can indicate a substantial burden, where a complete history of *repeated* permit denials shows conclusively that the religious applicant is unlikely to receive permit anywhere within the jurisdiction. *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 990-992 (9th Cir. 2006). The court in that case observed that the temple had been denied *two* use permits, for *mutually contradictory* reasons – the first, in a residential zone, was denied as too disruptive to neighbors; the second, in an agricultural zone, was denied as "leapfrogging" development. *Id.* at 990. ICFG, by contrast, asks the Court to find futile its hopes of permit approval at any other site *without its having ever applied* for a CUP in an area zoned for assembly use.

1    And finally, ICFG's argument overlooks the greater flexibility the City possesses in considering

2   a CUP application, compared to a rezoning application. A CUP, by its very nature, allows for the

3   placement of conditions of approval to protect the public health and safety. RJN, Ex. 5. The flexibility

4   afforded by conditions of approval allows the City to require that a project include safeguards against

5   exposure to environmental hazards. A rezoning, by contrast, cannot be so conditioned, and so does not

6   allow the City such flexibility. See *Greater Bible Way Temple of Jackson v. City of Jackson*, 478 Mich.

7   373, 733 N.W.2d 734, 753 (Mich. 2007) (observing that a rezoning decision presents an absolute choice

8   between complete approval or complete denial.)[9] Thus, even if an alternative site in the Assembly Use

9   Overlay district were found to be located near an HMBP, it would be possible for the City to approve a

10   CUP for that site, conditioned on measures to mitigate the potential health hazards.

11    In sum, ICFG is unlikely to prevail on its claim that the City imposed a substantial burden by

12   declining to rezone the Catalina Property, as it does not establish that it can find no alternative site

13   among the nearly 200 properties the City has newly made available for assembly use. See *Petra*

14   *Presbyterian, supra,* 360 F.3d at 1034-1035; see also *Timberline Baptist Church v. Washington County*,

15   211 Or.App. 437, 154 P.3d 759 (Or.App. 2007), (finding no substantial burden where permit to operate

16   religious school was denied on property not zoned to allow that use, where school did not show it had

17   adequately investigated alternative sites where that use was allowed).

18

19

---

20   [9] The relative inflexibility of rezoning, compared to conditional permitting, led the Michigan Supreme
     Court to conclude that RLUIPA does not even apply to rezoning decisions like the one at issue here.
21   *Greater Bible Way Temple of Jackson v. City of Jackson*, 478 Mich. 373, 733 N.W.2d 734, 742-744
     (Mich. 2007). The Court noted that, unless a challenged land use decision is imposed in a federally
22   subsidized program, or affects commerce with foreign states (which ICFG does not allege with regard to
     the instant rezoning decision), RLUIPA's jurisdiction is limited to governmental actions that involve
23   "individualized assessments" of a proposed use. See 42 U.S.C. §2000cc(a)(2). Since rezoning is a
     legislative act that affects land throughout a city, and not just on one parcel, and is not normally based
24   on consideration of a particular project, it is not an "individualized assessment" that can give rise to a
     claim under RLUIPA. *Greater Bible Way Temple of Jackson, supra,* 733 N.W.2d at 742-744. The
25   Court observed that this holding is not at odds with Ninth Circuit precedent, as *San Jose Christian
     College* did not address whether the rezoning in that case was an individualized assessment; further, the
26   rezoning in that case was for an individualized "PUD" rezoning that, under the local ordinance, required
27   consideration of a detailed site plan. *Id.* at 748, fn. 20; see *San Jose Christian College, supra,* 360 F.3d
     at 10287-1027. By contrast, no site plan for ICFG's project was considered by the City in processing
28   the rezoning application.

2.    **Denial of ICFG's Rezoning Does Not Impose A Substantial Burden Because It Was The Least Restrictive Means Of Furthering A Compelling Government Interest**

Even if ICFG could show that the City's denial of its rezoning request imposed a substantial burden on its religious exercise, it could not establish a RLUIPA violation, as the City's actions were in furtherance of a compelling governmental interest, and were the least restrictive means of furthering that interest. See 42 U.S.C. §2000cc(a)(1)(A) and (B).

Courts have long recognized that a local government's interest in enforcing its zoning and planning regulations is compelling. In *Konikov v. Orange County*, 302 F.Supp.2d 1328 (M.D.Fla. 2004), reversed in part on other grounds in *Konikov v. Orange County*, 410 F.3d 1317 (11th Cir. 2005), the Court reviewed whether a county's action to prevent a rabbi from using property in a residential neighborhood for religious services violated RLUIPA. The Court held the county "satisfied its burden on the compelling interest and least restrictive means prongs of strict scrutiny," stating "[a] government's interest in zoning is indeed compelling." *Id.* at 1343, see also 1345 (same result under RLUIPA); see also *Murphy v. Zoning Comm'n of the Town of New Milford*, 289 F.Supp.2d 87, 108-109 (D.Conn. 2003) (finding compelling interest in enforcing town's zoning regulations and ensuring safety of residential neighborhoods); *Greater Bible Way Temple, supra*, 733 N.W.2d at 751-752, and cases cited therein. Moreover, the interest of the City in enforcing its land use ordinances may be particularly acute where a church applies to rezone property in an industrial zone for assembly use:

> The industrial zone contains factories and warehouses that generate substantial truck traffic. It has toxic wastes, too . . . . The traffic and its associated noise are a source of inconvenience, annoyance, and even danger . . . to patrons of membership organizations, including any churchgoers. The industrial users of the zone objected to the grant of a permit to Petra because they are worried about possible tort liability, and also that restrictions on their own activities might be imposed in order to protect pedestrians.

*Petra Presbyterian, supra*, 489 F.3d 846, 852.

Additionally, because of the "up or down" nature of ICFG's rezoning request, outright denial was the least restrictive means of furthering the City's compelling interest. In another case holding that denial of a rezoning imposed no substantial burden, the Court observed:

> In the instant case, plaintiff asked the city to rezone the property from single-family residential to multiple-family residential. In response, the city could have done one of two things – it could have granted or it could have denied the plaintiff's request to rezone the property. The city

decided to maintain the single-family residential zoning. There do not appear to be any less restrictive means of maintaining the single-family residential zoning.

*Greater Bible Way Temple, supra,* 734 N.W. at 753.

For all the above described reasons, ICFG is highly unlikely to prevail on its RLUIPA substantial burden claim.

## B.    ICFG Is Unlikely To Prevail On Its RLUIPA Equal Terms Claim

ICFG also seeks an injunction based on its claim that the City violated RLUIPA's "equal terms" provision, which requires that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. §2000cc(b)(1).

Courts have construed section (b) of RLUIPA as a codification of "existing Supreme Court decisions under the Free Exercise and Establishment Clauses of the First Amendment as well as under the Equal Protection Clause of the Fourteenth Amendment." *Ventura County Christian High School v. City of San Buenaventura,* 233 F.Supp.2d 1241, 1246 (C.D. Cal. 2003); see also *Midrash Shephardi, Inc. v. Town of Surfside,* 366 F.3d 1214, 1231-1232 (11th Cir. 2004); *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F. Supp.2d 1140, 1155 (E.D. Cal., 2003), aff'd 456F 3d. 978 (9th Cir. 2006). Therefore, "in evaluating plaintiffs' claims under either [the equal terms provision of] RLUIPA or the Equal Protection Clause of the Fourteenth Amendment, the Court must first inquire as to whether defendants have treated plaintiffs in an unequal manner to *similarly situated* entities." *Ventura County, supra,* 233 F.Supp.2d at 1247 (emphasis added); see also *Vietnamese Buddhism Study Temple In America v. City of Garden Grove,* 460 F.Supp.2d 1165, 1173-1174 (C.D. Cal. 2006); *Guru Nanak, supra,* 326 F.Supp.2d at 1155; *Hale O Kaula Church v. Maui Planning Comm.,* 229 F.Supp.2d 1056, 1070-1071 (D. Hawaii 2002).

The scope of properly comparable "similarly situated" uses is exceedingly narrow in cases involving land use, in light of the broad latitude that federal courts have given local communities to determine their own zoning plans: "Placing the burden on the complaining party first to establish that it is similarly situated with other, permitted uses preserves the clearly established local authority in the land use context." *Congregation Kol Ami v. Abington Twp.* 309 F.3d 120, 139 (3d Cir. 2002). Land uses are therefore considered "similarly situated" only if they are essentially *identical* in all regards save

1  the characteristic which is purported to be the basis for unequal treatment. *Freeman v. City of Santa Ana,*

2  68 F.3d 1180, 1187 (9th Cir. 1995) (denying plaintiff's comparison to all "non-Mexican immigrant

3  bars," and finding plaintiff "similarly situated" only to bars in same liquor-license class).

**1.      ICFG's Facial Equal Terms Argument Fails, As The City's IP Zone
         Regulations Treat All Similarly Situated Assembly Uses Identically**

ICFG is unlikely to succeed on the merits of its *facial* equal terms claim – in which it complains

that the City's zoning regulations allow "entertainment activities" and "commercial recreation," but do

not allow assembly uses (secular or religious), in the IP district.

Analysis of facial equal terms violations compares a zoning ordinance's treatment of houses of

worship to that of similarly situated, nonreligious assemblies – typically, private clubs and lodges that,

like houses of worship, provide a meeting place for congregants or members.  See *Civil Liberties for*

*Urban Believers v. City of Chicago,* 342 F.3d 752, 758, 762 (7th Cir. 2003)  (no equal terms violation

where ordinance treated religious assemblies the same as "clubs, lodges, meeting halls, recreation

buildings, and community centers"); *Midrash Shepardi, supra,* 366 F.3d at 1235 (equal terms violation

found where ordinance allowed "private clubs and lodges" but not houses of worship). [10]

The City's IP district zoning regulations plainly satisfy this standard, as they treat *identically* all

religious and nonreligious "assembly uses" – which are defined as "[m]eeting, recreational, social

facilities of a private or non-profit organization primarily for use by member or guests, or facilities for

religious worship and incidental religious education  . . . .  This classification includes union halls, social

clubs, fraternal organizations, and youth centers."  RJN, Ex. B.  The regulations applicable to the IP

district equitably forbid any such uses, without regard to religion.  RJN, Ex. A.

---

[10] The Eleventh Circuit has held that, for analysis of facial equal terms challenges, a court compares the
treatment of religious assemblies, not to that of "similarly situated" secular uses, but to that of a "natural
perimeter" of land uses in which people gather for virtually any nonreligious purpose. *Midrash
Shephardi, supra,* 366 F.3d at 1230; see also *Vision Church, United Methodist v. Village of Long
Branch,* 468 F.3d 975, 1002-1003 (7th Cir. 2006).  A Third Circuit district court has rejected that novel
standard, observing that the "natural perimeter" comparison would "make it virtually impossible to
apply zoning laws to houses of worship," by requiring they be treated better than or identically to nearly
*every* other land use, in *every* location. *Lighthouse Institute for Evangelism, Inc. v. City of Long Branch,*
406 F.Supp.2d 507, 517-518 (D.N.J. 2005).  All district courts in the Ninth Circuit that have considered
the issue have instead used the "similarly situated" standard derived from Equal Protection clause
jurisprudence.

1    The City's regulations – which treat private clubs and lodges, and houses of worship identically -

2  - are quite *unlike* the regulations found likely to violate the equal terms provision in the *Vietnamese*

3  *Buddhism* case – which allowed clubs and lodges but not houses of worship. *Vietnamese Buddhism,*

4  *supra,* 460 F.Supp. 2d at 1174. The fact that other, *dissimilarly* situated uses may be allowed where

5  both religious and nonreligious assemblies are barred is immaterial for proving an equal terms violation.

6  See *Petra Presbyterian Church v. Village of Northbrook,* 2003 WL 22048089 at 12 (N.D. Ill. 2003)

7  (holding that zoning regulation of industrial district does not violate the equal terms provision by

8  excluding both religious and nonreligious "membership organizations," while allowing restaurants.)

9    The definitions section of the City's zoning ordinance shows that the "entertainment activities"

10  and "commercial recreation" allowed in the IP district are not so similarly situated to religious assembly

11  uses as to be useful comparators for establishing a RLUIPA equal terms violation. "Entertainment

12  activities" are defined as including various types of performances, "fashion shows," "karaoke systems,"

13  and events on "big screen" projection systems – but not "dance halls" or "instruction and improvement

14  services" – i.e., facilities for arts, dance or martial arts education. RJN, Ex. A. Moreover, the City's

15  definition of "entertainment activities" as it pertains to uses allowable in the IP district, does not include

16  "theaters," as theaters are a *particular* category of use that -- like religious and secular assemblies – is

17  *not* listed as allowed in the IP zone. RJN, Ex. A.

18    Likewise, the "commercial recreation" uses allowed in the IP zone do *not* include "stadia or

19  sports arenas" – defined as any "outdoor or enclosed areas devoted to commercial spectator sports or

20  entertainment" – a specific use type which, again, is *not* listed as allowed in the IP zone. RJN, Ex. A.

21  Moreover, "commercial recreation" does not include the more specific "game center" use – defined as

22  any establishment with more than four arcade games. RJN, Ex. A.

23    ICFG cites no case law for the proposition that an ordinance that bars all private clubs, lodges,

24  meeting halls and houses of worship, without regard to religion, while allowing "entertainment

25

26

27

28

1   activities" and "commercial recreation," may facially violate RLUIPA's equal terms provision.[11]  In

2   fact, ICFG can cite no case that has relied on so strained a comparison of uses to find a facial RLUIPA

3   equal terms violation.  In view of the neutral treatment the City affords to similarly situated assembly

4   uses, ICFG's facial equal terms argument is unlikely to succeed.

5              **2.     ICFG's As-Applied Equal Terms Argument Also Fails, Because ICFG
                        Cannot Identify A Better-Treated, Similarly Situated Applicant For**
6              **Rezoning**

7              ICFG also argues that the City violated RLUIPA's equal terms provision by evaluating whether

8   to add the Catalina Property to the Assembly Use Overlay district by considering evidence – proximity

9   to hazardous materials users – that the City allegedly did not consult when identifying 196 properties for

10  initial inclusion in the Overlay district.  This argument, too, fails.

11             This argument, unlike ICFG's facial challenge to the wording of the zoning ordinance, is an

12  attack on the City's *application* of its land use laws to ICFG's application for rezoning.

13             As a threshold matter, ICFG is mistaken in alleging that the City did not consider hazardous

14  materials in designating properties for Assembly Use Overlay.  As City staff explained, it derived the

15  criteria for identification of suitable sites for Overlay designation by consulting General Plan Policy

16  33.04, which requires the City to "[p]rovide adequate and safe separation between areas where

17  hazardous materials are present and sensitive uses such as schools, residences and public facilities."

18  Pollart Dec., Ex. F.

19             Moreover, ICFG can only state an "as-applied" equal terms claim by comparing its treatment to

20  the treatment of a "similarly situated" secular applicant for land use approval.  *Ventura County, supra,*

21  233 F.Supp.2d at 1247; see also *Guru Nanak, supra,* 326 F.Supp.2d at 1155.  If the plaintiff cannot

22  identify a better-treated similarly situated secular use, its as-applied equal terms claim fails as a matter

23  of law. (*Id.*)  Thus, ICFG cannot sustain an equal terms claim by comparing the process of its rezoning

24  application to the enactment of legislation for which there was no similarly situated secular applicant.

25

26  [11] ICFG points solely to two excerpts from legislative history.  ICFG fails to note, however, that one of
    those excerpts (H.R. Rep. No. 1060219, 106th Cong., 1st Sess. 19 (1999)) is from a report on a
27  *competitor* bill that was not enacted, whereas the other (146 Cong. Rec. S2774-01 at S2777) is from a
    statement supporting RLUIPA read into the Congressional Record by the general counsel of the
28  "Coalition For the Free Exercise of Religion."  Defendants submit that these excerpts are not the most
    reliable guides to Congress' intent.

1    And even if ICFG could compare itself to the *hypothetical* future users of the 196 properties designated

2    for the Assembly Use Overlay, its equal terms claim must fail, as those properties are equally available

3    to ICFG, and other religious users, as they are to nonreligious users.

4          Finally, ICFG's as-applied equal terms argument misconstrues the nature of a rezoning. Unlike a

5    decision upon a land use *permit* application, which is a "quasi-judicial" proceeding governed by codified

6    standards for permit issuance or denial (see RJN, Ex. A), a rezoning is a *legislative* act. *Lockard v. City*

7    *of Los Angeles*, 33 Cal.2d 453, 460-461 (1949). As lawmakers, city councils possess virtually

8    unencumbered discretion when deciding whether to rezone property, and courts will not interfere with a

9    rezoning decision "except for clear abuse of the discretion or excess of power." *Tandy v. City of*

10   *Oakland*, 208 Cal.App.2d 609, 612 (1962). Therefore, judicial review of whether a rezoning decision

11   violates constitutional equal protection guarantees is highly deferential – "the city council's action

12   should be upheld if it bears a rational relationship to a legitimate state interest." *Nelson v. City of Selma*,

13   881 F.2d 836, 839 (9th Cir. 1989). That deferential standard should also apply to claims under

14   RLUIPA's equal terms provision, which "codifies" existing constitutional equal protection law. See

15   *Ventura County, supra,* 233 F.Supp.2d at 1246.

16         The eight criteria employed by staff to designate 196 properties for initial inclusion in the

17   Overlay district are not codified as the exclusive factors that may be considered when considering

18   whether to rezone properties for assembly use designation. RJN, Ex. B. Therefore, the City Council has

19   wide discretion to consider any evidence, reasonably related to a legitimate state interest and consistent

20   with its General Plan, in designating properties for addition to the Overlay district. As the separation of

21   assembly uses from hazardous materials concentrations indisputably bears a rational relationship to a

22   legitimate state interest and is fully consistent with General Plan Policy 33.04, the City's consideration

23   of that factor in deciding ICFG's rezoning request cannot establish an equal terms violation.[12]

24       **C.**    **The Preliminary Injunction Should Be Denied, As ICFG Fails To Establish**

25              **Irreparable Injury**

26

27

28

---

[12] Furthermore, it is the City's standard practice, when evaluating any proposal to rezone industrial land that abuts another industrial parcel, to consider the potential for exposure to hazardous materials. Hom Dec., ¶ 10.

Even if ICFG could establish a likelihood of success on the merits, its motion for preliminary injunction must be denied, for failure to show irreparable injury. Preliminary injunction may *only* be granted when the moving party has demonstrated a significant threat of irreparable injury. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999) (emphasis added). Moreover, "[t]he preliminary injunction must be the *only* way of protecting the plaintiff from such harm." *Campbell Soup Co., Inc. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d. Cir. 1992) (emphasis in original).

ICFG alleges harm due to the time and money it has expended in seeking to relocate to the Catalina Property, along with various difficulties arising from overcrowding at its existing facility. But because ICFG is already operating at an existing facility, it cannot establish the hardships it complains of as "irreparable injuries" that are due to the City's actions challenged here. Nor can ICFG show that it can only be spared such injury if the City is ordered to allow religious assembly use at the Catalina Property and process ICFG's CUP application.[13]

In another RLUIPA challenge to denial of a rezoning request, the Court rejected virtually identical assertions of "injury" as justifications for issuance of a preliminary injunction. *San Jose Christian College v. City of San Jose*, 2001 WL 1862224 (N.D. Cal. 2001). The religious college in that case sought to relocate its existing operations to a new site which was zoned for hospital use, sued under RLUIPA after it had been denied the rezoning, and sought a preliminary injunction to use the property for religious education during litigation of the matter. The college alleged "irreparable injury," on the grounds that "many students who have been called to God to be educated at SJCC will have to be turned away as the present facilities are insufficient." *Id.* at *7. The Court held that difficulties of operating at an allegedly insufficient *existing* site cannot constitute irreparable injury:

> SJCC has an existing facility which it is presently using. Preventing a change in existing religious practice, rather than restricting a present religious practice does not impose a substantial burden.

---

[13] To give just one example, it is far from clear that the many hardships ICFG attributes – directly or indirectly -- to lack of adequate parking space at its existing site (where there are 154 parking spaces) would be meaningfully alleviated were it to relocate to the Property (where ICFG's CUP application indicates it would have 188 parking spaces). Pollart Dec., ¶ 23. Nor is it clear that ICFG's disputes with, residential neighbors over on-street overflow parking would be significantly reduced, since the Catalina Property is located within 1 ½ blocks of a residential neighborhood. Pollart Dec., ¶ 23.

*Id.* citing *Christian Gospel Church, Inc. v. City and County of San Francisco,* 896 F.2d 1221, 1224 (9th Cir. 1990).

The Court further held that the application and carrying costs of the property to which the college sought to relocate did not constitute irreparable injury:

> The only other harm identified by plaintiff is that it has incurred expenses in the application process, and that it will continue to incur expenses relating to maintaining the vacant buildings on the property while being precluded from using them. Monetary expenses, however, do not constitute an irreparable harm and are insufficient to support an injunction [citations omitted.]

*San Jose Christina College,* 2001 WL 1862224 at * 8.

ICFG's alleged irreparable injuries are *identical* in type to those asserted in the *San Jose Christian College* case, and should be rejected by this Court just as handily.[14]

Moreover, the harms alleged by ICFG are sharply distinguishable from those in *Vietnamese Buddhism,* the case ICFG relies upon to establish irreparable injury and the weight of its hardships. In that case, the applicant temple was forced to close its existing home to avoid "a legal dispute with the City," and was subjected to City zoning enforcement actions (including misdemeanor liability) at its new property. The temple, therefore, was left with *no existing place of worship* and was forced to *eliminate* virtually all its activities. *Vietnamese Buddhism, supra,* 460 F.Supp.2d at 1167-1170. The temple's hardships were therefore attributable to City actions, and constituted a near-total inability to function as a religious entity. ICFG, which continues to operate at its existing facility in essentially the same manner as it did before the City denied its rezoning request, alleges no comparable injury.

### D. The Preliminary Injunction Would Block The City From Protecting The Public Interest

ICFG's assertion, that its hardships outweigh those the City would suffer, also fails for a number of reasons. First, as discussed above, ICFG fails to show any irreparable injury that the injunction would redress. But even had ICFG made that showing, the hardship to the City would be immense –

---

[14] ICFG also asserts that it has suffered irreparable injury by deprivation of its rights under the first amendment. However, ICFG has failed in this motion to argue the merits of any of the first amendment claims stated in its Complaint. Where a plaintiff has failed to establish a reasonable likelihood of

1    although the vagueness of ICFG's proposed injunction makes it difficult to estimate just *how* great.

2        ICFG broadly asks the Court to enjoin the City from "preventing" its use of the Catalina Property

3    "for religious assembly purposes." It is impossible to be sure of the scope of the uses ICFG would

4    attempt to perform under such an injunction, as its motion suggests no limitations.[15] The "hardships"

5    ICFG complains of include its alleged difficulties in conducting (at least) weekly religious services for

6    more than 1,700 people; a weekly food ministry serving 300 to 400 at a time; numerous counseling

7    ministries of indeterminate size, which meet with indeterminate frequency; Sunday school and/or child

8    care functions, again of indeterminate size and frequency; and a youth ministry that allegedly must

9    accommodate in excess of 250 persons at a time. ICFG has not demonstrated to the City or to this Court

10   that the Property is in any shape to accommodate those activities. Because ICFG has never submitted a

11   detailed description of its planned use, the City has had no occasion to inspect the Catalina Property to

12   determine its adequacy as a place of assembly, with regard to seismic integrity, fire safety, exits,

13   lighting, seating, ventilation, disability accommodation, bathrooms, hallways, etc. Schock Dec.,

14   ¶¶12,15. Neither has the City had any opportunity to assess the Catalina Property's adequacy as a place

15   for the preparation and distribution of food, or the provision of youth activities or day-care services. *Id.*

16   The health and safety risks of congregating large – potentially very large -- groups of people in a

17   building of uncertain seismic and fire-safety status need no emphasis. An injunction that would stop the

18   City from "preventing" assembly use at the Catalina Property would cripple the City's ability to

19   safeguard the health and safety, not only of the community, but of ICFG's congregants and visitors.

---

24   success on constitutional claims, it has not shown irreparable injury to support a preliminary injunction.

25   *Petra Presbyterian Church v. Village of Northbrook*, 2003 WL 22048089 at *15.

26   [15] The scope of the injunction sought by ICFG is nevertheless clearly greater than that of the injunction issued in *Vietnamese Buddhism*. While the size of the temple's congregation is not enumerated in that

27   case, it was plainly smaller than ICFG's, by several orders of magnitude, and therefore its use of property allowed pursuant to injunction presented no equivalent potential to impact the community. See

28   *Vietnamese Buddhism*, *supra*, 460 F.Supp.2d at 1175-1176 (preliminary injunction restricting assembly to six conference rooms in an office building).

1    Schock Dec., ¶¶12-15.[16]

2    The City's interest in protecting public health and safety may be given more weight than a

3    religious entity's alleged private harms, as the Court in the *Ventura County* case observed.  In denying a

4    preliminary injunction, sought by a religious school to prevent the city from requiring a CUP to operate

5    modular classrooms, the Court observed that

6    > [w]hen the public interest may be implicated by a preliminary injunction, 'courts of equity may,
7    > and frequently do, go much farther to give and withhold relief in furtherance of the public
>    interest than they are accustomed to go when only private interests are involved.' *United States*
8    > *v. First Nat'l City Bank*, 379 U.S. 378 . . . (1965).  According to the Ninth Circuit, 'when a
>    district court balances the hardships of the public interest against a private interest, the public
9    > interest should receive greater weight.' *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th
10   > Cir. 1989).

11   *Ventura County Christian High School v. City of San Buenaventura*, 233 F.Supp.2d 1241, 1252.

12   Furthermore, as the *Ventura County* Court noted, an injunction requiring the city to allow a use it

13   had not yet considered under its land-use permitting procedures would prevent the city from upholding

14   its mandatory obligation to evaluate and avoid the potentially significant environmental impacts of a

15   proposed project, as required by the California Environmental Quality Act, or CEQA, Cal. Pub. Res.

16   Code section 21000, et. seq.  *Id.* at 1253.

17   In addition, ICFG's request that the Court enjoin the City from "further delaying" the processing

18   of its CUP application would confront the City with the impossible task of processing of a patently

19   incomplete CUP application, which ICFG has failed to resubmit with necessary details describing its

20   proposed use of and improvements to the Catalina Property.  Pollart Dec., ¶19, 20, 22, Ex. I.  A

21   preliminary injunction to require a city to process an incomplete CUP application is not appropriate.

22   See *San Jose Christian College v. City of Morgan Hill,* 2001 WL 1862224 (N.D. Cal. 2001) at *7.

23   Finally, an injunction to process ICFG's CUP application, were it to result (during the potentially

24   lengthy course of this litigation) in issuance of a CUP and construction of ICFG's proposed changes to

25   the Catalina Property (including construction of a large assembly hall), would render that Property

26

27   ───────────────

28   [16] ICFG has shown similar reluctance to circumscribe its desired activities in meetings with City staff
     and in its application for a CUP, which had to be returned as incomplete due to lack of specificity.
     Pollart Dec., ¶ 22.

1    injunction, make its issuance highly inadvisable.[17]

2    **V.    CONCLUSION**

3    The harm that would flow to the City and the public interest demonstrates why the type of

4    injunction requested by ICFG -- mandatory rather than prohibitory; disruptive rather than preservative of

5    the status quo; affording the moving party essentially all relief it could obtain after trial – is strongly

6    disfavored and accorded heavy scrutiny. *P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974.) Both because

7    ICFG has failed to establish a likelihood of success on the claims on which it bases this motion, and

8    because it has failed to show irreparable injury that outweighs the hardship to the City and the public

9    interest that would flow from an injunction, this motion should be denied in its entirety.

10    Dated: August 15, 2007                    Respectfully submitted,

11

12                                             MEYERS, NAVE, RIBACK, SILVER & WILSON

13

14

15    By

16                                             Peter S. Hayes
                                              Attorneys for Defendants
17                                             CITY OF SAN LEANDRO, TONY SANTOS, SURLENE
                                              G. GRANT, DIANA M. SOUZA, JOYCE R.
18                                             STAROSCIAK, BILL STEPHENS, JIM PROLA, JOHN
                                              JERMANIS, DEBBIE POLLART

19    996586.2

20

21

22

23

24

25

26

27    ───────────────────────

28    [17] Should the court see fit to issue a preliminary injunction, it should require ICFG to post a bond sufficient to reimburse the City against permit processing costs and liability for potential damage to health and safety.