Jayne W. Williams, Esq. (SBN:63203)
jwilliams@meyersnave.com
Deborah J. Fox, Esq. (SBN: 110929)
dfox@meyersnave.com
Peter S. Hayes, Esq. (SBN: 184552)
phayes@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, TONY SANTOS (in his official capacity), SURLENE G. GRANT (in her official capacity), DIANA M. SOUZA (in her official capacity), JOYCE R. STAROSCIAK (in her official capacity), BILL STEPHENS (in his official capacity), JIM PROLA (in his official capacity), JOHN JERMANIS (in his official and individual capacities), DEBBIE POLLART (in her official and individual capacities), DOES 1-50.<br><br>Defendants. | Case No. C 07-03605 PJH<br><br>**DECLARATION OF HANSON HOM**<br><br>Date: September 5, 2007<br>Time: 9:00 a.m.<br>Crtrm: 3<br>Complaint Filed: 7/12/07<br>Hon. Phyllis J. Hamilton |

Declaration of Hanson Hom [C 07-03605 PJH]

I, Hanson Hom, declare as follows:

1. The following facts are within my personal knowledge and, if called upon to testify, I could and would testify competently with respect thereto.

2. I was initially hired as the Planning Manager for the City of San Leandro ("City") in February 1999. I became the acting Community Development Director in May 2000 and served in this capacity through May 2007. I was a full time employee from February 1999 through May 2007. I am currently the Director of Community Development for the City of Sunnyvale.

3. During my employment with the City, Plaintiffs have been located at 577 Manor Avenue, San Leandro ("Manor Location"). On May 15, 2000, the City Council approved Plaintiffs' Planned Development application to expand the church buildings at the Manor Location. The approved plan allowed Plaintiffs to build a new 13,870 square foot sanctuary/office building on a lot adjoining the Manor Location.

4. In my capacity as the Planning Manager and later as the Community Development Director, I oversaw the update of the San Leandro General Plan from February 1999 to June 2001. The General Plan update was guided by the General Plan Advisory Committee ("GPAC") which consisted of approximately fifty-nine residents and business representatives appointed by the City Council. During the first phase of the General Plan update, the GPAC was divided into four subcommittees, each of which corresponded to a component of the General Plan. The subcommittees identified ten "Focus Areas" within the City. Each Focus Area had unique issues which required more detailed discussion than was provided in the rest of the General Plan. One of the ten Focus Areas created was the West San Leandro Business District.

5. The General Plan discussion related to the West San Leandro Focus Area states the importance of preserving a supportive environment for industrial and technology activity. The General Plan also indicates that residential uses in the West San Leandro Focus Area should be strictly limited to minimize land sue and traffic conflicts.

6. In my capacity as Community Development Director, I have dealt with Faith Fellowship Foursquare Church and its representatives (hereinafter "Plaintiffs") on several different occasions in connection with their property located at 14600 and 14850 Catalina Street ("Property").

7.      On May 3, 2006, in my capacity as Community Development Director, I, along with then-acting Business Development Manager, Luke Sims, and then-acting Planning Manager, Debbie Pollart met with Plaintiffs regarding their desire to relocate to a non-residential district. Plaintiffs informed us that they were interested in purchasing the Property, which is located in the City's Industrial Park ("IP") zoning district and the West San Leandro Focus Area. During our May 3rd meeting, I informed Plaintiffs that based on General Plan policies, the City Council had a strong preference for maintaining the industrial districts for industrial uses and was typically reluctant to convert industrial land to non-industrial use. We informed Plaintiffs that pursuant to the current San Leandro Zoning Code ("Zoning Code") assembly uses were not allowed within the IP district. Plaintiffs indicated that, City Council preferences notwithstanding, they were interested in moving forward with relocating to the Property. Plaintiffs inquired as to the options available for relocating to the IP zoning district. In response to Plaintiffs' inquiry, we advised Plaintiffs that in order to relocate to the Property, one option would be to enact two Zoning Code amendments: (1) an amendment of the zoning map to designate the Property as Industrial Limited ("IL"); and (2) an amendment of the Zoning Code to make assembly uses conditionally permitted in the IL zoning district.

8.      At the time of the May 3, 2006 meeting, City staff advised Plaintiffs that a Zoning Code amendment to allow assembly uses in an IL zoning district might be more amenable than allowing such uses in an IP zoning district because, from staff's perspective, existing IL parcels are more typically located in transitional or mixed use areas where General Plan policies allow consideration of rezoning for other uses. More specifically, the IL district's purpose is to provide areas of low-to moderate-intensity industrial uses which are capable of being located adjacent to residential areas and serve as a buffer between residential areas and light industry. Alternatively, allowing assembly uses in an IP zoning district might not be considered compatible with existing industrial uses. The IP zoning designation is meant to serve commerce, high technology, production and assembly, retail and related uses. City staff noted that the Property is located in one of the City's larger contiguous IP districts.

9. After reviewing Plaintiffs' application, staff realized that the application raised larger General Plan and policy issues regarding the location of assembly uses. More specifically, staff realized that the expansion of assembly uses outside of residential zoning districts presented a major shift in policy regarding location of assembly uses in the City, and that the proposed expansion of assembly uses outside of residential districts would require input and analysis from the City Council, Planning Commission, and Board of Zoning Adjustments in order to ensure that such a shift in policy was consistent with the General Plan. Additionally, staff identified other options for expanding assembly uses into non-residential districts which warranted further study. The option that was eventually adopted by the City Council consisted of an assembly overlay district, which identified more parcels in the City for possible assembly uses than the IL rezoning option that was first discussed with the Plaintiffs.

10. During my tenure as Community Development Director, any proposed land use that involved a proposed rezoning of an industrial parcel that abuts another industrial parcel was also evaluated to consider issues of noise, use of and exposure to hazardous materials, land use compatibility, traffic, odors and aesthetic impacts.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 14 day of August in San Leandro, California.

_____
Hanson Hom

1003503