Jayne W. Williams, Esq. (SBN:63203)
jwilliams@meyersnave.com
Deborah J. Fox, Esq. (SBN: 110929)
dfox@meyersnave.com
Peter S. Hayes, Esq. (SBN: 184552)
phayes@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, TONY SANTOS (in his official capacity), SURLENE G. GRANT (in her official capacity), DIANA M. SOUZA (in her official capacity), JOYCE R. STAROSCIAK (in her official capacity), BILL STEPHENS (in his official capacity), JIM PROLA (in his official capacity), JOHN JERMANIS (in his official and individual capacities), DEBBIE POLLART (in her official and individual capacities), DOES 1-50.<br><br>Defendants. | Case No. C 07-03605 PJH<br><br>**DECLARATION OF WILLIAM SCHOCK**<br><br>Date: September 5, 2007<br>Time: 9:00 a.m.<br>Crtrm: 3<br>Complaint Filed: 7/12/07<br>Hon. Phyllis J. Hamilton |

I, William Schock, declare as follows:

1. The following facts are within my personal knowledge and, if called upon to testify, I could and would testify competently with respect thereto.

2. I am the Chief Building Official and Zoning Enforcement Official for the City of San Leandro ("City"), and have been since 1994. I have been employed with the City for a total of thirteen years.

3. In my capacity as Chief Building Official, I receive and review building permit applications, use permit applications, and plans after land use entitlements have been approved. I also inspect all phases of improvements and construction, give approvals as appropriate, and issue certificates of occupancy when all requirements are met. I perform some if not all of these functions assisted by my Plan Check and Building Inspection staff.

4. In my capacity as Chief Building Official and Zoning Enforcement Official, I am familiar with the California Building Code, the Uniform Building Code, the California Fire Code, the Uniform Fire Code, the San Leandro Municipal Code, which adopted and amended both the state and uniform building and fire codes, the California Health and Safety Code, and other state and local requirements for all types of residential and commercial uses.

5. On or about August 6, 2007, in connection with this matter and for purposes of this declaration, I asked staff to locate the Building Department's file for the property located at 14600 and 14850 Catalina Street ("Property") to review the permit history and understand what exists there now, who previously occupied the property, and the type of building permit applicable to this property. On August 6 and 7, 2007, I reviewed the Building Department's records, including the prior building plans and permits for the Property. The original building permit shows that a permit was issued in 1983 to construct a 46,080 square foot office building for North Star Computers. Over the years, permits were issued to Molecular Design Ltd. ("MDL"), a software company, for minor tenant improvements. The last improvements to the Property were interior tenant improvements in 1995. (A true and correct copy of the most recent floor plan for the existing building is attached hereto as Exhibit A.)

1  6. The plans for the prior industrial park occupancy show two lots and a large, single-story building, with an open floor plan. There are no other structures on the Property. The plans show offices and conference rooms around the perimeter of the building's interior, with low office partitions or cubicles in the center of the building, along with the typical support functions of an office (e.g. closets, computer rooms, copy rooms, a lunch room, without stoves or burners, reception area, and a core of bathroom stalls, etc.) The actual dimensions, configuration, or capacity of the open floor area, and the other areas I mentioned, are unknown to me.

7. In connection with this matter and for purposes of this declaration, I also reviewed the plans submitted by Faith Fellowship Church (hereinafter "Plaintiffs") to the City's Planning Department in connection with their application for a Conditional Use Permit ("CUP"). The plans I reviewed consist of two sheets marked "A-1" and "A-2." (The same plans are attached as Exhibit A § m(2) to the Declaration of Peter MacDonald in Support of Motion for Preliminary Injunction and Exhibit H-3 to the Declaration of Debbie Pollart in Opposition to Plaintiffs' Motion for Preliminary Injunction.) The plans show the existing 45,080 square foot building on the Property, a large auditorium or assembly area with seating, classrooms, offices, a kitchen, and parking stalls. There are no notations as to the size, dimension, configuration, or capacity of what is shown on the plans.

8. On or about August 7, 2007, in connection with this matter and for purposes of this declaration, I used the City's internal GIS system to call up an aerial photograph of the Property. (A true and correct copy of the aerial photo I reviewed is attached hereto as Exhibit B to my declaration.) I found the Property is located in an industrial park setting, on a cul-de-sac, near a fire station and commercial and industrial activity. I found no crosswalks fronting the Property.

9. I am informed that Plaintiffs intend to use the Property for worship and Sunday school, youth ministries, community counseling, outreach programs and food service. I am further informed and believe that the congregation on Sundays could approach upwards of 1,300 people.

10. Although Faith Fellowship Church might be able to physically accommodate 1,300 persons in the existing building on the Property, this does not mean that the existing building can accommodate an assembly of this size, or all of the above-described activities, in accordance with state and local building and fire safety requirements. Furthermore, with reference to the building

plans and floor plan from the last prior use (see Exhibit A, attached hereto), I do not see any auditorium space, as shown in Plaintiffs' plans.

11. Because the Building Department has never received an application for a building permit for the Property from Plaintiffs, I am not aware of what tenant improvements and building permits would be required.

12. Based on my review and understanding of the prior use of the Property, and Plaintiffs' proposed use of the Property, and the different building code requirements applicable to industrial park office buildings versus assemblies, it is self-evident to me that Plaintiffs will need several permits and approvals for a change in occupancy classification before the Building Department can issue a certificate of occupancy. For instance, the Building Department would need to review, to name a few, the existing building's frontage, structural seismic integrity, fire safety, including fire sprinklers and fire resistant construction, exits, lighting, seating, accessibility throughout the facility to accommodate disabilities, and rooms, bathrooms, doorways and hallways for compliance with building and fire codes. To the extent Plaintiffs intend to install industrial equipment and operate a commercial kitchen, there are fire suppression requirements and ventilation standards, among other things, that would also have to be met. Day care or youth activities because of the ages of the occupants and their inability to respond to an emergency appropriately or without assistance have very specific and different requirements.

13. I conclude that Plaintiffs, even if they wanted to, could not occupy the Property in its unchanged condition tomorrow.

14. Based on my review of Plaintiffs' plans, the value of the original building permit and tenant improvements in 1983 dollars, and my experience with developers and contractors, I conclude that Plaintiffs will have to spend upwards of $1.5 million on improvements before a certificate of occupancy could be issued.

15. It is my opinion that Plaintiffs cannot use the Property, unchanged, without circumventing State and local law, including Section 3405 of the San Leandro Municipal Code, all of which are intended to provide minimum standards to safeguard life or limb, health, property and the public welfare by regulating and controlling the design, construction, quality of materials, use,

occupancy, location and maintenance of all buildings and structures within California. Churchgoers, visitors, industrial and residential neighbors alike, could be injured, or worse. Without adequate ventilation or exits for the number of churchgoers, for example, injuries or death could occur should a fire break out. An earthquake could compromise the structural integrity of the building and render it inhabitable. Inappropriate seating or aisles could result in trip-and-fall hazards.

16. It is my opinion, based on my review of our Building Department files, an aerial photograph of the Property, Plaintiffs' CUP application plans, and my education and experience with the City for the last thirteen years, that Plaintiffs cannot merely change the sign on the front door and start operating a church tomorrow.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 14 day of August in San Leandro, California.

_____
William Schock