Jayne W. Williams, Esq. (SBN:63203)
jwilliams@meyersnave.com
Deborah J. Fox, Esq. (SBN: 110929)
dfox@meyersnave.com
Peter S. Hayes, Esq. (SBN: 184552)
phayes@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, TONY SANTOS (in his official capacity), SURLENE G. GRANT (in her official capacity), DIANA M. SOUZA (in her official capacity), JOYCE R. STAROSCIAK (in her official capacity), BILL STEPHENS (in his official capacity), JIM PROLA (in his official capacity), JOHN JERMANIS (in his official and individual capacities), DEBBIE POLLART (in her official and individual capacities), DOES 1-50.<br><br>Defendants. | Case No. C 07-03605 PJH<br><br>**DECLARATION OF DEBBIE POLLART**<br><br>Date: September 5, 2007<br>Time: 9:00 a.m.<br>Crtrm: 3<br>Complaint Filed: 7/12/07<br>Hon. Phyllis J. Hamilton |

Declaration of Debbie Pollart [C 07-03605 PJH]

I, Debbie Pollart, declare as follows:

1. The following facts are within my personal knowledge and, if called upon to testify, I could and would testify competently with respect thereto.

2. I was acting Planning Manager for the City of San Leandro ("City") from November 2002 through May 2007. I worked as a consultant for the City from 1998 to 2000 and was hired as a full-time employee in 2000. I have been a full-time employee with the City of San Leandro for the past seven years. I am currently the Facilities & Open Space Manager in the City's Public Works Department.

3. In my capacity as Planning Manager, I dealt with Faith Fellowship Foursquare Church and its representatives (hereinafter "Plaintiffs") on a number of different occasions, in connection with their current location at 577 Manor Boulevard, and their property located at 14600 and 14850 Catalina Street.

4. On May 3, 2006, in my capacity as Planning Manager, I, along with then-acting Community Development Director Hanson Hom and then-acting Economic Development Director Luke Sims, met with Plaintiffs regarding their desire to relocate to a non-residential district. Plaintiffs informed us that they wanted to relocate to 14600 and 14850 Catalina Street (the "Property"), which is within the City's Industrial Park ("IP") zoning district, and adjacent to several manufacturing plants such as Kennerly Spratling, a manufacturer of plastics, Otis Spunkmeyer, a large scale frozen/baked goods manufacturer, Coast Crane, which sells, leases and/or services construction cranes, and Challenge Dairy, a manufacturer of dairy products. During the May 3rd meeting, staff informed Plaintiffs that, pursuant to the San Leandro Zoning Code (the "Zoning Code"), religious assembly uses were conditionally permitted uses in the City's Residential zoning district. We further informed Plaintiffs that the current Zoning Code did not allow assembly uses within the IP district. We advised Plaintiffs that in order to relocate to the Property, two changes to the Zoning Code were needed: (1) an amendment of the zoning map to designate the Property as Industrial Limited ("IL"), and (2) and amendment of the Zoning Code to make assembly a conditionally permitted use in the IL zoning district.

5. At the time of the May 3, 2006 meeting, City staff advised Plaintiffs to apply for a rezone from IP to IL because, from a staff perspective, the IL zoning district was more amenable to assembly use than the IP zoning district. More specifically, the IL district's purpose is to provide areas of low-to-moderate intensity industrial uses which are capable of being located adjacent to residential areas and serve as a buffer between residential areas and light industry. In contrast, the IP zoning designation is meant to serve commerce, high technology, production and assembly, retail and related uses.

6. On May 19, 2006, in my capacity as Planning Manager, I received and processed Plaintiffs' application to rezone the Property from IP to IL, and to amend the Zoning Code to allow religious assembly use in the IL zoning district. (A true and correct copy of Plaintiffs' planning permit application for a rezone is attached hereto as Exhibit A.)

7. After reviewing Plaintiffs' application, staff realized that the application raised larger General Plan policy issues regarding the location of religious assembly uses. More specifically, staff realized that the expansion of assembly uses outside of residential zoning districts presented a major shift in policy regarding location of assembly uses in the City, and that the proposed expansion of assembly uses outside of residential districts would require input and analysis from the City Council, Planning Commission, and Board of Zoning Adjustments in order to ensure that such a shift in policy was consistent with the General Plan.

8. By letter dated June 29, 2006, staff advised Plaintiffs that a rezoning of the nature proposed in their application would require thorough analysis by staff, the Planning Commission, the Board of Zoning Adjustments, and, ultimately the City Council. (A true and correct copy of the City's letter to Jim Lee on behalf of Plaintiffs, dated June 29, 2006, is attached hereto as Exhibit B.)

9. Based upon policy and criteria set forth in the General Plan, staff proposed the creation of an assembly use overlay zone ("Assembly Use Overlay") in identified areas of the City. Using General Plan policies as our guide, staff developed several criteria for evaluating appropriate locations for assembly uses. After considering both General Plan policies and the suggested criteria, staff identified several areas throughout the City where assembly uses could be conditionally permitted. Staff proposed to establish the new Assembly Use Overlays by (1) amending the Zoning

1  Code to define Assembly Use Overlay, and (2) amending the Zoning Map to designate all of the
2  applicable areas with the new Assembly Use Overlay. The Assembly Use Overlay does not affect the
3  underlying zoning of the property. Rather, it allows a property owner within the Assembly Use
4  Overlay to apply for a conditional use permit for an assembly use.

5      10.    The creation of the Assembly Use Overlay identified approximately 218 acres where
6  assembly uses could be conditionally permitted and significantly expanded the areas of the City
7  where assembly uses may locate.

8      11.    A true and correct copy of an October 12, 2006 Memorandum to the Business
9  Development Sub-Committee is attached hereto as Exhibit C.

10     12.    A true and correct copy of an October 19, 2006 Staff Report for a work session of the
11 Planning Services Division to the Board of Zoning Adjustments and Planning Commission is
12 attached hereto as Exhibit D.

13     13.    In my capacity as Planning Manager, I also served as the Secretary to the San Leandro
14 Planning Commission ("Secretary"). In my capacity as Secretary, I kept all minutes, prepared the
15 agenda and furnished all members of the Commission with a copy of the agenda and copies of all
16 correspondence and other papers relating to items appearing on the agenda.

17     14.    A true and correct copy of the Minutes from the October 19, 2006 Joint Work Session
18 of the San Leandro Board of Zoning Adjustments and Planning Commission is attached hereto as
19 Exhibit E.

20     15.    A true and correct copy of a Staff Report for a regular meeting of the Planning
21 Commission on February 22, 2007 is attached hereto as Exhibit F.

22     16.    A true and correct copy of the Minutes from the February 22, 2007 Planning
23 Commission meeting is attached hereto as Exhibit G.

24     17.    On or about March 28, 2007, in my capacity as Planning Manager, I received an
25 application for a conditional use permit ("CUP") for a proposed assembly use at the Property from
26 Plaintiffs. A true and correct copy of Plaintiffs' CUP application is attached hereto as Exhibit H.
27 The application included a cover letter (Exhibit H-1), a narrative (Exhibit H-2), and a set of plans or
28 project data, including Sheets "A-1" and "A-2" (Exhibit H-3).

18. After an initial review, I noted that Plaintiffs' CUP application was incomplete and could not be processed. On April 25, 2007, I notified Plaintiffs that their application was incomplete. A true and correct copy of my letter to Jim Lee, on behalf of Plaintiffs, is attached hereto as Exhibit I.

19. As set forth in my April 25, 2007 letter (Exhibit I, attached hereto), I noted that the application was missing the following information:

- Square footage of the proposed "sanctuary" area, specifying the number of parking spaces required vs. the number of spaces provided;
- Dimensions for standard, compact and handicap spaces shown on Sheet A-1 and the driveway aisle width;
- Clarification as to whether the 188 on-site parking spaces shown on Sheet A-1 include diagonal parking spaces on Sheet A-1, located partially within an access easement, and parking spaces on adjacent property;
- Height of the existing concrete screen wall;
- Square footage for all proposed uses within the building as shown on Sheets A-1 and A-2 (e.g. sanctuary, offices, kitchen, classrooms, lounge, storage, utility, etc.);
- Whether chairs in main sanctuary are fixed or not, and maximum capacity for room;
- Potential uses for triangular-shaped areas at rear of sanctuary;
- Existing or proposed lighting standards in the parking lot; and
- Whether roof-mounted equipment (e.g. HVAC) will be installed.

20. Plaintiffs did not respond to any of the issues raised in the incomplete letter, nor did Plaintiffs submit any of the required information to complete their application. Accordingly, I did not take any further action related to Plaintiffs' CUP application.

21. Because the Planning Department has not processed Plaintiffs' CUP application, the Planning Department has never had an opportunity to consider or approve Plaintiffs' proposed assembly use, other uses, tenant improvements, or development of the Property. As a result, it is unclear what exists on the Property now and what would be required to accommodate Plaintiffs' desired activities. We are also unclear as to what uses might be appropriate or safely handled there today.

22. During my course of dealings with Plaintiffs, I have received mixed or conflicting reports regarding the size of their congregation and their intended hours of operation and activities. For example, Plaintiffs' CUP application states that Plaintiffs will use the Property for 4 hours on Sunday. (Exhibit H, attached hereto.) On a separate occasion, Plaintiffs indicate that they will use the Property every day except Saturday. On yet another occasion, Plaintiffs indicated that they might have concerts on Saturday. There is also mention of babysitting and offering the Property to other organizations. In my letter to Mr. Lee of Faith Fellowship Church dated April 25, 2007, I explained my confusion. (Exhibit I, at p. 2).

23. At Plaintiffs' current location at 577 Manor Boulevard, there are a total of 154 parking spaces. According to Plaintiffs' CUP application for 14600 and 14850 Catalina Street, Sheet A-1 (Exhibit H-3, attached hereto), there are approximately 188 on-site parking spaces. If Plaintiffs move to the Catalina Street location, Plaintiffs will gain a total of thirty (30) parking spaces. There is a residential area approximately 1 ½ blocks away from the Property. Without adequate parking, Plaintiffs' desired activities, as described above, could result in overflow and traffic congestion.

24. Around the same time Plaintiffs submitted their CUP application, Plaintiffs requested that their Property be considered for rezoning within the Assembly Use Overlay approved and established by the City Council. (A true and correct copy of Plaintiffs' rezone application received on March 20, 2007 is attached hereto as Exhibit J.)

25. On April 12, 2007, at a public hearing, the Planning Commission considered Plaintiffs' application to rezone the subject property from IP Industrial Park to IP (AU) Industrial Park, Assembly Use Overlay District. A true and correct copy of the Staff Report for the April 12, 2007 Planning Commission meeting is attached hereto as Exhibit K. A true and correct copy of the Minutes associated with this meeting is attached hereto as Exhibit L.

///
///
///
///
///

26. On April 12, 2007, the Planning Commission made Findings of Fact for denial of Plaintiffs' application, a true and correct copy of which is attached hereto as Exhibit M.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 14 day of August in San Leandro, California.

_____
Debbie Pollart