**EXHIBIT D**

# City of San Leandro
## Community Development Department
## Planning Services Division
## Staff Report

**DATE:** October 19, 2006

**TO:** Board of Zoning Adjustments and Planning Commission

**FROM:** Debbie Pollart, Planning Manager

**SUBJECT:** Work session to discuss potential Zoning Code amendments related to: standards for development of large homes (including parking standards); the residential condominium conversion process; and the potential for assembly uses to occur in the Industrial Limited (IL) Zoning District.

---

SUMMARY AND RECOMMENDATION

Over the course of the past few months, staff has received direction from the City Council to analyze potential Zoning Code amendments related to development standards for large homes, the residential condominium conversion process, and the potential for assembly uses to occur in certain industrial areas. Each of these topics is discussed separately in this report and should not necessarily be treated as being inter-related. As a way to facilitate discussion and direction from the Board of Zoning Adjustments and the Planning Commission in a common setting, all three topics were chosen to be brought forward at this joint work session. If direction is given to bring forward potential Zoning Code amendments on any of these topics, staff will prepare additional analysis and environmental review before bringing the matter back to the Board of Zoning Adjustments and Planning Commission for recommendation, with final review and action by the City Council.

DESCRIPTION AND STAFF ANALYSIS

Standards for Development of Large Homes

The current application for a large home on Darius Court and other recent applications has raised concerns by the public over the standards and review process for large homes and additions. There is no specific definition in Article 3 of the Zoning Code for 'large' homes; however, Section 2-584 includes regulations for "new homes or additions to existing homes that would result in a residence of 4,000 square feet or larger."

At the direction of City Council, in 2001 staff presented Zoning Code amendments that established a Site Plan Review process for residential and non-residential development. The 2001 amendments defined regulations for Minor and Major Site Plan Review, which are used to review new single-family homes and additions to existing homes. The table included in Section

*JJ-1*

2-584 (attached) indicates the review process and decision-making body for each type of single-family construction, which ranges from administrative planning review to a public hearing before the Board of Zoning Adjustments.

Staff performed an informal review (via review of online Municipal Codes) of various jurisdictions, including some that more commonly regulate large homes and/or hillside development. The guideline for comparison was for zoning standards similar to the City's RS Residential Single Family District. Staff notes that this is not an exact 'apple-to-apple' comparison because, for example, some jurisdictions had a different minimum lot size for single-family residential uses.

Applicable General Plan policies related to residential development include the following:

> *Policy 2.05 – Alternations, Additions, and Infill;*
> *Policy 2.08 – Privacy and Views;*
> *Policy 2.09 – Off-Street Parking;*
> *Policy 2.14 – Constrained Sites;*
> *Policy 3.01 – Mix of Unit Types;*
> *Policy 3.02 – Mix of Price Ranges;*
> *Policy 3.04 – Promotion of Infill;*
> *Policy 3.09 – Executive Housing*

In drawing some conclusions from the comparison of data, staff has identified the following issues and recommendations for consideration by the Board of Zoning Adjustments and Planning Commission.

**Issue: Compatibility with the Neighborhood**

- *Establish a maximum Floor Area Ratio (FAR) to limit size and scale of homes* – This can either be done for the site as a whole, or separately for each story of construction (e.g. as Santa Monica does). In the Solano Beach data, FAR is scaled in relation to the size of the lot, with the allowed FAR decreasing as the size of the lot increases. Slope can also be taken into account to further limit total square footage on hillside lots (e.g. Solano Beach, Los Altos Hills and Pasadena).

  Examples of data from recent San Leandro projects will be presented at the work session.

**Issue: Potential Privacy/Shade Impacts on Adjacent Structures**

- *Codify step-back requirements for second story construction* – Currently setbacks are analyzed with guidelines established by the Zoning Enforcement Official (ZEO). The guidelines are not codified as required standards, but are assessed by the ZEO on a case-by-case basis. Standards could be established, with the caveat that applications not meeting the standards would require a higher level of review. If FAR standards are established for the

Board of Zoning Adjustments/Planning Commission Staff Report   October 19, 2006
Joint Work Session on Proposed Zoning Code Amendments   Page 2 of 7

U-2

second story of construction, then codification of the guidelines may not be necessary, as the second floor FAR standard would serve the same purpose.

**Issue: Parking**

▸ *Consider increasing parking standards to alleviate on-street parking impacts* – Although the City's standard of two (2) covered off-street parking spaces/single-family home is in keeping with many of the cities analyzed; one option could include the provision of additional required parking for homes with 5+ bedrooms. This additional parking need not be covered and could include tandem parking.

Residential Condominium Conversion Process

This matter is predicated in part by the increase in the number of condominium applications, mostly in the Residential Outer (RO) District, that the City has received (some conversion applications have also been processed in the Residential Duplex (RD) District). Zoning Code Section 5-2424 stipulates that conversions involving four residential units or less are subject to a use permit, with the Board of Zoning Adjustments as the decision-making body.

Under current zoning regulations, properties in the RO and RD districts may build additional units on a single parcel if minimum standards regarding lot size, lot coverage, parking, and building setbacks can be met. New units require Site Plan Review approval (under Article 25 of the Zoning Code), which involves immediate neighbor notification and administrative action by the Zoning Enforcement Official (ZEO) after a minimum 10-day written notification period. However, Article 25 (Section 5-2506) stipulates that for projects requiring both Site Plan Review and a use permit, the Board of Zoning Adjustments shall be the decision-making body.

Under the regulations of the Subdivision Map Act, residential condominium conversions require processing of a Parcel Map, with the City Council as the only reviewing and decision-making body (e.g., Parcel Maps do not require review or recommendation by either the Board of Zoning Adjustments nor the Planning Commission prior to going to the City Council). For applicants in the RO or RD that wish to do a condominium conversion of their property (whether in combination with Site Plan Review or without, if the units have already been built), they must go to the Board of Zoning Adjustments for use permit approval, then to the City Council for approval of the Parcel Map. Staff believes this creates an onerous process that does not add to the ability for the City to review and apply residential development standards, as the Parcel Map is simply a vehicle for subdivision of property and has no design review function.

The Parcel Map process involves submittal of an application with the Engineering and Transportation Department, with review by various City departments, including the Community Development Department, which once satisfied with the application, prepares a Planners Report that accompanies the application to the City Council. The purpose of the Planners Report is to verify that the proposal is in conformance with: the use permit (and any accompanying conditions of approval); the City's Subdivision Ordinance; the Subdivision Map Act; and policies of the General Plan. If approved by the City Council, the single-lot subdivision allows

the sale of the properties individually, with future maintenance of all properties governed by Covenants, Conditions and Restrictions (CC&Rs) placed on the property.

Associated with the increase in development applications in the RO District has been the concern over off-street parking associated with the proposed additional units. Article 17 of the Zoning Code has more relaxed parking standards for the RO District than for other residential districts. Staff believes that the off-street parking concerns would be adequately addressed if RO standards were the same as for other residential districts.

Staff is recommending the following options for consideration by the Board of Zoning Adjustments and Planning Commission:

▸ Delete Section 5-2514 of the Zoning Code, which currently requires use permit approval for conversions of four lots or less. The application process for the Parcel Map itself would remain unchanged, with internal staff review under the regulations of the Subdivision Map Act and the City's Subdivision Ordinance, with approval by the City Council. The process for Site Plan Review would remain unchanged.

▸ Modify Section 4-1704 (table) as follows (deletions shown in ~~strikeout~~ and additions in *italics*).

| | |
|---|---|
| Residential Single-Family (RS, RD, *RO*, and RM) | 2, non-tandem covered, per unit |
| ~~Single-Family Residential (RO)~~ | ~~2, may be uncovered and in tandem~~ |
| Residential Two-Family (RD, *RO*, and RM) | 2, including 1 covered, per unit |
| ~~Two-Family Dwelling (RO)~~ | ~~3 for each two-family dwelling (two may be tandem and all may be uncovered)~~ |

Assembly Uses in Industrial Limited (IL) Zoning District

On May 18, 2006, staff received an application from Faith Fellowship Church (FFC) requesting a Zoning Code amendment to conditionally permit Assembly uses in Industrial Limited (IL) zones. FFC is interested in purchasing the property at 14600 Catalina (formerly occupied by MDL). This property is zoned Industrial Professional (IP). Although not currently codified in Article 3 – Definitions of the Zoning Code, assembly uses include the following two uses that are defined: Clubs and Lodges; Religious Assembly.

Currently, the Zoning Code conditionally permits Religious Assembly uses in R districts, and Faith Fellowship's current location at 577 Manor is zoned RS (PD), Residential Single Family, Planned Development Overlay District.

Board of Zoning Adjustments/Planning Commission Staff Report          October 19, 2006
Joint Work Session on Proposed Zoning Code Amendments                    Page 4 of 7

J-4

In light of the application by FFC to locate in a non-residential district, staff analyzed the possibility of allowing assembly uses on appropriate non-residential sites, and expanding the land use options for such uses.

Staff notes that analyzing this matter raises larger General Plan policy issues. Staff looked at the following overriding General Plan Policies for guidance:

- "The areas most suitable for conversion to non-industrial uses are those located adjacent to existing housing, or in areas which lack the amenities to meet the needs of modern industry. Such areas exist along San Leandro Boulevard, Alvarado Street, and Marina Boulevard" (Page 3-52 of the General Plan).

- General Plan Policy 7.06 *Adaptive Reuse*; Policy 7.07 *Tax Base Enhancement*; Policy 10.04 *Industrial Sanctuary*; and Policy 33.04 *Separation from Sensitive Uses*;

Based on the above policies, the following criteria are suggested for evaluating appropriate locations for large assembly uses:

- Properties not located along major commercial corridors (E. 14th Street and Auto Mall area of Marina Boulevard) – *to preserve the commercial character of these corridors*;

- Properties not designated IG or IP – *to comply with General Policies;*

- However, if property is in an Industrial District, it be located near the periphery – *to comply with General Plan policies for preservation and enhancement of the City's industrial base*;

- Minimum 2-acre area – *to accommodate large assembly uses*;

- Abuts or is within ¼ mile of an arterial street – *to ensure adequacy of the street system to accommodate the traffic from such uses*;

- Vacant/underutilized property – *that may be available in the future for assembly uses.*

After inputting these criteria, 13 potential areas were derived, with the applicable assumptions indicated for each of the areas (attached map).

Based upon the analysis performed, staff is recommending two options for consideration by the Board of Zoning Adjustments and Planning Commission.

*Option 1 – Amend Zoning Code to allow Assembly uses in IL Zoning District.* Under Option 1, Assembly uses could be added as a 'conditionally permitted' use in all IL zones, with use permit review and approval under the Board of Zoning Adjustments. Alternatively, base development standards (such as have been developed for residential uses) could be developed for Assembly uses, such that applications meeting such standards could be reviewed and approved

Board of Zoning Adjustments/Planning Commission Staff Report    October 19, 2006
Joint Work Session on Proposed Zoning Code Amendments    Page 5 of 7

D-5

administratively by the Zoning Enforcement Official (ZEO) through a Site Plan Review application. For applications that don't meet the standards, these could be reviewed by the ZEO at a public hearing, or be referred to the Board of Zoning Adjustments. With this option, a total of approximately 94 acres currently zoned IL would be affected (this includes some areas of railroad right-of-way).

*Option 2 – Apply 'Assembly' Overlay District to Identified Areas.* Under Option 2, the green areas identified on the draft map would have an Assembly Overlay District applied to them. This would be accomplished via a Zoning Code amendment to define the Assembly Overlay District (new Article), and then rezoning all of the designated areas with the new Assembly Overlay District. Under this option, the underlying zoning designations for each of the individual properties would not change, similar to how the S and PD Overlay Districts are utilized. With this option, a total of approximately 218 acres would be affected (this includes some areas of railroad right-of-way).

Staff notes that under either option, Religious Assembly uses would continue to remain conditionally permitted in R Districts.

Finally, when staff brings the matter back through the public hearing process, a definition for Assembly uses will be recommended as part of the proposed Zoning Code amendments. A codified definition would preclude future confusion that may occur for assessing Clubs and Lodges and Religious Assembly uses.

ENVIRONMENTAL REVIEW

Once specific Zoning Code amendments are proposed, staff will prepare the necessary environmental analysis prior to bringing the matters back for public hearings.

PUBLIC NOTIFICATION

Notification for this work session included a legal advertisement published in the Daily Review and a Courtesy Notice was sent to all of the neighborhood associations listed on the City's official association roster. At the time of writing this report, no comments had been received regarding these items.

RECOMMENDATION

As this is a work session item, no formal action is requested. Comments and direction made by the Board of Zoning Adjustments and Planning Commission will be utilized in formulating proposed changes. Any proposed changes to the Zoning Code will be brought to the Board of Zoning Adjustments and the Planning Commission for a recommendation, with final action taken by the City Council.

ATTACHMENTS

Exhibit A – Zoning Code Section 2-584 Table
Exhibit B - Development Standards Comparison for Single-Family Residential (Table)
Exhibit C – Draft Potential Assembly Use Areas (Large scale, color version will be available at the work session)


### 2-584 RO and RS Districts – Overview of Residential Site Plan Review Requirements

| TYPE OF SINGLE-FAMILY CONSTRUCTION | DISTRICT & TYPE OF REVIEW REQUIRED | |
|---|---|---|
| | **RO, RS, & RS-40**<br>[REFER TO SECTION 2-580] | **RS-VP**<br>[REFER TO SECTION 2-582] |
| **I. SINGLE STORY CONSTRUCTION** | | |
| **"MINOR ADDITIONS"**<br>▫ Additions less than 250 square feet, including additions of accessory buildings or garages. | None required | **MINOR**<br>**View Preservation/ Site Plan Review**<br>• notice to adjacent properties<br>• no hearing required, action by ZEO |
| **"ADDITIONS and NEW HOMES"**<br>▫ Additions of 250 square feet or larger, and new homes, but not "major additions and new large homes" as outlined below. | None required | **MAJOR**<br>**View Preservation/ Site Plan Review** |
| **"MAJOR ADDITIONS and NEW LARGE HOMES"**<br>▫ New homes or additions to existing homes that would result in a residence of 4,000 square feet, or larger; or,<br>▫ An addition that exceeds 100% of the existing residence's floor area | **MAJOR**<br>**Residential Site Plan Review**<br>• notice to adjacent properties<br>• action by ZEO or SDSC at public hearing | • notice to properties within 500' radius<br>• action by ZEO or SDSC at public hearing |
| **II. TWO STORY CONSTRUCTION** | | |
| **"MINOR ADDITIONS," "ADDITIONS and NEW HOMES"**<br>▫ All additions and new homes, other than "major additions and new large homes" as outlined below. | **MINOR**<br>**Residential Site Plan Review**<br>• notice to adjacent properties<br>• no hearing required, action by ZEO | **MAJOR**<br>**View Preservation/ Site Plan Review**<br>&<br>**Exception**<br>(TO EXCEED SINGLE STORY/ 18-FOOT HEIGHT LIMIT) |
| **"MAJOR ADDITIONS and NEW LARGE HOMES"**<br>▫ New homes or additions to existing homes that would result in a residence of 4,000 square feet, or larger; or,<br>▫ An addition that exceeds 100% of the existing residence's floor area | **MAJOR**<br>**Residential Site Plan Review**<br>• notice to adjacent properties<br>• action by ZEO or SDSC at public hearing | • notice to properties within 500' radius<br>• action by BZA at public hearing |
| **II. THREE STORY CONSTRUCTION** | | |
| (ALL ADDITIONS and NEW HOMES) | **MAJOR**<br>**Residential Site Plan Review**<br><br>SAME AS ABOVE | **MAJOR**<br>**View Preservation/ Site Plan Review**<br>**& Exception**<br>SAME AS ABOVE |

**Development Standards Comparison for Single-Family Residential**

| City | Maximum Lot Coverage | Maximum Floor Area | Maximum Height or # Stories | Minimum Required Parking | Step-back Requirement[1] | Discretionary Review |
|---|---|---|---|---|---|---|
| San Leandro | 50%; 33.3% in RO | ND[2] | 30' RS<br>18' RS-VP | 2 covered | Guidelines suggest 2nd floor cover 30-50%, but not > 75% of first floor (includes attached garage) | Minor SPR approved administratively by ZEO after neighbor notification; Major SPR approved by ZEO at public hearing; 2-story in RS/VP is approved by BZA at public hearing |
| Albany | 50% | 55% | 28'; up to 35' at front setback w/45° daylight plane | 2; 2 add'l required for secondary unit (can be tandem) | ND | Approvals by Community Development Director at a public hearing, or by the Planning and Zoning Commission at a public hearing |
| Oakland | 40% or 2,000 sf, whichever is greater | ND | 25-30' | 2 | ND | Approvals administratively by City Planning Director; may be referred to Planning Commission |
| Hayward | 40% | ND | 30' | 2 | ND | Approved administratively by Planning Director; may be referred to Planning Commission |
| Los Altos Hills | See Note 3 | See Note 4 | 27'-32' | 4; plus 1 add'l for secondary unit | ND | Approved administratively by Planning Director if <3,000 sf; Approved by Planning Director at public hearing if >3,000 sf; primary residence approved administratively by Planning Commission |
| Palo Alto | Maximum house size of 6,000 sf (includes attached garage and attached secondary units) | 45% for first 5,000 sf of lot size, then 30% for >5,000 sf of lot | 17' and one story for substandard lot size or < 50' wide; 30' for standard lot; 33' if > 12:12 pitch | 2 (1 covered); plus 2 add'l space for secondary unit | ND | Minor application approved administratively by Planning Director; Major application has recommendation at public hearing by Architectural Review Board, with final decision by Planning Director |
| Arcadia | 45% | 35% for 2-story homes | 25' for lots up to 71' wide; up to 35' for lots 100' or wider | 2 covered | ND | Approved administratively by Planning Director |
| Solano Beach | For slopes >20%, allowed density is ½ | 50% for lots up to 6,000 sf; 17.5% for lots 6-15,000 sf; 10% for lots 15-20,000 sf; 5% for lots > 20,000 sf | 25'; daylight plane can allow up to 30' with Council approval | 2 | ND | Approved at public hearing by View Assessment Committee; may be referred to City Council |
| Beverly Hills | ND | 1,500 sf + 40% of lot | 28'; 32' if both side yards >10' | 2/4-bedroom; 3/5-bedroom; 4/6+ bedroom | ND | Permitted without design review if development standards are met |
| Pasadena | No limit if lot <7,200 sf; 35% if > 7,200 sf | 35% of lot area + 500 sf; 25% for hillside lots | 23' at plate; 32' at ridge | 2 covered | ND | Approved administratively by Planning Director; may be referred to Design Commission |
| Santa Monica | 50%; 60% if lot <3,100 sf; 40% if > 5,000 sf | 35% lot coverage for 1st floor; 26% for 2nd floor | 28' | 2 in garage; tandem allowed for lots <30' wide | See Note 5 | Approved administratively by Zoning Administrator; may be referred to Planning Commission |
| Temple City | 50%; plus 20% of lot area required to be permeable | 35% plus 400 sf for 2-car attached; 600 sf for 3-car attached | 26'; max. of 1 story/20' for flag lot | 2; 3/4-bedroom (includes den/library); 2/guesthouse | 2nd floor shall not exceed 75% of total floor area of first floor, including attached garage; At least 50% of 2nd floor front elevation setback no less than 10' from first story | Approved administratively by Planning Director |
| Sunnyvale | 45% | 45% or 4,050 sf, whichever is less | 2 stories; 30' | 2 covered; plus 2 in driveway | 2nd story shall be set back 25' | May be approved at administrative hearing by Hearing Officer; may be referred to Planning Commission |

D-9



CITY OF SAN LEANDRO
Potential Assembly Use Areas