Kevin T. Snider, State Bar No. 170988
*Counsel of record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: kevinsnider@pacificjustice.org
         mattmcreynolds@pacificjustice.org

Peter D. MacDonald, State Bar No. 69789
LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210
Pleasanton, CA 94566-7371
Tel. (925) 462-0191
Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL, <br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, et al.<br><br>Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No.:  C07-03605 –PJH-JCS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION**<br><br>Date:    September 5, 2007<br>Time:    9:00 a.m.<br>Ctrm:    3<br>Hon.:    Phyllis J. Hamilton<br>Complaint filed:  7/12/07 |

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

- 0 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Defendants Misconstrue the Preliminary Injunction Standard . . . . . . . . . . . . . . . . . . . . . .1

II.   The CHURCH Has Demonstrated a Substantial Burden . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  The CHURCH cannot realistically locate elsewhere in the City . . . . . . . . . . . . . . . . .3
    B.  Defendants seek to turn substantial burden into a "Catch-22". . . . . . . . . . . . . . . . . . 4
    C.  Defendants' reliance on foreign authorities is unhelpful  . . . . . . . . . . . . . . . . . . . . . .5
    D.  The CHURCH has exhausted its administrative remedies . . . . . . . . . . . . . . . . . . . . ..6
        1.  The City's "incomplete application" argument is misleading . . . . . . . . . . . . . . 6
    E.  Defendants understate the magnitude of the proposed parking amelioration . . . . . . . .7

III.  The CHURCH Has Demonstrated an Equal Terms Violation  . . . . . . . . . . . . . . . . . . . . . .7

    A.  The CITY'S rational basis standard under the Equal Terms provision of RLUIPA is
        inconsistent with the law in the Ninth Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
    B.  The CHURCH is similarly situated to other properties within the Assembly Use
        Overlay District, yet it was excluded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    C.  Rejecting the California Building Code's definition of "Assembly Use" is
        nonsensical . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
    D.  Both IP and IL districts include entertainment and recreational uses . . . . . . . . . . . . 10
        1.  The CITY was previously in violation of RLUIPA. . . . . . . . . . . . . . . . . . . . . . . 11

IV.   The CITY Has Not Demonstrated a Compelling Interest. . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.  Rigid adherence to a defective General Plan is not a compelling interest . . . . . . . . . .11
    B.  Enforcement of zoning and planning regulations is not a compelling interest . . . . . . 13
    C.  The CITY's "zoning vs. CUP" argument is a distinction without a difference for
        purposes of RLUIPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348 (9th Cir. 1985) . . . . . . . . . . . . .3, 14

*Civil Liberties for Urban Believers v. City of Chicago*,
    342 F.3d 752 (7th Cir. 2003)[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
    218 F.Supp.2d 1203 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 6, 13

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
    269 F.3d 1149 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Elsinore Christian Ctr. v. City of Lake Elsinore*, 291 F. Supp. 2d 1083, 1086
    (C.D. Cal. 2003), *rev'd on other grounds*, 197 Fed. Appx. 718 (9th Cir. 2006),
    *cert. denied*, --- S.Ct. --- (July 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Greater Bible Way Temple of Jackson v. City of Jackson*,
    478 Mich. 373, 733 N.W.2d 734 (Mich. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
    456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-6, 12-15

*Konikov v. Orange County,* 410 F.3d 1317 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . .13

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) . . . . . . . . . . 11

*Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005) . . . . . . . . . . . . .. . .13

*P. v. Riles*, 502 F.2d 963 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . .. . .. . . . .. . . ..1-2

*San Jose Christian College v. City of Morgan Hill*,
    360 F.3d 1024 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5, 13

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*,
    396 F.3d 895 (7th Cit. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tandy v. City of Oakland*, 208 Cal.App.2d 609 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . 8

---

[1] The foreign authorities cited herein have already been filed by Defendants In the interest of judicial economy, Plaintiffs are not re-filing them with the Court..

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

*Tanner Motor Livery, Ltd. v. Avis*, 316 F.2d 804 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . 2

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove*,
    460 F. Supp. 2d 1165 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9

**U.S. STATUTES**

42 U.S.C. 2000cc *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 15

**OTHER SOURCES**

146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

**INTRODUCTION**

In many ways, the real estate mantra "location, location, location" encapsulates the issues on both sides of the pending Motion. On the one hand, the proposed CHURCH location on Catalina Court has been treated "on less than equal terms with a nonreligious assembly or institution" in at least two critical ways. First, other assembly uses are permitted at the Catalina Court location. Second, the CITY used proximity to a hazardous materials business plan to reject the proposed Catalina Court location while assuring the Court in its Brief that such proximity does not disqualify church use in the areas recently rezoned as the AU Overlay District.

On the other hand, Defendants' Opposition to the Church's Motion seems to suffer from amnesia as to the Court's location. This Motion is not being determined under the jurisdiction of the Seventh Circuit, the Third Circuit, the state of Michigan, or any of the other far-flung corners of the country to which Defendants have resorted for more favorable—but less applicable— interpretations of RLUIPA. Whether they like it or not, Defendants' actions must be evaluated first and foremost by Ninth Circuit precedents, particularly the *Guru Nanak Sikh Society* decision, with respect toward decisions from fellow federal district courts in California. In light of those precedents, the Motion for Preliminary Injunction should be granted.

**ARGUMENT**

**I.    Defendants Misconstrue the Preliminary Injunction Standard.**

To hear Defendants tell it, one might think it well-nigh impossible to change the status quo via a preliminary injunction motion. The falsity of this notion is amply illustrated by one of the cases they quote, *P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974). Immediately after the portion of the opinion quoted in Defendants' Opposition, in which the Court stated that the "usual" function of a preliminary injunction was maintaining the status quo, the Court qualified its statement thus:

> 'We are not to be understood as stating that the foregoing principles are hard and fast rules to be rigidly applied to every case regardless of its peculiar facts. The infinite variety of situations in which a court of equity may be called upon for

interlocutory injunctive relief requires that the court have considerable discretion in fashioning such relief.'

*Id.* (quoting *Tanner Motor Livery, Ltd. v. Avis*, 316 F.2d 804 (9th Cir. 1963)). The *Riles* court then proceeded to uphold the district court's decision <u>granting</u> a preliminary injunction.

Defendants further opine that "[t]he burden on the moving party is particularly heavy where an effect of the injunction cannot be undone." Defs. Opp. p. 9:3-4 (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001). Yet Defendants offer nothing beyond insinuation as to why the injunction could not be undone. To the contrary, while Plaintiffs believe they have a high likelihood of prevailing on the merits, there is no reason why, should that ultimately prove not to be the case, the property could not be re-sold to another industrial user. In fact, the extreme overcrowding at its current site, delineated in the CHURCH's Memorandum of Points and Authorities in Support of a Preliminary Injunction, and supporting Declarations, would motivate the CHURCH to occupy the Catalina property as soon as possible with only such alterations as would be necessary to meet fire and safety codes, while deferring major improvements until the litigation is fully and finally resolved.

In this regard, Plaintiffs must take exception to a Declaration, attached to Defendants' Opposition, which baldly asserts that "Plaintiffs will have to spend upwards of $1.5 million on improvements before a certificate of occupancy could be issued." (Schock Decl. ¶14 -- Document 49). This, from someone who has apparently never set foot on the property, and whose knowledge is based largely on old files and aerial photographs. *Id*. ¶5, 8. By contrast, the church has extensively researched the issue and has obtained expert cost estimates that show it would take only $250,000 to get the building in compliance with applicable safety regulations and ready for temporary occupancy. McNely Decl. ¶ 3.

The CHURCH will avoid repeating the various well-established statements of preliminary injunction standards which were set forth in its prior brief, and with which the Court is undoubtedly well acquainted. Suffice it to say that such motions have been utilized by fellow federal courts in California in similar RLUIPA situations where a religious congregation has a critical need to use its property during the litigation, which could take years to resolve. *See, e.g., Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165 (C.D. Cal. 2006); *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F.Supp.2d 1203 (C.D. Cal. 2002). This follows a long line of cases predating RLUIPA, particularly concerning adult businesses, where zoning ordinances have been preliminarily enjoined. *See, e.g., Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348 (9th Cir. 1985) (collecting cases).

## II.   The CHURCH Has Demonstrated a Substantial Burden.

### A. The CHURCH cannot realistically locate elsewhere in the City.

The CITY claims that Faith Fellowship is unlikely to prevail on its substantial burden claim because "the City has recently made nearly 200 non-residential sites available for assembly use," Defs. Opp. at 10:8-9. This assertion paints the distorted picture that the CITY has offered the CHURCH many feasible sites to choose from, with the inference being that the CHURCH's insistence on the Catalina property is simply stubbornness. Taking that issue from the abstract to reality, however, presents a very different scenario.

Discussed elsewhere is the fact that none of the 196 AU Overlay District parcels are more than ¼ mile from a hazardous materials business plan, which was the basis for rejecting the CHURCH's proposed use of the Catalina property. Beyond that issue, not one of the 196 AUOD properties is suitable for the CHURCH. In the words of Ed Bullock, real estate expert specializing in church relocations, "In general, the locations chosen by the City for Assembly Use Overlay are

the less desirable industrial and commercial locations within the City. The primary core of AU Overlay parcels is bisected by Washington Avenue, an old strip commercial street with substantial heavy industrial uses, and sandwiched between two railroad tracks." Bullock Decl, ¶ 5.

Moreover, "There are no properties with land size (3 acres plus), building size (40,000 to 50,000 square feet), suitable configuration (typically rectangular and not L shaped) and with adequate traffic access appropriate to the Church's needs. There is not any property [in the AU Overlay District] that comes even close to meeting the Church's criteria stated above." Bullock Decl. ¶ 6. Finally, "Of the parcels larger than three acres, not one is for sale." *Id.*

In sum, this key contention by the Defendants does nothing to dispel the CHURCH's demonstration of a substantial burden. Beyond the glaring factual discrepancy, as a matter of law, the CITY cannot confine Faith Fellowship to a handful (or fewer) choices as to where it should locate. "RLUIPA does not contemplate that local governments can use broad and discretionary land use rationales as leverage to select the precise parcel of land where a religious group can worship." *Guru Nanak Sikh Society*, 456 F.3d at 992, n. 20.

**B. Defendants seek to turn the substantial burden inquiry into a "Catch-22."**

The emptiness of Defendants' contentions that it made available nearly 200 other sites for the Church also undermines its reliance on *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004). As Defendants note, in that case the Court relied on the fact that "there is no evidence in the record demonstrating that College was precluded from using other sites within the city." *Id.* at 1035; Defs. Opp. 10:25-26. Not so in the present case, where the Church has shown that there simply are no other sites in San Leandro where it could meet, based on the criteria used by the CITY to reject its Catalina Court location.

---

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

- 4 -

More recently, *Guru Nanak Sikh Society* quoted approvingly from *Sts. Constantine and Helen Greek Orthodox Church v. City of New Berlin*, 396 F.3d 895, 899-900 (7th Cir. 2005) for the proposition that "a religious group 'need not show that there was no other parcel of land on which it could build its church." *Guru Nanak Sikh Society,* 456 F.3d at 989. Defendants want it both ways—they seek to preclude consideration of the CHURCH's plight at its present location, while also attacking the large body of evidence that show how that plight will be ameliorated at the Catalina property. The contrived legal dilemma that Defendants present is flatly inconsistent with RLUIPA.

### C. Defendants' reliance on foreign authorities is unhelpful.

Defendants' heavy reliance on RLUIPA cases from foreign jurisdictions underscores the untenable nature of their position. Plaintiffs do not dispute that cases from other jurisdictions may be of some usefulness when they are consistent with Ninth Circuit precedent, or explain issues not addressed by Circuit law. It is not helpful, though, for Defendants to hold forth as though cases from other parts of the country—particularly the Seventh Circuit—are controlling. As a factual matter, the Seventh Circuit has taken a much narrower view of RLUIPA protections than has the Ninth Circuit, which led the *Guru Nanak Sikh Society* court to distance itself from the holding in *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003). In fact, the Ninth Circuit specifically stated that the "oppressive to a significantly greater extent" approach to substantial burden articulated in *San Jose Christian College* was "more lenient" than the Seventh Circuit's formulation. *Guru Nanak Sikh Socity,* 456 F.3d at 989, n. 12. Thus, it is crucial that, to the extent foreign authorities are considered at all, they fit within the framework of this Circuit's decisions. Of course, it is also necessary that such cases be published and still good law, which as will be discussed in Section IV-B, cannot be said for at least five of Defendants' "authorities."

**D. The CHURCH has exhausted its administrative remedies**

**1. The City's "incomplete application" argument is misleading**

This case is not the first time a city has offered the post hoc justification for its mistreatment of a religious congregation that an application was incomplete, or an alternative proposal might be considered. Similar issues crept up in *Cottonwood Christian Center,* where the City of Cypress claimed the church's CUP application was incomplete—and could not be processed—because it lacked design review studies. Eventually, the City Council recognized the error and reversed the decision. 218 F. Supp. 2d at 1213-14. Likewise, in *Guru Nanak Sikh Society*, the Court noted that the County had given the faith group assurances that it would support a temple in the "right location." The Court dismissed the County's offer, noting, "[G]iven that Guru Nanak had repeatedly followed the guidance of governmental bodies about how to obtain a land entitlement to no avail, we cannot credit the Board's offer to cooperate as assuring Guru Nanak's future success." 456 F.3d at 992, n. 20.

The same is true in the present case, where Faith Fellowship acted on the advice of City planning staff for seeking a rezoning, to no avail. The Second Declaration of James Lee, filed herewith, explains exactly what happened with the so-called "incomplete" application. In brief, the City requested additional information on the CUP application shortly before the CHURCH's scheduled City Council hearing on its rezoning request. Lee Decl. ¶3. The Planning Commission had been informed by Ms. Pollart that the CHURCH's CUP would not be processed until a rezoning was approved. *Id.* Thus, supplying the additional information is futile unless and until the Court orders the CITY to process the CUP application.

**E. Defendants understate the magnitude of the proposed parking amelioration.**

Since inadequate parking for congregants tends to establish a substantial burden for RLUIPA purposes, *see Elsinore Christian Ctr. v. City of Lake Elsinore*, 291 F. Supp. 2d 1083, 1086 (C.D. Cal. 2003), *rev'd on other grounds*, 197 Fed. Appx. 718 (9th Cir. 2006), *cert. denied*, --- S.Ct. --- (July 20, 2007), it is not too surprising that the City tries to argue that parking at the Catalina property is not much better than at the Church's current location. Opp. Brief, p. 21 n. 13. This contention is easily dispatched. Even under Defendant's myopic view of the issue that considers only on-site spaces, the addition of 34 parking spaces translates to just over 100 spaces if Faith Fellowship continues its three-service format. Under typical parking space standards for assembly use, which require one space for every four attendees, the gain in on-site parking will allow Faith Fellowship to accommodate 400 more worshippers than it currently could.

That, however, is not even the whole picture. As the Church made clear through its Motion, it has agreements with adjacent property owners to use an additional 200-300 spaces on weekends. D. Mortara Decl., ¶11 (Document 12). Thus, even if the Church reduces its number of services from three to one or two, the gain in numbers of people the Church can host—without even considering on-street parking—is significant. Because of the ample on-street and off-street overflow parking at the Catalina site, during hours when the adjacent industrial properties are not in use, there is not even a rational basis for claiming the parking is inadequate, in contrast to the existing situation where massive overflow parking by church attendees disrupts residents while they are at home.

**III.    The CHURCH Has Demonstrated an Equal Terms Violation**

The ¼ mile circumference from a hazardous materials business plan is a requirement that has been exclusively imposed upon the CHURCH. This requirement is not written in any

ordinance or policy of the CITY, nor was it included in the eight criteria for "safe harbor" application of the AU Overlay District. In its response, the CITY cynically justifies this double standard by claiming that "The flexibility afforded by conditions of approval allows the City to require that a project include safeguards against exposure to environmental hazards." Defs. Opp. p. 14:3-5. If that were true, a CUP at the Catalina site could afford the same protections.

The equal terms provision of RLUIPA cannot be clearer. It is unlawful for a "government to impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The case before the Court is precisely the type of evil that Congress and President Clinton sought to remedy when they passed and signed RLUIPA into law.

### A. The CITY's rational basis standard under the Equal Terms provision of RLUIPA is inconsistent with the law in the 9th Circuit

The CITY puts forward the novel proposition that the equal terms provision should be judged using the rational basis standard. (Opposition, 20:10-13). Once again the CITY takes the unorthodox approach of citing a *state law* case from 1962 (*Tandy v. City of Oakland*, 208 Cal.App.2d 609 (1962)) and an opinion from the 9th Circuit which predates RLUIPA by eleven years.

The rational basis test is simply the wrong standard of review. Unquestionably, the standard for reviewing zoning decisions under the equal terms provision of RLUIPA is that of strict scrutiny. "If a city's zoning laws are found to violate the equal terms provision, they may still be upheld if the government establishes that the law embodies the least restrictive means of achieving a compelling government interest." *Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1174 (C.D. Cal. 2006).

In that the CITY starts with the wrong standard of review, its resulting analysis relative to equal terms is far off the mark. Therefore, the CITY cannot prevail against the CHURCH's cause of action under RLUIPA's equal terms.

### B. The CHURCH is similarly situated to other properties within the Assembly Use Overlay District, yet it was excluded.

The CITY asserts that no similarly situated properties within the Assembly Use Overlay District are similarly situated to the CHURCH. Defendants could not be more wrong. Of the 196 new properties made available by Assembly Overlay, not one of them is subject to the additional burden of having a ¼ mile parameter separating the property from a hazardous materials business plan. (Ex. A, §n(2), Staff Report, 4/12/07, pp. 5-7, *see highlighted section*) (Document 34-2).

Indeed, City Hall is within ¼ mile of numerous hazardous materials business plans. (Ex. D; Pltfs Request for Judicial Notice filed herewith – Document 40). The CITY has not provided one scintilla of evidence that the additional requirement of having a ¼ mile parameter separating the property from a hazardous materials business plan has been applied to *any* other assembly use property within San Leandro. This requirement has been exclusively placed on the CHURCH.

The equal terms provision of RLUIPA make it illegal to impose or implement a land use regulation in a manner that treats a religious assembly differently than a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1). But imposing the ¼ mile hazardous materials buffer zone requirement only on the CHURCH is the type of unequal treatment that Congress and President Clinton sought to prevent through RLUIPA.

### C. Rejecting the California Building Code's definition of "Assembly Use" is nonsensical.

In this state "assembly building" is defined as, "a building or a portion of a building used for the gathering together of 50 or more persons at one time for such purposes as deliberation,

---

education, instruction, worship, entertainment, amusement, drinking or dining, or waiting for transportation." (Cal. Building Code § 203 A; Pltfs. Request for Judicial Notice, Exhibit C – Document 39).  The CITY's objection to the request for judicial notice of the legal meaning of *assembly building* rings hollow because Defendants have adopted that definition from the California Building Code without any modification.  Moreover, it is the Building Code which contains the "health and safety" regulations applicable to assembly uses that the CITY claims as its basis for regulating church assembly use.  Defs. Opp. p. 23:19-20.  Unlike the City of San Leandro, the Building Code does not invidiously discriminate against religious assembly uses, and is applicable to the Catalina site, and for that matter all other property in San Leandro.

In view of Defendants' failure to provide any fact or law which demonstrates that the definition in California's Building Code does not apply to the CITY, their objection is without merit.  California law is clear that "entertainment activities" and "commercial recreational" uses are assembly uses.   Although the CITY asserts that it has nuances in its regulations relative to entertainment and recreational uses (e.g. dance halls, fashion shows, game centers, *see*, Opposition, 18:9-22), the CITY has not disputed this basic premise as to the definition of "assembly use" in its opposition.

**B. Both IP and IL districts include entertainment and recreational assembly uses**

Section 2-704, subsection B of the San Leandro Zoning Code, states that *commercial recreation* and *entertainment activities* are allowed in IL areas via a conditional use permit.  In like manner, Section 2-704, subsection B of the San Leandro Zoning Code, provides that *commercial recreation* and *entertainment activities* are allowed in IP areas with a conditional use permit. (Ex. A(q)(3), pg. 4, section B, items 5 and 10, pg.10 section items 5 and 9 -- Document 37-3).  Since recreation and entertainment assembly uses are permitted in the IP district, religious

assembly uses must also be allowed under RLUIPA, unless the CITY can demonstrate a more compelling reason than loss of property tax revenue.

### 1. The City was previously in violation of RLUIPA

At the time of the initial application for a permit made by the CHURCH, the CITY's regulations allowed entertainment activities and commercial recreational assembly uses by conditional use permit in both IL and IP areas. (Ex. A(q)(3), pg. 4, section B, items 5 and 10, pg.10 section items 5 and 9 --Document 37-3). Though entertainment and commercial recreational assembly uses were allowed via a use permit in San Leandro, religious assemblies were excluded, being limited to only residential areas. (Pollart Decl., ¶4, line 22 – Document 50). Hence, the CITY's own filings with the Court reveals that the Defendants' claim that it treats all assembly uses identically (Opposition, 17:16-21) is not true.

As such, the CITY's prior exclusion of religious assemblies clearly ran afoul of the "equal terms" provision of RLUIPA. This is not subject to debate in that the CITY knew that its regulations violated RLUIPA. Defendant Pollart unequivocally admits this in the record when she stated: "[W]hile Religious Assembly and Clubs and Lodges have separate definitions in the [San Leandro] Zoning Code, they must be treated equally as Assembly uses under the provisions of RLUIPA." (Ex. A, §e(3), pg. 8, *see highlighted portion* – Document 25-2). As a matter of law, excluding a church from locations where recreational and entertainment assemblies are permitted violates the equal terms provisions of RLUIPA. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1219 (11th Cir. 2004).

## IV. The CITY Has Not Demonstrated a Compelling Interest

### A. Rigid adherence to a defective General Plan is not a compelling interest

The Planning Report recommended rejection of the CHURCH's application stating that no violation of RLUIPA was present because said denial advances the CITY's two compelling

interests: (1) the proximity of this assembly use to hazardous materials, and (2) maintaining adherence to the policies in the General Plan. (Ex. A, §n(2), Staff Report, 4/12/07, pg. 7, ¶1, *see highlighted section* – Document 34-2). Attribution of its religious discrimination to General Plan policies is not even based on explicit policies of the General Plan, but filtered down through an after-the-fact list of eight criteria for selection AU Overlay locations supposedly derived from General Plan policies.

Not only is adherence to a General Plan not compelling—it is viewed suspiciously as a harbinger of discrimination. "[O]ften, discrimination lurks behind such vague and universally applicable reasons as traffic, aesthetics, or 'not consistent with the city's land use plan.'" *Guru Nanak Sikh Society*, 456 F.3d at 987, n. 9 (quoting 146 Cong. Rec. S774-01 (daily ed. July 27, 2000)).

Although the CITY fails to articulate in its opposition exactly what aspect of the General Plan they refer to, the Defendants have stated in a number of places in the record and in their filings with the Court that the main concern is economic. For example, in their filings with the Court, they state, "Staff advised ICFG that the City Council, in keeping with policies in the City's General Plan, preferred to maintain existing industrial districts, and was typically reluctant to convert industrial land to non-industrial use." (Opposition, 3:14-16, quoting Hom Dec., ¶7 – Document 47). Further, the Planning Manager's Staff Report identifies "Tax Base Enhancement" as part of the "overriding General Plan Policies." (Ex. A, §g(2), pg. 2, see second bullet point under Discussion -- Document 27-2). It should be noted that the vast majority of sites rezoned AU Overlay are zoned industrial. Additionally, in denying the CHURCH's appeal, Councilmember Prola "expressed concern about taking property out of the tax base." (Exhibit A. §o(4), pg. 12, ¶7 – Document 35-11).

The overriding economic concerns of the General Plan simply do not rise to the level of a compelling interest. As a matter of law, preserving jobs and tax revenues is not a compelling governmental interest. *Guru Nanak Sikh Soc'y,* 456 F.3d at 987. For, "If revenue generation were a compelling state interest, municipalities could exclude all religious institutions from their cities." *Cottonwood Christian Ctr.*, 218 F.Supp.2d at 1228. Thus, the CITY's stated compelling purpose is not compelling at all under the law. Hence, the CITY has failed to carry its burden under both the equal terms and substantial burden provisions of RLUIPA.

**B.  Enforcement of zoning and planning regulations is not a compelling interest.**

In a similar vein, Defendants make the sweeping assertion, "Courts have long recognized that a local government's interest in enforcing its zoning and planning regulation is compelling." Defs. Opp. p. 15:7-8. For this "long recognized" proposition, Defendants cite four cases—all recent, all foreign authorities, and half no longer good law. While Defendants try to blunt the fact that *Konikov* was reversed, *Konikov v. Orange County,* 410 F.3d 1317 (11th Cir. 2005), they do not even bother to inform the Court that their citation to the trial court's decision in *Murphy* was also vacated by the Second Circuit. *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2d Cir. 2005). As such, it is non-citable under Local Rule 3-4(e).[2]

Beyond the troubling fact that, once again, Defendants have based an entire section of their brief on non-controlling and even non-citable cases, their substantive argument defies logic. Once a plaintiff has demonstrated a substantial burden, the City must demonstrate a compelling interest in order to enforce its zoning (or planning) regulations. It begs the question, and renders RLUIPA

---

[2] Defendants' citation to non-citable cases is hardly an aberration; elsewhere they rely on *Petra Presbyterian Church v. Village of Northbrook,* 2003 WL 22048089 (N.D. Ill. 2003) (Defs. Opp. p. 18:6-8, 23:25) and discuss at length *San Jose Christian College v. City of San Jose*, 2001 WL 1862224 (N.D. Cal. 2001) (Defs. Opp. p. 21:15-22:11).  .

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

- 13 -

meaningless, to say, as Defendants do, that their zoning and planning regulations can be justified by themselves. Not surprisingly, this is not the law.

In fact it has been "long recognized" – well before RLUIPA – that a prima facie showing of infringement of a constitutional right (such as freedom of speech) removes the presumption of *validity* of the zoning ordinance – much less any notion that such an ordinance is a compelling interest. To the contrary, a prima facie showing—not unlike a showing of substantial burden—puts the City on the defensive, requiring it to proffer a compelling interest. *See, e.g., Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348 (9th Cir. 1985) (enjoining enforcement of zoning ordinance against adult bookstore).

### C. The City's "zoning vs. CUP" argument is a distinction without a difference for purposes of RLUIPA

Surprisingly—or perhaps not—Defendants devote a lengthy footnote 9 to yet another state court case from another part of the country, *Greater Bible Way Temple of Jackson v. City of Jackson*, 478 Mich. 373, 733 N.W.2d 734 (Mich. 2007). Defendants offer this case for the proposition that "RLUIPA does not even apply to rezoning decisions like the one at issue here." Defs. Opp. p. 14, n. 9.

One must wonder whether Defendants have even read *Guru Nanak Sikh Society*, which is governing law. There, the court addressed this very issue and reached an opposite conclusion. The Ninth Circuit held, "The Sutter County Zoning Code undeniably is 'a system of land use regulations' within the meaning of RLUIPA because it is a 'system of zoning law[s] . . . that limits or restricts a claimant's use or development of land …" 456 F.3d at 986, n. 8 (brackets and ellipses in original) (quoting 42 U.S.C. 2000cc-5). The Court then addressed the issue raised by Defendants head-on:

> By its own terms, it appears that RLUIPA does not apply directly to land use regulations, such as the Zoning Code here, which typically are written in general and neutral terms. <u>However</u>, when the Zoning Code is applied to grant or deny a certain use to a particular parcel of land, that application is an 'implementation' under 42 U.S.C. 2000cc(2)(C).

456 F.3d at 987 (emphasis added).

Likewise, in the present case the CHURCH is not challenging the zoning codes in general, but rather the individualized decision by the CITY to exclude the Catalina property from the AU Overlay District. *Guru Nanak Sikh Society* made clear that zoning decisions are individualized assessments subject to RLUIPA. *Id*. Rather than process the CHURCH proposal as a CUP and rezoning application together, the CITY broke process into linear steps. This approach caused unnecessary delay and allowed the CITY to reject the rezoning on theoretical grounds (e.g. more than ¼ mile from arterial street) while ignoring actual conditions (superb traffic access).

## CONCLUSION

It could not be more true than in this case that "Justice delayed is justice denied." While the case drags on—perhaps for years to come—the CHURCH desperately needs to be freed from its legal limbo in order to use its property consistently with other permitted assembly uses in San Leandro. For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction should be granted.

Respectfully submitted this 22nd day of August, 2007.

By:  PACIFIC JUSTICE INSTITUTE

　　　/S/ Kevin Snider　　　
　　　Kevin T. Snider
　　　Mathew B. McReynolds
　　　Peter MacDonald
　　　Attorneys for Plaintiff and
　　　Real Party in Interest

---

REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

- 15 -