1   Jayne W, Williams, Esq. (SBN:63203)
    jwilliams@meyersnave.com
2   Deborah J. Fox, Esq. (SBN: 110929)
    dfox@meyersnave.com
3   Peter S. Hayes, Esq. (SBN: 184552)
    phayes@meyersnave.com
4   MEYERS, NAVE, RIBACK, SILVER & WILSON
    555 12th Street, Suite 1500
5   Oakland, California  94607
    Telephone: (510) 808-2000
6   Facsimile: (510) 444-1108

7   Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11  INTERNATIONAL CHURCH OF THE          Case No.  C 07-03605 PJH
    FOURSQUARE GOSPEL
12
                                         NOTICE OF MOTION AND MOTION OF
13              Plaintiff,               DEFENDANTS CITY OF SAN LEANDRO,
                                         MAYOR TONY SANTOS, AND CITY
14  v.                                   COUNCILMEMBERS SURLENE G.
                                         GRANT, DIANA M. SOUZA, JOYCE R.
15  CITY OF SAN LEANDRO, TONY            STAROSCIAK, BILL STEPHENS AND JIM
    SANTOS (in his official capacity),   PROLA TO DISMISS COMPLAINT; AND
16  SURLENE G. GRANT (in her official    MEMORANDUM OF POINTS AND
    capacity), DIANA M. SOUZA (in her    AUTHORITIES IN SUPPORT THEREOF
17  official capacity), JOYCE R.
    STAROSCIAK (in her official capacity),   Honorable Phyllis J. Hamilton
18  BILL STEPHENS (in his official capacity),  Complaint Filed: 7/12/07
    JIM PROLA (in his official capacity),
19  JOHN JERMANIS (in his official and
    individual capacities), DEBBIE POLLART   Hearing:
20  (in her official and individual capacities),  Date:        October 31, 2007
    DOES 1-50.                           Time:        9:00 a.m.
21                                       Courtroom:   3
22
                Defendants.
23  _____
24
25  FAITH FELLOWSHIP FOURSQUARE
    CHURCH,
26
27              Real Party in Interest.
28

PLEASE TAKE NOTICE that on October 31, 2007 at 9:00 a.m. at 450 North Golden Gate Avenue, San Francisco, California, Courtroom 3, Defendants City of San Leandro, Mayor Tony Santos, and City Councilmembers Surlene G. Grant, Diana M. Souza, Joyce R. Starosciak, Bill Stephens, and Jim Prola (collectively "the City defendants") move to dismiss the complaint ("the Complaint") of plaintiff International Church of the Foursquare Gospel ("ICFG") and plaintiff/real party in interest Faith Fellowship Foursquare Church ("Church") without leave to amend under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim for which relief can be granted, or, alternately to dismiss without leave to amend each of the First, Second, Third and Fourth Causes of Action as against the moving defendants for failure to state a claim upon which relief can be granted.

The motion is made on the grounds that the Complaint does not state a legally viable claim for relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA," 42 U.S.C. § 2000cc), the Constitution of the United States or any other law or ground asserted in the Complaint as to the City defendants, and that the Complaint cannot reasonably be amended to state any such claim.

This motion will be based on this notice of motion and motion, the memorandum of points and authorities file herewith, all matters that may or must be judicially noticed, the pleadings and papers filed herein including the concurrent motion to dismiss of City Manager Jermanis and former Planning Manager Pollart, and all matters that may be raised at the hearing on this motion.

Dated: September 20, 2007          MEYERS, NAVE, RIBACK, SILVER & WILSON


By_____
    DEBORAH J. FOX
    Attorneys for City Defendants
    CITY OF SAN LEANDRO, *et al.*

1

# TABLE OF CONTENTS

2
Page

3
I.      INTRODUCTION ....................................................................................................... 1

4
II.     STATEMENT OF FACTS ......................................................................................... 2

5
III.    THE STANDARD FOR DISMISSAL ....................................................................... 6

6
IV.     THE COMPLAINT DOES NOT STATE A CLAIM FOR RELIEF

7
        UNDER RLUIPA ....................................................................................................... 6

8
        A.      The City Has Not Imposed a "Substantial Burden" on Plaintiff's

9
                Exercise of Religion Within the Meaning of RLUIPA. ............................. 6

10
                1.      What Constitutes a "Substantial Burden." ..................................... 7

11
                2.      The City's CUP Requirements Do Not Constitute a

12
                        Substantial Burden on Religion ..................................................... 8

13
                3.      The City Decision Not to Rezone the Catalina Street

14
                        Properties Does Not Amount to a Substantial Burden on

15
                        Plaintiff's Religious Activities. ..................................................... 9

16
        B.      The Complaint Does Not State an "Equal Terms" Claim Under

                RLUIPA. ..................................................................................................... 14

17
        C.      The City's Regulations Do Not Totally Exclude Nor Unreasonably

18
                Limit Opportunities for Religious Exercise in the City. ......................... 17

19
V.      THE FIRST CAUSE OF ACTION FOR INJUNCTIVE RELIEF DOES

20
        NOT STATE A VALID CLAIM FOR RELIEF ON ANY THEORY ................................. 19

21
VI.     CONCLUSION ......................................................................................................... 21

22

23

24

25

26

27

28

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associated General Contractors of California, Inc. v.*
*California State Council of Carpenters*,
459 U.S. 519, 103 S.Ct. 897 (1983)............................................................6

*Chase v. City of Portsmouth*,
428 F.Supp.2d 487 (E.D. Va. 2006) ..........................................................1

*Christian Gospel Church v. City and County of San Francisco*,
896 F.2d 1221 (9th Cir. 1990).................................................................21

*Civil Liberties for Urban Believers v. City of Chicago*,
342 F.3d 752 (7th Cir. 2003) ..........................................................7, 10, 20

*Clegg v. Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994).......................................................................6

*Congregation Kol Ami v. Abington Township*,
309 F.3d 120 (3rd Cir. 2002)...................................................................20

*Episcopal Student Foundation v. City of Ann Arbor*,
341 F.Supp.2d 691 (E.D. Mich. 2004)................................................12, 13

*Gemtel Corp. v. Community Redevelopment Agency*,
23 F.3d 1542 (9th Cir. 1994).....................................................................6

*Grace United Methodist Church v. City of Cheyenne*,
451 F.3d 643 (10th Cir. 2006)..................................................................21

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
326 F. Supp.2d 1140 (E.D. Cal. 2003).....................................................14

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
456 F.3d 978 (9th Cir. 2006) ...........................................................7, 8, 20

*Hal Roach Studios, Inc. v. Richard Feiner Co., Inc.,*
896 F.2d 1542 (9th Cir. 1989).....................................................................6

*In re VeriFone Litigation*,
11 F.3d 865 (9th Cir. 1993).........................................................................6

1

TABLE OF AUTHORITIES cont.

2

Page(s)

3

**Cases** *cont.*

4

*Kentucky v. Graham,*

5

473 U.S. 159, 105 S.Ct. 3099 (1985) ........................................................................1

6

*Lee v. City of Los Angeles,*

7

250 F.3d 668 (9th Cir. 2001) ....................................................................................6

8

*Lighthouse Inst. for Evangelism Inc. v. City of Long Branch,*

100 Fed.Appx. 70 (3rd Cir. 2004)........................................................................10, 20

9

10

*Lighthouse Institute for Evangelism, Inc. v. The City of Long Branch,*

406 F.Supp.2d 507 (D.N.J. 2005) ......................................................................... 12

11

12

*Midrash Sephardi, Inc. v. Town of Surfside,*

366 F.3d 1214 (11th Cir. 2004)...............................................................8, 13, 16, 20

13

14

*Petra Presbyterian Church v. Village of Northbrook,*

489 F.3d 846 (7th Cir. 2007) ........................................................... 11, 12, 18

15

16

*Primera Iglesia Bautista Hispania of Boca Raton, Inc. v. Broward County,*

450 F.3d 1295 (11th Cir. 2006)...........................................................................14, 15

17

18

*San Jose Christian College v. City of Morgan Hill,*

360 F.3d 1024 (9th Cir. 2004)..........................................................................7, 10, 21

19

20

*Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin,*

396 F.3d 895 (7th Cir. 2005) ........................................................................... 12

21

*Thompson v. City of Shasta Lake,*

314 F.Supp.2d 1017 (E.D. Cal. 2004).........................................................................6

22

23

*Ventura County Christian High School v. City of San Buenaventura,*

233 F.Supp.2d 1241 (C.D. Cal. 2002).................................................................. 14

24

25

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove,*

460 F.Supp.2d 1165 (C.D. Cal. 2006)................................................................ 17

26

27

*Vision Church United Methodist v. Village of Long Grove,*

468 F.3d 975 (7th Cir. 2006) ................................................................... 17, 18, 20

28

*Westchester Day School v. Village of Mamaroneck,*

386 F.3d 183 (2nd Cir. 2004) ........................................................................... 20

1

TABLE OF AUTHORITIES cont.

2

Page(s)

3

**Cases** *cont*.

4

*Williams Island Synagogue v. City of Aventura*,

5

358 F.Supp.2d 1207 (S.D. Fla. 2005)................................................................................13, 17

6

**Statutes**

7

42 U.S.C. § 2000cc ...................................................................................................passim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Motion to Dismiss City Defendants (City & City Council)                    [C 07-03605 PJH]

*MEMORANDUM OF POINTS AND AUTHORITIES*

I.    *INTRODUCTION*

Defendants City of San Leandro ("the City"), Mayor Tony Santos and Councilmembers Surlene G. Grant, Diana M. Souza, Joyce R. Starosciak, Bill Stephens and Jim Prola ("the City individual defendants" and all collectively "the City defendants") move to dismiss the complaint in this action pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).  The City individual defendants in this action are named in their official capacity only and the suit, as applied to them, is essentially against the City.  *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099 (1985); *Chase v. City of Portsmouth*, 428 F.Supp.2d 487, 489 (E.D. Va. 2006). The City, Mayor and Councilmembers are named in the First Cause of Action (preliminary and permanent injunction); Second Cause of Action (violation of RLUIPA [substantial burden]); Third Cause of Action (violation of RLUIPA [equal terms]); and Fourth Cause of Action (violation of RLUIPA [total exclusion].)[1]

Plaintiff's core claims against the City are based on the "Substantial Burden," "Equal Terms" and "Total Exclusion/Unreasonable Limitations" provisions of the Religious Land Use and Institutionalized Persons Act, generally known as RLUIPA and codified in 42 U.S.C. § 2000cc.  There is no RLUIPA violation here and the claims fail as a matter of law.  Although plaintiff claims to have "outgrown" its current church facilities, and wishes to locate to new quarters where it can accommodate assemblies of more than 1,000 persons, the fact is that plaintiff is successfully conducting a wide range of religious activities on its current property. The City has declined to rezone certain industrial land to accommodate plaintiff's mega church proposal.  However, there is no shortage of other property zoned to allow religious uses in the City.  Indeed, after plaintiff first approached the City in early 2006, the City undertook a comprehensive review of its existing zoning regulations and ultimately expanded opportunities for religious uses by establishing a newly created Assembly Use Overlay District on 196 properties in both industrial and commercial zoned areas that had previously excluded

---

[1]   The discussion of these causes of action, however, is also incorporated by reference into the memorandum supporting the parallel motion to dismiss filed by individual defendants City Manager John Jermanis and former City Planning Manager Debbie Pollart.

1   religious institutions.  Plaintiff cannot claim that a facial neutral zoning scheme which allows

2   religious uses at a wide variety of locations and within multiple zones in the City constitutes

3   an unreasonable restriction or a "substantial burden" on the exercise of religion.

4        Plaintiff also cannot reasonably claim that distinctions made between churches and

5   other types of assembly uses on the one hand, and commercial entertainment and commercial

6   recreation activities on the other violate the Equal Terms provisions of RLUIPA.  There is, in

7   short, no colorable merit to any of plaintiff's RLUIPA claims nor related constitutional

8   claims.  The granting of this motion to dismiss is therefore appropriate.

9   II.    *STATEMENT OF FACTS*

10        This action is brought by the International Church of the Foursquare Gospel ("ICFG")

11  and the Faith Fellowship Foursquare Church ("the Church") which appears to be a local

12  affiliate of ICFG.  The Church is described as a "real party in interest" in the Complaint.

13  Complaint, ¶ 6.  However, it appears that the Church is for all practical intents and purposes

14  the true plaintiff and allegedly aggrieved party in the action.  *See* Complaint, ¶¶ 6, 19-55.

15  The Church is therefore referred to interchangeably with "plaintiff" in this memorandum.

16        The Complaint generally asserts that the Church has "outgrown" the use of its current

17  church facilities within the City of San Leandro, and has been rebuffed by the City in its

18  efforts to acquire and use a larger site that is not within the Assembly Use Overlay District.

19  The Complaint alleges the following specific facts.

20        The Church, founded in 1947, is a Christian organization that currently operates

21  religious facilities at 577 Manor Boulevard within the City of San Leandro.  Complaint, ¶¶ 7,

22  19.  In addition to Sunday morning worship services, the Church conducts other social,

23  instructional and charitable activities of a religious nature on the property and in the

24  surrounding community.  Complaint, ¶¶ 19, 20.  The Church has been quite successful and

25  has purportedly "outgrown" the Manor Boulevard facilities.  Parking facilities are inadequate

26  to serve the 1,700 worshippers that attend Sunday worship services (conducted in three

27  sessions), and the kitchen is too small to prepare all the meals the Church would like to

28  prepare to support its charitable work.  Complaint, ¶ 20.

Because of the constraints at its current site, the Church began a search for new property in January 2006. The Church soon found an "ideal" property elsewhere in the City, consisting of two adjacent parcels totaling some 3.56 acres at 14600 and 14850 Catalina Street ("the Catalina Street properties"). The Catalina Street properties are zoned Industrial Park ("IP"). Complaint, ¶ 21.

In a subsequent meeting with the City's representatives including former Planning Manager (and now defendant) Pollart, the Church learned that assembly uses such as churches are not allowed in the IP zone. Complaint, ¶ 22. The Church was told that City approval for its proposed use of the property might be obtained by (1) applying for a rezone to Industrial Limited ("IL"), and (2) applying for (and obtaining) a conditional use permit ("CUP") for church use.

Following this meeting, the Church entered into a purchase and sale agreement for the Catalina Street properties on March 24, 2006. The Church made an immediate non-refundable $50,000 down payment on that date, followed by another $50,000 non-refundable payment on March 31, 2006. Complaint, ¶ 23. Somewhat incongruously, the Church's governing council did not approve the purchase until March 30, 2006. Complaint, ¶ 24. Moreover, ICFG did not approve the transaction until December 2006. *Id.*

On May 11, 2006 the Church applied for a rezone of the Catalina Street properties. Complaint, ¶ 25. The actual property owner also joined the application on May 18, 2006. Complaint, ¶ 29. After various unexplained delays, during which the Church continued to make additional non-refundable advance payments, the City Board of Zoning Adjustments and the Planning Commission held a joint workshop on October 19, 2006, at which the Church's application was discussed. Complaint, ¶ 39. At the workshop City representatives decided to approach the problem of allowing assembly uses (including churches) in industrial zones by developing a new overlay zoning classification called the Assembly Use Overlay District. *Id.*

The Board of Zoning Adjustment, City Planning Commission and City Council further considered the Assembly Use Overlay concept on various dates, culminating in adoption of the Assembly Use Overlay District and related zoning map amendments on March 19, 2007,

effective May 1, 2007.  Complaint, ¶¶ 42, 45-47; Complaint Exhibit A, §§ k(1)-(5).[2]  The amended zoning map designated some 196 properties located in industrial and commercially zoned areas for the Assembly Use Overlay.  The 196 selected properties were chosen on the basis of eight planning criteria adopted by the City based on provisions of its General Plan.  Complaint, ¶ 49.  The 8 prong criteria included:

- The site was not located along a major commercial corridor.
- The site was not located in the Downtown, Bayfair, Marina Boulevard/SOMAR or West San Leandro General Plan special "Focus Areas."
- The site was not located in a regional-serving retail area.
- The site was not located inside the Downtown Transit-Oriented Development Strategy ("TOD") study area.
- The site abuts or was within ¼ mile of an arterial street.
- The site was not located in a residential zone.  (Churches are already permitted with a CUP in all City residential zones.)
- The site was not public land or zoned Public Service ("PS"), Open Space ("OS") or Commercial Recreation ("CR"), or owned by an Exempt Public Agency or public utility.
- The site was within a contiguous overlay area of 2 or more acres.

*See* Complaint, ¶ 49 and Complaint Exhibit A, § n(2), pp. 4-6.

The Catalina Street properties, on which the Church had closed escrow in December 2006, were not among those chosen for application of the Assembly Use Overlay.  Complaint, ¶¶ 43, 47.

The Church applied for zoning amendments to add the Assembly Use Overlay to the current Industrial Park ("IP") zoning of the Catalina Street properties.  Complaint, ¶ 48.  Based on the eight criteria utilized in the original selection process, City staff and defendant Pollart recommended denial of the rezoning application.  Complaint, ¶ 49.  The staff report

---

[2]  All citations to Exhibit A are the attached exhibits included as part of plaintiff's Complaint unless otherwise noted.

specifically noted that the site did not comply with criteria Nos. 2 and 5, *i.e.* the site was located within an identified General Plan Focus Area reserved for other uses, and was not located within ¼ mile of an arterial roadway. Complaint, ¶ 51 and Complaint Exhibit A, § n(2), p. 4. In addition, the staff report cited the fact that the site was located within 500 feet of businesses operating under Hazardous Materials Business Plans. Complaint, ¶ 52 and Complaint Exhibit A, § n(2), pp. 5-6.

The Planning Commission denied the Church's rezoning application on April 12, 2007. Complaint, ¶ 53. The City Council voted unanimously to deny the Church's appeal of the Planning Commission decision on May 7, 2007. Complaint, ¶ 54. According to the Complaint, the City Council minutes show that the Council did not want the property taken out of the tax base and was responding to neighborhood objections and traffic concerns. *Id*. The actual minutes note that "Councilmember Prola expressed hope that the Church would choose one of the 196 sites in San Leandro designated for assembly use." Complaint Exhibit A, § o(4), p. 12.

As a result of the City's actions, the Church has allegedly been precluded from relocating its religious and charitable activities to the Catalina Street properties, despite expenditures of more than $460,000 on non-refundable down payments, mortgage payments since January 2, 2007, and various application fees and legal costs. Complaint, ¶ 55. The City's actions have supposedly forced the Church to deal with parking and scheduling constraints on its activities due to the inadequacy of its current facilities at 577 Manor Boulevard. The "substantial burdens" allegedly imposed on the Church are set forth in exhaustive detail in paragraphs 56 through 79 of the Complaint. These include, among others, allegations that the City's zoning scheme effectively precludes religious facilities suitable for a congregation of 1,500 persons anywhere in the City (¶¶ 56-57), and inadequate parking and floor space and kitchen facilities restrict operations at the Church's current site. Complaint, ¶¶ 61-63, 65-67, 68-75 and 76-79. The final substantive allegations of the Complaint set forth arguments to the effect that the City's regulatory actions are not justified by compelling public interests and are not "narrowly tailored" to such ends. Complaint, ¶¶ 80-90.

1    III.    *THE STANDARD FOR DISMISSAL*

2        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate

3    where a plaintiff cannot state a set of facts in support of the claim that would entitle him or

4    her to relief.  *Gemtel Corp. v. Community Redevelopment Agency*, 23 F.3d 1542, 1546 (9th

5    Cir. 1994).  While all allegations in the complaint are to be taken as true and considered in the

6    light most favorable to the moving party, a court is not required to accept legal conclusions

7    cast in the form of factual allegations if those conclusions cannot reasonably be drawn from

8    the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

9    "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

10   to dismiss for failure to state a claim."  *In re VeriFone Litigation*, 11 F.3d 865, 868 (9th Cir.

11   1993).  "[I]t is not proper for the court to assume 'that [plaintiff] can prove facts which [he or

12   she] has not alleged or that the defendants has violated the ... laws in ways that have not been

13   alleged.'"  *Thompson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1022 (E.D. Cal. 2004)

14   quoting *Associated General Contractors of California, Inc. v. California State Council of

15   Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).

16       In considering the motion, the Court may take into consideration matters subject to

17   judicial notice, and also documents or other matters submitted with the Complaint.  *Lee v.

18   City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); and *Hal Roach Studios, Inc. v.

19   Richard Feiner Co., Inc.,* 896 F.2d 1542, 1555 (9th Cir. 1989).  The City has therefore

20   submitted with this motion a request for judicial notice of sections of the City of San Leandro

21   Zoning Code that are relevant to plaintiff's claims.  *See* Defendants' Request for Judicial

22   Notice in Support of Motions to Dismiss Complaint, Exhibits 1-7.

23   IV.    *THE COMPLAINT DOES NOT STATE A CLAIM FOR RELIEF UNDER RLUIPA*

24       A.    *The City Has Not Imposed a "Substantial Burden" on Plaintiff's Exercise of

25             Religion Within the Meaning of RLUIPA.*

26       Plaintiff's Second Cause of Action is brought under 42 U.S.C. § 2000cc(a)(1),

27   generally known as the "substantial burden" provision of RLUIPA.  42 U.S.C. § 2000cc(a)(1)

28   provides:

(1)    General rule

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution--

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

Plaintiff specifically alleges that (1) the Assembly Use Permit requirement in and of itself constitutes a substantial burden on religion; and (2) denial of use of the Catalina Street properties has substantially burdened the Church by restricting its religious and charitable activities, and forcing the Church to pay for property it cannot use.  Complaint, ¶¶ 100, 101. Plaintiff also alleges that the City's regulations are not narrowly tailored, not supported by compelling governmental interests, and not the least restrictive means for achieving the City's interests.  Complaint, ¶¶ 103-105.

> 1.    *What Constitutes a "Substantial Burden."*

The initial step in evaluating a "substantial burden" claim is to determine whether the challenged governmental regulations or actions impose a burden on religious activity that is "substantial" within the meaning of RLUIPA.  *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 760 (7th Cir. 2003).  The federal circuits have differed somewhat in defining what constitutes a "substantial burden."  The Ninth Circuit has held that "[F]or a land use regulation to impose a 'substantial burden,' it must be 'oppressive' to a 'significantly great extent.'  That is, a 'substantial burden on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.'"  *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006), quoting *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1034 (9th Cir. 2004).  This standard flows from case law involving First Amendment free exercise claims, which are implicitly

1    incorporated into RLUIPA.  *Guru Nanak*, 456 F.3d at 988.  A "substantial burden" is thus

2    one which "exert[s] substantial pressure on an adherent to modify his behavior and to violate

3    his beliefs."  *Id. see also Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1226

4    (11th Cir. 2004) ["'substantial burden' is akin to significant pressure which directly coerces

5    the religious adherent to conform his or her behavior accordingly."]; *Civil Liberties for Urban*

6    *Believers*, 342 F.3d 752, 761 ["a land use regulation which imposes a substantial burden on

7    religious exercise is one that necessarily bears direct, primary and fundamental responsibility

8    for rendering religious exercise … effectively impractical."].  A substantial burden thus must

9    place "more than an inconvenience" on religious exercise.  *Guru Nanak*, 456 F.3d 978, 988.

10              2.    *The City's CUP Requirements Do Not Constitute a Substantial Burden*
11                    *on Religion*.

12           The fact that a special permit is required for churches and other assembly uses does

13   not violate RLUIPA or any other law.  As discussed in *San Jose Christian College*, 360 F.3d

14   at 1035:

15           . . . '[T]he costs, procedural requirements, and inherent political aspects' of the

16           permit approval process were 'incidental to any high-density urban land use'

17           and thus '[did] not amount to a substantial burden on religious exercise.'

18           [citation omitted.]  'While they may contribute to the ordinary difficulties

19           associated with location (by any person, or entity, religious or nonreligious) in a

20           large city, they do not render impracticable the use of real property [  ] for

21           religious exercise, much less discourage churches from locating or attempting

22           to locate in Chicago.' [citation omitted.]

23           Virtually every RLUIPA case has involved permitting requirements comparable to the

24   City's CUP requirement.  No case has found that permit requirements, standing alone,

25   constitute a substantial burden under RLUIPA.

26   ///

27   ///

28   ///

3.    *The City Decision Not to Rezone the Catalina Street Properties Does
Not Amount to a Substantial Burden on Plaintiff's Religious Activities.*

The facts alleged in the Complaint show, in a nutshell, that ICFG wishes to expand its religious activities by relocating its church to industrial property that, unfortunately, is not zoned for assembly use. Complaint, ¶¶ 20-21, 47-54. The Church contends this has resulted in a substantial burden on its religious activities because its activities at its current church site are constrained by lack of adequate parking, kitchen facilities and building space. Complaint, ¶¶ 61-79. The Church also complains that it has incurred substantial, ongoing costs for the purchase of the Catalina Street properties, without being able to use the Catalina Street properties for religious purposes. Complaint, ¶ 55. The Complaint does not, allege, however, any facts showing that the Church or its members have been unable to conduct their religious activities, or "pressured" to violate their beliefs.

At all times material to the Complaint church uses (currently classified as an "Assembly Use") have been allowed with a CUP in all residential zones in the City. *See* San Leandro Zoning Code, Article 5, §§ 2-504.B.2, 2-506.B.2, 2-508.B.2, 2-510.B.2; City's RFJN, Exhibit 1, pp. 005-008, 010.) Nevertheless when the Church approached the City about locating in an industrial zone in early 2006, the City undertook a major reevaluation of its zoning regulations and ultimately amended the Zoning Code to further expand opportunities for churches by applying the Assembly Use Overlay district to 196 *additional* properties located in commercial and industrial zones. Complaint, ¶¶ 39, 46-47. The fact that the City ultimately declined to add the Catalina Street properties purchased by the Church to these 196 sites does not constitute a substantial burden on religion. The Ninth Circuit and other circuits have squarely rejected the proposition that refusal to rezone a particular site for religious uses, would constitute a substantial burden on religious exercise. In simplest terms, RLUIPA does not exempt churches from the realities of the market place or the necessity of making reasonable efforts to accommodate themselves to valid zoning schemes before claiming they have been "substantially burdened" in violation of RLUIPA.

///

---

9

The Ninth Circuit first addressed a "substantial burden" claim in *San Jose Christian College*, 360 F.3d 1024, 1033-1035. The plaintiff sued after the City of Morgan Hill denied an application to rezone property to allow its use as a religious college. 360 F.3d at 1027-1028. The denial was on procedural grounds, *i.e.* the college had failed to submit complete information with its application. The Ninth Circuit affirmed the granting of a motion for summary judgment in favor of Morgan Hill, finding that denial of the rezoning application did not impose a substantial burden. The Court noted that "it is not at all apparent" that the rezoning would be denied if a proper application were submitted. *Id*. at 1035. The Court went on to note, however, that even if the applicable ordinance may have rendered the plaintiff unable to provide worship or education services at the proposed site, "there is no evidence in the record demonstrating that College was precluded from using other sites within the city." *Id.* at 1035.

In reaching this decision, the Ninth Circuit relied in part on the Seventh Circuit's decision in *Civil Liberties for Urban Believers,* 342 F.3d 752. *San Jose Christian College,* 360 F.3d at 1035; *see also Lighthouse Inst. for Evangelism Inc. v. City of Long Branch*, 100 Fed.Appx. 70 (3rd Cir. 2004). In *Civil Liberties for Urban Believers*, the Seventh Circuit upheld summary judgment for the city and rejected the RLUIPA and constitutional free exercise claims of five churches, each of which had applied for and were denied "special use" permits. The Court noted that the alleged "scarcity of affordable land" and costs of navigating the municipal permitting requirements did not constitute a substantial burden on religion where viable sites ultimately existed and, in that case, were ultimately located by the plaintiffs. The Court noted that neither RLUIPA or the Free Exercise clause require cities to grant churches preferential rights over other land uses, nor insulate churches from "the harsh reality" that "*the marketplace sometimes dictates* that certain facilities are not available to those who desire them." *Civil Liberties for Urban Believers,* 342 F.3d at 761-762; emphasis added.

In another case with facts comparable to those alleged here, the Seventh Circuit also held that denial of a rezoning request did not impose a substantial burden. *Petra Presbyterian*

1   *Church v. Village of Northbrook*, 489 F.3d 846 (7th Cir. 2007).  In *Petra Presbyterian*, a

2   church found an industrially zoned property containing a warehouse that it wanted to convert

3   to a church and an office building that it wanted to convert to classrooms.  However, churches

4   were not allowed in the zone.[3]  The church contracted to purchase the property after receiving

5   what it believed to be a favorable response to its initial inquiries about rezoning the property

6   to all church uses.  The village planning commission subsequently responded negatively to

7   the rezoning application, however.  The plaintiff then withdrew its rezoning application but

8   proceeded to buy the property and use it for church purposes anyway.  The village eventually

9   secured an injunction against continued church use of the property.  The Court rejected the

10  church's subsequent RLUIPA substantial burden claim, finding that a prohibition on churches

11  in industrial zones – including the plaintiff's church – was neither unreasonable nor a

12  substantial burden on religion.  489 F.3d at 850-851.  The Court noted "When there is plenty

13  of land on which religious organizations can build churches (or, as is common nowadays,

14  convert to churches buildings previously intended for some other use) in a community, the

15  fact that they are not permitted to build everywhere does not create a substantial burden."  *Id.*

16  at 851.  The Court also noted that the plaintiff could not complain of the self-imposed

17  hardship caused by its decision to purchase the property before obtaining village approvals:

18          . . . Petra had no reasonable expectation of obtaining a permit.  Having

19          decided to go ahead and purchase the property outright after it knew the

20          permit would be denied, Petra assumed the risk of having to sell the

21  ///

22  ///

23

24  ---

    [3]   The facts in *Petra Presbyterian* are complicated by the fact that non-religious types of

25  assembly uses were allowed in the village's industrial zone at the time the plaintiff acquired

    the property.  The village subsequently amended its ordinances to disallow such uses in order

26  to avoid a potential Equal Terms violation of RLUIPA.  489 F.3d at 847-848; *see* Section

    IV.B, below.  This did not affect the outcome of the plaintiff's claims.  Moreover, San

27  Leandro's Assembly Use definition includes religious institutions and other meeting,

    recreational or social facilities such as union halls, social clubs, fraternal or organizations or

28  youth centers.

1    property and find an alternative site for its church should the denial be

2    upheld . . . just like any other religious organization that wanted to locate in

3    the industrial zone.  *Id.*

4        In *The Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*, 406

5    F.Supp.2d 507, 515-516 (D.N.J. 2005), the Court found that adoption of a redevelopment

6    plan and rezoning that required the plaintiff to relocate their existing church did not impose a

7    substantial burden on the plaintiff where there was evidence that ample suitable alternate

8    locations were available in the city.  And, in *Episcopal Student Foundation v. City of Ann*

9    *Arbor*, 341 F.Supp.2d 691, 705 (E.D. Mich. 2004), the Court found that the plaintiff could not

10   claim a substantial burden in the absence of evidence that it was impractical to lease or

11   sublease alternate facilities that would allow it to conduct religious activities on the scale it

12   desired.

13       These cases establish that a plaintiff may not state a "substantial burden" claim simply

14   by showing that it has been denied, as in this case, the use of a particular property.

15       It has also been held that the plaintiff need not allege or prove that there is literally "no

16   other parcel of land on which it could build its church."  *Guru Nanak*, 456 F.3d 978, 989,

17   quoting *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396

18   F.3d 895, 899-900 (7th Cir. 2005).  A plaintiff may therefore be able to support a substantial

19   burden claim by showing that there is "a paucity of other land available for churches." *Petra*

20   *Presbyterian*, 489 F.3d 846, 851.  The Ninth Circuit explored a case of this kind in *Guru*

21   *Nanak,* 456 F.3d 978, where the defendant county rejected two successive applications for a

22   proposed small temple, and did so on terms which indicated that few, if any, potential sites in

23   the county would be approved.  456 F.3d at 989-992.

24       In this case, however, the Church does not allege, nor could it, that there is a "paucity"

25   of sites available for church use in the City.  As previously noted, churches are permitted with

26   a CUP in all of the City's residential zones, as well as on the 196 sites covered by the

27   Assembly Use Overlay District.

28   *///*

1    The Church's "substantial burden" claim is further undercut by the fact that it

2    admittedly *already has* an operating church with a vast array of active ministries.  The

3    Church offers that it has "outgrown" its current site and they are constrained by inadequate

4    parking, kitchen facilities and meeting space.  The Complaint, however, discloses that these

5    constraints result in merely the types of everyday difficulties and inconveniences that case

6    law has found *not* to amount to a substantial burden.  In *Midrash Sephardi*, 366 F.3d 1214,

7    1227-1228, for example, the Court squarely held that requiring congregants (including

8    seniors out in the hot Miami sun) to walk (because a tenet of their religion precludes driving

9    on the Sabbath) extra blocks to temple did not constitute a "substantial burden."  *See*

10   Complaint, ¶¶ 65, 71, 75.  In *Williams Island Synagogue, Inc. v. City of Aventura*, 358

11   F.Supp.2d 1207, 1214-1216 (S.D. Fla. 2005), the Court found that various interferences with

12   religious services caused by space limitations in the plaintiff's current facilities did not

13   amount to a substantial burden.  In *Episcopal Student Foundation*, 341 F.Supp.2d 691, 704-

14   705, the Court found that restrictions on the plaintiff's operations much like those complained

15   of in this case (inability to convene the entire congregation, inadequate kitchen and dining

16   facilities, lack of space for certain activities) did not constitute a substantial burden, as they

17   did not preclude fulfillment of the church's religious mission as a whole, and there was no

18   evidence that it was impractical to conduct some of these functions at other sites.

19       In this case, the Church does not allege that it is impractical to acquire additional space

20   anywhere in the City to accommodate its activities or to alleviate crowding at its current

21   Manor Boulevard site.  Indeed, some church activities such as counseling programs, weight

22   loss classes, youth programs and the like, could be accommodated in office or professional

23   buildings without any special City approvals.  *See* Complaint, ¶ 79.  There is also no apparent

24   reason that the Church could not, as churches often do when they reach a certain size and

25   popularity, open a second full-service church to serve its members or an annex for certain

26   ministries.  The Church would apparently find it preferable to conduct all services and

27   activities at a single location, notwithstanding the inevitable traffic and other issues this

28   raises.  There is neither logic nor authority, however, for the proposition that it constitutes a

---

13

1  substantial burden on religion for church activities to spread their activities to more than one

2  location.

3          B.      *The Complaint Does Not State an "Equal Terms" Claim Under RLUIPA.*

4          Plaintiff's Third Cause of Action alleges a violation of 42 U.S.C. § 2000cc(b)(1),

5  commonly known as the "Equal Terms" provision of RLUIPA.  42 U.S.C. § 2000cc(b)(1),

6  provides that "[n]o government shall impose or implement a land use regulation in a manner

7  that treats a religious assembly or institution on less than equal terms with a non-religious

8  assembly or institution."

9          The Ninth Circuit has not yet addressed the Equal Terms provision of RLUIPA.

10  Lower courts in this Circuit, however, have construed this provision as a codification of

11  "existing Supreme Court decisions under the Free Exercise and Establishment Clauses of the

12  First Amendment as well as under the Equal Protection Clause of the Fourteenth

13  Amendment." *Ventura County Christian High School v. City of San Buenaventura,* 233

14  F.Supp.2d 1241, 1246 (C.D. Cal. 2002); *Guru Nanak Sikh Society of Yuba City v. County of*

15  *Sutter*, 326 F. Supp.2d 1140, 1155 (E.D. Cal. 2003).

16          Case law in other Circuits has identified three basic types of potential Equal Terms

17  violation: (1) a regulation that "facially differentiates between religious and non-religious

18  assemblies and institutions;" (2) a facially neutral regulation that is nevertheless contrived or

19  "gerrymandered" to burden only religious activity in practice; and (3) selective enforcement of

20  otherwise neutral regulations governing assemblies and institutions.  *Primera Iglesia Bautista*

21  *Hispania of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1308 (11th Cir. 2006).

22          The Complaint does not appear to assert (and certainly does not state facts supporting)

23  either of the latter two types of claim.  The Complaint does not allege any facts suggesting

24  discriminatory enforcement, nor even identify a single non-religious assembly entity that was

25  purportedly treated more favorably, let alone any *similar situated* non-religious entity that

26  was treated different.  *See Primera Iglesia*, 450 F.3d 1311-1312 [addressing "as applied"

27  Equal Terms claim]; *Ventura County Christian High School,* 233 F.Supp.2d 1241, 1247-1250

28  [addressing and rejecting as applied Equal Terms claim].

The Complaint also does not allege any facts supporting a religious "gerrymander" theory. There is no hint that San Leandro's regulations have been crafted in such a way as to exclude religious institutions in practice while generally allowing non-religious assembly uses on the same properties. *See Primera Iglesia*, 450 F.3d 1309-1310 [explaining basis for "gerrymandering" claims]. The sheer number of sites included in the Assembly Overlay Use District - 196 - plus the potentially hundreds of additional sites available in the City's residential zones – precludes any such claim.

The Church does contend that the City has violated the Equal Terms provision by treating churches "on a less than equal basis" with certain non-religious "assembly usages" of a commercial nature, *i.e.* commercial recreation and businesses. Complaint, ¶¶ 108-111.[4] This challenge is apparently based on the fact that "Commercial Recreation" and "Entertainment Activities" are allowed in the IP and IL industrial zones with a CUP, whereas "Assembly Uses", including churches, are permitted in these zones (also with a CUP) only in areas subject to the Assembly Uses Overlay District. *See* San Leandro Zoning Code, Article 7, §§ 2-708.B.5, 2-708.B.9, RFJN, Exhibit 2, pp. 019-020.

These classifications do not violate the Equal Terms provision of RUILPA.

"Entertainment Activities" are defined in Article 3 of the Zoning Code to include specified types of performing events (plus dancing), but to exclude activities "for the non-profit, charitable or educational [purposes] of public or private institutional uses." RFJN, Exhibit 3, p. 034. "Commercial Recreation" is defined as "participant or spectator recreation

---

[4]  It is not entirely clear whether the Church's claims are directed at the current City ordinances or alleged past dissimilar treatment of religious and commercial "assembly usages." However, this is ultimately immaterial. 42 U.S.C. § 2000cc-3(e) provides, in relevant part, "A government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise …" The effect of this language is to bar any claim for violation of the Equal Terms or other provisions of RLUIPA based on regulations that have been abandoned or amended to eliminate the violation. *See Civil Liberties for Urban Believers*, 342 F.3d 752, 762. Consequently, the Court need only consider a RLUIPA challenge to the City's current zoning provisions.

1   or entertainment," and includes "amusement parks, bowling alleys, ice/roller skating rinks,

2   golf courses, miniature golf courses, and scale-model courses." RFJN, Exhibit 3, p. 028.

3         "Assembly Uses" are defined in the Zoning Code as:

4         Meeting, recreational, social facilities of a private or non-profit

5         organization primarily for use by member or guests, or facilities for

6         religious worship and incidental religious education (but not including

7         schools as defined in this section). This classification includes union halls,

8         social clubs, fraternal organizations, and youth centers.

9   RFJN, Exhibit 3, p. 025. Assembly uses are permitted with a conditional use permit in all

10  City residential zones and, since the creation of the Assembly Use Overlay, in all commercial

11  or industrial areas subject to the Assembly Use Overlay District regulations. (San Leandro

12  Zoning Code Article 5, §§ 2-504.B.2, 2-506.B.2, 2-508.B.2, 2-510.B.2, RFJN, Exhibit 2, pp.

13  011-018.

14        By its terms, Section 2000cc(b)(1) requires only equality of religious assemblies and

15  institutions "with a non-religious assembly or institution." It is clear even at a glance that the

16  uses designated as "Entertainment Activities" and "Commercial Recreation" are not readily

17  comparable to typical religious assemblies or institutions, nor, for that matter, to any non-

18  religious uses typically considered as assembly or institutional uses rather than typical

19  commercial uses. While the terms "assembly" and "institution" are not defined in RLUIPA, it

20  can be safely assumed that Congress did not intend these terms to be equated with common

21  commercial types of uses simply because these uses also contemplate a gathering of persons at a

22  particular location. Indeed, if this were the case, then virtually no zone could exclude churches,

23  since there are few land uses that do not contemplate an "assembly" of persons for a common

24  purpose, whether it be work, shopping, food consumption, recreation, entertainment or other

25  pursuits.

26        Courts have found facial violations of the Equal Terms provision where local

27  governments have unreasonably distinguished between religious institutions and similar private

28  but non-religious membership-oriented uses such as private clubs and lodges. *Midrash*

*Sephardi,* 366 F.3d at 1235 [Equal Terms violation found where ordinance allowed "private clubs and lodges" but not houses of worship]; *Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F.Supp.2d 1165, 1174 (C.D. Cal. 2006). No violation has been found, however, where churches were treated similarly to (or more favorably than) such private group uses, but arguably less favorably than dissimilar uses, such as country clubs or residential uses. *See Civil Liberties for Urban Believers,* 342 F.3d 752, 758 and 762 [no Equal Terms violation where ordinance treated religious assemblies the same as "clubs, lodges, meeting halls, recreation buildings, and community centers"]; *Williams Island Synagogue*, 358 F.Supp.2d 1207, 1217-1218.

The different treatment afforded churches and commercial entertainment and recreational uses by the City simply does not violate the Equal Terms provision. The Complaint does not assert facts suggesting any other form of Equal Terms violation, and the third cause of action consequently should be dismissed.

C.    *The City's Regulations Do Not Totally Exclude Nor Unreasonably Limit Opportunities for Religious Exercise in the City.*

Plaintiff's Fourth Cause of Action alleges a violation of the "Total Exclusion/Unreasonable Restrictions" provision of RLUIPA, found in 42 U.S.C. § 2000cc(b)(3). Section 2000cc(b)(3) prohibits states and local governments from adopting land use regulations which either totally exclude religious assemblies from a jurisdiction, or unreasonably limit such uses. *Vision Church United Methodist v. Village of Long Grove*, 468 F.3d 975, 988-991 (7th Cir. 2006).

The precise basis for the Church's Section 2000cc(b)(3) claim is unclear. *See* Complaint, ¶¶ 112-116. The Church appears to contend that the Assembly Use Overlay District designation was contrived and/or has been applied in a manner which precludes religious assemblies in practice because "virtually no properties" subject to the overlay are (1) are more than 2 acres in size and not within ¼ mile of a business operating with Hazardous Materials Business Plans; and (2) more than 500 feet from properties operating under Hazardous Materials Business Plans. Complaint, ¶¶ 113, 114.

1    The first problem with this cause of action is that it ignores the fact that, wholly aside

2  from the Assembly Use Overlay District, churches (including the Church's existing facilities)

3  are permitted with a CUP in all residential zones within the City.  Thus, it is clear beyond

4  dispute that the City's regulations do not "totally exclude" religious assemblies.  42 U.S.C. §

5  2000cc(b)(3).  Nor does the Complaint allege facts indicating that the City regulations, even

6  ignoring the 196 additional sites available in the Assembly Use Overlay District,

7  "unreasonably limit" religious uses.  On the face of it, there is nothing unreasonable in

8  limiting churches to residential zones where they are, in fact, most commonly located, nor in

9  excluding churches from industrial zones altogether.  *See Petra Presbyterian*, 489 F.3d 846,

10  852 [enumerating legitimate concerns with locating churches in industrial areas]; *Vision*

11  *Church*, 468 F.3d 975, 990-991.

12    The second problem with this cause of action is that it is built on a straw man, *i.e.* an

13  apparent assumption that the City will not approve any church use in the Assembly Use

14  Overlay District if the subject property is located in proximity to other properties operating

15  under a Hazardous Materials Business Plan.  There is no such restriction in the City's

16  ordinances.  The Church's own exhibit shows that the City has applied the Assembly Use

17  Overlay designation to a substantial number of properties located near, and often adjacent to,

18  properties with HazMat plans.  Complaint, Exhibit B.  Neither the Assembly Use Overlay

19  District regulations, nor any of the underlying zoning district regulations contain any

20  language prohibiting approval of churches based on the proximity of HazMat Business Plans.

21    It is true that in considering the Church's application to *rezone* the Catalina Street site

22  into the Assembly Use Overlay District, City staff considered the proximity of a number of

23  properties harboring hazardous materials as a factor militating against the rezoning.

24  Complaint, ¶ 52 and Complaint Exhibit A, § n(2), pp. 5-6.  As the Complaint itself

25  acknowledges, however, this was not one of the factors sited by the City Council as a reason

26  for rejecting the rezone.  Complaint, ¶ 54 and Complaint Exhibit A, § o(4), p. 12.

27    In any event, it is hardly unreasonable for the City to consider legitimate public health

28  and safety concerns such as the proximity of hazardous materials when considering an

expansion of the existing Assembly Use Overlay District to allow a major new institutional use. The staff investigation showed that a total of *eight* existing industrial uses within 500 feet of the Catalina Street church site have HazMat plans, and some of these are licensed to maintain up to 5,000 pounds or 22,000 cubic feet of hazardous materials on site. One facility is classified as a generator of from 200 pounds up to 2,200 pounds of hazardous waste per month. Complaint Exhibit A, § n(2), pp. 5-6. Mere consideration of the number of hazardous material users and the extent of their use near a potential assembly site can hardly be deemed an "*unreasonable* restriction" on religious exercise. Neither can mere consideration of these facts be read to indicate a likelihood that applications for church uses will routinely be denied due to the presence of small or isolated amounts of hazardous material activity in the area. The Complaint offers nothing but the barest speculation on this point. Significantly, the Complaint does not allege (*i.e.*, residentially zoned property or property within the Assembly Use Overlay District) any instance in which an assembly use application has been denied on land zoned for such use due to the presence of hazardous materials in the vicinity. At a minimum, any such claim is not yet ripe, and must await the time, if it ever comes, that a such a restriction is actually imposed in practice rather than engage in improper speculation.

V.    *THE FIRST CAUSE OF ACTION FOR INJUNCTIVE RELIEF DOES NOT STATE A VALID CLAIM FOR RELIEF ON ANY THEORY*

Plaintiff's First Cause of Action seeks a preliminary and permanent injunction against all defendants enjoining them from preventing Church religious use on the Catalina Street properties. Complaint, ¶¶ 91-98 and p. 41, line 17-22. Substantively, this cause of action alleges various violations of RLUIPA and the Constitution in grab bag fashion. To the extent that this cause of action hinges on RLUIPA claims, they are adequately answered in the previous Section IV, above.

The constitutional claims included in the First Cause of Action echo claims asserted elsewhere in the Complaint as separate causes of action against individual defendants John Jermanis and Debbie Pollart. These claims are denial of free speech, freedom of assembly,

1    free exercise of religion, and equal protection. *See* Complaint, ¶¶ 93, 94; Fifth Cause of

2    Action (¶¶ 117-119); Sixth Cause of Action (¶¶ 120-122); Seventh Cause of Action (¶¶ 123-

3    125); and Ninth Cause of Action (¶¶ 129-131). The legal merits of these constitutional

4    claims are fully addressed in the independent memorandum of points and authorities filed in

5    support of Jermanis' and Pollart's ("Jermanis Brief") concurrent motion to dismiss. Rather

6    than repeat the analysis wholesale here, this analysis is incorporated herein by reference. *See*

7    Jermanis Brief, pp. 7-19. As discussed there, the Complaint does not state a colorable

8    constitutional claim against any of the defendants in this action. There is thus no viable basis

9    for plaintiff's cause of action for injunctive relief and it should be dismissed.

10        It may be added that municipal land use regulations that withstand scrutiny under the

11   statutory mandates of RLUIPA will almost invariably also pass muster under the more

12   general standards which guide analysis under the First and Fourteenth Amendments directly.

13   *See, e.g.*, *Lighthouse Institute for Evangelism*, 406 F.Supp.2d 507, 520. Some provisions of

14   RLUIPA, *e.g.* the "substantial burden" test have been construed to simply reflect

15   corresponding constitutional standards. *Guru Nanak*, 456 F.3d 978, 988; *Vision Church*, 468

16   F.3d 975, 997. Indeed, to the extent that any provision of RLUIPA is deemed to go beyond

17   guaranteeing mere governmental neutrality or reasonable accommodation of religious

18   activity, it runs the risk of being found invalid under the Establishment Cause. *Westchester*

19   *Day School v. Village of Mamaroneck*, 386 F.3d 183, 189-190 (2nd Cir. 2004).

20        The Equal Terms provision of RLUIPA requiring similar treatment of religious and

21   non-religious "assembl[ies] or institution[s]" has been construed by some courts to impose

22   somewhat more stringent requirements than the Equal Protection clause in the context of

23   claims of facial discrimination. *Midrash Sephardi,* 366 F.3d 1214, 1229-1235; but *see*

24   *Lighthouse Institute for Evangelism,* 406 F.Supp.2d 507, 517-519. Absent a showing of

25   intentional anti-religious discrimination (none is alleged in this case), Fourteenth Amendment

26   equal protection claims involving church uses are governed by the rational basis test. *Civil*

27   *Liberties for Urban Believers*, 342 F.3d 752,766; *Congregation Kol Ami v. Abington*

28   *Township*, 309 F.3d 120, 133-134 (3rd Cir. 2002); *Christian Gospel Church v. City and*

1   *County of San Francisco*, 896 F.2d 1221, 1225 (9th Cir. 1990).   Regulations or actions which

2   satisfy the Equal Terms requirements of RLUIPA will thus inevitably satisfy the less

3   demanding rational basis test.  Absent intentional discrimination or clearly content-based

4   regulation, First Amendment free speech and free assembly claims in the zoning and land use

5   context are reviewed under the intermediate scrutiny afforded to time, place and manner

6   regulations generally. *San Jose Christian College*, 360 F.3d at 1032-1033; *Grace United*

7   *Methodist Church v. City of Cheyenne*, 451 F.3d 643, 656-658 (10th Cir. 2006).  Again, a

8   regulation which violates neither the substantial burden or total exclusion/unreasonable

9   restriction provisions of RLUIPA is unlikely to violate this standard.

10       In sum, the facts alleged in the Complaint here will not support constitutional claims

11   against the City or other defendants any more than they support the Church's RLUIPA

12   claims.

13   VI.   *CONCLUSION*

14       The Complaint in this action does not state any viable claim for relief against the City

15   defendants and it is respectfully requested that the motion to dismiss should be granted in its

16   entirety without leave to amend.

17

18   Dated: September 20, 2007       MEYERS, NAVE, RIBACK, SILVER & WILSON

19

20

21         By_____/s/_____

22           DEBORAH J. FOX
             Attorneys for City Defendants

23   1013153_2          CITY OF SAN LEANDRO, *et al*.

24   136.5016

25

26

27

28