1  Jayne W, Williams, Esq. (SBN: 63203)
   jwilliams@meyersnave.com
2  Deborah J. Fox, Esq. (SBN: 110929)
   dfox@meyersnave.com
3  Peter S. Hayes, Esq. (SBN: 184552)
   phayes@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California  94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11 INTERNATIONAL CHURCH OF THE          Case No.  C 07-03605 PJH
   FOURSQUARE GOSPEL
12
                                        NOTICE OF MOTION AND
13              Plaintiff,               MOTION OF INDIVIDUAL
                                         DEFENDANTS JOHN JERMANIS
14 v.                                    AND DEBBIE POLLART TO
                                         DISMISS COMPLAINT; AND
15 CITY OF SAN LEANDRO, TONY             MEMORANDUM OF POINTS AND
   SANTOS (in his official capacity),    AUTHORITIES IN SUPPORT
16 SURLENE G. GRANT (in her official     THEREOF
   capacity), DIANA M. SOUZA (in her
17 official capacity), JOYCE R.          Honorable Phyllis J. Hamilton
   STAROSCIAK (in her official capacity),Complaint Filed: 7/12/07
18 BILL STEPHENS (in his official capacity),
   JIM PROLA (in his official capacity), Hearing:
19 JOHN JERMANIS (in his official and    Date:        October 31, 2007
   individual capacities), DEBBIE POLLART Time:        9:00 a.m.
20 (in her official and individual capacities), Courtroom:   3
   DOES 1-50.
21
22              Defendants.
23

24
25 FAITH FELLOWSHIP FOURSQUARE
   CHURCH,
26
27              Real Party in Interest
28

PLEASE TAKE NOTICE that on October 31, 2007 at 9:00 a.m. at 450 North Golden Gate Avenue, San Francisco, California, Courtroom 3, Defendants City Manager John Jermanis ("Jermanis") and former Planning Manager Debbie Pollart ("Pollart") will move (1) to dismiss the complaint ("the Complaint") of plaintiff International Church of the Foursquare Gospel ("ICFG") and plaintiff/real party in interest Faith Fellowship Foursquare Church ("Church") without leave to amend under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim for which relief can be granted, or, alternatively to (2) dismiss without leave to amend each individual cause of action stated in the Complaint as against the moving defendants for failure to state a claim upon which relief can be granted, or (3) dismiss each of the Second through Eleventh Causes of Action against the defendants in their individual capacity on the ground that defendants are entitled to immunity.

The motion is made on the grounds that the Complaint and each cause of action therein does not state a legally viable claim for relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA," 42 U.S.C. § 2000cc), the Constitution of the United States or any other law or ground asserted in the Complaint, and that the Complaint cannot reasonably be amended to state any such claim, and further on the ground that defendants are entitled as a matter of law to absolute legislative immunity and/or qualified immunity on each of the Second through Eleventh Causes of Action on the facts and claims alleged therein.

This motion will be based on this notice of motion and motion, the memorandum of points and authorities file herewith, all matters that may or must be judicially noticed, the pleadings and papers filed herein, and all matters that may be raised at the hearing on this motion.

Dated: September 20, 2007          MEYERS, NAVE, RIBACK, SILVER & WILSON

By_____
    DEBORAH J. FOX
    Attorneys for City Defendants
    CITY OF SAN LEANDRO, *et al*.

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ............................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................ 2

      A.   Background Allegations and Events ................................................... 2

      B.   Allegations Against City Manager Jermanis ..................................... 4

      C.   Allegations Against Former Planning Manager Pollart ................... 4

      III.  THE COMPLAINT DOES NOT IDENTIFY ANY INDIVIDUAL
            CONDUCT BY DEFENDANT JERMANIS THAT IS RELEVANT TO
            ITS LEGAL CLAIMS ............................................................................ 5

IV.   THE COMPLAINT DOES NOT STATE ANY VIABLE RLUIPA CLAIM
      AGAINST THE INDIVIDUAL DEFENDANTS ........................................... 6

V.    THE COMPLAINT DOES NOT STATE ANY VIABLE CONSTITUTIONAL
      OR OTHER CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS ............. 7

      A.   Preliminary and Permanent Injunction Claim Fails (First Cause of
           Action) .................................................................................................. 7

      B.   The Defendants Did Not Interfere With Plaintiff's Exercise of
           Religion (Fifth Cause of Action) ......................................................... 8

      C.   The Complaint Does Not State a Claim for Denial of Free Speech
           (Sixth Cause of Action) ...................................................................... 10

      D.   The Defendants Have Not Interfered With Plaintiff's Freedom of
           Assembly (Seventh Cause of Action) ................................................ 13

      E.   The Complaint Does Not State a Claim for Interference with
           Freedom of Association (Eighth Cause of Action) ........................... 14

      F.   The Complaint Does Not State a Claim for Denial of Equal
           Protection (Ninth Cause of Action) .................................................. 15

1

TABLE OF CONTENTS cont.

2

Page(s)

3

    G.    *The Complaint Does Not State a Claim for Denial of Due Process*

4

           *(Tenth Cause of Action)* ........................................................................... 15

5

        1.    *Vague Regulations*. ...................................................................... 16

6

        2.    *The Complaint Does Not State a Claim for "Undue Delay"* ................... 17

7

VI.    *THE DEFENDANTS ARE ALSO ENTITLED TO IMMUNITY* ....................................... 19

8

    A.    *Absolute Immunity For Actions In Legislative Capacity* ....................................... 19

9

10

    B.    *To the Extent They Are Not Entitled to Legislative Immunity, the*

           *Individual Defendants Are Entitled to Dismissal on the Basis of*

11

           *Qualified Immunity* ............................................................................ 21

12

        1.    *Plaintiff Has Not Alleged a Violation of Any Clearly*

13

               *Established Rights* ............................................................. 22

14

        2.    *Objective Reasonableness* ............................................................. 24

15

VII.    *CONCLUSION* ............................................................................................ 25

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2
Page(s)

3
**Cases**

4

*Act Up!/Portland v. Bagley,*
5
    988 F.2d 868 (9th Cir. 1993) ...........................................................................................21, 22

6

*Aitchison v. Raffiani,*
7
    708 F.2d 96 (3rd Cir. 1983) ...................................................................................................20

8

*Anderson v. Creighton,*
9
    483 U.S. 635, 107 S.Ct. 3034 (1987) ..............................................................................21, 22

10

*Arnel Development Co. v. City of Costa Mesa,*
11
    28 Cal.3d 511, 169 Cal.Rptr. 904 (1980) .......................................................................17, 21

12

*Bass v. Attardi,*
    868 F.2d 45 (3rd Cir. 1989) ...................................................................................................20
13

*Biblia Abierta v. Banks,*
14
    129 F.3d 899 (7th Cir. 1997) ...........................................................................................19, 21

15

*Board of Regents v. Roth,*
16
    408 U.S. 564, 92 S.Ct. 2701 (1972).......................................................................................18

17

*Bogan v. Scott-Harris,*
18
    523 U.S. 44, 118 S.Ct. 966 (1998)...................................................................................19, 20

19

*Brown v. Crawford County,*
20
     960 F.2d 1002 (11th Cir. 1992) .............................................................................................21

21

*Bryan v. City of Madison,*
22
    213 F.3d 267 (5th Cir. 2000) .................................................................................................20

23
*Christian Gospel Church v. City and County of San Francisco,*
    896 F.2d 1221 (9th Cir. 1990)..........................................................................................10, 15
24

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
25
    508 U.S. 520, 113 S.Ct. 2217 (1993) ......................................................................................9

26

*City of Renton v. Playtime Theaters, Inc.,*
27
    475 U.S. 41, 106 S.Ct. 925 (1986).................................................................................11, 12, 13

28

TABLE OF AUTHORITIES cont.

Page(s)

**Cases** *cont.*

*Civil Liberties for Urban Believers v. City of Chicago,*
   342 F.3d 752 (7th Cir. 2003) ........................................................................passim

*Congregation Kol Ami v. Abington Township,*
   309 F.3d 120 (3rd Cir. 2002) ........................................................................ 15

*Crosby v. Paulk,*
   187 F.3d 1339 (11th Cir. 1999) .................................................................... 22

*Davis v. Scherer,*
   468 U.S. 183, 104 S.Ct. 3012 (1984) ......................................................... 22

*Devereaux v. Abbey,*
   263 F.3d 1070 (9th Cir. 2001) ..................................................................... 21

*Dittman v. California,*
   191 F.3d 1020 (9th Cir. 1999) ..................................................................... 18

*Ellis v. Coffee County Board of Registrars,*
   981 F.2d 1185 (11th Cir. 1993) ............................................................19, 20

*Episcopal Student Foundation v. City of Ann Arbor,*
   341 F.Supp.2d 691 (E.D. Mich. 2004) ...................................................... 22

*Grace United Methodist Church v. City of Cheyenne,*
   451 F.3d 643 (10th Cir. 2006) ...................................................................... 8

*Gravel v. United States,*
   408 U.S. 606, 92 S.Ct. 2614 (1972) ........................................................... 20

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
   456 F.3d 978 (9th Cir. 2006) ....................................................................... 22

*Harlow v. Fitzgerald,*
   457 U.S. 800, 102 S.Ct. 2727 (1982) ......................................................... 21

*Houghton v. South,*
   965 F.2d 1532 (9th Cir. 1992) ..................................................................... 22

*Hughes v. Lipscher,*
   852 F.Supp. 293 (D.N.J. 1994) ................................................................... 20

iv

TABLE OF AUTHORITIES cont.

Page(s)

**Cases** *cont.*

*In re VeriFone Litigation,*
   11 F.3d 865 (9th Cir. 1993) ........................................................................................... 6

*Kentucky v. Graham,*
   473 U.S. 159, 105 S.Ct. 3099 (1985) ........................................................................... 5

*Konikov v. Orange County,*
   410 F.3d 1317 (11th Cir. 2005) ................................................................................... 16

*Members of the City Council of the City of Los Angeles v. Vincent,*
   466 U.S. 789, 104 S.Ct. 2118 (1984) ......................................................................... 12

*Mendoza v. Block,*
   27 F.3d 1357 (9th Cir. 1994) ....................................................................................... 22

*Messiah Baptist Church v. County of Jefferson,*
   859 F.2d 820 (10th Cir. 1988) ....................................................................................... 9

*Midrash Sephardi, Inc. v. Town of Surfside,*
   366 F.3d 1214 (11th Cir. 2004) .............................................................................. 22, 23

*Monell v. Department of Social Services,*
   436 U.S. 658, 98 S.Ct. 2018 (1978) ............................................................................. 6

*Moran v. State of Washington,*
   147 F.3d 839 (9th Cir. 1998) ....................................................................................... 22

*Nichols v. Logan,*
   355 F.Supp.2d 1155 (S.D. Cal. 2004) ........................................................................... 5

*Petra Presbyterian Church v. Village of Northbrook,*
   489 F.3d 846 (7th Cir. 2007) .................................................................................. 24, 25

*Prater v. City of Burnside,*
   289 F.3d 417 (6th Cir. 2002) .................................................................................... 8, 18

*Rini v. Zwirn,*
   886 F.Supp. 270 (E.D.N.Y. 1995) ............................................................................... 20

*San Jose Christian College v. City of Morgan Hill,*
   360 F.3d 1024 (9th Cir. 2004) ............................................................................... passim

TABLE OF AUTHORITIES cont.

Page(s)

**Cases** *cont.*

*Spoklie v. Montana*,
411 F.3d 1051 (9th Cir. 2005) ........................................................................ 5

*Stubblefield v. City of San Bernardino*,
32 Cal.App.4th 687, 38 Cal.Rptr.2d 413 (1995) ............................... 18

*Terry v. Bobb*,
827 F.Supp. 366 (E.D. Va. 1993) ........................................................ 20

*The Lighthouse Institute for Evangelism, Inc. v. City of Long Branch*,
406 F.Supp.2d 507 (D.N.J. 2005) ........................................................ 9

*Topanga Press, Inc v. City of Los Angeles*,
989 F.2d 1524 (9th Cir. 1993) ............................................................. 13

*Ventura County Christian High School v. City of San Buenaventura*,
233 F.Supp.2d 1241 (C.D. Cal. 2003) .................................................. 8

*Village of Euclid v. Ambler Realty Co.*,
272 U.S. 365, 47 S.Ct. 114 (1926) ...................................................... 17

*Village of Hoffman Estates, Inc. v. The Flipside*,
455 U.S. 489, 102 S.Ct. 1186 (1982) ............................................16, 17

*Vision Church United Methodist v. Village of Long Grove*,
468 F.3d 975 (7th Cir. 2006) ............................................................... 23

*Ward v. Rock Against Racism*,
491 U.S. 781, 109 S.Ct. 2746 (1989) ............................................11, 12

*Wedges/Ledges of California, Inc. v. City of Phoenix*,
24 F.3d 56 (9th Cir. 1994) ................................................................... 18

*Williams Island Synagogue v. City of Aventura*,
358 F.Supp.2d 1207 (S.D. Fla. 2005) .................................................. 23

1

TABLE OF AUTHORITIES cont.

2

Page(s)

3

**Statutes**

4

42 U.S.C.

5

§ 1983 ........................................................................................................ 2, 6, 7, 19

6

§ 2000cc ...................................................................................................... 1, 6, 22, 23

7

Cal. Government Code § 65860 .................................................................................. 17

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*MEMORANDUM OF POINTS AND AUTHORITIES*

2

I.    *INTRODUCTION*

3     City Manager John Jermanis ("Jermanis") and former Planning Manager Debbie Pollart

4  ("Pollart") bring this motion to dismiss the complaint in this action, as it applies to them, in its

5  entirety or, in the alternative, to dismiss all causes of action against Jermanis and Pollart that fail

6  to state a claim as a matter of law.   To the extent any of plaintiff's damages claims (Second

7  through Eleventh Causes of Action) are deemed to state a colorable claim for relief against

8  Jermanis and Pollart in their individual capacity, the Court is asked to grant dismissal on the

9  ground that defendants are entitled to either (1) absolute legislative immunity, or (2) qualified

10  immunity. *See* Section VI, below.

11     As discussed in this memorandum, the Complaint for Violation of Constitutional Rights

12  and the Religious Land Use and Institutionalized Persons Act ("the Complaint") filed in this

13  action does not identify any conduct which serves as a basis for imposing liability on City

14  Manager John Jermanis.  Defendant Pollart is apparently being charged with liability for her

15  advisory role in preparing City ordinances and authoring a staff report rejecting a rezoning

16  application which would have allowed plaintiff to relocate its existing church to a larger

17  property in one of the City's industrial zones.  But even assuming this could be sufficient

18  grounds for liability, there is utterly no legal merit to any of plaintiff's statutory or constitutional

19  claims.

20     The City's zoning regulations place churches on an equal footing with other similar land

21  uses ("Assembly Uses" under the City's zoning ordinance), and provide ample opportunity for

22  churches to open and operate in the City's residential zones and 196 appropriate locations in

23  other zones.  Contrary to plaintiff's apparent belief, neither the Religious Land Use and

24  Institutionalized Persons Act ("RLUIPA") nor the Constitution entitle churches to rezoning on

25  demand. Under the standards enacted by Congress and RLUIPA and those applied by the courts

26  in adjudicating constitutional claims, plaintiff has not been subjected to any impermissible

27  "substantial burden," any unfair or discriminatory treatment, nor any violation of its rights to the

28  free exercise of religion, freedom of speech, assembly and association, nor any denial of due

1

process or equal protection.  Moreover, to the extent any of plaintiff's damages causes of action might be deemed to state a colorable claim for relief, defendants Jermanis and Pollart are entitled to either absolute legislative immunity, or qualified immunity.  Individual City officers and employees cannot be punished for their roles in preparing and adopting City legislation, nor may they be held liable in any context under 42 U.S.C. § 1983 for actions which are objectively reasonable on the facts, and do not violate rights that are so clearly and precisely established that the violation should have been obvious.

II.    *STATEMENT OF FACTS*

Plaintiff (styling itself as "real party in interest") Faith Fellowship Foursquare Church ("the Church") is a Christian organization that currently operates religious facilities at 577 Manor Boulevard within the City of San Leandro.  Complaint, ¶¶ 7, 19-20.  The Church is affiliated with the International Church of the Foursquare Gospel ("ICFG"), who is also named as a plaintiff, albeit a nominal one.  Complaint, ¶ 6.  The Complaint generally alleges that the Church has "outgrown" its current facilities on Manor Boulevard, but that its efforts to relocate to an "ideal" larger property on industrial land in the City have been frustrated by the City.  Complaint, ¶¶ 20-55.  The relevant specific allegations of the Complaint are as follows.

A.    *Background Allegations and Events*.

In March 2006 Church representatives met with City officials, including defendant Pollart, to learn what zoning approvals would be necessary to allow the Church to relocate to a 3.56 acre property (consisting of two adjacent parcels) on Catalina Street, in an area zoned as an Industrial Park ("IP").  Complaint, ¶¶ 21, 22.  The Church was advised to apply for a rezoning of the property to Industrial Limited ("IL") and apply for a conditional use permit ("CUP").  Complaint, ¶ 22.  The Church entered into a contract to buy the Catalina Street properties, and filed a rezoning application in May 2006.  Complaint, ¶¶ 23-29.  Ultimately, the City undertook a City-wide reevaluation of its zoning regulations governing assembly uses in non-residential zones.  This process culminated in the adoption of a new Assembly Use Overlay District in March, 2006.  Complaint, ¶¶ 30-47; Ordinances 2007-005 and 2007-006.  City Defendants' Request for Judicial Notice, etc. ("RFJN"), Exhibits 6, 7.

The Assembly Use Overlay District and related zoning map amendments allowed churches and other "Assembly Uses" to locate (with a CUP) on 196 parcels in the City's industrial, commercial and other zones where they had not previously been allowed. Complaint, ¶ 47; Complaint Exhibit A, § k(1)-(5).[1]  The 196 selected properties were chosen on the basis of eight planning criteria adopted by the City based on provisions of its General Plan. Complaint, ¶ 49. The selected sites, however, did not include the Catalina Street properties, which the Church had proceeded to purchase in December 2006. Complaint, ¶¶ 43, 49.

The Church applied for a zoning amendment to add the Catalina Street properties to the Assembly Use Overlay District. Complaint, ¶ 48. Based on the eight criteria utilized in the original selection process, City staff (including defendant Pollart) recommended denial of the rezoning. Complaint, ¶ 49. The staff report concluded that the site did not comply with criteria Nos. 2 and 5, *i.e.* the site was located within an identified General Plan Focus Area reserved for other uses, and was not located within ¼ mile of an arterial roadway. Complaint, ¶ 51. In addition, the staff report cited an additional criterion for rejection of the site, *i.e.* that it was located near businesses operating under Hazardous Materials Business Plans. Complaint, ¶ 52.

The Planning Commission denied the Church's rezoning application on April 12, 2007. Complaint, ¶ 53. The City Council voted unanimously to deny the Church's appeal of the Planning Commission decision on May 7, 2007. Complaint, ¶ 54. As a result of the City's actions, the Church has allegedly been precluded from relocating its religious and charitable activities to the Catalina Street properties, despite expenditures of more than $460,000 on non-refundable down payments, mortgage payments since January 2, 2007, and various application fees and legal costs. Complaint, ¶ 55. The Church's inability to relocate has allegedly forced the Church to deal with a shortage of room space, parking and inadequate kitchen facilities. Complaint, ¶¶ 61-79. The Complaint further alleges that the City's regulatory actions are not justified by compelling public interests and are not "narrowly tailored." Complaint, ¶¶ 80-90.

///

---

[1]  All citations to Exhibit A are the attached exhibits included as part of plaintiff's Complaint unless otherwise noted.

1

      B.    *Allegations Against City Manager Jermanis*.

2

      John Jermanis is the City Manager of the San Leandro.  Complaint, ¶ 15.  The Complaint

3

ascribes little visible role to Jermanis in the foregoing events.  In paragraph 43, the Complaint

4

alleges that Jermanis suggested that the Church obtain letters from neighboring businesses in

5

support of its application for rezoning of the Catalina Street properties.  Complaint, ¶ 43.  In

6

paragraph 55, the Complaint alleges in conclusory fashion that Jermanis (along with Pollart)

7

"intentionally delayed" review of the Church's "application" for fourteen months.  Complaint,

8

¶¶ 55.  No particular actions Jermanis took to delay the "application" are identified in the

9

Complaint.

10

      Elsewhere the Complaint repeatedly alleges in conclusory fashion that Jermanis (and

11

Pollart) "deprived" plaintiff of various rights, but does not further elaborate as to what actions

12

undertaken by Jermanis individually were deemed to have caused or contributed to these alleged

13

violations.  Complaint, ¶¶ 15, 118. 121, 124, 127, 130, 133, 136.

14

      C.    *Allegations Against Former Planning Manager Pollart.*

15

      Defendant Debbie Pollart is the former Planning Manager for the City of San Leandro.

16

Complaint, ¶ 16.  In March 2006 Pollart and two other City officials not named as defendants

17

met with Church representatives concerning the Catalina Street properties, and allegedly advised

18

them to apply for rezoning of the property from Industrial Park ("IP") to Industrial Limited

19

("IL"), following which the Church could apply for a CUP to allow church use.  Complaint, ¶

20

22.  According to the Church, this turned out to be bad advice.  *Id.*

21

      The Church filed its rezoning application in May 2006.  Subsequently the City began a

22

comprehensive review of its zoning regulations that resulted in adoption of the Assembly Use

23

Overlay District, which allows church uses and other assembly uses (with a CUP) on 196

24

selected properties within the City's commercial, industrial and other non-residential zones.

25

Complaint, ¶¶ 30-47.  The Complaint is largely silent about Pollart's role in this process.  *Id.*

26

When the Church applied for a rezone to add its Catalina Street properties to the Assembly Use

27

Overlay District, Pollart submitted a staff report that recommended against the rezoning.

28

Complaint, ¶¶ 49-52.  The staff recommendation was based in part on the presence of nearby

4

1  properties operating under Hazardous Materials Business Plans in the area.  Complaint, ¶ 52.

2  The Complaint does not disclose whether this last recommendation played a part in the Planning

3  Commission denial of the rezoning application.  Complaint, ¶ 53.  The City Council

4  subsequently denied the Church's appeal of the Planning Commission decision, citing traffic,

5  loss of tax base and neighborhood objections – but not the proximity of toxic materials – as

6  reasons for denial of the rezoning application.  Complaint, ¶ 54.

7       As in the case of Jermanis, the Complaint also repeatedly charges Pollart in conclusory

8  fashion with depriving plaintiff of various rights, but does not further elaborate the specific

9  conduct said to cause these violations.  Complaint, ¶¶ 15, 118, 121, 124, 127, 130, 133, 136.

10  III.    *THE COMPLAINT DOES NOT IDENTIFY ANY INDIVIDUAL CONDUCT BY*

11          *DEFENDANT JERMANIS THAT IS RELEVANT TO ITS LEGAL CLAIMS*

12       One of the great mysteries of this case is the basis upon which City Manager Jermanis is

13  charged with liability.  Plaintiff's claims against Jermanis in his official capacity are functionally

14  claims against the City itself.  *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099

15  (1985).  As such, they are essentially harmless since they do not expose Jermanis to any

16  personal liability, nor expose the City to any liability it might not otherwise have.

17       Plaintiff's claims against Jermanis in his individual capacity are another matter.  To state

18  a claim against an individual defendant, "a plaintiff must show that 'the official, acting under

19  color of state law, *caused* the deprivation of a federal right.'"  *Spoklie v. Montana*, 411 F.3d

20  1051, 1060 (9th Cir. 2005); emphasis added.  The law on this point is aptly summarized in

21  *Nichols v. Logan*, 355 F.Supp.2d 1155, 1165 (S.D. Cal. 2004).  There must be some affirmative

22  act, or failure to perform an affirmative duty, by the individual defendant that causes or

23  contributes to the violation of the plaintiff's rights.  *Id.*  The inquiry into causation "must be

24  individualized."  The "plaintiff must allege *personal acts*" by the defendants, and may not rely

25  on a theory of respondeat superior or collective responsibility.  *Id.;* emphasis in original.

26       As discussed above, the Complaint identifies virtually no significant actions or conduct

27  by Jermanis, let alone conduct that might give rise to federal liability.  Although Jermanis

28  allegedly suggested to the Church that it obtain letters from neighboring businesses supporting

1    its rezoning application, this is hardly a basis for a federal lawsuit.  *See* Complaint, ¶ 43.  If

2    anything, this allegation suggests that Jermanis was supported rather than opposed the Church's

3    efforts.

4          The Complaint does not allege, nor could it, that Jermanis was an actual decisionmaker

5    with respect to the zoning action in question, *e.g.* a City Councilmember or Planning

6    Commissioner.  Neither does the Complaint allege facts indicating that Jermanis had any

7    indirect role, advisory or otherwise, in thwarting the Church's proposals.  While it is true that

8    Jermanis, as City Manager, is the City's highest administrative official, this does not mean that

9    Jermanis sets zoning policy, or that he is customarily involved in the day-to-day operations of

10   the City's planning department.  It is, of course, well settled that there is no respondeat superior

11   liability under 42 U.S.C. § 1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 691-

12   693, 98 S.Ct. 2018 (1978).  Jermanis cannot be held responsible for the actions of subordinates

13   or other City decisionmakers without allegations of affirmative misconduct on his own part.

14         The Complaint does allege in conclusory fashion that Jermanis "intentionally delayed"

15   review of the Church's "application" for fourteen months (Complaint, ¶ 55), and elsewhere

16   allege in boilerplate fashion that Jermanis (and Pollart) "deprived" plaintiff of various rights, all

17   while acting "intentionally" and "in a manner ultra-vires to the law."  Complaint, ¶¶ 124, 127,

18   130, 133, 136.  Such ritualistic allegations alone, however, are not enough to defeat a motion to

19   dismiss.  *In re VeriFone Litigation*, 11 F.3d 865, 868 (9th Cir. 1993).

20   IV.   *THE COMPLAINT DOES NOT STATE ANY VIABLE RLUIPA CLAIM AGAINST THE*

21         *INDIVIDUAL DEFENDANTS*

22         Plaintiff's Second, Third and Fourth Causes of Action are brought directly under RLUIPA.

23   The merits of these claims are fully discussed in the motion to dismiss filed concurrently with this

24   motion by the City of San Leandro, Mayor Tony Santos, City Councilmembers Grant, Souza,

25   Starosciak, Stephens and Prola, which is deemed incorporated herein by reference.  As Jermanis

26   and Pollart are also named as defendants on those causes of action in both their official and

27   individual capacities, the discussion of those causes of action is incorporated here by reference.  In

28   the case of Jermanis, it may be noted that these causes of action suffer from the additional defect

1    that they fail to identify any specific conduct attributable to Jermanis which might constitute a

2    basis for liability under RLUIPA.

3          Plaintiff's Eleventh Cause of Action essentially reasserts the previously stated RLUIPA

4    claims against Jermanis and Pollart in both their official and individual capacities under 42

5    U.S.C. § 1983.  Complaint, ¶¶ 135-136.  As these claims have been fully answered in the

6    argument incorporated by reference, further argument is unnecessary in direct response to the

7    Eleventh Cause of Action.  For the reasons stated, Jermanis and Pollart are entitled to dismissal

8    of plaintiff's RLUIPA claims.

9    V.    *THE COMPLAINT DOES NOT STATE ANY VIABLE CONSTITUTIONAL OR OTHER*

10          *CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS*

11          The bulk of plaintiff's claims against Jermanis and Pollart are asserted under 42 U.S.C. §

12    1983 based on various constitutional theories, and are asserted against Jermanis and Pollart as

13    individuals only.  As noted previously, there appears no factual basis whatsoever for the claims

14    against Jermanis.  As against Pollart, the claims appear based primarily on the assumption that

15    Pollart was somehow responsible for the City's election to not include the Church's Catalina

16    Street industrial properties in the Assembly Use Overlay District.  Whether or not plaintiff can

17    show a direct relationship between Pollart and the City's actual actions, plaintiff's constitutional

18    claims all fail on their merits for the reasons discussed below.

19          A.    *Preliminary and Permanent Injunction Claim Fails (First Cause of Action).*

20          Plaintiff's First Cause of Action seeks a preliminary and permanent injunction against all

21    defendants enjoining them from preventing the Church's religious use of the Catalina Street

22    properties.  Complaint, ¶¶ 91-98 and p. 41, line 17-22.  Substantively, this cause of action

23    asserts an amalgam of RLUIPA and constitutional claims that are essentially reiterated as

24    individual causes of action elsewhere in the Complaint.  To the extent that this cause of action

25    hinges on RLUIPA claims, it is adequately addressed in the memorandum supporting the City's

26    concurrent motion to dismiss, which has been incorporated by reference in Section III, above.

27          The claims of denial of free exercise of religion, free speech, freedom of assembly, and

28    equal protection asserted in the First Cause of Action echo those asserted in the Fifth, Sixth,

Seventh and Ninth Causes of Action, respectively.  *See* Complaint, ¶¶ 93, 94; 117-119; 120-122; 129-131.  These claims are addressed in full below.  The analysis applies equally to defeat the constitutional claims in plaintiff's First Cause of Action.

       B.    *The Defendants Did Not Interfere With Plaintiff's Exercise of Religion (Fifth Cause of Action).*

       Plaintiff's Fifth Cause of Action alleges that Jermanis and Pollart have interfered with plaintiff's right to the free exercise of religion.  Complaint, ¶¶ 117-119.  Plaintiff specifically alleges that "The Defendants have discriminated against the Church by substantially burdening its ability to freely exercise religious faith through the City's assembly use application regulation."  Since plaintiff does not allege any interference with use of its current church activities at 577 Manor Boulevard, this allegation presumably refers to plaintiff's frustrated efforts to relocate to the Catalina Street properties.  Plaintiff also alleges that "Both on its face and as applied, the burden is not neutral or of general application and is not narrowly tailored."  Complaint, ¶ 118.  These conclusory allegations are belied by the actual content of the zoning regulations challenged by the Church.

       Courts evaluating free exercise claims in the zoning and land use context have concluded that zoning regulations restricting religious activity that are neutral towards religion itself and of general application need not be narrowly tailored nor justified by a compelling governmental interest, regardless of any incidental restrictions they may impose on religious activities.  *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1030-1031 (9th Cir. 2004).  In other words, such regulations are subject only to rational basis scrutiny, as is the case for zoning regulations generally.  *Id.* at 1031; *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006); *Ventura County Christian High School v. City of San Buenaventura,* 233 F.Supp.2d 1241, 1251 (C.D. Cal. 2003).  This test is consistent with the principle that the Free Exercise Clause "does not entitle a religious organization to special benefits," but merely to equality with non-religious counterparts.  *Prater v. City of Burnside*, 289 F.3d 417, 428 (6th Cir. 2002).  For this reason, attacks on zoning regulations under the Free Exercise clause have been consistently rejected.  *See, e.g. Civil Liberties for Urban Believers v.*

1    *City of Chicago,* 342 F.3d 752, 763-764 (7th Cir. 2003); *Messiah Baptist Church v. County of*

2    *Jefferson*, 859 F.2d 820, 823-826 (10th Cir. 1988); *The Lighthouse Institute for Evangelism, Inc.*

3    *v. City of Long Branch*, 406 F.Supp.2d 507, 519-520 (D.N.J. 2005) [upholding exclusion of

4    churches from redevelopment zone].

5         Plaintiff's conclusory allegations notwithstanding, the City zoning regulations at issue in

6    this case are both neutral and of general application.  "A law is one of neutrality and general

7    applicability if it does not aim to 'infringe upon or restrict practices because of their religious

8    motivation,' and does not 'in a selective manner impose burdens only on conduct motivated by

9    religious belief.'"  *San Jose Christian College*, 360 F.3d at 1031, quoting *Church of Lukumi*

10   *Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217 (1993).

11        The Complaint does not allege any facts suggesting that the City zoning regulations

12   affecting churches are targeted at religious activity at such, much less intentionally calculated to

13   suppress religious activity.  While churches are recognized as a particular form of land use (as is

14   true of almost all zoning ordinances), they are classified in the City's zoning ordinance as

15   merely one type of "Assembly Use."  Assembly Uses are defined as "Meeting, recreational,

16   social facilities of a private or non-profit organization primarily for use by member or guests, or

17   facilities for religious worship and incidental religious education (but not including schools as

18   defined in this section."  San Leandro Zoning Code, Article 3; RFJN, Exhibit 3, p. 025.

19   Assembly Uses include "union halls, social clubs, fraternal organizations, and youth centers" as

20   well as religious facilities and other types of group or membership facilities.  *Id*.  It is patently

21   obvious that religious facilities are included in this classification not because of their religious

22   activity or content, but because of their similarity in operational terms to other uses in the

23   Assembly Use classification.  The mere fact that a zoning ordinance identifies churches as one

24   among a number of similarly regulated uses does not render the ordinance discriminatory or of

25   less than general application.  *Civil Liberties for Urban Believers,* 342 F.3d 752, 763.

26        Assembly Uses (including churches) are further treated generically throughout the City.

27   Assembly Uses are permitted with a Conditional Use Permit ("CUP") in all residential zones in

28   the City.  San Leandro Zoning Code, Article 5, §§ 2-504.B.2, 2-506.B.2, 2-508.B.2, 2-510.B.2;

RFJN, Exhibit 1, pp. 005-008, 010.  As acknowledged in the Complaint, Assembly Uses are now also allowed with a CUP in industrial and commercially zoned properties that are subject to the Assembly Use Overlay District.  Complaint, ¶ 47; San Leandro Zoning Code Article 13, §§ 3-1320 – 3-1330, RFJN, Exhibits 4, 6, 7.   Nowhere does the zoning ordinance distinguish between religious institutions and other types of Assembly Uses.  Like the zoning regulations in *San Jose Christian College*, "The … city's zoning ordinance applies throughout the entire City, and there is not even a hint that [the plaintiff] was targeted on the basis of religion for varying treatment in the city's application of the ordinance."  360 F.3d at 1032.

The fact that the City's ordinance requires Assembly Uses to apply for and obtain a CUP also does not violate the Free Exercise clause.  *Christian Gospel Church v. City and County of San Francisco*, 896 F.2d 1221, 1223-1225 (9th Cir. 1990).  While it is true that the CUP process permits the exercise of certain discretion by zoning authorities, this feature is neither irrational nor can it be deemed to place an unacceptable burden on religious activity, absent a showing that this discretion has been used as a pretext to discriminate against religious land uses.  *Grace United*, 451 F.3d 643, 650-654.  The Church alleges no past pattern of discrimination by City officials in this case, much less facts showing discriminatory conduct by defendants Jermanis and Pollart.[2]  The Complaint simply does not state a colorable Free Exercise claim against these defendants, or any defendant.

C.    *The Complaint Does Not State a Claim for Denial of Free Speech (Sixth Cause of Action).*

Plaintiff's Sixth Cause of Action alleges that Jermanis and Pollart have violated the First Amendment by restricting plaintiff's free speech rights and "the congregants corresponding right to hear."  Complaint, ¶ 121.  This restriction allegedly results from the crowded facilities, inadequate parking and traffic congestion at the Church's present location, which in turn "are

---

[2]   Neither, for that matter, does plaintiff allege that it has actually applied for and been denied a CUP for an Assembly Use under the City's ordinances for discriminatory or other impermissible reasons.  Thus even were plaintiff's Fifth Cause of Action deemed to include an as applied challenge to the CUP requirement, plaintiff cannot establish either that the claim is ripe for adjudication, or that it has standing to bring the claim.

1  hindering its members and visitors from entering the Church's facilities and exercising their free

2  speech rights." *Id.* Plaintiff's congregants would allegedly be able to speak (and hear) more

3  freely if plaintiff had been allowed to proceed with development of new church facilities on the

4  Catalina Street properties. *Id.*

5      Plaintiff does not allege that defendants have taken any affirmative actions to hinder or

6  suppress speech activities at plaintiff's current church site. The claim thus centers on plaintiff's

7  desire to *expand* current Church free speech activities by relocating to the Catalina Street

8  properties. Even here, however, plaintiff alleges no facts suggesting that the defendants' actions

9  were motivated by a desire to suppress religious (or other) speech activity, as opposed to an

10  intent to regulate the time, manner, place and secondary effects of Church activity, *e.g.* traffic

11  impacts and potential conflicts with other uses.

12      In these circumstances, zoning regulations will be upheld against a free speech challenge

13  notwithstanding any incidental effects the regulations may have on speech activity so long as

14  they meet the common test for time, place and manner regulations. *San Jose Christian College*,

15  360 F.3d 1024, 1032, citing *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 106 S.Ct.

16  925 (1986); *Grace United*, 451 F.3d 643, 657; *Lighthouse Institute for Evangelism*, 406

17  F.Supp.2d 507, 521-522. Under this test, zoning regulations must be upheld so long as they are

18  "designed to serve a substantial governmental interest," "do not unreasonably limit alternative

19  avenues of communication," and are "narrowly tailored" in the sense that they are directed only

20  at the particular class of activities or land uses reasonably believed to generate the type of

21  impacts regulated by the ordinances. *City of Renton*, 475 U.S. at 47 and 52; *see also Ward v.*

22  *Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746 (1989).

23      The City's zoning regulations are clearly "content neutral" with respect to religious

24  speech and expression. They do not provide for granting or withholding permits on the basis of

25  the applicant's speech or viewpoint, religious or otherwise. While churches are recognized as a

26  particular type of Assembly Use, this does not implicate free speech rights any more than

27  recognizing bookstores and libraries as being different uses than restaurants or video game

28  parlors. Where a zoning regulation serves legitimate purposes unrelated to the regulation of

1    speech, it is deemed content neutral for purposes of analysis even if it has some incidental

2    effects on speech activities.  *San Jose Christian Collage*, 360 F.3d at 1033; *City of Renton*, 475

3    U.S. at  48-49; *Ward v. Rock Against Racism*, 491 U.S. 781, 791.

4              It is beyond serious dispute that zoning regulations generally advance substantial

5    governmental interests.  *City of Renton*, 475 U.S. at 50 ["a city's interest in attempting to

6    preserve the quality of urban life is one that must be accorded high respect."]; *Grace United*,

7    451 F.3d 643, 657-658**.**  Municipalities have a legitimate interest in regulating the location and

8    potentially other design and operational characteristics of assembly uses, including churches, so

9    as to avoid or minimize conflicts with other uses.

10             Some of the allegations of the Complaint can be read to assert that the City regulations are

11    not "narrowly tailored."  The regulations, however, need not be the least restrictive means

12    available for addressing potential problems.  *Ward*, 491 U.S. at 797-798.  The "narrow tailoring"

13    requirement is satisfied "so long as the regulation promotes a substantial governmental interest

14    that would be achieved less effectively absent the regulation." *Id*. at 799.  Here, the City's

15    Assembly Use regulations are directed solely at a particular type of land use known to generate

16    particular potential impacts.  That is all that is required to satisfy he narrow tailoring requirement.

17    *City of Renton*, 475 U.S. at 52; *Members of the City Council of the City of Los Angeles v. Vincent*,

18    466 U.S. 789, 808, 104 S.Ct. 2118 (1984) [upholding total ban on private signs on public rights-

19    of-way on grounds that "By banning these signs, the city did no more than eliminate the exact

20    source of the evil it sought to remedy."].  Although Assembly Uses are generally excluded from

21    some zones, this is entirely consistent with the City's goals of minimizing potential conflicts

22    between assembly uses and other potentially incompatible uses, *e.g*. heavy industry.  That the

23    restrictions are "narrowly tailored" is further demonstrated by the adoption of the Assembly Use

24    Overlay District, which allows Assembly Uses on properties in industrial and commercial zones

25    that have been determined potentially suitable for such uses by the City on the basis of reasonable

26    objective criteria.  Complaint, ¶¶ 47, 49.  While plaintiff may wish to second guess the zoning

27    criteria utilized by the City and contend that less restrictive alternatives are possible, this is not the

28    test mandated by the Constitution.  *Ward*, 491 U.S. at 797-799.

1     Zoning regulations also may not "unreasonably limit alternative avenues of

2  communication," meaning that they may not unreasonably restrict the total amount of land

3  available for expressive uses within the marketplace. *City of Renton*, 475 U.S. at 53-54.

4  Plaintiff does not allege, however, that the City zoning ordinances suffer from this flaw, nor

5  could they. Churches, which are classified as an "Assembly Use" in the City's zoning

6  ordinance, are allowed with a CUP in all residential zones in the City. *See* San Leandro Zoning

7  Code, Article 3, RFJN, Exhibit 3, p. 025; Article 5, §§ 2-504.B.2, 2-506.B.2, 2-508.B.2, 2-

8  510.B.2, RFJN, Exhibit 1, pp. 005-008, 010. The Assembly Uses Overlay District adopted by

9  the City has the effect of further expanding the number of properties where churches may

10  potentially locate (with a CUP) by 196. Complaint, ¶ 47; Ordinance Nos. 2007-005, 2007-006,

11  RFJN, Exhibits 6, 7. The City of course, is not required to guarantee that all of these sites are

12  actually devoted to religious or other expressive uses. The Constitution merely requires that the

13  City not use its regulatory powers to unduly restrict churches or others from competing in the

14  market place for purchase or lease of property reasonably susceptible to such use. *City of

15  Renton*, 475 U.S. at 53-54 ["That respondents must fend for themselves in the real estate market,

16  on an equal footing with other prospective purchasers and lessees, does not give rise to a First

17  Amendment violation."]; *see Topanga Press, Inc v. City of Los Angeles*, 989 F.2d 1524, 1529-

18  1531 (9th Cir. 1993).

19     D.    *The Defendants Have Not Interfered With Plaintiff's Freedom of Assembly

20           (Seventh Cause of Action).*

21     Plaintiff's Seventh Cause of Action echoes the First Amendment claim asserted in the

22  Sixth Cause of Action, but alleges that Jermanis and Pollart have deprived the Church of its

23  right to freely assemble for the purpose of religious worship and expression.

24     It will be assumed for purposes of argument that plaintiff is inartfully attempting to assert

25  the assembly rights of Church members as well as any that the Church may have in its own

26  right. Nevertheless, the claim fails for essentially the same reasons as plaintiff's Fifth Cause of

27  Action. Plaintiff does not allege any actions by Jermanis or Pollart (or anyone else) that

28  interfere with assembly activity at its current church site, nor any actions that threaten to curtail

continued use of that site for religious (or other) assemblies. While the City's adopted regulations may have the incidental effect of restricting *expansion* or *relocation* of the Church's religious assembly activities, this does not violate the constitution.

In *San Jose Christian College*, 360 F.3d 1024, 1033 the Ninth Circuit easily rejected a claim that an alleged refusal to rezone property to allow a Christian college violated the plaintiff's right to free assembly. The Court noted: "Admittedly, the PUD ordinance and the City's enforcement thereof render College unable to provide education and/or to worship *at the Property*. But the fact that the church's congregants cannot assemble at that precise location does not equate to a denial of assembly altogether." Emphasis in original.

Other courts have applied the same test applied to Free Speech claims to defeat parallel freedom of assembly or freedom of association claims. *Grace United*, 451 F.3d 643, 658; *Civil Liberties for Urban Believers,* 342 F.3d 752, 765; *Lighthouse Institute for Evangelism*, 406 F.Supp.2d 507, 522-523. The same results apply here. Even assuming the inconveniences plaintiff's members experience at its current Church location could be deemed to implicate the rights of free assembly or association, the City need only make reasonable allowances for religious and other associational uses. Its zoning regulations need not guarantee that every applicant will be able to convert the property of their choice into an assembly hall.

E.    *The Complaint Does Not State a Claim for Interference with Freedom of Association (Eighth Cause of Action).*

Plaintiff's Eighth Cause of Action is a variation on the Seventh. Instead of alleging that Jermanis and Pollart have deprived the Church of its right of free assembly, the Eighth Cause of Action asserts that Jermanis and Pollart have deprived the Church of its "right to freely associate for the purpose of religious worship and expression." Complaint, ¶ 127. No new factual allegations are added to those previously stated. The claim fails for the reasons discussed in Section IV.E, above, pertaining to plaintiff's freedom of assembly claim.

///

///

///

1
2

    F.    *The Complaint Does Not State a Claim for Denial of Equal Protection (Ninth Cause of Action).*

3
4
5
6
7
8
9

    Plaintiff's Ninth Cause of Action asserts that Jermanis and Pollart have denied the Church equal protection.  The main allegation appears to be that Jermanis and Pollart have applied state and City laws, regulations and "plans" in a manner "that was on less than equal terms with non-religious assemblies."  Complaint, ¶ 139.  Presumably, the Church is referencing the distinctions drawn between "Assembly Uses" (including churches) and commercial recreation and entertainment uses, which allowed with a CUP in the City's industrial zones outside of areas subject to the Assembly Use Overlay District.

10
11
12
13
14
15
16
17
18
19
20
21
22

    The Complaint does not allege any facts suggesting discrimination against the Church (or churches generally) based on religious or sectarian animosity.  Absent allegations of such invidious intentional discrimination, plaintiff's equal protection claim is reviewed under the rational basis test.  *Civil Liberties for Urban Believers*, 342 F.3d 752, 766; *Congregation Kol Ami v. Abington Township*, 309 F.3d 120, 133 (3rd Cir. 2002); *Christian Gospel Church v. City and County of San Francisco*, 896 F.2d at 1225.  To assert an equal protection claim, the plaintiff must (1) show that it has been treated differently (and less favorably) than other *similarly situated* individuals or entities; and (2) that the dissimilar treatment is irrational, *i.e.* bears no reasonable relationship to a legitimate governmental purpose.  *Christian Gospel Church*, 896 F.2d at 1225-1226; *Congregation Kol Ami*, 309 F.3d at 133-134.  The City could rationally conclude that the uses (including churches) classified as "Assembly Uses" by its ordinance are not equivalent of commercial recreational and entertainment uses for zoning purposes.  Indeed, such distinctions are virtually universal in zoning ordinances.

23

    The Complaint does not identify any other ascertainable equal protection claim.

24
25

    G.    *The Complaint Does Not State a Claim for Denial of Due Process (Tenth Cause of Action).*

26
27
28

    Plaintiff's Tenth Cause of Action alleges that Jermanis and Pollart have denied the Church due process of law.  Plaintiff does not specifically state whether the violations are deemed violations of procedural or substantive due process, but this does not ultimately affect

15

1   the outcome. From the rather confused rhetoric of the Complaint, it can be distilled that the due

2   process violations alleged consist of (1) reliance on overly vague regulations; and (2)

3   intentionally prolonging the "Assembly Use Permit application process" (presumably meaning

4   the rezoning application process actually utilized by the Church) "in order to obstruct, delay or

5   prevent" Church use of the Catalina Street properties. Complaint, ¶ 133. Neither possible due

6   process claim has any merit.

7                    1.    *Vague Regulations*.

8           Plaintiff specifically asserts that defendants denied the Church use of the Catalina Street

9   properties "based on the City's General Plan, Zoning Code, Zoning Map, and Assembly Overly

10  [sic] District criteria that are in part vague and indefinite and constitute a standard of review

11  different in substance and form than applied to other applicants, including distinct public health

12  and safety criteria." Complaint, ¶ 133, p. 39:26 – 40:4.

13          Since plaintiff does not specify precisely *which* provisions of the City's general plan or

14  zoning regulations are unduly vague, it is impossible to fully evaluate the claim, or even

15  determine whether plaintiff has standing to pursue the claim, *i.e*. that the challenged criteria

16  were actually applied to the Church's rezoning application. More fundamentally, however,

17  plaintiff simply misapprehends the reach of the Due Process void for vagueness doctrine.

18          The concerns implicated by overly vague laws are that (1) they fail to give persons "of

19  ordinary intelligence" fair notice of what the law requires and to conform their conduct

20  accordingly, and (2) they invite arbitrary, subjective and inconsistent enforcement by failing to

21  establish ascertainable standards. *Village of Hoffman Estates, Inc. v. The Flipside*, 455 U.S.

22  489, 102 S.Ct. 1186 (1982); *Konikov v. Orange County*, 410 F.3d 1317, 1329-1331 (11th Cir.

23  2005). A void for vagueness challenge, however, necessarily contemplates a statute or

24  ordinance that directly regulates conduct, and whose violation gives rise to potential loss of life,

25  liberty or property, *i.e*. criminal or civil prosecution. The Due Process clause does not restrict

26  the factors that a governmental agency may consider when deciding whether or not *to adopt* a

27  regulation, nor require that the decision be based on clearly articulated and easily understood

28  standards or guidelines.

1    In this case, the decision complained of by the Church was denial of a requested zoning

2    amendment.  Under California law, a decision to amend zoning, whether for a single parcel or

3    the entire City, is a legislative decision.  *Arnel Development Co. v. City of Costa Mesa*, 28

4    Cal.3d 511, 516, 169 Cal.Rptr. 904 (1980).  To be constitutional, such a decision must of course

5    bear a rational relationship to one or more legitimate governmental purposes and must, under

6    California law, be consistent with the applicable general plan.  *Village of Euclid v. Ambler*

7    *Realty Co.*, 272 U.S. 365, 388, 47 S.Ct. 114 (1926); *Grace United*, 451 U.S. 643, 659; Cal.

8    Government Code § 65860.  Beyond this, however, the weighing and balancing of competing

9    public interests are the hallmark of legislative decisionmaking.  The Due Process clause simply

10   requires that laws ultimately *enacted* through the legislative process be sufficiently clear that

11   persons of reasonable intelligence can determine whether their conduct conforms to the law, and

12   that officials enforcing the law are not given undue latitude for arbitrary enforcement.  *Village of*

13   *Hoffman Estates*, 455 U.S. 489, 498-499.  Moreover, to succeed on a vagueness challenge, the

14   plaintiff must demonstrate that the challenged law "is impermissibly vague in all its

15   applications."  *Id*. at 497.

16       There was nothing vague about the outcome of the legislative process in this case.  It

17   resulted in a clear "No" to the Church's request for a rezoning.  The Church does not claim to be

18   confused or uncertain of this outcome, nor does it profess any uncertainty as to whether or not

19   church use of the Catalina Street properties is permissible under the current zoning.  It is

20   immaterial that the general plan policies considered by the City, or the degree to which the

21   proximity of hazardous waste users was considered in rejecting the Church's rezoning

22   application are unclear to the Church.  There is no basis for the plaintiff's vagueness claim.

23       2.      *The Complaint Does Not State a Claim for "Undue Delay."*

24       Plaintiff also charges the individual defendants with "intentionally prolonging" the

25   application process in order to delay or forestall Church use of the Catalina Street properties.

26   Complaint, ¶ 133, p. 14:18-22; *see also* ¶ 58.

27       It is unclear whether this claim is intended to state a violation of substantive or

28   procedural due process.  In either event, the first indispensable element of the claim is

---

17

1   identification of a specific liberty or property interest that has allegedly been denied by the

2   government's actions. *Board of Regents v. Roth,* 408 U.S. 564, 570-572, 92 S.Ct. 2701 (1972);

3   *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999); *Prater v. City of Burnside*, 289 F.3d

4   417, 431. Property interests protected by the Due Process clause do not arise directly from the

5   Constitution, but are created, and their boundaries defined, by state laws. *Roth*, 408 U.S. at 577;

6   *Wedges/Ledges of California, Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994). Under

7   California law, it is well settled that a property owner has no protected property interest in either

8   current or requested zoning of property. *Stubblefield v. City of San Bernardino*, 32 Cal.App.4th

9   687, 707-708, 38 Cal.Rptr.2d 413 (1995). Instead, zoning classifications are a matter of

10  legislative discretion, which may be altered – or not – without depriving a party of any

11  constitutionally protected property interest. In this case, plaintiff cannot state a claim for

12  unreasonable delay in the rezoning application process because it never had any constitutionally

13  protected property interest at stake in the process to begin with.

14          If plaintiff's claim is predicated on religious liberty interests, the claim must fail for the

15  same reason. While plaintiff may have a generalized liberty interest in the right to practice

16  religion, it is impossible to see how it can claim to have been deprived of this right with respect

17  to land that has never previously been zoned for church use. In any event, any religious liberty

18  interest claim necessarily falls along with plaintiff's Free Exercise claim (Fifth Cause of

19  Action), discussed above. Plaintiff cannot claim deprivation of protected liberty interest if there

20  has been no colorable violation of their First Amendment rights. *Prater v. City of Burnside*, 289

21  F.3d 417, 432.

22          As a final matter, the Complaint does not allege facts showing unreasonable delay by the

23  City (much less Jermanis or Pollart) even if plaintiff's lack of a protected property or liberty

24  interest is ignored. Instead, the Complaint affirmatively shows that there was no extraordinary

25  or unreasonable delay. Plaintiff first approached the City about obtaining approvals for use of

26  the Catalina Street site in March 2006, and filed its first application for a zoning amendment in

27  May 2006. Complaint, ¶¶ 22, 25. Since religious assemblies were not allowed in industrial

28  zones even with a CUP, the City undertook and completed a major revision to its Zoning Code

to add the Assembly Use Overlay and allow assemblies on designated properties in industrial and commercial zones with a CUP, as was already the case in residential zones.  Complaint, ¶¶ 30, 38-39, 42, 46.  This process was completed in less than one year, in March 2007. Complaint, ¶ 47.  The fact that plaintiff's property was ultimately not among the 196 sites selected on the basis of planning criteria admitted in the Complaint does not render the "delay" suffered by the Church during the process unreasonable.  When the Church requested the City to, in effect, take another look by applying to rezone the property into the Assembly Use Overlay District, the City completed its review and decision on the application in less than 3 months, *i.e.* from March 2007, to May 7, 2007.  Complaint, ¶¶ 48-54.  The City has found no authority suggesting that zoning application processing times of this length are excessive or unreasonable, much less that they violate constitutional requirements for due process.

VI.    *THE DEFENDANTS ARE ALSO ENTITLED TO IMMUNITY*

If the Court determines that plaintiff has stated a potentially viable claim or claims for relief against defendants Jermanis and/or Pollart, there remains the question of whether these defendants are entitled to immunity.  To the extent that defendants are charged either primarily or entirely for their alleged role in preparing and adopting (or declining to adopt) amendments to the City's zoning regulation, they are entitled to absolute legislative immunity.  *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966 (1998).  To the extent, if any, the individual defendants are being sued for executive or administrative actions, they are still entitled to qualified immunity for the reasons discussed below.

A.    *Absolute Immunity For Actions In Legislative Capacity.*

It is now settled that local governmental officers and employees working in a legislative capacity are entitled to absolute immunity from suit under 42 U.S.C. § 1983.  *Bogan,* 523 U.S. 44, 54-55.  Absolute means absolute.  The immunity cannot be pierced by allegations of conspiracy, evil intent or malicious wrongdoing.  *Id*. at 54; *Ellis v. Coffee County Board of Registrars,* 981 F.2d 1185, 1191 (11th Cir. 1993).  It applies as well to cases involving the zoning of churches.  *Biblia Abierta v. Banks*, 129 F.3d 899, 902-904 (7th Cir. 1997).

///

Legislative immunity is not confined to legislative decisionmakers themselves. Instead, "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54; *Bryan v. City of Madison,* 213 F.3d 267, 272 (5th Cir. 2000) ["Absolute immunity applies to activities, not offices."]. Elected legislators and their aides, staff persons or others assisting in the legislative process are "treated as one" for purposes of immunity, and acts performed by such assistants are privileged "insofar as the conduct … would be a protected legislative act if performed by the [legislator] himself." *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614 (1972). Legislative immunity has thus been applied to the entire range of subordinate officials, advisors and employees who play a role in the legislative process. *Bogan*, 523 U.S. at 55 [executive mayor immune for budget proposal]; *Aitchison v. Raffiani*, 708 F.2d 96, 99-100 (3rd Cir. 1983) [attorney for city council]; *Rini v. Zwirn,* 886 F.Supp. 270, 283-284 (E.D.N.Y. 1995) [city manager and legislative aides]; *Hughes v. Lipscher*, 852 F.Supp. 293, 298 (D.N.J. 1994) [aides and staff members immune]; *Terry v. Bobb*, 827 F.Supp. 366, 368-369 (E.D. Va. 1993) [city manager]; *see also Bass v. Attardi*, 868 F.2d 45, 50-51 (3rd Cir. 1989) [consultants and in-house staff entitled to absolute judicial immunity for rules in adjudicatory land use decision].

The extension of legislative immunity to staff is fully consistent with the purposes of the doctrine. Legislative immunity does not exist for the benefit of individual legislators, but for the benefit of the public. *Bogan*, 523 U.S. at 52. Legislative immunity thus not only protects legislators and their assistants from the corrosive effects of threatened lawsuits, it protects the legislative process itself. *Ellis*, 981 F.2d at 1193. As the Supreme Court recognized over 30 years ago "it is literally impossible, in view of the complexities of the modern legislative process …for [legislators] to perform their legislative tasks without the help of aides and assistants." *Gravel*, 408 U.S. at 616. Failure to extend immunity to staff advisors would thus essentially defeat the entire purpose of legislative immunity by leaving legislative bodies vulnerable to legal intimidation of, or retaliation against, their lower echelons. *Id*. at 616-617. The interests of the public at large and democracy itself suffer.

///

1         It cannot be seriously questioned that preparation and adoption (or rejection) of proposed

2 zoning actions are legislative acts. *See Arnel Development*, 28 Cal.3d 511, 516; *Biblia Abierta*,

3 129 F.3d 899 at 904-905; *Brown v. Crawford County,* 960 F.2d 1002, 1012 (11th Cir. 1992)

4 [zoning and land use decisions normally considered legislative]. To the extent that Jermanis and

5 Pollart are being sued for their participation in City zoning proceedings, they are thus absolutely

6 immune from liability. This immunity also appears to dispose of all claims asserted in the

7 Complaint. While the implementation or enforcement of zoning ordinances may involve acts

8 outside the scope of legislative immunity, plaintiff does not allege any such conduct here that

9 could serve as a basis for liability.[3]

10         B.     *To the Extent They Are Not Entitled to Legislative Immunity, the Individual*

11                *Defendants Are Entitled to Dismissal on the Basis of Qualified Immunity.*

12         The doctrine of qualified immunity protects individual governmental officers from

13 liability under Section 1983 unless the plaintiff can show that the defendants knew or reasonably

14 should have known that his or her conduct in the specific factual circumstances presented

15 violated specific "clearly established rights" of which the defendant should have known.

16 *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987); *Harlow v. Fitzgerald*, 457

17 U.S. 800, 818, 102 S.Ct. 2727 (1982). Application of the qualified immunity test involves a

18 two-step inquiry. Specifically, the Court must determine (1) whether the specific legal rights

19 said to have been violated were clearly established at the time of the violation, and (2) could the

20 defendant official reasonably have believed (even if mistakenly) that his conduct was within the

21 law, given the facts and circumstances apparent at the time. *Devereaux v. Abbey*, 263 F.3d

22 1070, 1074 (9th Cir. 2001); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993).

23

---

24 [3] Plaintiff does allege that Pollart misinformed them of the applicable zoning requirements at

25 the time of their first meeting in March 2006, which they contend precipitated a futile

26 application to rezone the Catalina Street properties from IP to IL. Complaint, ¶¶ 22, 58. It is

27 impossible to see, however, how the mere giving of allegedly mistaken or improvident advice can be deemed to support a constitutional claim. It is admitted that the City subsequently gave

28 major consideration to potential rezoning of the property into the Assembly Use Overlay District, which would have had precisely the effect desired by the Church, *i.e.* allowed it to apply for a CUP for church use.

1    The first part of this test is purely a question of law. *Mendoza v. Block*, 27 F.3d 1357,

2    1360 (9th Cir. 1994); *Act Up!/Portland*, 988 F.2d at 873. As such, it may thus properly be

3    decided upon a motion to dismiss. The burden of establishing that specific rights at issue were

4    "clearly established" is on the plaintiff. *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir.

5    1992). The test is an objective one which does not consider the official's subjective motives or

6    intentions. *Davis v. Scherer*, 468 U.S. 183, 191, 104 S.Ct. 3012, 3017 (1984); *Crosby v. Paulk*,

7    187 F.3d 1339, 1344 (11th Cir. 1999).

8            1.    *Plaintiff Has Not Alleged a Violation of Any Clearly Established Rights.*

9    Plaintiff must do more than identify a particular constitutional or statutory provision that

10   was allegedly violated by the defendants. He must show that the correct application of those

11   constitutional principles in the specific factual and legal context of the case is so well

12   understood and predictable that the "a reasonable official would understand that what he is

13   doing violates that right." *Anderson*, 483 U.S. 635, 640; *Moran v. State of Washington*, 147

14   F.3d 839, 845 (9th Cir. 1998). That has not and cannot be done in this case.

15           a.    *RLUIPA Claims.*

16   The law governing plaintiff's RLUIPA claims can hardly be considered clear or well

17   settled. In particular, the federal circuits have differed in their approaches to defining the

18   "substantial burden" requirement of 42 U.S.C. § 2000cc(a), and acknowledged the term has

19   been described "in myriad ways." *Episcopal Student Foundation v. City of Ann Arbor*, 341

20   F.Supp.2d 691, 701 (E.D. Mich. 2004); *see Midrash Sephardi, Inc. v. Town of Surfside,* 366

21   F.3d 1214, 1226-1228 (11th Cir. 2004); *Civil Liberties for Urban Believers*, 342 F.3d at 761.

22   The formula adopted by the Ninth Circuit illustrates the problem. A governmental action is may

23   be deemed to impose a "substantial burden" if it is "oppressive to a significantly great extent.

24   That is, a substantial burden on religious exercise must impose a significantly great restriction or

25   onus upon such exercise." *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d

26   978, 988 (9th Cir. 2006); *San Jose Christian College*, 360 F.3d 1024, 1034-1035. The test

27   clearly calls for ad hoc judgments to be made with only indirect guidance from the statute and

28   existing case law.

1    The Equal Terms provision of RLUIPA (42 U.S.C. § 2000cc(b)(1)) has not been

2    construed by the Ninth Circuit, and has been subject to conflicting interpretations in other

3    courts.  *See Lighthouse Institute for Evangelism*, 406 F.Supp.2d 507, 517-519.  In any event, the

4    only reasonable conclusion the defendants could draw from existing case law is that their

5    identical treatment of churches as an "Assembly Use" along with meeting halls and social

6    facilities for other types of private or non-profit organizations is precisely what the Equal Terms

7    provision required.  *See Civil Liberties for Urban Believers,* 342 F.3d 752, 758 and 762 [no

8    Equal Terms violation where ordinance was amended to treat religious assemblies the same as

9    "clubs, lodges, meeting halls, recreation buildings, and community centers"]; *Williams Island*

10   *Synagogue v. City of Aventura*, 358 F.Supp.2d 1207, 1217-1218 (S.D. Fla. 2005); compare

11   *Midrash Sephardi,* 366 F.3d 1214, 1231-1232 [finding private clubs and lodges are equivalents

12   to churches for RLUIPA purposes].  No existing case law suggests that the Equal Terms

13   provision requires that churches be treated as an equivalent land use to commercial recreational

14   or entertainment activities such as movie theaters, skating rinks or bowling alleys.

15   Given the plethora of potentially available sites for religious uses in the City, the

16   defendants can also hardly be charged with disregard of well established law interpreting the

17   total exclusion/unreasonable restriction provisions of 42 U.S.C. § 2000cc(b)(3).  The City's

18   regulations provide ample potential sites for churches in multiple zones, and are entirely

19   consistent with the limited existing case law construing this provision.  *Vision Church United*

20   *Methodist v. Village of Long Grove*, 468 F.3d 975, 988-991 (7th Cir. 2006).

21                   b.    *Constitutional Claims*.

22   The defendants are similarly entitled to qualified immunity on plaintiff's constitutional

23   claims.  The core tenet common to all of plaintiff's First Amendment and Fourteenth

24   Amendment claims is that municipal officials may not intentionally discriminate against

25   religious activity or speech.  In this case, however, there is "not even a hint" of such intentional

26   discrimination.  *San Jose Christian College*, 360 F.3d 1024, 1032.  Where intentional

27   discrimination is not alleged, there is manifestly no "clearly established" law dictating that

28   ///

1   churches be given preferential treatment in zoning matters, nor that religious entities are entitled

2   to rezoning on demand to suit their current needs or preferences.

3          The second basic principle that can be distilled from the law governing plaintiff's various

4   First Amendment claims is a zoning regulation scheme must allow reasonable opportunities for

5   religious institutions to locate and operate in the area.  There is no precedent, however, holding

6   that churches must be allowed to locate on land of their own choosing, regardless of the

7   availability of other potential sites.  *See* Sections IV.B – IV.D, above.  Whatever role the

8   individual defendants may have played in the rejection of plaintiff's rezoning applications, the

9   rejection violated no "clearly established rights."  As discussed below, defendants' belief that

10  the City's zoning scheme provided adequate opportunities for religious activity and expression

11  was objectively reasonable, and is not seriously challenged in the Complaint.

12                      2.    *Objective Reasonableness*.

13         Even were the defendants deemed to have ignored or misconstrued some clearly

14  established tenet of RLUIPA or the Constitution, their actions can hardly be said to have

15  exhibited the type of patent objective unreasonableness that would defeat qualified immunity.

16  At the time the Church first approached the City about use of the Catalina Street properties, the

17  City's zoning ordinances allowed churches (with a CUP) in all of the City's residential zones.  It

18  was hardly unreasonable, either at the time or even in light of current case law, to conclude that

19  it was unnecessary to also allow churches in industrial zones.  *See Petra Presbyterian Church v.*

20  *Village of Northbrook*, 489 F.3d 846, 850-851 (7th Cir. 2007) [ban on churches in industrial

21  zones does not violate RLUIPA].  Nevertheless, the City undertook an earnest review of its

22  zoning scheme and ultimately expanded the number of sites available to church uses by creating

23  the Assembly Use Overlay District and applying it to some 196 properties in industrial and

24  commercial zones.  Complaint, ¶¶ 39, 42, 46, 47; RFJN Exhibits 6, 7.  The Church admits that

25  these sites were selected on the basis of objective planning criteria which give no hint of

26  "gerrymandering" to exclude religious uses as a practical matter.  Complaint, ¶ 49.

27         The fact that the City utilized the same criteria when rejecting the Church's request to

28  add the Catalina Street site to the Assembly Use Overlay District hardly demonstrates objective

1   unreasonableness, much less a violation of clearly established legal standards.  Although

2   plaintiff apparently faults defendant Pollart for recommending denial of the rezone for an

3   additional factor – the presence of hazardous material use on nearby industrial properties – this

4   can hardly be said to be objectively unreasonable or violate clearly established standards.  *See*

5   Complaint, ¶ 52; *Petra Presbyterian,* 489 F.3d at 852.

6         Given existing precedents, the defendants could reasonably conclude that neither

7   RLUIPA nor the Constitution required the City to rezone the Catalina Street properties simply

8   because they were deemed by the Church to constitute an "ideal" site for relocating its existing

9   operations.  *See*, *San Jose Christian College*, 360 F.3d 1024, 1035 [no substantial burden where

10   "there is no evidence in the record demonstrating the [plaintiff] was precluded from using other

11   sites within the city."]; *Civil Liberties for Urban Believers,* 342 F.3d at 761-767.

12   VII.   *CONCLUSION*

13         For the reasons discussed above, the motion to dismiss the complaint and all individual

14   causes of action against defendants Jermanis and Pollart should be granted.  Plaintiff has not and

15   cannot state a claim against these defendants under RLUIPA or the Constitution.  Moreover, to

16   the extent the Complaint is deemed to state any colorable cause of action against these

17   defendants, defendants are entitled to absolute legislative immunity or qualified immunity from

18   suit, and the claims cannot be maintained.

19   Dated: September 20, 2007       MEYERS, NAVE, RIBACK, SILVER & WILSON

20

21

22                   By_____/s/_____

23                        DEBORAH J. FOX

24                        Attorneys for City Defendants

     1014136_2               CITY OF SAN LEANDRO, *et al.*

25   136.5016

26

27

28