1 | Kevin T. Snider, State Bar No. 170988
*Counsel of record*
2 | Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
3 | P.O. Box 276600
Sacramento, CA 95827
4 | Tel.  (916) 857-6900
Fax  (916) 857-6902
5 | Email: kevinsnider@pacificjustice.org
           mattmcreynolds@pacificjustice.org
6 |

7 | Peter D. MacDonald, State Bar No. 69789
LAW OFFICE OF PETER MACDONALD
8 | 400 Main Street, Suite 210
Pleasanton, CA 94566-7371
9 | Tel. (925) 462-0191
Fax. (925) 462-0404
10 | Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, et al.<br><br>Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No.:  C07-03605 –PJH-JCS<br><br>**PLAINTIFF AND REAL PARTY IN INTEREST'S OPPOSITION TO DEFENDANTS' (CITY OF SAN LEANDRO, MAYOR TONY SANTOS, AND CITY COUNCILMEMBERS SURLENE G. GRANT, DIANA M. SOUZA, JOYCE R. STAROSCIAK, BILL STEPHENS AND JIM PROLA) MOTION TO DISMISS COMPLAINT**<br><br>**Date:**    October 31, 2007<br>**Time:**   9:00 a.m.<br>**Ctrm:**   3<br>**Hon.:**    Phyllis J. Hamilton |

OPPOSITION TO MOTION TO DISMISS BY CITY DEFENDANTS

- 0 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     Defendants Misconstrue the Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    The CHURCH Has Stated a Substantial Burden Claim . . . . . . . . . . . . . . . . . . . . . . . . . .  2

        A.     The Complaint alleges a "significantly great" burden on the Church . . . . . . . . . . .2

        B.     The "history" and "reasons" behind the City's denials support the Church's
               substantial burden claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        C.     The City's proffered authorities are insufficient to support the Motion to Dismiss .3

III.   The Church Has Demonstrated an Equal Terms Violation . . . . . . . . . . . . . . . . . . . . . . .  4

        A.     Defendants have presented zero authority for dismissing the Church's Equal Terms
               claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        B.     The CITY's actions violate RLUIPA's "Equal Terms" provision . . . . . . . . . . . . . 5

            (a) The CITY violates the Equal Terms provision by allowing entertainment and
            recreational assembly uses but denying religious assembly uses . . . . . . . . . . . . . . .6
            (b) The CITY violates the Equal Terms provision by imposing a hazardous
            materials requirement exclusively on the CHURCH . . . . . . . . . . . . . . . . . . . . . . . 8
            (c) The Complaint states a claim for "total exclusion" or "unreasonable limits" on
            religious assemblies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

IV.   The First Cause of Action for Injunctive Relief States a Claim . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Civil Liberties for Urban Believers v. City of Chicago*,
   342 F.3d 752 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Conley v. Gibson*,
   355 U.S. 41, 45-46 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*,
   218 F.Supp.2d 1203 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Episcopal Student Foundation v. City of Ann Arbor*,
   341 F. Supp. 2d 691 (E.D. Mich. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla.*,
   430 F. Supp. 2d 1296, 1323 (S.D. Fla. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
   456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2-3

*Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch*,
   100 Fed. Appx. 70 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Midrash Sephardi, Inc. v. Town of Surfside*,
   366 F.3d 1214 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6-8

*Petra Presbyterian Church v. Village of Northbrook*,
   489 F.3d 846 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*,
   450 F.3d 1295 (11th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*San Jose Christian College v. City of Morgan Hill*,
   360 F.3d 1024 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*,
   396 F.3d 895 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ventura County Christian High School v. City of San Buenaventura*,
   233 F. Supp. 2d 1241 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-6

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove*,
  460 F. Supp. 2d 1165 (C.D. Cal. 2006) ................................................. 6-8

*Williams Island Synagogue, Inc. v. City of Aventura*,
  358 F. Supp. 2d 1207 (S.D. Fla. 2005) ................................................. 4

**U.S. STATUTES**

42 U.S.C. 1983. ................................................................................. *passim*

42 U.S.C. 2000cc *et seq.* ................................................................. 5, 8, 10

**OTHER SOURCES**

146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) ................................. 7

H. Rep. 106-219, 106th Cong., 1st Sess. 19 (1999) ................................. 7

# INTRODUCTION

Defendants, fresh from successfully defending against the Church's Motion for a Preliminary Injunction, have now launched a sortie of their own with their Motions to Dismiss. Yet Defendants' eagerness is outweighed by their erroneous conception of the 12(b)(6) standard.

This is not, of course, a Motion for Summary Judgment, in which Defendants might seek a thorough weighing and ultimate vindication of their actions. It is, rather, a dispositive—and disfavored—motion which claims the Church cannot possibly state a claim based on the adverse events which the Defendants have visited upon it.

Defendants' protestations prove too much. The Complaint forcefully articulates and alleges that the Defendants' actions caused a substantial burden to the Church, and that the rationales they employed were woefully inadequate under the compelling interest standard. The Motion to Dismiss should therefore be denied. In their Motion, Defendants marshal what at first glance appears to be an impressive array of RLUIPA cases—until one realizes that most are non-controlling authority, and ***none*** involved a Motion to Dismiss. Defendants have simply not met their burden for a Motion to Dismiss, and it should therefore be denied.

# ARGUMENT

## I. Defendants Misconstrue the Motion to Dismiss Standard.

Defendants' Motion ignores the high bar set for a Motion to Dismiss. "The Court must construe the complaint liberally, and dismissal should not be granted unless 'it appears <u>beyond doubt</u> that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1215 (C.D. Cal. 2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)(emphasis added)).

OPPOSITION TO MOTION TO DISMISS BY CITY DEFENDANTS

**II.      The Church Has Stated a Substantial Burden Claim**

In its most recent, definitive interpretation of RLUIPA, the Ninth Circuit approached the substantial burden framework from two different angles.  First, the Court considered the impact of Yuba City's decision on the religious congregation, reiterating that a substantial burden is a regulation that is " ' "oppressive" to a "significantly great" extent.  That is, a "substantial burden" on "religious exercise" must impose a significantly great restriction or onus upon such exercise.' " *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 989 (9th Cir. 2006) (quoting *San Jose Christian College v. City of Morgan Hill,* 360 F.3d 1024, 1934 (9th Cir. 2002).  Second, the Court looked at the actions of the City itself, particularly its approach to the temple's application.  The Court found a substantial burden in this regard for at least two reasons:

> Most importantly to us the <u>history</u> behind Guru Nanak's two CUP application processes, and the <u>reasons</u> given for ultimately denying those applications, to a significantly great extent lessened the possibility that future CUP applications would be successful.

*Guru Nanak,* at 989.

The court further explained that the County's reasons were overly broad, and that the temple readily agreed to every mitigation measure, but the County "found such cooperation insufficient."  *Id*.  The parallels to the present Complaint are inescapable.  The Church has alleged that its religious exercise is burdened to a significantly great extent in that its ability to spread the Gospel, make disciples, and assist the poor is being stifled.   From the standpoint of their faith and religious calling, these conditions are not an inconvenience; they strike at the heart of why the church exists.

   **A.      The Complaint alleges a "significantly great" burden on the Church.**

Nor is the Church demanding that it be allowed to use the Catalina property because it has better parking, or will save the church money, or will increase the members' comfort levels.

While all of these aspects might (or might not) be true, the allegations in the Complaint—to be taken as true for purposes of this Motion to Dismiss—state that the Church spent months on a diligent search for a location that would alleviate their current crisis, and determined that the Catalina property was the ideal site in the entire City which would allow them to fulfill their mission. (Cmplt. ¶¶, 20-21). In purchasing the property, the Church delayed the close of escrow more than once, in an effort to obtain assurance from the City that the property could be rezoned and conditionally permitted. (Cmplt. ¶¶, 23, 25, 32, 37, 39-40, 43). The Church did not complete the sale until it felt there were no other realistic options, and City staff and had led the Church to believe that it could eventually use the property for religious assembly. (Cmplt. ¶¶, 22, 25, 39, 43).

### B. The "history" and "reasons" behind the City's denials support the Church's substantial burden claim.

The *Guru Nanak* court zeroed in on the conduct of the individuals involved with the temple's application, citing statements made by them, as well as others who were not the actual decision-makers. The Church has alleged that Defendants created shifting rationales, conflicting requirements, deliberate delays, and finally, contradictory recommendations which not only cost the Church hundreds of thousands of dollars, but more importantly, stifled its religious exercise in a way that was "oppressive . . . to a significantly great extent." (Cmplt. ¶¶ 22-55).

### C. The City's proffered authorities are insufficient to support the Motion to Dismiss.

The Church will not attempt to point out every error in Defendants' reliance on cases which are largely non-controlling. Yet, a brief look at the major flaws in Defendants' analogies is imperative, because these cases show the danger of granting a dispositive Motion at this stage of the litigation.

Defendants strive to persuade the Court that its cherry-picked cases from around the country somehow establish an insurmountable substantial burden hurdle for the Church.  Yet **not one** of these cases was resolved on a Motion to Dismiss.  *See*, *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2002) (summary judgment); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752 (7th Cir. 2003) (summary judgment); *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th Cit. 2005) (summary judgment); *Petra Presbyterian Church v. Village of Northbrook,* 489 F.3d 846 (7th Cir. 2007) (summary judgment); *Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch,* 100 Fed. Appx. 70 (3d Cir. 2004) (summary judgment); *Episcopal Student Foundation v. City of Ann Arbor*, 341 F. Supp. 2d 691 (E.D. Mich. 2004) (summary judgment); *Midrash Sephardi, Inc. v. Town of Surfside,* 366 F.3d 1214 (11th Cir. 2004) (summary judgment); *Williams Island Synagogue, Inc. v. City of Aventura,* 358 F. Supp. 2d 1207 (S.D. Fla. 2005) (summary judgment).

These courts have recognized the necessity of a full development of the evidence in RLUIPA cases, and have uniformly resisted the pressure to dispose of RLUIPA claims through Motions to Dismiss.  Defendants' cherry-picking of cases from around the country, while ignoring equally important but contrary decisions closer to home, demonstrates the inadvisability of a ruling that the Church cannot establish any set of facts to prove a substantial burden.

### III.  The CHURCH Has Demonstrated an Equal Terms Violation

**A.  Defendants have presented zero authority for dismissing the Church's Equal Terms claims.**

Defendants' Equal Terms arguments suffer from the same initial flaw as their Substantial Burden arguments, in that they fail to identify any authority whatsoever for the proposition that the Church cannot plead a violation.  Besides the "authorities" presented to attack the Church's

substantial burden claim—which, as shown above, all dealt with Summary Judgment motions—Defendants add a couple more cases to their Equal Terms section which are similarly defective.

Defendants make much of *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,* 450 F.3d 1295 (11th Cir. 2006), while failing to note that the decision in that case was reached after a bench trial. Defendants also augment their arguments with *Ventura County Christian High School v. City of San Buenaventura,* 233 F. Supp. 2d 1241 (C.D. Cal. 2002), while omitting the inconvenient fact that that decision addressed the school's motion for a preliminary injunction. In short, Defendants have failed to present a single case where RLUIPA claims were dismissed in a Motion to Dismiss. Nevertheless, the Church will address these arguments substantively.

### B. The CITY's actions violate RLUIPA's "Equal Terms" provision.

The plain text of RLUIPA's Equal Terms provision sets forth a bright-line standard:

> (1) EQUAL TERMS- No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1).

To state a cause of action under the equal terms provision of RLUIPA, a plaintiff must allege the following facts: (1) they are a religious assembly; (2) a land use regulation has been imposed or implemented on the religious assembly by a government; and, (3) the land use regulation treats the religious assembly on less than equal terms with a nonreligious assembly. In addition, it is proper though not necessary for a complaint to include an allegation that the government does not have a compelling interest which is narrowly tailored using the least restrictive means.[1]

---

[1] From the structure of the statute, it appears that an allegation of a lack of a compelling interest is probably not a necessary element to plead in the complaint. Rather, it is more properly

OPPOSITION TO MOTION TO DISMISS BY CITY DEFENDANTS

The complaint provides allegations which meet all elements of an equal terms cause of action. First, the Church is a religious assembly. (Cmplt. ¶¶ 7, 19-20, 61-63). Next, the complaint alleges that a government (Cmplt. ¶¶ 8-18) imposed or implemented a land use regulation (Cmplt. ¶¶ 18, 22, 39, 46-47, 49, 51-54). Third, the complaint alleges that the land use regulation treats the Church on less than equal terms with nonreligious assemblies. The complaint states that this occurs in two ways. Defendants allowed other assembly uses (entertainment and recreational assembly uses) but not religious assembly use. (Cmplt. ¶¶ 22, 43, 48, 109-110). Next, the complaint alleges that the Defendants placed a ¼ mile hazardous materials perimeter requirement on the Church but not on any of the 196 properties approved for assembly. (Cmplt. ¶¶ 52, 57, 59, 84, 86, 88-90, 104-105). These allegations are sufficient to state an equal terms cause of action.

### (a) The City violates the Equal Terms provision by allowing entertainment and recreational assembly uses but denying religious assembly uses.

The complaint clearly alleges that the City allows entertainment and commercial recreational assembly uses by permit in both Industrial Limited and Industrial Park areas. Yet the defendants have denied use of the Catalina site for religious assembly. Excluding a church from locations where recreational and entertainment assemblies are permitted violates the Equal Terms provision of RLUIPA as a matter of law. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 12 (11th Cir. 2004). The City blatantly defies RLUIPA's Equal Terms provision which codifies "existing Supreme Court decisions under the Free Exercise and Establishment Clauses of the First Amendment as well as under the Equal Protection Clause of the Fourteenth Amendment." *Ventura County Christian High School v. City of San Buenaventura*, 233 F. Supp. 2d 1241, 1246

---

an affirmative defense that a defendant must assert. *Vietnamese Buddhism Study Temple in*

(C.D. Cal. 2002) (quotations omitted); *see also*, *Midrash Sephardi*, 366 F.3d at 1239 (11th Cir. 2004).

The legislative history behind this provision sheds more light on a clear, unequivocal mandate.  The Congressional record identifies "recreation centers" and "places of amusement" as two examples of nonreligious assemblies identified as comparable to religious assemblies.  H. Rep. 106-219, 106th Cong., 1st Sess. 19 (1999).[2]  In a Joint Statement, Senators Hatch and Kennedy articulated the need for the Equal Terms provision of RLUIPA as follows: "Zoning codes frequently exclude churches in places where they permit . . . large groups of people [to] assemble for secular purposes."  146 Cong. Rec. at S7775.[3]

Such is the case at bar.  The complaint alleges that the City **allows** entertainment and commercial recreational assembly uses in industrial zones.  (Cmplt. ¶22).  But despite this, the Defendants **prohibited** the Church from assembling on its Catalina property, also in an industrial zone, directing the Church instead to seek a rezoning to their property.  (Cmplt., *Id.*).  Zoning regulations which allow clubs and lodges but not religious assembly run afoul of RLUIPA.  *Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1174 (C.D. Cal. 2006).

---

*America v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1174 (C.D. Cal. 2006).
[2] The legislative history lists myriad nonreligious assemblies to be compared with religious ones: "banquet halls, clubs, community centers, funeral parlors, fraternal organizations, health clubs, gyms, *places of amusement*, *recreation centers*, lodges, libraries, museums, *municipal buildings*, meeting halls, and theatres," H.R. Rep. No. 106-219, 106th Cong., 1st Sess. 19 (1999) (emphasis added); and "*recreation centers* and *health clubs*," 146 Cong. Rec. S7774-01 at S7777 (daily ed. July 27, 2000) (emphasis added).
[3] The Joint Statement was cited by the *Midrash* court at page 1229.

OPPOSITION TO MOTION TO DISMISS BY CITY DEFENDANTS

- 7 -

The Defendants assert that the Church must "identify…a non-religious entity which was purportedly treated more favorably." (Defendants Motion to Dismiss City Defendants, pg. 24, lines 24-26).  This position that a complaint alleging an equal terms violation of RLUIPA must point to a specific property that was treated more favorably is not a pleading requirement.  First, said view is not an element found on the face of 42 U.S.C.A. § 2000cc(b).  Second, a recent case in the Central District found a *prima facie* showing of a violation of the equal terms provision of RLUIPA by the fact that secular assemblies are permitted while religious were not.  *Vietnamese Buddhism Study Temple*, 460 F. Supp. 2d at 1174.  The *Vietnamese Buddhism Study Temple* court did not look to other similarly situated properties.  Instead, it looked to the *categories* in the ordinance. *Id*. (citing *Midrash* at 1235).

In like manner, the Midrash court viewed the "similarly situated" doctrine in terms of categories rather than identifying specific properties that have submitted land use applications "Section (b)(1) makes it clear that the relevant 'natural perimeter' for consideration with respect to RLUIPA's prohibition is the category of 'assemblies or institutions.'" *Id.* 1230.  In that the complaint looks to the categories, a cause of action has been stated even though a specific property has not been cited.   In the event that the Court determines that citing to a specific property rather than a category is necessary to state an equal terms claim, the Church seeks leave to amend accordingly.

### (b) The City violates the Equal Terms provision by imposing a hazardous materials requirement exclusively on the Church.

An equal terms violation also occurs when government officials impose a zoning requirement on a religious group but not on similarly situated nonreligious groups. *Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165 (C.D. Cal. 2006); see also, *Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla.*, 430 F. Supp.

2d 1296, 1323 (S.D. Fla. 2006). Realizing that its zoning policies directly violated federal law, the City created an Assembly Use Overlay District to permit assembly uses in places where they would be otherwise impermissible. (Ex. A, §e(3), Joint Work Session Minutes, 10/19/06). However, City officials then foisted upon the Church an *additional* criterion related to hazardous materials which was not applied to *any* of the 196 properties approved for assembly use (Ex. A, §n(2), Staff Report, 4/12/07, pp. 5-6).

In a staff report, City officials claimed that the presence—and potential future presence—of hazardous materials and activities in the vicinity of the Catalina site rendered it inappropriate for rezoning with the Assembly Use Overlay. *Id*. Denial of the Catalina site was based upon the presence of businesses with Hazardous Materials Business Plans (HMBP's) within ¼ mile. But if that criterion was applied across-the-board to all proposed assembly uses it would prohibit *all* 196 parcels, since all are within ¼ mile of a HMBP. *Id*. This disparate treatment reveals the degree of animus towards the Church, though its right to assembly is protected by core constitutional concerns and federal law.

The imposition of an added hurdle for the Church also underscores the extent to which the City grasps at straws to prevent the Church from assembling on its property while providing assembly opportunities to similarly situated nonreligious groups, in contravention of federal law and its own zoning policies.

The ¼ mile circumference from a hazardous materials business plan is a requirement that has been exclusively imposed upon the Church. This criteria is not written in any ordinance or policy of the City, and was not included in the eight criteria for "safe harbor" application of the Assembly Use Overlay District. The equal terms provision of RLUIPA cannot be clearer. It is unlawful for a "government to impose or implement a land use regulation in a manner that treats a

religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). The case before the Court is precisely the type of evil that Congress and President Clinton sought to remedy when they passed and signed RLUIPA into law.

### (c) The Complaint States a Claim for Total Exclusion or Unreasonable Limits on Religious Assemblies.

The Complaint alleges that the City has placed a criteria of a ¼ mile hazardous materials buffer zone on the Church. (Cmplt. ¶52; Ex. A, §n(2), pp. 1, 5-7, highlighted section). Exhibit B of the Complaint graphically demonstrates this. The Complaint alleges that there are virtually no properties in the recently created Assembly Overlay District or any other district outside of residential areas that meets the hazardous materials criteria placed upon the church. (Cmplt. ¶113) In addition, the Complaint shows that the church is currently in a residential area but that, due to its size, it is utterly inappropriate to have an assembly use of over a 1,000 people in a residential neighborhood. (Cmplt. ¶¶20, 61, 68, 71, 75-76, 82-83). Finally, the Complaint alleges that other than the Catalina property, there is no place in the City that a congregation of 1,500 persons or greater could locate. (Cmplt. ¶56). These allegations are sufficient to state a claim for total exclusion or unreasonable limits on religious assembly as per 42 U.S.C. 2000cc(b)(3).

## IV.    The First Cause of Action for Injunctive Relief States a Claim

Defendants briefly attack the first cause of action for injunctive relief. They state that the legal merits of this challenge is fully addressed in the points and authorities filed in the concurrent Jermanis and Pollart motion to dismiss. (City Motion to Dismiss, pg. 20, lines 4-7). For the sake of judicial economy, the Church will not repeat its discussion above relative to RLUIPA. Moreover, as to the other causes of action, the Church has addressed them in its opposition to the Jermanis and Pollart motion to dismiss and will not repeat them here for the sake of judicial economy.

## CONCLUSION

This motion need not long detain the Court. The Court has commented that RLUIPA is a new law and has indicated that it will exercise restraint in issuing major, dispositive-type rulings at the outset of this litigation. Whatever the Court's final ruling may be, there is simply too much specificity in the Complaint, and too many controlling cases weighing in the Church's favor, to dismiss the action—or any part thereof—at this juncture.

Respectfully submitted this 10th day of October, 2007.

By: PACIFIC JUSTICE INSTITUTE

 /S/ Kevin Snider
Kevin T. Snider
Mathew B. McReynolds
Peter MacDonald
Attorneys for Plaintiff and
Real Party in Interest