Kevin T. Snider, State Bar No. 170988
*Counsel of record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: kevinsnider@pacificjustice.org
         mattmcreynolds@pacificjustice.org

Peter D. MacDonald, State Bar No. 69789
LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210
Pleasanton, CA 94566-7371
Tel. (925) 462-0191
Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL, | ) Case No.:  C07-03605 –PJH-JCS ) |
| | ) |
| Plaintiff, | ) **PLAINTIFF AND REAL PARTY IN** ) **INTEREST'S OPPOSITION TO** |
| | ) **DEFENDANTS' (JOHN JERMANIS** |
| v. | ) **AND DEBBIE POLLART) MOTION TO** ) **DISMISS COMPLAINT** |
| CITY OF SAN LEANDRO, et al. | ) |
| | ) |
| Defendants. | ) **Date:**    October 31, 2007 ) **Time:**    9:00 a.m. |
| | ) **Ctrm:**    3 |
| FAITH FELLOWSHIP FOURSQUARE CHURCH, | ) **Hon.:**    Phyllis J. Hamilton ) |
| | ) |
| Real Party in Interest. | ) |
| | ) |
| | ) |

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      Defendants Misconstrue the Motion to Dismiss Standard . . . . . . . . . . . . . . . . . . . . . . 1

II.     The Complaint States a Claim for an RLUIPA Claim Against the Individual Defendants . 2

III.    The Allegations in the Complaint State Constitutional Claims . . . . . . . . . . . . . . . . . . . . . 2

        A.  The First Cause of action appropriately seeks injunctive relief . . . . . . . . . . . . . . . . . 2

        B.  The allegations in the Complaint state a cause of action for a violation of the free
            exercise clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

        C.  The allegations in the Complaint state a cause of action for a violation of the free
            speech clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        D.  The allegations in the Complaint state a cause of action for interference with the
            freedom of assembly . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        E.  The allegations in the Complaint state a cause of action for interference with the
            freedom of association. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

        F.  The allegations in the Complaint state a cause of action for denial of equal protection . .
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        G.  The allegations in the Complaint state a cause of action for denial of due process of law
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.     The Complaint States a Sufficient 1983 Claim Against  Jermanis in his Individual Capacity
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.  Direct participation is not required to impose individual liability under § 1983. . . . . . .6

        B.  The Complaint alleges sufficient facts to hold Jermanis individually liable under
            section 1983 because Jermanis' acts and omissions proximately caused the Church's
            injuries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

V.  Defendants are not Entitled to Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

---

A.   There is no absolute immunity for non-legislative actions . . . . . . . . . . . . . . . . . . . .8

B.   Qualified immunity is unavailable for knowing and intentional violations of clearly established rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

1.   The Church has adequately alleged a violation of clearly established rights . . 12

a.   RLUIPA claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

b.   Constitutional claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

2.   Defendants Jermanis and Pollart acted outside the scope of objective reasonableness. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Anderson v. Creighton,*
    483 U.S. 635, 640 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Bateson v. Geisse,*
    857 F.2d 1300 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Biblia Abierta v. Banks,*
    129 F.3d 899 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Congregation Kol Ami v. Abington Township,*
    309 F.3d 120 (3rd Cir, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Christian Gospel Church v. City and County of San Francisco,*
    896 F.2d 1221 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gibson v. U.S.,*
    781 F.2d 1334 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
    456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Hesselgesser v. Reilly,*
    440 F.2d 901 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Hoover v. Ronwin,*
    466 U.S. 558, 557 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Houghton v. South,*
    965 F.2d 1532 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Inouye v. Kemna,*
    2007 WL 2556277 at *2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 14-15

*Johnson v. Duffy,*
    588 F.2d 740 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Kaahumanu v. County of Maui,*
    315 F.3d 1215 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 10-11

*Linkenhofer v. Rupf,*
    2007 WL 404783 * 8 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove,*
    460 F. Supp. 2d 1165 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Zamsky v. Hansell,*
    933 F.2d 679 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

**U.S. STATUTES**

42 U.S.C. 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. 2000cc *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12-13

## <u>INTRODUCTION</u>

1

2           Even were the Complaint to be read in the light most favorable to *Defendants*, as they

3   attempt to influence the Court to do in their Motion, the allegations are more than sufficient to

4   overcome the 12(b)(6) standard.  Defendants admit—as they must—that  the Complaint alleges

5   Defendants Debbie Pollart ("Pollart") and John Jermanis ("Jermanis") "intentionally delayed"

6   review of the church's application, thereby depriving the Church of its federal constitutional and

7   statutory rights.  (Cmplt. ¶55).  Defendants dismiss these allegations as "conclusory," as though

8   the Complaint were required to include all evidence supporting its conclusions.   This is, of course,

9   the function of discovery, not the initiating document of a civil action.

10

11          Read in the light most favorable to the Church, the Complaint alleges that Defendants

12  Jermanis and Pollart intentionally engaged in a pattern of misinformation and obstruction in an

13  effort to prevent the Church from using its property for religious exercise.  The Complaint further

14  alleges that the Defendants' actions caused a substantial burden to the Church, and that the

15  rationales they employed were woefully inadequate under the compelling interest standard. The

16  Motion to Dismiss should therefore be denied.

17

18                                  **<u>ARGUMENT</u>**

19  **I.      Defendants Misconstrue the Motion to Dismiss Standard.**

20          When considering a motion to dismiss under FRCP 12(b), a court must 1) take all facts

21  alleged in the complaint as true, and 2) view the facts in the light most favorable to the plaintiff.

22  *Linkenhofer v. Rupf*, 2007 WL 404783 * 8 (N.D. Cal. 2007).  "A federal court may not

23  dismiss a complaint for failure to state a claim unless it appears beyond doubt, even when the

24  complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him

25  to relief."  *Hoover v. Ronwin*, 466 U.S. 558, 557 (1989).  As discussed below, because the Church

26  has pled each element of the causes of action, the Defendant's Motion to Dismiss must be denied.

27  **II.     The Complaint States a Claim under RLUIPA Claim Against the Individual**

28

**Defendants.**

The Defendants assert that the Complaint does not state a RLUIPA claim and incorporates the arguments by reference in its concurrent motion to dismiss filed by the City and council members. In like manner, please see the discussion in Plaintiff's Opposition to said motion.

**III.    The Allegations in the Complaint State Constitutional Claims.**

As an initial matter, the Complaint states causes of action under § 1983. To state a claim under § 1983, a plaintiff must plead that (1) defendants acted under color of law, and (2) defendants deprived plaintiff of rights secured by the Constitution or federal statutes. *Gibson v. U.S.*, 781 F.2d 1334, 1338 (9th Cir. 1986). It is not asserted in the motion to dismiss that there are insufficient allegations relative to whether Jermanis and Pollart acted under color of law. Thus the only issue is whether allegations have been sufficiently pled to show a deprivation of rights under RLUIPA and the First and Fourteenth Amendments to survive a motion to dismiss.

**A.    The First Cause of action appropriately seeks injunctive relief.**

By its own terms, RLUIPA gives a court broad discretion to provide "all appropriate relief" which would include injunctive relief. (42 U.S.C. 2000cc-2(a)). Furthermore, it is well established that injunctive relief is also available under a § 1983 cause of action. The first cause of action for injunctive relief is appropriate.

**B.    The allegations in the Complaint state a cause of action for a violation of the free exercise clause.**

The Complaint alleges that the Defendants willfully acted, and continue to act, in a manner that prevents the Church from fully exercising its religious beliefs by prohibiting its use of its own property. (Cmplt. ¶¶ 20, 62-66). The Complaint alleges that the Defendants', "and each of them," have willfully engaged in conduct calculated to prevent the Church from using its Catalina property for religious purposes. (Cmplt ¶¶ 124, 127, 130, 133, 136). Moreover, the Complaint alleges that Jermanis and Pollart "knew or should have known" that their conduct violated First

1    Amendment rights.  (Cmplt ¶ 118).   The First Amendment rights to the free exercise of religion

2    that Jermanis and Pollart knew they were obstructing are typical for most churches and include,

3    making converts (Cmplt. ¶¶ 61-67), discipleship which is primarily an educational endeavor

4    (Cmplt. ¶¶ 68-75), and assisting the poor (Cmplt. ¶¶ 76-79).

5            The Complaint alleges that Jermanis and Pollart intentionally delayed the review of the

6    Church's application for fourteen months knowing that their actions were substantially burdening

7    the Church's religious exercise (Cmplt. ¶ 55).  Further, Defendants were placed on notice, via

8    letters from the Church's attorneys, that their actions were in violation of the law.  (Cmplt. ¶¶ 41,

9    55).

10           In view of these allegations, the Complaint provides facts sufficient to state a cause of

11   action under § 1983 for violation of the free exercise clause.    Further, the Complaint alleges that

12   the reasons for preventing the use of the Catalina property are neither true nor compelling, e.g.,

13   economic (taxes and jobs), traffic, opposition from neighbors, and excluding the Church from

14   locations in the vicinity of Hazardous Material Business Plans.  (Cmplt. ¶¶ 80-85).

15           **C.  The allegations in the Complaint state a cause of action for a violation of the free
             speech clause.**

16

17           The Complaint alleges that Defendants Jermanis and Pollart have deprived, and continue to

18   deprive, the Church of its right to free speech by restricting its speech rights and the congregants'

19   corresponding right to hear.  (Cmplt. ¶ 63).  Every weekend approximately forty cars are turned

20   away from the Church and do not return.  (Cmplt. ¶¶ 61-63).  Jermanis and. Pollart acted

21   intentionally and knew, or should have known, that their actions would keep the Church from

22   using its Catalina property to communicate its message.  (Cmplt. ¶ 121).  In view of these

23   allegations, the Complaint states a cause of action under § 1983 for violation of the speech clause.

24           **D.  The allegations in the Complaint state a cause of action for interference with the
             freedom of assembly.**

25

26           Defendants, Jermanis and Pollart, have deprived, and continue to deprive, the Church of its

27   right to freely assemble for the purpose of religious worship and expression.  (Cmplt. ¶¶ 62, 65).

28   Their actions were intentionally calculated to restrict the assembly rights of Church and its

members.  (Cmplt. ¶¶ 55, 124).   Jermanis and Pollart acted intentionally and knew, or should have known, that their actions would result in preventing the Church from using its Catalina property to fully assemble with its congregation.  *Id*.   The Complaint thus states a cause of action for interference with the freedom of assembly.

     **E.  The allegations in the Complaint state a cause of action for interference with the freedom of association**.

In like manner, Jermanis and Pollart, have deprived, and continue to deprive, the Church of its right to freely associate for the purpose of religious worship and expression.  (Cmplt. ¶¶ 62, 65).  In the Complaint, this aspect of the Church's functioning is referred to as "fellowship." (Cmplt. ¶¶ 62, 66, 72).  As described in the Complaint, the First Amendment right to association is also an intimate part of the religious practices of the Church.  Indeed, the rights of speech, assembly and association are entwined with the right of the free exercise of religion.  As stated above, the Complaint alleges that Jermanis and Pollart intentionally delayed the review of the Church's application for fourteen months knowing that their actions were substantially burdening the Church's religious exercise (Cmplt. ¶ 55).  Further, there is no compelling interest for this interference. (Cmplt. ¶¶ 80-85).   Moreover, they were placed on notice, via letters from the Church's attorneys, that their actions were in violation of the law.  *Id*.  Thus, the Complaint provides facts sufficient to state a cause of action under § 1983 for violation of the free exercise clause and by extension the associative rights that are enmeshed in the Church's religious practices.

     **F.  The allegations in the Complaint state a cause of action for denial of equal protection.**

The Complaint alleges that the Defendants have placed a requirement for land use that is exclusively visited on the Church.  (Cmplt. ¶52; Ex. A, §n(2), pp. 1, 5-7, highlighted section). Exhibit B of the Complaint graphically demonstrates this.   This allegation is sufficient to state a cause of action for denial of equal protection under the laws.

Additionally, the Complaint alleges that the City ***allows*** entertainment and commercial recreational assembly uses in industrial zones.  (Cmplt. ¶22).  Despite this, the Defendants

1   *prohibited* the Church from assembling on its Catalina property, also in an industrial zone,

2   directing the Church instead to seek a rezoning to their property.  (Cmplt., *Id.*).   In support of this,

3   Defendants cite to *Civil Liberties for Urban Believers*, 342 F.3d 752 (7th Cir. 2003); *Congregation*

4   *Kol Ami v. Abington Township*, 309 F.3d 120 (3rd Cir, 2002) and *Christian Gospel Church v. City*

5   *and County of San Francisco*, 896 F.2d 1221 (9th Cir. 1990) for the proposition that the standard

6   for review is rational basis.   First, it should be noted that the Defendants cite two cases outside of

7   this jurisdiction.   Second, the *Christian Gospel* has been superseded by statute, e.g., RLUIPA.

8   Finally, in a recent case the federal district court found that the standard of review is indeed

9   compelling interest rather than the rational basis test.  "If a city's zoning laws are found to violate

10  the equal terms provision, they may still be upheld if the government establishes that the law

11  embodies the least restrictive means of achieving a compelling government interest."  *Vietnamese*

12  *Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165, 1174 (C.D.

13  Cal. 2006).

14       Despite this, no matter what standard is used, there can be no justification for prohibiting a

15  religious assembly use but allowing nonreligious assembly use.  The Complaint makes allegations

16  which show inequitable treatment.  At the pleading stage of the litigation, a complaint need not

17  and should not present legal argument.  However, if the Court deems the allegations to be

18  insufficient, Plaintiff seeks leave to amend the Complaint to allege that there is no basis, rational

19  or compelling, to treat the Church differently than other categories or assembly users or similarly

20  situated entities.

21       **G. The allegations in the Complaint state a cause of action for denial of due process**

22       **of law.**

23       The Defendants assert that the Complaint "does not specify *which* provisions of the City's

24  general plan or zoning regulations are unduly vague."  (Jermanis & Pollart Motion to Dismiss, pg.

25  16, lines 13-14).  The reason is quite simple, Pollart simply asserts in her staff reports that the

26  Church's proposed use of the Catalina property does not fit in with the City's General Plan.  She

27  writes:  "Based upon the General Plan policies and Zoning Code regulations that were the basis

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

for the Assembly Use Overlay criteria…staff recommends that the Planning Commission deny the application." (Ex. A, n(2), pg. 6, last paragraph).  A plain reading of the stated reasoning for the recommended denial, which was apparently adopted by the City and other named Defendants, makes it impossible to determine what exactly the "policies" in question are.  Defendants' failure to articulate with reasonable precision the Church's shortcoming relative to the policies and regulations shows the vagueness for which the Church complains.   The "policies" and unnamed "regulations" are beyond vague.  A plain reading of the staff report attached to the Complaint shows that one must be clairvoyant to determine what they are.  Hence, a cause of action under § 1983 has been stated for a violation of substantive due process based upon the vague criteria.

As to the issue of Defendants unduly delaying the process, sufficient facts have been alleged showing that the liberty interest is predicated on the First Amendment rights discussed above.  Moreover, the Complaint alleges the intentional delay by Jermanis and Pollart to review the Church's application, knowing that their actions were substantially burdening the Church's religious exercise (Cmplt. ¶ 55).  This was despite being notified by the Church's lawyers that their actions were inconsistent with federal law.  *Id*.  Thus, the Complaint provides facts sufficient to state a cause of action under § 1983 for a deprivation of due process rights.

IV.    **The Complaint States a Sufficient § 1983 Claim Against Jermanis in his Individual Capacity.**

A.    **Direct personal participation is not required to impose individual liability under § 1983.**

The Defendants' assertions in their Motion to Dismiss mischaracterizes the law to the extent that they require allegations of Jermanis' direct personal participation as a prerequisite to holding Jermanis liable in his individual capacity under 42 U.S.C. §1983.  As the Ninth Circuit has noted, "personal participation is not the only predicate for section 1983 liability ... The requisite causal connection can be established not only by some kind of direct personal

1    participation in the deprivation, but also by setting in motion a series of acts by others which the

2    actor knows or reasonably should know would cause others to inflict the constitutional injury."

3    *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978). The Defendants' position is thus

4    without merit.

5

6          **B.      The Complaint alleges sufficient facts to hold Jermanis individually liable
                     under § 1983 because Jermanis' acts and omissions proximately caused the
7                    Church's injuries.**

8          As the Complaint adequately alleges, Jermanis is liable in his individual capacity under §

9    1983 because he intentionally prolonged the Assembly Use Permit application process in order to

10   obstruct, delay, and prevent the Church's use of the Catalina property knowing that his actions

11   were substantially burdening the Church's religious exercise (Cmplt. ¶ 55). This was despite

12   being notified by the Church's lawyers that their actions were inconsistent with federal law.

13   (Cmplt. ¶¶ 41, 55).

14         Based on these allegations, the Complaint states an adequate cause of action against

15   Jermanis in his individual capacity, under § 1983.

16         Further, personal participation is not the only predicate for § 1983 liability. *Johnson v.*

17   *Duffy*, 588 F.2d at 743. Anyone who "causes" any citizen to be subjected to a constitutional

18   deprivation is liable. *Id.* The requisite causal connection can be established by setting in motion a

19   series of acts by others which the actor knows or reasonably should know would cause others to

20   inflict the constitutional injury, in addition to some kind of direct personal participation in the

21   deprivation. *Id.* at 743-744. If state law imposes liability upon a public official for the acts of his

22   subordinates, vicarious liability can also be imposed upon him under § 1983. *Id.* at 744 citing

23   *Hesselgesser v. Reilly*, 440 F.2d 901 (9th Cir. 1971).

24

25   **V.      The Defendants are Not Entitled to Immunity**

26

27

28
_____

1    Defendants Jermanis and Pollart are not entitled to immunity.  The absolute immunity

2   available to those who commit legislative acts does not apply here because the acts of Jermanis

3   and Pollart were executive and ministerial rather than legislative.  Nor are Jermanis and Pollart

4   entitled to qualified immunity, as they were aware that the Church had certain well defined rights

5   and Jermanis and Pollart knowingly used the powers of their respective offices to violate those

6   rights.[1]

7

8        **A.      No absolute immunity for non-legislative actions.**

9        The Defendants in this case are not entitled to absolute immunity because their actions

10   were not legislative.  Absolute immunity is reserved for legislative, not ministerial acts.

11   *Kaahumanu v. County of Maui*, 315 F.3d 1215 (9th Cir. 2003); *Zamsky v. Hansell*, 933 F.2d 679

12   (9th Cir. 1991).  Acts are determined ministerial by examining the presence of ad hoc decision

13   making, individual rather than the broad affect of the actions, the content of the act, and whether

14   the act was budgetary and social services oriented.  *Id.* at 1220-1223.  When an act is deemed

15   ministerial, absolute immunity is not available.  *Zamsky,* 933 F.2d 679.  If a defendant's actions

16   were executive in nature, such as actions targeting an individual, this may be enough to remove

17   the absolute immunity afforded legislative acts.  *Id.*  Although the rules of these two cases might

18   seem broad at first, seeing them in the context of their facts and the facts of this case ultimately

19   shows that the Defendants in this case are not entitled to absolute immunity.

20

21        In *Kaahumanu*, the court reviewed the issue of absolute immunity following the defendant

22   city council members' denial of a CUP to the plaintiff Church and wedding service.  *Kaahumanu,*

23   315 F.3d at 1219.  In reaching its conclusion that the city council was not entitled to absolute

24   immunity, the court recognized that the decision to deny a CUP was an ad hoc decision "based on

---

[1] It sh~~ould be noted that the Complaint makes no claim for punitive damages.~~

the circumstances of the particular case and did not effectuate policy." *Id.* at 1220. The court

went on to reason that, as this action and decision affected only a small group rather than the

broader population, legislative immunity was not appropriate, citing *Bateson v. Geisse,* 857 F.2d

1300, 1304 (9th Cir.1988) ("This decision neither applied to the general community, nor involved

the promulgation of legislative policy as a … binding rule of conduct … preclud[ing] any absolute

immunity.") Finally, in discussing the content of the act and whether the act was budgetary or

social services oriented, the court reasoned that although the action itself was legislative in that the

council members voted, the content of the act related back to a very specific action—denial of a

CUP based on a case-by-case examination. *Id.* at 1223. The Ninth Circuit then concluded that the

actions of the defendants were not legislative and the defendants were at most entitled to qualified

immunity.

In like manner, the allegations in this complaint are sufficient to overcome the defense of

absolute immunity because the actions of the two individual defendants were focused on the

Church property. Indeed, the complaint alleges that but for the Church seeking to use its property

for religious assembly, the defendants would not have undertaken the assembly overlay rezoning.

Defendant Pollart wrote to the Planning Commission, "In response to an application by a church

to re-locate to a non-residential district, staff analyzed the possibility of allowing assembly uses on

appropriate non-residential sites, and expanding the land use options for assembly use."   (Ex. A,

§j(2), pg. 1, ¶1).

Similarly, the *Zamsky* court held that a defendant state commission's direct targeting of the

plaintiff landowner was sufficient to qualify the board's actions as executive rather than

legislative, stripping them of absolute immunity. *Zamsky,* 933 F.2d 679. The Ninth Circuit

reversed the trial court's grant of summary judgment, stating that the burden was upon defendant

1    state commission to prove that its actions were legislative instead of executive. *Id.* at 680. In

2    conclusion, the court held that, because plaintiff Zamsky was suing the commission for

3    specifically targeting his land, summary judgment in favor of the commission was not appropriate

4    because absolute immunity would not be available. *Id.* at 679. Much like the defendants in

5    *Zamsky* and *Kaahumanu*, the defendants in this case acted in a ministerial and not legislative

6    

7    manner, making absolute immunity inappropriate.

8        Jermanis and Pollart acted in a manner that was not designed to apply to "the general

9    community" or "involved the promulgation of legislative policy as a … binding rule of conduct."

10   *Bateson*, 857 F.2d at 1304. Instead, Jermanis and Pollart singled out and targeted the Church in a

11   calculated effort to deny the Church rights guaranteed under the United States Constitution and

12   RLUIPA. (Cmplt, ¶¶ 118, 121, 124, 127, 130, 133, 136.) Their actions were the result of a case-

13   by-case analysis, having an effect on only a few individuals, to wit the Church, rather than the

14   general community. Just like the Maui City Council in *Kaahumanu* decided not to rezone an area

15   for one specific applicant, the defendants' actions constitute ministerial acts and do not qualify for

16   absolute immunity. Jermanis and Pollart functioned in an executive role, guiding their functions

17   and powers of office to target the Church. The *Zamsky* court held that such actions may be

18   sufficient to strip government officials, such as defendants Jermanis and Pollart, of absolute

19   immunity. *Zamsky*, 933 F.2d 679. Also, following the steps of analysis in *Kaahumanu*, Jermanis

20   and Pollart acted in a decision-making capacity when they urged the denial of a CUP to the

21   Church and when they intentionally delayed the Church's application, acting to effect a small

22   group of people rather than the general community. (Cmplt, ¶ 56.) Their substantive actions were

23   neither budgetary nor city social services related. Even the actions themselves, delaying the

24   Church's application in order to work a devastating affect upon the Church's ability to exercise

25   

26   

27   

28

Constitutionally protected rights of assembly, speech, and religious expression, were substantively administrative rather than legislative.

As addressed by the court in *Kaahumanu* and in *Zamsky*, the actions taken by elected officials and their agents are not always "legislative" for the purposes of activating immunity. In some cases, immunity shields the elected officials and their agents when broad zoning actions are taken, ones that affect the general community and do not single out any particular group or person. *Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997). Defendants list several cases to this affect, all hinging on a necessary element that is not present in this case—legislative immunity requires legislative acts, and Ninth Circuit jurisprudence has consistently rejected the decision to approve or reject an individual applicant's permit as a legislative act. *Kaahumanu,* 315 F.3d 1215; *Zamsky,* 933 F.2d 679. Of course, the complaint alleges an individualized assessment (Cmplt. ¶100). Moreover, the complaint even attaches as an exhibit the minutes of the City Council meeting in which the Catalina Property is specifically identified and the Church is called the "applicant." (Ex. A, §o(4), pg. 10, last paragraph, pg. 11, ¶1).

The Ninth Circuit has held in the past that when officials generally entitled to legislative immunity act in a ministerial role, their actions do not qualify for absolute or legislative immunity. Jermanis and Pollart acted outside the scope of legislative or policy making discretion and instead functioned as executives when they reviewed an individual application and also when they intentionally delayed the rezoning application process. When this is the case, Ninth Circuit jurisprudence reduces the available immunity to, at most, qualified immunity.

**B.      Qualified Immunity is Unavailable for Knowing and Intentional Violations of Clearly Established Rights.**

Defendants Jermanis and Pollart are not entitled to qualified immunity because they knowingly and intentionally acted to violate what they knew were the rights of the Church. The affirmative defense of qualified immunity is not available if those seeking to raise it violated a plaintiff's clearly established constitutional rights. *Inouye v. Kemna*, 2007 WL 2556277 at *2. The standard is not so high as to require that "the very action in question [has] previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The standard for clarity is only that "the unlawfulness must be apparent." *Id.* In other words, immunity requires that the defendant's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As a matter of procedure, however, the plaintiff has only the burden of proving that the violated right was well established, while the burden of proving reasonableness falls upon the defendant. *Houghton v. South*, 965 F.2d 1532, 1534 (9th Cir. 1992).

> **1.    The Church has adequately alleged a violation of clearly established rights.**

The Church has alleged several violations of its rights by defendants Jeremanis and Pollart. As stated in the Complaint, Jermanis and Pollart violated the Church's rights under RLUPIA, the First and Fourteenth Amendments for freedom of religion, freedom of speech, freedom of assembly, freedom of association, equal protection under the laws, and due process. (Cmplt ¶¶ 33-36, 118, 121, 124, 127, 130, 133). Jermanis and Pollart used their authority and powers to needlessly delay the permit process and prepare reports specifically targeting the Church and advising against the grant of a CUP. (Cmplt ¶¶ 33-36, 42, 49, 52). The showing of such injury satisfies the burden of the Church in removing qualified immunity. *Houghton*, 965 F.2d at 1534.

> **a.    RLUIPA Claims**

---

The facts of this case satisfy any standard of substantial burden as contemplated by 42 U.S.C. § 2000cc(a). Jermanis and Pollart have placed a substantial burden on the Church. On the one hand, the Church is regularly exceeding its capacity in providing religious and social services to parishioners and the community. Cmplt ¶¶ 61-63. In effect, the spatial limits of the Church's current location do not allow for ministering, evangelism, or charity—requirements held very dear by the Church's Christian faith. *Id.* On the other hand, the denial of the CUP is crippling the Church financially, forcing it to pay almost $35,000 each month for a building it is barred from using. (Cmplt, ¶ 101). The options available to the Church as a result of the actions of Jermanis and Pollart are to stop serving a substantial portion of the community and consequentially not practice the Christian faith, or to split the Church and thereby split the congregation. In either case, the Church is forced to pay an enormous amount of money on a monthly basis for no perceivable benefit. Regardless of any split in the circuits as to the precise standard for "substantial burden," the overwhelming burden placed on the Church by Jermanis and Pollart readily meets any interpretation of the "substantial burden" clause, so much so that no reasonable city official could have considered this anything less than a substantial burden.

As the Defendants readily concedes (Jermanis & Pollart Motion to Dismiss, pg. 32) the only reasonable conclusion that defendants Jermanis and Pollart could draw is that the Equal Terms provision of RLUIPA (42 U.S.C. § 2000cc(b)(1)) requires them to treat religious and non-religious Assembly Use requests for rezoning equally. But Jermanis and Pollart have applied stricter standards to the Church's application for a CUP. Other assembly use sites have been allowed in the same area as the Catalina property. (Cmplt ¶ 104). By Jermanis and Pollart's own admission, they acted outside of the scope of the only reasonable interpretation of the equal terms provision of RLUIPA.

### b.    Constitutional Claims

As discussed in section III above, the defendants Jermanis and Pollart intentionally discriminated against the Church and acted to violate several of its rights under the First and Fourteenth Amendments.  One of the reasons claimed for not granting the CUP to the Church was that the Catalina property was located in an area close to hazardous material, even though other, non-religious assembly uses in the same area received CUPs in the past.  (Cmplt, ¶ 104).  This appears as much more than just a hint of discrimination.  The characteristic of religious observance seems to be the only reason why a CUP was denied to the Church, while the absence of that characteristic was sufficient for the grant of CUPs to other assembly uses in the same are.

Given the current zoning scheme, there are no sites available in the city of San Leandro that can accommodate the Church, particularly because of its size and the amount of religious and social services it provides to the community.  The conduct of Jermanis and Pollart created a situation in which the Church is denied its rights under the First and Fourteenth Amendments.  Specifically, because the Church is denied the one site in the city that is large enough to accommodate it, the Church is forced to forfeit its rights of association, as the only way to continue to provide social and religious services to those who need them is to create a separate Church.  This would offend all notions of the Church's rights to association, splitting the congregation in two when an opportunity is readily available to allow the Church and its membership to remain intact.  Again, the Church is not seeking special treatment but only the same treatment as other assembly uses have received in the area, specifically that a CUP be issued to allow the usage of a property the Church already owns and pays for that is large enough to accommodate all of the flock and continue the social and religious services which now exceed the modest limits of the Church's current capacity.

1

**2.    Defendants Jermanis and Pollart acted outside the scope of objective reasonableness.**

2

Jermanis and Pollart's actions were unreasonable because they were notified as to the

3

unlawful nature of their conduct.  In *Inouye*, a prison official revoked a former inmate's parole

4

because the inmate refused to participate in an Alcoholics Anonymous program.  The parolee

5

objected to the religious implications of the program.  *Inouye*, 2007 WL 2556277 at *1.  The

6

inmate filed a lawsuit, naming the prison official as a defendant.  The Ninth Circuit held that the

7

defendant could not claim qualified immunity because his attempts to force the plaintiff parolee to

8

attend Alcoholics Anonymous violated the Establishment Clause of the First Amendment.  *Id.* at

9

*4.  In the second phase of the immunity analysis, the court determined that the defendant prison

10

guard violated a right that was "'clearly established' … such that a reasonable official would know

11

that his or her conduct was illegal." *Id.*  In reasoning that the prison official's mistake as to the

12

law was unreasonable, the court took special note of the fact that the plaintiff parolee sent a letter

13

to the parole board informing them of the relevant case law and statutes. *Id.*  The court reasoned

14

that, because of the letter, a jury could find that the prison official had actual notice that his

15

conduct was against the law. *Id.* at *6.  The court also noted that the plaintiff parolee was already

16

involved in a lawsuit against other prison officials over the constitutionality of compulsory

17

Alcoholics Anonymous attendance. *Id.*  Some of the facts and a substantial portion of the analysis

18

of this recent Ninth Circuit case bear a striking resemblance to the facts of this case.

19

Defendants Jermanis and Pollart will not be able to meet their burden of showing that a

20

reasonable city official would have thought their actions were lawful.  Like the *Inouye* case, the

21

Church's attorneys sent a letter to the defendants advising them of the current case law and the

22

rights and requirements as set out under RLUIPA.  (Cmplt, ¶¶ 41, 55).  Jermanis and Pollart, like

23

24

25

26

27

the prison official in *Inouye*, had actual notice that their actions were against the law and a

28

1   violation of the rights of the Church.  Also, much like the lawsuit by the plaintiff parolee against

2   the prison parole board should have put the defendant prison official on notice of the illegality of

3   his acts, the Ninth Circuit decision in *Guru Nanak Sikh Soc. Of Yuba City v. County of Sutter*, 456

4
    F.3d 978 (9th Cir. 2006) should have put Jermanis and Pollart on notice that their actions in
5

6   targeting the Church and violating the Church's rights were illegal.  These similarities to *Inouye*

7   suggest that the reasoning and holding of *Inouye* should apply to this case.  Specifically, that the

8   defendants Jermanis and Pollart are not entitled to qualified immunity because they violated the

9   rights of the Church and a reasonable city official would have known that the intentional targeting

10  of the Church for violation of various rights protected by RLUIPA and the United States

11  Constitution was unlawful.

12                                  **<u>CONCLUSION</u>**

13
            For the foregoing reasons, the motion to dismiss should be denied.  However, if the Court
14

15  finds that the allegations in the complaint are insufficient, then the Plaintiff requests leave to

16  amend.

17          Respectfully submitted this 10th day of October, 2007.

18

19                                  By:  PACIFIC JUSTICE INSTITUTE

20
                                          /S/ Kevin Snider
21                                        Kevin T. Snider
                                          Mathew B. McReynolds
22                                        Peter MacDonald
                                          Attorneys for Plaintiff and
23                                        Real Party in Interest

24

25

26

27

28