Jayne W, Williams, Esq. (SBN:63203)
jwilliams@meyersnave.com
Deborah J. Fox, Esq. (SBN: 110929)
dfox@meyersnave.com
Philip A. Seymour, Esq. (SBN: 116606)
Pseymour@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, TONY SANTOS (in his official capacity), SURLENE G. GRANT (in her official capacity), DIANA M. SOUZA (in her official capacity), JOYCE R. STAROSCIAK (in her official capacity), BILL STEPHENS (in his official capacity), JIM PROLA (in his official capacity), JOHN JERMANIS (in his official and individual capacities), DEBBIE POLLART (in her official and individual capacities), DOES 1-50.<br><br>Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No. C 07-03605 PJH<br><br>REPLY TO PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT AGAINST INDIVIDUAL DEFENDANTS JOHN JERMANIS AND DEBBIE POLLART<br><br>Honorable Phyllis J. Hamilton<br>Complaint Filed: 7/12/07<br><br>Hearing:<br>Date:   October 31, 2007<br>Time:  9:00 a.m.<br>Courtroom: 3 |

TABLE OF CONTENTS

Page(s)

I. *INDIVIDUAL LIABILITY OF DEFENDANT JERMANIS* ...................................................1
II. *RLUIPA CLAIMS* ...............................................................................................................1
III. *CONSTITUTIONAL CLAIMS* ...........................................................................................1
    A. *First Amendment Claims*. .........................................................................................1
    B. *Equal Protection Claim*. ............................................................................................2
    C. *Due Process Claim*. ...................................................................................................4
IV. *PLAINTIFF HAS SHOWN NO BASIS FOR OVERCOMING IMMUNITY* ....................4
    A. *Legislative Immunity*. ................................................................................................4
    B. *Qualified Immunity*. ..................................................................................................7
        1. *RLUIPA Claims*. ...........................................................................................7
        2. *Constitutional Claims*. ..................................................................................8
V. *CONCLUSION*.................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Creighton*,
  483 U.S. 635, 107 S.Ct. 3034 (1987) .................................................................................. 7

*Arnel Development Co. v. City of Costa Mesa*,
  28 Cal.3d 511, 169 Cal.Rptr. 904 (1980) ......................................................................... 5, 6

*Biblia Abierta v. Banks*,
  129 F.3d 899 (7th Cir. 1997) .............................................................................................. 6

*Board of Regents v. Roth,*
  408 U.S. 564, 92 S.Ct. 2701 (1972) ................................................................................... 4

*Christian Gospel Church v. City and County of San Francisco*,
  896 F.2d 1221 (9th Cir. 1990) ............................................................................................ 2

*Cinevision Corp. v. City of Burbank*,
  745 F.2d 560 (9th Cir. 1984) .............................................................................................. 6

*Gravel v. United States*,
  408 U.S. 606, 92 S.Ct. 2614 (1972) ................................................................................ 5, 7

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
  456 F.3d 978 (9th Cir. 2006) .............................................................................................. 8

*Inouye v. Kemna*,
  2007 WL 2556277 (9th Cir. 9/7/2007) ............................................................................... 9

*Johnson v. Duffy*,
  588 F.2d 740 (9th Cir. 1978) .............................................................................................. 1

*Kaahumanu v. County of Maui*,
  315 F.3d 1215 (9th Cir. 2003) ........................................................................................ 5, 6

*Kawaoka v. City of Arroyo Grande*,
  17 F.3d 1227 (9th Cir. 1994) .............................................................................................. 3

*Moran v. State of Washington*,
  147 F.3d 839 (9th Cir. 1998) ........................................................................................... 7, 9

TABLE OF AUTHORITIES cont.

Page(s)

**Cases** *cont.*

*Petra Presbyterian Church v. Village of Northbrook*,
 489 F.3d 846 (7th Cir. 2007) ..................................................................................................4

*Sorrels v. McKee*,
 290 F.3d 965 (9th Cir. 2002) ..................................................................................................7

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove*,
 460 F.Supp.2d 1165 (C.D. Cal. 2006)....................................................................................2

*Zamsky v. Hansell*,
 933 F.2d 677 (9th Cir. 1991) .............................................................................................6, 7

**Statutes**

42 U.S.C. § 1983 ................................................................................................................................1

I.  *INDIVIDUAL LIABILITY OF DEFENDANT JERMANIS*

With respect to defendant Jermanis, ICFG argues that "direct personal participation" is not essential for liability under 42 U.S.C. § 1983, and that liability may be premised upon the "setting in motion" acts by others which the defendant knows or should know will lead to a violation of constitutional rights. Memorandum, pp. 6-7, citing *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978). While true as a proposition of law, this axiom is of no help to ICFG. That Complaint does not state any facts indicating that Jermanis personally ordered, directed or "set in motion" any course of conduct by others that led to the violation of ICFG's rights, even were such a violation deemed to have occurred. Based on the Complaint, Jermanis cannot be viewed as anything more than an administrator bystander to the planning decisions complained of by ICFG.

II.  *RLUIPA CLAIMS*

ICFG's RLUIPA claims are addressed in the City and City Councilmembers concurrent motion to dismiss. The individual defendants rely on and incorporate herein the argument set forth in the City's Reply Memorandum In Support of Motion to Dismiss.

III.  *CONSTITUTIONAL CLAIMS*

A.  *First Amendment Claims*.

ICFG does not cite a single authority in support of its various First Amendment claims, *i.e.* its Free Exercise, Freedom Speech, Freedom of Assembly and Freedom of Association claims (Fifth though Eighth Causes of Action). Opposition Memorandum, pp. 2-4. The principal recurring factual argument advanced in support of these claims is that defendants have allegedly "prevented" or "prohibited" ICFG and its members from using the Catalina Street property for organized religious and expressive purposes. The Complaint, however, admits that the property is not and has never been zoned for such use. Complaint, ¶¶ 21, 47. ICFG utterly fails to address the authorities cited in the City's and individual defendants' opening memoranda establishing that cities are not required to permit churches (or other assembly uses) on each and every property within their jurisdiction. The Complaint, read together with City ordinances that are subject to judicial notice, basically admits that

there are ample locations zoned for church use in the City. The Complaint thus does not state a claim for violation of any First Amendment rights.

This conclusion is not altered by allegations that the individual defendants "intentionally delayed" City action on ICFG's application. First, as discussed in the Opening Memorandum (pp. 18:22 – 19:11), the actual detailed factual allegations in the Complaint do not suggest any period of excessive or unreasonable delay by the City, let alone any delay specifically attributable to the actions of Jermanis or Pollart. If anything, the City was extraordinarily responsive to ICFG's applications, although they did not lead to the result ICFG would have liked. As a further matter, ICFG does not explain how "delay" of an application for *any* length of time can be deemed a denial of First Amendment rights where the City was under no constitutional obligation to approve the application in the first place nor offering any supporting citations for such a claim.

B. *Equal Protection Claim.*

ICFG apparently disputes whether the rational basis test controls its Fourteenth Amendment Equal Protection claim. ICFG cites no authority, however, suggesting that a more stringent standard applies in the absence of intentional anti-religious discrimination. *See, e.g.*, *Christian Gospel Church v. City and County of San Francisco*, 896 F.2d 1221 (9th Cir. 1990). ICFG contends that *Christian Gospel* was "overruled" by RUILPA. Opposition Memorandum p. 5:7. This is simply false. While the Equal Terms provision of RLUIPA may create an independent statutory basis for challenging discrimination against religion, it does not alter the text of the Fourteenth Amendment Equal Protection clause nor jurisprudence applying same. If ICFG wishes to plead a separate Fourteenth Amendment Equal Protection claim, it must allege conduct forbidden by the Equal Protection clause. It has not done so.

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove*, 460 F.Supp.2d 1165 (C.D. Cal. 2006) does not alter this result. The court in *Vietnamese Buddhism* was applying the Equal Terms provision of RLUIPA, not the Equal Protection clause. *Id*. at 1173-1174. The case further involved zoning regulations which appeared to

1 distinguish on their face between churches and religious centers, on the one hand, and all
2 other types of assembly uses, thus triggering strict scrutiny under RLUIPA. This holding has
3 no bearing here. The City's regulations do *not* distinguish between churches and other types
4 of assembly uses generally. The fact that the City's regulations do allow commercial
5 entertainment and commercial recreational uses in some areas not open to assembly uses does
6 not trigger strict scrutiny.

7     Although ICFG persists in claiming that the distinction between Assembly Uses
8 (including churches) and commercial entertainment and recreational uses violates equal
9 protection principles, it does not explain why this distinction is irrational, nor cite any
10 authority whatsoever which supports such a conclusion.

11     ICFG also briefly asserts that the Complaint "alleges that the Defendants have placed a
12 requirement for land use that is exclusively visited on the Church." Memorandum, p. 4:22-
13 23, citing Complaint, ¶ 52 and Exhibit A, § n(2), pp. 1, 5-7. Paragraph 52 of the Complaint
14 refers to the staff report prepared in part by Pollart that recommended denial of the Church's
15 March 2007 rezoning application in part because of the presence of hazardous materials on
16 numerous nearby industrial sites in the area. As discussed in greater detail in connection with
17 ICFG's Equal Terms claim, this is essentially an "as applied" Equal Protection claim. No
18 City regulations specifically require consideration of nearby hazardous materials as a factor in
19 approving or denying a rezoning application (or any other application) involving churches,
20 nor do any City regulations prohibit consideration of this issue in connection with
21 applications filed for other types of uses. The Complaint also does not allege that the City
22 ultimately actually relied on this criterion to ICFG's detriment. *See* Complaint, ¶¶ 51, 54.
23 But in any event, the Complaint does not allege that the City actually has treated other
24 similarly situated entities (*i.e.* other churches or assembly uses applying for a rezone)
25 differently, nor can ICFG reasonably claim that consideration of the proximity of toxic
26 materials users is irrational. *See Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1240 (9th
27 Cir. 1994) [absent intentional invidious discrimination, rational basis test applies; plaintiff
28 must show dissimilar treatment of similarly situated persons]; *Christian Gospel*, 896 F.2d

1221, 1225-1226 [rational basis test applies; plaintiff also must show existence of similarly situated persons that were treated differently]; *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 852 (7th Cir. 2007) [listing presence of toxic materials and other legitimate considerations supporting exclusion of assembly uses from industrial zones].

C. *Due Process Claim.*

The argument advanced in support of ICFG's due process claim borders on the surreal. ICFG essentially admits that it cannot identify any City general plan policies or zoning ordinance provisions which are unconstitutionally vague, but contends that the *staff report* recommending denial of its rezoning application is unconstitutionally vague. There is, of course, no constitutional requirement that a staff report, *i.e*. a statement of opinion by staff, articulate the basis for its recommendation to an applicant's satisfaction. Where the regulations being applied are constitutionally sound, the Due Process clause does not require that their application be accompanied by an explanatory narrative.

ICFG also does not explain how the defendants' alleged actions can be deemed to have deprived ICFG of any constitutionally protected property or liberty interest, either by "delay" or otherwise. *Board of Regents v. Roth,* 408 U.S. 564, 570-572, 92 S.Ct. 2701 (1972). ICFG's "delay" claim also fails for reasons discussed above and in the individual defendants' opening memorandum. The facts alleged in the Complaint do not suggest any excessive or unreasonable delay, intentional or otherwise, even if "delay" in handling a rezoning application could be deemed to trigger due process considerations.

IV. *PLAINTIFF HAS SHOWN NO BASIS FOR OVERCOMING IMMUNITY*

A. *Legislative Immunity*.

ICFG contends that legislative immunity does not apply because the defendants were not engaged in "legislative" activity. The real question posed here, however, is whether *all*, or merely some, of defendants' actions were with the scope of legislative immunity.

ICFG cannot seriously dispute that enactment of the Assembly Use Overlay zoning was, by any standard, legislative in nature. The legislative process involved a reevaluation of City-wide zoning policies, a comprehensive evaluation of all properties in existing non-

residential zones for suitability for assembly uses, and ultimately adoption of a new overlay zoning classification and application of the overlay to some 196 properties. Complaint, ¶¶ 30-47, 49. This was classically an exercise of legislative powers involving matters of interest to "the public at large." *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1222 (9th Cir. 2003). The fact that a particular piece of property owned by ICFG was not included in the rezoning hardly vitiates the legislative nature of the City's actions. Pollart and Jermanis are thus entitled to absolute legislative immunity from liability for any actions taken as assistants to this legislative process. *Gravel v. United States*, 408 U.S. 606, 616-617, 92 S.Ct. 2614 (1972).

It is a closer call whether legislative immunity attaches to defendants' alleged actions in relation to rejection of ICFG's rezoning application. Complaint, ¶¶ 48 – 54. Contrary to statements in ICFG's memoranda, the Complaint does not allege that the City denied any conditional use application.[1] There is no question that rezoning, even of two individual parcels, is a legislative act under California law. *Arnel Development Co. v. City of Costa Mesa*, 28 Cal.3d 511, 516, 169 Cal.Rptr. 904 (1980).

This case is distinguishable from *Kaahumanu v. County of Maui*, 315 F.3d 1215. First, *Kaahumanu* involved a special use permit application, not a proposed rezoning. The plaintiff was specifically seeking authorization to use her beachfront property as a venue for weddings. The Ninth Circuit applied a multi-factor test to determine whether the permit decision was administrative instead of legislative in nature. The Court concluded that action on the special use application was not legislative in nature. This is hardly surprising as

---

[1] The City is fully aware that ICFG did at one point submit a conditional use permit ("CUP") application that was subsequently rejected as incomplete by City staff. This fact, however, is not mentioned in the Complaint. While omission of this event from ICFG's allegations is mysterious, it is ultimately irrelevant. For purposes of the motion to dismiss, ICFG cannot rely on facts not alleged in the Complaint or properly subject to judicial notice. Conceivably these additional facts might be relevant in determining whether ICFG should be given leave to amend. However, the issue of the incomplete CUP application was fully addressed in proceedings on ICFG's motion for a preliminary injunction. The Court found that any claims based on ICFG's abortive CUP application were not ripe. Order Denying Motion for Preliminary Injunction, 10/02/07, p. 19:7-11.

special use permits, conditional use permits and the like are almost universally recognized as administrative in nature, *i.e.*, approval or denial represents an application of policies contained in zoning ordinances, not a change in the applicable zoning. *Kaahumanu*, 315 F.3d at 1221-1222 and fn 7.

The four factor test employed in *Kaahumanu* actually mandates application of absolute legislative immunity here. Two of the relevant factors clearly demand legislative immunity, *i.e*. the denial of ICFG's rezoning application was both formally and substantively legislative in nature. *Kaahumanu*, 315 F.3d at 1220, 1223; *Arnel Development*, 28 Cal.3d 511, 516. The fact that the requested rezoning would have affected only two adjoining parcels cuts against legislative immunity. However, as recognized in *Kaahumanu*, "that while this factor 'may at times be useful, it does not always provide an answer to the question' whether an act is legislative." 315 F.3d at 1222, quoting *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 579 (9th Cir. 1984). In this case, the denial of ICFG's rezoning application can hardly be considered an isolated ad hoc decision. The City had just completed a City-wide reevaluation of its zoning scheme resulting in creation of the Assembly Use Overlay District and application of this zoning to 196 properties. ICFG's rezoning application was in substance a request for reconsideration of the City legislative decision because it failed to include ICFG's property in the Assembly Use Overlay District. There is no principled reason that plaintiff should be able to bypass legislative immunity merely by demanding reconsideration of legislative decisions on a piecemeal basis. There is also no question that the rezoning here would have had substantial practical and policy considerations affecting far more than "a few people." As the Ninth Circuit recognized in *Kaahumanu,* the majority of federal circuits have concluded that rezoning of a single parcel is legislative in nature. 315 F.3d at 1222 fn 7; *see, e.g*., *Biblia Abierta v. Banks*, 129 F.3d 899, 904-905 (7th Cir. 1997). None of the factors used to distinguish these cases in *Kaahumanu* are present here.

*Zamsky v. Hansell*, 933 F.2d 677 (9th Cir. 1991) is also of no help to ICFG. The defendants in *Zamsky* were not legislators or aides acting in a legislative capacity, but state commissioners whose executive function was to "[M]onitor[] compliance with established

1  laws" and "offer[] recommendations on how compliance may be achieved."  933 F.2d at 679.
2  This is manifestly different than the role played by legislative aides in preparing proposed
3  legislation or presenting analysis to legislators who make the ultimate decision to approve or
4  reject it.  As recognized in *Gravel*, 408 U.S. 606, 616-617, the participation of aides in the
5  legislative process is indispensable in modern times, which is precisely why absolute
6  legislative immunity extends to such individuals.  In *Zamsky* the defendants were also
7  charged with "singling out" the plaintiff's property for a special recommendation.  933 F.2d
8  at 679.  There is no plausible claim of such overreaching in this case.  The party who "singled
9  out" ICFG's land for special attention in this case was ICFG itself, by filing a rezoning
10 application.  Complaint, ¶ 48.  Having voluntarily invoked the legislative process itself, ICFG
11 can hardly claim that the particular attention afforded its property calls for a suspension of
12 normal legislative immunity.
13         B.    *Qualified Immunity*.
14         ICFG concedes that in order to defeat qualified immunity, it must allege facts showing
15 that the defendants' actions violated "clearly established rights."  Opposition Memorandum,
16 p. 12.  Innumerable cases have discussed the level of specificity required to meet this burden.
17 *See, e.g*., *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034 (1987); *Sorrels v. McKee*, 290
18 F.3d 965, 970-971 (9th Cir. 2002); *Moran v. State of Washington*, 147 F.3d 839, 845 (9th Cir.
19 1998).  ICFG, however, simply ignores the relevant principles and relies on broad brush
20 allegations of misconduct, unsupported by citations to relevant authority.
21              1.    *RLUIPA Claims*.
22         With respect to its RLUIPA claims, ICFG recites the various factual allegations of its
23 Complaint, but cites literally *no* authority suggesting that a reasonable official "should have
24 known" that failure to allow relocation of ICFG's operations to industrially zoned property
25 was a violation of RLUIPA.  Similarly, ICFG cites no authority for the proposition that
26 treating churches and other assembly uses different from commercial entertainment or
27 recreational uses, or consideration of the proximity of toxic material users, violates the Equal
28 Terms provisions of RLUIPA.

1     ICFG, citing paragraph 104 of the Complaint, briefly contends that "other assembly
2 uses" have been allowed near the Catalina Street property in the past.  This conclusory
3 allegation, however, is unsupported by any specific facts in the Complaint.  In any event,
4 given the comprehensive effort undertaken by the City to reevaluate use of industrial and
5 commercial areas for assembly uses, it can hardly be said that "clearly established law"
6 required the City to continue alleged past practices in order to comply with RLUIPA.  At
7 most, the defendants can be charged with knowing that a reasonable number of sites must be
8 made available for church uses in the City.  But nothing in RLUIPA jurisprudence to date
9 establishes that churches must be allowed to located on industrial parcels of their own
10 choosing notwithstanding any other legitimate zoning considerations.

11         2.     *Constitutional Claims*.

12     With respect to its constitutional claims, ICFG continues its pattern of offering bald
13 assertions unsupported by any authority showing that analogous municipal actions have been
14 found to actually violate the Constitution.  This comes as no surprise since ICFG's response
15 on the merits of these claims cites essentially no pertinent authority.  Opposition
16 Memorandum, pp. 2-6.  Significantly for purposes of qualified immunity, neither does ICFG
17 attempt to explain why the cases relied on by the City are distinguishable in principle here,
18 much less explain why defendants Jermanis and Pollart should have been able to distinguish
19 them at the time of their alleged actions.

20     The sole authorities ICFG does cite are unhelpful.  *Guru Nanak Sikh Society of Yuba*
21 *City v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006) does not address claims brought under
22 the Constitution at all, but a statutory "substantial burden" claim brought under RLUIPA.  At
23 most, *Guru Nanak* might have some tangential relevance to ICFG's Free Exercise claim (fifth
24 cause of action), but even here *Guru Nanak* obviously involves legal issues and a factual
25 background so distant from those presented in this case as to be useless in defeating qualified
26 immunity.  *Guru Nanak* does not establish that defendants knew or should have known that
27 failure to rezone a particular parcel in an industrial zone for church use violates the
28 ///

1  Constitution where literally hundreds or thousands of other potential sites are legally
2  available under the city's zoning.
3      The only other case cited by ICFG is an unpublished Ninth Circuit decision involving
4  prisoner rights, *Inouye v. Kemna*, 2007 WL 2556277 (9th Cir. 9/7/2007). *Inouye* involves an
5  Establishment Clause claim asserted by a Buddhist former prisoner who objected to be
6  compelled to attend a Christian-run counseling program. The case has no relevant to any of
7  the constitutional claims presented here. *Inouye* is instructive, however, as to the level of
8  specificity required to establish that rights allegedly violated by defendants are "clearly
9  established." The Ninth Circuit found that the violation alleged in this case was not only
10 obvious in light of applicable constitutional principles, but had been addressed in two federal
11 circuit courts, three federal district courts and two state supreme courts, all with the same
12 result, at the time of defendants actions. 2007 WL 2556277 at 4. In this case, there is neither
13 any clearly applicable precedent, nor any anything obviously unlawful about the defendants'
14 alleged conduct. Mere boilerplate recitals that defendants knew or should have known their
15 conduct was illegal cannot defeat immunity where the facts alleged show no suspect conduct.
16 ICFG cannot reasonably claim that the application of the broad legal principles it cites to the
17 facts of this case are so obvious that "a reasonable official would understand that what he is
18 doing violates that right." *Moran v. State of Washington*, 147 F.3d 839, 845 (9th Cir. 1998).
19     Given ICFG's inability to show that the defendants' alleged conduct violated any
20 specific clearly established rights, it may be superfluous to consider whether the Complaint
21 alleges any conduct that was also objectively unreasonable. The only "fact" ICFG cites in
22 support of its argument on this point is that its representatives sent a letter to the City warning
23 that City that ICFG believed the City's actions violated RLUIPA. Opposition Memorandum,
24 p. 15:25, citing Complaint, ¶¶ 41, 55. It takes much more than a complaint letter from the
25 plaintiff to show that a defendant's actions are *objectively* unreasonable given the totality of
26 circumstances at play here.
27 ///
28 ///

V.  *CONCLUSION*

ICFG has failed to show any basis for denial of the motion to dismiss. ICFG also has failed to suggest any manner in which the Complaint could be amended to state a claim for relief against Jermanis and Pollart individually. The motion should be granted without leave to amend.

Dated: October 17, 2007        MEYERS, NAVE, RIBACK, SILVER & WILSON

By _____/s/_____
DEBORAH J. FOX
Attorneys for Defendants
CITY OF SAN LEANDRO, *et al.*

1021582_1
136.5016