1  Jayne W, Williams, Esq. (SBN:63203)
   jwilliams@meyersnave.com
2  Deborah J. Fox, Esq. (SBN: 110929)
   dfox@meyersnave.com
3  Philip A. Seymour, Esq. (SBN: 116606)
   Pseymour@meyersnave.com
4  MEYERS, NAVE, RIBACK, SILVER & WILSON
   555 12th Street, Suite 1500
5  Oakland, California  94607
   Telephone: (510) 808-2000
6  Facsimile: (510) 444-1108

7  Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, TONY SANTOS (in his official capacity), SURLENE G. GRANT (in her official capacity), DIANA M. SOUZA (in her official capacity), JOYCE R. STAROSCIAK (in her official capacity), BILL STEPHENS (in his official capacity), JIM PROLA (in his official capacity), JOHN JERMANIS (in his official and individual capacities), DEBBIE POLLART (in her official and individual capacities), DOES 1-50.<br><br>    Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>    Real Party in Interest. | Case No.  C 07-03605 PJH<br><br>REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANTS CITY OF SAN LEANDRO, MAYOR TONY SANTOS, AND CITY COUNCILMEMBERS SURLENE G. GRANT, DIANA M. SOUZA, JOYCE R. STAROSCIAK, BILL STEPHENS AND JIM PROLA TO DISMISS COMPLAINT<br><br>Honorable Phyllis J. Hamilton<br>Complaint Filed: 7/12/07<br><br>Hearing:<br>Date:   October 31, 2007<br>Time:  9:00 a.m.<br>Courtroom: 3 |

TABLE OF CONTENTS

Page(s)

I. *STANDARD OF REVIEW* ...................................................................................................1

II. *THE COMPLAINT DOES NOT ASSERT ANY COLORABLE RLUIPA CLAIM* ................................................................................................................................1

    A. *The Substantial Burden Claim*....................................................................................1

    B. *The Complaint Does Not Allege a Violation of the Equal Terms Provision of RLUIPA* ......................................................................................................3

        1. *Equivalent Uses* ................................................................................................4

        2. *The Hazardous Material Issue.* ........................................................................5

    C. *Plaintiffs Have No Claim for Exclusion or Unreasonable Restriction of Religious Uses*........................................................................................6

III. *CONCLUSION* ........................................................................................................................7

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Civil Liberties for Urban Believers v. City of Chicago*,
   342 F.3d 752 (7th Cir. 2003) ..................................................................................................5

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) ....................................................................................................1

*Guru Nanak Shikh Society of Yuba City v. County of Sutter*,
   326 F.Supp.2d 1140 (E.D. Cal. 2003) ....................................................................................1

*Guru Nanak Sikh Society of Yuba City v. County of Sutter*,
   456 F.3d 978 (9th Cir. 2006) ........................................................................................ 1, 2, 3

*Kawaoka v. City of Arroyo Grande*,
   17 F.3d 1227 (9th Cir. 1994) ..................................................................................................6

*Monell v. Dept. of Social Services*,
   436 U.S. 658, 98 S.Ct. 2018 (1978) ........................................................................................5

*Petra Presbyterian Church v. Village of Northbrook*,
   489 F.3d 846 (7th Cir. 2007) ..................................................................................................2

*Primera Iglesia Bautista Hispania of Boca Raton, Inc. v. Broward County*,
   450 F.3d 1295 (11th Cir. 2006) ..................................................................................... 3, 5, 6

San Jose Christian College v. City of Morgan Hill,
   360 F.3d 1024 (9th Cir. 2004) ................................................................................................2

Ventura County Christian High School v. City of San Buenaventura,
   233 F.Supp.2d 1241 (C.D. Cal. 2002) ....................................................................................5

*Westchester Day School v. Village of Mamaroneck*,
   386 F.3d 183 (2nd Cir. 2004) .................................................................................................3

**Statutes**

42 U.S.C. § 2000cc(b)(3) .............................................................................................................6

**Other Authorities**

146 Cong. Rec. S7774-01, S7777 ................................................................................................4

H.R. Rep. 106-219 (1999), p. 19 ..................................................................................................4

I.   *STANDARD OF REVIEW*

ICFG leans heavily on the strict standard of review that governs a motion to dismiss. It notes that the great majority of reported RLUIPA cases involve appeals from injunction proceedings or summary judgments. Memorandum, p. 4:1-14. This fact does not relieve ICFG, however, from pleading facts in its Complaint that, if accepted as true, actually support a viable RLUIPA claim. As noted in the opening memorandum, a plaintiff may not avoid a motion to dismiss by reliance on unsupported conclusory allegations where the facts actually alleged in the Complaint show that there is no basis for liability. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994)

II.  *THE COMPLAINT DOES NOT ASSERT ANY COLORABLE RLUIPA CLAIM*

  A.   *The Substantial Burden Claim.*

ICFG makes little attempt to expound the basis for its substantial burden claim. ICFG relies exclusively on *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 456 F.3d 978, 988 (9th Cir. 2006). Contrary to ICFG's protestations, however, the "parallels" between this case and *Guru Nanak* are not only escapable, they are nonexistent. In *Guru Nanak* the County denied two successive conditional use permit ("CUP") applications on grounds that suggested that the County would refuse to issue a CUP for any similarly situated property. The plaintiffs were effectively told that they would not be allowed to locate on land in developed residential areas because of potential impacts on adjoining residential uses, and would not be allowed to locate in rural areas because this would potentially conflict with agricultural uses and constitute "leapfrog" development. *Id*. at 982-984, 991-992. Churches also were not allowed, with or without a CUP, in any industrial or commercial zone. *Guru Nanak Shikh Society of Yuba City v. County of Sutter*, 326 F.Supp.2d 1140, 1146 (E.D. Cal. 2003). In the second application, the plaintiffs had further agreed to comply with conditions of the County planning staff and approved by the County Planning Commission to mitigate all potential adverse effects of the church at the proposed location. *Guru Nanak*, 456 F.3d at 991.

///

On these facts, the Ninth Circuit concluded that the net effect of the County's actions had been "to shrink the large amount of land theoretically available to Guru Nanak under the zoning code to several scattered parcels that the County may or may not ultimately approve." 456 F.3d at 992. To continue the search for usable property in this situation would indeed impose a substantial burden on the plaintiffs' exercise of religion. As ICFG acknowledges in its underlined quotation from *Guru Nanak*, it was the specific "history" and the reasons given for denial of the plaintiffs' application that established a credible claim that further applications would also be futile, and land suitable for the plaintiffs' temple under the county's criteria was either extremely scare or not available at all. Opposition Memorandum, p. 2:12-15; 456 F.3d at 989.

ICFG in this case has not filed multiple applications for different sites, nor faced repeated rejections for inconsistent and potentially insurmountable reasons. ICFG has simply been denied the use of two adjoining parcels of land that were never zoned for assembly uses (with or without a CUP).

ICFG has not alleged, nor could it, that there is a general scarcity of land available for church uses. Instead, ICFG simply ignores case law, beginning with *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) indicating that it is the unavailability of land generally for church uses which may impose a substantial burden on religion, not the unavailability of a particular preferred site. As the Seventh Circuit neatly summed it up in *Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007):

> Where there is plenty of land on which religious organizations can build churches (or, as is common nowadays, convert to churches buildings previously intended for some other use) in a community, the fact that they are not permitted to build everywhere does not create a substantial burden.

ICFG cites no contrary authority suggesting that RLUIPA requires municipal governments to make every piece of property in a city available for religious use on demand, nor that municipalities must defer to a church its choice of its "preferred" site. Indeed, such

1 an interpretation would effectively push RLUIPA past constitutional limits. RLUIPA has
2 been generally held to "codify existing Equal Protection Clause and Free Exercise Clause
3 jurisprudence" as they apply to land use regulation, not to abrogate the Establishment Clause.
4 *Guru Nanak*, 326 F.Supp.2d 1140, 1155. Religious uses are thus entitled to equal treatment,
5 not preferential treatment, when compared to other types of assembly uses. *Guru Nanak*, 326
6 F.Supp.2d at 1155; *Primera Iglesia Bautista Hispania of Boca Raton, Inc. v. Broward*
7 *County*, 450 F.3d 1295, 1313 (11th Cir. 2006). To go beyond this and insist that local
8 governments grant religious uses priority simply because they are religious uses would "go[]
9 beyond the proper function of protecting the free exercise of religion into the constitutionally
10 impermissible zone of entwining government with religion in a manner that prefers religion
11 over irreligion and confers special benefits on it." *Westchester Day School v. Village of*
12 *Mamaroneck*, 386 F.3d 183, 190 (2nd Cir. 2004).

13 ICFG makes a feeble effort to equate the alleged "shifting rationales, conflicting
14 requirements, deliberate delays and ... contradictory recommendations" it purportedly faced
15 to the long march faced by the plaintiffs in *Guru Nanak*. Opposition Memorandum, p. 3:16-
16 19. The Complaint, however, alleges no facts that suggest extraordinary delays. The fact that
17 ICFG's initial application to rezone the Catalina Street property provoked debate within the
18 City as to how best to accommodate churches outside of residential zones (where they were
19 already allowed with a CUP) hardly suggests bad faith or the type of Catch-22 dilemma
20 ultimately faced by the plaintiff in *Guru Nanak*. The facts alleged in the Complaint utterly
21 belie any claim that the City acted to restrict rather than expand opportunities for churches in
22 the wake of ICFG's initial application. As discussed above, the fact that ICFG's preferred
23 site was not ultimately included in the new Assembly Use Overlay District does not amount
24 to a violation of RLUIPA.

25     B.    *The Complaint Does Not Allege a Violation of the Equal Terms Provision of*
26         *RLUIPA.*

27 Surprisingly, ICFG places primary emphasis on its equal terms claim. This claim,
28 however, is completely indefensible.

1   ICFG contends it has alleged two specific equal terms violations: (1) City regulations allow commercial entertainment and recreational uses in locates that are not available to religious uses, and (2) the City allegedly "placed a ¼ mile hazardous materials perimeter requirement on the Church," but not on any of the other 196 properties in the Assembly Use Overlay District.

### 1. *Equivalent Uses*.

This first claim is essentially a facial attack on the City's ordinances, and is adequately dealt with in the City's opening memorandum. In response, ICFG cites no case which has held that commercial entertainment or commercial recreational uses must be treated as equivalents to religious institutional uses. ICFG does cite a passage in the legislative history of RLUIPA for the proposition that such diverse uses as "health clubs, gyms, places of amusement, recreation centers, … funeral parlors, libraries, museums, municipal buildings … and theaters" must all be treated as equivalents of churches under RLUIPA. H.R. Rep. 106-219 (1999), p. 19. Upon examination, however, the passage cited is simply part of a summary of testimony received in a subcommittee hearing concerning zoning practices in the 105th and 106th congressional districts (Chicago and environs). It cannot remotely be construed to evidence a consensus among the legislators themselves that such uses as libraries and commercial amusement centers (*e.g.* video game parlors and bowling alleys) should be treated as equivalents to churches for zoning purposes. It should be noted that Congress decisively rejected the principle complaint registered in this testimony, *i.e.* that churches were typically allowed only through discretionary, individualized assessment processes such as special use or conditional use permit proceedings. *Id*.

The second passage from the congressional record cited by ICFG is an excerpt from a statement of support for the then proposed RLUIPA legislation offered by the Coalition for the Free Exercise of Religion. 146 Cong. Rec. S7774-01, S7777. Again, this statement can hardly be viewed as representing the common intention or understanding of RLUIPA held by legislators themselves.

///

1        2.      *The Hazardous Material Issue.*

2    ICFG's alleged second equal terms violation is little more than an exercise in rhetoric,
3    unsupported by the facts alleged in the Complaint. As noted in the opening memorandum (at
4    p. 18), there is no formal City ordinance or policy that requires (or forbids) consideration of
5    possible toxic hazards when considering rezoning applications. ICFG's challenge is thus
6    basically an attempt at an as applied challenge, *i.e.*, it alleges that ICFG was treated
7    differently than other applicants precisely because the proximity of toxic materials users or
8    generators was considered in rejecting ICFG's rezoning application. *Primera Iglesia*, 450
9    F.3d at 1310-1311.

10   The first problem with this claim is that the City did not ultimately accept the staff
11   recommendation to deny the rezoning application due to toxic material issues. The
12   Complaint alleges denial was based on other grounds. Complaint, ¶¶ 51, 54. There is thus no
13   causal link between the alleged discriminatory staff recommendation and the City's final
14   actions. This relieves the City and Councilmembers for liability under *Monell v. Dept. of
15   Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978) [no municipal liability in the
16   absence of unconstitutional official policy], and the individual defendants for lack of
17   causation. *See Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 764 (7th
18   Cir. 2003) [rejecting claim based on alleged tainted motives of a single alderman]. RLUIPA
19   cannot be construed to create a cause of action based solely on official "thought crime," *i.e.*,
20   considering or recommending denial of an application on grounds that were not acted upon.

21   The as applied claim also fails for a second reason. To state a claim of this kind, ICFG
22   must show that it was treated differently than other similarly situated entities or applicants.
23   *Prima Iglesia*, 450 F.3d at 1310-1311; *Guru Nanak*, 326 F.Supp.2d 1140, 1155; *Ventura
24   County Christian High School v. City of San Buenaventura,* 233 F.Supp.2d 1241, 1247 (C.D.
25   Cal. 2002). While the other similarly situated entities need not be identical in every respect,
26   they must at least be comparable to ICFG. The Complaint does not allege, however, that any
27   other entity (religious or otherwise) has applied for a rezone into the Assembly Use Overlay
28   District and been approved despite the presence of significant toxic material use on adjoining

property. *See Primera Iglesia*, 450 F.3d at 1311-1312 [plaintiff who unsuccessfully applied for variance could not base equal terms claim on alleged more favorable treatment of applicant for rezoning]. It is true that ICFG is, so far, the first and only applicant to request rezoning of property into the Assembly Use Overlay District. This, however, does not mean that ICFG is entitled to assert an equal terms claim despite its inability to show dissimilar treatment of any other similarly situated party. *See Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1240 (9th Cir. 1994) [fact that plaintiff's land was "unique" and not comparable to any other properties affected by general plan amendments precluded equal protection claim]. Neither does it entitled ICFG to pursue an equal terms claim based on sheer speculation that the City may someday, somewhere respond to a similar application for rezoning differently.

    C.    *Plaintiffs Have No Claim for Exclusion or Unreasonable Restriction of Religious Uses*.

ICFG's cursory defense of its Fourth Cause of Action simply ignores the facts that the City has *already* designated 196 properties in commercial, industrial and other non-residential zones for churches, and also continues to allow churches in all residential zones with a CUP. As discussed previously, City regulations do not create any automatic bar to location of churches on properties near sites with hazardous waste permits. The fact that such criteria may be *considered, or* might even occasionally result in denial of a request to locate an assembly use on particular property, hardly amounts to a total exclusion or unreasonable restriction on religious uses as a whole. ICFG also cannot bootstrap itself into a total exclusion or unreasonable restriction claim by arguing that not all properties in the City's residential zone or in the Assembly Use Overlay District may be suitable for churches with 1,500 or more congregants. 42 U.S.C. § 2000cc(b)(3) prohibits local governments from totally excluding or unreasonably restricting religious assemblies in the City as a whole. It does not require that the City guarantee that suitable property is promptly available on demand for each and every potential religious user.

///

///

III. *CONCLUSION*

ICFG has shown no basis for denying the motion to dismiss. Neither has ICFG suggested any reason to believe the Complaint could be successfully amended to state a viable claim for relief. The City's motion to dismiss should be granted without leave to amend.

Dated: October 17, 2007         MEYERS, NAVE, RIBACK, SILVER & WILSON

By _____/s/_____
DEBORAH J. FOX
Attorneys for Defendants
CITY OF SAN LEANDRO, *et al.*

1021574_1
136.5016