1  Kevin T. Snider, State Bar No. 170988
   *Counsel of record*
2  Mathew B. McReynolds, State Bar No. 234797
   PACIFIC JUSTICE INSTITUTE
3  P.O. Box 276600
   Sacramento, CA 95827
4  Tel.  (916) 857-6900
   Fax  (916) 857-6902
5  Email: kevinsnider@pacificjustice.org
6
   Peter MacDonald, State Bar No. 69789
7  LAW OFFICE OF PETER MACDONALD
   400 Main Street, Suite 210
8  Pleasanton, CA 94566-7371
   Tel. (925) 462-0191
9  Fax. (925) 462-0404
   Email: pmacdonald@macdonaldlaw.net
10
11 Attorneys for Plaintiff and Real Party in Interest
12
13
                  IN THE UNITED STATES DISTRICT COURT
14              FOR THE NORTHERN DISTRICT OF CALIFORNIA
15
16 INTERNATIONAL CHURCH OF THE          ) Case No.:  C07-03605
   FOURSQUARE GOSPEL,                   )
17                                      ) **FIRST AMENDED COMPLAINT FOR**
   Plaintiff,                           ) **VIOLATION OF CONSTITUTIONAL**
18                                      ) **RIGHTS AND THE RELIGIOUS LAND**
   v.                                   ) **USE AND INSTITUTIONALIZED**
19                                      ) **PERSONS ACT**
   CITY OF SAN LEANDRO, a municipal     ) **[42 U.S.C. 1983; 42 U.S.C. 2000cc]**
20 corporation, DOES 1-50,              )
                                        )
21 Defendant.                           )
                                        )
22 ─────────────────────────────────    )
                                        )
23 FAITH FELLOWSHIP FOURSQUARE          )
   CHURCH,                              ) [Demand for Jury Trial]
24                                      )
   Real Party in Interest.             )
25                                      )
                                        )
26 ─────────────────────────────────    )
27
28
                              ─────────────────────────────

                                First Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.    This action is brought to enforce the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA'), 42 U.S.C. § 2000cc, and for violation of constitutional rights under 42 U.S.C. § 1983.  The Plaintiff and Real Party in Interest seek equitable relief, declaratory relief and damages.

**JURISDICTION AND VENUE**

2.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, and 1343(3) (4) and 42 U.S.C. § 2000cc, *et seq.*, which confer original jurisdiction on federal district courts in suits to reduce the deprivation of rights, privileges and immunities secured by the United States Constitution and federal law, particularly the First Amendment to the United States Constitution, and specifically the Religious Land Use and Institutionalized Persons Act of 2000.

3.    This action is authorized in part by 42 U.S.C. § 1983 because the Defendant is a state actor which has abridged the constitutional rights of the Plaintiff and Real Party in Interest.

4.    The Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and FRCP 57, and includes a request for a speedy decision and an advance on this Court's calendar under 28 U.S.C. 2201 and FRCP 57.

5.    Venue is proper under 28 U.S.C. § 1391(b), because the acts giving rise to the claims alleged herein has occurred, and continues to occur, in the Northern District of California.

**PARTIES**
**Plaintiff**

6.    Plaintiff, International Church of the Foursquare Gospel ("ICFG"), holds title to property, which is the subject of the dispute, as more fully described herein.  ICFG is a Christian denomination with an episcopal polity.

---

First Amended Complaint

-2-

**Real Party in Interest**

7.    At all times herein mentioned real party in interest, FAITH FELLOWSHIP

FOURSQUARE CHURCH, (hereinafter called "the CHURCH"), was, and is, "a religious

assembly or institution" for the purposes of RLUIPA (42 U.S.C. § 2200cc et seq.).  CHURCH is

associated with ICFG.   The CHURCH's interest in the property which is the subject of this

litigation is as follows:  (1) it pays the mortgage; (2) submits applications to local governments

for development and use of the property; (3) plans, executes and pays for the development of the

property; and, (4) occupies and uses the property for its religious activities.

**Defendant**

8.    Defendant, CITY of SAN LEANDRO (hereinafter "the CITY"), was and now is a

government entity for the purposes of RLUIPA (42 U.S.C. § 2200 et. Seq.) and a municipal

corporation, created under the authority of, organized and existing under, the laws of the State of

California, and situated in the County of Alameda, and is empowered to act through its

governing body, its officials, employees and official bodies.  Plaintiff is informed and believes

and thereon alleges that the CITY if a recipient of federal funds.  At all times described herein,

the CITY acted in a manner ultra-vires to the law and under color of state law, giving rise to the

claims of ICFG and the CHURCH, as more fully set forth herein.

9.    ICFG and the CHURCH is ignorant of the true names and capacities,

whether individual, corporate, associate, or otherwise, of DOES 1 through 50, inclusive.  ICFG

and the CHURCH is informed and believes and thereon alleges that each of the fictitiously

named Defendants is in some way responsible for or participated in or contributed to the matters

and things complained of herein, and is legally responsible in some manner therefore.  ICFG and

1    the CHURCH will seek leave to amend this Complaint when the true names, capacities,

2    participation, and responsibilities have been ascertained.

3                                **STATEMENT OF FACTS**

4        10.    The CITY — including but not limited to the City Council, Mayor, Planning

5    Commission, Board of Zoning Adjustments, City Manager, Development Services Department

6    (formerly the Community Development Department), and Engineering and Transportation

7    Department—has the authority to regulate and restrict the use of land and structures within its

8    borders, including establishing Assembly Overlay to the Zoning Plan.

9

10        11.    The CHURCH was founded in 1947.  Its members have sincerely held beliefs that

11    Jesus Christ commands them to proclaim the Gospel, make disciples, and aid the poor.  They

12    practice their beliefs by providing opportunities for worship, religious instruction and activities

13    for people of all ages.  They also perform charitable services for the underprivileged.

14

15        12.    By January, 2006, the CHURCH had outgrown its present facilities at 577 Manor

16    Boulevard (herinafter "MANOR"), where three Sunday morning worship services were held for

17    nearly 1,700 people.  Parking overflowed, overwhelming surrounding residential streets to the

18    detriment of all concerned.  Because its kitchen was too small to prepare meals for countless

19    poor, the church had to curtail its charitable efforts.  These conditions persist today.

20

21        13.    The CHURCH began a diligent search for suitable property to accommodate its

22    growth.  In February, 2006, the CHURCH found ideal property on 14600 and 14850 Catalina

23    Street (hereinafter "CATALINA"), comprising 3.56 acres and 188 parking spaces, with

24    convenient access to arterial streets in every direction.  The property was zoned Industrial Park.

25        14.    The CHURCH engaged in an extensive search of properties in San Leandro in

26    areas that are zoned as residential.  No properties are available in residentially zoned areas which

27

28

have sufficient acreage and/or a building that will accommodate an assembly of the CHURCH's size.

15.   One month later, CHURCH representatives met with CITY officials, to discuss use of the property for church activities.  Representing the CITY, Development Director Hanson Hom; Planning Manager Ms. Debbie Pollart and Business Development Director Luke Simms assured the CHURCH that while zoning for industrial districts precluded an assembly use for church activities, several assembly uses for commercial recreation and entertainment in Industrial Limited zones were allowed via a Conditional Use Permit.  CITY officials advised the CHURCH to apply for rezoning of the CATALINA property from Industrial Park (IP) to Industrial Limited (IL).  But unbeknownst to the CHURCH, churches were *only* permitted in Residential zones.   Because the IP zone already permitted entertainment activities and commercial recreation as conditional uses, CITY Officials had directed the CHURCH to proceed with an irrelevant rezoning application.  Relying on misinformation from CITY Officials, the CHURCH embarked on a fruitless fourteen-month "wild goose chase."

16.   On March 24, 2006, the CHURCH signed a purchase and sales agreement and paid $50,000, half of a nonrefundable fee applicable to the purchase price of $5,375,000, giving them eight days to decide whether to complete the purchase of the CATALINA property.  Then, on or about March 31, 2006, the CHURCH paid the second half of the nonrefundable fee in the amount of $50,000.

17.   On March 30, 2006, the CHURCH's Council approved the purchase of the CATALINA property.  Ten days later, CHURCH members concurred.  By December 7, 2006, the CHURCH's denomination—Plaintiff, International Church of the Foursquare Gospel—also assented.

18.   May 11, 2006, following the direction of CITY officials, the CHURCH filed a Planning Permit Application for a Zoning Map Amendment on the CATALINA property from Industrial Park to Industrial Limited to allow a subsequent application for a Conditional Use Permit for an assembly use.  That same day, the CHURCH signed an amendment to their purchase and sales agreement and paid an additional $50,000 nonrefundable fee, applicable to the purchase price, to extend the agreement until July 6, 2006.  The third extension of escrow, with a total non-refundable deposit of $150,000, was up December 31, 2006.  The CHURCH informed CITY officials of this fee on or about September, 2006.

19.   On May 18, 2006, the then owner of the CATALINA property completed its portion of the Planning Permit Application for a Zoning Map Amendment.   On the same day the CHURCH signed an Agreement for Payment of Fees for Application Processing and made a $2,000 deposit.

20.   On June 8, 2006, the City Council Business Development Committee met and discussed the CHURCH's application to use the CATALINA property.   The Committee made up of then Mayor Young and City Council members Stephens and Badger expressed concerns over the policy implications of allowing an assembly use in an industrial zone.   This was stated in apparent unawareness that under the municipal code assembly uses, such as, commercial recreation and entertainment activities, are allowed in industrial districts.

21.   On June 29, 2006, the CITY acknowledged receipt of the CHURCH's application.

22.   On July 11, 2006, the CHURCH signed an amendment to their purchase and sales agreement on the CATALINA property and paid an additional $50,000 nonrefundable fee, applicable to the purchase price, to extend the agreement until October 31, 2006.  The CHURCH informed CITY officials of this fee on or about October, 2006.

First Amended Complaint

-6-

23.    In July, 2006, the Planning Commission postponed discussion of the CHURCH's zoning code amendment application, due to lack of information from the Planning Department.

24.    In August, 2006, the Planning Commission held no meetings and conducted no business.

25.    In September, 2006, the Planning Commission again postponed discussion of the CHURCH's zoning code amendment application.

26.    The discussion was postponed due to lack of information from the Planning Department.

27.    On October 10, 2006, Faith Fellowship members addressed the San Leandro City Council during the Public Comment portion of the meeting.  The CHURCH's Senior Pastor, Gary Mortara, Associate Pastor, David Silvey, realtor, Ed Bullok, and Sam Maliniak, an engineer with San Jose Construction Company, with approximately 300 church members in attendance, spoke about the proposed purchase of the CATALINA property and the burdensome delays that the Defendant has caused in the review process.

28.    On October 12, 2006, the City Council's Business Development Committee met and discussed the CHURCH's zoning amendment application.  The CHURCH's Senior Pastor, Gary Mortara, and Projects Coordinator, Jim Lee, attended the meeting.  The Committee, made up of then Mayor Young and then City Council members Badger and Stephens, expressed concerns over the loss of tax revenue derived from industrial land that would result from permitting such a religious assembly use and decided that more research was needed.

29.    On October 19, 2006, the Board of Zoning Adjustments and the Planning Commission held a joint work session, at which time the CHURCH's application was discussed. It was decided that, rather than amend the Zoning Code to allow assembly uses as conditionally

permitted in Industrial Park zones, the CITY would apply an assembly use overlay to identified areas in which assembly uses would be permitted.  The Planning Staff was directed to develop a specific proposal for an Assembly Use Overlay District.  The CHURCH's Senior Pastor, Gary Mortara, attended the meeting and told of the purchase and sales agreement, the substantial investment already paid in escrow, and about how the CHURCH had been seeking approval from the CITY for six months (since March of that year).  He reported that the Board of Zoning Adjustments and the Planning Commission members were very anxious to help the CHURCH that night when they heard how long the CHURCH had been waiting.  But when the members asked what they could do to help, Ms. Pollart said there was nothing they could do, they could only make a recommendation.

30.   On October 23, 2006, the CHURCH signed an amendment to their purchase and sales agreement on the CATALINA property and paid an additional $50,000 nonrefundable fee, applicable to the purchase price, to extend the agreement until December 31, 2006.

31.   On November 1, 2006, an attorney for the CHURCH, Kevin Snider, sent a letter to the Planning Commission outlining the CHURCH's need for a new meeting place and the reasons why denial of the CHURCH's application would be a violation of RLUIPA.

32.   On December 7, 2006, the Board of Zoning Adjustment met and reviewed the refined proposal for an Assembly Use Overlay.  CHURCH representatives attended the meeting. The Board took no action, citing lack of information.   However, the Board raised concerns over the loss of taxes should the CHURCH use the property.

33.   On December 29, 2006, the CHURCH closed escrow on the CATALINA property. The CHURCH could not extend the purchase deadline any longer, because the note on the CATALINA property had come due and the then owner was forced to either refinance or sell it.

To close escrow they put down a final down payment of $53,903.39. The Church believed there was a strong likelihood of approval based in part on the statements of CITY officials that other amendments for assembly uses by commercial recreation and entertainment businesses had been previously approved, on supportive representations made by CITY officials at public meetings, especially the October 19, 2006, meeting of the joint session with the Board of Zoning Adjustments and the Planning Commission, and, as suggested by Defendant Jermanis, the Church had secured written support from virtually all neighboring businesses on Catalina Court.

34.    On January 2, 2007, the deed of trust for the CATALINA property in the legal name of the CHURCH and ICFG was recorded in the Alameda County Recorder's office.

35.    On January 17, 2007, the Redevelopment Advisory Committee recommended that properties occupied by religious assembly uses be returned to a taxable use once the property is vacated.

36.    On February 22, 2007, the Planning Commission recommended approval of the proposed Assembly Use Overlay District and Map amendments, which did not include the CATALINA property. The few parcels rezoned to the AU Overlay District of adequate size for a congregation of 1500 persons (3.5 acres) were generally located between two railroad tracks near heavier industry, lacking in infrastructure, and adjacent to old strip commercial blight or residential development.

37.    On March 19, 2007, the City Council approved the Assembly Use Overlay District and Map Amendments effective on May 1, 2007, creating an Assembly Use Overlay, consisting of 196 properties, but not the CATALINA property.

1      38.   On March, 2007, at the direction of City officials, the CHURCH applied for an amendment to the Zoning Code and Map for the CATALINA property, changing it from Industrial Park to Industrial Park with Assembly Use Overlay.

      39.   In the week prior to the April 12, 2007, Planning Commission meeting, the Planning Staff Report submitted by Ms. Pollart to the Planning Commission recommended denial of the CHURCH's application for an amendment for an Assembly Overlay on the CATALINA property.  In making its recommendation the staff listed the following eight (8) criteria based on the CITY'S General Plan and Policies that it used to produce the already approved Assembly Overlay District covering 196 properties. Said criteria are as follows:

"1) Site is not located along a major commercial corridor (identified as E. 14th Street and Marina Boulevard between San Leandro Boulevard and Merced Street);

2) Site is not located within the following General Plan Focus Areas: Downtown, Bayfair, Marina Blvd./SOMAR, or West San Leandro (each of these Focus Areas is governed by one or more of the following, which governs future development – special study/guidelines, special overlay district, or location within a redevelopment area);

3) Site is not located in a regional-serving retail area (identified as Greenhouse Marketplace, Westgate, Marina Square, and 'old' Target site);

4) Site is not located inside the one-half-mile study area identified for the Downtown Transit-Oriented Development (TOD) Strategy;

5) Site abuts or is within one-quarter mile of an arterial street (as identified in the Circulation Element of the General Plan);

6) Site is not located in a Residential Zone (Assembly uses are already conditionally permitted in residential zones, so they would not produce new areas for assembly uses to locate if

considered);

7) <u>Site is not considered public land, and is not zoned Public Service (PS), Open Space (OS), or Commercial Recreation (CR); property is not owned by an Exempt Public Agency, or leased/owned by a public utility</u> (these areas represent properties and uses that are unlikely to change);

8) <u>Overlay Area must allow a contiguous area greater than or equal to two acres.</u> (This figure was derived from research indicating that large assembly uses require a minimum 2-acre site to accommodate bigger building size and to allow for adequate on-site parking.)"

40.    On April 9, 2007, Peter MacDonald, an attorney representing the CHURCH, wrote to the Planning Commission, addressing the proposed negative findings of the Planning Staff Report prepared by Ms. Pollart and her recommendation that the Commission deny the CHURCH's application.

41.    The staff said that the CHURCH's project site, the CATALINA property, does not meet two of the criteria: 1) Criterion #2, because the property <u>is</u> located within one of the identified General Plan Focus Areas; and 2) Criterion #5, because the property <u>does not</u> abut or <u>is not</u> located within one-quarter mile of an arterial.

42.    The staff report prepared by Ms. Pollart went on to state that the site failed to meet an additional criterion of public health and safety, which the Planning Commission did not apply to the 196 properties approved for assembly use two months earlier.  It said the presence, and the potential future presence, of hazardous materials and activities in the vicinity of the CHURCH's site and the intended assembly use, rendered it inappropriate for rezoning with the Assembly Use Overlay.  This was allegedly based on findings that there are eight (8) businesses operating under a Hazardous Materials Business Plan within 500 feet of the CHURCH's site, and an

1  additional 13 businesses between 500 feet and one-quarter mile of the site.  In fact, the

2  Hazardous Materials buffer zone is a requirement that has been placed exclusively on the

3  CATALINA property that the CHURCH wishes to use for religious purposes.   Of the numerous

4  places that are used for assembly in San Leandro, not one has had said requirement placed on it,

5  no matter which zone the assembly use properties are located in.

6      43.    On April 12, 2007, the Planning Commission denied the CHURCH's assembly use

7  amendment application.  The decision did not require concurrence by the City Council, but

8  appeal to the City Council was permitted.

9      44.    On May 7, 2007, the City Council denied the CHURCH's appeal.  Council

10  members Tony Santos, Surlene G. Grant, Diana M. Souza, Joyse R. Starosciack, Bill Stephens,

11  and Jim Prola each voted to deny the CHURCH the use of the CATALINA property.  The

12  minutes reflect that the Board vote was based upon the Council not wanting the CATALINA

13  property taken out of the tax base, objections of nearby neighbors and traffic concerns.  The

14  CHURCH has and continues to implement mitigating measures required of Defendant.  The

15  Defendant's action was an individualized assessment of the CATALINA property. The

16  CHURCH has exhausted its administrative remedies.

17      45.    The CHURCH has engaged in extensive searches of properties in the Assembly

18  Overlay District and found that there are no properties available that will accommodate an

19  assembly of the CHURCH's size.   Further, the CHURCH has also thoroughly searched

20  properties in San Leandro that are residentially zoned areas and have found that there is no

21  property available in said zone which has sufficient acreage and/or a building that will

22  accommodate an assembly of the CHURCH's size.

First Amended Complaint

-12-

46.   The Defendant's denial of the CHURCH's use of the CATALINA property has caused, and continues to cause, economic damages to the CHURCH.  In addition to the $100,000 payment the CHURCH made with the purchase and sales agreement on March 24, 2006, it had to make three additional nonrefundable payments of $50,000 each as it waited in vain to get a response from the CITY on its application.  Since January 2, 2007, when it completed the purchase, the CHURCH has made monthly mortgage payments of $33,809.88 each, over $1,100 a day, without being able to use its property.  Additionally, the CHURCH had to rely on an attorney to facilitate the application process with the CITY.  Despite the CHURCH's good faith efforts for more than fourteen (14) months to comply with the Defendant's application process, the CHURCH has spent over $460,000 and still has not been able to use the CATALINA property.  Moreover, Jermanis and Pollart intentionally delayed the review of the CHURCH's application for fourteen months knowing that said delay was (1) substantially burdening the CHURCH's religious exercise and (2) violating the CHURCH's rights under the First and Fourteenth Amendments.  Peter MacDonald sent letters to the Planning Commission and the City Council stating that their actions were in violation of RLUIPA.  Based on these letters they knew that their actions were in violation of federal law. Defendant acted in deliberate contempt of the law.

### Substantial Burden

47.   The Defendant's Zoning Ordinance at the time of initial application by the Church in May 2006 substantially burdened the exercise of religious beliefs in that there was no place in the City that a congregation of 1,500 persons or greater could locate.  Industrial Districts prohibited religious assembly, but not other kinds of assembly.  Residential zones could not accommodate large congregations, and a discretionary use permit process assured that any such

1   CUP application in a residential setting would be denied.  As a result, large congregations are

2   precluded from the jurisdiction.

3        48.    The Defendant's Zoning Ordinance as applied after adoption of the AU Overlay

4   District in March 2007, substantially burdens the exercise of religious beliefs in that there is still

5   no place in San Leandro that a congregation of 1,500 person can locate.  Denial of the

6   CATALINA site was based upon the presence of businesses with Hazardous Materials Business

7   Plans (HMBP's) within ¼ mile.  That criteria would apply to prohibit large congregations

8   anywhere within the area rezoned AU Overlay because all of those 196 parcels are within ¼

9   mile of a HMBP.

10        49.    The planning process followed by the Defendant deliberately and substantially

11  burdened the exercise of religion in several ways:  First, the CITY had the CHURCH make a

12  meaningless application for rezoning to the Light Industrial district (IL) that had certain

13  assembly uses (commercial recreation and entertainment activities).  Those uses (commercial

14  recreation and entertainment activities) were already allowed under the existing zoning

15  (Industrial Park – IP).  Second, the Defendant then left the CHURCH's rezoning application un-

16  processed on a shelf for ten months with knowledge that the option to purchase the CATALINA

17  site would expire before a fair hearing or any hearing from the City.  Third, the Defendant

18  processed the proposed CHURCH use as three sequential approvals rather than as three parallel

19  approvals (i.e., Creation of Assembly Use Overlay District, re-zone of CATALINA site to

20  Assembly Use Overlay District, and then finally a conditional use permit.)   This allowed denial

21  of the proposed re-zoning to AU Overlay based upon theoretical reasons (e.g., distance from

22  arterial) which ignored the actual physical conditions (outstanding traffic access) and

23  unreasonably extended the time for decision.

50.   The Defendant substantially burdens religious uses by conclusively presuming churches are incompatible with industrial uses, in the face of substantial contrary evidence: One, well planned cities who studied the issue, including Pleasanton, Dublin, Livermore, Concord, San Jose and Fremont have found churches compatible with industrial uses.  Two, the traffic pattern of church uses is synergistic to industrial traffic, peaking on Sunday, and on weeknights, when industrial traffic is minimal or nonexistent.  Three, church use does not remove buildings from the industrial base, but uses those buildings in their current form, and returns those buildings to the industrial base when the religious use moves on.  Four, the cumulative demand for church space is tiny relative to the supply of industrial space (29,000,000 sq. ft. in San Leandro alone).  Five, the presence of businesses subject to Hazardous Materials Business Plans (HMBP's) is ubiquitous and was used as a pretext for denial.  The number of persons potentially exposed to a hazardous materials incident in an industrial district is far greater during the weekdays than during Sunday morning church service.

51.   The Defendant's denial of the CHURCH's use of the CATALINA site is a substantial burden on the CHURCH's exercise of its religious beliefs.  The core beliefs and values of the CHURCH include: joyous worship of God, local and global evangelism to lead people to faith in Christ, discipleship to instruct believers in life and service, and works of compassion, justice, and human aid.  The inability of the CHURCH to use the CATALINA property is a significant restriction on its pursuit of these core tenets, because it limits the number of members and visitors who can attend, participate in activities, and receive spiritual help at its current location on Manor Blvd.

## Substantial Burden
### (Worship Services)

1

2

3

4        52.    One of the core functions of the CHURCH involves meeting to conduct worship

5    services.  The CHURCH has three different service meeting times each Sunday to accommodate

6    about 1,700 attendees.  At any given time about 500 to 600 vehicles need Sunday service

7    parking.  The current location is in a residential neighborhood and only has 154 parking spaces.

8    Attendees park on crowded residential streets.  At times, people walk about twenty or more

9    minutes to attend Sunday service.  Every Sunday numerous vehicles drive off and do not return

10    because there is no place to park.  The CHURCH thus loses the opportunity to minister to

11    dozens of people each Sunday as a result of Defendant's refusal to allow the CHURCH to use

12    the CATALINA property. Indeed, to alleviate the parking at the MANOR property, the

13    CHURCH purchased a neighboring house in the amount of $565,000 in May of 2006 to obtain a

14    mere 10 additional parking spaces.  In other words the CHURCH paid $56,500 per parking

15    space.

16        53.    It is ICFG's and the CHURCH's theological belief that a local congregation is

17    more than a legal entity that provides religious activities.  A church congregation is an entity

18    which is comprised of people who come together to form one body with Jesus Christ as its head.

19    Those who attend congregate to worship God, fellowship with each other, and perform acts of

20    religious service also known as ministry.  Those who are turned away each Sunday results in the

21    infliction of suffering in the body.  The absence of these dozens of worshippers in the present

22    case is, in a profound theological sense, a substantial burden on the religious practices of

23    gathering together as one body for worship, fellowship and ministry.

24

25        54.    The dozens of people in the forty or so vehicles turned away every Sunday creates

26    a substantial burden on the religious exercise of the CHURCH in its proselytizing efforts.  In

27

28

addition to engaging in activities which edify the believers who attend the worship services, many who are turned away are visitors to the CHURCH who are not Christians. These have been invited by congregants or come on their own because they are seeking spiritual help. It is a core tenet of the CHURCH to share the Gospel orally and through acts of service. Portions of the worship services and ministry activities on Sunday mornings are calculated to evangelize visitors who are not Christians. The denial of the use of the CATALINA property by the Defendant thus substantially burdens the CHURCH's ability to make converts.

55.    The new location has 188 parking spaces. Additionally, the new location is zoned commercial, there is plenty of open street parking, and the CHURH has negotiated with surrounding businesses to use their lots for weekend parking which would add 200 to 300 spaces. If the CHURCH could use the new location then parking would not be a problem. Worship services would be open to all attendees, not just attendees willing and able to walk twenty minutes or show up an hour early to obtain close parking.

56.    Moreover, by not allowing the CHURCH to use their newly acquired property the Defendant is substantially burdening the CHURCH's ability to conduct weekly religious services for their congregation. For example, some of the CHURCH's members are disabled, have small children, or are not able to walk twenty plus minutes to attend Sunday services. Furthermore, some vehicles are not able to find any parking. These attendees are completely denied access to the CHURCH based on limited parking. Hence, by not allowing use of the CATALINA site the Defendant is substantially burdening religious services conducted by the CHURCH.

57.    Parking and a general facility space shortage has caused another impediment on the CHURCH's service. The CHURCH's current location has an occupancy of approximately 650

people in the sanctuary, while the new facility can accommodate about 1,100 people in the sanctuary. The CATALINA property can seat 1,100 in the sanctuary and an additional 500 in other activities (e.g., children and youth) per service. The Defendant is substantially burdening the CHURCH's ability to provide fellowship with each other, perform acts of religious service, and worship God, by denying access to a new facility that can accommodate a larger religious service.

58.    The CHURCH's Sunday service is hampered by parking and facility space limitations. Being able to use the new facility is vital to the CHURCH's religious service. The Defendant's denial of access is taking critical space needed to provide a service adequate for the CHURCH's size. The CHURCH's worship services have been, and continue to be, substantially burdened by the Defendant's denial of access to their new facility.

**Substantial Burden**
**(Faith Fellowship Ministries)**

59.    Performing acts of service, generally known as ministry, is a fundamental tenet of ICFG and the CHURCH. Ministries are for both proselytizing and discipleship, e.g., educational. Parking and facility space limitations also encumber the CHURCH's ministries. The CHURCH organizes a number of different ministries for their members. Three specific ministries that have been, and continue to be, substantially burdened by limited parking and facility space, i.e., (1) FaithKidz Ministry, (2) Youth Ministries, and (3) Faith Fellowship Women's Ministry. To attend these ministries members of the CHURCH have to find parking in a packed residential area and find room in a class that is inevitably full.

60.    The FaithKidz Ministry encompasses children from birth through fifth grades. Health and safety considerations, such as (1) limited child to adult ratio, (2) physical size of the rooms, (3) number of rooms, and (4) the number of children allowed in each classroom, limit the

ability to minister to the children at the present location.  Each Sunday, classrooms reach maximum capacity.  When classrooms reach capacity they are closed.  In denying the CHURCH's use of their new facility the Defendant caused, and continues to cause, said space encumbrance.  The inability to use the CATALINA property creates a substantial burden on the CHURCH because children who want to participate in the activities and the parents who want their children to attend the ministry are of necessity turned away.  The new larger facility will allow the CHURCH to extend ministry opportunities to all children who want to attend eliminating this substantial burden.

61.    Another space issue relative to the FaithKidz Ministry is the necessity of having three separate services creating three FaithKidz Ministry sessions.  Scattered ministry services makes developing interpersonal relationships with other children difficult, confuses parent volunteers and supervisors who have no ability to meet all parents and all children, further divides the congregation, and creates difficulties in staffing the classrooms.

62.    Parking and facility space combine to create a problem for parents who want their children to attend the FaithKidz Ministry.  For example, a mother was late to church because she had to walk five blocks with her three children (ages three, one, and five) to attend.  When she tried to drop off her five year old, the class had reached maximum capacity and was closed.  These two problems combined to make attending the FaithKidz Ministry impossible for her five year old child.  The Defendant is causing the space problem by not allowing the use of the new facility that has more parking spaces, is at least significantly larger, and is not located in a crowded residential area.  As demonstrated, not being able to park nor find space in classrooms significantly constricts the religious exercise of FaithKidz Ministry and the CHURCH as a whole.

63.    Secondly, the Discipleship Youth Ministry has been burdened by parking and facility space limitations as well.  The Defendant's decision to not allow use of the new facility has caused these space restrictions.  The current facility's youth building has a maximum capacity of 250 people not including equipment needed to operate the Youth Ministry.  The CHURCH has been forced to split the junior and senior high students into two nights because of space limitations.  The Defendant's decision to not allow use of the new facility significantly inhibits the Youth Ministry's ability to provide fellowship between the Disciple Youth Ministry's junior high and senior high school students.

64.    When a parent or visitor arrives at the CHURCH finding no parking for blocks they are discouraged, especially if there is a disability.  Students are encouraged to invite their parents to CHURCH.  Because of the congestion, some parents will not attend the CHURCH.  This makes many students not attend due to parking.  The CHURCH would like to allow all students to attend the discipleship ministry.  Moreover, the CHURCH has a vision for their after-school discipleship programs, a learning center with computers, on-site tutoring, and youth events and conferences.  Without extra space the CHURCH will continue to not be able to execute their discipleship activities.  The CATALINA property will triple the discipleship program's facility size and add needed parking for discipleship attendees and their parents.  The Defendant has substantially burdened the discipleship program by denying access to the new facility.

65.    Finally, the Faith Fellowship Women's Ministry has been, and continues to be, substantially burdened by not being able to use the CATALINA site.  Women comprise sixty percent of the congregation.  Faith Fellowship provides Bible studies, retreats, seminars, weight loss classes, new mother's classes, outreach programs, and biblical instruction.  Women from outside San Leandro attend classes.  It is crucial for the Women's Ministry to secure more space

to accommodate the growing number of people who want to be involved in the ministry's activities.  Not being able to use the larger facility owned by the CHURCH is a substantial burden on its religious exercise, which inhibits the growth and activities of the Women's Ministry.

66.   Only those willing to arrive early to park on site or within a reasonable walking distance, or those willing to park up to five blocks away on residential neighborhood streets and spend twenty or more minutes walking to the facilities can currently attend the CHURCH's ministry activities.  After arriving those who get there too late cannot attend because of lack of facility space.  The CHURCH needs to use the new facility.  This is significantly more than a mere inconvenience.  In stopping the use of the new facility the Defendant is substantially burdening the CHURCH's ministries.

**Substantial Burden**
**(Charitable Services)**

67.   Performing acts of charitable service for the less fortunate is a fundamental tenet of ICFG and the CHURCH.   It is ICFG and the CHURCH's theological position that when they assist those in need they are doing this to Christ himself.  As such, the CHURCH provides a number of charitable services for the community and their membership.  These services are being substantially burdened by the Defendant's decision to deny the use of the CHURCH's CATALINA property.  Specifically, the CHURCH's Food Ministry, Single Parent Ministry, and Community Counseling Ministries have been, and continue to be, substantially burdened due to the acts of Defendant.  The CHURCH has been hindered in providing charitable services due to the lack of parking, massive residential traffic problem, and shortage of general space.  If people cannot attend these ministries, the CHURCH's charitable activities cannot be accomplished. Thus, the CHURCH has been unable to effectively and fully execute their mission of helping the

community.  As such, the denial of the use of the CATALINA site by Defendant has

substantially burdened, and continues to substantially burden, the CHURCH's and ICFG's free

exercise of religion.

68.    The Food Ministry provides meals to the public.  The CHURCH serves between

300 to 400 men, women, and children from needy families each Wednesday night.  The

MANOR kitchen, smaller than an average home kitchen, is not adequate to prepare meals for the

300 to 400 adults and children.  Moreover, the kitchen does not have adequate space to

accommodate the staff, preparers, and servers necessary for the number of people the CHURCH

serves.  The kitchen is overcrowded and the number served cannot be expanded to meet

community need.  However, the new facility at CATALINA will have a kitchen and food

preparation area that is five times larger.  The CHURCH will be able to install professional

restaurant style equipment.  More space and commercial equipment will enable the Food

Ministry to better meet community needs.  As demonstrated, not being able to use the

CATALINA site is a substantial burden on the CHURCH's religious exercise by hindering their

devout mission of providing a community food ministry to needy individuals and families.

69.    Another community service being substantially burdened by the Defendant is the

Single Parent Ministry.  The CHURCH ministers to single parents, so they can effectively

function in their families and the community.  The CHURCH offers classes on parenting, time

management, resume formatting, building self-esteem, and budget planning.  Parking and

facility space limitations are hindering the growth of the Single Parent Ministry.  The CHURCH

needs larger rooms, and more rooms, to expand the Single Parent Ministry to serve the

community, as per the CHURCH's religions mandates.  The new facility will create about three

times more facility space and will provide hundreds of more parking spaces.  The CHURCH

would have room for a food and clothing closet.  Single parents could receive free clothing and shoes for their doctor appointments, job interviews, and any other business-dress event.  The CHURCH does not have enough room; the CHURCH has outgrown the old facility.  The Defendant is crippling the CHURCH's ability to operate the Single Parent Ministry by not allowing use of the CATALINA property.  The Defendant is making the CHURCH effectually crawl on one leg when they could be walking on two; this is a substantial burden on the CHURCH's free exercise of religion.

70.    Lastly, because of parking and facility space limitations the CHURCH has not been, and continues to not be, able to conduct Community Counseling Ministries in line with community need.  The CHURCH conducts marriage and divorce counseling, Biblical instruction counseling, recovery drug and alcohol program counseling, youth counseling, and job counseling.  For example, the CHURCH's youth counselors help get teens out of gangs, off of drugs, and back into school.  The CHURCH's counseling sessions for the youth are overcrowded.  Many people have been turned away due to lack of space and parking.  The overall growth of the above programs and the exponential growth of the CHURCH are hampered due to space restrictions.  The new building will accommodate well over 1,000 seats and parking for hundreds of vehicles.  Additionally, the building will have adequate classrooms and space needed to accomplish the CHURCH's religious counseling mission.  By denying access to the CATALINA property the Defendant is substantially burdening the CHURCH's free exercise of religion by not allowing them to fully operate their Community Counseling Ministries.

**Compelling Interest**

71.    The Defendant's denial of the CHURCH's use of the CATALINA site is not in furtherance of a narrowly tailored compelling governmental interest.  The Defendant's stated interests are as follows:  (1) preserving the CITY's jobs and tax revenues by excluding the CHURCH from job and tax-producing locations; (2) preventing traffic problems by excluding the CHURCH from areas that do not abut or are not within one-quarter mile of an arterial; (3) opposition from neighboring homeowners association; and, (4) protecting public health and safety by excluding the CHURCH from locations in the vicinity of Hazardous Material Business Plan sites.

72.    Promoting positive change in the next 15 years by excluding the CHURCH from General Plan Focus Areas is not a compelling governmental interest, because RLUIPA does not allow a government to use broad and discretionary land use rationales to select the precise property where a religious group can worship.  The conclusive exclusion of churches, but not other assembly uses, from any location designated "Study Area" would require a compelling demonstration of incompatibility.  That demonstration of incompatibility was not made and could not be made against the Catalina Street location.

73.    Preventing traffic problems by excluding the CHURCH from areas that do not abut or are not within one-quarter mile of an arterial is not a valid compelling governmental interest. Church related traffic would be greatest on Sundays when most industrial businesses are closed. Most people are home in residential areas on the weekends.  Granting use of the CHURCH's new facility would separate these two crowds placing them in separate areas.  Thus, allowing the CHURCH to use the CATALINA site would solve a severe traffic problem at its current residential location without creating a new one.

74.    Such traffic is not a grave and immediate danger to public health, peace, and welfare.  Farallon Drive serves the CATALINA property and is double-width with a two-way turning lane the length of the boulevard.  Farallon connects two major arterials (Doolittle and Wicks).  Allowing the CHURCH to use their CATALINA site will serve the CITY's traffic safety interest.  Utilizing the CHURCH's new facility will alleviate current traffic problems in an overcrowded residential area by directing the CHURCH's traffic to an open commercial site with plenty of driving and parking space.

75.    Protecting public health and safety by excluding the CHURCH from locations in the vicinity of Hazardous Material Business Plan sites is not a compelling governmental interest, because the CITY has permitted other assembly uses in the same location.  Moreover, under the criteria of being more than two acres in size and more than one-quarter mile from a Hazardous Materials site, none of the 196 properties in the approved Assembly Use Overlay District would qualify for assembly use.   Additionally, the threat of exposure to hazardous materials does not present a grave and immediate danger to public health, peace, and welfare, because church uses are compatible with light industrial uses.  The CITY's building code obligates the user of hazardous materials to provide a system that effectively prohibits migration of hazardous materials off that particular property.  Finally, even if the interest were compelling, it is unconstitutionally vague, because an applicant cannot know how many Hazardous Material sites within what distance is acceptable.

76.    Preserving the CITY'S jobs and tax revenues by excluding the CHURCH from job and tax-producing locations is not a compelling governmental interest.  As a matter of law, preserving jobs and tax revenues is not a compelling governmental interest.  RLUIPA does not permit the use of broad and discretionary land use policies to select a precise place where a

religious group can worship, which is what the Defendant is doing to the CHURCH.  The

CHURCH does provide a substantial number of jobs.

### Narrow Tailoring

77.    Besides lacking the requisite compelling justification, Defendant's stated health

and safety interests are not narrowly tailored.  There are other less restrictive alternatives that the

Defendant can take to ensure that their interests are met.  The Defendant has cited a health and

safety concern in permitting the CHURCH to use the CATALINA property near sites with

hazardous material plans.  However, the Defendant allows other commercial assembly uses,

mass employment uses, and an assembly overlay district with assembly locations close to sites

with hazardous material plans.

78.    The industrial zoning currently on the CATALINA site permits both commercial

recreation and entertainment activities.  A church use that gathers people for worship and other

activities is very similar to a commercial entertainment facility, such as a multi-screen movie

theater.  Through its industrial zoning, the CITY serves the stated health interests while allowing

commercial recreation and entertainment activities. Despite this, the Defendant apparently

asserts that there are no other means of serving the health interest for religious assembly at the

same time.  Defendant's bad faith shows a lack of narrow tailoring.

79.    About 2,000 employees work in businesses surrounding the church site every

weekday.  The hazardous materials are actively used in the manufacturing process on weekdays.

ICFG and the CHURCH are informed and believe and thereon allege that the CITY has a plan

for the health and safety of people working extremely close to these chemicals.  Despite this

plan, Defendant fails to allow the CHURCH assembly use to operate under the same plan.  The

Defendant has failed to articulate a rational basis why religious users should be subject to a different standard than industrial workers.

80.    Finally, the CITY's newly approved assembly overlay zoning included 196 parcels and skipped the CATALINA property.  Most, if not all of those sites, are surrounded by industrial areas with hazardous material plans.  There is no difference in having assembly in these areas and having assembly on the CATALINA site.  In that the CITY can serve their health and safety interests while allowing assembly (AU) overlay zoning near hazardous waste plans then the CITY should be able to serve their health and safety interests while allowing the CHURCH to assemble on the CATALINA property.

81.    More hazardous materials require additional levels of containment, all designed to keep the materials from leaving the site where they are used.  Containment plans now in place are keeping hazardous materials from homes located 250 yards away from the CATALINA property that are behind other industrial buildings.  Thousands of employees work with and around these materials.  Current safety plans are protecting these employees.  The safety plans are just one example of a narrowly tailored alternative to support health and safety and could be used to allow religious assembly on the CATALINA site.  Instead, Defendant has deliberately refused, and continues to refuse, to provide the same or similar narrowly tailored plan for the CHURCH.

## FIRST CAUSE OF ACTION:
### Violation of Religious Land Use and Institutionalized Persons Act of 2000 -- "Substantial Burden on Religious Exercise" (42 U.S.C. § 2000cc (a), et seq.)

82.    ICFG and CHURCH hereby incorporate paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.   CHURCH alleges that Defendant has in place formal or informal procedures or practices that permit Defendant to make individualized assessments of the proposed religious use for the CATALINA property.  The Defendant further makes, and has in place, one or more land use regulations which direct that no property within the jurisdiction of the CITY may be used as a church without the prior issuance of an Assembly Use Permit.  The conditions of said regulations and denial of the CHURCH's application for an Assembly Use Permit for the CATALINA property constitute a substantial burden on the religious exercise of the CHURCH and constitute unlawful restrictions on the use of the subject property.

84.   The Defendant's denial of the CHURCH's use of the CATALINA site imposes a substantial burden on the religious exercise of the CHURCH in violation of RLUIPA of 2000, 42 U.S.C. § 2000cc(a) et seq., because the CHURCH and has been, and is, significantly limited in its ability to fully exercise its beliefs in the commands of Jesus Christ to proclaim and propagate the Gospel, make disciples, and assist the poor.  Because the CHURCH has outgrown its current facility in terms of building space and parking, members and visitors are hindered in their attendance of worship services in the worship center and of other religious instruction.  The CHURCH has found suitable property, the CATALINA site, to solve these problems, but the Defendant will not allow the CHURCH to use the CATALINA property for religious purposes.  Further, despite the CHURCH's good faith effort to comply with a lengthy application process and its reasonable reliance on statements by City officials that other entities have been granted Assembly Use Permits, the CHURCH must pay nearly $35,000 a month for a property that it cannot use.

85.   The Defendant's denial of the CHURCH's use of the CATALINA site is not in furtherance of a narrowly tailored compelling governmental interest of preserving property for

1   one of its General Plan Focus Areas.  RLUIPA does not allow a government to use broad and

2   discretionary land use rationales to select the precise property where a religious group can

3   worship.

4           86.    The Defendant's denial of the CHURCH's use of the CATALINA property,

5   because it does not abut or is not within one-quarter mile of an arterial, is not in furtherance of a

6   narrowly tailored compelling governmental interest.  Church related traffic would be greatest on

7   Sundays when most businesses are closed.  In addition, such traffic is not a grave and immediate

8   danger to public health, peace, and welfare.

9           87.    The Defendant's denial of the CHURCH's use of the CATALINA site because it is

10  in the vicinity of businesses which operate under a Hazardous Materials Business Plan is not in

11  furtherance of a narrowly tailored compelling governmental interest in public health and safety.

12  The CITY has permitted other Assembly Uses in the same location.  The threat of exposure to

13  hazardous materials does not present a grave and immediate danger to public health, peace, and

14  welfare.

15          88.    The Defendant's denial of the CHURCH's use of the CATALINA site because it is

16  in the vicinity of businesses which operate under a Hazardous Materials Business Plan is not the

17  least restrictive means of furthering its alleged compelling governmental interests in public

18  health and safety.  Defendant has permitted other assembly uses in the same location.  The

19  Defendant could follow the same practices as in these situations to further their interests and

20  allow an Assembly Use Permit.

21          89.    Unless Defendant is enjoined and restrained by the Court from denying the

22  CHURCH's use of the CATALINA property, the CHURCH will continue to be substantially

23  burdened in its religious exercise through the imposition of a land use regulation.  The

CHURCH has also suffered, and continues to suffer, monetary damages as a result of Defendant's unlawful actions.

90.    Wherefore, ICFG and CHURCH seek any and all "appropriate relief" as per 42 U.S.C. 2000cc-2(a) and as otherwise provided by law against the Defendant as hereinafter set forth in the prayer.

**SECOND CAUSE OF ACTION:**
**Violation of Religious Land Use and Institutionalized**
**Persons Act of 2000 -- "Treatment of Religious Assembly on Less Than**
**Equal Terms with a Nonreligious Assembly"**
**(42 U.S.C. § 2000cc(b)(1), et seq.)**

91.    ICFG and CHURCH hereby incorporate paragraphs 1 through 90 of this Complaint as though fully set forth herein.

92.    The Defendant's denial of the CHURCH's use of the CATALINA site treats the CHURCH on a less than equal basis with a nonreligious assembly in violation of RLUIPA of 2000, 42 U.S.C. § 2000cc(b)(1), et seq., because the CITY has already approved assembly use amendments for commercial recreation and entertainment businesses without subjecting them to all of the same criteria that has been required of the CHURCH.  Moreover, Defendant's have imposed a ¼ mile circumference from a hazardous materials business plan requirement exclusively upon the CHURCH.

93.    Unless Defendant is enjoined and restrained by the Court from denying the CHURCH's use of the CATALINA property, the CHURCH's right to be treated on equal terms with a nonreligious assembly will continue to be infringed in violation of RLUIPA of 2000, 42 U.S.C. 2000cc(b)(1).  The Defendant has imposed a different standard upon the CHURCH because the Defendant is allowing other similarly situated commercial assembly usages while

not allowing the CHURCH's religious assembly.   The Defendant's decision to not allow the

CHURCH's use of their new facility treats the CHURCH  unequally when compared to

standards and criteria applied to other non-religious similarly situated entities.  ICFG and

CHURCH have also suffered, and continue to suffer, monetary damages as a result of

Defendant's unlawful actions.

94.    The Defendant has imposed a different standard upon the CHURCH because the

Defendant have imposed a ¼ mile circumference from a hazardous materials business plan

requirement exclusively upon the CHURCH.

95.    Wherefore, ICFG and CHURCH seek any and all "appropriate relief" as per 42

U.S.C. 2000cc-2(a) and as otherwise provided by law against the Defendant as hereinafter set

forth in the prayer.

**THIRD CAUSE OF ACTION:**
**Violation of Religious Land Use and Institutionalized**
**Persons Act of 2000 -- "Total Exclusion from Jurisdiction or**
**Unreasonable Limits on Religious Assemblies within Jurisdiction"**
**(42 U.S.C. 2000cc(b)(3))**

96.    ICFG and CHURCH hereby incorporate paragraphs 1 through 95 of this Complaint

as though fully set forth herein.

97.    The Defendant's criteria used to deny the CHURCH's use of the CATALINA site

is a violation of the RLUIPA of 2000 (42 U.S.C. § 2000cc(b)(3)) prohibition against land use

regulations that totally exclude religious assemblies from a jurisdiction, or unreasonably limit

them within a jurisdiction, because there are virtually no properties in the recently created

Assembly Overlay District, or in any other district outside of residential zones, that are not

within 500 feet of a business operating under a Hazardous Materials Business Plan.

98.    Further, there are no properties available in residentially zoned areas which have sufficient acreage and/or building that will accommodate an assembly of the CHURCH's size. In like manner, there are no properties available which have sufficient acreage and/or a building that will accommodate an assembly of the CHURCH's size in the Assembly Overlay District. Thus, by preventing the CHURCH from using the CATALINA property for religious purposes, the Defendant has acted to unreasonably limit religious assembly within a jurisdiction.

99.    The Defendant's criteria used to deny the CHURCH's use of the CATALINA property is a violation of RLUIPA, which prohibit land use regulations that totally exclude religious assemblies from a jurisdiction, or unreasonably limit them within a jurisdiction (42 U.S.C. § 2000cc(b)(3)).  The reason is that there are no properties in the recently created Assembly Use Overlay District of over two acres in size, as required for a religious assembly use by an assembly of the size like the CHURCH, and not within one-quarter mile of a business operating under a Hazardous Materials Business Plan.

100.  Unless Defendant is enjoined and restrained by the Court from denying the CHURCH's use of the CATALINA site, the CHURCH's right under RLUIPA not to have imposed on it land use regulations that totally exclude religious assemblies from a jurisdiction, or unreasonably limit them within a jurisdiction, will continue to be violated.  The CHURCH has also suffered, and continues to suffer, monetary damages as a result of the Defendant's unlawful actions.

101.  Wherefore, ICFG and CHURCH seek any and all "appropriate relief" as per 42 U.S.C. 2000cc-2(a) and as otherwise provided by law against the Defendant as hereinafter set forth in the prayer.

**FOURTH CAUSE OF ACTION:**
**Deprivation of Rights under United States Constitution:**
**Free Exercise of Religion: First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

102.  ICFG and CHURCH hereby incorporate paragraphs 1 through 101 of this Complaint as though fully set forth herein.

103.  Defendant has deprived, and continue to deprive, the CHURCH of its right to the free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.  Defendant has discriminated against the CHURCH by substantially burdening its ability to freely exercise its religious faith through the CITY'S assembly use application regulation.  Both on its face and as applied, the burden is not neutral or of general application and is not narrowly tailored.  Defendant, through its employees and agents, acted in a manner ultra-vires to the law and under color of state law. Furthermore, Defendant acted intentionally and knew, or should have known, that its actions violated rights secured under the First and Fourteenth Amendments and federal law.

104.  Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set forth in the prayer.

**FIFTH CAUSE OF ACTION:**
**Deprivation of Rights under United States Constitution:**
**Freedom of Speech: First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

105.  ICFG and CHURCH hereby incorporate paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.  Defendant, acting through its agents and employees, has deprived, and continues to deprive, the CHURCH of its right to free speech, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.

Defendant has discriminated against the Church by restricting its speech rights and the congregants' corresponding right to hear. The crowded facilities, inadequate parking, and traffic congestion at the CHURCH's present location are hindering its members and visitors from entering the CHURCH's facilities and exercising their speech rights. If the Defendant had permitted the CHURCH to use the CATALINA site, the CHURCH and its congregants could have been exercising their free speech rights. Defendant's actions were ultra-vires, under color of state law and intentional, and it knew, or should have known, that its actions violated rights secured under the First and Fourteenth Amendments and federal law.

107. Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set forth in the prayer.

### SIXTH CAUSE OF ACTION
### Deprivation of Rights under United States Constitution:
### Freedom of Assembly: First and Fourteenth Amendments
### (42 U.S.C. § 1983)

108. ICFG and CHURCH hereby incorporate paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109. Defendant, acting through its employees and agents has deprived, and continues to deprive, the CHURCH of its right to freely assemble for the purpose of religious worship and expression, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment. Defendant's actions were ultra-vires, under color of state law and intentional, and it knew, or should have known, that its actions violated rights secured under the First and Fourteenth Amendments and federal law.

110. Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set forth in the prayer.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEVENTH CAUSE OF ACTION**
**Deprivation of Rights under United States Constitution:**
**Freedom of Association: First and Fourteenth Amendments**
**(42 U.S.C. § 1983)**

111.  ICFG and CHURCH hereby incorporate paragraphs 1 through 110 of this

Complaint as though fully set forth herein.

112.  Defendant, acting through its employees and agents, has deprived, and continues to

deprive, the CHURCH of its right to freely associate for the purpose of religious worship and

expression, as secured by the First Amendment to the United States Constitution and made

applicable to the States by the Fourteenth Amendment.  Defendant's actions were ultra-vires,

under color of state law and intentional, and it knew, or should have known, that its actions

violated the associative rights of the CHURCH and its members secured under the First and

Fourteenth Amendments and federal law.

113.  Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set

forth in the prayer for relief.

**EIGHTH CAUSE OF ACTION:**
**Deprivation of Rights under United States Constitution:**
**Equal Protection: Fourteenth Amendment**
**(42 U.S.C. § 1983)**

114.  ICFG and CHURCH hereby incorporate paragraphs 1 through 113 of this

Complaint as though fully set forth herein.

115.  Defendant, acting through its employees and agents, has deprived and continues to

deprive the CHURCH of its right to equal protection of the laws, as secured by the Fourteenth

Amendment to the United States Constitution, by discriminating against the CHURCH in its

application of the laws, regulations, and plans of the State of California and those of the CITY,

in a manner that was on less than equal terms with nonreligious assemblies.  Defendant's actions

1

2    were ultra-vires, under color of state law and intentionally calculated to deny equal protection

3    under the law, and it knew, or should have known, that its actions violated rights secured under

     the First and Fourteenth Amendments and federal law

4         116. Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set

5    forth in the prayer.

6
                              **NINTH CAUSE OF ACTION:**
7             **Deprivation of Rights under United States Constitution:**
                    **Due Process: Fourteenth Amendment**
8                           **(42 U.S.C. § 1983)**

9         117. ICFG and CHURCH hereby incorporate paragraphs 1 through 116 of this

10   Complaint as though fully set forth herein.

11

12        118. Defendant, acting through its employees and agents, has deliberately deprived and

13   continues to deprive the CHURCH of due process of law, as secured by the Fourteenth

14   Amendment to the United States Constitution, by 1) denying the CHURCH the use of the

15   CATALINA site for worship, religious education, and social services, based on the CITY'S

16   General Plan, Zoning Code, Zoning Map, and Assembly Use Overly District criteria that are in

17
     part vague and indefinite and constitute a standard of review different in substance and form
18
     from that applied to other applicants, including distinct public health and safety criteria, and 2)
19
     intentionally prolonging the Assembly Use Permit application process in order to obstruct,
20
21   delay, and prevent the CHURCH's use of the CATALINA property. Defendant's actions were

22   ultra-vires, under color of state law and intentional, and it knew, or should have known, that its

23   actions violated rights secured under the First and Fourteenth Amendments and federal law.

24   Defendant's actions were intentionally calculated to deny the due process rights of CHURCH.

25        119. Wherefore, ICFG and CHURCH seek relief against the Defendant as hereinafter set

26   forth in the prayer.

27

28
                              First Amended Complaint

**PRAYER FOR RELIEF**

WHEREFORE, ICFG and CHURCH respectfully pray that the Court grant:

      1.      A preliminary injunction allowing the CHURCH to worship and exercise of its religious freedom in the CATATLINA property during the pendency of this case;

      2.      An order permanently enjoining Defendant from denying the CHURCH use of the CATALINA site;

      3.      An order declaring the respective rights and duties of the parties relative to the CATALINA property;

      4.      An order declaring that the criteria used by the Defendant to deny the CHURCH's use of the CATALINA site, to wit, (1) preserving the CITY's jobs and tax revenues by excluding the CHURCH from job and tax-producing locations; (2) preventing traffic problems by excluding the CHURCH from areas that do not abut or are not within one-quarter mile of an arterial; (3) opposition from neighboring homeowners association; and, (4) protecting public health and safety by excluding the CHURCH from locations in the vicinity of Hazardous Material Business Plan sites, is, as applied, void, invalid, and unconstitutional, in that it violates the Free Exercise, Free Speech, Free Assembly, Free Association, Equal Protection, and Due Process rights under the United States Constitution and the Religious Exercise protections of the Religious Land Use and Institutionalized Persons Act of 2000;

      5.      An order declaring that the criteria used by the Defendant to deny the CHURCH's use of the CATALINA property, to wit, (1) preserving the CITY's jobs and tax revenues by excluding the CHURCH from job and tax-producing locations; (2) preventing traffic problems by excluding the CHURCH from areas that do not abut or are not within one-quarter mile of an arterial; (3) opposition from neighboring homeowners association; and, (4) protecting public

health and safety by excluding the CHURCH from locations in the vicinity of Hazardous Material

Business Plan sites, <u>on their face</u>, void, invalid, and unconstitutional, in that it violates the Free

Exercise, Free Speech, Free Assembly, Free Association, Equal Protection, and Due Process rights

under the United States Constitution and the Religious Exercise protections of the Religious Land

Use and Institutionalized Persons Act of 2000;

      6.     An order declaring one of the criteria used by the Defendant to deny the

CHURCH's use of the CATALINA property, to wit, protecting public health and safety by

excluding the CHURCH from locations in the vicinity of Hazardous Material Business Plan sites,

void, invalid, and unconstitutional on its face, and as applied, in that it is so vague, in that a

reasonable person of average intelligence cannot understand it and conform his or her conduct

thereto.

      7.     An order declaring one of the criteria used by the Defendant to deny the

CHURCH's use of the CATALINA property, to wit, that allowing use of the CATALINA

property for religious use is inconsistent with the CITY's General Plan is void, invalid, and

unconstitutional on its face, and as applied, in that it is so vague, in that a reasonable person of

average intelligence cannot understand it and conform his or her conduct thereto.

      8.     Any and all "appropriate relief" as per 42 U.S.C. 2000cc-2(a)

      9.     Nominal damages;

      10.    Economic damages;

      11.    Reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) and other applicable

statutes;

      12.    Costs incurred as a result of Defendant's actions and this lawsuit;

13.    In light of unreasonable delays in processing CHURCH'S land use application, City shall establish a restricted fund and begin reserving for potential damages in an amount equal to CHURCH'S monthly mortgage interest on the CATALINA property (not including principle), accruing monthly from March 19, 2007 (the reasonable conservative date by which final approval should have been granted, if appropriate) until a judicial determination of this case becomes final; and,

14.    Other and further relief as the Court deems just and proper.

Dated:  October 26, 2007

__/S/ Kevin Snider_____
Kevin T. Snider
*Counsel of Record*
Matthew B. McReynolds
Peter MacDonald
Attorneys for the Plaintiff
ICFG
Faith Fellowship Foursquare Church

### REQUEST FOR JURY TRIAL

Plaintiff hereby respectfully requests a jury trial.

Dated:  October 26, 2007

_/S/ Kevin Snider_____
Kevin T. Snider
*Counsel of Record*
Matthew B. McReynolds
Peter MacDonald
Attorneys for the Plaintiff
ICFG
Faith Fellowship Foursquare Church