Kevin T. Snider, State Bar No. 170988
*Counsel of record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: kevinsnider@pacificjustice.org
        mattmcreynolds@pacificjustice.org

Peter D. MacDonald, State Bar No. 69789
LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210
Pleasanton, CA 94566-7371
Tel. (925) 462-0191
Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF SAN LEANDRO, et al.,<br><br>Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No.: C07-03605 –PJH-JCS<br><br>**MOTION FOR PARTIAL SUMMARY ADJUDICATION ON DEFENDANT'S AFFIRMATIVE DEFENESES;  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**(FRCP 56)**<br><br>**Date:**  September 3, 2008<br>**Time:**  9:00 a.m.<br>**Ctrm:**  3<br>**Hon.:**  Phyllis J. Hamilton<br><br>First Amended Complaint Filed: Sept. 26, 2008 |

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

3  NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  MEMORANDUM OF POINTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . .1

5  STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

6  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

7  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8
   I.     First Affirmative Defense – Failure to Allege Facts Showing a Violation of RLUIPA. .
9    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10  II.    Second Affirmative Defense – Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11
          A.     Defendant's alleged facts do not diminish standing. . . . . . . . . . . . . . . . . . 5
12
                 i.      Interference with the Church's Manor property is irrelevant because
13                       the injuries, causation, and redressability remain the same nonetheless.
                         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
14
                 ii.     The First Amendment bars judicial inquiry into ecclesiastical structure
15                       and governance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16
                 iii.    The remaining facts identified by the City are inadequate, irrelevant,
17                       and immaterial in the context of standing. . . . . . . . . . . . . . . . . . . .8
18
          B.     The Church can show injury in fact because the City has barred religious
19               assembly on the Church's premises. . . . . . . . . . . . . . . . . . . . . . . . . . . 9
20
          C.     ICFG and the Church have standing as the owner and user of the premises. . . .
21               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
22
          D.     The Church and ICFG can show causal relationship and redressability. . . . . . .
23               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
24
   III.   Third Affirmative Defense – Failure to State an Actual Case or Controversy. . . . . . 11
25
26  IV.    Fourth and Fifth Affirmative Defenses – Causation and Mitigation. . . . . . . . . . . .12

27  V.     Sixth Affirmative Defense – Justiciability and Ripeness. . . . . . . . . . . . . . . . . . .14

28

**VI.    Seventh Affirmative Defense -- Laches.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**VII.    Eighth Affirmative Defense – Estoppel.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**VIII.    Ninth Affirmative Defense – Waiver.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**IX.    Tenth Affirmative Defense – Unclean Hands.** . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**X.    Eleventh Affirmative Defense – Failure to Exhaust Administrative Remedies.** . . . . .18

**XI.    Twelfth and Thirteenth Affirmative Defenses – Constitutionality of RLUIPA and a
Ruling in Favor of ICFG and the Church.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**XII.    Fourteenth Affirmative Defense – Statute of Limitations.** . . . . . . . . . . . . . . . . . . 21

**XIII.    Fifteenth Affirmative Defense – Immunity.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**XIV.    Sixteenth Affirmative Defense – ICFG lacks capacity to sue.** . . . . . . . . . . . . . . . .22

**XV.    Seventeenth Affirmative Defense – Church Improperly Named as Real Party in
Interest.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3  *ASARCO Inc. v. Kadish,* 490 U.S. 605 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4  *Boston Scientific Corp. v. Cordis Corp.*, 422 F. Supp. 2d 1102 (N.D. Cal. 2006) . . . . . . . . . . . . .4

5  *Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.*, 249 F.2d 277 (9th Cir. 1957) . . . . . . . . . . . . . .15

6  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7  *Charles v. Verhagen,* 348 F. 3d 601 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

8  *Costello v. United States*, 365 U.S. 265 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14-15

9  *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978) . . . . . . . . . 15

10  *Ganley v. County of San Mateo* 2007 WL 902551 (N.D. Cal. March 22, 2007) . . . . . . . . . . 18, 22

11  *Grace Church of North County v. San Diego*, 2008 WL 2025367 (S.D. Cal, May 9, 2008). . . . . . 5

12  *Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006) . . . . . . . .19

13  *HB General Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185 (3rd Cir. 1996) . . . . . . . . . . . . . 25

14  *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51 (1984) . . . . . . . . 16

15  *Jones v. Wolf*, 443 U.S. 595 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

16  *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94 (1952) . . . . . . . . .6, 7

17  *Koch Indus., Inc. v. United Gas Pipe Line Co.*, 700 F. Supp. 865 (M.D. La 1988) . . . . . . . . . . .4

18  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

19  *Lyng v. Payne*, 476 U.S. 926 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

20  *Madison v. Riter*, 355 F.3d 310 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21  *Massachusetts Bonding & Ins. Co. v. Feutz*, 182 F.2d 752 (8th Cir. 1950) . . . . . . . . . . . . . . . . 24

22  *Mayweathers v. Newland,* 314 F.3d 1062 (9th Cir. 2002), *cert. denied,* 540 U.S. 815 (2003) . . . .20

23  *Midrash Sephardi v. Town of Surfside*, 366 F.3d 1214 (11th Cir. 2004) . . . . . . . . . . . . . . . 9, 19, 20

24  *NLRB v. Catholic Bishop of Chicago,* 440 U.S. 490 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

25  *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26  *Patten v. Dennis*, 134 F.2d 137 (9th Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

27  *Presbyterian Church v. Hull Memorial Presbyterian Church*, 393 U.S. 440 (1969) . . . . . . . . . .6

28

1 | *Primera Iglesia Bautista Hispana of Boca Raton v. Broward Co.*, 450 F.3d 1295 (11th Cir. 2006) .

2 | . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

3 | *Rayburn v. General Conf. of Seventh-Day Adventists,* 772 F.2d 1164 (4th Cir. 1985) . . . . . . . . . 7

4 | *Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F.3d 895 (7th

5 | Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6 | *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696 (1976) . . . . . . . . . . . . . . . . 6,7

7 | *Sherbert v. Verner,* 374 U.S. 398 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 | *Sprint Communications Co., L.P. v. APCC Services, Inc.*,  --- U.S. ---, 128 S. Ct. 2531 (2008) . .10

9 | *Stanolind Oil & Gas Co. v. Guertzgen*, 100 F.2d 299 (9th Cir. 1938) . . . . . . . . . . . . . . . . . . 17

10 | *Tyler v. Cuomo,* 236 F.3d 1124 (9th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

11 | *U.S. v. Chichester*, 312 F.2d 275 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12 | *U.S. v. Gonzalez-Flores*, 418 F.3d 1093 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

13 | *U.S. v. Hamilton,* 391 F.3d 1066 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

14 |  *U.S. v. Maui County*, 298 F. Supp. 2d 1010 (D. Hawaii 2003) . . . . . . . . . . . . . . . . . . . . . 19, 20

15 | *Vernon v. Heckler,* 811 F.2d 1274 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 | *Vil. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) . . . . . . . . . . . . . . . . 9

17 | *Watson v. Jones*, 80 U.S. 679 (1871) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 | *Westchester Day School v. Vil. of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007) . . . . . . . . . . . . . . 20

**State Cases**

21 | *Baines v. Babcock*, 95 Cal. 581 (1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

22 | *Bossert Corp. v. City of Norwalk*, 253 A.2d 39 (Conn. 1968) . . . . . . . . . . . . . . . . . . . . . . . . 10

23 | *Canal Oil Co. v. National Oil Co.*, 19 Cal. App. 2d 524 (1937) . . . . . . . . . . . . . . . . . . . . . . . .22

24 | *City of San Antonio v. Guidry*, 801 S.W.2d 142 (Tex. App. 1990) . . . . . . . . . . . . . . . . . . . . . .14

25 | *Curtiss v. Murry*, 26 Cal. 633 (1864) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26 | *Friendly Vill. Cmty. Ass'n v. Silva & Hill Constr. Co.*, 31 Cal. App. 3d 220 (1973) . . . . . . . . . . 22

27 | *Monteleone v. Allstate Ins. Co.*, 51 Cal. App. 4th 509 (1996) . . . . . . . . . . . . . . . . . . . . . . . . 17

1  *Noyes v. City of Bangor*, 540 A.2d 1110 (Me. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2  *United Methodist Church v. White*, 571 A.2d 790 (D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 6, 24

3  *Wheelock v. First Presbyterian Church*, 119 Cal. 477 (1897) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

5  **Federal Statutes and Rules**

6  42 U.S.C. § 2000cc et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

7  42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

8  Fed. R. Civ. P. 5.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

9  Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14, 15, 18, 21

10  Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11  Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18, 21

12  Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

13  Fed. R. Civ. P. 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 22

14  Fed. R. Civ. P. 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 24, 25

15  Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24-25

16  Fed. R. Civ. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24-25

17  Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4

18

19  **Other Authorities**

20  Wright, Miller & Kane, *Federal Practice and Procedure,* Vol. 6A, § 1543 . . . . . . . . . . . . . . . . 24

21  Wright, Miller & Kane, *Federal Practice and Procedure,*  Vol. 10B, § 2737 (1983) . . . . . . . . . . 4

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 3, 2008, at 9:00 a.m., or as soon thereafter as this matter can be heard in Courtroom 3 of this Court, located at 450 Golden Gate Ave., San Francisco, CA, 94102, Plaintiff, International Church of the Foursquare Gospel and Real Party in Interest, Faith Fellowship Foursquare Church, by and through their counsel, move for an order granting partial summary adjudication.

This motion, filed pursuant to Federal Rule of Civil Procedure 56, is based on this Notice of Motion; the Plaintiff and Real Party in Interest's Memorandum of Points and Authorities in Support of this Motion, set forth below; the Declarations of Kevin T. Snider, Elford H. Clark and Dave Mortara, filed herewith; the Exhibits filed herewith; and all the papers, records, exhibits and documents on file herein, and evidence, oral and documentary, which has, or may be submitted on the hearing on these matters.

The relief sought is a summary adjudication as to the evidence and legal merits of the seventeen affirmative defenses of the Defendant's, City of San Leandro, Answer filed November 15, 2007.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES**

1. Whether ICFG and the Church are entitled to partial summary adjudication as to each of the City's seventeen affirmative defenses, when the City has identified virtually no supporting facts, and when undisputed facts and prevailing legal authorities weigh against each of these defenses.

2. Whether ICFG and the Church are entitled to partial summary adjudication as to five of the City's affirmative defenses (ripeness, laches, failure to exhaust administrative remedies, statute of limitations and immunity) which were raised anticipatorily, do not relate to the subject matter of the First Amended Complaint and have not been supported by evidence.

3.  Whether ICFG and the Church are entitled to partial summary adjudication on two of the City's affirmative defenses (unclean hands and capacity to sue) for which facts have not even been alleged, much less disputed.

4.  Whether ICFG and the Church are entitled to summary adjudication as to the City's affirmative defense questioning the constitutionality of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.A. § 2000cc, et seq., when the City has not properly notified federal authorities of its position, and when the Ninth Circuit has previously upheld RLUIPA.

## STATEMENT OF FACTS

The recent conclusion of the discovery phase of this case has confirmed that many of the basic facts are straightforward and not subject to reasonable dispute.  The International Church of Foursquare Gospel (ICFG) and Faith Fellowship Foursquare Church (the Church) purchased a new property on Catalina Street in San Leandro, in order to accommodate the Church's growing membership.  ICFG acquired title to the Catalina property on December 29, 2006.  Ex. 9, ICFG Bylaws, Art. XVII (2006).[1]  The City denied the Church's rezoning and Conditional Use Permit (CUP) applications on May 7, 2007 and February 19, 2008, respectively.

ICFG and the Church filed suit on July 12, 2007, with a First Amended Complaint (FAC) following on October 26, 2007.  The FAC alleges violation of 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and under 42 U.S.C. § 1983, for violation of Constitutional guarantees.  On November 15, 2007, Defendant City of San Leandro ("the City" or "Defendant") filed its Answer, which included seventeen affirmative defenses.  Ex. 1, pp. 2-4.

During discovery additional facts have been established beyond reasonable dispute.  ICFG is a hierarchical or Episcopal church.  Ex. 6, p. 3, Clark Dep. 52:3-4.  Thus, ICFG and the Church are one entity.  *Id.*  The corporate structure of ICFG is intended to facilitate the propagation and

---

[1] All cited Exhibits are being filed concurrently with this motion, unless expressly noted otherwise.

1   dissemination of "the religious principles embraced in the Foursquare Gospel," and "to assist in

2   the establishment of, and/or to grant charters to churches and religious organizations for the

3   dissemination and propagation of the Foursquare Gospel in the United States and all foreign

4   countries …." Ex. 10, Arts. of Incorporation, Art. II.  The core tenets of the Church and ICFG

5   include "speeding forth the gospel to the ends of the earth, girding the globe with the message of

6   salvation," and "soul winning," which is "the one big business of the Church upon earth." Ex. 8,

7   Decl. of Faith, XXI.  Pursuant to its religious beliefs, ICFG owns and operates churches

8   throughout the world.  Faith Fellowship Foursquare Church is one such church.

9        In an effort to determine which of Defendant's affirmative defenses were merely

10   boilerplate, the Church propounded Interrogatory No. 13.  Ex. 2, pp. 2-3.  Interrogatory No. 13

11   asked Defendant to "state all facts" that support each of the affirmative defenses that were raised

12   in its Answer to the FAC.  The City responded by providing some alleged factual bases for the

13   affirmative defenses.  However, Defendant's sixth (ripeness), seventh (laches), eleventh (failure to

14   exhaust administrative remedies), fourteenth (statute of limitations), and fifteenth (immunity)

15   affirmative defenses are anticipatory defenses that do not relate to the subject matters raised in the

16   First Amended Complaint (FAC).  Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 9-11.  Moreover,

17   Defendant has failed to allege any facts supporting its tenth (unclean hands) and sixteenth

18   (capacity to sue) affirmative defenses.  *Id*.  The City has not supplemented its responses to

19   Interrogatory No. 13, and discovery has concluded.

20                                          ARGUMENT

21        Rule 56(c) of the Federal Rules of Civil Procedure ("FRCP") provides that a moving party

22   is entitled to summary judgment if, based on the pleadings, depositions, answers to interrogatories,

23   and any affidavits submitted, there is "no genuine issue as to any material fact and that the moving

24   party is entitled to judgment as a matter of law."  If a party fails to establish the existence of an

25   essential element of its case on which it has the burden of proof, the moving party is entitled to

26   judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

27

28

1    Rule 56 is also a proper mechanism by which to adjudicate affirmative defenses.[2]  *Boston*

2    *Scientific Corp. v. Cordis Corp.*, 422 F. Supp. 2d 1102, 1106 (N.D. Cal. 2006);  *Vernon v.*

3    *Heckler,* 811 F. 2d 1274, 1278 (9th Cir. 1987);  *see also*, *Koch Indus., Inc. v. United Gas Pipe*

4    *Line Co.*, 700 F. Supp. 865, 867 (M.D. La 1988);  Wright, Miller & Kane, *Federal Practice and*

5    *Procedure* vol. 10B, § 2737 (1983).

6    **I.    First Affirmative Defense -- Failure to Allege Facts Showing a Violation of RLUIPA.**

7        The City has offered no facts in support of its first affirmative defense.  Instead, the City

8    has taken the position that this is a "legal defense," stating that Plaintiff's request for supporting

9    facts is not applicable.  Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 7-8.  Thus, this affirmative defense

10   lends itself to summary judgment.

11       Plaintiff has alleged sufficient facts to state a claim of violation of RLUIPA, the United

12   States Constitution, and other provisions of law as asserted in the FAC.  The Church has satisfied

13   Rule 8(a), as well as the five factors (plus demand for relief) identified in *Patten v. Dennis*, 134

14   F.2d 137, 138 (9th Cir. 1943), in that the Church has properly stated jurisdiction (FAC ¶¶ 2-5);

15   ownership of right (FAC ¶¶ 43-81); violation of right by Defendant (*id.*); injury (*Id.*); justification

16   for equitable relief (FAC ¶¶ 83-118); and demand for relief (FAC ¶¶ 37-39).  Defendant has not

17   made any serious attempts to demonstrate that these several aspects of the FAC, taken together,

18   fail to state a claim upon which relief may be granted.  Nor did the City file a 12(b)(6) motion to

19   dismiss on this issue.

20       The FAC alleges sufficient facts to adequately state a claim for relief.  Since the City has

21   been unable to point to any fact or legal authority to support their first affirmative defense,

22   summary adjudication is appropriate to dispose of this boilerplate defense.

23   **II.    Second Affirmative Defense – Standing.**

24       The question of standing raised by the City's second affirmative defense need not long

25

26   _____

27   [2] The cases differ in terminology, but the better practice seems to be to describe this Motion a partial summary "adjudication," rather than partial summary judgment.  Wright et al., *Federal*

28   *Practice and Procedure* vol. 10B, § 2737.

1   detain the Court.  While the standing inquiry has been stated in different ways by different courts,

2   its core purpose is to determine whether the parties seeking to invoke the court's jurisdiction have

3   "alleged such a personal stake in the outcome of the controversy as to assure that concrete

4   adverseness which sharpens the presentation of issues upon which the court so largely depends for

5   illumination of difficult constitutional questions." *Duke Power Co. v. Carolina Environmental*

6   *Study Group, Inc.*, 438 U.S. 59, 72 (1978).

7           **A.      Defendant's alleged facts do not diminish standing.**

8           The City has stated the following in support of its second affirmative defense:

9               (1) No interference with use of the Church's existing activities at 577 Manor
                Boulevard is alleged or is known to have occurred;  (2) ICFG was apparently not
10              a party to the purchase and sales agreement and various extensions which
                preceded acquisition of the Catalina property; (3) ICFG was not a named
11              applicant on any application for rezoning or for a conditional use permit received
                by the City; (4) neither the Church or ICFG acquired title to the Catalina Street
12              Property until December 29, 2006 or thereafter; (5) no interference with current or
                planned institutional activities of the ICFG (as opposed to the Church) is alleged
13              or known to have occurred.

14

15   Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 8.  These facts do not correlate with the elements of

16   standing and are therefore unhelpful to Defendant's second affirmative defense.[3]

17           **i.      Interference with the Church's Manor property is irrelevant because**
18                     **the injuries, causation, and redressability remain the same nonetheless.**

19           First, the City claims a lack of interference with the Church's existing facility (Manor

20   property).  Even if taken as true this claim cannot salvage the City's second affirmative defense.

21   "It is no defense to a claim under RLUIPA's substantial burden prong to dispute the adequacy of a

22   plaintiff's prior facilities, or whether a different site might have been secured." *Grace Church of*

23   *North County v. San Diego*, 2008 WL 2025367 (S.D. Cal, May 9, 2008).  Likewise, interference

24

25   _____

26   [3] The second affirmative defense is directed only at ICFG and not the Church, regardless of
     Defendant's vague intimations that this defense may also apply to the Church.  *See* Ex. 2, Def.'s
     Answer to FAC at 19;  Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 8.  To the extent that lack of
27   standing is alleged to also apply to the Church, Plaintiff objects to any evidence introduced on that
     issue as extrinsic to the Defendant's Answer.
28

1   with the Church's Manor property cannot be used as a defense against the Church's RLUIPA

2   claim.  Nor does interference with the Church's existing facility speak to any of the elements of

3   standing.

4          The constitutional standard for standing contains three elements: (1) an "injury in fact"; (2)

5   a causal relationship between the injury and the challenged conduct; and, (3) a likelihood that the

6   injury can be redressed by favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

7   561 (1992).  As discussed above, the Church has made a showing of all of these elements and the

8   facts alleged by the City, even if taken as true, do not negate any of the elements of standing.

9

10              **ii.     The First Amendment bars judicial inquiry into ecclesiastical structure**
                         **and governance.**

11         The remaining facts identified by Defendant require the Court to inquire into the corporate

12  structure and governance of ICFG – an inquiry precluded by the Religion Clauses of the First

13  Amendment.  These allegations are directed at the internal governing procedures of ICFG and to

14  the relationship of ICFG and the Church.  Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 8.  Since ICFG is

15  a hierarchical Church, Ex. 6, Clark Dep. at 52:3, the Court lacks jurisdiction to inquire into the

16  internal governance measures of ICFG.

17         "The First Amendment's Establishment Clause and Free Exercise Clause grant churches

18  immunity from civil discovery and trial under certain circumstances in order to avoid subjecting

19  religious institutions to defending their religious beliefs and practices in a court of law."  *United*

20  *Methodist Church v. White,* 571 A.2d 790, 792-93 (D.C. 1990) (citing *NLRB v. Catholic Bishop of*

21  *Chicago,* 440 U.S. 490, 503 (1979)).  The Supreme Court has long held that, generally, civil courts

22  are not a constitutionally permissible forum for review of ecclesiastical matters.  *Serbian Eastern*

23  *Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 710 (1976); *Presbyterian Church v. Hull Memo.*

24  *Presbyterian Church*, 393 U.S. 440, 449 (1969); *Watson v. Jones*, 80 U.S. 679 (1871).  It is well

25  established that a civil court may not interfere in matters of church government, as well as matters

26  of faith and doctrine.  *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,* 344 U.S. 94,

27  116 (1952).  Based upon the doctrine of separation of Church and State, such ecclesiastical

28

1   decisions are generally beyond the jurisdiction of secular courts.  *Rayburn v. Gen. Conf. of*

2   *Seventh-Day Adventists,* 772 F.2d 1164, 1167 (4th Cir. 1985).  Indeed, "civil courts are bound to

3   accept the decisions of the highest judicatories of a religious organization of hierarchial polity on

4   matters of discipline, faith, *internal organization*, or ecclesiastical rule, custom or law."  *Serbian*

5   *Eastern Orthodox Diocese*, 426 U.S. at 713 (emphasis added).  "In short, the First and Fourteenth

6   Amendments permit hierarchical religious organizations to establish their own rules and

7   regulations for internal discipline and government."  *Id.*

8          ICFG's right to choose its internal government procedures without being subjected to

9   judicial scrutiny underlies the autonomy of the denomination.  Religious freedom encompasses the

10  "power (of religious bodies) to decide for themselves, free from state interference, matters of

11  church government as well as those of faith and doctrine."  *Kedroff*,  344 U.S. at 116.  The

12  corporate structure of ICFG is designed and intended to facilitate the propagation and

13  dissemination of "the religious principles embraced in the Foursquare Gospel," and "to assist in

14  the establishment of, and/or to grant charters to churches and religious organizations for the

15  dissemination and propagation of the Foursquare Gospel in the United States and all foreign

16  countries …."  Ex. 10, ICFG's Arts. of Incorporation, Art. II.  Moreover, ICFG's method of

17  supervision of its various Churches is a matter of church government, outside the scope of the

18  jurisdiction of civil courts.  Therefore, it is improper for the Court to subject the internal

19  governance procedures of ICFG to judicial scrutiny.

20         In *NLRB v. Catholic Bishop of Chicago*, the Supreme Court decided that the National

21  Labor Board lacked jurisdiction over church-operated schools, because such would entail the

22  review of the school's contracts, bylaws, and other documents to decide the "terms and conditions

23  of employment." 440 U.S. 490.  Such a review would violate the Establishment Clause of the First

24  Amendment.  *Id.*  Similarly, entertaining the facts alleged by the City would require the Court to

25  look into the Church's bylaws, Articles of Incorporation, contracts, and other documents.  Such an

26  exercise would result in an unconstitutional entanglement of the Court with the Church.

27

28

1        In *Jones v. Wolf*, 443 U.S. 595 (1979), the Supreme Court held that if state law provides

2   that identity of local church is to be determined according to the "laws and regulations" of general

3   hierarchical church, the First Amendment requires that state courts give deference to

4   determination of that church's identity by the authoritative ecclesiastical body. *Id.* at 609.

5   California law gives deference to hierarchical entities in determining the identity of the local

6   Church. *Wheelock v. First Presbyterian Church*, 119 Cal. 477, 483 (1897). Therefore, it is

7   improper, under the First Amendment, for this Court to make a separate determination of the

8   identity of the local Church, overriding the determination of the hierarchical entity.

9        The Court should refrain from ascertaining the internal government procedures of ICFG by

10  looking at the religious entity's bylaws, articles of incorporation, contracts and other documents,

11  because these papers contain religious materials whose interpretation is reserved for the Church by

12  the application of the First Amendment.

13
          **iii.**      **The remaining facts identified by the City are inadequate, irrelevant,**
14                   **and immaterial in the context of standing.**

15       The remaining facts identified by Defendant are inadequate to support the second

16  affirmative defense because ICFG and the Church are the same entity. Ex. 6, Clark Dep. 52:3.

17       At all times, purchases and sales by the local churches are supervised by ICFG and ICFG

18  has a direct interest in any sales, purchases or leases of its Church properties. Ex. 9, ICFG Bylaws

19  Art. XVII (2006). The individual churches also have a direct interest in such sales and purchases,

20  because they have possessory and usage interests in the land being purchased, sold, or leased. As

21  early as 1897, California courts recognized that the corporate identity of a church is only a form to

22  facilitate the affairs of the ecclesiastical body. In *Wheelock*, the court noted: "Whatever property

23  stands in its name is seised to the use of the church proper. It [the corporate form] is a trustee

24  holding property for the use and enjoyment of the church, and every member of the church is a

25  beneficiary of that trust." 119 Cal. at 483. Here, ICFG and the Church are one entity, holding

26  their property for the benefit of the Church and its members. Therefore, none of the additional

27  facts alleged by the City negates any of the elements of standing – as discussed below, ICFG and

28

the individual Churches can show injury in fact, causation, and redressability regardless of who was signing the documents during the purchase and sale of properties.

**B.    The Church can show injury in fact because the City has barred religious assembly on the Church's premises.**

In the context of RLUIPA, zoning restrictions on property use can easily constitute injury in fact. *Midrash Sephardi v. Town of Surfside,* 366 F.3d 1214, 1224 (11th Cir. 2004); *Primera Iglesia Bautista Hispana of Boca Raton v. Broward Co.*, 450 F.3d 1295, 1304 (11th Cir. 2006). Indeed, in *Primera*, the Eleventh Circuit held that, when a church was barred from assembling for religious purposes, it had "plainly suffered an actual injury." 450 F.3d at 1304.

Here, the Church has suffered an actual injury because the City's denial of the Church's CUP and rezoning applications has barred religious assembly on the Church's Catalina property. The Church is making payments of $ 33,209.88 every month, for a facility that the Church has been barred from using due to the City's actions. Dave Mortara Decl. ¶¶ 3-4. The Church is also suffering non-economic losses to its core functions. Ex. 8, Decl. of Faith, XXI. In *Vil. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977), the Supreme Court held that a nonprofit real estate developer had standing to challenge the Village's refusal of an application for a variance. The village's zoning scheme limited plaintiff's land to single-family housing. *Id.* at 257. Although multi-family housing was available elsewhere in the village, the high court held that a non-profit corporation, committed to building racially integrated low-income multi-family housing, could show injury in fact. This was because its interest, although not economically motivated, was "not a mere abstract concern," and the project provided the "'essential dimension of specificity' that informs judicial decisionmaking." *Id.* In like manner, the Church's interest is to provide a suitable area for congregational worship. G. Mortara Decl. in support of Pl.'s Motion for Prelim. Inj. ¶ 40 (Previously submitted to the Court as Doc. 13 on 07.30.2007)

**C.    ICFG and the Church have standing as the owner and user of the premises.**

The Church and ICFG also have standing in that ICFG owns the property subject to the challenged zoning restrictions, and the Church is both the intended user of the property and the

same entity as ICFG.  Ex. 6, Clark Dep. 52:3.  In the specific context of land use regulations,

Justice Stevens has declared, "If a regulating body fails to adhere to its procedural or substantive

obligations in developing landuse [sic] restrictions, anyone adversely impacted by the restrictions

may challenge their validity in an injunctive action." *Palazzolo v. Rhode Island*, 533 U.S. 606,

638 (2001) (Stevens, J., concurring in part and dissenting in part).  As a whole, the Supreme Court

has refused to split hairs over nuances of ownership for purposes of standing, noting recently:

> [F]ederal courts routinely entertain suits which will result in relief for parties that
> are not themselves directly bringing suit.  Trustees bring suits to benefit their trusts;
> guardians ad litem bring suits to benefit their wards; receivers bring suit to benefit
> their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates;
> executors bring suit to benefit testator estates; and so forth.

*Sprint Communications Co., L.P. v. APCC Services, Inc.* --- U.S. ---, 128 S. Ct. 2531,
2543 (2008).

In similar contexts, the Ninth Circuit has applied *Lujan*'s Article III standing inquiry less-

than-stringently when property owners are involved.  For instance, in *Tyler v. Cuomo*, 236 F.3d

1124 (9th Cir. 2004), the Court had little difficulty finding that property owners had pled injury in

fact, causation and redressability when the alleged impact on their properties was far less than the

rezoning denial in the present case.  The impact in *Tyler* was, in fact, that a proposed housing

project would "adversely affect the Historic Properties by diminishing the integrity of the Historic

Properties' location, design, setting, and feeling and by introducing atmospheric elements which

are out of scale." *Id.* at 1132.  The undisputable ownership, possessory, and usage interests of

ICFG and the Church in the present case far exceed the interests at stake in *Tyler*.

Even more specifically, other state courts have held that an owner of land who may be

substantially affected and materially depreciated by a decision of a board of adjustment is an

aggrieved person, and therefore entitled to seek judicial review of the decision.  *Bossert Corp. v.

City of Norwalk*, 157 Conn. 279, 253 A.2d 39 (1968); *Noyes v. City of Bangor*, 540 A.2d 1110

(Me. 1988).

Here, ICFG holds title to the Catalina property, and the City's actions have directly caused

injuries on ICFG.  Furthermore, the City has inflicted pecuniary loss upon the Church by barring

1   use as a religious assembly on the Catalina property.  Since completing the purchase of the

2   Catalina property on January 2, 2007, the Church has made monthly mortgage payments of

3   $33,809.88 each—over $1,100 a day—without being able to use its property.  D. Mortara Decl. ¶

4   4.  ICFG, as the title-holder of the Catalina property, and the Church, as the entity holding

5   possessory and usage interests in the Catalina property, have more than adequate standing to

6   challenge the zoning restrictions and the actions of the City, which have restricted the Church's

7   use of its property.

8       **D.**    **The Church and ICFG can show causal relationship and redressability.**

9       There is a causal relationship between Church's injuries and the City's conduct.  Absent

10  the denial of the Church's rezoning and CUP applications, the Church and its members would be

11  allowed to assemble for congregational worship on the Church's property.

12      In *Primera*, a city had barred a church from assembling on the church property.  The court

13  held "the Church's injury is fairly and easily traceable to the zoning ordinance because applying

14  the ordinance to the Church directly and expressly limits Primera's use of the property for religious

15  worship services.  Finally, the injury would be redressed by a ruling in Primera's favor: the church

16  would be free to use the Property for religious services."  450 F. Supp. at 1304 (internal citations

17  omitted).  In view of the City's prohibitions on the use of the Catalina property, the analysis

18  relative to the Church is the same in the present case.  Since the Church and ICFG can establish all

19  elements of standing, the Court should enter summary adjudication in favor of Plaintiff as to the

20  second defense.

21  **III.**    **Third Affirmative Defense – Failure to State an Actual Claim and Controversy.**

22      A controlling factor in the definition of such a case or controversy is standing.  *ASARCO*

23  *Inc. v. Kadish,* 490 U.S. 605, 613 (1989).  In this case, the Church and ICFG can show that there is

24  an actual case or controversy alleged in the FAC, while the Defendants cannot point to any facts to

25  the contrary.  In *ASARCO*, the Supreme Court, finding an actual case or controversy, noted:

26      These parties remain adverse, and 'valuable legal rights ... will be directly affected to
    a specific and substantial degree by the decision of the question of law' … We are not

27      confronted, certainly, with parties 'attempting to secure an abstract determination by
    the Court of the validity of a statute ... or a decision advising what the law would be

28

on an uncertain or hypothetical state of facts, …' The proceedings here were judicial in nature, and resulted in a final judgment altering tangible legal rights. This proceeding constitutes a cognizable case or controversy.

490 U.S. at 619. In the present case, it is hardly disputed that the City's positions and decisions as to ICFG and the Church remain adverse, and "valuable legal rights will be directly affected to a specific and substantial degree by the decision." *Id.*

The valuable legal right to be determined in this case is the Church's freedom to exercise its religion on its property. The instant proceedings are judicial in nature and will result in a final judgment altering tangible legal rights, since a resolution in favor of the Church will enable it to practice its religion on its property. Therefore, based on the reasoning in *ARASCO*, the matter before this Court constitutes a cognizable case or controversy.

Defendant cannot point to any facts that show lack of an actual case or controversy. In response to Interrogatory No. 13, Defendant suggests that the facts supporting the third affirmative defense are the same as the facts supporting the second affirmative defense. Ex. 3, Def. Resp. to Pl.'s Interrog. at 8. As noted before, these facts do not support the City's affirmative defenses because they are irrelevant to the affirmative defenses which they are purported to support. Since the Church and ICFG can show that the FAC adequately alleges an actual case or controversy and Defendant has failed to point to any facts to the contrary, the Court should reject Defendant's third affirmative defense.

## IV.     Fourth and Fifth Affirmative Defenses – Causation and Mitigation.

Defendant's fourth and fifth defenses allege lack of causation and the Church's failure to mitigate due to the Church's own actions. In response to Interrogatory No. 13, Defendant alleges that the Church was the cause of its own damages because it purchased the property prior to having received assurances that the City would grant a CUP or rezone the property. Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 9. To the extent that Defendant suggests that the Church would have had to wait for approval of their rezoning or CUP applications or show knowledge that such applications would be granted before purchasing the property in order to establish substantial burden, Defendant misconstrues Free Exercise jurisprudence and the standard for showing

1   substantial burden under RLUIPA.

2       A zoning restriction that substantially burdens the religious exercise of a Church runs afoul

3   of RLUIPA and the First Amendment unless this restriction is the least restrictive means of

4   achieving a compelling state interest. 42 U.S.C.A. 2000cc, et seq.; *Sts. Constantine and Helen*

5   *Greek Orthodox Church, Inc. v. City of New Berlin*, 396 F. 3d 895, 901 (7th Cir. 2005).  In *Sts.*

6   *Constantine*, Judge Posner noted that "[t]he Church could have searched around for other parcels

7   of land … or it could have continued filing applications with the City, but in either case there

8   would have been delay, uncertainty, and expense. That the burden would not be insuperable would

9   not make it insubstantial." *Id.*

10      Judge Posner analogized to *Sherbert v. Verner,* 374 U.S. 398 (1963), where the Supreme

11  Court had held that application of eligibility provisions of the unemployment compensation statute

12  that would result in denial of benefits to a claimant who, because of her religious belief in Sabbath

13  refused to work on Saturday, violated the First Amendment.  Judge Posner noted that the plaintiff

14  in *Sherbert* could have found an appropriate job, had she kept looking rather than giving up after

15  her third application for Saturday-less work was turned down.  But the Supreme Court held that

16  the fact that a longer search would probably have turned up something didn't make the denial of

17  unemployment benefits to her an insubstantial burden on the exercise of her religion.  *Sts.*

18  *Constantine,* 396 F. 3d at 901.

19      Similar to *Sts. Constantine*, where the case was amenable to summary judgment because

20  the facts were "not in dispute… [and] the only possible uncertainty was legal," 396 F. 3d at 901, in

21  the case at hand, Defendant's contention that the Church must show knowledge or likelihood that

22  its permit applications would be granted in order to establish substantial burden is a legal question,

23  amenable to disposal by summary judgment.  Since the Church can establish substantial burden in

24  the face of the facts alleged by the City, the fourth and fifth affirmative defenses by the City are

25  without legal or factual merit and the Court should summarily dismiss these defenses.

26      In addition, the mitigation doctrine requires an injured party to exercise reasonable care to

27  minimize his damages *only if* damages can be avoided with "only slight expense and reasonable

28

1  effort." *City of San Antonio v. Guidry*, 801 S.W.2d 142, 151 (Tex. App. 1990) (Emphasis added).

2  The party who caused the loss bears the burden of proving lack of diligence on the part of the

3  plaintiff, and the amount by which the damages were increased by the failure to mitigate. *Id.*

4  Here, the City has failed to allege any facts showing that mitigation was possible by only slight

5  and reasonable effort.  As the City is aware, the Church has subsequently rented part of the

6  Catalina property for storage space.  However, the Church can hardly prevent the extent of the

7  damages that it suffers by being barred from religious practice at the Catalina cite.

8        Since the Church can establish its claim without having to show knowledge or likelihood

9  of success on its CUP or rezoning applications and the City is unable to point to facts that negate

10  any of the elements of the Church's case, the Court should grant the Church's motion for partial

11  summary adjudication as to Defendant's fourth and fifth affirmative defenses.

12  **V.     Sixth Affirmative Defense – Justiciability and Ripeness.**

13        Defendant's sixth affirmative defense was speculative when it was raised, and it has now

14  been proved specious by the absence of any supporting evidence.  The City has admitted that

15  "except for the issues of standing stated previously, the FAC states justiceable claims concerning

16  the Church's proposed use of the Catalina Street Property."  Ex. 3, Def.'s Resp. to Pl.'s Interrog.

17  at 9.  Defendant's claims regarding standing were addressed earlier in this brief.

18        Defendants further allege that "this defense is asserted against any additional or alternate

19  claims that might be asserted in the course of the litigation …"  Ex. 3, Def.'s Resp. to Pl.'s

20  Interrog. at 9.  Thus, this defense, similar to the eleventh affirmative defense, does not relate to the

21  subject matters discussed in the FAC.  Therefore, under Federal Rules of Civil Procedure 8(c) and

22  11, Defendant's sixth defense is improper.  This issue is fully discussed, in the context of the

23  eleventh affirmative defense, below.  Since the sixth affirmative defense is improper and

24  repetitious of previous insufficient defenses, the Court should grant summary adjudication as to

25  this defense.

26  **VI.    Seventh Affirmative Defense – Laches.**

27        The elements of the equitable defense of laches are "(1) lack of diligence by the party

28

against whom the defense is asserted, and (2) prejudice to the party asserting the defense."

*Costello v. United States*, 365 U.S. 265, 282 (1961).  In response to Interrogatory No. 13,

Defendant asserts that the defense of laches is raised "in anticipation of possible delay in

prosecution of this action which may give rise to the defense of laches."  Ex. 3, Def.'s Resp. to

Pl.'s Interrog. at 10.  Defendant's seventh defense does not relate to subject matters raised in the

FAC and therefore, is improper under the FRCP 8(c) and 11, as discussed in the context of

Defendant's eleventh affirmative defense, below.  Since Defendant cannot point to any facts

alleging lack of diligence on the part of the Church or prejudice to the City, the Court should grant

the Church's request for partial summary adjudication on the seventh affirmative defense.

## VII.    Eighth Affirmative Defense – Estoppel.

Defendant's eighth affirmative defense has a faint aura of plausibility—until it is compared

with the actual elements of estoppel.  More than half a century ago, the Ninth Circuit articulated

estoppel as follows:

> The essential elements of an 'equitable estoppel' are: First, there must be a false
> representation or concealment of facts. Second, it must have been made with
> knowledge, actual or constructive, of the real facts. Third, the party to whom it was
> made must have been without knowledge, or the means of knowledge, of the real
> facts. Fourth, it must have been made with the intention that it should be acted
> upon. Fifth, the party to whom it was made must have relied on or acted upon it to
> his prejudice.

*Cedar Creek Oil & Gas Co. v. Fidelity Gas Co.*, 249 F.2d 277, 281 (9th Cir. 1957).  The burden of

proving each of the five elements of equitable estoppel by clear, convincing and satisfactory

evidence falls upon the party asserting the defense.  *Id.*   This, the City is unable to do.

Defendant's eighth affirmative defense, similar to its sixth, seventh, eleventh, fourteenth,

and fifteenth affirmative defenses, do not provide Plaintiff with fair notice of the grounds for the

defenses.  The key to determining the sufficiency of pleading an affirmative defense is whether it

gives plaintiff fair notice of the defense.  *Wyshak v. City Nat. Bank*, 607 F. 2d 824, 827 (9th Cir.

1979).  In *Qarbon.com Inc. v. eHelp Corp.*, this district court dismissed defendant's affirmative

defense of waiver, estoppel, and unclean hands, for lack of fair notice because "[a] reference to a

1  doctrine, like a reference to statutory provisions, is insufficient notice." 315 F. Supp. 2d 1046,

2  1049 (N.D. Cal. 2004). Here, Defendant has failed to specify what form of estoppel (i.e legal or

3  equitable) or waiver (i.e. express or implied) is alleged. Furthermore, similar to *Qarbon.com*,

4  where the court dismissed defendant's affirmative defenses in part because defendant did not

5  "allege the factual basis for its affirmative defenses," here, the City has failed to allege facts

6  supporting their sixth, seventh, eight, eleventh, fourteenth, and fifteenth affirmative defenses. *Id.*

7  at 1050. Therefore, the Court should grant the Church's motion for partial summary adjudication

8  on these defenses because Defendant has not provided the Church with fair notice.

9      Defendant cannot show any evidence establishing the elements of their estoppel claim. In

10  response to Interrogatory No. 13, Defendant fails to point to facts proving that the Church made

11  false statements or concealed facts—the first element of estoppel. *Id.* Second, the City fails to

12  show that the Church made a false statement with knowledge, actual or constructive, of the real

13  facts. *Id.* Third, the City does not show that it was without knowledge of the true facts or means

14  to gain such knowledge. Fourth, the City cannot show any facts proving, by clear, convincing,

15  and satisfactory evidence, that the Church made false statements to the City with intent to mislead

16  the City. Finally, the City cannot prove that it detrimentally relied on any false statements by the

17  Church. *Id.*; *Lyng v. Payne*, 476 U.S. 926, 935 (1986) ("an essential element of any estoppel is

18  detrimental reliance on the adverse parties misrepresentations.") Furthermore, the City must show

19  that the Church should have known that the City would rely on the alleged misrepresentations.

20  *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 (1984). In

21  response to Interrogatory No. 13, Defendant has not pointed to any facts supporting their claim.

22  Therefore, Defendant's defense of estoppel rings hollow.

23      Since Defendant is unable to point to facts establishing the elements of estoppel by "clear,

24  convincing, and satisfactory evidence," the Court should grant ICFG and the Church partial

25  summary adjudication as to the eighth affirmative defense.

26  **VIII.   Ninth Affirmative Defense – Waiver.**

27      In light of the general judicial presumption against waiver of substantial and fundamental

28

1  rights, Defendant's ninth affirmative defense is wholly insufficient. "A waiver is defined as the

2  intentional relinquishment of a known right." *Stanolind Oil & Gas Co. v. Guertzgen*, 100 F. 2d

3  299, 302 (9th Cir. 1938). Defendant bears the ultimate burden of proving the elements of waiver

4  "by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful

5  cases will be decided against a waiver.'" *Monteleone v. Allstate Ins. Co.*, 51 Cal. App. 4th 509,

6  517 (1996).

7       First, as discussed in the context of the eighth affirmative defense, Defendant's defense of

8  waiver is but an ambiguous reference to a doctrine that does not provide Plaintiff with fair notice.

9       In response to Interrogatory No. 13, the City asserts that this defense is raised "in

10  anticipation of potential actions by plaintiffs which may amount to a waiver of all or some claims

11  asserted in the FAC." Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 10. However, "to constitute an

12  implied waiver of substantial rights, the conduct relied upon must be clear, decisive and

13  unequivocal showing a purpose to waive the legal rights involved before such conduct constitutes

14  a waiver." *U.S. v. Chichester*, 312 F. 2d 275, 283 (9th Cir. 1963). Here, Defendant is unable to

15  point to a "clear, decisive and unequivocal" conduct by the Church "showing a purpose to waive

16  the legal rights involved." Therefore, the claim of implied waiver is legally and factually without

17  merit.

18       "Courts indulge every reasonable presumption *against* waiver of fundamental

19  constitutional rights and do not presume acquiescence in the loss of fundamental rights. Therefore,

20  presuming waiver from a silent record is impermissible." *U.S. v. Gonzalez-Flores*, 418 F. 3d

21  1093, 1102 (9th Cir. 2005) citing *United States v. Hamilton,* 391 F.3d 1066, 1071 (9th Cir. 2004)

22  (Italics added). There is thus a strong presumption against defendant's ninth affirmative defense.

23  In that the record is devoid of any evidence that the Church has waived any of its rights, the Court

24  should reject defendant's ninth affirmative defense as legally and factually insufficient.

25  **IX.    Tenth Affirmative Defense – Unclean Hands.**

26       As with the defenses of laches, waiver, and lack of justiciability, discussed previously,

27  Defendant, in response to Plaintiff's Interrogatory No. 13, has admitted that "the City has not

28

1   presently identified any facts supporting this affirmative defense." Ex. 3, Def.'s Resp. to Pl.'s

2   Interrog. at 10. Similar to the eighth affirmative defense, the tenth affirmative defense does not

3   provide Plaintiff with fair notice because the City has failed to allege supporting facts. Since

4   Defendant is unable to support its claim by any facts—and discovery is now closed—summary

5   adjudication is appropriate to dispose of this meritless defense.

6   **X.     Eleventh Affirmative Defense – Failure to Exhaust Administrative Remedies.**

7           The Court should grant summary adjudication as to Defendant's eleventh affirmative

8   defense because this defense is raised improperly and Defendant has not supported it with facts or

9   legal authority.

10          In response to Plaintiff's Interrogatory No. 13, Defendant conceded that "at the present

11  time this defense is not applicable to the claims actually asserted in the FAC." Ex. 3, Def.'s Resp.

12  to Pl.'s Interrog. at 11. Under the Federal Rules of Civil Procedure, "it is improper to plead

13  affirmative defenses that do not relate to the subject matter of the claim." FRCP 8(c), 11; *Ganley*

14  *v. County of San Mateo* 2007 WL 902551, 3 (N.D. Cal. March 22, 2007). The sufficiency of an

15  affirmative defense depends on the claims that have actually been pled. Should Plaintiff amend

16  her complaint to state additional claims, Defendant will be permitted to amend the answer as

17  justice requires to address those claims with appropriate defenses. FRCP 15(a); *Ganley v. County*

18  *of San Mateo* 2007 WL 902551, *3. "By including affirmative defenses which are neither

19  warranted by existing law nor supported by evidence, counsel may find himself subject to

20  sanctions under Rule 11." *See* FRCP 11(b), (c); *Ganley v. County of San Mateo* 2007 WL 902551,

21  *3. In *Ganley*, Defendant had explained that the affirmative defenses were pleaded "in

22  anticipation of additional claims that have not yet been made, so as to not waive the defenses if

23  those claims are presented later." *Ganley v. County of San Mateo* 2007 WL 902551, *3. Judge

24  Henderson ordered that such affirmative defenses are insufficient and possibly subject to Rule 11

25  sanctions. Similarly, in the case at hand, Defendants contend that the eleventh affirmative defense

26  "is reserved for any additional or alternate claims that plaintiffs may make based on additional or

27  alternate fact not currently alleged in the FAC." Def.'s Resp. to Pl.'s Interrog. at 11. Since the

28

1    eleventh affirmative defense is raised improperly, the Court should grant the Church's motion for

2    partial summary adjudication on this defense.

3

4    **XI.    Twelfth and Thirteenth Affirmative Defenses – Constitutionality of RLUIPA and a Ruling in Favor of ICFG and the Church.**

5            Defendant's twelfth and thirteenth affirmative defenses are not only factually meritless, but

6    also contradicted by controlling precedent.  RLUIPA has been upheld against constitutional

7    challenges in the Ninth Circuit.  *See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 456

8    F.3d 978 (9th Cir. 2006).  The twelfth and thirteenth defenses challenge the validity of a favorable

9    ruling under RLUIPA on Establishment Clause and separation of powers grounds.  Both these

10   challenges have been raised and rejected by courts.  *Id*;  *Midrash Sephardi, Inc. v. Town of*

11   *Surfside*, 366 F.3d at 1240.  Since the constitutionality of RLUIPA is a question of law to be

12   decided by the Court, resolving this issue by summary adjudication is appropriate.

13           In *Guru Nanak*, the Ninth Circuit addressed the constitutionality of RLUIPA under the

14   separation of powers doctrine.  *Id.* at 993.  The Ninth Circuit held a separation of powers challenge

15   against RLUIPA cannot stand and that "RLUIPA is constitutional because it addresses

16   documented, unconstitutional government actions in a proportional manner."  *Id.*  Therefore, to the

17   extent that Defendant suggests that RLUIPA or a favorable ruling thereunder violates the

18   separation of powers doctrine, such a contention is contrary to this Circuit's precedents.

19           Every federal appellate court which has reviewed the matter has upheld the

20   constitutionality of RLUIPA against Establishment Clause and separation of powers challenges.

21   Defendant, too, admits that the weight of authority counsels against its position.  Ex. 3, Def.'s

22   Resp. to Pl.'s Interrog. at 6 ("the City acknowledges that RLUIPA has been found constitutional

23   on its face as against certain constitutional challenges").

24           As the court in *U.S. v. Maui County* noted, "to date, four Circuits--including the Ninth--

25   have issued opinions on whether RLUIPA violates the Establishment Clause by impermissibly

26   advancing religion."  298 F. Supp. 2d 1010, 1014 (D.Hawaii 2003).  The Fourth, Seventh, and

27   Ninth Circuits have *upheld* RLUIPA's constitutionality against Establishment Clause challenges.

28

1   *Id.* (citing *Madison v. Riter,* 355 F.3d 310 (4th Cir. 2003); *Charles v. Verhagen,* 348 F.3d 601

2   (7th Cir. 2003); *Mayweathers v. Newland,* 314 F.3d 1062, 1068-69 (9th Cir. 2002), *cert. denied,*

3   540 U.S. 815 (2003)).  Recognizing that these cases were decided in the prisoner context, the

4   *Maui County* court asserted that "[g]iven the Ninth Circuit law--again, albeit in a prison litigation

5   context--there is little reason to find differently in the land use context."  *U.S. v. Maui County,* 298

6   F. Supp. 2d at 1015.  Therefore, noting that "[t]he Establishment Clause arguments are essentially

7   the same," the *Maui County* court reasoned that "[i]f RLUIPA does not constitute an

8   impermissible advancement of religion for institutionalized persons as against prisons, it would

9   not seem to do so for non-institutionalized persons as against municipalities in land use decisions."

10  *Id.*  The court, consistent "with Ninth Circuit precedent in a prison context," found that "RLUIPA

11  does not violate the Establishment Clause in a land use context."  *Id.*  Pursuant to the logic and

12  reasoning of the court in *Maui County*, Defendant's argument that RLUIPA is unconstitutional

13  under the Establishment clause is in conflict with Ninth Circuit precedent.

14         In addition, such a finding would also be inconsistent with the significant weight of the

15  authority of courts deciding the issue, who have almost unanimously upheld the constitutionality

16  of the land use provisions of RLUIPA against Establishment Clause challenges.  *Westchester Day*

17  *School v. Village of Mamaroneck*, 504 F.3d 338 (2d Cir. 2007) (holding that land use provisions of

18  RLUIPA do not foster an excessive government entanglement with religion);  *Midrash Sephardi,*

19  *Inc. v. Town of Surfside*, 366 F.3d 1214 (holding that the equal-terms provision of RLUIPA did

20  not impermissibly elevate religion in a manner contravening establishment clause).  As the weight

21  of the authority suggests, RLUIPA withstands an Establishment Clause challenge.

22         To the extent that the City suggests the Church is asking for preferential treatment,

23  Defendant fails to cite to any assertion in the FAC or other evidence to support its allegations.  As

24  a reading of the FAC reveals, the Church is asking for equal treatment under the relevant

25  provisions of RLUIPA.  FAC ¶¶ 91-95.

26         Finally, it is important to note that via its twelfth and thirteenth affirmative defenses,

27  Defendant has failed to comply with the proper procedure for challenging the constitutionality of

28

1   RLUIPA, a federal Statute.  Defendant has challenged the constitutionality of RLUIPA, not only

2   in its Answer but also in response to Plaintiff's Request for Admission as to the constitutionality

3   of the statute.[4]  Pursuant to FRCP 5.1 and Local Rule 3-8 defendants are required to file a notice

4   of a constitutional question and serve same on the Attorney General of the United States.  In that

5   the City has failed to comply with Rule 5.1 and Local Rule 3-8, they cannot proceed with the

6   twelfth and thirteenth affirmative defenses and the Court should grant summary adjudication to the

7   Church and ICFG on this issue.

8   **XII.    Fourteenth Affirmative Defense – Statute of Limitations.**

9           Defendant's fourteenth affirmative defense (claims barred by statute of limitations) is

10  meritless and improper because defendant is unable to provide any facts or authority supporting

11  this defense.  In response to Interrogatory No. 13, Defendant admits that "at the present time this

12  defense is not applicable to the claims actually asserted in the FAC."  Ex. 3, Def.'s Resp. to Pl.'s

13  Interrog. at 11.  Defendant asserts that the fourteenth defense is "reserved for any additional or

14  alternate claims that plaintiffs may make based on additional or alternate fact not currently alleged

15  in the FAC."  *Id.*  As discussed above, under FRCP 8(c) and 11, it is improper to plead

16  anticipatory affirmative defenses that do not relate to the subject matter of the claim.  Since the

17  fourteenth affirmative defense does not relate to the subject matters raised in the FAC, this defense

18  is improper.  Therefore, summary adjudication is a proper means of eliminating this defense.

19  **XIII.   Fifteenth Affirmative Defense – Immunity.**

20          Defendant's fifteenth affirmative defense, that "City is immune for legislative and quasi-

21  legislative actions", like Defendant's eleventh and fourteenth affirmative defenses, does not relate

22  to the subject matter of the claims in the FAC.  In response to Plaintiff's Interrogatory No. 13,

23  Defendant asserts that the fifteenth affirmative defense is raised "on behalf of any DOE defendants

24  that may be named by plaintiffs.  The precise facts which justify assertion of the defense cannot be

---

[4] "Please admit that each of the following statements is true: ¶REQUEST 1: The Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. § 2000cc) is constitutional."  Defendant: "Deny."  City's Resp. to Pl.'s Request for Admissions 1 (March 21, 2008).

1    determined until an individual DOE defendant is actually named." Ex. 3, Def.'s Resp. to Pl.'s

2    Interrog. at 11.  However, should the Church amend the FAC to state additional defendants, the

3    City will be permitted to amend the answer as justice requires to address those claims with

4    appropriate defenses." FRCP 15(a); *Ganley v. County of San Mateo* 2007 WL 902551, 3.

5    Therefore, this defense is raised improperly.

6         The doctrine of qualified immunity provides immunity for government officials acting in

7    their official capacity. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).  Here,

8    however, Plaintiff has only named the City of San Leandro as a Defendant.  Because Plaintiff has

9    not named any individual defendants, the doctrine of qualified immunity simply does not apply to

10   this action.  Therefore, the Court should grant summary adjudication as to Defendant's fifteenth

11   defense because it is anticipatory, immaterial, and insufficient as a matter of law with respect to

12   the claims pleaded in the complaint.

13   **XIV.   Sixteenth Affirmative Defense – ICFG lacks capacity to sue.**

14        Defendant's sixteenth affirmative defense lacks legal or factual sufficiency because

15   Defendant is unable to present any legal theory, backed by legal authority or sufficient facts to

16   support this defense.  Rule 17(b) of the Federal Rules of Civil Procedure provides that "the

17   capacity of a corporation to sue or be sued shall be determined by the law under which it was

18   organized." FRCP 17(b).  ICFG is organized under California laws.  ICFG Art. Inc. I-III.  In

19   California "[t]he right to sue and be sued, to maintain and defend actions concerning corporate

20   rights and corporate liabilities, is a power incident to every corporation." *Baines v. Babcock*, 95

21   Cal. 581, 592 (1892); *See also, Curtiss v. Murry*, 26 Cal. 633, 634 (1864) ("one of the powers and

22   capacities, 'necessarily and inseparably incident to every corporation,' is that of suing and being

23   sued by its corporate name"); *Friendly Vill. Cmty. Ass'n v. Silva & Hill Constr. Co.*, 31 Cal. App.

24   3d 220, 223–24 (1973) (since corporation may sue, complaint alleging incorporation shows on its

25   face that corporation has capacity to sue); *Canal Oil Co. v. National Oil Co.*, 19 Cal. App. 2d 524,

26   537 (1937) ("A corporation has inherent right to sue, in all cases which relate to its business or

27   property rights, without the adoption of a resolution specifically authorizing the action to be

28

brought").  Since California corporations have capacity to sue or be sued and ICFG is a

corporation duly organized under California laws, ICFG has capacity to sue or be sued in state or

federal courts pursuant to Rule 17(b).  Therefore, the Court should grant Plaintiff summary

adjudication regarding Defendant's sixteenth defense alleging that ICFG lacks capacity to sue.

Rule 9(a) of the Federal Rules of Civil Procedure requires that in order to raise a party's

capacity to sue or be sued, the party desiring to raise the issue "must do so by a specific denial,

which *must state any supporting facts* that are peculiarly within the party's knowledge."  FRCP

9(a) (emphasis added).  Defendant has failed to state any facts or point to any legal authority that

supports its sixteenth defense.  In response to Interrogatory No. 13, Defendant asserts, "the City is

currently undertaking discovery on facts potentially supporting this affirmative defense.  The facts

are not known at this time."  Ex. 3, Def.'s Resp. to Pl.'s Interrog. at 12.  The Court should grant

summary adjudication as to Defendant's sixteenth defense because California law provides

corporations with capacity to sue or be sued in state or federal courts and the City cannot advance

any viable theory or state facts supporting this defense.

## XV.    Seventeenth Affirmative Defense – Church Improperly Named as Real Party in Interest.

Defendant's seventeenth affirmative defense alleging that the Church was improperly

named "Real Party in Interest" should be summarily rejected because inquiring into this issue

violates the Religion Clauses of the First Amendment, as discussed above.  Moreover,

Defendant's seventeenth defense is legally and factually meritless because ICFG and the Church

are parts of the same entity and the Church was properly designated as real party in interest.

The Federal Rules of Civil Procedure require that "[a]n action shall be prosecuted in the

name of the real party in interest."  Fed. R. Civ. P. 17(a).  Defendant's seventeenth defense does

not challenge the status of ICFG as the real party in interest.  Defendants' allegations are directed

solely at the Church.  In their Response to Plaintiff's Interrogatory No. 13, the City fails to provide

any legal or factual support for the seventeenth affirmative defense.  Ex. 3, Def.'s Resp. to Pl.'s

Interrog. at 12.  Defendant merely asserts that "assuming it has standing at all, the Church must be

1   a plaintiff in the action to assert any claim for affirmative relief." *Id.*

2       Defendant's seventeenth affirmative defense is legally and factually insufficient for several

3   reasons.  First, as noted before, ICFG and the Church are components of one entity.  Ex. 6, Clark

4   Dep. 52:3.  Since the Church and ICFG are the same entity, it follows that ICFG can raise all

5   claims that may also be raised by the Church and vice versa.  Therefore, the City's seventeenth

6   affirmative defense is meritless because all claims in this case are properly raised by ICFG.

7       To the extent that this affirmative defense requires further expansion on Defendant's

8   inquiry into the relationship between ICFG and the Church, any factual allegations that Defendant

9   may assert in support of this affirmative defense—although none have been alleged to date—are

10  inadmissible for lack of jurisdiction pursuant to the Religion Clauses of the First Amendment.  To

11  the extent that any facts that Defendant may allege are directed at ascertaining the internal

12  governance procedures of ICFG and the relationship between ICFG and the Church, inquiry into

13  such facts is outside the jurisdiction of the Court and in violation of the Church's immunity

14  against discovery of its religious doctrines.  *United Methodist Church*, 571 A.2d at 792-93.

15      Finally, under Rule 17(a), a party to a contract for the benefit of another person may sue in

16  his own name.  FRCP 17(a); Wright, Miller & Kane, 6A *Fed. Prac. & Pro.* at § 1543.  However,

17  if the applicable substantive law gives the third-party beneficiary an enforceable right, he also will

18  be a real party in interest and may bring an action on the contract on his own.  *Id.*; *Massachusetts*

19  *Bonding & Ins. Co. v. Feutz*, 182 F.2d 752, 757 (8th Cir. 1950) ("it is well settled that a third party

20  for whose benefit a contract is made may maintain an action on it in his own name.").  Here, ICFG

21  and the Church are the same entity.  Therefore, both ICFG and the Church are proper parties to

22  bring and maintain this action.

23      To the extent that Defendant's allegations are directed at forcing a joinder of the Church to

24  this action, the proper Rules for that determination are Rules 19 or 20, not Rule 17.  Defendant

25  asserts, "assuming it has standing at all, the Church must be a plaintiff in the action to assert any

26  claim for affirmative relief."  Def.'s Resp. to Pl.'s Interrog. at 12.  Thus, the City is seeking to join

27  the Church to this action.  "[T]he question of who should or may be joined in the action must be

28

1  determined under Rule 19 and Rule 20 rather than Rule 17(a)." Wright, Miller & Kane, *Id.*, at §

2  1543; *HB General Corp. v. Manchester Partners, L.P.*, 95 F. 3d 1185, 1196 (3rd Cir. 1996). Rule

3  17 does not require the joinder of the Church in order for ICFG to go forward with its claims.

4  Therefore, the Court should grant the Church's motion for summary judgment as to the City's

5  seventeenth affirmative defense.

6                                    <u>CONCLUSION</u>

7         Discovery has been closed. Since all of Defendant's affirmative defenses are factually and

8  legally without merit, based upon the foregoing discussions of facts and law, the Court should

9  grant Plaintiff's motion for Partial Summary Adjudication against Defendant's Affirmative

10  Defenses.

11

12                                    Respectfully submitted,

13

14                          _____/s/_____
                            Kevin T. Snider

15                          Matthew B. McReynolds
                            PACIFIC JUSTICE INSTITUTE

16                          P.O. Box 276600
                            Sacramento, CA 95827-6600

17                          Telephone: (916) 857-6900
                            Facsimile:  (916) 857-6902

18

19                          Peter D. MacDonald
                            LAW OFFICE OF PETER MACDONALD

20                          400 Main Street, Suite 210
                            Pleasanton, CA 94566-7371

21                          Tel. (925) 462-0191
                            Fax. (925) 462-0404

22                          Email: pmacdonald@macdonaldlaw.net

23

24                          Attorneys for Plaintiff and Real Party in Interest,
                            International Church of Foursquare Gospel

25                          and Faith Fellowship Church of Foursquare Gospel

26

27

28