1

Kevin T. Snider, State Bar No. 170988
*Counsel of record*

2

Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE

3

P.O. Box 276600
Sacramento, CA 95827

4

Tel. (916) 857-6900

5

Fax (916) 857-6902
Email: kevinsnider@pacificjustice.org

6

        mattmcreynolds@pacificjustice.org

7

Peter D. MacDonald, State Bar No. 69789

8

LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210

9

Pleasanton, CA 94566-7371
Tel. (925) 462-0191

10

Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

11

12

Attorneys for Plaintiff and Real Party in Interest

13

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

14

15

Case No.: C07-03605 –PJH-JCS

16

INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL,

17

18

        Plaintiff,

**PLAINTIFF AND REAL PARTY IN
INTEREST'S NOTICE OF MOTION FOR
SUMMARY JUDGMENT;
PLAINTIFF AND REAL PARTY IN
INTEREST'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

19

vs.

20

CITY OF SAN LEANDRO, et al.,

21

22

        Defendants.

**(FRCP 56)**

23

FAITH FELLOWSHIP FOURSQUARE
CHURCH,

**Date:**    October 1, 2008
**Time:**    9:00 a.m.
**Ctrm:**    3
**Hon.:**    Phyllis J. Hamilton

24

25

        Real Party in Interest.

First Amended Complaint Filed: Oct. 26, 2007

26

27

28

1

2

## NOTICE OF MOTION

TO EACH PARTY AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 1, 2008, at 9:00 a.m., or as soon thereafter as this matter can be heard in Courtroom 3 of this Court, located at 450 Golden Gate Ave., San Francisco, CA, 94102, Plaintiff, International Church of the Foursquare Gospel and Real Party in Interest, Faith Fellowship Foursquare Church, by and through their counsel, move for an order granting summary judgment.

This motion, filed pursuant to Federal Rule of Civil Procedure 56, is based on this Notice of Motion; the Plaintiff and Real Party in Interest's Memorandum of Points and Authorities in Support of this Motion, set forth below; the Declarations of Kevin T. Snider, Gary Mortara and Dave Mortara, filed herewith; the Exhibits filed herewith; and all the papers, records, exhibits and documents on file herein, and evidence, oral and documentary, which has, or may be submitted on the hearing on these matters.

The relief sought is summary judgment as to the causes of action in the First Amended Complaint filed October 26, 2007.

  _/S/ Kevin Snider_____
Kevin T. Snider
Matthew B. McReynolds
Peter D. MacDonald
*Attorneys for Plaintiff and*
*Real Party in Interest*

---

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

i

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**TABLE OF CONTENTS**

3

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

4

ISSUES PRESENTED FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

SUMMARY OF THE FACTS AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6

7

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

8

   I.  Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

9

   II.  The City's denial of Religious Assembly Use at the Catalina property violates
10
       RLUIPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

11

      A. The City's actions violate RLUIPA's "Equal Terms" provision. . . . . . . . . . . . 6
          (i)  The City's application of eight criteria to exclude the Church is
12
             unprecedented  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
          (ii) The City's allowance of entertainment and recreational assembly uses—
13
             but not religious assembly—directly violates the specific mandate of
14
             RLUIPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          (iii)The City's imposition of a hazardous materials burden on the Church is
15
             inexplicable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16

      B.  The City's actions substantially burden the Church. . . . . . . . . . . . . . . . . . .
17
          (i)      The City has fully and flatly denied the Church's rezoning and CUP
               applications. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
18
          (ii)     The Church's core functions are being inhibited by the inadequate
               facility in which the City has forced it to remain**.**  . . . . . . . . . . . .11

19

      C.  The City's actions violate RLUIPA's "Total Exclusion" provision. . . . . . . . . . 14
20

21
      D.   The City's proffered interests are woefully inadequate to justify its
        prima facie RLUIPA violation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
22
          (i)     The City's actions cannot survive strict scrutiny. . . . . . . . . . . . .14
          (ii)     The City cannot demonstrate a compelling state interest. . . . . . . . .15
23
               *(a)  Preservation of sufficient land and facilities to maintain the*
                   *City's industrial base is not a compelling state interest.* . . . . 16
24
               *(b)  Maintaining consistency with and implementing the City's*
                   *General Plan, does not rise to the level of a compelling state*
25
                   *interest.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
               *(c)  Avoidance of conflict with neighboring industrial uses is not a*
26
                   *compelling state interest.*  . . . . . . . . . . . . . . . . . . . . . . . . 17
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(iii)    Even assuming, *arguendo*, that the City's interest is compelling, the means taken to achieve this interest are not narrowly tailored. . . . 18

III.    The City's denial of Religious Assembly Use at the Catalina property violates the First and Fourteenth Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

A.  Free Exercise of Religion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

B.  Freedom of Speech. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C.  Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

D.  Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.  Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

1

## TABLE OF AUTHORITIES

2

**Federal Cases**

3

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*

4      508 U.S. 520, 533 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 20

5

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency,*

6      218 F.Supp.2d 1203 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

7

*Devereaux v. Abbey,*

8      263 F.3d 1070 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

*Employment Div., Dept. of Human Resources v. Smith,*

     494 U.S. 872 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

10

11

*Grace Church of North County v. City of San Diego,*

     2008 WL 2025367 (S.D.Cal. May 9, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 15

12

13

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,*

     546 U.S. 418 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15-16

14

15

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*

     456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16-17

16

17

*Open Homes Fellowship, Inc. v. Orange County, Fla.*

     325 F.Supp.2d 1349 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

18

19

*Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla.,*

     430 F. Supp. 2d 1296 (S.D. Fla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

20

*Lingle v. Chevron U.S.A. Inc.*

21      544 U.S. 528, 542 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22

*Midrash Sephardi, Inc. v. Town of Surfside,*

23      366 F.3d 1214 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8-9, 18

24

*San Jose Christian College v. City of Morgan Hill,*

25      360 F.3d 1024 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 19-20

26

*Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin,*

     396 F.3d 895 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

27

28

*Thomas v. Collins,*
        323 U.S. 516 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove,*
        460 F. Supp. 2d 1165 (C.D. Cal 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-6, 9, 13, 17

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*
        425 U.S. 748 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

*Village of Euclid, Ohio v. Ambler Realty Co.*
        272 U.S. 365 (1926). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES AND RULES**

        Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        42 U.S.C. § 2000 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

        42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 20-21

**OTHER SOURCES**

        146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) . . . . . . . . . . . . . . . .5, 8, 13-14, 17-18

        H. Rep. 106-219, 106th Cong., 1st Sess. 19 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . .8

## ISSUES PRESENTED FOR SUMMARY JUDGMENT

Does the City's creation and application of eight land use criteria exclusively to the Church violate the "equal terms" provision of 42 U.S.C.A. § 2000cc (RLUIPA)?

Does the City's imposition of a hazardous materials burden exclusively on the Church violate RLUIPA's "equal terms" provision?

Does the City's curtailment of the Church's ministry and outreach efforts create a "substantial burden" under RLUIPA when there are no other suitable properties for the Church in the City?

Does the City's allowance of commercial entertainment and recreational assembly use at a given location violate RLUIPA's "equal terms" when religious assembly use is prohibited at the same location?

Does the City's denial of religious assembly use at the Catalina property violate the First and Fourteenth Amendments?

Do the City's stated justifications of preserving its industrial base, maintaining consistency with its general plan, and avoiding conflicts with neighboring uses rise to the level of compelling interests under RLUIPA?

## SUMMARY OF THE FACTS AND ARGUMENT

Faith Fellowship Foursquare Church ("Church") is a thriving church family experiencing sustained growth in numbers and community impact. The Church revolves around three core faith-based principles: heartfelt evangelism, relevant discipleship and compassionate outreach.

Based on these principles, the Church welcomes approximately 1,700 attendees each Sunday in three worship services.  G. Mortara Decl. ¶18.[1]

As it now stands, a church sanctuary designed for 650-700 people is visited every Sunday by more than twice that number of congregants.  *Id.*, ¶¶ 3, 18.   The Church has arranged its three Sunday service times for optimal use of its 154-space parking lot, D. Mortara Depo. 21:19-25, 26:8-10.[2]  Yet, as the lot fills up quickly, worshipers have no choice but to attempt parallel parking on Manor Boulevard or parking along side streets, stopping traffic in the neighborhood and prompting weekly complaints to the Church. *Id.*, 23:4-13, 27:25—28:8.  Even worse, the lack of parking dissuades many would-be worshipers from coming to the Church.  G. Mortara Decl. ¶¶ 5, 25.  Since the Church has reached the full capacity of its current property, it is no longer experiencing the growth in attendance which has characterized its history.  *Id.* at ¶ 18.

The Church assiduously searched for a solution and found one on Catalina Street ("Catalina") in San Leandro.  The new facility can accommodate over 1,000 people in the sanctuary and an additional 500 in other activities, such as Sunday school for youth and adult Bible studies, per service.  Ample parking surrounds the new location, as well, with more on-site parking and an estimated 400 parking spaces available through agreements with neighboring uses that do not operate on the weekends.  D. Mortara Depo. 199:19-25.[3]  The Catalina property enables Church members to more fully follow their sincerely held beliefs of proclaiming the Gospel, providing instruction, and helping the poor.  There are no other available properties within the AU Overlay that the Church can use.  Bullok Depo. 229:6-11.[4]

---

[1] The cited Declarations are filed concurrently in support of this Motion for Summary Judgment, unless expressly otherwise noted.
[2] K. Snider Decl., at Exh. 9.
[3] K. Snider Decl., at Exh. 9.
[4] K. Snider Decl., at Exh. 1.

Because the Catalina site was zoned for commercial use, the Church representatives met with City officials to discuss use of the property for religious activities. These officials then advised the Church to apply for rezoning of the property from Industrial Park (IP) to Industrial Limited (IL).[5] G. Mortara Decl. ¶ 7.

Instead of a forthright processing of the application, the City began an eleven-month course of action to create an assembly use (AU) overlay district. The City developed eight criteria which, when applied, designated 196 properties for assembly use.[6] City Staff Report (4/12/07).[7] City officials cannot identify a single other applicant for assembly use which has been rejected based on these eight criteria Jermanis Depo. 46:22-24. The Catalina property is conspicuously absent from the AU Overlay. Ct. Doc. 31-5.

In addition to the eight criteria, the City based its exclusion of the Church from the AU Overlay—and concomitant denial of its rezoning request—on the Catalina property's proximity of other uses which have filed a hazardous materials business plan. City Staff Report, *Id.*, pp. 5-6.[8] The City can identify no other applicant for assembly use which has had such a requirement placed on it. City's Response to Special Interrogatory No. 5,[9] D. Pollart Depo, pp. 106-107.[10] Indeed, of the 196 properties included in the newly created assembly overlay district, all of them are located within ¼ quarter mile of a business which has a hazardous materials business plan.

---

[5] Industrial Light is an area which generally allows light manufacturing. Industrial Park is a landscaped area used for high technology, research and development, and offices. (Ex. A(q)(3), p. 2).
[6] D. Pollart Decl., ¶¶ 6-8 previously filed with the Court on Aug. 14, 2007. (Court Document 50). For sake of clarity and ease of reference, exhibits previously filed with the Court are identified by their Court Document ("Ct Doc") number.
[7] K. Snider Decl., at Exh. 5, pg. 4.
[8] There are eight entities which have filed a hazardous materials business plan within 500 feet of the property purchased by the Church and an additional 13 businesses between 500 feet and ¼ quarter mile with such a plan. City Staff Report, *Id.*, pp. 5-6.
[9] K. Snider Decl., Exhs. 7-8.
[10] K. Snider Decl., Exh. 4.

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

3

Further, there are currently numerous assembly uses, including City Hall and the Church's current site where it worships, which are within ¼ quarter mile of a hazardous materials business plan.

As an alternative to a change in zoning, the Church submitted an application for a conditional use permit (CUP) within the current zone. The basis for this was that commercial recreation and entertainment activity, both assembly uses, are allowed within the industrial areas via a CUP. Following the denial of the Church's preliminary injunction motion, the City Planning Commission unequivocally denied the Church a CUP. Minutes of 2/17/08 San Leandro City Council Meeting, pg. 4.[11] The City's actions have placed the Church in an impossible situation. Every week prompts more complaints from attendees and neighbors about its overcrowded current facility (D. Mortara Depo, 27-28, 32) and more lost opportunities to evangelize potential visitors who turn away due to the lack of space. At the same time, the City will not allow the Church to use the one property in San Leandro which will accommodate the Church. Meanwhile, the Church is expending $33,809.88 per month or approximately $1,100 *every day* for a location it must have but is not permitted to use. D. Mortara Decl., ¶ 4.

Denial of the use of the property as a religious assembly has resulted in a severe limitation on the Church's ministry and outreach efforts. There are no other properties that are available to the Church. Bullok Depo. 229:6-11; Jermanis Depo, 51:12-25, 52:1-2. As a result, the land use restrictions placed on the Church have placed a "substantial burden" on the Church's religious exercise.

The Church has made a prima facie showing under RLUIPA. As such, the burden shifts to the City to demonstrate a narrowly tailored compelling state interest. The City alleges three compelling state interests as follows: (1) preservation of sufficient land and facilities to maintain

---

[11] G. Mortara Decl., Exh. 1.

the City's industrial base"; (2) "maintaining consistency with and implementing the City's general plan"; and, (3) "avoidance of conflicts with neighboring industrial uses."   In that all of these are essentially economic concerns, they do not rise to the level of a compelling state interest as a matter of law.

Since there are no material disputes of fact—only application of the facts to RLUIPA and 42 U.S.C. § 1983—resolution of this case via summary judgment is appropriate.

## LEGAL ARGUMENT

### I.    Standard of Review

A motion for summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). The court must determine whether there are any genuine issues of material fact under the relevant substantive law. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

### II.    The City's denial of Religious Assembly Use at the Catalina property violates RLUIPA.

"The right to assemble for worship is at the very core of the free exercise of religion. Churches and synagogues cannot function without a physical space adequate to their needs and consistent with their theological requirements.  The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes." *Vietnamese Buddhism Study Temple in America*, 460 F. Supp. 2d at 1171, quoting 146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) (joint statement of Senators Kennedy and Hatch in support of RLUIPA).  Congress unanimously enacted RLUIPA to level the playing field for houses of worship, aiming to clear the land use landscape of obstacles arbitrarily erected by local governments—obstacles easily recognizable in this case.

1   RLUIPA is violated by land use regulations which discriminate against religious

2   assemblies.  Treatment of religious assemblies on "less than equal terms with nonreligious

3   assemblies" constitutes impermissible discrimination, 42 U.S.C. § 2000cc(b)(1), as does a land use

4   regulation which "imposes a substantial burden." 42 U.S.C. § 2000cc(a)(1).

5       When RLUIPA is violated in either of these ways, the government is liable unless its

6   conduct survives strict scrutiny. *See*, *Vietnamese Buddhism Study Temple of America*, 460 F.

7   Supp. 2d at 1171, quoting 42 U.S.C. § 2000cc(a)(1); *Midrash Sephardi, Inc. v. Town of Surfside*,

8   366 F.3d 1214, 1232 (11th Cir. 2004). The Church is entitled to relief because the City has

9

10  violated RLUIPA both by treating the Church on less than equal terms, and by substantially

11  burdening the Church without a compelling justification.

12          **A.     The City's actions violate RLUIPA's "Equal Terms" provision**

13

14      RLUIPA's equal terms provision sets forth a bright-line standard:

15      (1) EQUAL TERMS- No government shall impose or implement a land use
        regulation in a manner that treats a religious assembly or institution on less than
16      equal terms with a nonreligious assembly or institution.

17      42 U.S.C. § 2000cc(b)(1).

18

19      The City violates this provision (i) by subjecting the Catalina property to eight criteria

20  which have <u>never</u> been applied to any other property within the jurisdiction of the City, (ii) by

21  allowing entertainment and recreational assembly uses but not religious assembly use, and (iii) by

22  placing a hazardous materials burden on the Church but not on any of the 196 properties approved

23  for assembly or any other assembly uses within the jurisdiction of City.

24

25       Once the Church has produced *prima facie* evidence of an equal terms violation, the City

26  bears the ultimate burden of persuasion on all elements of the claim.  42 U.S.C. § 2000cc-2(b).

27

28
_____

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

6

### (i)    The City's application of eight criteria to deny the Church's request is unprecedented.

Following the Church's request for a rezoning of the Catalina property to permit religious assembly use, the City instead created an Assembly Use Overlay which pointedly excluded the Catalina property.  The City invented eight criteria, two of which it utilized to exclude the Catalina property from the AU Overlay.  The criteria are:

1) Site is not located along a major commercial corridor;
2) Site is not located within the following General Plan Focus Areas: Downtown, Bayfair, Marina Blvd./SOMAR, or West San Leandro;
3) Site is not located in a regional-serving retail area;
4) Site is not located inside the one-half-mile study area identified for the Downtown Transit-Oriented Development (TOD) Strategy;
5) Site abuts or is within one-quarter mile of an arterial street;
6) Site is not located in a Residential Zone ;
7) Site is not considered public land, and is not zoned Public Service (PS), Open Space (OS), or Commercial Recreation (CR); property is not owned by an Exempt Public Agency, or leased/owned by a public utility;
8) Overlay Area must allow a contiguous area greater than or equal to two acres.

Ct Doc 30-2, pp. 4-5.   The City denied AU Overlay zoning to the Church location on the basis that the location did not meet the second and fifth criteria.  Ct. Doc. 30-2, pp. 4-5. However, City officials have been unable to identify a single other applicant for assembly use within the jurisdiction of the City to which the criteria have been applied.  Jermanis Depo., 46:22-24; City's Response to Plaint.'s Interrogatory No. 6.  And since no other applicant for assembly use, before or since the Church's request to use the Catalina property, has been subjected to the burden of these eight criteria, there is a showing of an equal terms violation under RLUIPA.

The City's unprecedented—and unequal—treatment of the Church is the first prima facie evidence of an RLUIPA equal terms violation.

(ii)     **The City's allowance of entertainment and recreational assembly uses—but not religious assembly—directly violates the specific mandate of RLUIPA**

In addition to unequal application of its eight criteria, the City has not treated the Church's Catalina property the same as other, similar properties.  The Church applied for a CUP under the existing zoning for the Catalina property because an assembly use is allowed if it is "entertainment."   But the City treated the Church differently because it wished to use the property for religious purposes and thus denied the CUP.  G. Mortata Decl., Exh 1., pg. 4.

Under RLUIPA, zoning laws must apply to religious assemblies in the same manner that they apply to "similarly situated" assemblies.  *Midrash*, 366 F.3d at 1229 (holding that synagogue was similarly situated to clubs and lodges).  In fact, the legislative history of RLUIPA specifically identifies "recreation centers" and "places of amusement" as being comparable to religious assemblies for purposes of the statute.  H. Rep. 106-219, 106th Cong., 1st Sess. 19 (1999).[12]  In a joint statement, Senators Hatch and Kennedy articulated the need for the Equal Terms provision of RLUIPA as follows: "Zoning codes frequently exclude churches in places where they permit . . . large groups of people [to] assemble for secular purposes."  146 Cong. Rec. at S7775.

Here, the City allows both entertainment and commercial recreational assembly uses by permit in IL and IP areas.  Ct. Doc 37-3, pp. 2,11.  Other assembly uses in IL and IP areas include day care facilities, farmers' markets, cafes, bars, business and trade schools, and full service restaurants.  *Id*., pp. 3-4, 10-11.  In that vein, the California Uniform Building Code, applicable in San Leandro, contains a nondiscriminatory definition of Assembly Building as follows:

---

[12] The legislative history lists myriad nonreligious assemblies to be compared with religious ones: "banquet halls, clubs, community centers, funeral parlors, fraternal organizations, health clubs, gyms, *places of amusement*, *recreation centers*, lodges, libraries, museums, *municipal buildings*, meeting halls, and theatres," H.R. Rep. No. 106-219, 106th Cong., 1st Sess. 19 (1999) (emphasis added); and "*recreation centers* and *health clubs*," 146 Cong. Rec. S7774-01 at S7777 (daily ed. July 27, 2000) (emphasis added).

1   "***Assembly Building***.  *A building or a portion of a building used for the gathering together of 50*

2   *or more persons at one time for such purposes as deliberation, education, worship, entertainment,*

3   *amusement, drinking or dining, or waiting for transportation*."  Uniform Building Code Section

4   203 A.[13]  Meanwhile, the Catalina property, zoned IP, has been denied both a rezoning and a CUP.

5   The only difference is that the Church seeks to use its property for *religious* assembly.  Since,

6   under *Midrash*, religious assembly is legally indistinguishable from entertainment assembly, the

7   Church has—again—been treated on less than equal terms.

8

9                    (iii)    **The City's imposition of a hazardous materials burden on the
                             Church is inexplicable.**

10          An equal terms violation also occurs when government officials impose a zoning

11   requirement on a religious group but not on similarly situated nonreligious groups.  *Vietnamese*

12   *Buddhism Study Temple in America v. City of Garden Grove*, 460 F. Supp. 2d 1165 (C.D. Cal.

13   2006); see also, *Hollywood Community Synagogue, Inc. v. City of Hollywood, Fla*., 430 F. Supp.

14   2d 1296, 1323 (S.D. Fla. 2006).  Realizing that its zoning policies directly violated federal law, the

15   City created the AU Overlay to permit assembly uses in places where they would be otherwise

16   impermissible.  Ct. Doc 25-2.  However, City officials then foisted upon the Church an ***additional***

17   criterion related to hazardous materials which was not applied to ***any*** of the 196 properties

18   approved for assembly use  Ct. Doc 34-2, pp. 5-6.  Nor has the City been able to identify any other

19   application for assembly use in which a hazardous materials criterion been placed in San Leandro.

20          In a staff report, City officials claimed that the presence—and potential future presence—

21   of hazardous materials and activities in the vicinity of the Catalina site rendered it inappropriate

22

23

24

25   _____

26   [13] The definition of "Assembly Building" contained in California's Industrial Relations Code, 8
     C.C.R. 3207(a), mimics the Building Code while also including, "Any building or structure or
27   portion thereof used or intended to be used for the showing of motion pictures when an admission
     fee is charged and when such buildings [sic] or structure is open to the public and has a capacity of
28   10 or more persons."

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

9

for rezoning with the Assembly Use Overlay.  Ct Doc 34-2.  Denial of the Catalina site was based in part on the presence of businesses with Hazardous Materials Business Plans (HMBP's) within ¼ mile.  Pollart Depo. 106:1-17.  But if that criterion were applied across-the-board to all proposed assembly uses it would prohibit assembly use in *all* 196 parcels, since all are within ¼ mile of a HMBP.  *Id.* at 105:4-11.  Ironically, even City Hall, located at 835 E. 14th St. in San Leandro, is within ¼ mile of a site with a hazardous materials plan.   Def. Response to Pltf. Req. for Admission #9 (p. 2).  The City's disparate treatment of the Church is exactly the type of discrimination that RLUIPA was enacted to remedy.

The Church has presented *prima facie* evidence of three areas in which its proposed religious assembly use has been singled out for disfavor:  creation of the eight criteria, refusal to treat the church comparably with commercial recreation and entertainment uses, and the unprecedented imposition of the hazardous materials business plan buffer zone.  As a result, the burden now shifts to the City to demonstrate a narrowly tailored, compelling state interest justifying its disparate treatment of the Church.[14]

**B.        The City's actions Substantially Burden the Church**

In addition to its equal terms provision, RLUIPA separately prohibits local governments from using land use regulations to impose "a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on the person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. 2000cc(a)(1).  The Ninth Circuit has determined

---

[14] The Church's current building is also located within ¼ mile of hazardous materials (Ex. B to Church Mot. for Prelim. Inj.), yet the City's opposition to the Church's move is keeping the Church at that location.

1    that a government regulation creates a "substantial burden" when it is "'oppressive' to a

2    'significantly great' extent." *Guru Nanak Sikh Society of Yuba City v. County of Sutter,* 456 F.3d

3    978 (9th Cir. 2006) (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024,

4    1034).

5               **(i)    The City has fully and flatly denied the Church's rezoning and**
                 **CUP requests.**
6

7               The ongoing injury which the Church is suffering is oppressive to a great extent.  The City

8    rejected the Church's request for rezoning of the Catalina property.  Subsequent to the filing of

9    this lawsuit and the Church's request for a preliminary injunction, the City has entrenched its

10   position by flatly denying the Church's application for a CUP.  G. Mortara Decl., Exh. 1.   The

11   Church has looked into dozens of other properties.  None are suitable.  Bullok Depo. 92:1-17.  Of

12   the properties suggested by City officials, only one was for sale—and it was under contract.  *Id.* at

13   94:24—95:13.  Within the Assembly Overlay district created by the City, only thirteen are three

14   acres or more, as required by the Church's size.  Defs. Response to Plaint. Interrog. No. 1.  Those

15   parcels tend toward the extremes of being either dilapidated, fractionalized and irregularly shaped,

16   on the one hand, or occupied commercial shopping centers on the other hand which have no

17   interest in selling to the Church.  Bullok Depo. 202:19—204:5.

18

19              **(ii)   The Church's core functions are being inhibited by the inadequate**
                **facility in which the City has forced it to remain.**
20

21              As a result of the City's denials of the rezoning and CUP requests, the Church's core

22   functions are actually inhibited.  The core beliefs and values of the Church include: joyous, united

23   worship of God; local and global evangelism to lead people to faith in Christ; instruction; and

24   works of compassion, justice, and human aid. G. Mortara Decl., ¶ 23. These elements are

25   incorporated into an overarching holistic approach focused on helping the entire individual.  The

26   inability of the Church to use the Catalina property is a significant restriction on its pursuit of

27

28

these core tenets, because it limits the number of members and visitors who can attend, participate in activities, and receive spiritual help at its current location on Manor Blvd.  G. Mortara Decl., ¶¶ 25-28.

Federal courts have acknowledged the struggles of large congregations to find adequate meeting space.  *Grace Church of North County v. City of San Diego*, 2008 WL 2025367, 13 (S.D.Cal. May 9, 2008).  These courts have further noted the substantial burden created by cities' refusals to allow churches to use property they have purchased.  Consider *Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin,* 396 F.3d 895, 901 (7th Cir.2005):

> The burden here was substantial.  The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty and expense.  That the burden would not be insuperable would not make it insubstantial.

The Church already spent months searching for a location to accommodate its size.  (G. Mortara Decl. ¶¶ 5-6.)  Indeed, the Church even sent out staff and church members into other cities on five separate occasions to plant new churches, due to lack of space in the present location.  *Id.* at ¶ 34.  The Church endured more than a year of delays from the City, *id.* ¶ 31, and it incurred significant expenses in the process.  *Id.* at ¶ 32.  The Church continues to expend over $1,100 a day on property it cannot use. *Id.* at ¶ 32.

Part of the traditional Christian faith involves meeting together as a "church body" or *corpus*.  The breaking apart of the Church is an impermissible burden.  Those who are turned away each Sunday results in the infliction of suffering in the body.  The absence of these dozens of worshippers in the present case is, in a profound theological sense, a substantial burden on the religious practices of gathering together for worship, fellowship, and ministry.

---

1    Meeting to conduct worship services is one of the primary functions of a church.

2    *Vietnamese Buddhism Study Temple in America*, 460 F. Supp. 2d at 1171 ("The right to assemble

3    for worship is at the very core of the free exercise of religion.   Churches and synagogues cannot

4    function without a physical space adequate to their needs . . .", quoting 146 Cong. Rec. S7774-01,

5    (daily ed. July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy)).  One reason

6    why the Church has three separate services is due to lack of parking at the MANOR property. D.

7    Mortara Decl. ¶ 3.   The current location is in a residential neighborhood and has only 154

8    parking spaces.  *Id*. at ¶ 11.   Attendees park on crowded residential streets.  *Id*. Often, people must

9

10   walk blocks to attend Sunday service.  *Id*. at ¶ 4.  Each Sunday numerous vehicles drive off and do

11   not return due to lack of parking.  *Id*. at ¶ 4.  The Church loses the opportunity to minister to

12   dozens of people each Sunday as a result of Defendants' refusal to allow the Church to use the

13   Catalina property. (G. Mortara Decl. ¶ 41).  To alleviate the parking at the MANOR property, the

14   Church purchased a neighboring house for $565,000 in May of 2006—to obtain 10 additional

15   parking spaces.  The Church paid $56,500 per parking space.  Ct. Doc. 12, ¶10.

16

17        The dozens of people in the forty or so vehicles turned away every Sunday creates a

18   substantial burden on the religious exercise of the Church in its evangelistic efforts.  Many

19   precluded from attending are visitors to the Church and are not Christians.   They have been

20   invited by congregants or attend on their own for any number of reasons.  It is a core tenet of the

21   Church to share the gospel verbally and by acts of service to others.  Portions of the worship

22   services and ministry activities on Sunday mornings are designed especially for visitors who are

23

24   not Christians.  *Id*. at ¶ 25.  However, such visitors are inhibited from attending due to the lack of

25   adequate space.  Thus, the City's denial of the use of the Catalina property substantially burdens

26   the Church's evangelistic efforts. *Id*.

27

28

1      The Church's Sunday services are severely hampered by parking and facility limitations.

2  Use of the Catalina property is vital to the Church's religious exercise.   The Church's worship

3  services have been, and continue to be, substantially burdened by Defendants' denial of access to

4  their new facility.

5          C.          The City's actions violate RLUIPA's "Total Exclusion" provision.

6          RLUIPA section 2(b)(3) prohibits land use regulation that "unreasonably limits religious

7  assemblies, instructions, or structures within a jurisdiction." 42. U.S.C. § 2000cc(b)(3)(B). "What

8  is reasonable must be determined in light of all the facts, including the actual availability of land

9  and the economics of religious organizations." 146 Cong. Rec. E1563 (daily ed. Sept. 22, 2000)

10  (statement of Rep. Canady).  ICFG and the Church will avoid repetition of "all the facts" stated in

11  the foregoing sections of this Memorandum which demonstrate that there are no suitable, available

12  locations—other than the Catalina property—which can accommodate its continued existence in

13  San Leandro.  The City's suggestions that the Church consider relocate to properties which are not

14  even for sale is unreasonable.  The City's designation of the Assembly Use Overlay shows that it

15  was well aware of the need for more large assembly use options.  Its attempts to gloss over the

16  problem by designating parcels for assembly use which were highly undesirable and, even at that,

17  not available for purchase, did nothing to cure its unreasonable limitations on religious assemblies

18  in San Leandro.

19

20          D.          The City's proffered interests are woefully inadequate to justify its
                        prima facie RLUIPA violation.

21

22              (i)          The City's actions cannot survive strict scrutiny.

23          "RLUIPA provides a strict scrutiny standard of review for land use cases." *Cottonwood*

24  *Christian Ctr. v. Cypress Redevelopment Agency*, 218 F.Supp.2d 1203, 1220 (C.D.Cal. 2002).

25  Once Plaintiff establishes a violation of the Equal Terms provision *or* the imposition of a

26

27

28

1    substantial burden, the legal burden shifts to Defendants to show that the least restrictive means

2    were taken to achieve a narrowly tailored compelling state interest.  42 U.S.C. 2000cc(a)(1)(A)

3    and (B).

4                    (ii)        **The City cannot demonstrate a compelling state interest.**

5            When religious exercise is concerned, the compelling interest test cannot be satisfied by

6    reference to broad policy objectives.  In interpreting 42 U.S.C. 2000bb-1(b), the Religious

7    Freedom Restoration Act (RFRA), the Supreme Court noted, "RFRA requires the government to

8    demonstrate that the compelling interest test is satisfied through application of the law 'to the

9    person'-the particular claimant whose sincere exercise of religion is being substantially burdened."

10   *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,* 546 U.S. 418, 126 S. Ct. 1211,

11   1220-21 (2006).   Since RLUIPA followed in the footsteps of RFRA, it is not surprising that its

12   formulation of the compelling interest test also obviates generalized justifications.

13           The denial of the Church to use its Catalina property is not in furtherance of a narrowly

14   tailored compelling governmental interest.  In *Grace Church*, the court held that "preservation of

15   industrial lands for industrial uses does not constitute a 'compelling interest' for purposes of

16   RLUIPA."  *Grace Church of North County v. City of San Diego*, 2008 WL 2025367, 14 (S.D.Cal.

17   May 9, 2008).

18           In response to an Interrogatory requesting identification of every compelling interest

19   supporting the City's denial of religious assembly at the Catalina property, Defendants list just

20   three:

21               1.   Preservation of sufficient land and facilities to maintain the City's
                      industrial base.
22               2.   Maintaining consistency with and implementing the City's general
                      plan, including particularly Policies 7.09 and 10.04.
23               3.   Avoidance of conflicts with neighboring industrial uses.

24           Def. Response to Plaint. Interrog. No. 9.

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

15

1      Even assuming the doubtful factual validity of the stated interests in relation to the

2   Catalina property, these three interests are not, as a matter of law, compelling.   However, as a

3   threshold matter, whenever the state restricts "expressive association," there is no presumption of

4   constitutionality.  Therefore, the government must have a compelling state interest in the subject

5   matter to justify abridgment, and the scope of the abridgment itself must be the least restrictive

6   means, i.e., no greater than reasonably necessary to serve the state interest.  *Thomas v. Collins*,

7   323 U.S. 516, 530 (1945).

8      While the burden falls squarely on the City to prove a compelling state interest, *see, e.g.,*

9

10  *Gonzales, supra*, the interests advanced by the City will not suffice.

11

12              ***(a)       Preservation of sufficient land and facilities to maintain***
                ***the City's industrial base is not a compelling state***
13              ***interest.***

14      The City seeks to increase employment and maximize tax revenues by excluding the

15  Church from a light industrial area.  It is well-settled law that preserving jobs and tax revenues is

16  not a compelling governmental interest. *Guru Nanak Sikh Soc'y,* 456 F.3d at 987.  This is only

17  logical: "If revenue generation were a compelling state interest, municipalities could exclude all

18  religious institutions from their cities." *Cottonwood*, at 1228.  Providing non-profit institutions

19  with tax exemptions—as has long been done in recognition of the invaluable community services

20  they provide—while at the same time using their tax-exempt status as a reason for exclusion is

21  utterly incongruent.  The financial interest offered by the City falls far short of a compelling state

22  interest.

23

24              ***(b)       Maintaining consistency with and implementing the***
                ***City's General Plan, does not rise to the level of a***
25              ***compelling state interest.***

26      RLUIPA does not permit a government to use broad and discretionary land use rationales

27  to select the precise property where a religious group can worship.  *Guru Nanak*, 456 F.3d at 992,

28

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

16

n.20.  In fact, RLUIPA was targeted at this precise rationale:  "[O]ften, discrimination lurks behind such vague and universally applicable reasons as traffic, aesthetics, or 'not consistent with the city's land use plan.'" 146 Cong. Rec. S774-01 (daily ed. July 27, 2000), quoted in *Guru Nanak*, 456 F.3d at 987.

> ### (c)     *Avoidance of conflict with neighboring industrial uses is not a compelling state interest.*

The last "compelling interest" stated by the City in its interrogatory response is "[a]voidance of conflict with neighboring industrial uses."  As a factual matter, the City has produced no evidence demonstrating a conflict with other uses on Catalina Street, other than its discredited and disingenuous reliance on the proximity of other uses with a hazardous materials business plan.  To the contrary, the Church's primary uses of the property would take place when the entire area is largely vacant.  If anything, neighboring uses on Catalina have welcomed the Church and are anticipating mutually beneficial shared parking arrangements.  Ct. Doc. 13, ¶45.

Even assuming one could accept *factually* that the City has an interest in avoiding conflict between the Church and neighboring uses, the City has presented no controlling authority—and the Church is aware of none—which comes close to considering "avoidance of conflicts" as a compelling interest.  If the City's vague reference to "conflict" intimates concerns about traffic at Catalina, as it has stated elsewhere, such concerns have specifically been held <u>not</u> to constitute a compelling state interest.  *Vietnamese Buddhism Study Temple in America*, 460 F. Supp. 2d at 1174.

Even were one to take the logical leap of agreeing that avoidance of conflicts with neighbors could be a compelling interest, it would not help the City, since narrow tailoring is also required to achieve that interest.  Ironically, while claiming to be avoiding conflicts with neighboring uses at Catalina, the City's actions have perpetuated conflicts with the Church's

current neighbors.  Ct. Doc. 12, ¶6.   It is difficult to imagine how such a result could be considered a narrowly tailored means of achieving the City's stated interest.

### (iii)     Even assuming arguendo that the City's interest is compelling, the means taken to achieve this interest are not narrowly tailored.

In light of the foregoing discussion, the City has not stated a compelling state interest in denying the Church's AU overlay district amendment application.  Even were it hypothetically possible for the City to state such an interest, however, the inquiry does not end there.  Rather, the City bears the burden of proving that it has used the least restrictive means to further the stated narrowly tailored compelling state interest.

The Planning Commission Staff Report states that "there is no less restrictive means (i.e. no means short of outright denial of the rezone) that would further the City's interest in safeguarding the health and safety of the future congregants…."  Ct. Doc. 34-2, pg.  7.  This position cannot be reconciled with allowing the 196 other assembly uses as well as entertainment, commercial, recreation and even municipal uses that are also within a ¼ mile proximity to hazardous materials.  It also bears repeating that the City's actions are forcing the Church to remain at a site located within ¼ mile of a Hazardous Materials Business Plan.   Ct. Doc. 38 (HMBP Map).

As far as RLUIPA is concerned, a church use that gathers people for worship and other religious activities is indistinguishable from assembly for commercial entertainment, such as a multi-screen movie theater. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1231, n.14 (11th Cir. 2004) citing 146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) (joint statement of Senators Kennedy and Hatch).  If the City can serve the stated health interests while allowing commercial recreation and entertainment activities, it follows that there must be other means of

1   serving the health interest while allowing religious assembly concurrently.  In view of the City's

2   failure to articulate in the record an explanation for this double standard, the City has failed to

3   justify its burden as to the least restrictive means prong of RLUIPA.

4       III.    **The City's denial of Religious Assembly Use at the Catalina property violates**
                **the First and Fourteenth Amendments.**

5

6           A.    **Free Exercise of Religion**

7           The Free Exercise Clause prohibits government regulation of religious beliefs, which

8   includes government regulation of *conduct* relating to religious exercise. *Employment Div., Dept.*

9   *of Human Resources v. Smith,* 494 U.S. 872, 877 (1990).  The conduct at issue is the Church's

10  ability to effectively serve the community by having a facility large enough to accommodate its

11  members and visitors.  The City's pattern of conduct against the Church is impeding the Church's

12  ability to freely exercise its religion.

13

14          The City's actions should be held to the strict scrutiny test because it is directed toward

15  and burdens the free exercise of religion.  A law that targets religious beliefs is never permissible.

16  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).  "If the

17  zoning law is not neutral or generally applicable, but is directed toward and burdens the free

18  exercise of religion, it must meet the strict scrutiny test." *San Jose Christian College v. City of*

19  *Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004).  The Catalina property has been targeted

20  because it was denied assembly use while comparable properties were allowed assembly use for

21  entertainment and recreation. Also, the Catalina property would pass for assembly use if it had met

22  the eight criteria crafted by the City. The eight criteria have never been used elsewhere.  The

23  Church was effectively targeted by the City. The burden on the Church to accept the loss of the

24  Catalina property has resulted.

25

26

27

28

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

19

1    A law which directly targets religious conduct "will survive strict scrutiny only in rare

2    cases." *Church of the Lukumi Babalu Aye,* 508 U.S. at 545.  The law will not pass the test unless it

3    is "narrowly tailored" to advance a government interest "of the highest order." *Id.*  In light of the

4    foregoing discussion, the City has not identified a compelling, narrowly tailored state interest.

5    The eight criteria of the City's General Plan seek to safeguard places of assembly from the hazards

6    of commercial sites but is too inaptly applied to promote any governmental interest in this regard.

7    If there are any significant government interests at issue, the City's General Plan is not drawn

8
9    narrowly to accomplish them.

10    Even if the City's General Plan is not directed toward the Church, it should still be held to

11    strict scrutiny because the Church is subject to additional First Amendment violations.  "If a law

12    of general application, not targeted at religion, burdens the free exercise of religion *and* some

13    other constitutionally-protected activity, there is a First Amendment violation unless the strict

14
15    scrutiny test is satisfied." *San Jose* 360 F.3d 1024 at 1031.  Additional violations of the City

16    include violations relating to Freedom of Speech, Freedom of Assembly, Freedom of Association,

17    Equal Protection, and Due Process, as explained below.

18        **B.    Freedom of Speech**

19    The Church possesses a right to Freedom of Speech under the First and Fourteen

20    Amendments of the U.S. Constitution. 42 U.S.C. § 1983.  The City has restricted the Church's

21
22    speech and the Church's (individual member's) right to hear by not allowing the Church to move

23    to the Catalina property.  The Church's present location is overcrowded, the parking is inadequate,

24    and the traffic is congested.  These conditions restrict the number of people the Church can

25    communicate to, and reciprocally restricts the number of people in the Church who can receive the

26    communication.

27
28

Freedom of Speech protects both a communication's source and its recipients. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc*. 425 U.S. 748, 755 (1976). The Supreme Court has found that "[i]f there is a right to advertise, there is a reciprocal right to receive the advertising." *Id*. at 755. In like manner, this reciprocal right inherent to the Freedom of Speech is imperative to an active entity like the Church, where both information providers and information receivers comprise the Church's entity.

### C.    Equal Protection

The Church is guaranteed Equal Protection under the Fourteenth Amendment of the U.S. Constitution. 42 U.S.C. § 1983. In *Open Homes Fellowship*, the court, by a rational-basis review, found an Equal Protection violation when a Christian rehabilitation center was held to comply with special zoning requirements which it could not satisfy. *Open Homes Fellowship, Inc. v. Orange County, Fla*. 325 F.Supp.2d 1349, 1355. (2004). There was no rational basis to believe that Open Homes posed a special threat, which would justify special treatment. *Id*. at 1358. The present case is comparable. The Catalina property has been denied for assembly use, yet other entertainment and commercial recreational assembly uses have been allowed in similarly zoned areas. No rational basis can be shown for this distinction.

### D.    Due Process

The Church is guaranteed Due Process of Law under the Fourteenth Amendment of the U.S. Constitution. 42 U.S.C. § 1983. Government action which is arbitrary and capricious violates due process. *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 542 (2005). The purpose of government zoning is to promote the health, morals, safety, and general welfare of the community. *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926). The City's arbitrary Assembly Use Overlay criteria, having intentionally and needlessly delayed and obstructed the Church's use of

---

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

21

1  the Catalina property, are arbitrary and capricious, fundamentally failing to promote the

2  community's health, morals, safety, and general welfare.[15]

3        The eight criteria and additional hazardous materials business plan restriction placed solely

4  on the Church are arbitrary and capricious.  As such, they are violative of due process as well as

5  RLUIPA.

6        **III.    Damages**

7        The Church must pay monthly mortgage payments of $33,809.88 for the Catalina property.

8  G. Mortara Decl. at ¶ 4.  Since April 12, 2007, the Church has been denied assembly use for its

9  property by the City Planning Commission.  The mortgage payments the Church has made after

10 April 12, 2007 are damages to the Church.  This growing figure of $33,809.00 per month since

11 April 12, 2007 is mitigated by the amount the Church has gained by renting the property

12 beginning March 2008 for $1,200 per month.  D. Mortara Depo, 137-138.

13                          **CONCLUSION**

14       The material facts are not in dispute.  The Church outgrew its current location and

15 purchased the Catalina property to accommodate the many worshipers who cannot presently

16 attend church services.  The City, believing itself to have better designs for the property, denied

17 first a rezoning application, then a CUP application.

18       The City's actions were unlawful, first under the RLUIPA.  It did not treat the Church on

19 equal terms with other assembly uses in the City, as demonstrated by its invention of eight criteria

20 which it decided the Church did not meet; by its reliance on an unprecedented hazardous materials

21 business plan buffer zone which not even City Hall would be in compliance with; and by its

22

23

24

25

26

27

28

___

[15] Much more recently, at least one federal court has found a substantive due process violation in conjunction with an RLUIPA violation, *Layman Lessons, Inc. v. City of Millersville, Tenn.*, 2008 WL 686399, *27 (M.D. Tenn. March 07, 2008).

refusal to consider the Church's proposed use comparably with non-religious assembly and entertainment uses.

Besides treatment on less than equal terms, the City violated RLUIPA by placing a substantial burden on the Church's religious exercise without having a compelling governmental interest in doing so.  The City's denial of a rezoning or CUP for the Catalina property means that spiritual seekers and devoted worshipers alike are being prevented from attending the Church at its current Manor location, because there is insufficient room for them.  Consequently, the Church's rapid growth has stagnated, not for lack of interest, but for lack of space.  Much more than an inconvenience, the City's refusal to allow religious assembly at the Catalina property, coupled with the lack of other suitable locations in the City, is preventing the Church from carrying out its core religious tenets of evangelism and outreach.  Moreover, the City's actions have caused the Church significant financial loss in expending funds for a property it is prohibited from occupying. Nor has the City proffered compelling interests necessary to justify the substantial burden it has placed on the Church's religious exercise.

Finally, the City's actions have violated the Church's constitutional rights to Since the founding of our nation, houses of worship have been afforded a high degree of respect and encouragement—until recent years.  It should come as no surprise, then, that the City's arbitrary denial of the Church's ability to use its property to practice and proclaim its religious beliefs violated the Church's Free Exercise of Religion, Freedom of Speech, Equal Protection and Due Process.  RLUIPA simply reinforces the age-old constitutional principle that government hostility toward religious groups is unacceptable and illegal.  ICFG and the Church therefore request summary judgment as to all claims alleged in their First Amended Complaint.

Respectfully submitted:

August 26, 2008

Respectfully submitted,

__/S/_Kevin Snider_____

Kevin T. Snider
Matthew B. McReynolds
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827-6600
Telephone: (916) 857-6900
Facsimile:  (916) 857-6902

Peter D. MacDonald
LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210
Pleasanton, CA 94566-7371
Tel. (925) 462-0191
Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest,
International Church of Foursquare Gospel
and Faith Fellowship Church of Foursquare Gospel

Plaintiff and Real Party in Interest Motion for Summary Judgment; Memo. in Support

24