**EXHIBIT 17 – Part 2**

## Proposed Assembly Use Overlay – List of Parcel Numbers and Addresses

| | | | |
|---|---|---|---|
| 077 0556 067 00 | 2166 Washington Ave | 077C 1235 001 02 | 640 143rd Ave |
| 412 0006 011 00 | Washington Ave | 077B 1222 005 03 | 14193 Washington Ave |
| 077 0556 065 01 | 2240 Washington Ave | 077B 1222 006 17 | Washington Ave |
| 077 0556 063 00 | 2260 Washington Ave | 077B 1222 006 15 | 14251 Washington Ave |
| 077D 1410 025 00 | 2436 Washington Ave | 077C 1235 002 28 | 143rd Ave |
| 412 0006 003 00 | 698 Lewelling Blvd | 077C 1235 002 18 | 14330 Washington Ave |
| 412 0006 010 00 | 674 Lewelling Blvd | 077C 1235 002 24 | 534 143rd Ave |
| 412 0009 005 07 | Lewelling Blvd | 077B 1222 006 18 | 14231 Washington Ave |
| 412 0009 006 03 | 534 Lewelling Blvd | 077B 1222 007 17 | 14305 Washington Ave |
| 412 0009 006 02 | 534 Lewelling Blvd | 077C 1235 002 20 | 14332 Washington Ave |
| 077C 1280 004 00 | 15285 Hesperian Blvd | 077C 1230 004 06 | 14110 Washington Ave |
| 077B 1139 006 02 | 250 Floresta Blvd | 077B 1225 005 05 | 295 139th Ave |
| 077C 1310 008 04 | 14400 Washington Ave | 077C 1230 004 04 | 14160 Washington Ave |
| 077B 1139 008 00 | 256 Floresta Blvd | 077C 1232 001 04 | 635 143rd Ave |
| 077B 1222 007 10 | 14349 Washington Ave | 077B 1222 003 04 | 14127 Washington Ave |
| 412 0009 006 05 | 534 Lewelling Blvd | 077B 1222 003 03 | 14143 Washington Ave |
| 412 0011 004 00 | Lewelling Blvd | 077C 1232 005 02 | 601 143rd Ave |
| 080G 1099 001 00 | 1960 Lewelling Blvd | 077C 1235 002 16 | 14336 Washington Ave |
| 077C 1240 002 00 | 2780 Halcyon Dr | 077C 1240 001 06 | 100 Halcyon Dr |
| 077B 1424 005 08 | 777 139th Ave | 077B 1222 007 14 | 14315 Washington Ave |
| 077C 1228 001 02 | 13940 Washington Ave | 077B 1222 007 19 | 14327 Washington Ave |
| 077B 1225 002 04 | 13951 Washington Ave | 077B 1222 007 20 | 14335 Washington Ave |
| 077D 1440 002 00 | 790 139th Ave | 077B 1163 011 02 | 555 Floresta Blvd |
| 077D 1440 001 18 | 760 139th Ave | 077B 1163 016 03 | 14391 Washington Ave |
| 077B 1222 002 02 | 14111 Washington Ave | 077B 1163 008 10 | 555 Floresta Blvd |
| 077C 1230 005 02 | 14200 Washington Ave | 077C 1310 001 16 | Washington Ave |
| 077B 1222 006 19 | 14205 Washington Ave | 077B 1139 007 00 | 300 Floresta Blvd |
| 077B 1222 007 18 | 14281 Washington Ave | 412 0009 005 04 | 552 Lewelling Blvd |
| 077C 1235 002 22 | 14340 Washington Ave | 412 0011 005 00 | Lewelling Blvd |
| 077C 1235 003 03 | 14388 Washington Ave | 080D 0559 003 04 | 15420 Hesperian Blvd |
| 077C 1235 002 14 | 14320 Washington Ave | 080D 0559 005 03 | 15444 Hesperian Blvd |
| 080G 1178 007 02 | 2505 Grant Ave | 077C 1310 001 17 | Washington Ave |
| 080G 0910 016 00 | 2561 Grant Ave | 077B 1139 002 04 | 14595 Washington Ave |
| 080G 0910 017 00 | 2505 Grant Ave | 077C 1310 009 01 | 14602 Washington Ave |
| 077D 1440 001 23 | 750 139th Ave | 077C 1310 002 06 | 14610 Washington Ave |
| 077C 1228 002 02 | 14000 Washington Ave | 077C 1310 003 01 | 14664 Washington Ave |
| 075 0087 001 02 | 400 Hudson Ln | 077B 1139 002 06 | 14601 Washington Ave |
| 075 0084 015 02 | 2485 Washington Ave | 077C 1310 004 04 | 14680 Washington Ave |
| 075 0087 008 00 | 400 Hudson Ln | 077C 1310 003 04 | 14662 Washington Ave |
| 075 0084 014 05 | 2481 San Leandro Blvd | 077C 1280 006 03 | 15311 Hesperian Blvd |
| 077B 1424 006 07 | 1111 139th Ave | 077C 1280 007 00 | Hesperian Blvd |
| 077D 1437 013 04 | 1090 139th Ave | 412 0001 007 01 | Greenhouse Mall |
| 077D 1437 015 01 | 1124 139th Ave | 077B 1125 004 04 | 14805 Washington Ave |
| 077D 1437 014 03 | 139th Ave | 077C 1280 005 01 | 15299 Hesperian Blvd |
| 077C 1230 001 03 | 14074 Washington Ave | 075 0078 001 07 | Estabrook St |
| 077B 1222 001 05 | 344 139th Ave | 080G 0933 022 01 | 14600 Catalina Street |
| 077D 1440 001 21 | 143rd Ave | 080G 0933 021 00 | 14600 Catalina Street |
| 077B 1443 002 02 | 833 143rd Ave | 080G 0933 020 00 | 14850 Catalina Street |
| 077B 1225 003 04 | 295 139th Ave | | |
| 077B 1222 004 03 | 14173 Washington Ave | | |
| 077C 1232 006 07 | 501 143rd Ave | | |

*THESE 3 PROPERTIES ARE OWNED BY FAITHFELLOWSHIP CHURCH AND ARE INCLUDED IN THE ANALYSIS, BUT ARE NOT PROPOSED FOR THE OVERLAY*

# City of San Leandro
## Community Development Department
## Planning Services Division
## Staff Report

**DATE:**    February 22, 2007

**TO:**    Planning Commission

**FROM:**    Debbie Pollart, Planning Manager

**SUBJECT:**    Matter of consideration of amendments to Article 3 – Definitions, Article 5 – Residential, Article 13 – Special Review Overlay District, and Article 17 – Off-street Parking & Loading Regulations of the Zoning Code; and consideration of amendments to the Zoning Map. Zoning Code amendments will include deleting definitions for 'Clubs & Lodges' and 'Religious Assembly' and replacing them with 'Assembly Uses', and making changes to Article 5 for consistency with the new definitions; creating a new Assembly Uses Overlay District; and modifying the parking standards for consistency with 'Assembly Uses'. The Zoning Map will be modified to include 197 properties with an Assembly Use (-AU) Overlay District, which would allow assembly uses to be conditionally permitted on these properties.

---

## SUMMARY AND RECOMMENDATION

In response to an application by a church to re-locate to a non-residential district, staff analyzed the possibility of allowing assembly uses on appropriate non-residential sites, and expanding the land use options for assembly uses.

Staff recommends that the Planning Commission review the proposed Zoning Code text and map amendments, the findings for the proposed rezone, and the associated environmental documentation, and forward a recommendation of approval for the amendments and adoption of the Negative Declaration, and findings for approval of the rezone, to the City Council. The City Council meeting is tentatively scheduled for March 19.

## BACKGROUND

Faith Fellowship Church (FFC) recently purchased the property at 14600 Catalina (formerly occupied by MDL). On May 18, 2006, staff received an application from FFC requesting a Zoning Code amendment to conditionally permit Assembly uses in Industrial Limited (IL) zones, and to rezone their property from Industrial Professional (IP) to IL (thus setting up the possibility for review of a use permit for an assembly use at the 14600 Catalina site).

Although not currently codified in Article 3 – Definitions of the Zoning Code, assembly uses include the following two uses that are currently defined separately: Clubs and Lodges; Religious Assembly.

Currently, the Zoning Code conditionally permits Religious Assembly uses in R districts, and Faith Fellowship's current location at 577 Manor is zoned RS (PD), Residential Single-Family, Planned Development Overlay District.

A joint worksession with the Board of Zoning Adjustments and Planning Commission was held on October 19. Based upon policy and criteria set forth in the General Plan, staff presented two options for consideration: 1) Amend the Zoning Code to allow Assembly Uses as conditionally permitted in the IL zone; and 2) Apply an Assembly Use Overlay to identified areas. The direction given by the Board and Commission was for staff to move forward with consideration of Option 2. Subsequent to the joint work session, this option was presented to several advisory committees, including the West San Leandro/MacArthur Boulevard Redevelopment Area Advisory Committee, the Chamber of Commerce Government Affairs Committee, and the Joint Redevelopment Area Advisory Committee. At the December 7, 2006 Board of Zoning Adjustments meeting, the refined proposal for an Assembly Use Overlay was presented to the Board for comment. Available meeting minutes are attached.

## DRAFT ORDINANCE

The proposed amendments may be summarized with the following changes:

- Amend *Article 3 – Definitions*, delete 'Clubs and Lodges' and 'Religious Assembly' definitions and replace with new 'Assembly Use' definition;

- Amend *Article 5 – Residential*, to delete separate 'Religious Assembly' and 'Clubs and Lodges' terms and replace with 'Assembly Uses' (to be conditionally permitted in all R zones);

- Amend *Article 13 – Special Review Overlay District*, to include new sections addressing formation and applicability of an Assembly Use Overlay;

- Amend *Article 17 – Off-Street Parking and Loading Regulations,* to make consistent with other amendments;

- Amend the Zoning Map to show an Assembly Use (-AU) designation for those properties designated for the Assembly Use Overlay (underlying zoning designations will not change).

A current copy of the applicable Zoning Code sections, with proposed changes shown in strike-out and italics, and a map showing the proposed Assembly Use Overlay areas is included as an attachment to this report.

**DISCUSSION**

In evaluating the policy issue of expanding the locations where assembly uses could locate in the City, staff notes that analyzing this matter raises larger General Plan policy issues. Staff looked at the following overriding General Plan Policies for guidance:

▸ "The areas most suitable for conversion to non-industrial uses are those located adjacent to existing housing, or in areas which lack the amenities to meet the needs of modern industry. Such areas exist along San Leandro Boulevard, Alvarado Street, and Marina Boulevard" (Page 3-52 of the General Plan);

▸ General Plan Policy 10.04 *Industrial Sanctuary* – Protect the City's major industrial areas from encroachment by uses that are potentially incompatible with existing viable industrial activities, or which may inhibit the ability of industry to operate effectively; and

▸ General Plan Policy 33.04 *Separation from Sensitive Uses* – Provide adequate and safe separation between areas where hazardous materials are present and sensitive uses such as schools, residences and public facilities.

The following General Plan policies were also considered:

▸ Policy 7.09 – Build upon the locational strengths and transportation features of West San Leandro to support the area's continued development as a major industrial, technology, and office employment center. In accordance with the West San Leandro Plan, limit the encroachment of incompatible residential and retail uses into the area, and promote additional development and redevelopment with manufacturing, technology, warehouse and distribution, office/flex, and similar uses.

▸ Policy 7.10 – Facilitate the gradual transition of the South-of-Marina (SOMAR) area into a cohesive light industrial district characterized by light manufacturing, office/flex, research and development, bio-medical, e-commerce, and similar uses, along with complementary business services and employee amenities.

▸ Policy 13.01 – Ensure that future land use development decisions are in balance with the capacity of the City's transportation system.

In addition, Article 1 of the Zoning Code stipulates that the broad purpose of the Zoning Code is to protect and promote the public health, safety, and general welfare, and to implement the policies of the City of San Leandro General Plan. More specifically, the Zoning Code is intended to:

▸ Provide a precise guide for the physical development of the City in accord with the policies of the General Plan;

▸ Preserve the character and quality of residential neighborhoods and commercial and industrial areas consistent with the character of the development districts of the City;

▸ Promote the economic stability of existing land uses that are consistent with the development policies of the General Plan and protect them from intrusions by inharmonious or harmful land uses;

Article 7 – Industrial District indicates the following specific purposes:

▸ Provide appropriately located areas consistent with the General Plan for a broad range of manufacturing, distribution and storage, and service areas;

▸ Strengthen the City's economic base, and provide employment opportunities close to home for residents of the City and surrounding communities;

▸ Provide a suitable environment for various types of industrial uses, and protect them from the adverse impacts of inharmonious uses;

Based on General Plan policies such as those noted above, area specific policies and plans, and Zoning Code purposes, the following criteria were developed for evaluating appropriate locations for assembly uses, with the express objective of expanding the opportunities for assembly uses beyond the residential zoning districts:

- *Site is not located along a major commercial corridor* (identified as E. 14th Street and Marina Boulevard between San Leandro Boulevard and Merced Street);

- *Site is not located within the following General Plan Focus Areas: Downtown, Bayfair, Marina Blvd/SOMAR, or West San Leandro* (each of these Focus Areas is governed by one or more of the following, which governs future development – special study/guidelines, special overlay district, or location within a redevelopment area);

- *Site is not located in a regional-serving retail area* (identified as Greenhouse Marketplace, Westgate, Marina Square, and 'old' Target site);

- *Site is not located inside the ½-mile study area identified for the Downtown Transit-Oriented Development (TOD) Strategy;*

- *Site abuts or is within ¼ mile of an arterial street* (as identified in the Circulation Element of the General Plan);

- *Site is not located in a Residential Zone* (Assembly uses are already conditionally permitted in residential zones, so would not produce new areas for assembly uses to locate if considered);

- *Site is not considered public land, and is not zoned Public Service (PS), Open Space (OS), or Commercial Recreation (CR); property is not owned by an Exempt Public Agency, or leased/owned by a public utility* (these areas represent properties and uses that are unlikely to change);

- ***Overlay Area must allow a contiguous area greater than or equal to two acres.*** (This figure was derived from research indicating that large assembly uses require a minimum 2-acre site to accommodate bigger building size and to allow for adequate on-site parking. Staff is not recommending that a minimum acreage be included as part of the Zoning Code text amendments, and suggests that future applications for amendments to the Assembly Use overlay that may be less than 2-acres in size be given flexibility in a manner that would conform to the Religious Land Use and Institutionalized Persons Act [RLUIPA].)

After inputting General Plan policy and Zoning Code criteria, several potential overlay areas, located throughout the City, were derived where staff recommends assembly uses could be conditionally permitted. This would be accomplished via a Zoning Code text amendment to define the Assembly Use Overlay and then a Zoning Map amendment designating all of the applicable areas with the new Assembly Use Overlay. Under this proposal, the underlying zoning designations for each of the individual properties would not change, similar to how the -S and -PD Overlay Districts are utilized. In addition, implementation of the Assembly Use Overlay would not affect the existing use of the property, or the current list of permitted uses. It would allow the property owner to apply for a conditional use permit for an assembly use in the future, where such uses are not currently permitted. With this option, a total of 197 properties, encompassing approximately 211.1 acres, would be rezoned with the Assembly Use overlay.

Staff notes that Religious Assembly and Clubs & Lodges uses (to be re-defined as Assembly Uses) would continue to remain conditionally permitted in R Districts.

In order to keep the Zoning Code up-to-date, staff has provided a new definition in Article 3 for Assembly Uses that encompasses the previous separate definitions for 'Religious Assembly' and 'Clubs and Lodges'. These two definitions would be deleted and the new Assembly Use definition would take its place. Article 5 would be amended to account for the new terminology. Article 17, related to off-street parking standards would also be amended to account for the new single 'Assembly Uses' definition. The new section added to Article 13 would outline the purpose of the 'Assembly Use' overlay, and provide additional performance standards that would be considered under future conditional use applications for an assembly use.

## ENVIRONMENTAL ANALYSIS

A Negative Declaration and Initial Study Checklist has been prepared for the proposed ordinance to amend the Zoning Code for inclusion of an Assembly Use Overlay District, as well as rezoning individual properties identified with the overlay, in order to meet the requirements of the California Environmental Quality Act (CEQA). The mandated 20-day public review period established for the Negative Declaration is February 1 – February 20, 2007. As of the writing of this report, no comments on the environmental document have been received.

**PUBLIC OUTREACH**

Legal requirements for notification of this meeting included posting of the meeting agenda at City Hall a minimum of 72 hours in advance of the meeting date. In addition, a legal ad was placed in the Daily Review and courtesy notices were sent to all property owners identified for the proposed Assembly Use Overlay areas.

**RECOMMENDATION**

Staff recommends that the Planning Commission review the proposed Zoning Code text and map amendments, the findings for the proposed rezone, and the associated environmental documentation, and forward a recommendation of approval for the amendments and adoption of the Negative Declaration, and findings for approval of the rezone, to the City Council. The City Council meeting is tentatively scheduled for March 19.

**ATTACHMENTS**

- Proposed Zoning Code Amendments (Draft Ordinance)
- Proposed Zoning Map Amendments
- Recommended Findings for Approval of Rezone
- Negative Declaration and Initial Study Checklist
- Excerpt of Minutes from December 7, 2006 Board of Zoning Adjustments meeting
- Excerpt of Draft Minutes from the December 20, 2006 West San Leandro/MacArthur Boulevard RAC meeting
- Excerpt of Draft Minutes from the January 17, 2007 Joint RAC meeting
- Excerpt of Minutes from October 19, 2006 joint Board of Zoning Adjustments/Planning Commission work session

---

**Item 6:  Public Hearings**

**(a) Matter of consideration of amendments to Article 3 – Definitions, Article 5 – Residential, Article 13 – Special Review Overlay District, and Article 17 – Off-Street Parking & Loading Regulations of the Zoning Code; and consideration of amendments to the Zoning Map. Amendments will include deleting definitions for "Clubs & Lodges' and 'Religious Assembly" and replacing them with "Assembly Uses," and making changes to Article 5 for consistency with the new definitions; creating a new Assembly Uses Overlay District; and modifying the parking standards for consistency with "Assembly Uses." The Zoning Map will be modified to include 197 properties with an Assembly Use (-AU) Overlay District, which would allow assembly uses to be conditionally permitted on these properties.**

**The proposed ordinance for the adoption of Zoning Code amendments related to Assembly Uses underwent environmental analysis, for which an Initial Study Checklist and Negative Declaration were prepared. The public review period established for the Negative Declaration commenced on February 1 and concludes on February 20. To date, no comments have been received.**

**Secretary Pollart** briefed the Planning Commission on this proposal, beginning by outlining its background. Last May Faith Fellowship Church (FFC) requested a Zoning Code amendment to conditionally permit Assembly Uses in IL (Industrial Limited) zones, and to rezone the site at 14600 Catalina (formerly occupied by MDL) from IP (Industrial Professional) to IL. The proposal before the Planning Commission does not address that specific request, but the request did trigger the review of Assembly Uses that in turn led to recommendations for the Commission's action. At this time, the Zoning Code contains no specific definition for "Assembly Uses," but rather includes separate definitions for and references to "Clubs and Lodges" and "Religious Assembly." The current Zoning Code conditionally permits:

- Religious Assembly use in R districts and
- Clubs and Lodges use in RO and RM districts.

FFC's current location at 577 Manor is zoned RS (PD), (Residential Single-Family, Planned Development Overlay District). The Planning Commission and the BZA discussed the matter during a joint work session on October 19. Based on policy and criteria set forth in the General Plan, staff presented two options for consideration to create additional opportunities for Assembly Uses, which are currently limited to residential districts. The two options: 1) Amend the Zoning Code to allow Assembly Uses as conditionally permitted in the IL zone; or 2) Apply an Assembly Use Overlay to identified areas. The direction given by the BZA and Planning Commission was for staff to move forward to develop a recommendation on Option 2. Following

**ATTACHMENT E**

the joint work session, Planning Department staff went back to work on the overlay issue using several General Plan policies as a framework. They sought areas:

- Suitable for conversion to non-industrial uses (namely those located adjacent to existing housing, or in areas lacking the amenities to meet the needs of modern industry).
- Outside the "Industrial Sanctuary," which was created to protect major industrial areas from encroachment by potentially incompatible uses.
- Separated from sensitive uses (i.e., with adequate and safe separation between schools, residences and public facilities and areas where hazardous materials may be present).
- That build upon transportation features of West San Leandro.
- That would help ensure future land use development decisions that are in balance with the transportation system's capacity.

Staff also examined applicable Zoning Code policies, including physical development in accordance with the policies of the General Plan that:

- Preserve the character and quality of each of the distinct districts (residential, commercial, industrial).
- Promote the economic stability of existing land uses in the city.
- Protecting existing land uses from intrusion by inharmonious or harmful uses.

Within that general framework, staff developed several criteria for Assembly Use overlay sites. Appropriate sites would:

- Abut or lie within a quarter mile of arterial street (as identified in the Circulation Element of the General Plan) to ensure adequacy of street system.
- Contain at least two contiguous acres (not each individual property, but the aggregate), to accommodate large Assembly Uses.

They would *not* be located:

- Along major a commercial corridor (such as East 14th Street and the Auto Mall portion of Marina Boulevard – between San Leandro Boulevard and Merced Street).
- Within certain General Plan "focus areas," which for the most part are covered by the General Plan or long-range planning studies, special overlay districts or are in redevelopment areas with guidance for future development already in place (including downtown, Bayfair, Marina and South-of-Marina (SOMAR), or West San Leandro.
- In a regional-serving retail area, such as Greenhouse Marketplace, the "old" Target site at Hesperian and Lewelling, Bayfair, Westgate and other shopping areas.
- Within the Downtown Transportation-Oriented Development (TOD) study area, a half-mile circle radiating from Davis and East 14th Streets.
- On sites considered public land, zoned Public Service (PS), Open Space (OS), or Commercial Recreation (CR); owned by an Exempt Public Agency, or leased/owned by a public utility (these areas represent properties and uses that are unlikely to change.

Moving roughly north to south, the potential overlay areas meeting those criteria include a total of 197 properties encompassing a total of 211 acres:

- Along MacArthur Boulevard just north of the Evergreen site.

- The Park Street "Island," located between San Leandro Boulevard and Park Street, next to Siempre Verde Park and near a new industrial building.
- An area north of Marina and west of San Leandro Boulevard
- The area around where Washington Avenue and San Leandro Boulevard intersect
- Down Washington Avenue, in an area that begins near the Ghirardelli factory and proceeds south past the Floresta-Halcyon corner.
- In the area around Hesperian Boulevard and Springlake Drive
- A commercial area in the Manor
- An area south of Lewelling Boulevard
- The Windsor Square Shopping Center

The result of that effort is a proposal that includes text amendments to the Zoning Code and corresponding changes to the Zoning Map. Secretary Pollart explained that most of the changes are designed to establish the term "Assembly Use," essentially consolidating "Clubs and Lodges" and "Religious Assembly" into a single definition, and reflect that term wherever "Clubs and Lodges" and "Religious Assembly" appear currently. This would amend Article 3 (Definitions), Article 5 (Residential) and Article 17 (Off-Street Parking). Additionally, a new section in Article 13 (Special Review Overlay District) would create an overlay district for Assembly Use, outline the purpose of this overlay, and provide additional performance standards to be considered under future conditional use applications for an assembly use. Specifically, a Use Permit would be required for new assembly use or substantial expansion or alteration of an existing use. Review criteria and conditions of approval would be made in accord with Sections 5-2212 and 5-2214. Secretary Pollart emphasized that the proposed overlay would not change underlying zoning of any of the properties; it would merely add Assembly Use as conditionally permitted. It would thus affect neither existing uses nor existing tenants. However, it would affect the ability to locate adult-oriented businesses in the new overlay district in industrial zones, because no adult-oriented businesses may be established on properties with overlays. The Assembly Use Overlay proposal reflects input from several bodies, including:

- The City Council Business & Housing Development Subcommittee
- Joint BZA/PC Work Session
- Chamber of Commerce Government Affairs Committee
- West San Leandro/MacArthur Boulevard Redevelopment Area Advisory Committee saw no harm in the approach to the overlay district for assembly uses, but does not support assembly use as a conditionally permitted use in any area zoned industrial.
- Joint Redevelopment Area Advisory Committee concurred with the idea of creating an overlay district for assembly uses and made two additional recommendations. If a nonprofit assembly group relocates from a property, they want to see that property return to a taxable use once the property is vacated. Also, this group wanted the properties along Washington Avenue removed from the proposed overlay.

Courtesy notices went out for the December BZA meeting as well as tonight's Planning Commission meeting. Recipients included all 197 potentially affected property owners. Secretary Pollart reported that a couple of callers inquired about the proposal, but no one expressed concerns about the overlay. As required by law (CEQA), staff prepared an Initial Study/Negative Declaration; no comments were received within the mandated 20-day public review period

(February 1-20). In summary, Secretary Pollart indicated that staff is seeking a Planning Commission recommendation to forward to City Council to:

- Adopt the Negative Declaration
- Adopt of an ordinance amending the Zoning Code for Articles 3, 5, 13 and 17
- Rezone the areas identified with the Assembly Use Overlay
- Amend the Zoning Map accordingly.

**Chair Perras** opened the public hearing.

**Peter MacDonald**, 400 Main Street, Pleasanton, spoke on behalf of Faith Fellowship Church. He identified himself as a former urban planner and former city attorney who now practices land use law. He indicated that it is unusual for a church to contact him, because they rarely require the services of land-use attorneys. Mr. MacDonald said that he had met with parishioners, and is "shocked" by the process they've found themselves in. They have been involved in it for a year already, and it appears there is another year to go. Mr. MacDonald suggested that there may be potential for better decisions if the City engages in parallel process rather than linear process for some of the necessary approvals. By way of background, he said that Pastor Gary Mortara has built a thriving congregation of 1,500 people that has outgrown their church site. The facilities, located in a residential area, have become inadequate and parking is insufficient, so they began looking for another location. In early 2006, they found an ideal building in an IP District in San Leandro. It is a 46,000-square-foot building with 188 parking spaces, all situated on 3.65 acres with good access via freeway and nearby roads. They talked to the neighbors, who indicated that they would welcome the church, in part because the church's busiest times are off-peak days and hours – Sundays and evenings – when businesses tend to be closed. Mr. MacDonald suggested that rational land use planning, which he called the purpose of the whole process, would consider this a real improvement in the neighborhood that is not only compatible but meets the needs of the user perfectly. He noted that Valley Business Park in Pleasanton at one time had four operating churches and never had a problem with them. He said it is a very functional land use for the way churches operate now, especially with larger congregations. He said that Pastor Mortara and his committee met with the City Manager and the city planners in March of 2006. After getting direction from staff, they filed a complete application for rezoning to light industrial (from industrial park), and to add assembly use as a conditional use. It is now nine months later. Mr. MacDonald said that the problem is with the process. He contends that the proposed assembly ordinance before the Planning Commission was created in a vacuum, and that it does not include the very parcel that started the whole process. He suggested that the City could and should address this ordinance together with the rezoning of the parcel that initiated the process. By doing it sequentially, he said, the church faces four different processes before they can occupy the church, including another CEQA evaluation, another rezoning, and an assembly overlay process, followed by the whole procedure of applying for a conditional use permit. He described this scenario as inefficient, as "process gone crazy." He suggested that the Planning Commission continue this item, have staff incorporate the Faith Fellowship parcel in the proposal, and come back to the Commission so the decision would not be made in a vacuum. If the site is vetted, neighbors are noticed, and criteria of the ordinance and the circumstances of the site all came together, it may be that the ordinance itself would improve because at this time it does not address the "real world" that it will face the first time out. It would streamline the process. Also, he pointed out that if it has been fully vetted, it would be possible under the assembly overlay ordinance to do an administrative conditional use permit, because all the

Case 3:07-cv-03605-PJH    Document 132-17    Filed 08/27/2008    Page 13 of 25

neighbors would have been here. And the church would not have to go through process after process after process, while they are paying $35,000 a month and cannot occupy the property.

**Chair Perras** invited others from the audience to speak.

**Robert Battinich**, 2014 Evergreen Avenue, said that he owns various properties throughout the City, about 13 acres, several commercial. Most business people are busy with their businesses, he noted, trying to make a living. As for the $35,000 a month that the church is paying, he said that was a choice they made when they purchased the property. Instead, they might have purchased the property on condition that it could be rezoned. He said his big question is whether it is morally right and correct to circumvent other people's rights and other businesses' rights, doing industrial work in an industrial area. Why, he asked, should zoning laws change to accommodate the church's needs? While Mr. Battinich said that he has nothing against the church, he does oppose what he considers the church's use of force against business, because each member of the congregation represents a voice. He considers this unfair to the other organizations.

**Commissioner Wohltmann** asked whether Mr. Battinich was making a general philosophical point or if he was taking issue with the specific issue of Faith Fellowship Church.

**Mr. Battinich** said he is concerned that the church purchased the property without knowing whether they could use it. He said they could have made different choices.

**Jeff McGallian**, 13885 Tahiti Road, noted that the delays in the process created the problem, because everything seemed it would flow in a timely, expeditious manner. The church did not buy the property to force the issue; rather they understood that the system and procedures would take much less time. Mr. McGallian also noted that problems that Faith Fellowship is having in its current location, primarily in parking. He said the desire is to streamline the process so that the delay does not continue, because the church's relocation plan is a positive reinforcement to the City, and does not detract from the community and its efforts to bring cohesiveness among church, community, and residents. He said that the proposed site is a perfect area, and that the church is trying to work within the confines of the community to make this a conducive situation. Mr. McGallian urged the Commission to review this with a mind to streamlining the process.

**Commissioner Dlugosh** asked what the Commission is supposed to be making a decision about – the Faith Fellowship Church or the ordinance as presented.

**Secretary Pollart** explained that the only proposal before the Commission concerns the zoning text and map amendments for the AU overlay. Staff has advised Faith Fellowship, based on advice from the City Attorney's office, that zoning code amendments need to be accomplished first, going through the Planning Commission and the City Council. Then, assuming City Council approval, staff would ask Faith Fellowship to revise their application, modified to be included in the overlay, and bring that back to the Planning Commission.

**Mr. McGallian** added that the whole idea was to streamline the process. They just wanted the procedure to go forward in a timely manner, and not delay as it did for the first nine months.

**Commissioner Collier** asked about the timeframe. If the Planning Commission approves the overlay proposal and sends it to City Council, when will it go to City Council and how long will it take them? Will it be months, a year?

**Secretary Pollart** said that the issue is tentatively on the City Council's March 19 agenda, which is the minimum normal time it takes an item to go from the Planning Commission to the City Council. She said that she advised the applicant that if City Council approves the amendments on March 19, the Planning Department will modify the church's application on March 20 and get it ready to take to the next available Planning Commission meeting, probably in April. Then it would go back to the City Council in May.

With no further speakers stepping up, **Chair Perras** asked for a motion to close the public hearing.

> ### Motion to Close Public Hearing
> ### (Dlugosh / Collier; 6 Ayes, 0 Noes)

**Chair Perras** then invited Commissioners to discuss the proposal. There was no further discussion.

> ### Motion to Forward to the City Council with
> ### a Recommendation for Approval
> ### to Adopt Ordinance to Amend Zoning Code Articles 3, 5, 13 and 17,
> ### to Rezone Areas with Assembly Use Overlay
> ### to Amend Zoning Map accordingly
> ### and to Adopt Negative Declaration
>
> ### (Dlugosh / Collier; 6 Ayes, 0 Noes)
> ### Motion passed

**Vice Chair Reed** complimented staff on the scene and behind the scenes for the tremendous amount of work they put into this proposal, and the excellent proposal put together.

**Chair Perras** added his compliments to the staff.

Case 3:07-cv-03605-PJH     Document 132-17     Filed 08/27/2008     Page 15 of 25

---

### Item 6:  Public Hearing

**(b)     Matter of consideration of amendments to the Zoning Code, including: Article 3 – Definitions, deleting the Clubs and Lodges and Religious Assembly definitions and providing a new Assembly Use definition; and adding new Article 13.1 Assembly Use Overlay District.**

---

**Planning Manager Pollart** stated that staff had received an application from Faith Fellowship Church to amend the zoning code to conditionally permit assembly uses in the IL Industrial Limited District. The church was in contract to purchase a site in an Industrial Professional District, but desired to change it to IL, based upon discussions with staff concerning the best way to proceed with the application. Currently, assembly uses were indicated as Clubs and Lodges and Religious Assembly. At the work session, two options were presented:

- Option 1:  Allow assembly uses as conditionally permitted in IL Zones, effective citywide.

- Option 2: Apply assembly use overlay to identified areas.

Option 2 was identified as the desired option at the joint work session. Several General Plan policies were used as a base for the amendments. The criteria were:

- Not located along commercial corridors to preserve the commercial characters
- Properties not identified as IG Industrial General or IP Industrial Professional
- Industrial zones could be used if the site was near the periphery of the industrial uses to avoid breaking up the industrial bases
- Minimum two-acre sites to address large assembly uses
- Properties that abutted or were one-quarter mile from an arterial streets to avoid impacting residential neighborhoods
- Vacant or underutilized properties that might be available in the future

She passed a large map to the Board that showed the entire city with existing religious assembly uses, IL zoned properties (Option 1), 13 overlay areas, and the existing Faith Fellowship Church site and its new proposed site. She described each area. Clubs and Lodges and Religious Assembly Uses would be deleted and all would be under Assembly Uses, which would be conditionally permitted in R Districts.

Article 13 would allow establishing an Assembly Use Overlay District. Additional criteria were being considered that would address impacts that larger assembly uses might have on parking and transportation.

Article 17 would, essentially, be a cleanup that would delete Clubs and Lodges and replace with Assembly Use. The parking requirement would be modified to provide the ability to require more parking, if needed.

All of the identified areas on the map would be rezoned with the special Assembly Use Overlay, with the exceptions noted. If the Assembly Use Overlay were instituted, it would not change the underlying zoning of the individual parcels or the current use of a property. The overlay would

**ATTACHMENT F**

Case 3:07-cv-03605-PJH    Document 132-17    Filed 08/27/2008    Page 16 of 25

affect the ability of adult oriented businesses to locate in certain of the areas, which could not locate in any I District or be within 1,000 feet of religious assemblies or any other adult oriented business. An Initial Study and Negative Declaration would have to be performed, which required a 20-day public review period. The West San Leandro-MacArthur Redevelopment Advisory Committee was scheduled to hear this on December 20th. Planning Commission would review it after the Negative Declaration was prepared, tentatively scheduled for January 11th. It should be ready for review by the City Council sometime in late February.

**Member Eliason** asked if a religious organization could rent space within a shopping center or would the whole site be redeveloped.

**Planning Manager Pollart** replied that a religious organization would be allowed to rent a tenant space.

**Chair Raposo** asked if there would be any size limits within the Assembly Use.

**Planning Manager Pollart** answered that he was correct. A possibility was to differentiate between small and large assembly use.

**Chair Raposo** expressed concern about mega church or mega theater assemblies. He would like staff to look into limiting the size of such establishments. He wondered how parking would be tailored to the size of the assembly, which he understood was the situation with the church that was previously mentioned.

**Planning Manager Pollart** stated that activities outside of the main assembly area but would affect the parking situation, would fall under the catch-all "or as required by the use permit." Additional parking could be required beyond the standard that was being proposed.

**Chair Raposo** opened the public hearing.

**Gary Mortara**, 577 Manor Boulevard, Pastor of the Faith Fellowship Church, stated that he was confused about how what had been discussed would affect the building his church wished to purchase on January 1st.

**Planning Manager Pollart** replied that the proposed amendments did not speak specifically to the property the speaker was in contract with. That site was zoned IP, rather than IL. This was a clean-up of the CZC.

**Pastor Mortara** asked what the church had to do to address the property on Catalina Street that they were concerned with.

**Planning Manager Pollart** suggested that he request that the site be included as one of the overlay areas.

**Pastor Mortara** asked if that was something he could do at this time. He had understood that was something that he had already requested.

**Planning Manager Pollart** told him that his application had opened up a lot of questions that staff had to consider from a city-wide standpoint, not only as it affected the property he wished to purchase. She offered to talk with him after the meeting.

**Chair Raposo** clarified that these zoning changes came about as a result of the speaker's application. However, his case was isolated and it would take special attention from staff. He asked **Planning Manager Pollart** to clarify what the speaker's next step could be.

**Planning Manager Pollart** stated that it would be appropriate to make his request to the Board, which would allow the future site of his church to be included in the overlay areas.

**Member Marr** stated that she knew the speaker had attended the joint work session and she asked when the speaker's original application was filed.

**Pastor Mortara** replied that the application was filed May 18th. He had originally contacted staff in March when they were first considering making an offer on the property.

**Member Marr** agreed that it would be appropriate for the applicant to make his request to the Board tonight. She recalled that he had mentioned that he had a deposit on the site, which he could lose by a certain date.

**Vice Chair Goldt** reiterated that this hearing tonight did not address the speaker's specific situation, so this was not the venue for his topic. She wondered how he could "still be out on a limb, somewhere."

**Planning Manager Pollart** stated that an application had been submitted regarding the site on Catalina for modifying the zoning code that would allow religious assembly use. The site was currently zoned IP. Originally, staff considered rezoning the IL site, then changing the zoning to allow the church to occupy the property. However, the application opened up the need to review all IL sites in the city. The Business Development Subcommittee were met with for direction to staff, the options were presented during the joint work session in October; and the amendments were created and brought forward.

**Member Marr** asked if staff had been communicating with Faith Fellowship all along.

**Planning Manager Pollart** responded that staff had stayed in communication with the applicant and his other representatives. They had been apprised of all the meetings and they had attended them.

**Vice Chair Goldt** asked if the applicant's purchase of a new site was entirely on hold until this was settled city-wide.

**Member Eliason** defended staff by reminding everyone that the applicant wanted to relocate where, currently, it was not allowed. Staff could have brought this application to the Planning Commission for denial, rather than working with this applicant to try to work with the Zoning Code to allow them to relocate in this location. Yes, the applicant was caught up, but he was asking for something that the Code did not allow at this time. The industrial base was very large and profitable and it should be protected. Much consideration should be taken before other uses

were allowed. She reminded the applicant that when his January 1st deadline arrived, he would not have surety, because the timeline was longer than that.

**Planning Manager Pollart** asked if the Board would want to consider that individual area to be included in the Overlay Area. It had not been included because it did not meet the criteria that had been developed for assessing assembly use. However, the Board could recommend that it be looked at as an overlay area, which could move on to the Planning Commission and the City Council.

**Vice Chair Goldt** asked if the Kaiser facility would be in that area and she wondered if the two facilities would impact each other.

**Planning Manager Pollart** stated that the Kaiser site would be at Marina and Merced. She displayed the map, which showed the two sites.

**Chair Raposo** asked if the city had been consulted about relocating in this location before agreeing to the purchase.

**Pastor Mortara** stated that he had met with staff about it in March. The growth of his church had started to cause problems in the neighborhood, so they had found a building that would fit their needs. It was away from residences and no one was there on Sunday mornings. His understanding was that the BZA would approve the rezoning and his application would move on to Planning Commission and City Council.

**Chair Raposo** asked if the Board wished to add the site to the overlay area.

**Vice Chair Goldt, Member Pearson and Chair Raposo** agreed that they did not have enough information to make that decision at this meeting.

**Member Marr** asked if this site could be added to the overlay district after the proposal had been heard by the Commission and Council.

**Planning Manager Pollart** replied that it could be added at the Planning Commission hearing. She would include it with the environmental analysis when this proposal was heard by the Planning Commission. She asked if the Board wanted to review the applicant's proposal. If so, the Board would have to hear it before it went to Planning Commission.

**Member Eliason** suggested that the applicant's proposal be added to the environmental review, which would allow it to be analyzed versus the criteria and analyzed for its environmental impacts. Then, it would be ready to be added for a decision by the Planning Commission or the City Council.

**Pastor Mortara** asked for clarification on how the above suggestion would affect his application.

**Member Eliason** explained that an environmental review would need to be performed on the environmental impacts of the locations that had been identified for the overlay. Traffic, air quality, biological and other impacts would be studied to identify how the assembly use could

impact the adjoining uses from being in that location. If his application was a part of that environmental review, an assessment of those environmental impacts would be available to the Commission and Council to allow them to add his proposal to the other proposed overlay districts and to make an informed opinion.

**Ed Bullok**, 25103 Vista Greens Court, Hayward, stated that he was a member of Faith Fellowship Church. He disagreed with staff that the proposed new site for the church did not fit the criteria for rezoning. He read the listed criteria (above, under Option 2) starting on page 2, which he believed were met by the proposed site.

**Planning Manager Pollart** stated that at the bottom of page 2, it stated that properties were not be designated IG or IP; this property was designated IP.

A discussion ensued concerning zoning, city overlays and the two options that had been presented at the joint work session in October, of which Option 2 had been chosen. It was recommended that the speaker meet with staff to clear up the confusion about the church's proposal and the city's wide ranging proposals.

---

### *Motion to Close the Public Hearing*
### *(Marr/Eliason; 5 Ayes, 0 Noes, 2 Absent-Chin, Sidari)*

---

**Member Eliason** believed in protecting the city's industrial areas and she expressed concerned about allowing incompatible land uses in those areas. However, she was more concerned with allowing churches to locate in vacant tenant spaces in the two marginal shopping centers. In her opinion, those spaces would slowly contribute to the further decline of the centers, because they were largely unused except on Sundays.

**Planning Manager Pollart** stated that all of the comments made would be forwarded to the Planning Commission.

# MEETING OF THE
# WEST SAN LEANDRO/MACARTHUR BOULEVARD
# REDEVELOPMENT ADVISORY COMMITTEE

## DECEMBER 20, 2006 MEETING SUMMARY

| | |
|---|---|
| Members Present: | Dale Reed, Gary Naman, Carole Rinaldi, Jake Francisco, John Faria, Douglas Federighi, Linda Lazzeretti, Larry Norry, Patricia Raposo, and Dan Walters |
| Members Absent (excused): | Larry Norry |
| City Staff Present: | Luke Sims, Ryan Evans, Tim Ricard, Cynthia Battenberg, Debbie Pollart, Keith Cooke, and Reh-Lin Chen. |

Proposed Zoning Text Amendment to Allow General Assembly in Industrial Limited (IL) Zones.

Debbie Pollart, Planning Manager, provided the RAC with a PowerPoint Presentation (attached) which provided an overview of the proposed zoning text amendment which would allow general assembly uses in industrially-zoned areas in San Leandro. Pollart explained that one of the catalysts for this proposed amendment was an application from Faith Fellowship Church (FFC) to occupy a site at 14600 Catalina (currently zoned as Industrial Park (IP)), as well as a request from FFC to rezone the site to Industrial Limited (IL). In response to this request, the Community Development Department considered two options; the first of which would allow assembly uses to be conditionally permitted in IL zones, and the second of which would consider a zoning overlay option much like the (S) overlay district in the City's commercial corridors. Pollart explained that it was recommended by a joint meeting of the Planning Commission and Board of Zoning Adjustments (BZA) that the creation of a special review overlay district (the second option considered) was the best way to address the issue and that 13 areas (further described in the attached PowerPoint presentation) would be considered for designation as a special review overlay district. Pollart then proceeded by describing some of the criteria developed for the overlay area's which include, but are not limited to: a site not being located along a major commercial corridor, a site not designated Industrial General (IG) or IP, a site which is a minimum of two acres in size, a site which abuts or is within ¼ mile of an arterial street, and a site which is vacant or currently underutilized. Pollart then continued by stating that the next step in addressing this issue would be for City staff to prepare an Initial Study/Negative Declaration for rezoning of identified properties within the Assembly Use Overlay District and that this issue would then go before the Planning Commission and the City Council at meetings tentatively scheduled in January and February, respectively.

At this point, discussion ensued among RAC members during which a number of questions were asked and statements were made. RAC member Faria stated that, as he understood the issue, FFC would still not be able to use the Catalina site for an assembly use as it is currently zoned

**ATTACHMENT G**

IP. Pollart responded by stating that he was correct. Luke Sims, Business Development Manager, added that it is important for the RAC to remember that 14600 Catalina is actually not in the West San Leandro/Macarthur Boulevard Redevelopment Project area, but that this issue comes before the RAC because a change in the zoning code would trigger a change in the redevelopment project area plan. RAC member Federighi echoed and supported Sims' comments as he stated it was important for the RAC to consider the issue as a whole, rather than specifically concentrating on the application filed by FFC.

RAC member Federighi continued by stating that he was supportive of the BZA recommendation that a special overlay district would be most effective in addressing proposed assembly-type uses in San Leandro. RAC member Walters also stated that he supported the recommendation of the BZA and also voiced concern regarding the precedent which would be set if the site at Catalina were rezoned to IL. In response to this, Pollart also added that a rezone of the Catalina site could also potentially set precedent for spot-zoning in industrial areas.

At this point, the RAC deemed it appropriate to make two separate motions to address what they saw as two separate issues relating to the proposed zoning text amendment. In this, RAC member Walter moved for a motion that the RAC sees "no harm" in the BZA-recommended approach which would create a special overlay district for assembly uses.

**M/ Dan Walters; S/ John Faria; Motion Carried Unanimously**

RAC member Faria moved for a second motion in which the RAC did not support assembly uses as a conditionally permitted use in any areas which are zoned industrial.

**M/ John Faria; S/ Gary Naman; Motion Carried Unanimously with Dale Reed Abstaining**

# ALAMEDA COUNTY - CITY OF SAN LEANDRO REDEVELOPMENT ADVISORY COMMITTEE JOINT REDEVELOPMENT PROJECT AREA

## January 17, 2007 MEETING SUMMARY

| | |
|---|---|
| Members Present: | Charles Gilcrest (chair), Jim Begier (co-chair), Tom Dlugosh, Dan Gatto, Dave Jorgenson, Robert Battinich, Robert A. Lindstrom, Robert Kvam and Sally Kellman |
| Members Excused: | Charles Pershing |
| City Staff Present: | Luke Sims, Ryan Evans, Debbie Pollart and Tim Ricard |

## I. Roll Call

The meeting began at approximately 5:00 PM with roll call.

## II. Public Comment

None.

## III. Action Items

Approval of November 15, 2006 Meeting Summary

**M/Gilcrest, S/Begier; Motion Carried**

Proposed Zoning Text Amendment to Allow General Assembly in Industrial Limited (IL) Zones.

Debbie Pollart, Planning Manager, provided the RAC with a PowerPoint Presentation which provided an overview of the proposed zoning text amendment to allow general assembly uses in some industrially-zoned areas in San Leandro. Pollart explained that one of the catalysts for this proposed amendment was an application from Faith Fellowship Church (FFC) to occupy a site at 14600 Catalina (currently zoned as Industrial Park [IP]), as well as a request from FFC to rezone the site to Industrial Limited (IL).

In response to this request, the Community Development Department considered two options. Option 1 would allow assembly uses to be conditionally permitted in IL zones. Option 2 would consider a zoning overlay option much like the (S) overlay district in the City's commercial corridors. Pollart reported the recommendation of a joint meeting of the Planning Commission (PC) and Board of Zoning Adjustments (BZA) was Option 2,

**ATTACHMENT H**

the creation of a special review overlay district, was the best way to address the issue. Staff identified 13 areas for consideration for designation as a special review overlay district. Pollart described the criteria developed for the overlay area which include, but are not limited to: 1) a site not located along a major commercial corridor; 2) a site not designated Industrial General (IG) or IP; 3) a site which is a minimum of two acres in size; 4) a site which abuts or is within ¼ mile of an arterial street; and 5) a site which is vacant or currently underutilized. Pollart stated that the next step in addressing this issue will be for City staff to prepare an Initial Study/Negative Declaration for rezoning of identified properties within the Assembly Use Overlay District and schedule this issue for Planning Commission and City Council consideration at meetings tentatively scheduled in January and February, respectively.

An extensive discussion then ensued among RAC members, focusing on five main issues. These issues included how the zoning code amendment would affect San Leandro's industrial base, the legal issues involving limiting Religious Assembly uses, the noticing of the affected businesses, which study areas should or should not be included in the overlay and how to deal with the a property after a non-profit use has vacated.

RAC Chair Gilcrest stated the proposed zoning/amendments could affect property owners by potentially changing the character of industrial areas but also pointed out that these changes would provide property owners with more options for potential purchasers of their property. RAC Member Jorgensen stated that the due to the legal requirements surrounding religious uses, the overlay district was important in order to provide sufficient locations of churches. However, if the property owners do not want the overlay on their property, those properties should be removed from the zoning amendment. Pollart explained that staff had created a specific set of criteria and that consistency when applying the criteria was important.

The RAC made three separate motions to address distinct issues which had come to light through the discussions.

**M/Jorgenson, S/Kellman that the RAC concurs with the PC/BZA recommended approach to create a special overlay district for assembly uses. Carried 8-0 with Dlugosh abstaining.**

**M/Gilcrest, S/Battinich to recommend that properties which are occupied by a non-profit assembly use relocating within the City be encouraged to return to a taxable use once the property is vacated. Carried 8-0 with Dlugosh abstaining.**

**M/Battinich, S/Jorgenson to recommend that Overlay Area #5 (Washington Ave) be removed from the proposed zoning code amendment. Carried 5-1 with Dlugosh and Kellman abstaining.**

Case 3:07-cv-03605-PJH    Document 132-17    Filed 08/27/2008    Page 24 of 25

---

### *Assembly Uses*

---

**Planning Manager Pollart** explained the situation regarding the potential of Zoning Code amendments that would permit Assembly uses in certain industrial districts. For clarification, she pointed out that while Religious Assembly and Clubs and Lodges have separate definitions in the Zoning Code, they must be treated equally as Assembly uses under the provisions of RUILPA, the law requiring equal treatment for all manner of assembly uses. Currently, she explained, Religious Assembly is permitted conditionally in any R District. By way of background, Ms. Pollart said that earlier this year, Faith Fellowship requested a modification of the Zoning Code to also conditionally permit assembly uses in the IL District. Faith Fellowship has outgrown its current facility in Washington Manor and is looking at the former MDL building on Catalina. The Faith Fellowship application prompted the Planning Department to look at the General Plan, which suggests that the areas most suitable for conversion from industrial to non-industrial are a) those located adjacent to existing housing, or b) in areas which lack amenities to meet needs of modern industry – San Leandro Boulevard north of Davis Street, Alvarado Street, and Marina Boulevard west of the Auto Row area. She indicated that the General Plan also discusses adaptive reuse (i.e., keeping the industrial base up-to-date), tax-base enhancement, the industrial sanctuary, and also of the separation of industrial uses from sensitive uses, such as schools, churches and the like. Based on General Plan considerations, the Planning Department developed several criteria to evaluate potential areas for additional assembly uses.

- Not located along major commercial corridor, to preserve the commercial sections of East 14th Street, for example, and the Auto Row area along Marina Boulevard;
- Not in a designated IG or IP District, except possibly on the periphery, to preserve the industrial core;
- Size of parcels (Planning looked at sites or areas encompassing at least two acres);
- Abuts or within a quarter-mile of an arterial (direct access to and from freeways and other arterials would minimize traffic wending its way through neighborhoods to reach an assembly site);
- Vacant/underutilized property; some of the so-called "underutilized" properties, Ms. Pollart explained, are currently occupied but there might be a higher, better use for them some years down the road.

With that as the framework, Staff identified 13 potential areas, indicating which of the five criteria each area meets (map included). The areas:

| | |
|---|---|
| 1 | East part of town, off of Grand Avenue near Interstate 580 |
| 2 | Park Street Island near Siempre Verde Park and San Leandro Boulevard; much of the adjacent property is currently zoned IL |
| 3 | North of Marina Boulevard in the area of Williams Street, Alvarado Street and Martinez Street |
| 4-5-6 | Along the Washington Avenue corridor, beginning at about San Leandro Boulevard and going southeast |
| 7 | Along Washington Avenue, south of Halcyon Drive/Floresta Boulevard |
| 8 | Along Hesperian west of Bayfair Center |
| 9 | Off Lewelling Boulevard near Interstate 880 |
| 10 | The Wicks Boulevard/Merced Street area |
| 11 | The Marina Faire Shopping Center area along Doolittle Drive |
| 12 | The Windsor Square Shopping Center |

**ATTACHMENT I**

Case 3:07-cv-03605-PJH    Document 132-17    Filed 08/27/2008    Page 25 of 25

13      The southwestern corner of the City, including the Frito Lay property and an existing industrial park in the Grant Avenue area

Staff developed two options for Commissioners to consider:

- Option 1 – Amend Zoning Code via a text amendment to conditionally permit Assembly uses in IL Zones. To address the issue of insufficient parking, base development standards could be derived for Assembly uses. Option 1 would affect 94 acres (including railroad right-of-way).

- Option 2 – Apply an Assembly Overlay District, akin to the 'S' Overlay District and PD Overlay Districts, where the underlying zoning would remain whatever it is but Assembly uses would be allowed via a use permit in the 13 specified areas. This option would apply to approximately 218 acres, including some railroad right-of-way.

Neither option would affect the current standards that conditionally permit Religious Assembly uses in R Districts. In addition, staff would prepare a new definition for Assembly uses, to avoid future confusion over how Religious Assembly and Clubs/Lodges are regulated. Ms. Pollart said that the City Council's Business Development Sub-Committee has requested the Commissioners' feedback on this issue, after which the Planning Department will submit recommendations to Board of Zoning Adjustments, the Planning Commission, and, ultimately, the City Council.

**Commissioner Dlugosh** asked whether the criteria would apply to applications for Assembly use permits, because some of the 13 properties clearly are too small to fit the two-acre criterion.

**Planning Services Manager Pollart** replied that the two acres would not necessarily be a requirement, but came to the list of criteria via research on "mega" churches. These churches, she explained, tend to have congregations of 1,500 to 2,000 or more, with some sort of activity going on every day, with a building of 50,000 square feet or more, and a site of two-plus acres.

**Commissioner Dlugosh** followed up by asking whether Staff has a definitive set of criteria on which to evaluate applications; Ms. Pollart said that standards could be developed. Mr. Hom added that if the City takes the overlay approach, it would need development standards and criteria such as those that were created for the S Overlay District for Auto Row, in order for Staff, the Board of Zoning Adjustments and/or the Planning Commission to determine compliance. Mr. Hom also indicated that Staff is trying to recognize the trend toward larger churches, and accordingly was looking for options that may have less neighborhood impact in a semi-industrial area than in a residential district, without compromising the City's industrial base, its employment base, and economic development codes.

**Commissioner Wohltmann** asked whether it was possible to proceed with both options, rather than choosing one or the other. Ms. Pollart indicated that going ahead with both is certainly feasible; they are not mutually exclusive. Mr. Hom pointed out, however, that some IL parcels may not be suitable for assembly uses.

**Commissioner Wohltmann** also asked whether Staff had discussed the options with any other religious use representatives, to which Ms. Pollart replied no, only to the applicant himself. In fact, she added, the property that interests Faith Fellowship is zoned IP, and thus is not in any of the 13 identified areas. If Option 1 were enacted, the church would have to request a re-zone of the property from IP to IL. If Option 2 were enacted, the applicant would have to request that