Jayne W. Williams, Esq. (SBN: 63203)
jwilliams@meyersnave.com
Deborah J. Fox, Esq. (SBN: 110929)
dfox@meyersnave.com
Philip A. Seymour (SBN: 116606)
pseymour@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendant
CITY OF SAN LEANDRO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, a municipal corporation,<br><br>Defendant.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No. C07-03605-PJH<br><br>CITY OF SAN LEANDRO'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY ADJUDICATION ON DEFENDANT'S AFFIRMATIVE DEFENSES<br>(Plaintiff's Motion No. 1)<br><br>Hearing:<br>Date:         October 1, 2008<br>Time:         9:00 a.m.<br>Courtroom:    3<br><br>Honorable Phyllis J. Hamilton<br>Complaint Filed: 7/12/07 |

*TABLE OF CONTENTS*

Page(s)

I. INTRODUCTION ..................................................................................................... 1

II. ABANDONED DEFENSES (8th, 10th, and 16th) ................................................... 3

III. CURRENT DEFENSES IN PLAY (1st, 4th, 5th, 12th, 13th and 17th) .................... 3

    A. *First Affirmative Defense – Failure to State a Claim.* ................................. 3

    B. *Fourth and Fifth Affirmative Defenses – Causation and Mitigation of Damages.* ................................................................................................. 4

    C. *Twelfth and Thirteenth Affirmative Defenses – Constitutional Limitations of RLUIPA and on Relief Granted by the Court.* ..................... 6

    D. *Seventeenth Affirmative Defense – Capacity to Sue of Faith Fellowship Foursquare Church.* .................................................................. 9

IV. ANTICIPATORY DEFENSES (2nd, 3rd, 6th, 7th, 9th, 11th, 14th and 15th) ......... 9

    A. *Second Affirmative Defense – Lack of Standing.* ...................................... 11

    B. *Third Affirmative Defense –Lack of Case or Controversy.* ........................ 11

    C. *Sixth Affirmative Defense – Ripeness.* ....................................................... 11

    D. *Seventh Affirmative Defense – Laches.* ...................................................... 12

    E. *Ninth Affirmative Defense – Waiver.* ......................................................... 12

    F. *Eleventh Affirmative Defense – Exhaustion of Administrative and State Law Legal Remedies.* ......................................................................... 12

    G. *Fourteenth Affirmative Defense – Statute of Limitations.* ......................... 12

    H. *Fifteenth Affirmative Defense – Immunity.* ................................................ 13

V. CONCLUSION ........................................................................................................ 13

*TABLE OF AUTHORITIES*

Page(s)

**CASES**

*Briggs v. City of Rolling Hills Estates,*
  40 Cal.App.4th 637, 47 Cal.Rptr.2d 29 (1995) ............................................................ 12

*City of Newport v. Fact Concert, Inc.,*
  453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) ................................................ 13

*Civil Liberties for Urban Believers v. City of Chicago,*
  342 F.3d 752 (7th Cir. 2003) ....................................................................................... 7, 8

*Federal Insurance Co. v. Sabine Towing & Transportation Co.,*
  783 F.2d 347 (2nd Cir. 1986) ..................................................................................... 4, 5, 6

*Higgins v. Harden,*
  644 F.2d 1348 (9th Cir. 1981) ..................................................................................... 10

*Midrash Sephardi, Inc. v. Town of Surfside,*
  366 F.3d 1214 (11th Cir. 2004) ................................................................................... 7, 8

*Miller v. County of Santa Cruz,*
  39 F.3d 1030 (9th Cir. 1994) ....................................................................................... 12

*Munn v. Southern Health Plan, Inc.,*
  719 F.Supp. 525 (N.D. Miss. 1989) ............................................................................. 6

*Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County,*
  450 F.3d 1295 (11th Cir. 2006) ................................................................................... 7, 8

*Smith v. Rowe,*
  761 F.2d 360 (7th Cir. 1985) ....................................................................................... 4, 6

*Westchester Day School. v. Village of Mamaroneck,*
  386 F.3d 183 (2nd Cir. 2004) ...................................................................................... 7, 8

**STATUTES**

42 U.S.C. § 2000-cc(2)(a) ............................................................................................. 13

Federal Rules of Civil Procedure, Rule 16(e) ............................................................... 10

I.  *INTRODUCTION*

In this motion, plaintiff International Church of the Foursquare Gospel ("ICFG") and "real party in interest" Faith Fellowship Foursquare Church (collectively "the Church") seek summary adjudication on each of the seventeen (17) affirmative defenses listed in the City's Answer to Plaintiff's First Amended Complaint for Violation of Constitutional Rights and the Religious Land Use and Institutionalized Persons Act ("First Amended Complaint" or "FAC").[1]

Defendant City of San Leandro ("the City") agrees that certain affirmative defenses have been rendered moot or superfluous by events occurring since the filing of the First Amended Complaint, or are untenable in light of currently known facts including the Eighth, Tenth and Sixteenth Affirmative Defenses. However, in all other instances, the motion is without merit. Various affirmative defenses are legally tenable, relevant to claims currently advanced by the Church, and supported by the facts of the case. The Church's contentions that there are no triable material issues concerning these defenses are either frivolous in light of the evidence, or based on an erroneous understanding of the applicable law. These affirmative defenses include:

- First (failure to state a claim upon which relief can be granted);
- Fourth (lack of causation for damages);
- Fifth (failure to avoid or mitigate foreseeable damages);
- Twelfth (constitutional limitations on relief requested);
- Thirteenth (unconstitutional application or interpretation of RLUIPA); and
- Seventeenth (capacity of Faith Fellowship Foursquare Church to sue as "real party in interest").

---

[1] The Church has now filed two separate motions for summary judgment which are all set to be heard on October 1, 2008, in violation of this Honorable Court's Pre-Trial Instructions which requires leave of court to file more than a single motion. Pre-Trial Instructions, Section A.2. The City suggests that the Court should strike the second improperly filed motion and leave this first filed motion on calendar.

The motion should be denied as to each of these affirmative defenses for reasons stated below.

The City agrees that the remaining affirmative defenses are basically anticipatory in nature, and not germane to claims *currently* raised in the litigation. It does not follow, however, that summary adjudication of these defenses should be granted. As discussed below, even as the Church is pursuing this motion, it has also sought relief in its accompanying motion for summary judgment on the merits based on factual and legal claims that are not raised in its First Amended Complaint. Unless and until the extent of the issues and legal theories the Church will attempt to assert at or before trial is known, it is premature to grant summary adjudication of the City's anticipatory defenses. The anticipatory affirmative defenses at issue are the Second, Third, Sixth, Seventh, Ninth, Eleventh, Fourteenth and Fifteenth Affirmative Defenses.

In opposing this motion, the City relies in part on declarations, exhibits and memoranda of points and authorities submitted by the parties in support of their respective pending cross-motions for summary judgment. For the Court's convenience these materials are submitted concurrently. The materials specifically relied on are:

(1)     Defendant City of San Leandro's Motion for Summary Judgment or in the Alternative Summary Adjudication of Claims and accompanying memorandum of points and authorities (Exhibit 39, Document 126, filed 8/27/08, "City's MSJ").

(2)     Declaration of Debbie Pollart In Support of City's Motion for Summary Judgment (Exhibit 38, Document 128, filed 8/27/08, "Pollart Declaration").

(3)     Defendant City of San Leandro's Exhibits 29, 30, 36 and 37 filed in Support of City's Motion for Summary Judgment and refiled herewith.

(4)     Declaration of Senior Pastor Gary Mortara in Support of Motion for Summary Judgment and accompanying Exhibit 1 (Exhibit 40, manually filed 8/26/08; "Gary Mortara Declaration").

///

///

II. *ABANDONED DEFENSES (8th, 10th, and 16th)*

The City agrees that events, discovery or further research conducted since filing of the Answer have demonstrated pursuit of the following affirmative defenses are either unnecessary or untenable.

- *Eighth Affirmative Defense – Estoppel.* Discovery has disclosed no facts supporting this defense, and the City does not anticipate that it would be raised as a defense to any possible new claims at trial.

- *Tenth Affirmative Defense – Unclean Hands.* Discovery has disclosed no substantial information supporting this defense, and the City does not anticipate that such information will be discovered before trial or would be applicable to any new claims raised by the Church.

- *Sixteenth Affirmative Defense – ICFG Capacity to Sue.* Although the relationship of plaintiff ICFG to the actions of the local Church was murky in the early stages of this action, the materials provided by the Church demonstrate that ICFG is a proper party with capacity to sue in this action. It now appears that the party lacking capacity to sue is "real party in interest" Faith Fellowship Foursquare Church, which is simply a subdivision of the ICFG with no apparent right to sue in its own name.

III. *CURRENT DEFENSES IN PLAY (1st, 4th, 5th, 12th, 13th and 17th)*

If the case proceeds to trial, the City anticipates that the First, Fourth, Fifth, Twelfth, Thirteenth and Seventeenth Affirmative Defenses will be applied to one or more of the Church's current claims. As discussed below, the Church has failed to establish that there are no triable material issues with respect to these defenses.

A. *First Affirmative Defense – Failure to State a Claim.*

The Church rather remarkably contends that it is entitled to summary adjudication of this affirmative defense based on a three short paragraphs of conclusory argument to the effect that it *has* stated viable legal claims in its First Amended Complaint. As the pending cross-motions for summary judgment attest, the viability of the Church's legal claims is, to say the least, in dispute. Rather than reiterate the legal basis for rejection of the Church's

claims here wholesale, the City incorporates the discussion from the City's memorandum in support of its motion for summary judgment here. *See*, Exhibit 39, Document 126; City's MSJ, pp. 679-703.

As noted in the Church's memorandum, this defense goes essentially to the sufficiency of the Church's pleadings. However, the deficiencies in the Church's various legal claims do not result merely from failures of proof, but from inherent deficiencies in the legal theories and alleged supporting facts advanced in the First Amended Complaint itself. Although the First Affirmative Defense may be rendered moot in light of the Court's disposition of the pending motions from summary judgment, it certainly cannot be dismissed by way of summary adjudication based on the argument offered here by the Church.

B. *Fourth and Fifth Affirmative Defenses – Causation and Mitigation of Damages.*

The gist of the City's Fourth and Fifth Affirmative Defenses is that the Church improvidently purchased the Catalina Street property which is the focus of the Church's claims *before* the City ever acted on its rezoning requests, and long before the Church had any reasonable expectation that the zoning of the property would be changed to allow religious assembly use. As a result, the Church cannot show a causal connection between most or all of the damages claimed. The City did not in any manner encourage (much less force) the Church to make non-refundable deposits, enter into a purchase contract, delete entitlement approval contingences, or ultimately purchase the Catalina Street Property before any decision had been made by the City about rezoning for Church use. Moreover, the City's actions have not deprived the Church of the ability to use, lease or sell the property for purposes allowed by the current zoning. The only costs the Church has incurred are those inherent in the acquisition of real estate for speculative purposes.

These same facts also support the defense of mitigation of damages or, as the doctrine is also known, the defense of avoidable consequences. *Federal Insurance Co. v. Sabine Towing & Transportation Co.*, 783 F.2d 347, 350 (2nd Cir. 1986); *Smith v. Rowe*,

4

761 F.2d 360, 366-367 (7th Cir. 1985). The gist of the doctrine is that "fair compensation to an injured plaintiff do[es] not include wounds which in a practical sense are self inflicted." *Federal Insurance*, 783 F.2d at 350, quoting *Ellerman Lines, Ltd v. The Steamship President Harding*, 288 F.2d 288, 290 (2nd Cir. 1961).

      The critical facts underlying these affirmative defenses are not in dispute. They are admitted in the Church's own pleadings. On March 24, 2006 the Church entered into a purchase agreement and paid a non-refundable deposit of $50,000, knowing that the property was not zoned to allow church use. FAC, ¶¶ 15, 16. The Church subsequently extended the purchase agreement and paid additional deposits although the City had taken no formal action on its pending rezoning application. FAC, ¶¶ 22, 30. Then, on December 29, 2006 the Church closed escrow on the property, months before any Planning Commission or City Council action on the proposed Assembly Use Overlay zoning amendments that would allow religious (and other) assembly uses on some industrial properties. FAC ¶¶ 33, 36, 37. The Church's conduct is even more reckless when viewed in light of facts outside the complaint, *e.g.* the fact that the church deleted the contingency just four days after it signed the purchase agreement without any City input or assurance of zoning change approval. Exhibit 38, Pollart Decl., ¶¶ 15, 18 and Exhibits 36 and 37. The Church at no time was advised by the City to commit funds to purchase the property prior to obtaining a rezoning. The opposite was actually the case. Exhibit 38, Pollart Decl., ¶ 18; Exhibit 28 [Jermanis Deposition], pp. 520:15-521:15; Exhibit 30 [Gary Mortara Deposition], pp. 539:3-540:4, 542:17-24.

      In this motion, the Church does not seriously dispute the facts underlying these affirmative defenses. Rather, the Church apparently contends (without setting forth specific supporting facts) that it is entitled to judgment as a matter of law because the City's actions imposed a "substantial burden" on the Church. As evidenced in the parties' pending cross-motions for summary judgment, this issue is hotly debated, with the relevant facts and evidence overwhelmingly supporting the City. More to the point, however, the argument simply misapprehends the nature of these defenses. They do not go directly to the issue of liability, but rather to the amount of damages that may be recovered if liability

is found. *Federal Insurance*, 783 F.2d 347, 350. The Church cites no authority suggesting that the doctrines of causation or the duties to mitigate or avoid damages are inapplicable in actions brought under RLUIPA. A showing of actual and proximate causation is, of course, essential to any claim for damages. The defense of avoidance or mitigation of damages has been found applicable in civil rights cases, as well as in cases where the plaintiff claimed an exemption from the doctrine for conduct that was alleged motivated by religious belief. *See, e.g., Smith*, 761 F.2d at 366-367 [civil rights claims]; *Munn v. Southern Health Plan, Inc.*, 719 F.Supp. 525, 529-530 (N.D. Miss. 1989) [reasonable efforts to mitigate damages not excused where plaintiff claimed available mitigation measures were contrary to her religious beliefs].

As an afterthought, the Church also cites Texas law for the proposition that the duty to mitigate comes into play only if damages could have been reduced or avoided "with only slight expense and reasonable effort." Pl. Memorandum at pp. 13:26 – 14:1, citing *City of San Antonio v. Guidry*, 801 S.W.2d 142, 151 (Tex. App. 1990). The test under federal law, however, is simply one of overall reasonableness. *Federal Insurance*, 783 F.2d 347, 350; *Smith v. Rowe*, 761 F.2d 360, 366-367. In any event, the Church's "slight expense" argument hardly defeats the City's affirmative defenses. All the Church had to do in this case was apply common sense and not incur any expense at all towards purchase of the Catalina Street property before the site was actually zoned to allow religious assembly uses. This simple step would have required a moment of practical thinking.

  C. *Twelfth and Thirteenth Affirmative Defenses – Constitutional Limitations of RLUIPA and on Relief Granted by the Court.*

The City's Twelfth and Thirteenth Affirmative Defenses are based on constitutional limitations governing the relief that the Court may grant in this action. The Twelfth Cause of Action is anticipatory in a sense in that it is specifically asserted against a possible demand by the Church that the City be ordered to issue a conditional use permit ("CUP") for a religious assembly use. The Thirteenth Affirmative Defense is asserted against any possible unconstitutional application or interpretation of RLUIPA. The Church correctly

recognizes in its moving papers that the principal limitation is that imposed by the Establishment Clause of the Fourteenth Amendment. However, the Twelfth Affirmative Defense also includes limitations imposed by the separation of powers doctrine.

The Church's principal argument on these affirmative defenses is simply that RLUIPA has been upheld against facial attacks based on the Establishment Clause and other constitutional limitations. This is true, but beside the point. The fact that a statute is facially valid does not mean that every possible *application* of the statute is valid, or that every possible *interpretation* of the statute is constitutionally permissible. The City's Twelfth and Thirteenth Affirmative Defenses are offered expressly against the contingency that the Church requests, or the Court contemplates granting, relief that exceeds the proper bounds of legal authority. Other Courts have not only specifically recognized but *warned* against the potential for such unconstitutional interpretations or applications – or more precisely *misapplications* – of RLUIPA. See, e.g. *Westchester Day School. v. Village of Mamaroneck*, 386 F.3d 183, 189-190 (2nd Cir. 2004) ["As a legislative accommodation of religion, RLUIPA occupies a treacherous narrow zone between the Free Exercise Clause … and the Establishment Clause …. ¶ In our view, if RLUIPA means what the district court believes it does, a serious question arises whether it goes beyond the proper function of protecting the free exercise of religion into the constitutionally impermissible zone of entwining government with religion in a manner that prefers religion over irreligion and confers special benefits on it."]; *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County*, 450 F.3d 1295, 1313 (11th Cir. 2006) ["The bottom line … is that RLUIPA's Equal Terms provision requires equal treatment, not special treatment."]; *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1228 (11th Cir. 2004) ["Were we to adopt the synagogues' reasoning …. [M]unicipalities … would run the risk of impermissibly favoring religion over other secular institutions, or of favoring some religious faiths over others."]; *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003) ("*C.L.U.B.*") ["Otherwise, compliance with RLUIPA would require municipal governments not merely to treat religious land uses on an equal footing

with nonreligious land uses, but rather to favor them in the form of an outright exemption from land use regulations. Unfortunately for Appellants, no such free pass for religious land uses masquerades among the legitimate protections RLUIPA affords to religious exercise."].

Those courts who have addressed the facial constitutionality of RLUIPA, moreover, have made it clear that it is constitutional only it interpreted to adhere to the limitations imposed by the Establishment Clause. *See, e.g. Midrash*, 366 F.3d at 1241 ["RLUIPA does not impose affirmative duties on states that would require them to facilitate or subsidize the exercise of religion."].

Given the inherent tension between Establishment Clause and the Free Exercise Clause that RLUIPA is intended to implement, it is hardly unreasonable to anticipate by way of affirmative defense a demand for relief under RLUIPA that exceeds proper constitutional constraints. *Westchester Day School*, 386 F.3d at 189-190. In this case, the defense is not merely anticipatory. The demands made by Church clearly exceed anything that could be justified in the name of accommodation of religion. The Church has essentially asked the Court to order the City to disregard legitimate and objective zoning criteria and rezone a particular piece of industrial land for the Church's use because the Church deems that particular property ideal for its purposes and conveniently available at a suitable price. Neither RLUIPA or the Free Exercise Clause of the First Amendment, however, bestow upon churches the right to obtain rezonings of industrial property on demand. Clearly the Church is not being asked to be placed on a mere "equal footing" with non-religious land uses, but is asking for extraordinary special treatment simply because it is a religious institution. *C.L.U.B.*, 342 F.3d at 762; *Primera Iglesia*, 450 F.3d at 1313.

///
///
///
///

D. *Seventeenth Affirmative Defense – Capacity to Sue of Faith Fellowship Foursquare Church.*

The City's Seventeenth Affirmative Defense challenges the capacity of the Faith Fellowship Foursquare Church to sue as a "real party in interest." The Church's argument on this point is a strange one. Aside from contending that the Court may not inquire into the legal status of the local church under the First Amendment, the Church contends the defense is "factually meritless because ICFG and the Church are parts of the same entity." Pl. Memorandum, p. 23:20-21. If this is so – which appears to be the case in light of evidence submitted in support of the Church's motion – then the local church has no separate capacity to sue at all in its own name. The point may, of course, be moot. It does not presently appear likely that the outcome of the case will depend upon whether the local church has a separate capacity to sue. Nevertheless, the defense is technically valid given the facts admitted by the Church, and cannot be resolved in favor of the Church by summary adjudication.

IV. *ANTICIPATORY DEFENSES (2nd, 3rd, 6th, 7th, 9th, 11th, 14th and 15th)*

The City agrees that the affirmative defenses discussed below are *at present* inapplicable to the claims actually pled in the Church's First Amended Complaint and actually being pursued by the Church in this litigation. These affirmative defenses were advanced in anticipation of possible additional claims or arguments that might be asserted by the Church based on discovery of new information, on events occurring after the filing of the First Amended Complaint, or based on new or changed legal theories purportedly (but not actually) presented in the First Amended Complaint.

The Church contends that summary adjudication is proper on these defenses because the Church would be required to amend its current complaint to assert any new legal claims or theories which might trigger these defenses. The problem with this argument – and the disingenuousness of the Church's argument – is demonstrated in the motion for summary judgment the Church has also filed in this action. In its motion, the Church complains about the City's rejection of a conditional use permit ("CUP")

1  application filed by the Church. Exhibit 41, Plaintiff and Real Party's MSJ, Plaintiff's
2  Motion No. 2, p. 8:3-8; Exhibit 40, Gary Mortara Declaration, ¶ 16 and Exhibit 1 to Gary
3  Mortara Declaration. The denial of the CUP application occurred in February 2008, four
4  months after the filing of the Church's current First Amended Complaint. The First
5  Amended Complaint, however, does not mention the filing of the CUP application, much
6  less its eventual denial (or the grounds for denial). Neither has the Church disclosed any
7  intent to amend the First Amended Complaint to include this claim. The Church
8  nevertheless argues in its motion for summary adjudication that denial of the CUP violated
9  the Equal Terms provisions of RLUIPA.

It may be that the Church believes that the First Amended Complaint somehow impliedly extends to its claims concerning denial of the CUP application, since facts pertaining to the original filing of the CUP were discussed in Court when the Church unsuccessfully applied for a preliminary injunction in August 2007. This simply demonstrates, however, why the motion for summary adjudication should *not* be granted as to the City's anticipatory defenses. The Church has already proven that it does not intend to limit its claims and arguments to those fairly presented on the face of its pleadings.[2] While the City is certainly entitled to defend against any new claims or legal theories on the ground that they are not fairly raised in the pleadings, there is no reason why the City should be precluded from also asserting affirmative defenses against new or revised claims and theories which the Church may contend are somehow properly before the Court, even when they are not.

///
///
///

---

[2] Under Civil Local Rule 16-10(b)(12) this Honorable Court may set a final pretrial conference and issue a final pretrial conference order that supersedes the pleadings and calls out the issues to be tried. Federal Rules of Civil Procedure, Rule 16(e); *Higgins v. Harden*, 644 F.2d 1348, 1353 (9th Cir. 1981).

The City briefly discusses the anticipatory affirmative defenses objected to by the Church, and the reasons that they could become operative before or at the trial.

### A. Second Affirmative Defense – Lack of Standing.

At the time the FAC was filed, the relationship of plaintiff ICFG and "real party in interest" Foursquare Gospel Church was sufficiently unclear as to warrant inclusion of this potential partial defense. Although there now appears no substantial issue as to ICFG's standing to pursue the claims actually presented in the First Amended Complaint, the issue of standing could arise if the Church seeks to expand its claims to allege RLUIPA or constitutional violations pertaining to other properties or City zoning regulations that have not presently been applied directly to the Church.

### B. Third Affirmative Defense – Lack of Case or Controversy.

This affirmative defense, like that of standing, would come into play only if the Church raises new or additional claims, *e.g.* the Church claims that the City has somehow denied it the right to use some additional property not referenced in the First Amended Complaint, or asserts that the City has adopted regulations or engaged in some conduct that has a hypothetical potential to infringe on the Church's practice of religion, but has not yet done so.

### C. Sixth Affirmative Defense – Ripeness.

At the time the First Amended Complaint was filed, the Church had filed an application for a CUP for church use of its industrially-zoned Catalina Street property, but the City had not yet acted on the application. Although the CUP application was not mentioned in the First Amended Complaint, the defense of ripeness was asserted in anticipation of Church claims concerning the treatment of the CUP application. The exhaustion defense has been rendered moot by the formal denial of the CUP application in February 2008. (As noted above, the Church still has not amended its complaint to address any possible claim based on the CUP denial.) Like the Third Affirmative Defense, the ripeness defense would potentially come into play if the Church attempts to assert some

///

new claim based on alleged interference with its rights at a new property or by reason of some new hypothetical interference with the Church's rights.

D. *Seventh Affirmative Defense – Laches.*

This defense, along with the statute of limitations (Fourteenth Affirmative Defense) was asserted by the City in anticipation that the Church might seek to augment its claims be reference to City actions occurring prior to the application for rezoning which forms the original basis for this action. To date, the Church has not attempted to expand its claims in this manner. The defense of laches would potentially become applicable, however, if the Church attempted to raise such a claim, *e.g.* that the City's actions regarding past applications for expansion of the Church's current facilities at 577 Manor Boulevard formed some part of an imagined pattern of discriminatory acts against the Church.

E. *Ninth Affirmative Defense – Waiver.*

Like the City's other anticipatory defenses, the defense of waiver could become applicable if the Church were to assert new or additional claims based on transactions or events occurring outside the facts alleged in the First Amended Complaint.

F. *Eleventh Affirmative Defense – Exhaustion of Administrative and State Law Legal Remedies.*

This defense was also originally asserted in anticipation of claims pertaining to the Church's application for a CUP, although such claims were not fairly raised in the First Amended Complaint. The CUP was in fact denied in February 2008 and this action was not timely challenged by the Church in state court, meaning that this defense is now applicable to any claim asserted in this action based on denial of the CUP, if such validity of the CUP denial is raised as an issue at trial. *See Miller v. County of Santa Cruz*, 39 F.3d 1030, 1032-1034 (9th Cir. 1994); *Briggs v. City of Rolling Hills Estates*, 40 Cal.App.4th 637, 644-648, 47 Cal.Rptr.2d 29 (1995).

G. *Fourteenth Affirmative Defense – Statute of Limitations.*

The Church to date has not challenged actions of the City predating its applications for rezoning of the Catalina Street site, *e.g.* past permit decisions affecting its facilities at

577 Manor Boulevard. This defense would likely come into play were there any attempt to expand the Church's claims to alleging previous discriminatory or otherwise unlawful conduct.

### H. *Fifteenth Affirmative Defense – Immunity.*

The Church's original complaint asserted claims against City officials in their individual capacities and also requested punitive damages. These claims have been abandoned on the face of the First Amended Complaint. However, the FAC continues to request unspecified "appropriate relief" pursuant to 42 U.S.C. § 2000-cc(2)(a) and "Other and further relief as the Court deems just and proper." FAC, pp. 38-39, ¶¶ 8 and 14. In the event that the Church reasserted a claim for punitive or exemplary damages, the City would be entitled to immunity on this claim. *City of Newport v. Fact Concert, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In addition, were any claims reasserted against individual City officials, absolute and/or qualified immunity defenses would come into play.

## V. CONCLUSION

For the reasons stated above, the Church's motion for summary adjudication on the City's affirmative defenses should be denied except as to the Eighth, Tenth and Sixteenth Affirmative Defenses. The Church has failed to show that there is no triable issue as to the City's remaining affirmative defenses, or that there is no possibility that these defenses may be validly raised at trial.

Dated: September 10, 2008          MEYERS, NAVE, RIBACK, SILVER & WILSON

By_____/s/_____
DEBORAH J. FOX
Attorneys for Defendant
CITY OF SAN LEANDRO

1144266.2
136.5016