**EXHIBIT 24**

# MINUTES

## CITY OF SAN LEANDRO CITY COUNCIL AND
## SAN LEANDRO REDEVELOPMENT AGENCY
## JOINT MEETING

### MAY 7, 2007

**Civic Center**
**835 East 14th Street**
**San Leandro, California**

| REGULAR MEETING | 7:00 P.M. — City Council Chambers |
|---|---|

1. **CALL TO ORDER**

   The meeting was called to order at 7:00 p.m.

   A. **Pledge of Allegiance to the Flag**

   Mayor Tony Santos led the Pledge of Allegiance to the Flag.

   B. **Roll Call**

   PRESENT:   Members Grant, Gregory (left at 9:10 p.m.), Prola, Souza, Starosciak, Stephens; Mayor Santos

   ABSENT:    None

2. **PRESENTATIONS/RECOGNITIONS**

   A. Proclamation Declaring May 13-19, 2007 as Affordable Housing Week in San Leandro.

   Esperanza Alcantor, from Congregations Organized for Renewal, accepted the Affordable Housing Week proclamation.

   B. Proclamation Declaring May 1, 2007 as Relay for Life Paint Our Town Purple Day and May 19-20, 2007 as San Leandro Relay for Life Days.

   Alicia Schwemer accepted the Relay for Life proclamation.

   C. Matter of Commendations of Board and Commission Members (approves ceremonial resolutions of the City Council).

   - **Minute Order No. 2007-056**, Resolution Commending Dean Koenig for His Years of Service on the Recreation and Parks Commission.          (1020)

EXHIBIT 24

**MINUTES**                                                                                            Page 2
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

> **The City Council approved the resolution commending Dean Koenig for his years of service on the Recreation and Parks Commission.**
>
> Dean Koenig accepted the resolution commending his years of service on the Recreation and Parks Commission and thanked the City Council for the opportunity to serve on the Commission.
>
> • <u>Minute Order No. 2007-057</u>, Resolution Commending James R. Wohltmann for His Years of Service on the Planning Commission.                    (1018)
>
> **The City Council approved the resolution commending James R. Wohltmann for his years of service on the Planning Commission.**
>
> **M/S/C Starosciak and Prola. Ayes: 7; Noes: 0**

**With the consensus of the City Council, Mayor Santos took Item 10.B. out of order.**

10.B. Request from Councilmember Starosciak to Reconsider the Resolution Authorizing City Manager to Sign a Letter of Intent to Support the Formation of the East Bay Regional Communication System (EBRCS) Governed by a Joint Powers Authority (JPA) for Alameda and Contra Costa Counties.

Councilmember Starosciak stated her reasons for requesting reconsideration of the resolution, which was adopted by the City Council at its meeting on April 16, 2007. She indicated that additional questions came to mind after the meeting, which prompted her to do further research. During her research, she found that while interoperability is essential to San Leandro's safety, there are questions about the EBRCS that should be asked before the Letter of Intent is signed. Councilmember Starosciak stated that she has contacted a number of agencies regarding their knowledge of the process. Councilmember Starosciak spoke with Grace Koch from the Governor's Office of Emergency Services, who informed her that the State OES had not heard of the EBRCS until last week. Councilmember Starosciak read from a document provided to her by Ms. Koch entitled, "State of California Interoperability Overview and Initial Assessment of the East Bay Regional Communications System." The document posed several questions about the EBRCS. Councilmember Starosciak requested that the Council reopen the issue to allow further discussion and review the questions posed by the State OES.

<u>Public Comments on Item 10.B.:</u>

**Rocky Medeiros, San Francisco Bay Area Urban Area Security Initiative (Super UASI)**, addressed the City Council, stating that the Super UASI is a regional homeland security grant program charged with program development and implementation for the entire San Francisco Bay Region. Mr. Medeiros commented that, prior to his work with the Super UASI, he worked in collaboration with Alameda and Contra Costa Counties to develop the EBRCS interoperability model and worked hand-in-hand with the State OES. Mr. Medeiros stressed

the need for interoperability and assured the Council that the State OES is aware of the EBRCS.

**Lou Filipovich, San Leandro resident**, addressed the City Council regarding the way local government works in Alameda County, taxpayers' revenue and the rules for public participation at City Council meetings.

End of Public Comments on Item 10.B.

Councilmember Stephens commented that, given the need for interoperability among public safety agencies, he feels the action taken at the meeting on April 16 was necessary. He stated that while he understands Councilmember Starosciak's concerns, he is comfortable with the decision.

Councilmember Gregory concurred with Councilmember Stephens. He quoted from the California Performance Review, which stated that the lack of standardized equipment can endanger peace officers in an emergency. Councilmember Gregory indicated that in his work for a first response organization, he has experienced the need for effective communication in times of emergency. He supported retaining the original action.

Vice Mayor Grant expressed her understanding that the action taken on April 16 was to issue a letter of good faith that the City intends to participate in the system, but not that the City lends full support or full funding for the system at this time. She noted that San Leandro's neighboring cities, Oakland and Hayward, have not yet signed on to the system. Vice Mayor Grant requested that the City Manager and Fire Chief provide the Council with frequent and periodic updates regarding which agencies have agreed to participate in the system and updated cost estimates. She commented that it is unclear in the documentation that the system requires the formation of a Joint Powers Authority (JPA), and Councilmember Starosciak's comment that a bureaucracy would be created to manage a radio system was on point. Vice Mayor Grant stated that the City needs to establish a point at which it decides that it will either participate or not.

Mayor Santos noted that the City of Hayward would be voting on a Letter of Intent tomorrow. He indicated that there would be an opportunity for full discussion when the joint powers agreement is presented to the Council.

City Manager Jermanis clarified that the $100 per radio good faith contribution would be made once the Council reconfirmed its support for the Letter of Intent. He indicated that there would be several opportunities for the City to opt out of the agreement, even after the City became a member of the JPA. Mr. Jermanis pointed out the need to rely on the information provided by Chiefs Attarian and Gilbert and their judgment and recommendations. Mr. Jermanis noted that on the State OES website, minutes from a meeting in March 2006 indicate that it received a presentation of the EBRCS by Alameda County.

Councilmember Prola commented that he has given the matter a good deal of thought, and he feels comfortable with his previous vote. He stated his willingness to change his vote if the

**MINUTES**                                                                                    Page 4
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

two-county group could not raise sufficient funding or garner sufficient support for the system.

Councilmember Souza commented that there is a group comprised of 10 counties working toward interoperability, and she expressed preference for joining a 10-county system rather than a two-county system. She noted that there was no feedback from the State OES on the March 2006 presentation on EBRCS. Councilmember Souza asked whether the JPA could be formed without the support of Oakland, and if there have been bids on the radios other than by Motorola. She commented that the EBRCS Task Force is unaware of the work of the committees formed by the State OES to address interoperability. She expressed concern that the JPA would bypass the State and apply for funding directly from the federal government and the message that would send to our State legislators.

• Motion to Reconsider Resolution No. 2007-059.                                    (3115)

    **A motion to reconsider Resolution No. 2007-059 failed by a vote of 2 to 5.**

    **M/S Starosciak and Souza. Ayes: 2; Noes: 5 (Gregory, Grant, Prola, Stephens, Santos)**

3.  **PUBLIC HEARINGS**

Public Hearing Comments are limited to 5 minutes per speaker, subject to adjustment by the Mayor. When you address the City Council, you should **fill out a speaker card** and submit it to the City Clerk so the order of speakers may be determined and an official record of names and addresses obtained.

A.  Matter of **PLN2006-00104**, Planned Development, Zoning Map Amendment, and Vesting Tentative Map; to rezone the properties at 311-335 MacArthur Boulevard/Herma Court from CC Commercial Community and RS Residential Single-Family Districts to CC (PD) and RS(PD), respectively. The project is a proposed residential development with 23 townhouses at the corner of MacArthur Boulevard and Herma Court. Proposed amenities include a private roadway, an internal park area, attached one- and two-car garages, and six guest parking spaces on the site. The site is zoned CC Commercial Community District and RS Residential Single-Family. Assessor's Parcel Numbers 76-311-1-1, 76-311-1-3, 76-311-3, 76-311-4, and 76-311-5; **311-335 MacArthur Boulevard/Herma Court**; Ruffin Architecture (Applicant); Settlemeir Properties (Property Owner).

This being the time and place for the Public Hearing on the above matter, City Manager Jermanis gave background on the matter and introduced Community Development Director Hanson Hom. Mr. Hom stated that the planned development process is not an arbitrary process. He described the process for applying zoning standards in evaluating a planned development application. Key considerations are made by staff, including conformance with General Plan goals and policies; recent development trends; key

**MINUTES**                                       Page 5
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

policy considerations; past City standards for issues such as parking, traffic, setbacks, and fences. He noted that sometimes trade-offs are made by relaxing a standard to achieve a better outcome for another aspect of the project. Mr. Hom noted the importance of examining the intent and purpose of the zoning standards rather than just following the letter of the law. He pointed out that while a planned development allows for greater staff discretion and flexibility, there is a higher standard of review, with recommendation required by the Planning Commission and final approval by the City Council.

Planning Manager Debbie Pollart gave a PowerPoint presentation describing the proposed project.

Staff responded to questions from the Council regarding the land swap version of the proposal, the short wall along MacArthur Boulevard and the hours of construction.

Applicant Reid Settlemeir and Architect David Ruffin gave a PowerPoint presentation providing additional details on the proposed project, including the outreach to neighborhood associations, architectural details and landscape features.

The Hearing was then opened to the public.

Due to the number of speakers for this item, Mayor Santos adjusted the time limit to three minutes per speaker.

**Phil St. Laurent, San Leandro resident,** addressed the City Council, commenting that the project does not fit in with the surrounding area and should be commercial rather than residential. Mr. St. Laurent commented on the narrow streets, the amount and speed of traffic on MacArthur Boulevard, and the lack of parking for the project.

**Bridgit Lawley, San Leandro resident,** addressed the City Council, expressing concern that the proposed three-story homes in a neighborhood with lower profile homes would be grossly out of proportion and aesthetically unappealing.

**Karen Clarkson, San Leandro resident,** addressed the City Council, commenting that surrounding property owners were not given adequate notice of the project, and the Broadmoor Neighborhood Association has not seen nor approved the current version of the project. Ms. Clarkson commented that the project does not meet General Plan guidelines or zoning regulations, does not provide sufficient parking and would result in increased traffic, requires five variances and has not received sufficient community input or BZA review.

**Leslie Salmon-Zhu, San Leandro resident,** addressed the City Council, commenting that zoning requirements should not be relaxed to allow a development which does not conform to existing standards. Ms. Salmon-Zhu addressed the subjects of setbacks, fencing and landscaping, for which the developer is requesting exceptions.

**MINUTES**                                                                    Page 6
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

**Vera Ayers, San Leandro resident,** addressed the City Council, expressing concern regarding the height and size of the project, the exceptions made to the zoning requirements and the inadequacy of the public notice. Ms. Ayers urged the Council to represent the community on this matter.

**William Artz, San Leandro resident,** addressed the City Council, expressing concern that the project does not fit in with the neighborhood. Mr. Artz commented on the parking issue, the adequacy of tandem parking, and the narrow streets adjacent to the project.

**Rick Murray, San Leandro resident,** addressed the City Council, commenting that he feels the project would be a change for the better and would improve the neighborhood.

**Leah Scherbe, San Leandro resident,** addressed the City Council, commenting that she feels the project is too dense and would cause traffic impacts on the nearby narrow streets.

**Patty Vonnegut, San Leandro resident,** addressed the City Council, expressing concern that the project is too high, too dense, and out of proportion to the area. Ms. Vonnegut urged the Council to deny the project.

**Ken Johnston, San Leandro resident,** addressed the City Council, commenting that this development would set a precedent for concessions on future developments. Mr. Johnston requested that the Council consider the density of this project.

**Hillary Van Austen, President of the Broadmoor Neighborhood Association (BNA),** addressed the City Council, commenting that the BNA was only recently made aware of the changes to project. Ms. Van Austen requested that the Council consider delaying its vote to allow the BNA time to review the changes to the project at its next meeting.

**Roy H. Gregg, San Leandro resident,** addressed the City Council, expressing concerns regarding the traffic and parking impacts from the project, as well as the impact to the existing homeowner of a three-story home across the street and tot lot next door. Mr. Gregg expressed opposition to the project and urged the Council to postpone its decision to allow further review of the project.

**Patricia Martin, San Leandro resident,** addressed the City Council, commenting on the traffic volume and speed of traffic flow on MacArthur Boulevard. Ms. Martin commented that the project is too tall and asked what the community is receiving in exchange for the trade-offs. Ms. Martin urged the Council to take the concerns of the residents seriously.

**Sue Chen, San Leandro resident,** addressed the City Council, stating objection to the project as currently presented, as well as to the project approval process. Ms. Chen commented that she feels the notification process meets the law, but not its intent. She

**MINUTES**                                                                     Page 7
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

expressed concern regarding the traffic and parking impacts and density of this development.

**Gail Husson, San Leandro resident,** addressed the City Council, expressing concerns regarding the proposed diagonal parking and the streetscape improvements on MacArthur Boulevard which narrowed the roadway. Ms. Husson commented that she feels the project is too big for the area and sees no good reason why the zoning requirements should be relaxed for this particular project.

**Maria Johnston, San Leandro resident,** addressed the City Council, expressing concern regarding the exceptions made for the project and the precedent that they set.

**Jim Willson, San Leandro resident,** addressed the City Council, commenting that it would be a good idea for the Council to delay its vote on the project. Mr. Willson showed photos of the neighborhood and the same photos with a simulation of a large building blocking the sunlight and views.

**Blaine Andrews, San Leandro resident,** addressed the City Council, commenting that the project is an opportunity to beautify the neighborhood and improve the conditions on MacArthur Boulevard.

**Ronald Gehrke, San Leandro resident,** addressed the City Council, commenting that he feels this is a good project and expressing his support for it.

**Susan Rose Riskind, San Leandro resident,** addressed the City Council, commenting that the BNA and other affected HOAs were not consulted about the changes and have not had the opportunity to view the development in its present form. Ms. Riskind commented on the lack of information and outreach for the project and the inadequate buffer zone between this project and the surrounding neighborhood.

**Lou Filipovich, San Leandro resident,** addressed the City Council, expressing agreement with the comments made by the previous speaker. Mr. Filipovich commented on mandatory vs. voluntary homeowner associations and expressed concern regarding the way in which the City manages redevelopment and the tax increment.

**Mark Gehrke, San Leandro resident,** addressed the City Council, expressing concern regarding the speed of traffic traveling on MacArthur Boulevard. Mr. Gehrke expressed support for the project, commenting that he believed the proposed project would bring new life to the area and possibly slow the traffic down.

**Robert V. Caruso, San Leandro resident,** addressed the City Council, stating that he is the developer of a housing project on MacArthur. Mr. Caruso noted that the population pressures and economics of the area do not allow for low density projects to be built. He commented on the challenges of building higher density projects that successfully integrate with a surrounding lower density neighborhood. Mr. Caruso

**MINUTES**                                                                                Page 8
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

commented that he feels this project is a good one and would improve the neighborhood, make it safer, attract new business, and improve the vitality of the area.

Councilmember Gregory commented that he favors the project as it brings more housing into the City and supports the principles of transit-oriented development. He commented that he feels the parking issues could be mitigated. Councilmember Gregory stated that, if it is true that the changes to the project were not communicated to the neighborhood associations, he would favor delaying the decision.

Councilmember Gregory left the meeting at 9:10 p.m.

Applicant Settlemeir responded to the public comments, indicating that there would be a decrease in the number of vehicle trips generated by the project due to the elimination of the commercial aspect. Mr. Settlemeir noted that the project is the same size as what was previously approved, but there are more and smaller units. Mr. Settlemeir disputed the notion that the project would be "big grey boxes," and he pointed out the architectural features of the proposed project. He acknowledged that he did not do an adequate job of gaining community support for the project; however, he stated that the local businesses and many local residents do support it. Mr. Settlemeir commented that over the past week, a negative email campaign was waged against the project. He remarked that the opposition by the neighbors is purely a NIMBY reaction.

Architect Ruffin addressed the concerns about the fences near the property line, the setback on MacArthur and the "looming" of the buildings over neighboring residences. He noted that, while the buildings will be taller than what is currently there, they will be primarily on the MacArthur side. Mr. Ruffin stated willingness to consider reducing the Herma Court duplexes from three stories to two.

The applicant and architect responded to questions from the Council regarding the front walls; the orientation, setbacks and driveways of the homes on Herma Court; meetings the applicant held with the BNA and whether they have seen the new project configuration; the project footprint; the owner of the narrow lot and the possible land swap; neighborhood meetings held at Stepping Stones; and the number of inclusionary housing units required for this project.

There being no further comments from the public, and without objection, the Public Hearing was closed.

Vice Mayor Grant acknowledged staff's good work on the project. She stated that she supports additional housing in the area and complimented the architecture of the project. Vice Mayor Grant commented that she feels the project is too dense for the community and the parking ratio is insufficient. She indicated that she was neither in favor of the increased floor area ratio, nor of the setback variances.

Mayor Santos pointed out that this project is supposed to generate fewer vehicle trips and require less parking than if it had a commercial component. He commented on the changing times and the need for higher density projects to meet the demand for housing.

**MINUTES**                                                                                   Page 9
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

Councilmember Starosciak commented that in the time she has been on the Council, she has not seen a single-family housing development project presented for approval. She commented that the inclusionary zoning requirement is causing the need for increased density, and those who believe in the importance of inclusionary housing must accept increased density and its impacts. Councilmember Starosciak expressed concern about the massing impact of the proposed project and having three-story homes directly adjacent to single-story homes, and she suggested a better "step down" of the buildings. Councilmember Starosciak expressed concern that northbound traffic on MacArthur would back up if left turns were allowed into the project. She asked what the City would get in return for the exceptions being made for the project. Ms. Barros commented that the trade-off for the parking exception would be the additional open space on the site. The setback exception applies only to the most northerly corner unit and on the MacArthur side where the patios encroach on the property line. The additional landscaping would mitigate the loss of setback.

Councilmember Souza asked how the parking requirement might be affected if the units on Herma Court were reduced from three stories to two. Ms. Barros indicated that it would depend on the reduction in the number of bedrooms. Councilmember Souza applauded the members of the public who attended the meeting to express their opinions on the project. She commented on the parking issues and that higher and denser projects are the wave of the future. Councilmember Souza indicated that she would not be opposed to delaying the decision due to the uncertainty of the land swap. Mr. Hom commented that if the applicant and property owner came to agreement on the land swap, the Council would need to approve the change to the tentative map.

Councilmember Stephens commented that he has been continually monitoring the BNA website and reviewing the many emails that he and the Council have received. He complimented Planner Sally Barros for her hard work over a prolonged period of time in trying to represent the best interests of the community, and he expressed appreciation to the community members who attended the meeting for their sincere interest in the direction of the neighborhood and the City. Councilmember Stephens commented on the work of the General Plan Advisory Committee and its recognition of the need for improvements to the MacArthur corridor, and on the City's Housing Element, which contains housing goals imposed by the State. Councilmember Stephens noted the tremendous growth in the state and the changing landscape. He stated that we cannot go back to the way it used to be, and sustainable housing must be built at a higher density.

A motion was made by Councilmember Stephens, seconded by Councilmember Starosciak, to pass the ordinance to print, adopt the resolution and approve the planned development.

Vice Mayor Grant commented that this project represents a lot of housing on a small piece of property with inadequate parking to support it, and she asked the Council to consider lowering the density to the minimum 17 units in order to maintain the required three affordable units.

**MINUTES**                                                            Page 10
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

- **Ordinance No. 2007-009**, an Ordinance Zoning Certain Property Herein Described as to Rezoning District and Amending Zoning Map, PLN2006-00104, 311-335 MacArthur Boulevard, Assessor's Parcel Numbers 76-311-1-1, 76-311-1-3, 76-311-3, 76-311-4, and 76-311-5.          (1024/1099)

  **— Passed to Print**

  M/S/C Stephens and Starosciak.    Ayes: 5; Noes: 1 (Grant); Absent: 1 (Gregory)

- **Resolution No. 2007-060**, Resolution Approving Findings for Vesting Tentative Map Tract 7875, PLN2006-00104, 311-335 MacArthur Boulevard, Assessor's Parcel Numbers 76-311-1-1, 76-311-1-3, 76-311-3, 76-311-4, and 76-311-5.(3116)

  **— Adopted**

  M/S/C Stephens and Starosciak.    Ayes: 5; Noes: 1 (Grant); Absent: 1 (Gregory)

- **Minute Order No. 2007-058**, Motion Approving the Planned Development PLN2006-00104; to construct a 23-unit, three-story residential for-sale row-home development at the corner of MacArthur Boulevard and Herma Court on a lot that totals 0.99 acre. Units range in livable area from 1,151 square feet to 2,042 square feet. The site is zoned CC Commercial Community District and RS Residential Single-Family District.    311-335 MacArthur Boulevard; Assessor's Parcel Numbers 76-311-1-1, 76-311-1-3, 76-311-3, 76-311-4, and 76-311-5; Ruffin Architecture (Applicant); Settlemeir Properties (Property Owner).    (1009)

  **The City Council approved the Planned Development PLN2006-00104 to construct a 23-unit, three-story residential for-sale row-home development at the corner of MacArthur Boulevard and Herma Court on a lot that totals 0.99 acre. Units range in livable area from 1,151 square feet to 2,042 square feet. The site is zoned CC Commercial Community District and RS Residential Single-Family District.    311-335 MacArthur Boulevard; Assessor's Parcel Numbers 76-311-1-1, 76-311-1-3, 76-311-3, 76-311-4, and 76-311-5; Ruffin Architecture (Applicant); Settlemeir Properties (Property Owner).**

  M/S/C Stephens and Starosciak.    Ayes: 5; Noes: 1 (Grant); Absent: 1 (Gregory)

**Council recessed from 10:08 p.m. to 10:17 p.m.**

B.    Matter of Appeal by International Church Foursquare Gospel, Applicant, of the Decision of the Planning Commission's Denial of PLN2006-00049; Rezone and Zoning Map Amendment to rezone the properties identified as 14600 **and 14850**

**MINUTES**                                                                    Page 11
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

Catalina Street from Industrial Park (IP) to Industrial Park, Assembly Use Overlay (IP-AU). No physical changes to the properties are proposed as part of this entitlement. The project site is located at the southeast corner of Catalina Street and Farallon Drive and is comprised of three separate parcels. Assessor's Parcel Numbers 80G-933-20, -21, and -22-1; International Church Foursquare Gospel (Property Owner and Applicant).

This being the time and place for the Public Hearing on the above matter, City Manager Jermanis gave background on the item and introduced Planning Manager Debbie Pollart. Ms. Pollart gave a PowerPoint presentation providing additional background on the Applicant's request for a rezone of the 14600/14850 Catalina property to IP-AU to allow for assembly use, the reasons for the Planning Commission's denial of the request for rezone and zoning map amendment, the Applicant's appeal of the decision, and staff's recommendation.

Appellant Peter MacDonald addressed the City Council regarding the zoning issues, including the adverse parking and traffic impacts generated by the church at its current location on Manor Boulevard. Mr. MacDonald noted that the new location on Catalina has ideal facilities and parking for the church, as well as good arterial access. Mr. MacDonald commented that he feels churches are compatible uses with light industrial. He indicated that their uses are complementary because their activities peak at different times, and churches support ancillary services that businesses need, such as child care, after school programs and human support activities. Mr. MacDonald noted that neighboring businesses have expressed support for the church's relocation to Catalina. He commented on Farallon Drive as an arterial, providing access to main streets and the freeway.

Paul Gantt, speaking on behalf of Faith Fellowship, stated that he is a certified safety professional and registered environmental assessor and has reviewed the health and safety concerns associated with this project. Following his study, he concluded that there is no rational reason to restrict the church from locating to the site on the basis of the health and safety concerns. Mr. Gant provided a brief background on hazardous materials business plans and the overlapping federal, state and local regulations which protect the safety of workers and the community.

Gary Mortara, pastor of Faith Fellowship Church, commented that he believed he was working hand in hand with City staff, and the Planning Commission's denial caught him off guard. Pastor Mortara stated that he didn't feel the application should have been denied due to health hazard, and the property meets seven of the eight criteria established for the Assembly Use Overlay. He indicated that the subject property fits the church's use very well. Pastor Mortara commented that the church does not provide paid babysitting; however, child care is provided for their programs. He described the current services and the days and hours they are provided.

Jeff McGallion, speaking on behalf of Faith Fellowship, commented that he went to Orange, Texas to help rebuild after Hurricane Rita. He observed that churches are where people turn in an emergency; churches make the community.

**MINUTES**    Page 12
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

The Hearing was then opened to the public.

**Diane Bagües, San Leandro resident,** addressed the City Council, urging the Council to deny the Church's appeal. Ms. Bagües commented that the Church bought the Catalina property knowing that it was zoned for industrial use. She expressed concern about taking land away from industrial uses which provide jobs and contribute to the City's tax base. Ms. Bagües commented that the zoning change would set a precedent that would prevent the denial of similar requests in the future. Ms. Bagües commented that a flyer which was disseminated in the neighborhood to gain support from the neighbors for the Church's move was misleading and disingenuous.

**Kathy Sanchez, Marina Gardens HOA,** addressed the City Council, commenting on a letter sent to the Council requesting denial of the appeal which she co-signed with Ed Jaramillo of the Marina West HOA. Ms. Sanchez expressed concern regarding the impact of the proposed church on Doolittle Drive traffic, the required parking which she feels is inadequate for the number of church members, and the loss of tax revenue and increased burden on the City's infrastructure and services. Ms. Sanchez commented on a letter she recently received from Pastor Mortara in which he stated that, if the Church's application was approved, he would keep his members from driving or parking on Doolittle Drive.

Pastor Mortara addressed the issue of traffic on Doolittle Drive, commenting that the bulk of the Church traffic would be directed onto Wicks Boulevard.

There being no further comments from the public, and without objection, the Public Hearing was closed.

A motion was made by Councilmember Prola, seconded by Councilmember Souza, to deny the appeal.

Councilmember Prola commented that Faith Fellowship bought the Catalina property knowing that it was zoned for industrial use, and he expressed concern about taking property out of the tax base. Councilmember Prola noted that the presidents of all three homeowners associations in the area have sent letters in opposition to the application. He expressed concern that Wicks and Doolittle are already heavily impacted on Wednesday evenings, and the Church's plan to hold a weekly Wednesday night gathering for 400 people would have a direct negative effect on the neighborhood. Councilmember Prola expressed hope that the Church would choose one of the 196 sites in San Leandro designated for assembly use.

Councilmember Souza thanked the members who attended the meeting to speak in support of the Church. She stated that she believes Faith Fellowship does wonderful things for San Leandro.

- **Minute Order No. 2007-059,** Motion Denying the Appeal by International Church Foursquare Gospel, Applicant, and Upholding the Decision of the

**MINUTES**                                                                                          Page 13
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

Planning Commission's Denial of PLN2006-00049; Rezone and Zoning Map Amendment to rezone the properties identified as 14600 and 14850 Catalina Street from Industrial Park (IP) to Industrial Park, Assembly Use Overlay (IP-AU). No physical changes to the properties are proposed as part of this entitlement. The project site is located at the southeast corner of Catalina Street and Farallon Drive and is comprised of three separate parcels. Assessor's Parcel Numbers 80G-933-20, -21, and -22-1; International Church Foursquare Gospel (Property Owner and Applicant).                                                        (1099)

**The City Council denied the appeal by International Church Foursquare Gospel, Applicant, and upheld the decision of the Planning Commission's denial of PLN2006-00049; rezone and Zoning Map amendment to rezone the properties identified as 14600 and 14850 Catalina Street from Industrial Park (IP) to Industrial Park, Assembly Use Overlay (IP-AU). No physical changes to the properties are proposed as part of this entitlement. The project site is located at the southeast corner of Catalina Street and Farallon Drive and is comprised of three separate parcels. Assessor's Parcel Numbers 80G-933-20, -21, and -22-1; International Church Foursquare Gospel (Property Owner and Applicant).**

**M/S/C Prola and Souza. Ayes: 6; Noes: 0; Absent: 1 (Gregory)**

## 4.  JOINT CITY COUNCIL/SAN LEANDRO REDEVELOPMENT AGENCY PUBLIC HEARINGS

None.

## 5.  PUBLIC COMMENTS

Public Comments are limited to 3 minutes per speaker, subject to adjustment by the Mayor. When you address the City Council, you should **fill out a speaker card** and submit it to the City Clerk so the order of speakers may be determined and an official record of names and addresses obtained. The public is invited to make comments on items of public interest **NOT** listed on the Agenda.

**Darlene Evans, San Leandro resident**, addressed the City Council regarding churches in San Leandro and Faith Fellowship Church's application. She asked where Faith Fellowship will go.

## 6.  CITY MANAGER AND CITY ATTORNEY REPORTS AND COMMENTS

City Manager Jermanis commented on the wonderful Cinco de Mayo celebration coordinated by the staff of the Recreation and Human Services Department.

### 7.    AMENDMENT OF CONSENT CALENDAR

City Councilmembers or staff have an opportunity at this time to request that an item be removed from the Consent Calendar for the presentation of a staff report or other special consideration.    Members of the Public may request the opportunity to address the City Council regarding items remaining on the Consent Calendar by filling out a speaker card and submitting it to the City Clerk prior to the calling of Item 7, Amendment of Consent Calendar.    Items remaining on the Consent Calendar will be considered for approval under one motion.

No amendment to Consent Calendar.

### 8.    CONSENT CALENDAR

Consent Calendar items are considered for approval by the City Council with one single action.    As described above in Item 7, Amendment of Consent Calendar, the City Council may remove items from the Consent Calendar for purposes of presentation or discussion. Members of the public who have requested to address the Council regarding items remaining on the Consent Calendar may do so for up to 3 minutes per item with a maximum of 5 minutes for all items.    Items listed on the Consent Calendar are deemed to have been read by title.

**The items on the Consent Calendar were approved by the following vote:**

**M/S/C Stephens and Souza.    Ayes: 6; Noes: 0; Absent: 1 (Gregory)**

A.    Minutes of the Meeting of April 16, 2007.    **Approved as submitted.**

B.    <u>**Minute Order No. 2007-060**</u>, Resolution Commending Superintendent Arnie C. Glassberg upon His Retirement from the San Lorenzo Unified School District.    (1081)

   **The City Council approved the resolution commending Superintendent Arnie C. Glassberg upon his retirement from the San Leandro Unified School District.**

C.    <u>**Ordinance No. 2007-008**</u>, an Ordinance Amending Chapter 4-23, Title 4 of the San Leandro Municipal Code Relating to the Addition of Acupuncture and Acupressure as Services Regulated Pursuant to Chapter 4-23 (requires acupuncture and acupressure establishments and masseurs/masseuses to undergo permit review and approval process).    (1413)

   **— Adopted**

D.    <u>**Ordinance No. 2007-010**</u>, an Ordinance Amending Section 6-1-430(c) of Chapter 6-1, Title 6 of the San Leandro Municipal Code Relating to Non-Motorized Vehicles (prohibits parking of non-motorized vehicles on any street).    (1022)

**MINUTES**                                                                    Page 15
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

— **Passed to Print**

E.    **Resolution No. 2007-061**, Resolution Amending the 2007 San Leandro Management
      Organization (SLMO) Salary Schedule to Add and Set the Salary Ranges for the Street
      Maintenance Manager and Facilities and Open Space Manager and Delete the Street
      Manager, Facilities Manager and Open Space Manager Classifications (establishes
      salaries for job classifications).                                   (1177/2134)

F.    **Resolution No. 2007-005 RDA**, Resolution of the Redevelopment Agency of the City
      of San Leandro Approving an Owner Participation Agreement (OPA) Between the San
      Leandro Redevelopment Agency and the Barbara M. Brooks Separate Property Trust for
      the Rehabilitation of Property Located in the Alameda County/City of San Leandro
      Redevelopment Project Area Located at 14833 East 14th Street, Assessor's Parcel
      Number 077D-14775-014-00 (provides for rehabilitation of the subject property for an
      interim use for a period not to exceed five years).                      (3117)

G.    **Resolution No. 2007-062**, Resolution Approving Contractual Services Agreement
      Between the City of San Leandro and Environmental Science Associates (ESA) Related
      to Preparation of an Environmental and Regulatory Constraints Assessment for the
      Marina Study Area (provides for an assessment of potential options for future uses in
      the San Leandro Marina. Cost: $34,978. Funding: Shoreline Enterprise Fund.   (2323)

H.    **Resolution No. 2007-063**, Resolution Authorizing Submission of a Request to the
      Metropolitan Transportation Commission (MTC) for the Allocation of Fiscal Year
      2007-08 Transportation Development Act (TDA) Article 3 Pedestrian/Bicycle Project
      Funding (provides for handicap ramps, sidewalk, bulb-outs, pedestrian safety signage,
      accessible pedestrian traffic signal, and lighted crosswalks at various locations
      Citywide).                                                           (1980)

I.    **Resolution No. 2007-064**, Resolution Authorizing the City Manager to File an
      Application for Federal Congestion Mitigation and Air Quality Improvement (CMAQ)
      Funding in the Amount of $750,000 and Committing the Necessary Non-Federal Match
      and Assuring the Completion of the Construction of the Bay Trail Slough Bridge
      Project, Project No. 144-36-012 (authorizes the City Manager to apply for a grant to
      assist in funding construction of the Bay Trail Slough Bridge project).   (1980/3025)

J.    **Resolution No. 2007-065**, Resolution Authorizing the City Manager to Submit an
      Application to the Metropolitan Transportation Commission (MTC) for a Grant in an
      Amount Not to Exceed $184,000 from the Federal Surface Transportation Program
      (STP) and/or Congestion Mitigation and Air Quality (CMAQ) Program to Assist in
      Funding the Upgrade of the Advanced Traffic Management System (ATMS)
      (authorizes the City Manager to apply for a grant to assist in funding the upgrade of
      ATMS).                                                               (3088)

K.    **Resolution No. 2007-066**, Resolution of Amendment of Contract to G.E. Chen
      Construction, Inc. to Include Phase 1 of the City's Residential Noise Insulation

Program, Project No. SL-0401 (provides for amendment of contract authorizing $2,224,312.29 in change order to soundproof 77 additional homes). Funding: Port of Oakland.                                                                                                      (3080)

9.   **ITEMS REMOVED FROM CONSENT CALENDAR**

Public comments are limited to 3 minutes per speaker per item, subject to adjustment by the Mayor.

None.

10.  **ACTION ITEMS**

Public comments are limited to 3 minutes per speaker per item, subject to adjustment by the Mayor.

A.   Matter of Selection of Vice Mayor (complies with City Charter Section 310 which states that at its first regular meeting in May, the Council shall designate one of its members Vice Mayor, to serve for a period of one year and until a successor is elected and qualified).

Councilmember Starosciak commented on the excellent job Vice Mayor Grant has done in representing the City and as a mentor and role model to the new members of the Council.

- **Minute Order No. 2007-061**, Motion to Reelect Surlene Grant as Vice Mayor.                                                                                              (1315)

  **The City Council reelected Surlene Grant as Vice Mayor.**

  **M/S/C Starosciak and Prola. Ayes: 6; Noes: 0; Absent: 1 (Gregory)**

Mayor Santos commented that when he served on the City Council in 1984, the vice mayor position was rotated, and every member of the Council had the opportunity to serve. For the past several years, the vice mayor position stayed within Districts 1 and 4. Mayor Santos requested that the issue of selection of the vice mayor be referred to the Rules and Communications Committee for discussion. There was consensus of the Council to do so.

B.   Request from Councilmember Starosciak to Reconsider the Resolution Authorizing City Manager to Sign a Letter of Intent to Support the Formation of the East Bay Regional Communication System (EBRCS) Governed by a Joint Powers Authority (JPA) for Alameda and Contra Costa Counties.

**Item 10.B. was taken prior to Item 3, Public Hearings.**

C.    Report on Closed Session Actions Taken

None.

## 11. CITY COUNCIL REPORTS

A.    Reports on Intergovernmental Agencies

Vice Mayor Grant reported on the ACTIA meeting she attended on behalf of Mayor
Santos. A survey was recently sent out on ACTIA's small and local business enterprise
programs.

Vice Mayor Grant reported that she also attended the Congestion Management Agency
(CMA) meeting on behalf of Councilmember Starosciak. She reported that there is a
small contingent on the CMA which is interested in revisiting the issue of allowing
trucks back on I-580, and the meeting packet contained a memo from CMA Executive
Director Dennis Fay to the CMA, recommending a study of the issue. Vice Mayor
Grant recalled that several years ago, members of the City Council worked with then
Assemblymember Ellen Corbett to support legislation to make the truck ban permanent.
Councilmember Starosciak stated that she will monitor the issue and work with the
Council's counterparts in Oakland and the County Supervisors representing San
Leandro and Oakland. Vice Mayor Grant recalled that the Council held community
meetings and took a position on the issue. Mayor Santos requested that staff research
the actions that were taken on the matter by the former City Council.

Councilmember Souza reported that she and Councilmember Gregory attended a Fire
Commission meeting last week. The Fire Department gave a presentation on its
vehicles and fleet maintenance.

Mayor Santos reported that he attended a Waste Management Authority (WMA)
meeting on behalf of Vice Mayor Grant. He reported on WMA's effort to reduce waste
by 75% by 2010, and there was concern that the County may not make the goal. Mayor
Santos encouraged the Council to visit www.stopwaste.org for recycling information.

B.    Reports on Conferences and Seminars

None.

C.    Reports on City Council Committees

1.    Business and Housing Development Committee Meeting of April 12, 2007.
**Accepted as submitted.**

2.    City and San Leandro Unified School District Liaison Committee Meeting of
April 19, 2007. **Accepted as submitted.**

**MINUTES**                                                                              Page 18
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

## 12.   CITY COUNCIL COMMENTS

Vice Mayor Grant commented that she was recently selected to participate in the League of California Cities Civic Leadership Institute, which is a forum to discuss state issues and public policy. Her area of focus will be the future of housing and energy supply in California. Vice Mayor Grant thanked the Council for the privilege of serving as vice mayor. She inquired about the status of the property at 143rd and Washington.

Councilmember Souza commented on the wonderful Cinco de Mayo event, and the participation by two of the City commissioners, Amada Robles and Juan Manuel Martinez. She reported that she visited the San Leandro Aquatics Center on Sunday, along with over 600 people. Councilmember Souza commented on the amount of recyclables being thrown in the garbage at the Aquatics Center and inquired about placing recycling bins at City parks and facilities. In support of the commitment by the City to reduce greenhouse gas emissions, Councilmember Souza suggested evaluating the feasibility of left turn-only lanes, such as at Alvarado and Aladdin or at Doolittle and Fairway. She stated that she would forward a list to staff of suggested intersections for study.

Councilmember Starosciak expressed appreciation to staff, and particularly the Community Development Department, for putting together the information for tonight's Council meeting. She noted that staff responded to many inquiries and concerns over the past few months, and she complimented them on their professionalism and their handling of tonight's meeting.

Councilmember Stephens commented on the increase in community preservation activity and the anticipated resulting increase in the number of issues that will need to be evaluated. He pointed to the need for a process to evaluate concerns of the community, and suggested having a commission for this purpose. Councilmember Stephens suggested that rather than creating a new commission, perhaps the BZA or Planning Commission might be tasked with this responsibility. He suggested that the matter be referred to the Rules and Communications Committee for discussion and consideration. There was consensus of the Council to do so.

Councilmember Prola commented that he would like to see the notification radius increased from 300 feet to 500 feet. He commented that the increase would result in more community involvement. Councilmember Prola noted that in his meetings with neighborhood groups, residents have complained about the lack of notification or short notice. He requested that the Council consider expanding the notification radius. Councilmember Prola commented that he would like to see the inclusionary zoning requirement be *at least* 15%, and more would be better.

Mayor Santos commented that the inclusionary requirement is already 15%, and a density bonus is also available. He commented that the notification issue has been studied many times and most recently about two years ago. Staff will provide information to the Council on inclusionary zoning and expansion of the notification radius. Mayor Santos commented that he had an
enjoyable time at the Cinco de Mayo celebration and enjoyed working with Commissioner Robles. On Saturday, he and Councilmember Souza attended the Holy Spirit Cemetery cleanup, and the benefit Guns and Hoses softball game between Police and Fire at Thrasher

**MINUTES**                                                                                   Page 19
City of San Leandro City Council and San Leandro Redevelopment Agency Joint Meeting—May 7, 2007

Park.  Mayor Santos commented on problems with signal lights in District 2, such as at Bancroft and 150th, East 14th at Harry's Hof Brau, and 136th and San Leandro Boulevard. Mayor Santos suggested that staff provide a report to the Council on the signal light timing. Mr. Jermanis indicated that staff would provide a report.

13.  **ADJOURN**

The meeting was adjourned at 11:43 p.m.

RESPECTFULLY SUBMITTED:

*Marian Handa*

**MARIAN HANDA**
City Clerk of the City of San Leandro

**EXHIBIT 25**



**City of San Leandro**
Civic Center, 835 E. 14th Street
San Leandro, California 94577

June 29, 2006

Jim Lee
Faith Fellowship Church
577 Manor Blvd.
San Leandro, CA 94577

Re:    Application for a Zoning Code text amendment related to Assembly Uses
        in the IL Industrial Limited Zone

Dear Jim:

The City is in receipt of an application made May 19 by Faith Fellowship for a
proposed Zoning Code text amendment. The proposed amendment would be
to allow Religious Assembly uses (as defined in Article 3 of the Zoning Code) to
be added to those uses considered conditionally permitted (requiring approval
of a use permit) in the City's Industrial Limited (IL) zones. As you may be aware,
under the City's Zoning Ordinance, religious assembly is regulated in the broader
context of assembly uses (which includes clubs and lodges). Thus, the change
requested would apply to all assembly uses.

At this month's Business Development Subcommittee, staff indicated that we
would be bringing a proposal back to the Subcommittee, outlining the
anticipated analysis staff would undertake for this application. Given current
staff commitments, vacation schedules, and the fact that the Subcommittee
does not meet during the month of August, staff is anticipating returning to the
Subcommittee with this matter in September. Subsequent to the Subcommittee
meeting, staff would schedule a Planning Commission worksession (also in
September), followed by Redevelopment Advisory Committee (RAC) meetings
(both RACs would hear this item) in September/October. A public hearing
before the Planning Commission is anticipated in October/November, followed
by the City Council hearing in November/December.

The time frame described above takes into account research and analysis
anticipated to be completed by staff, and the appropriate level of
environmental analysis and public review (staff anticipates preparation of a
Negative Declaration will be required).

Shelia Young, Mayor

City Council:        Orval "OB" Badger;        Surlene G. Grant;        Glenda Nardine;
                     Tony Santos;              Joyce Starosciak;         Bill Stephens



**EXHIBIT 25**

I will be out of the office from June 30-July 10. If you need assistance during this time, please contact Hanson Hom at 577-3421. I look forward to working with you on this application, and will check in with you upon my return.

Best regards,

Debbie Pollart, Planning Manager
Community Development Department

c:    City Manager
      Community Development Director
      Business Development Manager
      City Attorney's Office

# EXHIBIT 26

**City of San Leandro**
Planning Services
835 E. 14th Street – San Leandro CA 94577
PH (510) 577-3371 – FAX (510) 577-6007

## PLANNING PERMIT APPLICATION

*Please type or print legibly.*

Project Address: **14100 CATALINA**    Assessor's Parcel Number: **80G-933-22-1**
**80G-933-21-0**

*Please check all applicable permits.*

☐ Conditional Use Permit    ☐ Fence Modification    ☐ Planned Development    ☐ Site Plan Review:
☐ Variance    ☒ Zoning Map Amendment    ☐ Other _____    △ Major
☐ Parking Exception    ☐ Tentative Map    △ Minor
△ RS-VP

*Please describe the project associated with your application request. (Attach additional sheets if necessary.)*
REZONE PROPERTIES FROM IP TO IP(AU) WITH ASSEMBLY USE OVERLAY — MODIFICATION TO EXISTING APPLICATION

*Please provide a supporting statement for your application request. (Attach additional sheets if necessary.)*
_____
_____
_____

Applicant (☒owner  ☐lessee  ☐ other ): **ICFG**    (SAN LEANDRO #2 - LOCAL)
Legal Name ( ☐ individual  ☒corporation  ☐ joint venture  ☐ partnership ):
Mailing Address: **1910 WEST SUNSET BLVD #200**    Work Phone: **(510) 257-5723 (JIM LEE)**
City: **LA**    State: **CA**   Zip: **90026**    Home Phone: (____)
Email Address (optional): _____    Cell Phone: **(510) 773-8503**

I (We) hereby certify under penalty of perjury that I (we) join in said application and that the statements and information contained herein are in all respects true and correct.
Date: **3/20/07**    Applicant's Signature: _____

Property Owner (if the applicant is not the owner):
Legal Name ( ☐ individual  ☐ corporation  ☐ joint venture  ☐ partnership ):
Mailing Address: _____    Work Phone: (____)
City: _____    State: _____   Zip: _____    Home Phone: (____)
Email Address (optional): _____    Cell Phone: (____)

I (We) hereby certify under penalty of perjury that I (we) join in said application and that the statements and information contained herein are in all respects true and correct.
Date: _____    Property Owner's Signature: _____

### TO BE COMPLETED BY CITY STAFF

Project #: PLN **2006-00149**    Date Received: **5/14/06** By: **SPD**    Zoning District: **IP**
Reviewing Body: **PC/CC**    Fee Received: **2006**    Code Section: ____
Hearing Date: **4/12, 5/19**    Receipt #: **72A90**    Redevelopment: ☐ Plaza  ☐ Joint ☒ W.S. Area
Customer #: **17657**    Environmental: ☐ Exempt ☐ Neg Dec  ☐ EIR

Staff Comments:    (ALREADY REP'D)

COMMUNITY DEVELOPMENT DEPARTMENT
www.ci.san-leandro.ca.us

EXHIBIT 26

**EXHIBIT 27**

## City of San Leandro
Civic Center, 835 E. 14th Street
San Leandro, California 94577



April 25, 2007

Mr. Jim Lee
Faith Fellowship Church
577 Manor Blvd.
San Leandro, CA 94579

Re:    Incomplete Conditional Use Permit Application for a Proposed Assembly
Use at 14600/14850 Catalina Street (PLN2007-00013)

Dear Jim:

In accordance with the California Government Code Section 65943, this letter
will serve as notification that your Conditional Use Permit Application is
determined by this office to be incomplete. To be deemed a complete
application, the following information must be submitted to the City's Planning
Services Office:

### Site Plan

1. Project Data on Sheet A1 should indicate size (in square feet) of
'sanctuary' area, and indicate number of parking spaces required vs.
number of spaces provided.
2. Parking stalls on Sheet A1 should show dimensions for standard,
compact and handicap spaces. In addition, the driveway aisle widths
dimensions should be shown.
3. It is unclear whether the diagonal parking spaces shown at the top of
Sheet A1, partially within an access easement, are part of those
counted towards the 188 spaces on-site (some of these are on the
subject property, and some on the adjacent property).
4. The site landscaping should be identified, either with a key indicating
what the pattern on Sheet A1 represents, or a written identification of
existing landscaping (as was done for the raised planters).
5. The height of the existing concrete screen wall should be indicated on
Sheet A1.
6. Square footage for all uses within the building should be indicated on
either Sheet A1 or A2 (i.e. sanctuary, offices, kitchen, classrooms, lounge,
storage, utility, etc.)
7. Please indicate whether the chairs in the main sanctuary area are fixed
or not, and what the maximum occupancy for the room will be.

City Council:    Surlene C. Grant;    Michael J. Gregory;    Jim Prola;
Tony Santos, Mayor    Diana M. Souza;    Joyce R. Starosciak;    Bill Stephens

**EXHIBIT 27**

$I-1$

514

14600/14850 Catalina – Incomplete Letter
April 25, 2007
Page 2 of 2

8.  Could the triangular-shaped areas at the rear of the sanctuary be used for additional seating? These two areas should be labeled as to potential use.

9.  Are there any existing lighting standards in the parking lot, or are any proposed?

10. Is any new roof-mounted equipment (e.g. HVAC) proposed?

Application

11. Just as a point of clarification, Mr. Luke Sims does not work in the Planning Department (your Applicant's Statement was addressed to him).

12. Staff is unclear as to your application for "entertainment activities" and what you imply by "SAME-CHURCH-USE". In the Zoning Code, 'Entertainment' activities are differentiated from 'Assembly' uses. If you are applying as an entertainment use, please provide materials in support of that.

13. What are the intended days/hours of operation for the assembly use (including number of people anticipated for each use)? The applicant's statement states "four hours we spend on Sunday", yet your email to me, dated March 30th indicates activities every day except for Saturday. In addition, the applicant's statement indicates that you would make your facility available to other organizations. The intended days/hours that these activities could take place needs to be stipulated as part of the CUP application.

14. The Findings submitted as part of your application indicate that baby sitting may be a potential use offered at this location. If that is the case, the application needs to be modified to include this activity, and include the intended days/hours of operation.

Once the requested information has been submitted and reviewed by staff, and determined to be complete, staff will contact you about scheduling this item for a future Board of Zoning Adjustments meeting (they meet the 1st/3rd Thursdays of the month). Please contact me should you have any questions.

Best regards,

Debbie Pollart, Planning Manager
Community Development Department

I-2

**EXHIBIT 28**

**Golden Gate Reporting**

1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3

4    INTERNATIONAL CHURCH OF THE
     FOURSQUARE GOSPEL,

5
                      Plaintiff,
6
            vs.                        No. C 07-03605 PJH
7
     CITY OF SAN LEANDRO, et al.,
8
                      Defendants,
9
     _____/

10

     FAITH FELLOWSHIP FOURSQUARE
11   CHURCH,

12        Real Party in Interest.

13   _____/

14

15

16                DEPOSITION OF JOHN JERMANIS

17

18   DATE:            MAY 19, 2008

19   TIME:            2:35 P.M.

20

21   LOCATION:        MEYERS NAVE RIBACK SILVER & WILSON
                      555 13th Street
22                    Suite 150
                      Oakland, California 94607
23
     Reported By:     Jane H. Stuller
24                    Certified Shorthand Reporter
                      License Number 7223, RPR
25

                                                    Page 1

**Golden Gate Reporting**

```
 1                              APPEARANCES

 2

 3    For the Plaintiff:

 4              LAW OFFICE OF PETER MacDONALD
                BY:  PETER MacDONALD
 5              400 Main Street
                Suite 210
 6              Pleasanton, California 94566
                (925) 462-0191
 7              pmacdonald@macdonaldlaw.com

 8                       and

 9              PACIFIC JUSTICE INSTITUTE
                BY:  MATTHEW B. McREYNOLDS
10              Sacramento Office
                9851 Horn Road
11              Sacramento, California 95827-6600
                (916) 857-6900 ext 203
12              mattmcreynolds@pacificjustice.org

13

14    For Defendant CITY OF SAN LEANDRO:

15              MEYERS NEVES RIBACK SILVER & WILSON
                By:  DEBORAH J. FOX
16              333 South Grand Avenue
                Suite 1678
17              Los Angeles, California 90071
                (213) 626-2906
18              dfox@meyersnave.com

19

20

21

22

23

24

25
```

Page 2

1      A.  For about 13 years.  So I was almost 26 years

2  within the finance department, about nearly half of that

3  as the assistant finance director, and then -- and then

4  the other half as the finance director.

5      Q.  Okay.  Luke Sims says that you opposed the

6  Faith Fellowship location at Catalina -- 14600 Catalina

7  Street.

8          MS. FOX:  That's the end of the question?

9          MR. MacDONALD:  Yes.

10         MS. FOX:  Objection; misstates the testimony of

11  the witness.  Vague and ambiguous as to "oppose."

12  BY MR. MacDONALD:

13     Q.  Did you oppose the location of the Faith

14  Fellowship Church at 14600 Catalina Street in San

15  Leandro --

16         MS. FOX:  Objection; vague.

17  BY MR. MacDONALD:

18     Q.  -- Catalina Court?  Excuse me.

19         MS. FOX:  Objection; vague and ambiguous as to

20  "opposed."

21         MR. MacDONALD:  Go ahead.

22         THE WITNESS:  I was concerned about the issues

23  related to the zoning, and for that reason I was against

24  it, yes.

25  BY MR. MacDONALD:

Page 7

1    Q.  What were those issues?

2    A.  That the zoning did not allow assembly use at

3    that location.

4    Q.  Any other reasons?

5    A.  The -- the other reasons that I had were that I

6    felt that I wanted to see the area preserved for an

7    industrial business park -- it's actually the -- the

8    best of the business parks that the city has -- and

9    wanted to see if we can't retain that campus-like look

10   that other communities have; and that's attractive to

11   bring in business and retain business.

12   Q.  You mentioned that area was one of the best

13   areas you have.  Could you describe, during the time you

14   worked at San Leandro, when that area came into

15   existence as a business park?

16   A.  The area actually was developed prior to '71,

17   so it grew over a period of years.  It was built by the

18   Reynolds & Brown Development Company, and it's had a

19   variety of high quality industrial users, but I don't

20   believe -- I don't have the dates of when it was --

21   Q.  Sure.

22   A.  -- constructed.

23   Q.  You mentioned -- prior to '71 was there a

24   larger area that was developed or was it just Catalina

25   Court by Reynolds & Brown?

Page 8

1      A.   Well, actually over an extended period of time,

2   going back, you know, into the '50s, that area developed

3   as a variety of different industrial uses.  But Reynolds

4   & Brown assembled a large tract to be able to bring

5   together a variety of -- of principally construction --

6   manufacturing-type businesses of a -- of an

7   industrial-park-kind-of setting.  I think it was

8   probably one of the earlier industrial-type parks in our

9   area that had landscaping that was more than just a

10  functional manufacturing site; but it was rather, an

11  attractive business-park setting for both manufacturers

12  and, then on occasion, some offices too.

13     Q.   And going back to the question:  Did it consist

14  of more than just Catalina Court, or was that only --

15  the only area that developed that way?

16          MS. FOX:   Objection.  Can you define what you

17  mean by "Catalina Court," Counsel.

18          MR. MacDONALD:   I'll show you the map.

19          MS. FOX:   That would be good.

20          MR. MacDONALD:   Catalina Court is everything

21  south of Farralon Drive that on -- on Cata -- basically

22  Catalina.

23          THE WITNESS:   Well, actually Catalina Court

24  isn't very extensive beyond, you know, Farallon Drive.

25  I mean, there's Catalina itself.  And then Catalina

Page 9

1    Court is just an offshoot of Catalina.  But, you know,

2    that -- that area, I would say, Farallon and Catalina is

3    going towards Doolittle and up to Wicks is part of the

4    prime industrial-park setting that the city has, yes.

5        Q.  So going back to what Reynolds & Brown did, did

6    they do just the area south of Farallon, or did they do

7    other areas beyond that?

8        A.  Well, they did a lot of other areas as well.

9    They're one of the major developers within the city.

10   But the area that you're speaking of is one that they,

11   you know, particularly was -- were involved in.

12            I mean, there's other parts -- many parts of

13   the city, you go to find Reynolds & Brown developed.

14   Some are more of a commercial nature than an industrial.

15       Q.  Right.  So approximately when, in your general

16   understanding, what decade, for example, was the

17   building at 14600 Catalina Court built?

18       A.  Well, I would say it's in the '60s, '70s.  I'm

19   not sure exactly.

20       Q.  Okay.

21       A.  I think it was earlier.  You know, probably

22   late '60s, but I would have to look it up to see because

23   I don't know for sure.

24       Q.  Would -- I don't -- I don't have the

25   documentation, so I won't follow up, but I have a

Page 10

**Golden Gate Reporting**

1    recollection that it may have been built in the early

2    1980s.

3              Does that sound approximately correct?

4         A.   Well, as I said, I thought it was earlier, but

5    it could very well have been.

6         Q.   Okay.

7         A.   I was in the finance department, you know, at

8    that time.  I wasn't involved in any of the planning

9    related issues, so you may be correct.

10         Q.   Who was the prior occupant prior to Faith

11    Fellowship taking ownership of the parcel at Catalina

12    Court?

13         A.   It was occupied by MDL, which is a software

14    computer-related kind of a firm.  I don't know exactly

15    what they did but, I know they were a large employer and

16    used -- occupied the entire building.

17         Q.   Approximately how many employees would they

18    have?

19         A.   I believe they had in excess of 400.

20         Q.   And approximately how long were they in that

21    location?

22         A.   I don't know.

23         Q.   When did MDL leave the facility?

24         A.   I believe it was in 2006.  I don't know exactly

25    when.

Page 11

**Golden Gate Reporting**

1    Q.   When did you first become aware that Faith

2    Fellowship Church was interested in 14600 Catalina

3    Court?

4    A.   In April of 2006.

5    Q.   And what brought it to your awareness?

6    A.   Well, I had a -- I had had a meeting at that

7    time with Ed Bullock who came by to -- he set up an

8    appointment and came by to visit with me in April of

9    2006?

10            MS. FOX:  Gentlemen, we skipped the

11    admonitions.  I don't know if you want to do that.

12            MR. MacDONALD:  Oh, let's give an admonition

13    here.

14            MS. FOX:  But I will admonish --

15            MR. MacDONALD:  Sure.

16            MS. FOX:  -- 'cause I'm prone to do that, as

17    you know, Mr. MacDONALD.  You gentlemen --

18    Mr. MacDonald, you need to keep your voice up, and maybe

19    we should get you some water.  I know that you were

20    struggling there.

21            Mr. Jermanis, you need to wait.  Both of you

22    are speaking over each other periodically.  You need to

23    wait till he finishes his question to respond.  The

24    question can change by the addition of a word or two at

25    the end.

Page 12

**Golden Gate Reporting**

1          And as well, you need to extend the witness the

2    same courtesy, please, and let him finish his response.

3          Also you may want to slow down a touch,

4    Mr. Jermanis.  Our court reporter is great, but --

5          THE WITNESS:  Okay.

6          MS. FOX:  -- it can get difficult.  When you

7    speak of things you know very well, people tend to go

8    very fast.

9          And with that, I'll let you finish it up,

10    Mr. MacDonald.

11          MR. MacDONALD:  And no shrugs, no "huh-uhs" or

12    "uh-huhs."  You have to answer "yes" or "no," 'cause

13    those things don't show up on depositions.  We want full

14    and accurate answers.

15          Q.  So describe your conversation with Ed Bullock.

16          A.  Ed wanted to let me know that he was

17    representing the Faith Fellowship Church and that they

18    had an interest in acquiring the Catalina property to

19    relocate the church from Manor Boulevard to that

20    location.

21          Q.  Was it just Ed?

22          A.  Yes.

23          Q.  And what else -- what was your response or what

24    was your -- what else happened in the conversation that

25    you can recall?

Page 13

**Golden Gate Reporting**

1      A.   What I recall is that I told Ed that that

2    property was not selling for assembly use.  And I would

3    have concerns about that because, again, I was trying to

4    preserve the industrial-park setting of that location

5    and felt that it should continue to be used by

6    industrial manufacturing or business rather than a --

7    than a church.

8      Q.   Were you aware of a meeting that was scheduled

9    by Ed Bullock and took place between Luke Sims, Hanson

10   Hom and Debbie Pollart on behalf of the city and Gary

11   Mortara, Dave Mortara and Ed Bullock on behalf Faith

12   Fellowship Church about May 3rd, 2006?

13     A.   I was -- I do remember them -- the staff saying

14   that there was a meeting that they had subsequent to the

15   meeting that I had with Ed, yes.

16     Q.   How do you communicate with your planning group

17   regarding involving projects that are coming up?

18          Do you have a regular monthly meeting with your

19   community development director and economic -- economic

20   development director?

21     A.   I meet with what I call my development team --

22   those people that are involved in any projects that are

23   going on within the city -- about twice a month.  And I

24   have to communicate with the development director and

25   then the business development director, who usually

Page 14

```
 1    area?

 2             MS. FOX:  Counsel, can you define the area?

 3    All along the --

 4             MR. MacDONALD:  It's the cluster of properties

 5    that goes from there (indicating) -- which is -- I don't

 6    know the geography of San Leandro -- to there on the

 7    map, so we're describing this cluster right here.

 8             THE WITNESS:  There is a combination of

 9    industrial and commercial along that area, and there are

10    some sites that were formerly heavy industrial.

11    BY MR. MacDONALD:

12        Q.  Okay.  And there's some vacant land there too;

13    is that correct?

14        A.  Correct.

15        Q.  But you're not aware of any industrial park

16    land area that -- put it this way:  Are there any

17    buildings within this area that are equivalent to 14600

18    Catalina Court in terms of the quality and the setting?

19        A.  I don't believe so, no.

20        Q.  After -- after this -- basically after the

21    October 12th business development committee and -- did

22    you attend a planning commission board of zoning

23    adjustment workshop relating to the assembly use

24    overlay --

25        A.  No.
```

Page 42

**Golden Gate Reporting**

```
 1              CERTIFICATION OF DEPOSITION OFFICER

 2

 3            I, JANE H. STULLER, duly authorized to

 4    administer oaths pursuant to Section 2093(b) of the

 5    California Code of Civil Procedure, hereby certify that

 6    the witness in the foregoing deposition was by me sworn

 7    to testify to the truth, the whole truth and nothing but

 8    the truth in the within-entitled cause; that said

 9    deposition was taken at the time and place therein

10    stated; that the testimony of the said witness was

11    thereafter transcribed by means of computer-aided

12    transcription; that the foregoing is a full, complete

13    and true record of said testimony; and that the witness

14    was given an opportunity to read and correct said

15    deposition and to subscribe the same.

16            I further certify that I am not of counsel or

17    attorney for either or any of the parties in the

18    foregoing deposition and caption named, or in any way

19    interested in the outcome of this cause named in said

20    caption.

21

22

23

24                 JANE H. STULLER, CSR 7223

25
```

Page 55

*Golden Gate Reporting*

```
 1    A C K N O W L E D G E M E N T   O F   D E P O N E N T

 2

 3         I, JOHN JERMANIS, do hereby acknowledge I have read

 4    and examined the foregoing pages of testimony, and the

 5    same is a true, correct and complete transcription of

 6    the testimony given by me, and any changes or

 7    corrections, if any, appear in the attached errata sheet

 8    signed by me.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    6-18-08

25    Date                        JOHN JERMANIS
```

Page 57

523