Kevin T. Snider, State Bar No. 170988
*Counsel of record*
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel.  (916) 857-6900
Fax  (916) 857-6902
Email: kevinsnider@pacificjustice.org
        mattmcreynolds@pacificjustice.org

Peter D. MacDonald, State Bar No. 69789
LAW OFFICE OF PETER MACDONALD
400 Main Street, Suite 210
Pleasanton, CA 94566-7371
Tel. (925) 462-0191
Fax. (925) 462-0404
Email: pmacdonald@macdonaldlaw.net

Attorneys for Plaintiff and Real Party in Interest

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

INTERNATIONAL CHURCH OF THE FOURSQUARE GOSPEL,

    Plaintiff,

vs.

CITY OF SAN LEANDRO, et al.,

    Defendants.

FAITH FELLOWSHIP FOURSQUARE CHURCH,

    Real Party in Interest.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C07-03605 –PJH-JCS

**PLAINTIFF AND REAL PARTY IN INTEREST'S OPPOSITION TO DEFENDANT CITY OF SAN LEANDRO'S MOTION FOR SUMMARY JUDGMENT**

**(FRCP 56)**

**Date:**   October 1, 2008
**Time:**   9:00 a.m.
**Ctrm:**   3
**Hon.:**   Phyllis J. Hamilton

First Amended Complaint Filed: Oct. 26, 2007

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ISSUES PRESENTED FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    I.      Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    The Church has demonstrated an RLUIPA substantial burden under the controlling law of this Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.    *Guru Nanak* and *San Jose Christian College* point toward a finding that the Church was substantially burdened. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

        B.    The Ninth Circuit's substantial burden inquiry is simply not the same as other Circuit law relied on by the City. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.    The City's actions have "to a significantly great extent lessened the possibility" that the Church can relocate anywhere else in San Leandro. . . . . . . . . . . . . . .7

        D.    Not being able to worship together at one venue on Sunday poses a substantial burden on the religious exercise of the Church. . . . . . . . . . . . . . . . . . . . . . . 9

    III.    The City's actions violate RLUIPA's equal terms provision. . . . . . . . . . . . . . . . .13

        A.    The City Council upheld the decision of the Planning Commission regarding the hazardous materials burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

        B.    The hazardous materials burden was placed exclusively on the Church . . . . . . . . 13

        C.    "Assembly uses" include commercial recreation and entertainment uses. . . . . . 14

    IV.    The City's actions violate RLUIPA's total exclusion and unreasonable limitation provisions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    V.    The City's proffered interests do not justify its prima facie RLUIPA violations. . 17

        A.    The City has not presented a compelling interest. . . . . . . . . . . . . . . . . . . . . . 17

B.    Even if the City's interest could be deemed compelling, the means taken to achieve them were not narrowly tailored. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

VI.    The City's denial of Religious Assembly Use at the Catalina property violates the First and Fourteenth Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.    The Church's exercise of free expression is not comparable to adult entertainment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    The City has not established its entitlement to summary judgment as to the remaining constitutional claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Barnes v. Glen Theatre, Inc.,*
     501 U.S. 560 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cathedral Church of the Intercessor v. Inc. Vill. of Malverne,*
     2006 WL 572855 (E.D.N.Y. March 6, 2006) . . . . . . . . . . . . . . . . . . . . . . .. . . . . . 9-10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
     508 U.S. 520, 533 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 18

*Civil Liberties for Urban Believers* (*C.L.U.B.*) *v. City of Chicago,*
     342 F.2d 752 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*City of Renton v. Playtime Theaters,*
     475 U.S. 41 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cottonwood Christian Ctr. v. Cypress Redev. Agency,*
     218 F.Supp.2d 1203 (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Elsinore Christian Ctr. v. City of Lake Elsinore,*
     291 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) *rev'd on other grounds*, 197 Fed. Appx. 718
     (9th Cir. 2006), *cert. denied*, 128 S. Ct. 6 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . .. . 6, 18

*Grace Church of North County v. City of San Diego,*
     555 F. Supp. 2d 1126 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 20

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
     456 F.3d 978 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-7, 9, 22

*Guru Nanak Sikh Society of Yuba City v. County of Sutter,*
     326 F. Supp. 2d 1140 (E.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

*Midrash Sephardi, Inc. v. Town of Surfside,*
     366 F.3d 1214 (11th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 15

*NLRB v. Catholic Bishop of Chicago,*
     440 U.S. 490 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*San Jose Christian College v. City of Morgan Hill,*
     360 F.3d 1024 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-6

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

*Vietnamese Buddhism Study Temple in America v. City of Garden Grove,*
    460 F. Supp. 2d 1165 (C.D. Cal 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Westchester Day Sch. v. Vill. of Mamaroneck,*
    504 F.3d 338 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 20

*Westchester Day School v. Vill. of Mamaroneck,*
    379 F. Supp. 2d 550 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL STATUTES AND RULES**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 2000 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER SOURCES**

Uniform Building Code Section 203 A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15-16

8 Cal. Code Regs. § 3207(a) . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . , 16

146 Cong. Rec. S7774-01 (daily ed. July 27, 2000) . . . . . . . . . . . . . . . . . . . .. . . . .10-11, 15

146 Cong. Rec. E1563 (daily ed. Sept. 22, 2000) . . . . . . . . . . . . . . . . . . . . . . . .. . 17

H. Rep. 106-219, 106th Cong., 1st Sess. 19 (1999) . . . . . . . . . . . . . . . . . . . . . . . .15

1

**ISSUES PRESENTED FOR SUMMARY JUDGMENT**[1]

2      Does the City's proposal that the Church meet in multiple places impose a substantial

3 burden on the Church?

4      Do the Church's core religious practices include meeting for corporate worship?

5      Are there other properties available to the Church?

6

7      Does the City's allowance of commercial entertainment and recreational assembly use at a

given location violate RLUIPA's "equal terms" when religious assembly use is prohibited at the

8

9 same location?

10      Did the City impose a hazardous materials burden on the Church?

11      Do the City's stated justifications of preserving its industrial base, maintaining consistency

12

with its general plan, and avoiding conflicts with neighboring uses rise to the level of compelling

13

interests under RLUIPA?

14

15      Has the City's hazardous materials requirement such that there is a violation of RLUIPA's

16 total exclusion provision?

17      Does the City's denial of religious assembly use at the Catalina property violate the First

18 and Fourteenth Amendments?

19

20

**INTRODUCTION**

21

22      The Court has by now been inundated with briefing relative to the parties' respective

23 Motions for Summary Judgment and the Church's Motion for Partial Summary Adjudication.  For

24 that reason, the Church will, to the extent possible, focus narrowly in this Opposition on new or

25 re-characterized arguments raised by the City's Motion.  Contrary to the City's claims, an

26

27 _____

[1] In that the City did not provide a statement of issues to be decided as per Local Rule 7-4(a)(3),
the Church submits its own statement for the Court's review.

28

RLUIPA substantial burden is not the same as a Free Exercise substantial burden.  Under the RLUIPA substantial burden standard utilized in the Ninth Circuit, the City's denial of rezoning has significantly lessened the possibility that the Church can relocate anywhere else, in violation of the statute.

As to RLUIPA's equal terms provision, the City resorts to the cheap rhetorical tactic of ridicule to suggest that "assembly" cannot possibly include commercial uses—when Congress and other authorities have unequivocally stated the opposite.  The City also distances itself from its staff report subjecting the Church to an unprecedented—and unequal—hazardous materials burden.  In so doing, the City ignores the fact that this report formed the basis of the Planning Commission's decision, which in turn was officially adopted by the City Council.

Finally, the City offers cursory treatment of the Church's constitutional claims which is woefully inadequate to establish its entitlement to summary judgment on those causes of action.

## LEGAL ARGUMENT

### I.    Standard of Review.

There is at least one point on which the City and the Church appear to agree:  this case is amenable to summary judgment, as evidenced by the cross-motions seeking it.  There is no dispute of material facts.  Rather, this and related motions require a determination of the application of the law to the facts.  Fed. R. Civ. P. 56(c).

### II.    The Church has demonstrated an RLUIPA substantial burden under the controlling law of this Circuit.

The question of whether the City has placed a substantial burden on the Church within the meaning of RLUIPA is not the only question that must be answered at summary judgment, but it is certainly significant.  The City puts forward two reasons why its denial of use of the Catalina

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

property for religious assembly is not a substantial burden.  First, it is claimed that there are other available sites for the Church to relocate.  City's SJM 8:18-28, 9:1-2.  Second, the Church does not have religious reasons to meet at a single location.  City's SJM 9:3-20.   Both of these positions are in error for the reasons discussed below.  However, they must be placed within their proper context in the broader scheme of what is considered an RLUIPA substantial burden in the Ninth Circuit.

Federal decisional law from the various federal Circuits is, unfortunately, far from uniform in addressing RLUIPA issues, particularly the thorny question of what constitutes a "substantial burden."  It is therefore paramount that decisions arising from the Ninth Circuit and within its jurisdictional boundaries be given priority in applying the "substantial burden" framework.

In the land use context, there are two published Ninth Circuit decisions and several district court decisions which discuss the substantial burden framework.  The most recent, *Guru Nank Sikh Society v. County of Sutter*, 456 F.3d 978 (9th Cir. 2006), is controlling, yet it finds scant mention and far less discussion in the City's Memorandum than do out-of-jurisdiction cases.  The second Ninth Circuit decision, *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004), provided the building blocks for the *Guru Nanak* decision and provides a helpful contrast to the present  set of facts.  Both are far more germane than the cavalcade of non-Ninth Circuit cases marshaled by Defendants.

**A.**   ***Guru Nanak* and *San Jose Christian College* point toward a finding that the Church was substantially burdened.**

In reaching opposite conclusions, *Guru Nanak* and *San Jose Christian College (SJCC)* present both sides of the substantial burden coin as it relates to RLUIPA and the Church's First Cause of Action.

---

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

3

1
2
3
4
5

In *SJCC*, the Ninth Circuit found that no substantial burden existed, when "[t]he City denied College's rezoning application due to College's failure to comply with the City's application requirements." *SJCC,* 360 F.3d at 1029. In *Guru Nanak*, the Court found a substantial burden when the City issued successive denials of the Sikhs' efforts to establish a new worship facility.

6
7
8
9
10
11
12
13
14
15
16
17
18
19

In the present case, the Church has avoided the pitfalls of the plaintiffs in *San Jose Christian College* by securing the City's full and final denial of both its request to rezone and to obtain a conditional use permit (CUP) for the Catalina property as its new worship site. In *SJCC*, the Court surmised—much as did this Court at the preliminary injunction stage—that "[s]hould the College comply with this request [for more information about its plans], it is not at all apparent that its re-zoning application will be denied." *Id.*, at 1035. In the present action, the City has flatly denied first the Church's re-zoning application and, following the preliminary injunction hearing, the Church's application for a conditional use permit. The City underscores its position by insisting that its actions were "the least restrictive means available for achieving a compelling government interest, specifically preservation of land for industrial and commercial development necessary to provide jobs and sustain the local economy." City's SJM, 1:16-18.

20
21
22
23
24
25
26
27

The question of whether the City might possibly approve the Church's use of the Catalina property as a worship site has been indisputably answered in the negative. The question before the Court is whether the City's aspirations for the Church's property—as a private, job-producing, tax-generating haven of industry—can be the basis for a blatant exclusion of a service-oriented, non-profit, religious institution from the only site in the City which will accommodate it. That question—which was beyond the scope of the *SJCC* decision—is answered in the negative by *Guru Nanak.*

28

1    In *Guru Nanak*, a group of Sikhs sought in vain to find a location near Yuba City which

2  would both accommodate their needs and satisfy county authorities.  At each turn, they were told

3  their proposed religious use was "inconsistent with existing uses within the area" – a rationale

4  both nearly identical to the protestations of the City of San Leandro and recognized by the court as

5  "an echo of the broad and discretionary response that RLUIPA's sponsors cited as a need for the

6  statute." *Id.* at 987, n. 9.

7

8    In assessing a substantial burden, the *Guru Nanak* court relied on *SJCC*, which had

9  formulated the standard for RLUIPA purposes as follows:

10
11         Fusing the provisions of 42 U.S.C. § 2000cc(a)(1)(A)-(B), the statutory definition
         of "religious exercise" set forth in 42 U.S.C. § 2000cc-5(7)(A), and the plain
12         meaning of "substantial burden" results in the following rule: the government is
         prohibited from imposing or implementing a land use regulation in a manner that
13         imposes a "significantly great" restriction or onus on "any exercise of religion,
         whether or not compelled by, or central to, a system of religious belief" of a person,
14         including a religious assembly or institution, unless the government can
         demonstrate that imposition of the burden on that person, assembly, or institution
15         is: (1) in furtherance of a compelling governmental interest, and (2) the least
         restrictive means of furthering that compelling governmental interest.
16
         *SJCC,* 360 F.3d at 1034-35.
17

18    Applying this standard, the Ninth Circuit found that the County's successive denials of

19  CUP applications by the Sikh group had "to a significantly great extent lessened the possibility of

20  Guru Nanak constructing a temple in the future."  *Guru Nanak*, 456 F.3d at 981.

21

22    Like Sutter County, the City of San Leandro continues to offer broad, generalized

23  rationales for its rejection of the Church's proposed assembly use.  As in *Guru Nanak*, the denial

24  of the Church's rezoning and CUP applications have "to a significantly great extent lessened the

25  possibility" that he Church will be able to relocate anywhere in the City.  *Id.* at 981.

26

27

28
_____

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

5

**B.    The Ninth Circuit's substantial burden inquiry is simply not the same as other Circuit law relied on by the City.**

The City cleverly—but wrongly—attempts to recast the substantial burden inquiry as something other than what the Ninth Circuit has stated.  In doing so, the City relies heavily on Free Exercise jurisprudence and on other Circuit cases which the Ninth simply has not followed.

*Guru Nanak* notes that Free Exercise jurisprudence is "instructive," *id.* at 988, and that other Circuits "*began* their task of defining substantial burden by *referring* to those precedents." *Id.* at 988, n. 11 (emphasis added).  But where the Court *ended* its analysis is far removed from where it began, as shown by a closer reading of the case.  After briefly reviewing well-known Free Exercise cases, the Ninth Circuit summarized them as "demonstrate[ing] 'that a "substantial burden" must place more than an inconvenience on religious exercise." *Id.* (quoting *Midrash Sephardi, Inc., v. Town of Surfside,* 366 F.2d 1214, 1227 (11th Cir. 2004)).  The court then returned to *SJCC* as the dominant authority, reiterating that the substantial burden inquiry should focus on whether government action imposed a "significantly great restriction" on religious exercise.  *Guru Nanak,* 456 F.3d at 988-89.  This plainly is not a restatement of the more exacting Free Exercise inquiry, as the City seems to think by its reliance on cases such as *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993).  *See also, Elsinore Christian Ctr. v. City of Lake Elsinore*, 291 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) ("RLUIPA establishes an entirely new and different standard than that employed in prior Free Exercise Clause jurisprudence."), *rev'd on other grounds*, 197 Fed. Appx. 718 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 6 (2007).

Nor is it accurate for the City to mix *Guru Nanak* and *SJCC* with decisions from other jurisdictions in hopes of attaining a more government-friendly formulation of the rule.  At every stage of this litigation, the City has attempted to shift the focus from governing law to extra-

jurisdictional cases that may have factually similarities but rest on different premises than those employed in this Circuit. A prime example is the City's heavy reliance on Seventh Circuit decisions. As it has done previously, the City repeatedly invokes *Civil Liberties for Urban Believers* (*C.L.U.B.*) *v. City of Chicago*, 342 F.2d 752 (7th Cir. 2003) as support for its more stringent formulation of the substantial burden test. Yet the Ninth Circuit has squarely rejected *C.L.U.B.*'s formulation, describing the Seventh Circuit's approach as "narrower" and its own as "more lenient." *Guru Nanak*, 456 F.3d at 989, n. 12. Because of this fundamental difference in approach, Defendants' dependence on decisions from the Seventh Circuit and other circuits which have followed *C.L.U.B.* is greatly misplaced.

While not being in lockstep with other federal courts, the Ninth Circuit's "more lenient" approach seems more consistent with the aims of RLUIPA. The statute provides, in its "Rules of Construction" section and "Broad construction" subsection, "This chapter shall be construed in favor of a broad construction of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C.A. § 2000cc-3(g). Under the substantial burden inquiry which governs in this Circuit, coupled with the explicit statutory mandate of broad construction, the City's patchwork defenses begin to unravel, as will be explained next.

### C.    The City's actions have "to a significantly great extent lessened the possibility" that the Church can relocate anywhere else in San Leandro.

The Church has demonstrated, through evidence not contradicted by the City, that denial of the ability to use its Catalina property for religious assembly will lessen to a significantly great extent the possibility that the Church can continue to exist in San Leandro. The Church's realtor has performed an extensive search at dozens of other properties. None are suitable. Bullok Depo. 92:1-17 (Ex. 2 filed herewith). The City Manager directed the realtor to certain properties for review. Of these properties, only one was for sale—and it was under contract. *Id.* at 94:24—

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

7

95:13.  Of course, the Church lacks the power of eminent domain to purchase property against the will of an owner.

Within the Assembly Overlay district created by the City, only thirteen sites are three acres or more, as required by the Church's size.  Defs. Response to Plaint. Interrog. No. 1.  Those parcels tend toward the extremes of being either dilapidated, fractionalized and irregularly shaped, on the one hand, or occupied commercial shopping centers on the other hand which have no interest in selling to the Church.  Bullok Depo. 202:19—204:5 (Ex. 2 filed herewith).

The City rests on unhelpful generalities in arguing that the Church has other alternatives, but when pressed to specifically identify any property which would actually accommodate the Church, the City cannot.  For instance, the City Manager acknowledged in his deposition:

> Q:  [I]n looking at the whole issue of Faith Fellowship Church, are you aware of any locations within San Leandro…which they could acceptably locate?
> A:  No.

Jermanis Depo., 51:23-25, 52:1-2 (Ex. 1 filed herewith).  The City claims for purposes of this motion that the Church can relocate to a residential area because it is alleged that there are 78 sites over 3.5 acres.  City's SJM 8:22-24.  Their position is not only inconsistent with the City Manager's acknowledgements that there are no other locations in San Leandro to which the Church can relocate, *id.,* but also with the City's interrogatory responses.  The City was asked to "[l]ist and identify each and every property zoned for assembly use that is no smaller than three and a half (3.5) acres and available for sale in residential use overlay in the City of San Leandro," Snider Decl., Ex. 7, 3:11-14.  In response, the City failed to list or identify ***any*** such properties.  *Id.*, 6:26-28.  The most recent Declaration from Debbie Pollart, filed in support of Defendants' Motion for Summary Judgment, continues this pattern.  Pollart avers that "approximately 78 parcels in the City's residential zones are over 3.5 acres in size."  Ct. Doc. 128, p. 2:15-16.  Yet

---

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

the City does not identify a single parcel which is suitable for the Church's needs and actually available for purchase.

In fact, prior to designating the 196 properties for assembly use, the City realized that residential properties were simply unavailable for large assembly use. To this end, the City Manager testified,

> Q. [T]he staff concluded that there was a need to allow assembly uses in industrial districts. Do you -- did you have any conversation with the staff about how that conclusion came to be?
> A. I -- I recall hearing from the staff that their feeling was that there were not any longer [sic] sites available in the residential area for churches, and that other areas needed to be considered.

Jermanis Depo. 24:4-12 (Ex. 1 filed herewith).

The Church has ruled out every other known, available location in San Leandro, exceeding the Ninth Circuit's standard that it show the City's action has "to a significantly great extent lessened the possibility" that it can find other suitable locations. The City's generalities are simply not good enough to prevail on summary judgment. As the *Guru Nanak* court noted, the "net effect" of the City's two denials "is to shrink the large amount of land theoretically available to Guru Nanak under the Zoning Code to several scattered parcels that the County may or may not ultimately approve." *Id.* at 991-992. This effect directly results in a substantial burden. *Id.* at 992.

**D.     Not being able to worship together at one venue on Sunday poses a substantial burden on the religious exercise of the Church.**

The City's argument that no substantial burden exists because the Church need not meet together in one place is virtually unprecedented[2] in RLUIPA jurisprudence—and for good reason.

---

[2] Similar arguments were rejected in an unpublished decision, *Cathedral Church of the Intercessor v. Inc. Vill. of Malverne*, 2006 WL 572855 (E.D.N.Y. March 6, 2006), where the court held that space limitations which forced a church to conduct Sunday school, counseling programs and other

The core beliefs and values of ICFG and, by extension, the CHURCH, include: (1) local and global evangelism to lead people to faith in Christ; (2) discipleship to instruct believers in life and service; (3) works of compassion, justice, and human aid; and, (4) joyous corporate worship of God.   Although all of these core beliefs are relevant to the issue of substantial burden, it is the last belief – joyous corporate worship – which is the religious belief most impacted by the denial of the Catalina property for religious assembly.   Pastor Gary Mortara stated:

> It is one of ICFG's, and therefore the CHURCH's, core precept that believers gather for corporate meetings.  In sum, it is our theological position that a local congregation is more than a legal entity that happens to provide religious activities. A church congregation is an entity which is comprised of people who come together to form one body with Jesus Christ as its head.  Sunday morning services are the local expression of this body.  Those who attend congregate to worship God, fellowship with each other, and perform acts of religious service also known as "ministry."

G. Mortara Decl., ¶ 40 (filed 7/30/07, Ct. Doc. 13).

The City asserts that the Church merely "wishes" to assemble in one place and that preventing it from doing so "prevents the Church's members from practicing their religion." City's SJM 9:4-8.  This argument is an attempt to have the Court pass judgment on the legitimacy of what is essentially a theological belief of the Church.  What the Church is arguing is that their religion has a fundamental belief relative to meeting together at one venue on the Lord's Day. This is a spiritual event.  As has been recognized by other courts, meeting to conduct worship services is one of the primary functions of a church. *Vietnamese Buddhism Study Temple in America*, 460 F. Supp. 2d 1165, 1171 (C.D. Cal 2006) ("The right to assemble for worship is at the very core of the free exercise of religion.   Churches and synagogues cannot function without a physical space adequate to their needs . . ."), quoting 146 Cong. Rec. S7774-01, (daily ed. July 27,

---

faith-based activities off-site "certainly rise above the level of 'mere inconvenience.'" *Id.* at *8 (citing *Westchester Day School v. Vill. of Mamaroneck,* 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)).

2000) (joint statement of Senator Hatch and Senator Kennedy)).  Accordingly, other courts have accepted the findings of religious entities that certain locations are necessary for their continued viability.  *Westchester Day Sch. v. Vill. of Mamaroneck,* 504 F.3d 338, 352 (2d Cir. 2007) ("experts hired by WDS determined that the planned location of Gordon Hall was the only site that would accommodate the new building . . . there were not only no quick, reliable, or economically feasible alternatives, there were no alternative at all").

Therefore, denial of the Catalina property for religious assembly is a substantial burden on the religious exercise of the Church.  There is no dispute of fact that this indeed is a core belief of the Church.  The City has not and cannot provide evidence that this is not so.  Moreover, the City cannot ask the Court to entertain an inquiry into the reasonableness of the belief or whether the spiritual event that the Church claims takes place when its attendees "come together to form one body with Jesus Christ as its head" is objectively true.  *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 503 (1979).

In that the Church has provided unchallenged evidence of its unique beliefs relative to meeting together for worship, it has met its burden of persuasion as to whether the actions of the City have substantially burdened the exercise of religion. 42 USC § 2000cc-2(b), "Judicial Relief."[3]

The City proffers what is essentially a public policy argument.  Namely, if the Church prevails under RLUIPA municipalities will be powerless to generally regulate land use.  City's SJM, 5-7.  The City's argument proves too much.  First, that is essentially a challenge to the

---

[3] "(b) BURDEN OF PERSUASION- If a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."

constitutionality of RLUIPA.  (See, City's Answer to the First Amended Complaint).[4]  Having

failed to notify the U.S. Attorney General of this challenge, the City has waived that defense.

Second, the argument assumes that religious organizations have identical beliefs relative to

congregating.  It is self evident that nothing could be further from the truth.  There are hundreds of

denominations within Christianity and there are scores of non-Christian religions which

undoubtedly have a plethora of distinct beliefs.  But in this case, the Church put forth specific and

unique evidence of its theological position on the religious practice of meeting together.  As such,

a favorable ruling in this case would not catastrophically and irreversibly impair municipalities

ability to regulate land relative to religious groups.  The law still requires that a religious body put

forth facts that show that a land use is a substantial burden on its particular religious practices, as

the Church has done in this case.

   The fact that the Church has multiple services now does not undermine this religious

practice.  The congregation meets at one location on Sunday mornings in which there are worship

services and Sunday school classes.   There are opportunities, for those who can fit on the campus,

for joint worship, fellowship and ministry.  The problem is that the Church cannot accommodate

all who wish to worship at the current venue.  This interferes with the religious practices

associated with the Church's core beliefs.  As a result, the denial of use of the Catalina property

for religious assembly is a substantial burden on the Church.  "Those turned away each Sunday,

due to the denial of the use of the CATALINA PROPERTY, results, in a profound theological

sense, in the infliction of suffering in this local expression of the body of Christ.  The absence of

---

[4] The City's Thirteenth Affirmative Defense challenges the constitutionality of RLUIPA under the Establishment Clause.  Ct. Doc. 92.

dozens of worshippers every Sunday is a substantial burden on the religious practices of gathering together as one body for worship, fellowship and ministry."  G. Mortara Decl., ¶ 28. [5]

**III.    The City's actions violate RLUIPA's equal terms provision.**

    **A.    The City Council upheld the decision of the Planning Commission regarding the hazardous materials burden.**

The City is now backpedaling from its original reliance on the hazardous materials burden placed on the Church, claiming that this justification was not employed by the City Council. City's SJM 16:13-25.  The facts cannot reasonably be in dispute on this issue.  Minute Order 2007-059 states:  "The City Council denied the appeal by International Church of the Foursquare Gospel, Applicant, and upheld the decision of the Planning Commission's denial of PLN2006-00049." Def. Ex. 24, p. 14, ¶2, Ct. Doc 132-22.  The Planning Commission's denial of the ICFG application incorporated findings of fact.  These include a recitation of the hazardous materials burden.  Def. Ex. 21, p. 12, ¶VI, Ct. Doc 132-20.  Since the City Council upheld the decision of the Planning Commission, and that decision includes the hazardous materials burden, it cannot be claimed that the Council excised the hazardous materials burden from the decision.

    **B.    The hazardous materials burden was placed exclusively on the Church.**

The City asserts that the Church must show that it was treated differently than similarly situated parties.  City's SJM 18:3-9.  The facts show that the City officials foisted upon the Church a criterion related to hazardous materials which was not applied to ***any*** of the 196 properties approved for assembly use.  Def Ex. 21, Ct. Doc 132-20, pp. 6-7.  Nor has the City been able to identify any other application for assembly use, whether that be rezone, CUP or otherwise, in

---

[5] A section of the City's brief is devoted to the Church's financial burden.  The argument is that the Church had poor "business planning."  City's SJM 11:17-23.  The Church will not burden the Court with a response in that it is neither an element of RLUIPA, nor of the Ninth Circuit's substantial burden framework, nor an affirmative defense, that the Church is limited to purchasing property only after securing approval from City officials.

1   which a hazardous materials criterion been placed in San Leandro. Def. Response to Pltf. Req. for

2   Admission #5 (p. 2).

3          In a staff report, City officials claimed that the presence—and potential future presence—

4   of hazardous materials and activities in the vicinity of the Catalina site rendered it inappropriate

5   for rezoning with the Assembly Use Overlay.  Def Ex. 21, Ct. Doc 132-20.  Denial of the Catalina

6   site was based in part on the presence of businesses with Hazardous Materials Business Plans

7   (HMBP's) within ¼ mile.  Pollart Depo. 106:1-17.  But if that criterion were applied across-the-

8   board to all proposed assembly uses it would prohibit assembly use in *all* 196 parcels, since all are

9   within ¼ mile of a HMBP.  *Id.* at 105:4-11.  Ironically, even City Hall, located at 835 E. 14th St.

10  in San Leandro, is within ¼ mile of a site with a hazardous materials plan.   Def. Response to Pltf.

11  Req. for Admission #9 (p. 2).  The City's disparate treatment of the Church is exactly the type of

12  discrimination that RLUIPA was enacted to remedy.

13

14

15  **C.      "Assembly uses" include commercial recreation and entertainment uses.**

16         The City ventures out on a limb by attempting to exclude all other definitions of

17  "assembly" and "institution" besides its own.  In so doing, the City seriously undermines its

18  credibility.  For instance, the City asserts, "It cannot seriously be contended that Congress intend

19  [sic] the terms 'non-religious assembly' and 'institution' be equated with common types of

20  commercial for profit types of uses (such as bars, nightclubs, sports stadiums, amusement parks,

21  etc.) when this is so obviously inconsistent with the common usage of these terms."  Defs. Mot. to

22  Dismiss, 14:21-24.  In like manner, the City argues that "it cannot be seriously contended that the

23  term ["assembly"] is commonly employed to refer to commercial businesses."

24

25         In attempting to ridicule broad interpretations of RLUIPA's key terms, the City takes a

26  swipe at Congress, case law it otherwise presents as authoritative, and the California Building

27  Code.

28

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

14

1  It should be indisputable that Congress intended RLUIPA precisely to level the playing

2  field between non-profit religious assemblies and for-profit ventures which were deemed to be

3  similar.  The legislative history lists numerous nonreligious assemblies—both commercial and

4  not—which Congress deemed comparable with religious ones, including "banquet halls, clubs,

5  community centers, funeral parlors, fraternal organizations, health clubs, gyms, *places of*

6  *amusement*, *recreation centers*, lodges, libraries, museums, *municipal buildings*, meeting halls,

7  and theatres," H.R. Rep. No. 106-219, 106th Cong., 1st Sess. 19 (1999) (emphasis added); and

8  "*recreation centers* and *health clubs*," 146 Cong. Rec. S7774-01 at S7777 (daily ed. July 27,

9

10  2000) (emphasis added).

11  A similarly broad definition was employed by *Midrash Sephardi*, which Defendants rely

12  on for their substantial burden arguments but ignore as to equal terms.  *Midrash Sephardi* also

13  consulted dictionaries for a definition of "assembly" but, consistent with RLUIPA's stated intent

14  of broad construction, identified the term much more broadly as "a group gathered for a common

15  purpose," *id.* at 1231.  In so doing, the court quoted Webster's Third New International

16  Unabridged Dictionary, which specifically used both "worship" and "social entertainment" as

17  illustrations of "assembly." *Id*. at 1230.  Just as importantly, *Midrash Sephardi* tied its definition

18  of "assembly" to Congressional intent, specifically the Joint Statement which declared, "'Zoning

19  frequently exclude churches in places where they permit theaters, meeting halls, and other places

20

21  where large groups of people assemble for secular purposes.'" *Id.* at 1231, n. 14 (quoting 146

22  Cong. Rec. at *S7774).

23

24  In light of the foregoing comparisons, Defendants' contention that religious assemblies

25  cannot possibly be equated with commercial uses is preposterous.  Congress and the courts have

26  done exactly that.  But there is more.  The California Uniform Building Code defines Assembly

27  Building as follows:

28

> **Assembly Building**.  A building or a portion of a building used for the gathering together of 50 or more persons at one time for such purposes as deliberation, education, worship, entertainment, amusement, drinking or dining, or waiting for transportation.

Uniform Building Code Section 203 A.

California's Industrial Relations Code is even broader, defining "Assembly Building" as:

> Any building or structure or portion thereof used or intended to be used for the showing of motion pictures when an admission fee is charged and when such buildings [sic] or structure is open to the public and has a capacity of 10 or more persons.

8 Cal. Code Regs. § 3207(a)

In light of these examples, Defendants' attempt to claim summary judgment on RLUIPA's equal terms provision completely misses the mark.  For the reasons stated in Plaintiff and Real Party in Interest's Motion for Summary Judgment, the Church is entitled to summary judgment on this claim.

**IV.    The City's actions violate RLUIPA's total exclusion and unreasonable limitation provisions.**

In addition to its substantial burden and equal terms mandates, RLUIPA provides a third, important avenue of recovery:  the prohibition on total exclusion or unreasonable limition of religious assembly use.  This provision states,

> No government shall impose or implement a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

42. U.S.C. § 2000cc(b)(3)(B)

In the present case, the hazardous materials burden is framed such that all 196 properties in the Assembly Use overlay are within close proximity to HBMPs.  If the City is consistent and treats all assembly use applications the same, then there is no place within the AU overlay that the

---

Church can locate.  As such, this approach acts as a total exclusion of the Church in violation of the total exclusion provision.  On the other hand, if the hazardous materials burden does not apply to the 196 properties in the AU overlay, but was only placed on the Church, then there is a violation under RLUIPA's equal terms.   In either circumstance, the City has violated RLUIPA.

As to the reasonableness aspect of this provision,  "What is reasonable must be determined in light of all the facts, including the actual availability of land and the economics of religious organizations." 146 Cong. Rec. E1563 (daily ed. Sept. 22, 2000) (statement of Rep. Canady). ICFG and the Church will avoid repetition of "all the facts" stated in its own Motion for Summary Judgment which demonstrate that there are no suitable, available locations—other than the Catalina property—which can accommodate its continued existence in San Leandro.  It does seem plain, however, that the City's suggestions that the Church consider relocating to properties which are not even for sale is unreasonable.

Moreover, the City's designation of the Assembly Use Overlay shows that it was well aware of the need for more large assembly use options.  Its attempts to gloss over the problem by designating parcels for assembly use which were highly undesirable and, even at that, not available for purchase, did nothing to cure its unreasonable limitations on religious assemblies in San Leandro.  The City has not been able to wriggle out of its dilemma as to this third key aspect of RLUIPA, and it is not entitled to summary judgment.

**V.     The City's proffered interests do not justify its prima facie RLUIPA violations.**

**A.     The City has not presented a compelling interest.**

In light of the substantial burden, equal terms and total exclusion/unreasonable limitation violations identified above, the City must satisfy RLUIPA's articulation of the compelling interest test in order to succeed.  42 U.S.C. 2000cc(a)(1)(A) and (B).

---

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

17

1    The City's proffered compelling interests keep shifting, but its most recent effort is fairly

2  succinct: "[T]he City's actions challenged by plaintiff were the least restrictive means available

3  for achieving a compelling government interest, specifically preservation of land for industrial and

4  commercial development necessary to provide jobs and sustain the local economy."   City's SJM,

5  1:15-18.

6    Defendants' stated interests are laudable, but they are not compelling as a matter of law.  In

7  fact, Defendants' position flatly contradicts the recent holding of another California federal court,

8  which ruled that "preservation of industrial lands for industrial uses does not constitute a

9  'compelling interest' for purposes of RLUIPA."  *Grace Church of North County v. City of San*

10  *Diego*, 555 F. Supp. 2d 1126, 1140 (S.D. Cal. 2008).

11    The *Grace Church* conclusion makes sense, in that compelling interests must be "of the

12  highest order," *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993).  It

13  should not be surprising, then, that RLUIPA cases rarely if ever find that the government has

14  narrowly tailored its regulation to achieve a compelling state interest.  In *Guru Nanak*, the County

15  sought to preserve agricultural land but did not even attempt to argue that such interests were

16  compelling.  The District Court noted that the County's "reluctance to raise such arguments is

17  understandable, for the strict scrutiny standard imposed by RLUIPA is a difficult one to meet."

18  *Guru Nanak Sikh Society of Yuba City v. County of Sutter*, 326 F. Supp. 2d 1140, 1154 (E.D. Cal.

19  2003).

20    The City's position is also reminiscent of that taken by the City of Lake Elsinore in a

21  losing cause, *Elsinore Christian Ctr. v. City of Lake Elsinore*, 291 F. Supp. 2d 1083 (C.D. Cal.

22  2003), *rev'd on other grounds*, 197 Fed. Appx. 718 (9th Cir. 2006), *cert. denied*, 128 S. Ct. 6

23  (2007)

---

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

18

1    There, the court summarized the City's asserted interests as "'curbing urban blight,

2  preserving the sole food market in an underprivileged low-income area, preserving jobs in the

3  same area, [and] generating tax revenue for the use [of] all [City residents].'" *Id.* (quoting City

4  Brief) (brackets in original).  The court found that these interests were all either not compelling,

5  or, even assuming that they could be compelling, were not furthered by the City's actions.

6    The same is true here.   The City's current stated interests are linked to its earlier fretting

7  over lost revenue.  As has been insightfully noted by the Central District, "If revenue generation

8  were a compelling state interest, municipalities could exclude all religious institutions from their

9  cities." *Cottonwood Christian Ctr. v. Cypress Redev. Agency,* 218 F.Supp.2d 1203, 1228

10  (C.D.Cal. 2002).  Prevention of such an outcome is of course the precise aim of RLUIPA.  As in

11  *Elsinore Christian Center,* the City has not demonstrated that, by excluding the Church's religious

12  use of the Catalina property, its purported compelling interests will be achieved.  As will be next

13  discussed, quite the opposite is true from the wide variety of uses already permitted under the

14  current IP zoning of the Catalina property.  Within these hodgepodge of uses, there is no guarantee

15  whatsoever that a subsequent owner using the Catalina property within its current zoning would

16  either maintain an industrial use or employ more individuals than the Church would.

17

18  **B.    Even if the City's interest could be deemed compelling, the means taken to
19         achieve them were not narrowly tailored.**

20    The Church will not re-argue the reasons stated in its own Memorandum in Support of

21  Motion for Summary Judgment as to why Defendants' approach was not narrowly tailored, even if

22  it did possess a compelling interest.  One additional point is worth addressing, though.

23

24    Flying in the face of its insistence that the Catalina property must be preserved for

25  industrial use, the current IP zoning on the property allows ***without a CUP*** a host of non-industrial

26  uses, including Adult-Oriented Business; Business Schools; Offices, Business and Professional;

27

28  _____

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

1    Health and Fitness Centers and Park and Recreational Facilities.  Ex. 4 to City's SJM; Ct. Doc.

2    132-2, pp. 9-10 of 20 (also included in Defs. Req. for Jud. Notice).   With a CUP, the types of

3    allowable uses *at the Catalina property* expand to include Bars; Cafes; Commercial Recreation;

4    Day Care; Entertainment Activities; Massage Therapy; and Restaurants.  *Id*. at pp. 10-11 of 20.

5          The City has perhaps retreated from its previously-stated interest of maintaining

6    consistency with the General Plan because similar arguments have been shot down by other

7    courts.  "Even if, generally speaking, preservation of industrial lands constituted an important

8    government interest, the government bears the burden to show 'a compelling interest in imposing

9    the burden on religious exercise in the particular case at hand, not a compelling interest in

10    general.'"  *Grace Church*, 555 F. Supp. 2d at 1140 (footnote omitted) (quoting *Westchester Day*

11    *School*, 504 F.3d at 353).  Yet by zeroing in on the Catalina property, the City finds itself on the

12    horns of a dilemma.  With so many non-industrial types of uses already permitted with and

13    without a CUP, it is simply not credible for Defendants to assert that preventing religious

14    assembly at the Catalina site is the "least restrictive means" of preserving it for industrial use.  *See,*

15    *e.g., Grace Church,* 555 F. Supp. 2d at 1140 (rejecting claimed compelling interest in  preserving

16    industrial park where non-industrial uses were allowed).

17          The City has not met its high burden of demonstrating that its denial of religious assembly

18    use at the Catalina property was narrowly tailored to achieve a compelling interest.  It is not

19    entitled to summary judgment on this point.

20    **VI.    The City's denial of Religious Assembly Use at the Catalina property violates the
            First and Fourteenth Amendments.**

21         **A.    The Church's exercise of free expression is not comparable to adult
                   entertainment.**

22          In addition to the position set forth in its Motion for Summary Judgment, the Church must

23    address the City's unfortunate comparison of its use with adult businesses.  Beyond being

inflammatory, the City's comparison is further indication that its constitutional judgment is impaired. One must wonder whether the City seriously believes that crime, sexual exploitation and other negative secondary effects which have prompted regulation of adult businesses are really comparable to the positive effects that the Church is having on the community. The City's chief authority on this subject, *City of Renton v. Playtime Theaters*, 475 U.S. 41 (1986), "upheld a city's zoning ordinance designed to prevent the occurrence of harmful secondary effects, including the crime associated with adult entertainment," *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 583 (1991) (Souter, J., concurring) (explaining *City of Renton*).

If anything, the City's authority is a reminder that municipalities need strong evidence of negative effects such as crime before moving to limit First Amendment activities under the guise of zoning regulations. Moreover, the Church has never asserted that it is entitled to locate anywhere it pleases, rendering the City's argument off-point. The City's deeply flawed analogy falls flat and does not entitle it to summary judgment.

**B.**    **The City has not established its entitlement to summary judgement as to the remaining constitutional claims**

Defendants' arguments as to free exercise, equal protection, freedom of association and due process add little to the parties' prior briefings on these issues. The Church disagrees with the City's legal arguments for all the reasons stated in the Church's pending Motion for Summary Judgment. The Church will avoid needless repetition of its prior points and authorities here, except to briefly address a common theme which runs through the City's arguments, namely, that the Church does not have "a First Amendment right to practice religion *on any particular parcel of land*, absent a showing that the proposed site itself possesses some special religious significance." City's SJM 19:14-16 (emphasis in original).

---

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

21

In fact, courts have tended to view conflicts such as the present from exactly the opposite standpoint, rebuking local governments for narrowing the options of religious congregations to a few or at times a single property.  Taking its cue from longstanding free speech and due process principles, "RLUIPA does not contemplate that local governments can use broad and discretionary land use rationales as leverage to select the precise parcel of land where a religious group can worship."  *Guru Nanak*, 456 F.3d 992, n. 20.  This, the City has attempted to do by suggesting to the Church's realtor specific parcels other than the Catalina property—only one of which was even theoretically for sale, and it was under contract.  Bullok Depo. 94:24—95:13 (Ex. 2 filed herewith).  The City's underlying premise for its constitutional arguments is therefore backwards.

## CONCLUSION

In sum, the City's arguments turn the fundamental premises of RLUIPA and constitutional rights upside down.  The proper inquiry begins not with a legion of presumed limits on the property owner, as the City would have it, but rather with careful restraints on the government's power to limit the property owner's freedom.

The City ironically intones that churches are not exempted from the harsh reality of the marketplace.  City's SJM 6:16-17.  The problem here is not the marketplace.  The Church has embraced the marketplace, purchasing a suitable property from a willing seller.  The problem is a municipality that could not accept the marketplace's return embrace of a religious congregation whose worth cannot be measure in dollars and cents.

The City's heavy-handed, paternalistic campaign to override the marketplace is precisely the type of abuse that numerous Constitutional principles have long disfavored, and RLUIPA in particular was designed to prevent.  For all of the foregoing reasons, the City is not entitled to a summary judgment.

September 10, 2008

1

Respectfully submitted,

2

3        \_\_/S/\_Matthew B. McReynolds_____
         Kevin T. Snider

4        Matthew B. McReynolds
         PACIFIC JUSTICE INSTITUTE

5        P.O. Box 276600
         Sacramento, CA 95827-6600

6        Telephone: (916) 857-6900
         Facsimile:  (916) 857-6902

7

8        Peter D. MacDonald
         LAW OFFICE OF PETER MACDONALD

9        400 Main Street, Suite 210
         Pleasanton, CA 94566-7371

10       Tel. (925) 462-0191
         Fax. (925) 462-0404

11       Email: pmacdonald@macdonaldlaw.net

12

13       Attorneys for Plaintiff and Real Party in Interest,
         International Church of Foursquare Gospel

14       and Faith Fellowship Church of Foursquare Gospel

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff and Real Party in Interest Opposition to Motion for Summary Judgment

23