| | |
|---|---|
| INTERNATIONAL CHURCH FOURSQUARE GOSPEL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN LEANDRO, et. al.<br><br>Defendants.<br><br>FAITH FELLOWSHIP FOURSQUARE CHURCH,<br><br>Real Party in Interest. | Case No.: CO7-03605-PJH-JCS<br><br>**EXHIBIT 2 OF DECLARATION OF KEVIN SNIDER IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   October 1, 2008<br>Time:  9:00 a.m.<br>Courtroom:  3<br>Hon.:  Phyllis J. Hamilton |

Exhibit 2 (Pltf)
Decl of K. Snider
Page 0

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL,

    Plaintiff,

vs.                      No. C07-03605

CITY OF SAN LEANDRO, a municipal
corporation, DOES 1-50,

    Defendants.

/

DEPOSITION OF C. EDWARD BULLOK

VOLUME I

(PAGES 1 - 149)

Taken before LORI A. YOCK, CSR, RPR

Certified Shorthand Reporter No. 5801

Registered Professional Reporter No. 018667

State of California

Friday, April 25, 2008

EMERICK & FINCH (925) 831-9029

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 1

```
                                                              Page 92
 1        Q.   And you personally inspected dozens of sites.  As
 2   you sit here today, can you tell me any of those sites?
 3        A.   Yes.
 4        Q.   What were they?
 5        A.   One of them was the Hudson Lumber site.  I, in
 6   fact, had a meeting with the man that owned it.  Another
 7   was a Kraft Food plant on Washington.  Another was a
 8   vacant lot behind that that backs up to the train
 9   tracks.  Another was sites down on the south border of
10   town in the middle of an industrial area.  There were
11   some shopping centers I reviewed.  One is at -- it's on
12   Washington.  I can't think of the cross street there --
13   by Kmart.  Another one is pretty far south of town.  I
14   looked at the properties that John Jermanis suggested we
15   explore.  None of those were suitable.
16        Q.   How did you inspect each of these sites?
17        A.   Personally.
18        Q.   What did that entail?
19        A.   Going to them, looking at them, overflying them
20   with Google Earth or Microsoft -- one of those -- so I
21   got different perspectives.  Plotted them on a map.  I
22   took a Triple A map and I plotted -- at one point in
23   time I plotted all the 196 properties in the overlay
24   district.  I had a list of all those properties, their
25   size, their owner, everybody else, and I looked at every
```

Emerick & Finch    800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 2

```
                                                            Page 94
 1       Q.  And what about the vacant lot adjacent to the
 2   train tracks, I guess?
 3       A.  I went on it.
 4       Q.  Did you have to get permission from anyone to go
 5   into or on these properties?
 6       A.  Well, if I was supposed to, I didn't.  I just
 7   went and looked at them.  It's like I said, that there
 8   were several shopping centers and you didn't have to get
 9   permission to look at the shopping center.
10       Q.  So did you go inside -- you said there was a
11   property at the south border of town in an industrial
12   area.  Did you go into that property to inspect it?
13       A.  No.
14       Q.  What about this shopping center you referred to
15   on Washington?
16       A.  Yes.
17       Q.  And then what about the one far south out of -- I
18   don't know -- you referred to it as far south?
19       A.  Well, that one was the one on the south border.
20   There is another small strip center.  I think it's at
21   the end of Doolittle, and I went in that one.  The sites
22   that are shopping centers have public access.  Kraft
23   Food doesn't.
24       Q.  What about the John Jermanis recommendations or
25   suggestions?  Which of those did you actually tour inside?
```

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 3

```
                                                           Page 95
 1      A.  One of them was a shopping center.  The other
 2  was a very aged mobile home or multifamily plot where
 3  there were a bunch of individual houses and I forgot
 4  what the third one was.
 5      Q.  Did you meet with any owners other than the owner
 6  of Hudson Lumber?
 7      A.  No.
 8      Q.  Did you determine if any of these sites that you
 9  inspected were for sale?
10      A.  Yes.
11      Q.  And were any of them for sale?
12      A.  The only site that was for sale was Hudson
13  Lumber and it was in contract.
14      Q.  Did that property sell?
15      A.  I don't know.
16      Q.  Did you ever follow up with the owner?
17      A.  Follow up about what?
18      Q.  About the availability of the property.
19      A.  No, because the property is not suitable for
20  us.
21      Q.  Who are the commercial brokers you work with?
22      A.  Mike Tanzillo is one.
23      Q.  I'm sorry.  How do you --
24      A.  T-A-N-Z-I-L-L-O.  He is in Castro Valley.
25  Larry Smith.  He is in Hayward.  If there is anything
```

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 4

```
                                                              Page 150
              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA


INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL,

             Plaintiff,

vs.                                  No. C07-03605PJH

CITY OF SAN LEANDRO, TONY SANTOS,
(in his official capacity), SURLENE
G. GRANT (in her official capacity),
DIANA M. SOUZA (in her official
capacity), JOYCE R. STAROSCIAK (in
her official capacity), BILL STEPHENS
(in his official capacity), JIM PROLA
(in his official capacity), JOHN
JERMANIS (in his official and
individual capacities), DEBBIE POLLART
(in her official and individual
capacities), DOES 1-50.

             Defendants.
_____/

FAITH FELLOWSHIP FOURSQUARE
CHURCH,

             Real Party in
             Interest.
_____/


              DEPOSITION OF ED BULLOK
                    VOLUME II
     Taken before STACY L. LOZANO, CSR No. 12831
           a Certified Shorthand Reporter
              for the State of California
               Tuesday, April 29, 2008
                      ---oOo---


             EMERICK & FINCH (925) 831-9029
```

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 5

```
                                                              Page 202
 1              THE WITNESS:  A.  Yes.
 2         Q.   Or besides the addresses?
 3         A.   No.  I made notations besides those that
 4    were three acres or more.  I could have looked at 20
 5    properties and I wouldn't have bothered to put a notation
 6    on them because they're too small or they're owned by a
 7    multiplicity of owners.
 8         Q.   Thank you for the clarification.  So you --
 9    if you made notations next to an address, or addresses, it
10    was because they were three or more acres on this list?
11         A.   Generally, yes.  I might have made a
12    notation about something else, but --
13         Q.   And in terms of your original notations, did
14    you keep those?
15         A.   No.
16         Q.   I'm just trying to -- my questions are just
17    aimed at trying to figure out where they might be.  So --
18    because I haven't seen them.
19              Now, you indicate in paragraph five of your
20    declarations -- if you'll have a look at that -- that you
21    state, "In general, the locations chosen by the city for
22    assembly use overlay are the less desirable industrial and
23    commercial locations within the city."
24              You see that?
25         A.   Yes.
```

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 6

```
                                                              Page 203
 1        Q.   What does "less desirable" mean?
 2        A.   It means just what it says.  They are in
 3   need of maintenance or repair.  They're dilapidated,
 4   they're fractionalized, they're very -- they are very
 5   irregularly shaped pieces, they're difficult to work with.
 6        Q.   Any exceptions to that?  You say "in
 7   general," so I'm saying were there any exceptions?
 8        A.   That's difficult to answer.  And it's
 9   difficult to answer because part of what they did was --
10   where's that document?  Okay.
11        Q.   You've asked for Exhibit 6.
12        A.   Okay.  Part of what they did was -- say,
13   these two parcels, which are shopping centers, are part of
14   the overlay district.  Now, those were not decrepit,
15   beat-up, or little sites, but they are fully occupied.
16             The one on the south side of the street has an
17   Orchard Supply and a Kmart in it.  And the one on the
18   north side of the street has a host of other commercial
19   buildings in it.
20             There are two major problems with trying to say
21   you can use that for assembly.  And the first problem is
22   that the people that own it believe its highest and best
23   use is as a commercial.  And when you price that real
24   estate as commercial, it's way out of range of what
25   someone can do with a place that highest and best use
```

Emerick & Finch   800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 7

```
                                                          Page 204
 1   might be industrial, or vacant, or something else.
 2           But to go to those people to attempt to buy those
 3   centers, and then shove one or both of them over and put a
 4   church there will start a real donnybrook, in my judgment,
 5   in San Leandro.
 6       Q.   A what?
 7       A.   A donnybrook.
 8       Q.   What's that?
 9       A.   It's a thing you don't ever want to see.  It
10   is a conflict of gigantic proportions.
11       Q.   So from your response, am I correct in
12   thinking that the exception -- aside from the constraints
13   you just mentioned -- that an exception may be the
14   shopping centers?
15       A.   Exactly.
16       Q.   Those are not less desirable, aside from
17   their -- is that correct, they're not -- that's an
18   exception to your statement, that in general the locations
19   chosen by the city are less desirable?
20       A.   It says, "less desirable industrial and
21   commercial locations."  These two happen to be very
22   desirable commercial locations, so that is an exception to
23   that statement.
24       Q.   Okay.  And just let the record reflect that
25   you're pointing to the two parcels that you marked as
```

Emerick & Finch    800-331-9029

Exhibit 2 (Pltf)
Decl of K. Snider
Page 8