**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL,

        Plaintiff,

      v.

CITY OF SAN LEANDRO,

        Defendant.

_____/

No. C 07-3605 PJH

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTIONS
FOR SUMMARY JUDGMENT**

      The parties' cross-motions for summary judgment came on for hearing before this court on October 1, 2008.  Plaintiff appeared by its counsel Kevin T. Snider, Matthew B. McReynolds, and Peter MacDonald, and defendant appeared by its counsel Deborah J. Fox and Jayne W. Williams.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion and DENIES plaintiff's motions.

## BACKGROUND

      This is a case alleging violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"), and also asserting claims under 42 U.S.C. § 1983 for First and Fourteenth Amendment violations and violations of RLUIPA.

      Plaintiff is the International Church of the Foursquare Gospel ("ICFG").  Defendant is the City of San Leandro, California ("the City").  ICFG alleges that the real party in interest is Faith Fellowship Foursquare Church ("the Church"), a congregation affiliated with ICFG, and located in San Leandro.

The Church was originally founded in 1947.  When the present senior pastor, Gary Mortara, took over the management of the Church at its present location in September 1993, the congregation consisted of 65 people.  The Church grew rapidly after 1993, and in April 2003, the Church completed construction of a new sanctuary on an adjacent property, with 650-700 seats.  By the end of 2005, however, the Church had again outgrown its space.

According to ICFG, the Church presently conducts three religious services each Sunday for a total of more than 1700 attendees, and also runs numerous programs throughout the week, for children, the disadvantaged, women, youth, and persons struggling with addictions.  The Church kitchen, which ICFG claims is smaller than the kitchen in most homes, is being used to feed between 300 and 400 people each Wednesday night.  In addition, ICFG asserts that the parking lot has space for only 154 vehicles, and members of the congregation are forced to park on nearby residential streets, as much as a 20-minute walk away from the Church.

In January 2006, the Church decided to look for a larger property.  In February 2006, the Church found a site located on two parcels at 14600 and 14850 Catalina Street in San Leandro, comprising 3.56 acres ("the property" or "the Catalina property").  The Catalina property is located within the City's Industrial Park ("IP") zoning district, and is situated in the "West San Leandro Focus Area," which was set aside in the City's General Plan to preserve an environment for industrial and technological activity.  The property is adjacent to several manufacturing plants, and is surrounded by numerous other industrial and light-industrial uses.

The property is developed with a single-story office building of approximately 46,000 square feet, and includes 188 parking spaces.  ICFG claims that the Catalina property can potentially accommodate 1100 people in the sanctuary and an additional 500 in other activities (Sunday school, adult Bible studies, etc.) per service.  In addition, the kitchen and food preparation area is five times as large as the kitchen in the present location.  ICFG contends that there is room for nearly 500 parking spaces, and that the commercial zone

United States District Court

For the Northern District of California

where the property is located is largely vacant on week-ends.  ICFG argues that  moving the Church to the Catalina property will enable the congregation to more fully follow their sincerely-held beliefs.

On March 24, 2006, the Church signed a purchase and sales agreement for the property, and paid $50,000, half of a nonrefundable fee applicable to the purchase price of $5.375 million.  On March 31, 2006, the Church paid the other $50,000 of the nonrefundable fee.

At the time that ICFG identified the Catalina property as a potential site for the Church, the San Leandro Zoning Code ("the Zoning Code") did not allow "assembly uses" – churches and private or non-profit clubs, lodges, and organizations – to locate in the IP district or other industrial or commercial districts of the City, but did allow them to locate in districts zoned Residential ("R") if they obtained a conditional use permit.

On May 3, 2006, Church representatives met with City Planning Staff to discuss the Church's desire to use the Catalina property for religious activities.  According to Debbie Pollart, who was then the City's Planning Director, Planning Staff advised the Church that under the Zoning Code, religious assembly uses were conditionally permitted uses in the City's R zoning district only, and that the Zoning Code did not permit assembly uses within the IP district.

Planning Staff further advised the Church representatives that in order for the Church to relocate to the Catalina property, two changes to the Zoning Code would be needed – amendment of the Zoning Code to make assembly a conditionally permitted use in the Industrial Limited ("IL") zoning district, and an amendment of the zoning map to designate the Catalina property as IL.

Planning Staff advised the Church to apply for rezoning from IP to IL because the IL zoning district was more amenable to assembly use than the IP zoning district.  According to Ms. Pollart, this is because the IL district's purpose is to provide areas of low-to-moderate intensity industrial uses which are capable of being located adjacent to residential areas and serve as a buffer between residential areas and light industry.  By

3

United States District Court

For the Northern District of California

1   contrast, the IP zoning designation is meant to serve commerce, high technology,

2   production and assembly, and retail and related uses.

3        In early May 2006, the Church filed a planning permit application for a zoning map

4   amendment on the Catalina property from IP to IL, to allow a subsequent application for a

5   conditional use permit for an assembly use.  The application was received by the City on

6   either May 18 or May 19, 2006.  On the same day that ICFG filed the permit application,

7   the Church signed an amendment to their purchase and sales agreement and paid a

8   further $50,000 nonrefundable fee, applicable to the purchase price, to extend the

9   agreement to July 6, 2006.

10       After receiving the Church's application to rezone the Catalina property from IP to IL,

11  and to amend the Zoning Code to allow religious assembly use in the IL zoning district, Ms.

12  Pollart and other Planning Staff began discussing some of the planning and policy issues

13  raised by the Church's application.  In particular, they began discussing issues relating to

14  the need for consistency with the City's General Plan.

15       On June 8, 2006, the City Council's Business Development Committee (the Mayor of

16  San Leandro plus two members of the San Leandro City Council) met and discussed the

17  Church's application to use the Catalina property.  They expressed concerns over the

18  policy implications of allowing an assembly use in an industrial zone.

19       Ms. Pollart explains that an amendment to the text of the Zoning Code to allow

20  assembly uses in the IL zone would apply to all properties zoned IL, and would therefore

21  have City-wide implications.  In the view of Planning Staff, the expansion of assembly uses

22  outside of residential zoning districts would represent a major shift in policy regarding the

23  location of assembly uses in the City.

24       Thus, the Church's rezoning application raised a broader policy issue for the City –

25  determining which non-residential areas were appropriate for an expansion of assembly

26  use.  Planning Staff therefore advised the Church in a letter dated June 29, 2006, that the

27  request would require careful analysis by Staff and consideration at public hearings by

28  numerous civic advisory bodies, the Planning Commission, the Board of Zoning

United States District Court
For the Northern District of California

Adjustments, and, ultimately, the City Council, to ensure that any such change was consistent with the City's General Plan.[1]

According to Ms. Pollart, the potential for conflicts between industrial uses and assembly uses was a matter of particular concern, with a need to avoid unacceptable impacts such as noise, dust, or constant truck traffic on permitted assembly uses, as well as a need to minimize unacceptable constraints on industrial operations in order to avoid impacts on, or complaints from, permitted assembly uses.  Of equal concern was the issue of potential displacement of industrial and commercial uses by assembly uses, and the resulting effects on the City's industrial employment and economic base.

The June 29, 2006, letter further advised that in light of "current staff commitments, vacation schedules, and the fact that the [Business Development] Subcommittee does not meet during the month of August, staff is anticipating returning to the Subcommittee with this matter in September."  Thus, following submission of the application to the Planning Commission and the Redevelopment Advisory Commission, "[a] public hearing before the Planning Commission is anticipated in October/November, followed by the City Council hearing in November/December."

On July 11, 2006, the Church signed an amendment to the purchase and sales agreement and paid an additional $50,000 nonrefundable fee, applied to the purchase price, to extend the agreement to October 31, 2006.

On October 10, 2006, Church representatives addressed the City Council during the "public comment" portion of the Council meeting, informing the Council about the proposed purchase of the Catalina property and the delays that the City had assertedly caused in the review process.

According to Planning Manager Pollart, by October 2006, Planning Staff had

_____

[1] Under California law, a General Plan is "a statement of development policies and shall include a diagram . . . and text setting forth objectives, principles, standards, and plan proposals." It must also include designated elements. Cal. Gov't Code § 65302. In California, zoning laws must conform to the General Plan. Neighborhood Action Group v. County of Calaveras, 156 Cal. App. 3d 1176, 1183 (1984).

United States District Court

For the Northern District of California

1  developed two legislative options by which the City could expand the accommodation of

2  assembly uses in non-residential districts.  Option 1 would make assembly use a

3  conditionally permitted use in all areas zoned IL, which would increase the area in which

4  assemblies were allowed by about 94 acres.

5       Option 2 would create a new "Assembly Use Overlay District," which, when applied

6  to any non-residential property, would make assemblies an allowable use in addition to

7  those allowed under the pre-existing zoning.  Option 2 would also apply the Assembly Use

8  ("AU") Overlay designation to certain non-residential properties identified by Planning Staff

9  as suitable for assembly use, according to criteria Staff had developed from the City's

10  General Plan.  Option 2 would increase the area in which assemblies are allowed by over

11  200 acres.

12       On October 12, 2006, the City Council's Business Development Sub-Committee met

13  and discussed the Church's application.  Church representatives attended the meeting.

14  The two alternatives developed by Staff were presented at the meeting.  After the

15  presentation, the members of the Sub-Committee expressed a strong preference for the

16  second alternative – the overlay zoning approach – because it appeared to provide greater

17  opportunities for expansion of religious and other assembly uses in the City.

18       On October 19, 2006, the Board of Zoning Adjustments and the Planning

19  Commission held a joint session during which they discussed the Church's application.  Ms.

20  Pollart explained that the two options were designed to lay the groundwork for

21  accommodating religious and secular assembly uses in non-residential areas throughout

22  the City, though neither option would immediately affect the Catalina property.  If Option 1

23  were approved, ICFG would need to obtain rezoning of the property to IL.  If Option 2 were

24  approved, ICFG would need to obtain rezoning of the property to "AU Overlay."

25       The Church's senior pastor, Gary Mortara, urged the City to act quickly, pleading

26  that the Catalina property had been in escrow since February, and that ICFG was obliged

27  to complete its purchase by October 31, 2006.  In response, Ms. Pollart explained that

28  under either option, ICFG's use of the Catalina property could not feasibly be made

United States District Court

For the Northern District of California

1    allowable by October 31.  At the close of the meeting, the City decision-makers expressed

2    a preference for Option 2.

3         After the October 19, 2006, joint work session, Planning Staff continued to refine the

4    criteria for selection of properties for inclusion in the AU Overlay zone, and began drafting

5    proposed text for the actual Zoning Code amendments that would create the AU Overlay

6    zoning classification and regulations.

7         On October 23, 2006, the Church signed an amendment to the purchase and sales

8    agreement and paid an additional $50,000 nonrefundable fee, applicable to the purchase

9    price, to extend the agreement to December 31, 2006.

10        On December 7, 2006, the Board of Zoning Adjustments reviewed the proposal for

11   the AU Overlay zone.  Planning Staff had recommended that the Board review the

12   proposed amendments and make comments that would be forwarded to the Planning

13   Commission.

14        On December 29, 2006, the Church closed escrow on the Catalina property.

15   According to ICFG, the Church could not obtain any further extensions.  To close escrow,

16   the Church made a final down payment of $53,903.39.  ICFG claims that Church

17   representatives believed there was a "good chance" that the application would be approved

18   by the City, based on statements of City officials that other amendments for assembly uses

19   by commercial recreation and entertainment businesses had been previously approved,

20   and also based on supportive statements by City officials at public meetings.

21        On January 2, 2007, the deed of trust was recorded in Alameda County Recorder's

22   Office, in the names of ICFG and the Church.

23        On February 22, 2007, the Planning Commission conducted a public hearing on the

24   proposed AU Overlay zoning amendments.  Planning Staff presented the Planning

25   Commission with proposed amendments that would replace all references to "religious

26   assembly" and "clubs and lodges" with a religiously neutral category of "assembly use," and

27   would also create the new AU Overlay District.

28        Staff further indicated that they had identified nearly 200 properties as suitable for

7

United States District Court
For the Northern District of California

AU Overlay designation, using eight criteria, which Staff had developed after consulting applicable General Plan policies, and in light of the Zoning Code's stated purpose of implementing the General Plan.  The eight criteria are as follows:

1) Site is not located along a major commercial corridor;

2) Site is not located within certain General Plan Focus Areas (Downtown, Bayfair, Marina Blvd/SOMAR, or West San Leandro);

3) Site is not located in regional-serving retail area (Greenhouse Marketplace, Westgate, Marina Square, or "old" Target site);

4) Site is not located inside the one-half mile study area identified for Downtown Transit-Oriented Development Strategy;

5) Site abuts or is within one-quarter mile of an arterial street;

6) Site is not located in a Residential zone;

7) Site is not considered public land, and is not zoned Public Service, Open Space, or Commercial Recreation; is not owned by an Exempt Public Agency or leased/owned by a public utility;

8) Overlay area must allow a contiguous area greater than or equal to two acres.

At the close of the public hearing, the Planning Commission unanimously recommended that the City Council approve the proposed amendments.

On March 19, 2007, the City Council approved the AU Overlay District and Map amendments, effective on May 1, 2007, passing an ordinance that consolidated and equalized treatment of secular and religious assembly uses, and establishing a new AU Overlay District.  The City Council applied the new AU Overlay designation to the 196 properties (over 200 acres total) that Staff had identified as suitable.  Based on the selection criteria that had been utilized to select properties for inclusion in the AU Overlay District, the City Council determined that the Catalina property should not be included in the new zone.

On March 30, 2007, representatives of the Church filed an application to amend the

United States District Court

For the Northern District of California

zoning of the Catalina property from "IP" to "IP with the Assembly Use Overlay."  The public

hearing on the rezoning application was set for April 12, 2007.

In a report submitted to the Planning Commission for the April 12, 2007, meeting,

Ms. Pollart stated that Planning Staff recommended that the Planning Commission deny

the Church's application for the zoning amendment; and that Staff had considered the eight

criteria listed above, which were based on the City's General Plan, and which the City had

used to produce the already approved AU Overlay District covering 196 properties.  The

report stated that the Catalina property did not meet two of the criteria – No. 2, because the

property is located within one of the General Plan Focus Areas, and No. 5, because the

property does not abut or is not located within 1/4 mile of an arterial.

The report added that the site failed to meet additional criterion of public health and

safety, because the presence and the potential future presence of hazardous materials and

activities in the vicinity of the Church's proposed assembly use rendered it inappropriate for

rezoning within the AU Overlay District.  This last conclusion was based on the fact that

there were eight businesses operating under a Hazardous Materials Business Plan

("HMBP") within 500 feet of the Catalina property, and an additional 13 businesses

between 500 feet and one-quarter mile of the site.

Following the close of the public hearing, the Planning Commission voted to deny

the application.  The Church appealed the decision to the City Council on April 16, 2007.

On May 7, 2007, the City Council met to consider the appeal, and denied it in a unanimous

vote.

The primary ground for denying the rezoning application was that it did not meet two

of the eight criteria, as noted above.  Specifically, the Catalina property is located in a

General Plan "focus area" – the West San Leandro Business District – and is also located

more than 1/4 mile from a designated arterial.  Policy 7.09 of the City's General Plan

establishes a policy of developing the West San Leandro industrial area as a major

industrial, technology, and office employment center, and therefore a policy of promoting

additional development and redevelopment of such uses while limiting encroachment of

United States District Court

For the Northern District of California

1   incompatible uses in the area.

2   Meanwhile, on March 28, 2007, the Church had submitted an application for a

3   conditional use permit for a proposed assembly use at the Catalina property, under the

4   existing zoning.  The application stated, "We are applying for an existing permitted use,

5   entertainment activities – same church use conditional use permit."  The Church submitted

6   a site plan with the conditional use permit application.

7   Ms. Pollart reviewed the application for the conditional use permit, and determined

8   that it could not be processed because it was incomplete.  On April 25, 2007, she wrote to

9   advise the Church that the application was missing information relating to proposed use

10   and construction at the site.  She also noted that the City had received conflicting

11   information from the Church regarding the intended hours/days of operation for the

12   assembly use, and that the Planning Department needed the intended days/hours of the

13   activities for which the conditional use permit was being sought.

14   Ms. Pollart states that the Church did not respond to any of the issues raised in her

15   letter, and did not submit the required information.  Thus, she took no further action

16   regarding the application.  She states that she understands that a complete application was

17   eventually submitted to the City and processed at the Church's request, even though the

18   rezoning to allow assembly uses on the Catalina property without a conditional use permit

19   had been denied.  The conditional use permit application was eventually denied by the

20   Planning Commission, and the City Council on appeal, because of inconsistency with the

21   zoning and additional factors such as inadequate parking space.

22   Following the May 7, 2007 denial of the appeal of the denial of the rezoning

23   application, the City immediately offered assistance to ICFG to locate an alternative site

24   within the City's AU Overlay District, and ICFG offered to work with the City toward that end

25   in the context of settlement negotiations.  ICFG apparently accepted the offer, but

26   nevertheless filed the present lawsuit on July 12, 2007.

27   ICFG asserts that the denial of the Church's application for use of the Catalina

28   property has caused, and continues to cause, economic damage to the Church.  In addition

**United States District Court**

For the Northern District of California

to the $100,000 payment the Church made with the purchase and sales agreement on March 24, 2006, it was required to make three additional payments of $50,000, while it waited for a response to its application.  Since January 2, 2007, when it completed the purchase, the Church has made monthly mortgage payments of more than $1100 a day, without being able to use the property.  The Church was also forced to hire an attorney to facilitate the application with the City.

ICFG alleges that the City "intentionally delayed" the review of the Church's application for fourteen months, knowing that such delay was substantially burdening the Church's religious exercise and violating the Church's rights to freedom of speech, freedom of assembly, and free exercise of religion under the First Amendment, its right to equal protection under the Fourteenth Amendment, and its rights under RLUIPA.

In the original complaint, ICFG named as defendants the City, plus the Mayor of San Leandro and various City officials.  ICFG alleged that defendants had violated the Church's constitutional rights and rights under RLUIPA by refusing to rezone the Catalina property – which is located in an industrial zone – to allow the Church to expand its operations from its current location.

On October 7, 2007, the court denied ICFG's motion for a preliminary injunction, finding that ICFG had failed to demonstrate either likelihood of success on the merits or the possibility of irreparable harm.  The court also found that ICFG had made an inadequate showing in view of the fact that the relief sought by the motion would alter (not preserve) the status quo and would provide ICFG with essentially all the relief it was seeking in the lawsuit.

On October 23, 2007, the parties stipulated to the filing of a first amended complaint ("FAC"), and also stipulated to the dismissal from the suit of the individual defendants.  Thus, the sole remaining defendant is the City.

The FAC alleges three causes of action under RLUIPA, asserting that the City's land restrictions place a "substantial burden on religious exercise" (42 U.S.C. § 2000cc(a)); that the denial of the rezoning application constitutes "treatment of religious assembly on less

11

United States District Court

For the Northern District of California

1  than equal terms with nonreligious assembly" (42 U.S.C. § 2000cc(b)(1)); and that the

2  denial of the Church's use of the Catalina property constitutes "total exclusion from

3  jurisdiction or unreasonable limits on religious assemblies within jurisdiction" (42 U.S.C.

4  § 2000cc(b)(3)).

5      In addition, ICFG alleges six constitutional claims under 42 U.S.C. § 1983 – claims

6  under the First Amendment for violation of the right to free exercise of religion, the right to

7  freedom of speech, the right to freedom of assembly, and the right to freedom of

8  association; and claims under the Fourteenth Amendment for violation of the right to equal

9  protection and the right to due process.

10      ICFG now seeks summary judgment on the claims asserted in the FAC, and on the

11  City's affirmative defenses.  The City also seeks summary judgment on ICFG's claims.

**DISCUSSION**

13  A.    Legal Standard

14      Summary judgment is appropriate when there is no genuine issue as to material

15  facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

16  Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

17  Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

18  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

19      A party seeking summary judgment bears the initial burden of informing the court of

20  the basis for its motion, and of identifying those portions of the pleadings and discovery

21  responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

22  v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

23  at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

24  than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

25  888 (9th Cir. 2003).

26      On an issue where the nonmoving party will bear the burden of proof at trial, the

27  moving party can prevail merely by pointing out to the district court that there is an absence

28  of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

United States District Court

For the Northern District of California

1  moving party meets its initial burden, the opposing party must then set forth specific facts

2  showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

3  R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

4  B.  RLUIPA

5      RLUIPA is Congress' most recent effort "to protect the free exercise of religion

6  guaranteed by the First Amendment from government regulation."  Guru Nanak Sikh Soc.

7  of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006).  RLUIPA applies only

8  to regulations regarding land use and prison conditions.  Cutter v. Wilkinson, 544 U.S. 709,

9  715-16 (2005).

10     In the land use context, RLUIPA applies in cases where a substantial burden is

11 imposed in the implementation of a land use regulation or system of land use regulations,

12 under which the government makes or is permitted under the law to make, individualized

13 assessments of the proposed uses for the property involved.  42 U.S.C. § 2000cc(a)(2)(C).

14 RLUIPA provides, in relevant part,

15     No government shall impose or implement a land use regulation in a manner
       that imposes a substantial burden on the religious exercise of a person,
16     including a religious assembly or institution, unless the government
       demonstrates that imposition of the burden on that person, assembly, or
17     institution –

18         (A) is in furtherance of a compelling governmental interest; and

19         (B) is the least restrictive means of furthering that compelling
           governmental interest.
20
   42 U.S.C. § 2000cc(a)(1).  This is referred to as the "substantial burden" provision.
21
22     The plaintiff in a land use case challenging the denial of a conditional use permit

23 bears the burden of proving that the governmental authority's denial of the application

24 imposes a substantial burden on its religious exercise.  Guru Nanak, 456 F.3d at 988.  It is

25 generally agreed that the term "substantial burden" in RLUIPA is to be construed in light of

26 federal Supreme Court and appellate jurisprudence involving the Free Exercise Clause of

27 the First Amendment.  Id.

28     A "'substantial burden'" must place more than an inconvenience on religious

13

United States District Court

For the Northern District of California

exercise." Id. (citation omitted).  The Ninth Circuit has held that for a land use regulation to impose a substantial burden, "it must be oppressive to a significantly great extent.  That is, a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise." Id. at 988-89 (quoting San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)).  A "substantial burden" is thus one that exerts substantial pressure on an adherent to modify his behavior and to violate his beliefs. Id. at 988.

If the plaintiff establishes that the land use regulation or denial of conditional use permit imposes a substantial burden, the governmental authority must then show that the restrictions are narrowly tailored to accomplish a compelling government interest.  Id. at 992.  Generally, in considering the nature and context of the challenged governmental actions, the court must consider whether the action is specifically targeted at core religious activities, or whether it is purely arbitrary or fails to serve any valid purpose.  In such cases, the action will likely be found to impose a substantial burden.  See Westchester Day School v. Village of Mamaroneck, 504 F.3d 338, 350-51 (2nd Cir. 2007).

At the other extreme, the burdens imposed by facially neutral regulations of general applicability, which were adopted for purposes unrelated to religion, are considered incidental burdens that must be borne by religious organizations and by non-religious organizations alike.  Zoning regulations, absent abuse or arbitrary application, generally fall within the "generally applicable" category of regulation.  Lighthouse Institute for Evangelism, Inc.  v. City of Long Branch, 510 F.3d 253, 275-76 (3rd Cir. 2007).

A law is one of neutrality and general applicability if it does not aim to "infringe upon or restrict practices because of their religious motivation, and if it does not in a selective manner impose burdens only on conduct motivated by religious belief." San Jose Christian, 360 F.3d at 1032 (quotation and citation omitted).  Because incidental burdens do not trigger strict scrutiny, "courts confronting free exercise challenges to zoning restrictions rarely find the substantial burden test satisfied even when the resulting effect is to completely prohibit a religious congregation from building a church on its own property."

14

1    <u>Westchester</u>, 504 F.3d at 350; <u>see also</u> <u>Lighthouse</u>, 510 F.3d at 274-75.

2        Of relevance to the present case, RLUIPA further prohibits treatment on "less than

3    equal terms," and also prohibits "exclusion," as set forth in the following provisions in

4    subsection (b):

5        No government shall impose or implement a land use regulation in a manner
         that treats a religious assembly or institution on less than equal terms with a
6        nonreligious assembly or institution.

7    42 U.S.C. § 2000cc(b)(1).  This is referred to as the "equal terms" provision.

8        In addition, no government shall impose or implement a land use regulation that –

9            (A) totally excludes religious assemblies from a jurisdiction . . .

10   42 U.S.C.A. § 2000cc(b)(3).  This is referred to as the "total exclusion" provision.

11   C.    The Cross-Motions for Summary Judgment

12        ICFG argues that the City's denial of its rezoning application and request for a

13   conditional use permit violated both RLUIPA and the First and Fourteenth Amendments to

14   the United States Constitution.  With regard to RLUIPA, ICFG asserts that the City's

15   actions have substantially burdened the Church, and that the City has not established that

16   its proffered interests are adequate to justify its violation of RLUIPA; that the City's actions

17   violated both the "equal terms" provision and the "total exclusion" provision.  ICFG also

18   contends that the City's actions violated the Church's rights to free exercise of religion,

19   freedom of speech, due process, and equal protection.

20        The City asserts that its actions violate neither RLUIPA nor the Constitution.  With

21   regard to RLUIPA, the City contends that its actions did not impose a substantial burden on

22   the religious activities of the Church, and that its actions serve a compelling government

23   interest and were the least restrictive means of protecting that interest; that its regulations

24   do not violate the "equal terms" provision; and that its regulations do not totally exclude or

25   unreasonably restrict religious assemblies in San Leandro.

26        The City also contends that ICFG's constitutional claims present no triable issue, as

27   the City has not unconstitutionally interfered with the Church's right to free exercise of

28   religion, or freedom of speech; has not interfered with the Church members' freedom to

1   assemble or freedom of association; and has not violated the Church's right to equal

2   protection of the law or due process.

3       1.      RLUIPA claims

4           a.      "Substantial burden" provision – § 2000cc(a)(1)

5       In the FAC, ICFG alleges that the City's denial of the Church's request to use the

6   Catalina property imposes a substantial burden on the religious exercise of the Church

7   because the City's actions have significantly limited the Church's ability to fully exercise its

8   beliefs in the commands of Jesus Christ to proclaim and propagate the Gospel, make

9   disciples, and assist the poor.  ICFG asserts that because the Church has outgrown its

10  current facility, members and visitors are hindered in their attendance of worship services

11  and in their participation in other religious instruction.

12      ICFG asserts that the denial of the Church's use of the Catalina property does not

13  further a narrowly tailored compelling government interest of preserving property, because

14  RLUIPA does not allow a government to use broad and discretionary land use rationales to

15  select the precise property where a religious group can worship.  ICFG also alleges that the

16  denial of the use of the property is not in furtherance of a narrowly tailored governmental

17  interest in public health and safety, as the City has permitted other assembly uses in the

18  same location.

19                  i.      The City's arguments

20      The City argues that summary judgment should be granted on this claim because its

21  actions did not impose a substantial burden on the religious activities of the Church, and

22  because the City's actions served a compelling government interest and were the least

23  restrictive means of protecting that interest.

24      With regard to the question of substantial burden, the City makes three arguments.

25  First, the City asserts that churches, like other uses, are not entitled to rezoning upon

26  demand under RLUIPA.  The City contends that neither RLUIPA nor the Free Exercise

27  Clause requires cities to grant churches preferential rights over other property owners, or to

28  "insulate" churches from the reality that the marketplace sometimes dictates that certain

United States District Court

For the Northern District of California

facilities are not available to those who desire them.

The City's second argument is that its decision not to rezone the Catalina property does not amount to a substantial burden on the exercise of religion, because any burden this imposes on the Church is an incidental result of the City's larger zoning provisions. The City notes that there is no evidence of intentional discrimination or arbitrary conduct toward the Church, and that the record instead reflects a good faith effort by the City to actually <u>expand</u> opportunities for religious assembly uses in the wake of the Church's initial application.  The City contends that the fact that the Catalina property was not ultimately included in this expansion does not entitle ICFG to relief under RLUIPA.

The City submits that the evidence shows that its zoning provisions as a whole provide adequate sites for religious assemblies.  The City notes that churches and other assembly uses have been allowed with a conditional use permit in all City residential zones for many years.  Relying on documents attached to the Pollart Declaration, the City asserts that residential zones comprise more than 50% of the City, and the enactment of the Assembly Use Overlay zoning amendments in early 2007 added an additional 196 properties of various sizes, located in both commercial and industrial zones.

The City also notes that there are currently 45 churches in San Leandro, and that it has received only two applications for new church facilities in the last five years.  The City asserts that the amount of extra space released for assembly use by the Assembly Use Overlay zoning amendments is thus proportionate to the demand for church space in the City.

As for ICFG's argument that there are no available sites, other than the Catalina property, which are large enough to accommodate the size of the congregation and the range of additional activities that the Church claims are essential to its free exercise of religion, the City responds that the evidence does not show that no other similarly sized sites are available.

The City provides evidence showing that there are approximately 78 sites over 3.5 acres, located in the City's residential zones.  Of the parcels subject to the AU Overlay, four

United States District Court

For the Northern District of California

1   are over 10 acres, eight are over 5 acres, and 24 are over 2 acres; the largest parcel is

2   27.15 acres.  Beyond this, the City notes that the AU Overlay District was deliberately

3   applied only to parcels containing a minimum of 2 acres of contiguous land, so that smaller

4   parcels could be aggregated to allow larger assembly uses (as is the case with the three

5   parcels that adjoin the Catalina property).

6        The City also argues that ICFG has failed to show that all the Church's activities

7   must occur at the same location, and that conducting activities – such as educational

8   activities or counseling services, or the Church's food programs – at alternative locations

9   would not effectively prevent the Church's members from practicing their religion.

10       The City contends that because burdens resulting from neutral operation of a

11  rational zoning scheme are considered incidental – not substantial – burdens on religious

12  exercise, the Church is not justified in insisting on a single large property of its own

13  choosing, where that choice would require the City to jettison its adopted zoning plans to

14  accommodate the Church's demand.  The City notes that were a large chain bookstore, for

15  example, to sue the City under the First Amendment because there were no commercially

16  zoned parcels left in San Leandro that could accommodate the chain's desire to build a

17  large bookstore, the suit would clearly fail.  The City contends that it is under no obligation

18  to guarantee the Church its chosen location – in contravention of neutral zoning regulations

19  – simply because the Church is a church.

20       The City's third argument is that its actions have not imposed a substantial financial

21  burden on the Church; and, moreover, that any financial difficulty the Church finds itself in

22  was of its own making.  Citing the March 24, 2006 purchase agreement, the City notes that

23  the original offer made by the Church for the property was conditioned "upon Buyer in its

24  sole judgment determining that the subject real property is suitable for and approved for

25  use as a church," with the condition to "remain in full force and effect until removed in

26  writing by Buyer," but that Church itself deleted this contingency four days later.

27       With regard to the second part of the § 2000cc(a)(1) "substantial burden" test, the

28  City contends that its actions served a compelling government interest and were the least

1  restrictive means of protecting that interest.  The City claims that the principal reason for

2  refusing to rezone the Catalina property was that the property is considered a core property

3  for maintaining the City's industrial base, as evidenced in the City's General Plan.

4       The City notes that while it may not have a compelling interest in preserving every

5  industrially-zoned parcel for industrial uses, it has a compelling interest in preserving some

6  land for industrial use.  The Catalina property site historically employed some 400 people,

7  and the City contends that the site is uniquely important by virtue of its location and current

8  accommodations to the preservation of a viable industrial base in the City.  The City asserts

9  that denial of the rezoning request was indisputably the only practical – and therefore least

10  restrictive – means of achieving the City's legitimate goal.

11                      ii.      ICFG's arguments

12       ICFG argues that it should prevail on this claim because the denial of the rezoning

13  and conditional use permit requests have imposed a substantial burden on the Church.

14  ICFG asserts that since the City denied the rezoning application, the Church has looked

15  into dozens of other properties, but claims that none are suitable.  ICFG asserts that of the

16  properties "suggested by" the City, only one was for sale – and it was under contract.  In

17  addition, ICFG contends that of the properties within the AU Overlay district, only 13 are 3

18  acres or more – the property size that ICFG claims is required for the Church's needs.

19       In support, ICFG  cites the deposition testimony of Ed Bullok, identified by the City

20  as the Church's "real estate agent."  Mr. Bullok testified that all these parcels are "either

21  dilapidated, fractionalized and irregularly shaped . . . or occupied commercial shopping

22  centers . . . which have no interest in selling to the Church."  ICFG also cites the deposition

23  testimony of then-City Manager John Jermanis.  ICFG asserts that Mr. Jermanis

24  "confirmed" that there are no properties available for the Church in all of San Leandro.

25       ICFG contends that the Church's "core functions" are being inhibited by the

26  inadequate facility in which the City has "forced it to remain."  ICFG claims that the inability

27  of the Church to use the Catalina property significantly restricts its pursuit of its core tenets

28  – which it describes as joyous, united worship of God; local and global evangelism to lead

United States District Court
For the Northern District of California

1   people to faith in Christ; instruction; and works of compassion, justice, and human aid –

2   because it limits the number of members and visitors who can attend, participate in its

3   activities, and receive spiritual help at its current location.

4        ICFG argues that the burdens the Church has encountered in searching for an

5   alternative property are substantial, as is the burden it experiences by having to pay $1,100

6   a day for property it cannot use.  It also asserts that the Church is substantially burdened

7   by having to meet at its current location, where there is inadequate parking, and inadequate

8   space for the large congregation to meet all together at one time.  Moreover, ICFG

9   contends, the Church is forced to turn away many vehicles every Sunday, and this means

10  that it is severely restricted in its efforts to evangelize these non-Christians who are seeking

11  to attend services.

12       As for the second part of the required "substantial burden" showing, ICFG contends

13  that the City's proffered interests are inadequate to justify its RLUIPA violation.  ICFG notes

14  that the City has articulated only three such interests – the preservation of sufficient land

15  and facilities to maintain the City's industrial base; the need to maintain consistency with

16  and to implement the City's General Plan; and the need to avoid conflicts with neighboring

17  industrial areas.  ICFG contends that none of these interests is compelling, and that the

18  restrictions placed on the Church were not the "least restrictive means."

19       First, ICFG contends that preservation of sufficient land and facilities to maintain the

20  City's industrial base is not a compelling state interest, because otherwise municipalities

21  could exclude all religious institutions from their cities.

22       Second, ICFG argues that maintaining consistency with and implementing the City's

23  General Plan is not a compelling state interest.  ICFG claims that RLUIPA does not permit

24  a government to use broad and discretionary land use rationales to select the precise

25  property where a religious group can worship.

26       Third, ICFG asserts that avoidance of conflict with neighboring industrial uses is not

27  a compelling state interest.  Moreover, ICFG argues, the City has provided no evidence

28  showing the existence of any "conflict" with other uses at the Catalina property, and has

United States District Court
For the Northern District of California

1   provided no authority establishing that "avoidance of conflict" is a compelling state interest.

2   Finally, ICFG contends that the City has not used the least restrictive means of

3   furthering the stated compelling state interest.  ICFG argues that if the City can permit

4   commercial recreation and entertainment activities in the Assembly Use Overlay zone, it

5   can surely permit churches.

6   iii.      Analysis

7   The court finds that the City's motion must be GRANTED and that ICFG's motion

8   must be DENIED.  Courts have long recognized that burdens that are not oppressive and

9   that are imposed on religion merely by the operation of laws of general application do not

10   constitute "substantial burdens" on religion triggering strict scrutiny.  Lighthouse Institute,

11   510 F.3d at 275-77; see also San Jose Christian, 360 F.3d at 1031.

12   In this case, the City's zoning scheme is clearly neutral, as it treats religious

13   assemblies on the same footing as other assembly uses, and permits those uses with a

14   conditional use permit in areas zoned R – which constitute more than 50% of the City's

15   land area.  In addition, in adopting the AU Overlay District, the City increased the area in

16   which religious and other assembly uses could be located within the City, by adding

17   approximately 211 acres to the total of the areas zoned R, to which assembly uses had

18   previously been restricted.  The fact that the Catalina property was not included in the AU

19   Overlay district is an incidental consequence of a valid and clearly neutral zoning scheme.

20   RLUIPA does not require cities to grant churches preferential rights over other

21   property owners, or to protect churches from the reality that the marketplace might dictate

22   that certain facilities are not available to those who desire them.  For example, in San Jose

23   Christian, the plaintiff sued after the city denied an application to rezone property for use as

24   a religious college.  Id., 360 F.3d at 1027-28.  The Ninth Circuit found that denial of the

25   rezoning application did not impose a substantial burden.  The court noted that even if the

26   applicable ordinance may have rendered the plaintiff unable to provide worship or

27   education services at the proposed site, there was no evidence in the record demonstrating

28   that the applicant was precluded from using other sites in the city.  Id. at 1035.

**United States District Court**
For the Northern District of California

1    Similarly, in Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752 (7th

2    Cir. 2003), five churches sued after they were denied "special use" permits.  The court

3    rejected the RLUIPA and free exercise claims, finding that the alleged "scarcity of

4    affordable land" and the costs of navigating the municipal permitting requirements did not

5    constitute a substantial burden on religion where viable sites ultimately existed, and in that

6    case, were ultimately located by the plaintiffs.  Id. at 761-62.

7    In another Seventh Circuit case, Petra Presbyterian Church v. Village of Northbrook,

8    489 F.3d 846 (7th Cir. 2007), the court rejected the plaintiff's RLUIPA claim, finding that a

9    prohibition on churches in industrial zones was neither unreasonable nor a substantial

10   burden on religion.  Id. at 850-51.  The court noted that where there is available land on

11   which religious organizations may build churches in a community, the fact that they are not

12   permitted to build anywhere and everywhere does not create a substantial burden.  Id. at

13   851.

14   In the absence of a showing that the City acted arbitrarily in ways suggesting actual

15   discrimination, the fact that there may be no other properties available to which the Church

16   can expand its operations in the specific way it wants does not mean that the City's zoning

17   code imposes a substantial burden on the Church.  Moreover, the evidence provided by

18   ICFG to support its claim that no other suitable properties exist is not sufficient to create a

19   triable issue as to substantial burden.

20   With regard to the Bullok testimony, ICFG does not explain how Mr. Bullok is

21   qualified to make this determination.  In addition, Mr. Bullok appears to have based his

22   evaluation solely on the Church's stated requirements – cost, size of parcel, access and

23   egress arrangement, configuration of the lot, and the construction type and configuration of

24   the existing buildings – rather than on a detailed objective analysis of the 196 parcels in the

25   AU Overlay District and their suitability as a location for a church.  Moreover, Mr. Bullok's

26   comments are generally vague, providing no specific details as to why he deems a majority

27   of the 196 parcels "unsuitable."

28   Nor does the testimony by former City Manager John Jermanis support ICFG;s

United States District Court

For the Northern District of California

1   position.  In his deposition, Mr. Jermanis was asked: "[I]n looking at the whole issue of Faith

2   Fellowship Church, are you aware of any locations within San Leandro which would –

3   which – any buildings within San Leandro which they could acceptably locate."  Mr.

4   Jermanis responded, "No."  This testimony reflects the fact that there appeared (to Mr.

5   Jermanis) to be no other properties in San Leandro with buildings that were ready for

6   occupancy and that also met all the Church's stated requirements.  Mr. Jermanis did not

7   testify that there were no other sites that were objectively reasonable alternatives for

8   churches generally, or for the Church specifically, if it were willing to modify some of its

9   demands in light of the available choices.  Moreover, as the City notes, there is no

10  indication that Mr. Jermanis was in charge of land-use issues in this case.

11      For a land use regulation to constitute a "substantial burden," it must be "oppressive"

12  to a "significantly great extent.  Guru Nanak, 456 F.3d at 988.  Here, however, the Church

13  already has an operation ongoing at its current location, and ICFG has not provided any

14  meaningful response to the City's argument that some of the Church's operations could be

15  conducted at alternative sites.  ICFG simply asserts that it is the Church's "unique core

16  beliefs" that require that all activities be located at one facility.  Carried to its logical

17  conclusion, this argument would ultimately exempt religious assemblies (as opposed to

18  other entities) from the requirement of complying with any zoning regulation, regardless of

19  how neutrally applied.

20      As for ICFG's argument that the City's actions have imposed a substantial financial

21  burden on the Church, the court notes that the costs of acquiring real estate and of

22  pursuing necessary government approvals are inherent costs incidental to any acquisition

23  and development or reuse of property, and are not normally cognizable as a burden on

24  religion.  See San Jose Christian, 360 F.3d at 1035; Civil Liberties for Urban Believers, 342

25  F.3d at 760-61.

26      Finally, while it is unnecessary for the court to reach the question whether the City

27  has established that its actions were justified by a compelling government interest, as ICFG

28  has not established that the City's actions constituted a substantial burden on the exercise

23

United States District Court

For the Northern District of California

1   of religion, the court finds that the City has established that it had a compelling government

2   interest in preserving certain land for industrial use, because such preservation is required

3   by the City's General Plan.  Further, the City's actions appear to have been the least

4   restrictive means of furthering that interest.

5              b.     "Equal terms" provision – § 2000cc(b)(1)

6        ICFG alleges that the City's denial of the Church's use of the Catalina property treats

7   the Church on a less than equal basis with non-religious assemblies, because the City has

8   approved AU amendments for commercial recreation and entertainment businesses

9   without subjecting them to all the same criteria that it has applied to the Church, and

10  because the City has imposed a 1/4 mile circumference from an HMBP requirement

11  exclusively on the Church.

12                   i.     The City's arguments

13       The City argues that the challenged regulations do not violate the "equal terms"

14  provision of RLUIPA, because they do not treat religious assemblies or institutions

15  differently from nonreligious assemblies or institutions.

16       ICFG contends that the City has violated RLUIPA because it has allowed

17  "commercial recreation" and "entertainment activities" in the IP and IL industrial zones with

18  a conditional use permit, whereas it permits churches and other assembly uses in those

19  zones, but only in areas subject to the AU Overlay District.  The City argues that this claim

20  fails because commercial recreation and entertainment activities are not similar to religious

21  assemblies or institutions in any relevant respect, and do not even qualify as "assemblies"

22  or "institutions."

23       The Zoning Code defines "Assembly Uses" as "[m]eeting, recreational, social

24  facilities of a private or non-profit organization primarily for use by members or guests, or

25  facilities for religious worship and incidental religious education (but not including schools

26  as defined in this section).  This classification includes union halls, social clubs, fraternal

27  organizations, and youth centers."  City of San Leandro Zoning Code, Art. 3, § 1-304.

28       By contrast, the Zoning Code defines "Entertainment Activities" to include specified

types of recurring performing events, plus dancing and electronically displayed events, but to exclude uses for "non-profit, charitable, or educational purposes of public or private institutional uses."  Id.  And "Commercial Recreation" is defined as "[p]rovision of participant or spectator recreation or entertainment" and includes "amusement parks, bowling alleys, ice/roller skating rinks, golf courses, miniature golf courses, and scale-model courses."  Id.

Thus, the City asserts, the Zoning Code distinguishes between "assembly uses" on the one hand, and "entertainment" uses and "commercial recreation" uses on the other, and neither "entertainment" uses nor "commercial recreation" uses can be classified as "assemblies" or "institutions."

RLUIPA does not define "assembly" or "institution," and the City argues that the court must construe the terms in accordance with their ordinary, contemporary, common meaning.  The City asserts that there is no evidence that Congress intended religious or non-religious "assembly" or "institution" to be equated with common types of commercial for-profit uses, such as bars, nightclubs, sports stadiums, or amusement parks.

The City notes that the common dictionary definition of "assembly" is "a number of persons gathered together, usually for a particular purpose, whether religious, political, educational, or social."  The City argues that this definition suggests a group of people voluntarily gathered together for associational purposes – not a random group whose common denominator is that they paid the price of admission.  The City argues that nothing in RLUIPA suggests that Congress intended to abolish the distinctions between conventionally recognized and typically non-profit assembly uses, and common commercial activities involving random aggregations of people.

The City makes a similar argument with regard to "institution," which has several common dictionary definitions, but primarily is "an organization, establishment, foundation, society, or the like, devoted to the promotion of a particular object, exp. one of public, educational, or charitable character."  The City acknowledges that "institution" can be used to refer to commercial enterprises, such as banks, but argues that the term is seldom used to refer to ordinary commercial enterprises such as skating rinks and movie theaters.

United States District Court

For the Northern District of California

1    Thus, the City argues, since entertainment activities and commercial recreation as

2  defined by the Zoning Code are not "assemblies" or "institutions" within the meaning of

3  RLUIPA, it should be unnecessary to further consider whether these uses should be

4  "similarly situated" with assembly uses.

5    Moreover, the City asserts, while some assembly uses and some commercial

6  entertainment or recreation businesses may have features in common, there are also

7  substantial differences in intensity of use, hours of operation and resulting traffic, impacts

8  on neighboring uses and locational preferences, and profit motive.  The City contends that

9  given these differences and the historical distinction between assembly and institutional

10  uses versus commercial uses generally, the City could lawfully determine that assembly

11  uses as defined in the Zoning Code are not "similarly situated" to commercial entertainment

12  and recreational uses.

13    ICFG's second "equal terms" claim is that the City has imposed a standard on the

14  Church's use of the Catalina property that has not been applied to any other assembly use

15  – that is, the requirement that the Church not be located within a 1/4 mile circumference of

16  any business operating under an HMBP.  The City contends that it has not enacted any

17  such standard, let alone selectively applied it to the Church.

18    The basis for ICFG's claim is that the staff reports for the Planning Commission and

19  City Council hearings on the Church's 2007 rezoning application recommended denial of

20  the application in part based on the presence of some eight businesses with HMBPs within

21  500 feet of the Catalina property, and a total of 13 such businesses within 1/4 mile.

22    The City asserts, however, that the record does not show that the City Council

23  actually relied on this fact in making the decision to reject the rezoning.  Rather, the record

24  shows that the primary ground for the denial was the fact that the Catalina property did not

25  satisfy two of the eight criteria used to select properties to be placed into the AU Overlay

26  District – the property was more than 1/4 mile from an arterial street, and was in a "focus

27  area" reserved by the General Plan for industrial and commercial development.

28    Moreover, the City argues, there is no evidence that the City applied different criteria

United States District Court

For the Northern District of California

1  to similarly situated applicants, or either a religious or a non-religious character – that is, no

2  evidence that the City intentionally ignored the presence of HMBPs in the context of

3  another similar rezoning application – as no other applicant has ever requested rezoning of

4  industrial land to accommodate an assembly use.

5                           ii.      ICFG's arguments

6         ICFG argues that the City has violated the "equal terms" provision of RLUIPA in

7  three ways.  First, ICFG contends that the City subjected the Catalina property to eight

8  criteria that have never been applied to any other property within the jurisdiction of the City.

9  ICFG asserts that since no other applicant for assembly use, before or since, has been

10 subjected to the "burden" of these eight criteria, there is a showing of an "equal terms"

11 violation under RLUIPA.

12        Second, ICFG contends that the City violated the "equal terms" provision by allowing

13 entertainment and recreational assembly uses but not religious assembly use.  ICFG

14 claims that the legislative history of RLUIPA specifically identifies "recreation centers" and

15 "places of amusement" as being comparable to religious assemblies for purposes of the

16 statute.  ICFG argues that the City allows both entertainment and commercial recreational

17 assembly uses by permit in IL and IP areas, and notes that other assembly uses in IL and

18 IP areas include day care facilities, farmers markets, cafes, bars, business and trade

19 schools, and full service restaurants.

20        ICFG contends further that the California Uniform Building Code contains a

21 nondiscriminatory definition of "assembly," which defines an "assembly building" as a

22 building "used for the gathering together of 50 or more persons at one time for such

23 purposes as deliberations, education, worship, entertainment, amusement, drinking or

24 dining, or waiting for transportation."  Uniform Building Code § 203A.  ICFG argues that the

25 only difference between the Church's proposed use and these other uses is that the

26 Church wants to use its property for religious assembly.

27        Third, ICFG asserts that the City violated the "equal terms" provision by placing a

28 hazardous materials burden on the Church but not on any of the 196 properties approved

United States District Court

For the Northern District of California

1  for assembly use or any other assembly uses within the jurisdiction of the City.  ICFG

2  contends that denial of the rezoning request was based in part on the presence of

3  businesses with HMBPs within 1/4 mile, and that that criterion was not applied across the

4  board to all proposed assembly uses.

5                         iii.        Analysis

6          The court finds that the City's motion must be GRANTED, and that ICFG's motion

7  must be DENIED.  To establish violation of the "equal terms" provision of RLUIPA, a

8  plaintiff must show that it is a religious assembly or institution that was subject to a land use

9  regulation, which regulation treated the religious assembly on less than equal terms with a

10  similarly situated nonreligious assembly or institution.  See 42 U.S.C.

11  § 2000cc(b)(1).

12          With regard to the application of the eight planning criteria, the evidence shows that

13  those criteria were developed as objective planning criteria for selecting sites to be included

14  in the AU Overlay District, and were based on policy and planning considerations set forth

15  in the City's General Plan.  More than 196 properties were found to meet the eight criteria,

16  but the Catalina property was not one of them.

17          ICFG argues that the eight criteria were applied to the Catalina property on less than

18  equal terms because the Catalina property is the only property to which they have been

19  applied.  However, the evidence shows that this argument is without merit.  In determining

20  which properties to include in the AU Overlay District, the City analyzed every non-

21  residential property within the City limits to determine whether it met the eight criteria.  The

22  fact that the eight criteria may not have been used in deciding another application for a

23  zoning amendment is not relevant, as there have been no other applicants other than the

24  Church since May 2007, the effective date of the AU Overlay District.

25          With regard to the hazardous materials issue, there is no evidence that the City has

26  adopted any land use regulation or policy mandating disapproval of any assembly use

27  (including churches) based on proximity to sites with HMBPs.  It is true that Planning Staff

28  considered the presence of nearby sites with HMBPs when making the recommendation to

United States District Court

For the Northern District of California

1    the Planning Commission that the Church's rezoning application be denied.  However, the

2    record does not show that the presence of the HMBPs was a substantial factor in the

3    decision by the Planning Commission or the City Council to deny the application.  The

4    primary reason for the denial was that the Catalina property did not meet two of the eight

5    criteria.

6         As for the claim of differential treatment of various "assembly" uses, ICFG's

7    argument appears to be that it is the Zoning Code's differentiation among "assembly uses,"

8    "entertainment activities," and "commercial recreation" that violates RLUIPA, because all

9    three uses involve groups of people gathered together for a purpose, but only "assembly

10   uses" (which includes religious assemblies) are precluded from operating on property

11   zoned Industrial unless that property is part of the AU Overlay District.  In support of this

12   argument, ICFG asserts that the legislative history suggests that "assembly" applies

13   broadly, to any gathering of people, for almost any reason.

14        However, the legislative history cited by ICFG, which is entitled "Summary of

15   Hearing Testimony," simply summarizes testimony heard by the House on alleged

16   discrimination against religious uses.  This testimony cannot be construed as reflecting the

17   collective intent of the lawmakers who enacted the legislation that became the RLUIPA.

18   ICFG cites to nothing in the legislative history indicating the intent of Congress that the

19   legislation abrogate all local zoning regulations that distinguish between private or non-

20   profit assemblies and institutions, and commercial or for-profit gatherings of multiple

21   persons.

22        Similarly, the definition in the Uniform Building Code is not helpful, as using that

23   definition would make religious assemblies the equivalent of bars, schools, and bus

24   stations, so long as they served more than 50 persons at a time – but would not make them

25   equivalent if they served fewer than 50 persons.  There is no indication that Congress had

26   this type of distinction in mind when it enacted RLUIPA.

27        The court finds the City's position more reasonable.  ICFG's position, carried to its

28   logical conclusion, would mean that the City could not zone its land for categories of uses.

United States District Court

For the Northern District of California

1  It is not true that the Zoning Code singles out churches and treats them on less than equal

2  terms as other types of gatherings of persons.  Under the Zoning Code, an assembly can

3  be a church, a lodge, a social club, a union hall, a fraternal organization, or a youth center.

4  This is a category of use that is qualitatively distinct from commercial uses or entertainment

5  uses.

6       Because the Zoning Code is neutral toward churches and toward religious activity

7  itself, the City's actions under the Zoning Code are of general application and need not be

8  justified by a compelling governmental interest, regardless of whether they impose any

9  incidental restrictions on religious activities.  See San Jose Christian, 360 F.3d at 1030-31.

10  The evidence shows that the City's denial of the Church's rezoning application was based

11  on a legitimate public policy consideration – the need to preserve the City's industrial base

12  – in accordance with the City's General Plan.  See General Plan Policies 7.09; 10.04.

13             c.    "Total exclusion" provision – § 2000cc(b)(3)

14       ICFG alleges that by denying the Church's use of the Catalina property, the City has

15  implemented a land-use regulation that "totally excludes" religious assemblies from an area

16  of its jurisdiction, or that unreasonably limits such uses.

17       The City argues that the challenged regulations do not totally exclude or

18  unreasonably restrict religious assemblies in San Leandro.  The City notes that it allows

19  churches (with a conditional use permit) in all residential zones (more than 50% of the

20  City), and also on 196 commercial and industrial sites in the AU Overlay District.  The City

21  contends that this evidence precludes any claim that the City's regulations "exclude"

22  religious assemblies.

23       In response, ICFG contends that because there is no other property in the City of

24  San Leandro that is suitable for development under the Church's expansion plan, the City's

25  refusal to place the Catalina property in the AU Overlay District, and its denial of the

26  rezoning application, constitute actions that "unreasonably limit" the Church's ability to

27  operate as it wishes to.

28       The court finds that the City's motion must be GRANTED, and ICFG's motion must

30

United States District Court

For the Northern District of California

1    be DENIED.  The record establishes that approximately 54.6% of the land area of San

2    Leandro is available for assembly uses, including all residential properties and 196

3    properties in the AU Overlay district.  ICFG cannot maintain a claim under the "total

4    exclusion" provision based simply on the fact that the Church has decided that the only

5    property that will suit it is one that the City will not zone for assembly use.[2]

6              2.      Constitutional Claims

7         ICFG alleges six constitutional claims, as noted above.  ICFG argues that summary

8    judgment should be granted as to the free exercise, freedom of speech, equal protection,

9    and due process causes of action.  ICFG does not mention the freedom of assembly or

10   freedom of association causes of action.

11        The City argues that summary judgment should be granted as to all six of the

12   constitutional causes of action, as none of those claims presents a triable issue.  In its

13   opposition, ICFG addresses what it terms the "exercise of free expression" claim, which the

14   court interprets as a reference to the freedom of speech claim.  ICFG then states that

15   "[d]efendants' arguments as to free exercise, equal protection, freedom of association, and

16   due process add little to the parties' prior briefings on these issues," and then references

17   (without any details) its arguments in its own pending motion.  Based on this, the court

18   concludes that ICFG does not oppose the City's motion for summary judgment as to the

19   freedom of assembly or freedom of association claims.

20              a.      Free Exercise claim

21        ICFG alleges that the City has substantially burdened the Church's ability to freely

22   exercise its religious faith through the City's assembly use application regulation.  ICFG

23   asserts that both on its face and as applied, the burden is not neutral or of general

24   application, and is not narrowly tailored.

25        Under the Free Exercise Clause, where there are no individualized assessments on

26   religious exercise, the rational basis test generally applies.  Under that test, so long as the

27   _____

28        [2]  The court also notes that ICFG did not address the "total exclusion" provision in its
     argument at the hearing on the parties' cross-motions.

United States District Court

For the Northern District of California

1   challenged zoning actions are of general application and are neutral toward religious

2   activity itself, they need not be narrowly tailored nor justified by a compelling governmental

3   interest, regardless of any incidental restrictions they may impose on religious activities.

4   See San Jose Christian, 360 F.3d at 1030-31; see also Lighthouse Institute, 510 F.3d at

5   264-65, 275-77; Vision Church v. Village of Long Grove, 468 F.3d 975, 1001 (7th Cir.

6   2006); Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 649 (10th Cir.

7   2006).

8         The City argues that summary judgment should be granted on this claim because

9   there is no evidence that the City intentionally interfered with the Church's right to the free

10  exercise of religion.  The City asserts that this claim fails for the same reason that the

11  RLUIPA "substantial burden" claim fails.  The City contends further that even if the

12  Church's free exercise rights were deemed to be implicated by the denial of the rezoning

13  application, ICFG cannot show that the City's actions inflicted a substantial burden, for the

14  reasons explained in ICFG's arguments regarding RLUIPA.

15        Moreover, the City contends, the claim fails because federal courts have not

16  recognized a First Amendment right to practice religion on any particular parcel of land,

17  absent a showing that the proposed site possesses some special religious significance.

18  The City notes that there is no evidence that the Catalina property possesses any intrinsic

19  religious significance, and that there is no claim that the City has taken any action to

20  interfere with religious activities at the Church's current location.

21        Finally, the City asserts that courts evaluating free exercise claims in the zoning

22  context generally apply only the rational basis test.  The City argues that the FAC does not

23  allege any facts suggesting that the City's zoning regulations affecting the Church or

24  churches generally are targeted at religious activity, and asserts that the regulations are

25  neutral on their face.  The City contends that the evidence shows that its actions were

26  based on legitimate public policy considerations – the need to preserve the City's industrial

27  base – and that nothing more is needed to survive scrutiny under the Free Exercise

28  Clause.

United States District Court

For the Northern District of California

1  ICFG asserts that the Free Exercise Clause prohibits government regulation of

2  religious beliefs, including government regulation of conduct relating to religious exercise.

3  ICFG argues that the conduct that is at issue here is "the Church's ability to effectively

4  serve the community by having a facility large enough to accommodate its members and

5  visitors," and contends that the City's "pattern of conduct against the Church" is interfering

6  with the Church's ability to freely exercise its religion.

7  ICFG argues that the City's actions should be evaluated under the strict scrutiny test

8  because those actions are directed toward and burden the free exercise of religion.  ICFG

9  contends that the Catalina property has been "targeted" by the City, based on the fact that

10 the Church's application for a zoning amendment to permit assembly use was denied, while

11 comparable properties are permitted uses involving entertainment and recreation.  ICFT

12 notes that the Catalina property would have been approved for assembly use if it had met

13 the eight criteria, and contends that the eight criteria have never been used elsewhere.

14 ICFG asserts that a law that "targets" religious conduct will survive strict scrutiny

15 only in rare cases – and that it will pass the test only if it is "narrowly tailored" to advance a

16 government interest of the highest order.  ICFG argues that the City has not identified a

17 compelling, narrowly tailored state interest.  ICFG contend that while the eight criteria of the

18 City's General Plan seek to safeguard places of assembly from the hazards of commercial

19 sites, they are too inaptly applied to promote any governmental interest in this regard.

20 The court finds that the City's motion must be GRANTED, and ICFG's motion must

21 be DENIED.  This claim is based on the same facts as the RLUIPA "substantial burden"

22 and "equal treatment" claims, and fails for the same reasons.  The evidence shows that the

23 Catalina property was rejected as a site for assembly uses based on facially neutral and

24 entirely objective planning standards, having nothing to do with religion.  Such neutral

25 regulations of general applicability need only have a rational basis to survive scrutiny under

26 the Free Exercise Clause.  San Jose Christian, 360 F.3d at 1030-31.

27 There is no evidence whatsoever that the City "targeted" the Church for anti-religious

28 discrimination, or that the City has taken any action to interfere with the Church's exercise

**United States District Court**
For the Northern District of California

1  of religion at the Church's current location.

2     b.     Freedom of Speech claim

3     ICFG alleges that the City has deprived the Church of its right to free speech by

4  restricting its speech rights and the congregants' corresponding right to hear.  ICFG asserts

5  that the crowded facilities, inadequate parking, and traffic congestion at the Church's

6  present location are hindering its members and visitors from entering the Church's facilities

7  and exercising their speech rights.

8     i.     The City's arguments

9     The City argues that summary judgment should be granted on this cause of action

10  because there is no evidence that it has interfered with the Church's freedom of speech.

11  The City notes that ICFG does not allege that the City has taken any affirmative actions to

12  hinder or suppress any speech activities at the Church's present location, or that any action

13  taken by the City with regard to the zoning decisions was motivated by a desire to suppress

14  religious speech or any other speech activity.  The City asserts that ICFG's only claim is

15  that the City has denied free speech by precluding the Church and its members from

16  expanding the Church's operation at the Catalina property site.

17     The City asserts that in these circumstances, zoning regulations will be upheld

18  against a free speech challenge notwithstanding any incidental effects on speech activity

19  so long as the regulations meet the common First Amendment test for "time, place, and

20  manner" restriction.

21     The City contends that its regulations meet all these requirements, as the zoning

22  regulations at issue are content-neutral with respect to religious speech and expression.

23  The City also argues that zoning regulations in general advance substantial governmental

24  interests, and that the regulations at issue promote a substantial governmental interest that

25  would be achieved less effectively absent the regulation.  The City asserts further that the

26  zoning regulations do not unreasonably limit alternative avenues of communication, as

27  assembly uses are allowed in half the total area of the City, on many more properties than

28  the apparent demand for religious uses requires.

United States District Court

For the Northern District of California

1

ii.    ICFG's arguments

2    ICFG contends that the City has restricted the Church's speech, and the rights of the

3 individual members of the Church to hear, by not allowing the Church to move to the

4 Catalina property.  ICFG asserts that the Church's present location is overcrowded, has

5 inadequate parking, and excessive traffic, and that those conditions restrict the number of

6 people the Church can communicate to, and the number of people who can receive that

7 communication from the Church.

8    ICFG argues that the Free Speech Clause protects both a communication's source

9 and its recipients, and that the reciprocal right inherent in freedom of speech is imperative

10 to an entity like the Church, where both information providers and information receivers

11 comprise the Church's entity.

12

iii.    Analysis

13    The court finds that the City's motion must be GRANTED, and ICFG's motion must

14 be DENIED.  There is no evidence that the City has interfered with the Church's speech

15 activity at its present location.  Thus, the question whether the Church is entitled to expand

16 its speech activities to a new location is governed by the traditional test for time, place, and

17 manner regulations that do not directly regulate the content of speech.  See San Jose

18 Christian, 360 F.3d at 1032-33.

19    Under this test, zoning regulations will be upheld so long as they are designed to

20 serve a substantial governmental interest, do not unreasonably limit alternative avenues of

21 communication, and are narrowly tailored in the sense that they are directed only at the

22 particular class of activities or land use reasonably believed to generate the type of impacts

23 regulated by the ordinances.  See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41,

24 47, 52 (1986); see also Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

25    The City's zoning regulations meet all these requirements.  First, the zoning

26 regulations are clearly content-neutral with respect to religious speech and expression.

27 They do not provide for granting or withholding permits on the basis of an applicant's

28 speech or viewpoint – religious or otherwise.  Where a zoning regulation serves legitimate

United States District Court

For the Northern District of California

1  purposes unrelated to the regulation of speech, it is deemed to be content-neutral, even if it

2  has some incidental effects on speech activities.  San Jose Christian, 360 F.3d at 1033.

3      Second, zoning regulations generally advance substantial governmental interests.

4  See City of Renton, 475 U.S. at 50.  Municipalities have a legitimate interest in regulating

5  the location of assembly uses, including churches, so as to avoid or minimize conflicts with

6  other uses.

7      Finally, the "narrow tailoring" requirement is satisfied so long as the regulation

8  promotes a substantial governmental interest that would be achieved less effectively

9  absent the regulation.  See Ward, 491 U.S. at 797-99.  Here, the Zoning Code allows

10  assembly uses in all residential zones (with a conditional use permit), and prohibits them in

11  commercial and industrial zones only where necessary to further specific goals and policies

12  reflected in the criteria used in establishing the AU Overlay District.

13      Finally, any claim that the Zoning Code unreasonably limits alternative avenues of

14  communication – that is, unreasonably limits the total amount of land available for

15  expressive uses – is belied by the fact that the City allows assembly uses in over half the

16  total area of the City, on many more properties than the apparent demand for religious

17  uses requires.  The City is not required to guarantee that all those sites are currently

18  available for sale and development for religious or other First Amendment uses.  City of

19  Renton, 475 U.S. at 53-54.  "That [First Amendment plaintiffs] must fend for themselves in

20  the real estate market, on an equal footing with other prospective purchasers and lessees,

21  does not give rise to a First Amendment violation."  Id. at 54.  Because the City's zoning

22  scheme provides ample opportunities for various assembly uses, including religious

23  assembly, zoning meets the test for valid zoning restrictions affecting the location of First

24  Amendment activities.

25          c.      Freedom of Assembly and Freedom of Association claims

26      The City seeks summary judgment on these two causes of action, and ICFG does

27  not oppose the motion.  For the reasons stated above, the City's motion is GRANTED as to

28  these claims.

United States District Court

For the Northern District of California

d.      Equal Protection claim

ICFG alleges that the City has denied the Church its right to equal protection of the laws by discriminating against the Church in its application of the laws, regulations, and plans of the State of California and the City, in a manner that was on less than equal terms with nonreligious assemblies.

i.      The City's arguments

The City argues that summary judgment should be granted on this cause of action because it has not denied the Church equal protection of the law.  The City asserts that this claim incorporates and is apparently based on the same allegations as ICFG's RLUIPA "equal terms" claim.

As with the "equal terms" claim, the City asserts that absent allegations of invidious intentional discrimination – not presented here – the equal protection claim must be reviewed under the rational basis test.  The City argues that just as the "equal terms" claim fails, this equal protection claim fails.

The City contends that it may rationally distinguish between assembly uses on the one hand, and commercial recreational and entertainment uses on the other.  The City asserts that notwithstanding ICFG's complaint that proximity of businesses with HMBPs was not considered in the initial site selection for the AU Overlay District, ICFG cannot show that the Church's rezoning application was actually rejected on that ground, as opposed to other legitimate grounds; that the City has failed to or will fail to consider HMBPs in other cases involving site-specific applications for assembly uses; or that consideration of HMBPs was arbitrary and failed to serve any legitimate public purpose.

ii.      ICFG's arguments

ICFG contends that the facts in the present case are comparable to the facts in Open Homes Fellowship, Inc. v. Orange County, Fla., 325 F.Supp. 2d 1349 (M.D. Fla. 2004), where the court found an equal protection violation when a Christian rehabilitation center was held to comply with special zoning requirements it could not satisfy.

Here, ICFG argues that the City denied the Church's application to use the Catalina

37

**United States District Court**

For the Northern District of California

1   property for assembly use, but has allowed other entertainment and commercial

2   recreational assembly uses in similarly zoned areas.  ICFG contends that there is no

3   rational basis to justify this differential treatment.

4                        iii.      Analysis

5          The court finds that the City's motion must be GRANTED and ICFG's motion must

6   be DENIED.  To sustain this claim, ICFG must show that it has been treated differently

7   (and less favorably) than other similarly situated individuals or entities, and that the

8   dissimilar treatment bears no reasonable relationship to a legitimate government purpose.

9   See Christian Gospel Church, Inc. v. City and County of San Francisco, 896 F.2d 1221,

10  1225-26 (9th Cir. 1990)).

11         Here, ICFG has not explained why the City's articulated reasons for declining to

12  rezone the Catalina property for assembly uses – i.e., preservation of the City's industrial

13  base and traffic access considerations – are irrational, and also does not explain why the

14  City could have no other rational basis for enacting and enforcing the relevant portions of

15  its Zoning Code.

16         Moreover, the Open Homes case cited by ICFG is distinguishable.  In that case, a

17  residential Christian substance abuse recovery center sought an exception from zoning

18  regulations.  The area in which the center was located was zoned R-3 (multiple family

19  dwelling), and the permitted uses in the R-3 zone included community residential homes,

20  fraternities, sororities, clubs, dormitories, and adult daycare centers.  The defendant

21  County denied the request, and the center filed suit, alleging, among other things, violation

22  of RLUIPA, and violation of the Equal Protection Clause and the First Amendment.

23         The court found that the County had failed to offer any rational basis for believing

24  that the center posed a special threat to the County's articulated interests (safety, traffic,

25  and trash control, intensity of use, and general prevention of disruption to the

26  neighborhood) and that the County had violated equal protection rights on an as-applied

27  basis when it required the center to obtain a special exception in order to operate, but

28  allowed similar uses (community residential homes, adult day care centers) as of right.  Id.

United States District Court

For the Northern District of California

at 1357-63.  However, the record was clear that the religious institution was seeking to operate a residential treatment program, not a church.  Id. at 1363-64.

In the present case, ICFG does not identify any properties or applicants that were similarly situated, but were treated differently by the City.  For the reasons explained above, the City reasonably distinguished among assembly uses, entertainment activities, and commercial recreation in its Zoning Code.  ICFG has pointed to no other assembly use applicant that received approval of a similar zoning amendment request.

e.    Due Process claim

ICFG alleges that the City deprived the Church of due process of law 1) by denying the Church the use of the Catalina property for worship, religious education, and social services, based on the City's General Plan, Zoning Map, and Zoning Code, and the AU Overlay District criteria (which ICFG claims are vague and indefinite and constitute a standard of review different in substance and form from that applied to other applicants, including distinct public health and safety criteria); and 2) by intentionally prolonging the AU Permit application process in order to obstruct, delay, and prevent the Church's use of the Catalina property.

i.    The City's arguments

The City argues that summary judgment should be granted as to this claim because there is no evidence that the City violated the Church's right to due process.  The City contends that the Church does not have a protected property or liberty interest in constructing religious assembly facilities on the Catalina property, and this use of the property has never been authorized and has not actually occurred.  In particular, the City notes that the Catalina property has never been zoned to allow assembly uses.  The City argues that the Church therefore has no protected property interest in its applications to rezone the property.

As for a possible liberty interest, the City argues that while the Church might claim a liberty interest in its right to conduct religious activities, any claim based on this theory must fail because there is no recognized liberty interest in building a church on property that has

1    never been devoted to such use and is not zoned for it.

2        The City argues that the two potential claims asserted in the due process cause of

3    action – the "vagueness" claim and the "unreasonable delay" claim – both fail.  The City

4    contends that the vagueness claim fails for lack of a protected liberty or property interest,

5    and that in any event, the reach of a due process challenge based on the vagueness

6    doctrine is inapplicable here.  The City contends that the Due Process Clause does not

7    restrict the factors that a governmental agency may consider when deciding whether or not

8    to adopt or amend an existing regulation, as opposed to the way it is applied to particular

9    conduct.

10       The City also contends that the "unreasonable delay" claim also fails for lack of a

11   protected liberty or property interest, as there is no constitutional provision that requires a

12   city to meet time limits when considering zoning or rezoning measures.  The City also

13   asserts that in this case, the record does not establish that there was any unreasonable or

14   arbitrary delay.  The City contends that the Church's initial application presented it with a

15   major policy issue, but that it nevertheless moved forth deliberately and completed a major

16   amendment to its existing zoning scheme within one year, and acted on the Church's

17   subsequent rezoning application in little more time than was necessary to process the

18   application, prepare staff reports, and notice public hearing.  Thus, the City argues, there is

19   no basis for a claim of unreasonable delay.

20                          ii.      ICFG's arguments

21       ICFG contends that the City's AU Overlay criteria are arbitrary, as is the HMBP

22   restriction (which it claims was placed solely on the Church), and also asserts that the City

23   intentionally and needlessly delayed and obstructed the Church's use of the Catalina

24   property.  Thus, ICFG argues, the City's actions were arbitrary and capricious, and

25   fundamentally failed to promote the community's health, morals, safety, and general

26   welfare.

27                          iii.     Analysis

28       The court finds that the City's motion must be GRANTED and that ICFG's motion

**United States District Court**
For the Northern District of California

1   must be DENIED.  The Due Process Clause of the Fourteenth Amendment protects

2   individuals against governmental deprivations of "life, liberty or property," without due

3   process of law.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 570-71 (1972);

4   Mullins v. Oregon, 57 F.3d 789, 795 (9th Cir. 1995).

5          The touchstone of due process is protection of the individual against arbitrary action

6   of government, whether the fault lies in a denial of fundamental procedural fairness (denial

7   of procedural due process guarantees), or in the exercise of power without any reasonable

8   justification in the service of a legitimate governmental objective (denial of substantive due

9   process guarantees).  See County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).

10         To state a due process claim, a plaintiff must allege the deprivation of some legally

11  protected interest in life, liberty, or property.  Roth, 408 U.S. at 570-72.  Here, ICFG has

12  failed to establish the deprivation of a constitutionally protected liberty or property interest,

13  and has also failed to establish that some process (which the Church did not receive) was

14  due.  The Church does not have a protected property or liberty interest in constructing

15  religious assembly facilities on the Catalina property, as this use of the property has never

16  been authorized and has not actually occurred.

17         Specifically, the Catalina property has never been zoned to allow assembly uses –

18  either with or without a conditional use permit.  While the Church has applied for rezoning

19  of the property, rezoning in California is a purely legislative act.  See Arnel Dev. Co. v. City

20  of Costa Mesa, 28 Cal. 3d 511, 516 (1980).  Legislative decisions are constrained only by

21  the minimum constitutional requirement that such actions be rationally related to legitimate

22  government interests.  See id. at 520-24.  ICFG therefore cannot establish that the Church

23  has a protected property interest in its applications to rezone the property.

24         The "vagueness" claim fails for lack of a protected liberty or property interest.

25  Moreover, the concerns implicated by overly vague laws are that they fail to give persons of

26  "ordinary intelligence" notice of what the laws require, and they invite arbitrary, subjective,

27  and inconsistent enforcement by failing to establish ascertainable standards.  See Village

28  of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).  These

United States District Court

For the Northern District of California

1  concerns are not applicable here.

2      The "unreasonable delay" claim also fails for lack of a protected liberty or property

3  interest, as there is no constitutional provision that requires a city to meet time limits when

4  considering zoning or rezoning measures.  Moreover, in this case, the record does not

5  establish that there was any unreasonable or arbitrary delay.

6      To the extent that ICFG is attempting to make out a claim of violation of substantive

7  due process, ICFG has not established that the Church was deprived of some fundamental

8  right that is not explicitly protected by another constitutional provision.  See Doe v.

9  Tandeske, 361 F.3d 594, 597 (9th Cir. 2004) (protection of substantive due process is

10  primarily reserved for liberties deeply rooted in the nation's history and tradition); see also

11  Albright v. Oliver, 510 U.S. 266, 273 (1994) (substantive due process does not extend to

12  circumstances already addressed by other constitutional provisions).

13      In addition, as the City notes in its opposition to ICFG's motion, the claim that the AU

14  Overlay criteria and the application of the hazardous materials business plan restriction

15  (involving consideration of potential health and safety issues) were arbitrary and capricious

16  is not supported by any citations to evidence, and therefore provides no basis for granting

17  summary judgment in ICFG's favor.

18      The evidence provided by the City shows that the criteria used by the City to select

19  properties for the AU Overlay District – and for rejecting the inclusion of the Catalina

20  property in that zone – have a rational connection with legitimate public zoning objectives.

21  Ms. Pollart explains in detail in her declaration the process the Planning Department and

22  the City went through in creating the AU Overlay District and the applicable criteria, and in

23  evaluating the Church's application for rezoning.

24      Nor is there any evidence that the process of creating the AU Overlay process was

25  unduly protracted, given the nature of the task, or that any delays occurring in the process

26  were unrelated to legitimate planning considerations – e.g., the need to gather information,

27  to consider potential alternative courses of action, to seek direction from responsible

28  decisionmakers, and to conduct legally-required public hearings.

42

**CONCLUSION**

In accordance with the foregoing, the court hereby GRANTS the City of San Leandro's motion for summary judgment, and DENIES ICFG's motion for summary judgment on its causes of action.  ICFG's motion for summary judgment on the City's affirmative defenses is DENIED as moot.

**IT IS SO ORDERED.**

Dated:  December 22, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge