UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

INTERNATIONAL CHURCH OF THE
FOURSQUARE GOSPEL, et al.,

    Plaintiffs,

    v.

CITY OF SAN LEANDRO, et al.,

    Defendants.
_____/

No. C 07-3605 PJH

**ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on June 20, 2012. Plaintiff appeared by its counsel Scott Hennigh and Meredith Jones-McKeown, and defendant appeared by its counsel Deborah J. Fox, Jayne W. Williams, and Marci Hamilton. Having read the parties' papers and carefully considered their arguments, the court hereby GRANTS the motion in part and DENIES it in part, as follows.

**BACKGROUND**

This is an action brought by plaintiff International Church of the Foursquare Gospel ("ICFG") against defendant City of San Leandro under the Religious Land Use and Institutionalized Person's Act of 2000 ("RLUIPA") 42 U.S.C. § 2000cc, et seq. ICFG's complaint is based on the City's refusal to rezone land ("the Catalina property") that ICFG's affiliate, Faith Fellowship Foursquare Church ("the Church"), wanted to use to expand its facilities, or to provide the Church with an exemption to the zoning.

In the first amended complaint, ICFG alleged three causes of action under RLUIPA, asserting that the City's land restrictions placed a "substantial burden on religious exercise," in violation of 42 U.S.C. § 2000cc(a); that the denial of the rezoning application constituted "treatment of religious assembly on less than equal terms with nonreligious assembly," in violation of 42 U.S.C. § 2000cc(b)(1); and that the denial of the Church's use of the Catalina property constituted "total exclusion from jurisdiction or unreasonable limits on religious assemblies within jurisdiction," in violation of 42 U.S.C. § 2000cc(b)(3). ICFG also asserted claims under 42 U.S.C. § 1983 for violation of the Church's rights under the First and Fourteenth Amendments to the United States Constitution.

On December 22, 2008, the court issued an order granting the City's motion for summary judgment and denying ICFG's cross-motion. On appeal, the Ninth Circuit found a triable issue of material fact as to whether the City imposed a substantial burden on the Church's religious exercise under RLUIPA, and also found that the City had failed to prove a compelling interest for its actions. See International Church of the Foursquare Gospel v. City of San Leandro, 634 F.3d 1037, as amended, 673 F.3d 1059 (9th Cir. 2011). The court did not address the "equal terms" provision of RLUIPA, or the First and Fourteenth Amendment claims.

At the case management conference ("CMC") held in January 2012, ICFG indicated that it was voluntarily abandoning all claims other than the RLUIPA claims. The City now seeks summary judgment on the question whether the damages ICFG seeks are available or proper under the "substantial burdens" provision of RLUIPA.

**DISCUSSION**

A.  Legal Standard

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

A party seeking summary judgment bears the initial burden of informing the court of

the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Soremekun v.Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the opposing party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson, 477 U.S. at 250; see also Fed. R. Civ. P. 56(c), (e).

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

B.   RLUIPA

RLUIPA prohibits the government from imposing "substantial burdens" on "religious exercise" unless there exists a compelling government interest and the burden is the "least restrictive means of satisfying the governmental interest." See San Jose Christian College v. City of Morgan Hill, 360 F.3d 1024, 1033-34 (9th Cir. 2004) (quoting 42 U.S.C. § 2000cc(a)(1)).[1] The statute broadly defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42

---

[1] RLUIPA also prohibits imposing or implementing any land use regulation that (1) "treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution," or (2) "discriminates against any assembly or institution on the basis of religion or religious denomination," or (3) "totally excludes religious assemblies from a jurisdiction[,] or unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(1), (2), (3).

3

U.S.C. § 2000cc–5(7)(A).

The "substantial burden" provision applies only if one of three conditions exists. The third condition, applicable here, is that the substantial burden must have been "imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." Id. § 2000cc(a)(2)(C).

Under this condition, if the court finds that the challenged action involves an individualized land use assessment, it must then determine whether the defendant's action imposes a substantial burden (and whether any such burden furthers a compelling government interest in the least restrictive manner possible). In the present case, there appears to be no dispute that the City's zoning regulations are "land use regulations," and that the action challenged by ICFG involves an "individualized land use assessment."

To be considered "substantial," the burden "must place more than an inconvenience on religious exercise." Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 988 (9th Cir. 2006) (citation and quotation omitted). Rather, "it must be oppressive to a significantly great extent[,]" and "must impose a significantly great restriction or onus upon such exercise." Id. (quoting San Jose Christian College, 360 F.3d at 1034) (internal quotation marks omitted).

Here, in reversing and remanding this case, the Ninth Circuit determined that triable issues exist with regard to whether the City imposed a substantial burden on the Church's religious exercise under RLUIPA, and also found that the City had failed to prove that its actions were narrowly tailored to accomplish a compelling government interest. ICFG v. San Leandro, 673 F.3d at 1070-71.

C.  Defendant's Motion

The City seeks summary judgment as to whether ICFG is entitled to damages on its claim under the "substantial burden" provision of RLUIPA. ICFG is seeking a total of $19,000,000 to $23,000,000 in damages, as follows: (1) $2,575,000, which ICFG claims is

4

the amount the Church lost in the sale of the Catalina property during the pendency of this litigation; (2) $6,144,129, which ICFG describes as "carrying costs" in the form of loan payments, insurance payments, and taxes on the Catalina property; and (3) an amount for "lost contributions," ranging from $10,400,000 to $14,320,000, for lost collection plate revenues from anticipated parishioners who did not materialize as new church members, calculated at a rate of $118 per person per month.

Although RLUIPA says only that a successful plaintiff may "obtain appropriate relief against a government," and does not specifically state that damages are available, the Ninth Circuit recently held in Centro Familiar Cristiano Buenas Nuevas v. City of Yuma, 651 F.3d 1163 (9th Cir. 2011) that "appropriate relief" may include monetary damages. Id. at 1168-69. Here, however, the City contends that the damages sought by ICFG are not "appropriate" under the RLUIPA's "substantial burden" provision, because (a) ICFG's harms were self-inflicted; (b) the claimed damages are overly speculative and unsupported by any methodology for computation of damages; (c) awarding these damages would be to confer an "unjust enrichment" on a religious entity, in violation of the Establishment Clause of the First Amendment of the United States Constitution; and (d) claims for loss of sale of the property at issue in this action, insurance and tax payments for the property, and "loss of contributions" are categories of damages not alleged in the pleadings and not identified in the discovery disclosures under Federal Rules of Civil Procedure 26, and are therefore not properly before the court.

With regard to the first argument, the court finds that while it is true as a general proposition that self-inflicted damages should not be borne by the defendant, see, e.g., Nadell v. Las Vegas Metro Police Dep't, 268 F.3d 924, 928 (9th Cir. 2001), abrogated on other grounds as stated in Miller v. Gammie, 335 F.3d 889, 899-90 (9th Cir. 2003) (en banc); Soules v. Kauaians for Nulokii Campaign Committee, 849 F.2d 1176, 1182 (9th Cir. 1988), this is simply another way of saying that a plaintiff can recover from a defendant only for injuries caused by that defendant. Here, the court finds that the question whether ICFG's damages were self-inflicted, and to what extent, raises disputed issues of fact that

5

cannot be resolved in a motion for summary judgment.

With regard to the second argument, the court agrees with the City that the claimed damages for "loss of contributions" from prospective – but unidentified and unmaterialized – church members are unsustainable, as the ability of the Church to continue into the future its "normal rate of growth" absent the City's actions is by definition an exercise in speculation, and ICFG cannot show any causal relationship between this asserted "loss of contributions" and any action by the City.

ICFG bases its argument largely on the declarations of the Church's pastor, Gary Mortara, and his brother David Mortara, both of whom purport to predict future attendance and contributions from hypothetical future Church members. Nevertheless, as there is no way of knowing how many people would have joined the Church if it had moved into a larger facility, and of those, how many would have contributed the anticipated $118 per person per month to the Church, the evidence is too speculative to raise a triable issue of fact with regard to this claim.

With regard to the third argument – that awarding damages in this case would be to provide ICFG with an unjust enrichment, which would in turn constitute a preference for religion over non-religion in violation of the Establishment Clause – the court is not persuaded. First, as noted above, under City of Yuma, "appropriate relief" in a RLUIPA "substantial burden" case may include damages. Second, as liability has not yet been established, and no damages have been calculated or determined, the argument is premature and appears to constitute an improper request for an advisory opinion.

The only argument that presents any difficulty is the fourth argument – that damages for loss of sale, insurance, tax payments, and "lost contributions" are not properly before the court because they were not alleged in ICFG's pleadings and were not disclosed in its Rule 26 initial disclosures or during discovery.

The original complaint was filed on July 12, 2007, and the FAC was filed on October 26, 2007. The prayer for relief in the original complaint sought injunctive relief – an order enjoining the City from denying the Church the right to use the Catalina property site – and

declaratory relief, plus "nominal damages," "economic damages," and attorneys' fees and costs. The complaint also requested that the City be required to establish a "restricted fund" and begin reserving for "potential damages in an amount equal to [the Church's] monthly mortgage interest on the Catalina property (not including principle), accruing monthly from March 19, 2007 . . . until a judicial determination of this case becomes final." The prayer for relief in the FAC sought essentially the same relief as the prayer for relief in the original complaint, with the addition of a prayer for "all appropriate relief" under 42 U.S.C. § 2000cc(2)(a).

The initial disclosures, which are dated October 18, 2007, stated, "As a result of the actions of the defendants, the Church has been unable to use a building which it purchased. The damages are the mortgage payment of $33,809.88 per month since the time that the city determined to include the property in the assembly overlay on May 7, 2007. Damages are continuing in nature."

ICFG contends that this shows that it was seeking damages caused by the Church's inability to use the building, and that those damages were "continuing." ICFG asserts that the City submitted two document requests, both of which asked for documents supporting the damages claims, and that the Church responded with documents that included attendance records and documents relative to the purchase and financing of the building. ICFG contends that the City also deposed Church personnel, inquiring "in great depth" about the manner of tracking Church attendance and contributions.

ICFG's position is that the case was "inactive" from October 1, 2008, when the court heard the parties' cross-motions for summary judgment, until April 2011, when the Ninth Circuit issued its order amending the prior February 2011 order and denying the petition for en banc review. ICFG asserts that during this time, the Church was compelled to sell the Catalina property, and also accrued more that three years' worth of lost contributions. ICFG claims that the Church continues to accrue lost contributions because "the prospect of ever being able to use the building through injunctive relief [has] been lost by way of the sale."

7

On November 7, 2011, immediately after the remand, the Church's counsel met with the City's counsel, and at that time advised the City that its "hard damages" (loan payments, taxes, insurance) totaled approximately $6.1 million, plus "soft damages" for "lost contributions."

Throughout the following months, ICFG asserts, the Church continued to maintain that these were the damages it was seeking, and in May 2012, it produced "back-up" documents (attendance reports, receipts, invoices, and cancelled checks) supporting the claimed damages. ICFG argues that it is obvious that the City is aware of these damages because it references them in the present motion, and also contends that the City was aware from the outset of the litigation that the Church was incurring financial damage from not being able to use the building on the Catalina property.

The City argues that various categories of damages should be excluded because ICFG failed to disclose them as part of the discovery process, and failed to designate an expert to opine as to any of these "new" categories of damages. The City notes that ICFG does not dispute that the only category of damages it ever asserted or disclosed prior to the October-November settlement negotiations was the category of the monthly "mortgage payment" on the Catalina property. Nor, the City asserts, does ICFG dispute that the documents it is now offers in support of the new damages claims were never produced during discovery. Rather, the City argues, to the extent the documents were provided at all, it was during the course of confidential settlement discussions. Thus, the City argues, any such evidence will not be admissible during trial to prove any element of ICFG's claim.

As an initial matter, while the court agrees that ICFG did not disclose "lost contributions" at any time prior to December 2011 when the parties exchanged drafts of their proposed Joint Case Management Conference Statement, it has already determined that the claimed damages for "lost contributions" are unsustainable because they are overly speculative. On the other hand, the court finds that ICFG cannot be held responsible for not having fully disclosed a category of damages that it had not incurred as of December 2008 (when the court granted summary judgment for the City) – specifically, the damages

8

claimed for losses incurred in the sale of the property. The sole question, then, is whether the failure to specifically disclose damages based on taxes and insurance – to the extent that those categories of damages are distinct from the amounts claimed for loan payments – bars any attempt to recover those damages.

Rule 26(a)(1)(A)(iii) requires a party to provide "a computation of each category of damages claimed by the disclosing party," and also requires the disclosing party to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which such computation is based, including materials bearing on the nature and extent of injuries suffered." In addition, Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." The Advisory Committee considers this last requirement as "the functional equivalent of a standing Request for Production under Rule 34."

Rule 37(c)(1) forbids the use at trial of any information required to be disclosed by Rule 26(a) that was is not properly disclosed.[2] Hoffman v. Construction Protection Servs., Inc., 541 F.3d 1175, 1179 (9th Cir. 2008) (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)). Alternatively, the court can order the non-disclosing party to pay the reasonable expenses caused by the failure, may inform the jury of the party's failure, and may impose other appropriate sanctions. See Fed. R. Civ. P. 37(c)(1). The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified. R & R Sails, Inc. v. Insurance Co. of Pennsylvania, 673 F.3d 1240, 1246 (9th Cir. 2012).

The court finds that the disclosure of damages based on payment of taxes and insurance cannot reasonably be subsumed within the disclosure of "mortgage payments" and damages that are "continuing in nature." ICFG's initial disclosures specified an amount for "mortgage payments" and did not mention taxes and insurance. Nor, it appears, did

---

[2] "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

9

ICFG ever supplement the initial disclosures to add amounts for taxes or insurance.

Where evidence is precluded under Rule 37 as a sanction for a disclosure violation, and the imposition of that sanction will amount to the dismissal of a claim, the district court is required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and must also consider the availability of lesser sanctions. Id. at 1247 (district court erred when it excluded evidence because it failed to conduct necessary inquiry). In this case, however, the City is not seeking dismissal of a claim, but rather the disallowance of certain categories of damages.

The court finds that this failure to specifically disclose taxes and insurance was relatively harmless, or at any rate, not sufficiently egregious to warrant sanctions in the form of preclusion of those damages. Certainly, there is no basis for finding willfulness or bad faith on the part of ICFG. However, if ICFG intends to seek damages for taxes and insurance on the Catalina property, it must provide the City with full discovery – no later than August 31, 2012 – regarding such damages.[3]

D.   Briefing on Other Issues Requested by the Court

In addition to arguing that summary adjudication should be granted in favor of the City on damages, the parties have provided briefing on the questions whether liability and damages in this case should be decided by a jury or by the court. In this regard, the court rules as follows.

First, in order to establish that the City violated the "substantial burden" component of RLUIPA, ICFG must demonstrate that the City's action has imposed a substantial burden on the Church's religious exercise; and if ICFG meets that burden, the City must show that its action was "the least restrictive means" of "further[ing] a compelling governmental interest." See ICFG v. San Leandro, 673 F.3d at 1066.

The question whether ICFG has demonstrated a "substantial burden" on religious

---

[3] The court notes that to the extent that any claimed damages are required to be supported by expert testimony, ICFG did not file a formal motion to reopen discovery when permitted by the court, and has not moved to modify the scheduling order to designate an expert.

10

exercise is a matter for the jury. See Grace United Methodist Church v. City of Cheyenne, 235 F.Supp.2d 1186, 1197-98 (D. Wyo. 2002); see also Rocky Mountain Christian Church v. Bd. of County Com'rs, 613 F.3d 1229, 1236 (10th Cir. 2010).

Whether a proffered government interest is "compelling" is generally viewed as a question of law. See Cutter v. Wilkinson, 544 U.S. 709, 722-23 (2005); ICFG v. San Leandro, 673 F.3d at 1061, 1071; see also United States v. Hardman, 297 F.3d 1116, 1127 (10th Cir. 2002); U.S. v. Adeyemo, 624 F.Supp. 2d 1081, 1089 (N.D. Cal. 2008); Bessard v. California Community Colleges, 867 F.Supp. 1454, 1462 (E.D. Cal. 1994). On the other hand, whether a governmental entity has used the least restrictive means to achieve a compelling interest has been treated as a question of fact. ICFG v. San Leandro, 673 F.3d at 1071.

Second, as damages implicate questions of both law and fact, some questions relating to damages must be decided by the court, and some by the jury. In this case, a primary question of law to be decided by the court includes which categories of damages are available in this case. If the court determines that a particular category of damages is permissible as a matter of law, it will be the jury's obligation to determine the actual amount to be awarded. Finally, should ICFG prevail, the question of attorney's fees will be for the court to decide following the trial.

## CONCLUSION

In accordance with the foregoing, ICFG's motion is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated: August 20, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

11